IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, *et al.*,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,<br><br>　　　　　　Defendants. | Case No. 3:25-cv-2847<br><br>**DECLARATION OF ANA RAQUEL DEVEREAUX (MIRC) IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

# DECLARATION OF ANA RAQUEL DEVEREAUX

## SENIOR MANAGING ATTORNEY FOR MICHIGAN IMMIGRANT RIGHTS CENTER

*I, Ana Raquel Devereaux, make the following statements on behalf of the Michigan Immigrant Rights Center. I certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. § 1746.*

1. My name is Ana Raquel Devereaux, and I am a Senior Managing Attorney at the Michigan Immigrant Rights Center (hereinafter, "MIRC"). MIRC is a non-profit organization that provides free legal services for children and other non-citizens who have suffered abuse, trafficking, and persecution. MIRC is the only organization serving unaccompanied children in the custody of the Office of Refugee Resettlement (hereinafter, "ORR") in Michigan and the primary organization providing legal services to children in the unaccompanied refugee minor program in Michigan and to children released from ORR custody to sponsors in Michigan.

2. Michigan Immigrant Rights Center (MIRC) is a legal resource center for Michigan's immigrant communities. MIRC works to build a thriving Michigan where immigrant communities experience equity and belonging. The Michigan Immigrant Rights Center is a program of Michigan Statewide Advocacy Services (MSAS). MIRC has five local offices throughout the state of Michigan which provide direct legal services to unaccompanied children and also provide general community immigration legal services. Our five local offices are located in Detroit, Ypsilanti, Lansing, Grand Rapids, and Kalamazoo. These five offices are supported by a statewide structure within MIRC to provide training, administrative and supervisory support, community engagement, and pro bono support.

3. In order to carry out this mission with respect to providing legal services to unaccompanied children, MIRC has several main work components: (1) Providing educational and pro se services in the form of legal education "know your rights" ("KYR") presentations, conducting individual consultations (intakes), and conducting pro se workshops with all unrepresented children in ORR custody in Michigan; (2) Representing unaccompanied minors who are not in ORR custody in immigration proceedings; and (3) Representing children in ORR custody in immigration proceedings. We further host Immigrant Justice Corps (IJC) fellows to represent unaccompanied children in removal proceedings and provide Spanish-language support for staff representing unaccompanied children.

4. MIRC has been providing legal services for unaccompanied immigrant children in Michigan since 2009 at a smaller scale and with a dedicated unaccompanied children's

1

team beginning in 2017 when MIRC received its first subcontract to serve children in ORR custody in Michigan. That first contract focused on providing KYR presentations, legal screening, support for hearings, and representation as needed for all children in short-term ORR custody in Michigan and providing universal immigration representation to all children in long-term ORR custody in Michigan.

5. Since 2017, the ORR bed capacity in Michigan for short and long-term shelters and foster care facilities has expanded significantly to its current capacity of 335 short-term beds and 122 long-term beds. In 2021, MIRC's subcontract expanded to permit MIRC to offer representation to children in Michigan who have been released from ORR custody and are in removal proceedings. MIRC has grown its capacity to represent released children from 240 to 565. Additionally, in 2021, an Emergency Intake Site was opened in Michigan with 225 beds. MIRC served all of the children in that facility by providing KYR presentations, conducting intakes, and conducting pro se workshops with all unrepresented children in ORR custody in Michigan, and offering representation, especially when the facility turned over its population and housed most of the Afghan Unaccompanied Minors who arrived in ORR custody and the contract provided for and required asylum and work authorization for these youth while in ORR custody. MIRC continues to serve all ORR beds in Michigan and remains ready to expand to serve any additional facilities that serve unaccompanied children in the state and to reach as many released children for representation as is within our capacity, which we have continually expanded to address the unmet need in the state of Michigan. At this time, we serve the following facilities: BCC Caminos Nacional – Michigan Children's Home Society, Bethany Christian Services – Wedgwood Christian Services, Bethany TLC, Bethany USCCB (Bellaview and Casa del Sol), LIRS – BCS MI Kalamazoo LTFC – Casa de Esperanza, LIRS – BCS MI Kalamazoo LTFC TGH – Hacienda De Luz, Samaritas LTFC, LIRS–BCS MI Alma Shelter, LIRS–BCS MI East Lansing TFC, LIRS–BCS MI Grand Rapids Shelter – TAC, LIRS–BCS MI Grand Rapids TFC, LIRS–BCS MI Holland TFC, LIRS–BCS MI Muskegon TFC, USCCB Catholic Charities West Michigan TFC, Samaritas Shelter – Grand Rapids, Samaritas URM – LIRS – Lansing, MI , Bethany Christian Services URM – USCCB – Kalamazoo, MI , Bethany Christian Services URM – USCCB/LIRS – Grand Rapids, MI , Bethany Christian Services URM – LIRS – Traverse City, MI.

6. With U.S. Department of Health and Human Services (HHS) funding, MIRC currently has 147 positions serving children in and released from ORR custody in Michigan. Specifically, these 147 positions encompass 113 full-time employee's worth of funding and dedicated services to unaccompanied children. Of these roles 58 are attorney staff roles (including attorney managers), 3 of which are Immigration Justice Corps Attorney Fellows, 47 are paralegals (all of whom are either DOJ-Accredited or are working towards their DOJ-Accreditation), 13 are paralegal supervisors, and the remaining staff

focus on data reporting, administrative case support, case intake, training, and communication.

7. Staff providing representation and KYR presentations to children in ORR facilities regularly travel to each facility in person to conduct client interviews, prepare clients for hearings, as well as provide legal education, individual consultations, and pro se workshops for pro se children. MIRC serves children in 9 short-term facilities, which range in size from 12 beds to 36 beds. Each week, MIRC staff visit the facility one to two days to provide KYRs and intakes with each child who has arrived within the last week and also to provide follow-up services to children who have been at the facility for an extended time or are otherwise in need of representational legal services. Additionally, the children come to our offices one additional day during the week as that additional time is usually required to complete all the services within the contractually required 7-10 business day period after their arrival in custody. Additionally, we have 8 long-term ORR facilities in Michigan, ranging in bed size from 8 to 32. When children arrive to long-term ORR facilities, MIRC assigns an attorney/paralegal team to meet with the child and offer representation within 30 days of their arrival.

8. For children released from custody, the children are either referred through the Acacia-facilitated referral system, UCORD, or by calling our intake line, once we determine that the child meets the eligibility criteria while offices are accepting new cases, we then meet with the child within 30 days to offer representation. For children with whom we have entered representational agreements, MIRC's legal teams represent children in state and immigration court, file petitions with USCIS, file motions and petitions with the immigration court, file mandamus and habeas actions in the Eastern and Western Federal District Courts in Michigan, file appeals with the Michigan Court of Appeals, USCIS, EOIR, the BIA (and in similar cases, we have proceeded as far at pursuing appeals in 6th Circuit Federal Court of Appeals, but it has not been necessary yet for a case under this contract), as well as pursue other advocacy efforts within ORR and other spaces where unaccompanied children are detained and/or receive services.

9. Children in short-term ORR custody have just arrived in this country and generally have never been in a formal custodial system. They speak many different languages and have a variety of educational backgrounds, ranging from no formal education to middle school level schooling, including high school-age children because they have rarely had high school educational opportunities. Due to all of these factors, they are not yet equipped with the resources to fully understand what rights they have while in custody and it is essential for them to meet with legal services providers to understand that they have a right to bodily safety, contact with family, medical care, and educational services, among other rights guaranteed in the Flores Settlement and the Foundational Rule. Additionally, the immigration legal system is extremely complex and nuanced, and without an orientation with a legal service provider, it would be near impossible for children, let

alone the non-attorney staff at these short-term custodial sites to be able to explain, to understand critical pieces of the system that affect them, including the importance of keeping addresses up to date and attending immigration hearings (and even how to understand the notices that arrive indicating when a hearing will occur).

10. A reality that must be addressed is that children in custody are incredibly vulnerable by the nature of a custodial system where the vulnerability factors for sexual and physical abuse are extremely prevalent. A bad actor may take advantage of these systemic vulnerabilities. If these children do not have access to legal counsel that is independent from ORR and the organizations that sub-contract to provide the custodial services, these children surely will face even greater levels of abuse in custody. MIRC intervened and represented children in 2023 when there was an instance of systemic sexual abuse of children in short-term custody in one of the ORR Michigan facilities. MIRC worked to represent individual children, supporting them in reporting to law enforcement and participating in the prosecution of the crime, and holding agency staff and ORR leadership accountable for ensuring further protections are put in place for future children in custody at that facility. Additionally, MIRC represented individual children who faced abuse in ORR foster homes and as soon as the child disclosed the circumstances to MIRC, we ensured they received protection and there was accountability for the individual and systemic failures that harmed the child.

11. In Michigan, if MIRC did not provide these services under the HHS contract, it would be impossible for the majority of the children to receive representation. The private bar in Michigan is relatively small and generally at capacity. Very few private immigration practitioners take children's cases, due to the specialty area of law it encompasses. The few attorneys who do take the cases will charge $10,000 on average, which is outside of reach for most children released to the community and impossible for all children in ORR custody who by definition have no family or financial support in the country. Before MIRC began working under the contract, we would receive frequent calls from staff at the ORR facilities asking us to take the cases because no one else would do so, but without offering any funding for the work. We turned down a large number of these cases due to a lack of capacity.

12. Since MIRC's founding in 2009, MIRC has engaged in recruitment and mentorship of pro bono attorneys to the fullest extent possible, but a significant challenge has been that in the state of Michigan, pro bono attorneys do not generally have immigration expertise, only speak English (and unwilling to pay for interpretation for pro bono cases), and are unwilling to commit to the timeframe of children's immigration cases or with the special care needed when working with children. Only recently have we had some small success involving pro bono attorneys in our children's work, and it has been because the HHS contract funds language support for the pro bono attorneys and we have a dedicated team to train and support those pro bono attorneys. Even with this support, the pro bono

attorneys will usually only offer support in small ways and rarely or never take on full cases for representation.

13. A few other small non-profit legal service providers exist in the state of Michigan, but all of them are quite small and have only had capacity to focus on primarily adult and USCIS-only representation, leaving no other non-profit options for children in removal proceedings aside from MIRC.

14. In addition to MIRC providing the only available and financially accessible legal representation for unaccompanied immigrant children in the state of Michigan, MIRC dedicates significant resources to ensuring the staff MIRC hires are culturally humble, are passionate about serving immigrant children, are trained in best practices for trauma-informed and child-friendly legal services, follow strict child abuse prevention guidelines, and as much as possible share cultural, linguistic, and experiential backgrounds with our child clients.

15. Under the unaccompanied child legal services program, since 2017, MIRC has entered representation for 1,697 children, provided 5,686 Know Your Rights sessions, 4,061 legal screenings, and identified 6,158 potential pathways for relief for our young clients. We have represented children as young as 10 months old. In 2024, MIRC offered legal services and representation to children who spoke 62 different languages MIRC has filed asylum for 725 children, with an 83% approval rate, and filed 351 applications for permanent residency, with 155 of those already approved (the remaining are pending). MIRC currently has over 900 cases open for unaccompanied children in removal proceedings. These numbers result in real, meaningful changes in the lives of children and families, children who grow up to thrive and be part of our communities.

16. MIRC has represented children fleeing abuse, including those who were regularly whipped with electric cords or who faced ongoing sexual abuse with no hope of protection from their communities. MIRC has reunited children with loved ones–children should have the opportunity to be children and the law requires them to be placed in the least restrictive environment feasible, the best place for a traumatized child is with the family or community members with whom they feel most comfortable. These were courses of action that required a lawyer due to their complexity, the legal expertise required, the many logistical barriers within USCIS and immigration court. Without legal representation, these children would have been forced to return to situations of abuse, persecution, and lack of safety due to the inability for a child to meaningfully present their case.

17. We have also represented children who have been trafficked, such as children who were forced to do dangerous work and beaten when they were too sick to go to work. One of the most powerful tools that traffickers use is the threat of deportation to intimidate their

targets. Taking lawyers away from children strengthens traffickers' hands. Many times our legal services have prevented children from falling through the cracks–sometimes by identifying abuse in custody and supporting children in coming forward to authorities about such abuse and sometimes by helping children who find themselves in an unsafe situation obtain safe housing or meet other needs to escape violence.

18. In addition to the work we do for children in and released from ORR custody in Michigan, we also work to connect children with counsel when they are moved to an ORR placement outside of Michigan or are released out of state. We work with the child and use the information we obtained during intake consultation to prepare a referral and have staff dedicated to following up to do our best to connect children to free legal counsel in their new location.

19. MIRC is well respected among the local state courts, immigration courts, ICE, USCIS, and local ORR subcontractor staff. MIRC developed norms with each ORR-subcontracted facility by having quarterly meetings to work through logistics and continue to uphold best practices on behalf of the children in custody. Staff from these agencies regularly express their gratitude for MIRC staff and how essential they are for the children. MIRC and the immigration court staff developed a weekly call framework where MIRC efficiently funnels the matters needing the court's attention through one central point of contact, rather than having more than fifty representatives reaching out individually to get questions answered or provide information. The court regularly approaches MIRC for support for pro se respondents and in support of MIRC remaining on the court *pro bono* list (MIRC is the only organization on that list in Michigan). MIRC regularly engages with ICE and USCIS both in representational settings and in stakeholder engagement contexts respectfully and collaboratively on behalf of the clients when possible. One of Detroit's Immigration Judges recently took some time after a hearing to thank our staff member for working for MIRC and for all the great and important work MIRC does.

20. Additionally, MIRC received the Champion of Change award in 2024 from the Governor's Task Force on Child Abuse and Neglect and Children's Advocacy Centers of Michigan, as part of the nomination for the award, Veronica Thronson, leader of the Michigan State University College of Law's Immigration Clinic, was quoted as praising MIRC as follows:

> The nominee has been a champion for children since its inception, through direct representation of children and their families in seeking protection in immigration and state contexts... These children have been abused, neglected, or abandoned in the State of Michigan. MIRC's team has grown from two attorneys to its current size of [, with] staff members focused specifically on protecting the rights of children in federal custody in Michigan, achieving permanent protection for

6

children through state and federal courts, and advancing the law to create the greatest access to these protections for all children in Michigan. MIRC has stood in the gap during family separation under the Zero Tolerance policy and ensured that all children in Michigan were reunited with their families according to their wishes. Further, MIRC has held the federal government and its subcontractors accountable when children's rights were violated in federal care in Michigan, in licensed and unlicensed facilities. The nominee has led efforts to try to ensure responses to abuse in custody are trauma-informed and provide the protection needed for children in care.  Illustrative of the difference that the nominee's services have made in the lives of children, in 2023 alone, the nominee served over one thousand children through Know Your Rights presentations, legal screenings, and direct representation in immigration, state court, and before immigration agencies. Also in 2023, the nominee secured state court protections in multiple counties and began a path toward citizenship for hundreds of immigrant children. More stable immigration status allows children to thrive in all other aspects of their lives.

The nominee recently added an innovative team to address social, emotional, and physical needs, which has already assisted over 150 children. The nominee has increased knowledge of protections for immigrant children in state courts throughout Michigan, creating a safety net for children across the state. These children who are released to sponsors or relatives frequently went without access to an attorney before the nominee's programming emerged to serve them. MIRC has been the leader in appellate cases that have enshrined protections available under the law to immigrant children who have been abused, neglected, or abandoned. In particular, the nominee has won two critical appeals that serve as seminal case law impacting immigrant children in Michigan.

The nominee leads several collaborative efforts with stakeholders to enhance outcomes for children, through joint advocacy, training, and resource sharing. As new populations of immigrant children enter the state, the nominee has taken a leading role in assisting service providers to be ready to welcome children in a culturally informed and humble manner. Where necessary, the nominee has advocated on behalf of children whose religious and cultural needs were not fully met by other service providers and to ensure that children who are victims of sexual assault, human trafficking, and other crimes are met with a holistic and culturally sensitive response. For example, the nominee has worked with law enforcement to inform them of the impact of trauma on specific populations, such as youth arriving from Afghanistan who had been evacuated during the Taliban's takeover and who had been separated from their families.

The nominee has also championed change through legislative advocacy at the

> state level to enhance protections for children who are harmed through child labor, to expand access to Medicaid to children in need, and to ensure language access for state services. In particular, the nominee has partnered with state legislators to increase protections for children exposed to exploitative labor practices, partnering with various stakeholders and leaders to testify on the needs of children to local, state, and national media.
>
> Overall, MIRC has changed the landscape of representation for immigrant children for the better in ways that are measurable in the law and the experience of children and their families in the community. Over the years, thousands of children have safety, stability, and the opportunity to thrive in no small part due to the team focused on the rights and representation of immigrant children in Michigan that the nominee has been able to cultivate and grow and seeks to keep doing so to continue to serve children.

21. Without warning, on February 18, 2025, HHS (through the U.S. Department of the Interior) issued a national contract stop work order for Legal Services for Unaccompanied Children, effective immediately, which extended to all five Contract Line Numbers (CLINs): 1. KYR presentations and legal services for pro se children in ORR facilities; 2. Legal representation for unaccompanied children not in ORR custody; 3. Legal representation for unaccompanied children in ORR custody; 4. Spanish language tutoring for organizational staff who work with children; and 5. Immigrant Justice Corps fellows who represent children not covered under other CLINs. Without further elaboration on duration or reasoning, the stop work order states that it "shall remain in place until you are notified otherwise" and "is being implemented due to causes outside of your control and should not be misconstrued as an indication for poor performance."

22. Some MIRC staff were on a virtual meeting led by the Acacia Center for Justice on other matters when the Acacia Center for Justice received notice of the stop work order around 1:00 PM EST. Information was shared on that call and an email was sent shortly thereafter to the entire network. We then immediately had to sort out what this meant in practice and how to ensure every staff member received the information and began to act accordingly. We had an urgent leadership meeting to understand the stop work order and attended an Acacia call hosted on the topic of the stop work order and then held a meeting for our team to explain what we knew at that point, which was very little.

23. During the stop work order, MIRC used a small fund reserve to ensure our clients had the best possible service for as long as possible. The stop-work order did not cut off legal representation for children who are already represented. Because MIRC's lawyers had already filed paperwork with the court and USCIS as the attorney of record for our cases, they are obligated to continue representation or face the possibility of sanctions or bar complaints — unless they ask a judge to be removed from the case, which takes time and

has very specific ethics rules that guide how to make this request and when and if a judge will grant it. These reserves can only carry our staff for a few weeks. Roughly 80% of MIRC's budget is funded through the unaccompanied children's HHS funding. If we lose this funding in the long term, we would expect to let go of all of 113 employees, in other words, we do not expect meaningful replacement funding that would allow us to carry on the work under this contract. We would also need to seek to withdraw from all of the 1,205 open cases under the contract and would need to use reserves to have staff focus on that work. The reserves are a critical part of MIRC's long-term sustainability, so the Stop Work Order and any other loss of funding under this contract affects MIRC's other work in the community for other vulnerable populations.

24. During the stop work order, we paused offering KYRs and intakes for children in ORR custody and focused on using our limited resources to maintain our ethical obligations to current child clients.

25. Time spent on stop-work order logistics cost us valuable time in needing to communicate, understand, and change our case management practices to account for the change under the stop-work order. More than that, it has caused a significant feeling of instability, stress, and low morale. MIRC's highly trained, experienced, and specialized staff are beginning to put in their resignation notices to go to jobs that have more funding security. MIRC has built an outstanding reputation as an employer and has been able to attract unusually high quantities of staff to our work, compared to similar local non-profits, because of our commitment to the community, our stable funding, and our efforts to train and support our staff in their work. This reputation is being significantly undermined by the stop work order and the subsequent lack of security around the ongoing funding of the contract and it will make it harder to attract new staff in the future to replace those who have left during this time.

26. When the stop work order was rescinded, MIRC resumed providing all services under the UCP contract. On March 21, 2025, MIRC received notice of ORR's termination of CLINs 2, 3, and 4 of the Acacia UCP contract, effective at the close of business that day.

27. MIRC currently represents over one thousand children under the Acacia UCP contract CLINs 2 and 3 work. These cases involve representation before Michigan local state courts, USCIS, and the Detroit Immigration Court. Without CLIN 2, 3, and 4 funding, MIRC will begin an immediate process to withdraw from these cases. Even though we have made significant efforts to fundraise with individual, foundation, and local government funding, there is no meaningful replacement for the funding offered for representational services of unaccompanied children under the UCP contract. Our alternate fundraising may allow us to keep as many as 100-200 cases open, which would leave over 800 children whose representation we will need to withdraw from immediately. While we will begin our efforts to withdraw from the cases for which we

9

did not obtain alternate funding, the process of withdrawal takes some time with ensuring the proper wrap-up tasks have been completed so the client is not unduly prejudiced by the withdrawal and counsel needs to formally seek to withdraw where we have entered appearances before tribunals, which takes time and is subject to the decision of the judge on each case.

28. While we have attempted to do the most we could for each client before we were in the position, we still have many clients for whom no relief has been filed because we have only begun working on their cases recently or there were external hurdles to accomplishing our initial goals in the case. Almost every one of the children MIRC represents qualifies for protection under the immigration law, however, it is a lengthy, arduous, and legally complex process that allows us to usher the client to the point of receiving the immigration status they qualify for. Many of the children whom we will no longer be able to represent due to the termination of CLINs 2, 3, and 4 of the UCP contract will be unable to secure new counsel and be unable to navigate the immigration processes without counsel, and so will be left without protections they qualified for and will be deported to situations where they would face abuse, neglect, persecution, separation from critical caregivers and services. In all of this, expecting these children to face the immigration system without counsel will have deprived these children of their right to due process under the law.

29. CLINs 2, 3, and 4, comprise about 75% of MIRC's budget. Of the 113 full-time employee's worth of funding in our UCP budget, about 98 of those are in CLINs 2, 3, and 4. If funding from CLINs 2, 3, and 4 is not restored within a few days, MIRC will need to proceed to provide layoff notices to the majority of staff funded under those CLINs. We are able to use some of the funds we raised to allow us to provide staff a short notice period to withdraw from cases and honor their rights as employees. Even this little bit of essential transition period after a layoff notice, will cost MIRC at least 1.2 million dollars of funds drawn from other sources that take away from MIRC's ability to serve other vulnerable populations.

30. However, if the restoration of CLIN 2, 3, and 4 funding is delayed any more than a week and we have already given staff their layoff notices, we expect most staff will still seek to depart, even if funding is restored, because of the uncertainty and individualized detriment to their morale to know they specifically were not retained. Even as we have been nearing the end of the contract period, more and more staff have been departing, especially our more seasoned staff, because the earlier stop work order gave them concern for the future of the funding.

31. If the restoration of CLIN 2, 3, and 4 funding is delayed any more than a month, and we would be in a position to have to rehire for the work, it would be unlikely that most of the laid-off staff would be interested in returning. Before this season of funding uncertainty,

10

MIRC has been close to exhausting the hiring pool of those interested in and able to do work under the UCP contract, especially where attorneys are concerned, and so I expect our success in bringing on new staff would be limited, to begin with, and it would cost us the months of labor in recruiting, hiring, onboarding, and building their familiarity with the work that it takes to return to the staffing norm we have now.

32. Beyond the cost to the staff themselves, the cost to the clients of closing cases, laying off staff, then having to bring on new staff, and trying to reach out to clients to try to offer them representation again is devastating, specifically shattering those relationships of trust which have taken so much to build. A stable and trusting relationship is critical for children. They will have no reason to trust our ability to continue to keep their cases and they will have to build relationships with new people, assuming they are available, which is already hard for anyone having to share the most traumatic details of their life story in order to pursue immigration relief, but it is especially hard for a child in that situation.

33. The uninterrupted and ongoing funding of this work with unaccompanied children is critical to the protection of children from harm in custody and against the significant risk posed by going through removal proceedings without counsel and the subsequent harm that would result from removal. Not only that, but the stability of this funding is critical to MIRC's ongoing work as an anchor immigrant rights organization.

I declare under penalty of perjury under the laws of the District of Columbia that the foregoing is true and correct.

Executed on the 22 of March 2025, in Lansing, Michigan.

*[signature]*

Ana Raquel Deveraux (P79145)
Senior Managing Attorney
Michigan Immigrant Rights Center