IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, <br><br> Defendants. | Case No. 3:25-cv-2847 <br><br> **DECLARATION OF VANESSA GUTIERREZ (NWIRP) IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

# DECLARATION OF VANESSA GUTIERREZ
# DEPUTY DIRECTOR FOR NORTHWEST IMMIGRANT RIGHTS PROJECT

*I, Vanessa Gutierrez, make the following statements on behalf of Northwest Immigrant Rights Project. I certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. § 1746.*

1. My name is Vanessa Gutierrez, and I am the Deputy Director at Northwest Immigrant Rights Project ("NWIRP") who oversees NWIRP's Unaccompanied Children Program ("UCP"). NWIRP provides legal services to unaccompanied immigrant children and youth who have been released from Office of Refugee Resettlement ("ORR") custody to sponsors throughout Washington State.

2. NWIRP is a not-for-profit organization in Washington State with a mission to promote justice by defending and advancing the rights of immigrants through direct legal services, systemic advocacy, and community education. Through its staff attorneys, legal advocates, and a network of pro bono attorneys, NWIRP has provided free legal services, representation, and education to immigrants with low or no income, including detained individuals, for over 40 years. NWIRP focuses on legal services in six primary areas: defense in deportation proceedings; asylum; immigration benefits for survivors of domestic violence and other crimes; citizenship and naturalization; family visas; and immigration benefits for immigrant children and youth. NWIRP operates out of four offices across Washington State– Granger, Seattle, Tacoma, and Wenatchee–and in 2024, served over 20,000 people, and provided direct legal services for over 12,500 immigrants of all ages statewide. Immigrants served by NWIRP in 2024 came from 145 countries and collectively spoke over 60 languages. NWIRP's UCP Program supports NWIRP's overall mission by representing:(1) Unaccompanied children and youth who have been released from ORR custody to sponsors in Washington State in immigration proceedings and (2) All children and youth entering the Unaccompanied Refugee Minor ("URM") programs in Kennewick, WA and Spokane, WA. As part of our UCP contract, NWIRP has also committed to providing educational services in the form of legal education "know your rights" ("KYR") presentations and conducting individual consultations (intakes) with all unrepresented children and youth released from emergency ORR facilities to sponsors in our geozones. We also host Immigrant Justice Corps (IJC) fellows to represent unaccompanied children and youth in removal proceedings, provide Spanish-language tutoring for staff representing unaccompanied children and youth, and have a UCP-specific social services advocate who helps connect NWIRP clients with needed social services.

3. NWIRP has provided legal services through UCP since 2022. We expanded to provide In-Person Post-Release Legal Services to children and youth released from emergency ORR facilities in 2023, and we expanded again to provide representation to youth entering the

1

    URM program in February 2025. NWIRP has over 500 open UCP cases in which we are providing direct legal representation to unaccompanied children and youth released from ORR custody.

4. With funding from the U.S. Department of Health and Human Services (HHS), NWIRP currently has 20.9 full-time equivalent (FTE) staff members dedicated to providing direct legal services to unaccompanied immigrant children and youth. Specifically, we have a directing attorney, 3.65 FTE supervising attorneys, 8.7 FTE staff attorneys, 7 FTE legal advocates, and one social services advocate. In addition to these staff, NWIRP has three FTE Immigrant Justice Corps (IJC) fellow attorneys who provide direct representation for unaccompanied children and youth in removal proceedings.

5. NWIRP UCP staff represent unaccompanied children and youth in removal proceedings in immigration court, BIA appeals, affirmative relief before USCIS (including asylum, Special Immigrant Juvenile (SIJ) classification, Adjustment of Status, T visas and U visas), and state court cases (including dependencies, minor guardianships, parenting plans, and vulnerable youth guardianships). Staff must regularly travel to the Seattle Immigration Court, and occasionally the Portland Immigration Court, as well as state courts throughout Washington for court filings and hearings.

6. NWIRP's UCP Program provides critical legal services to unaccompanied children and youth, who are not guaranteed appointment of counsel in removal proceedings. Most unaccompanied children and youth in our state lack the financial resources to be able to hire private immigration attorneys. There are not many attorneys in Washington state who provide representation in removal proceedings for unaccompanied children and youth or in state court for SIJ-eligible children and youth, especially on a low bono or pro bono basis. Due to their young age (we have represented UCP clients as young as 1 year old), the trauma they may have experienced, language barriers, and the complexity of immigration law, it is not realistic to expect unaccompanied children and youth to attempt to apply for immigration relief before USCIS, pursue state court cases, or advocate for themselves in immigration court without an attorney.

7. NWIRP successfully serves children and youth in rural and urban areas of Washington State. When we receive a referral for a UCP-eligible child, we direct the referral to the UCP team at the NWIRP office that covers the county where the child lives and schedule an individual consultation. If the child would like NWIRP to represent them in their immigration case, we accept their case on a universal representation basis, without regard for the type of relief they may qualify for or the strength of their case. We then assign their case to an attorney, or a legal advocate working in collaboration with an attorney. When possible, for children and youth who are eligible for SIJ classification, we try to place their state court case with a pro bono attorney. We regularly engage in pro bono recruitment and mentorship, and we periodically offer training to pro bono attorneys. When NWIRP is

unable to find a pro bono attorney, we take on the state court case in-house. We provide in-house representation on the immigration case before the immigration court and USCIS.

8. For most of NWIRP's UCP clients, we represent them in their first appearance in immigration court. Many of our UCP clients have never been to any court ever in their life before their first immigration court hearing. Before their hearing, their assigned NWIRP attorney meets with them to explain what to expect during the hearing, including who will be present, what the layout of the courtroom will be, what the immigration judge may ask during the hearing, what their NWIRP advocate may say on their behalf, and what some possible outcomes of their hearing may be. We review the factual allegations and charges of removability in their Notice to Appear with them, and we review the forms of immigration relief that we have already discussed with them, making sure they fully understand and that we answer any questions they have. This preparation helps put the child or youth more at ease, helps ensure their presence at their scheduled hearing, and helps the hearing run more efficiently and smoothly because the child better understands what is happening.

9. Without warning, on February 18, 2025, HHS (through the U.S. Department of the Interior) issued a national contract stop work order for Legal Services for Unaccompanied Children, effective immediately, which extended to all four Contract Line Numbers (CLINs). Without further elaboration on duration or reasoning, the stop work order stated that it "shall remain in place until you are notified otherwise" and "is being implemented due to causes outside of your control and should not be misconstrued as an indication for poor performance." HHS later rescinded the stop work order without explanation on February 21, 2025. Even this short lapse in funding negatively impacted NWIRP's UCP work. The stop work order created confusion among staff over how to categorize and memorialize the work they continued to do on behalf of our clients, adding extra timekeeping requirements that took away valuable time that could have been spent advocating for clients. During the stop work order, we continued the direct representation and legal services without interruption, as ethically required by the Rules of Professional Conduct in Washington State, but we did not know if we would ever be reimbursed for our work while the stop work order was in effect. Even after NWIRP submitted a Request for Equitable Adjustment for the work completed while the stop work order was in effect, it was communicated to NWIRP that our submissions are "not" official invoices and that our submission "does not" guarantee reimbursement and we were told that it "will ultimately be decided by the government."

10. On March 21, 2025, also without warning, we learned that HHS (through the U.S. Department of the Interior) partially terminated the current contract with Acacia Center for Justice (to which our organization is a subcontractor) that funds legal services for unaccompanied children. This termination was effective the same day, March 21, 2025. HHS terminated the contract with respect to 3 of the 4 Contract Line Numbers (CLINs):

3

      CLIN2, Legal representation for unaccompanied children as well as other non-representation services such as referrals and data tracking; CLIN 3, which funds Immigrant Justice Corps fellows who represent unaccompanied children not covered under CLIN 2, and CLIN 4, Spanish language tutoring for organizational staff who work with children. For the time being, HHS has left in place only CLIN1, which funds KYR presentations and confidential legal consultations for pro se children in ORR facilities. Per the partial termination, HHS ordered Acacia and all subcontractors to stop work immediately on CLINs 2, 3, and 4. For NWIRP, this results in a full termination of our entire UCP contract. HHS provided no justification for the partial termination other than "the Government's convenience."

11. NWIRP learned about this contract termination through an email communication from Acacia Center for Justice, sent at 8:15 a.m. on March 21, 2025 to NWIRP's Executive Director, Malou Chávez. The title of the email was "Urgent: Notice of Partial Termination for the Government's Convenience." Acacia hosted a meeting for further discussion of the contract termination.

12. While NWIRP is still considering how to respond to the contract termination, we are committed to continuing to represent existing clients, at least in the short term. Our organization's ability to continue representing clients long-term depends on many factors, including whether any case continuity funding might be available to support the winding down of the contract through HHS.

13. UCP funding represents approximately 10% of NWIRP's overall annual budget. Loss of funding impacts 28 staff (20.9 FTEs) at NWIRP. Over the short-term, NWIRP aims to maintain all positions to ensure continuity of representation. The organization will do so by borrowing from its reserves and by seeking support from donors and is currently in the process of determining how long this solution will sustain the services previously funded by the UCP contract. Sustaining services will cost NWIRP at least $200,000 per month. Since NWIRP provides extensive legal services beyond its UCP contract, it must consider all of its mission-focused work when determining use of limited reserve funding or donor resources. Any funds that NWIRP directs to sustain services under this contract take away from other critical services that NWIRP is committed to providing in the community, especially during this period of exponentially-increased demand for immigration legal services. We anticipate that NWIRP will be unable to sustain services over the long-term and will need to reduce its staff accordingly.

14. The UCP contract termination detrimentally impacts NWIRP's mission to promote justice by defending and advancing the rights of immigrants through direct legal services, systemic advocacy, and community education. Research has shown that unrepresented children and youth are more likely to be issued an order of removal, even if they have a strong immigration claim, demonstrating the high need for legal representation in these cases.

      While NWIRP aims to continue representation in as many cases as possible, we will have extremely limited capacity to assist children and youth who need representation in the future, negatively impacting their chances of gaining immigration relief and likely changing the trajectory of their lives.

15. Having to turn away youth from services is difficult for our committed legal staff, many of whom are immigrants themselves and share an understanding of the experiences the children and youth are facing. Contract termination will undoubtedly negatively impact the morale of staff who already work under challenging conditions in the immigration system.

I declare under penalty of perjury under the laws of the District of Columbia that the foregoing is true and correct.

Executed on the 21st of March 2025, in Wenatchee, Washington.

*Vanessa D. Gutierrez*

**Vanessa Gutierrez**
**Deputy Director**
**Northwest Immigrant Rights Project**