IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, <br><br> Defendants. | Case No. 3:25-cv-2847 <br><br> **DECLARATION OF ASHLEY T. HARRINGTON (RMIAN) IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

**DECLARATION OF ASHLEY T. HARRINGTON**
**CHILDREN'S PROGRAM MANAGING ATTORNEY FOR THE**
**ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK**

*I, Ashley T. Harrington make the following statements on behalf of the Rocky Mountain Immigrant Advocacy Network. I certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. § 1746.*

1. My name is Ashley T. Harrington, and I am the Children's Program Managing Attorney at the Rocky Mountain Immigrant Advocacy Network ("RMIAN"). RMIAN is a Colorado-based nonprofit organization that provides free immigration legal and social services to individuals in civil immigration detention, as well as to immigrant children and families. Through its staff attorneys, paralegals, social workers, and a network of hundreds of *pro bono* attorneys, RMIAN provides legal education and free legal representation to low-income immigrants who otherwise would not be able to afford an attorney.

2. RMIAN's primary programs are 1) the Detention Program which provides free legal services to individuals in civil detention; 2) the Children's Program which provides free legal services to children and families in immigration proceedings; and 3) the Social Service project which provides comprehensive supportive services to particularly vulnerable individuals, children and families.

3. RMIAN is the primary organization dedicated to providing legal services to indigent unaccompanied immigrant children in Colorado. Specifically, RMIAN provides free legal representation to unaccompanied children who have been released from the Office of Refugee Resettlement ("ORR") to sponsors, to unaccompanied children who have been placed in the Unaccompanied Refugee Minors program, and to unaccompanied children in ORR Long-Term Foster Care. RMIAN previously also provided free legal services to children in ORR short-term shelters in Colorado.

4. RMIAN has been providing legal services for unaccompanied immigrant children in Colorado through U.S. Department of Health and Human Services (HHS) funding since the first ORR short-term shelter opened in Colorado in 2019. RMIAN provided know-your-rights presentations, individual legal screenings, legal representation and referrals to hundreds of youth in ORR custody in Colorado from December 2019 through May 2023 when the shelters closed.

5. RMIAN has continued providing representation to unaccompanied children who were released from ORR custody—both from the shelters in Colorado as well as shelters all over the country. With HHS funding, RMIAN is currently representing 160 unaccompanied children, including unaccompanied children released to individual sponsors and children released into the Unaccompanied Refugee Minor Program. In addition, RMIAN recently

1

expanded its services to provide representation to children in the ORR Long-Term Foster Care program placed in Colorado.

6. With HHS funding, RMIAN currently employs approximately six full-time-equivalent staff dedicated to providing legal services to unaccompanied immigrant children. This includes a managing attorney, staff attorneys, a law clerk, coordinators, a paralegal, and an administrative assistant.

7. RMIAN represents unaccompanied children in removal proceedings in immigration court and in humanitarian relief applications before U.S. Citizenship and Immigration Services, including asylum, Special Immigrant Juvenile Status, U and T nonimmigrant status, adjustment of status to lawful permanent residency, and applications for employment authorization. In addition, RMIAN staff attorneys and pro bono partners represent children in state court proceedings, including guardianship, allocation of parental responsibilities and child welfare proceedings.

8. RMIAN has initiated representation with unaccompanied children as young as two years up to those on the eve of their eighteenth birthday. None of these children are fluent in English or have received higher education. These children's cases require navigating a complicated maze of laws and legal processes necessary to secure lawful status and defend from deportation. Most require analysis of both state and federal laws and require simultaneous applications and motions before the immigration court, a State court and U.S. Citizenship and Immigration Services. Each of these forums have specific, detailed procedures that must be followed to ensure cases don't result in rejection or denial. Children's legal cases often take several years to ultimately result in lawful permanent residency, requiring constant monitoring and regular required filings during the lengthy process. It would be virtually impossible for a child to successfully navigate all the requirements to avoid deportation and successfully obtain lawful status without an attorney.

9. The unaccompanied children RMIAN represents have often been through complex and significant trauma. Many of RMIAN's child clients have been subjected to sex and labor trafficking, child abuse, neglect and abandonment, sexual abuse and other violence. Many of the applications for legal protection require detailed declarations and interviews regarding the trauma and abuse these children have endured—something that would be incredibly difficult to endure without a trauma-informed attorney's assistance.

10. RMIAN's services are not only beneficial to the children in removal proceedings, but also to immigration judges, court staff and government attorneys. RMIAN has built strong relationships with Denver's immigration judges and staff as well as attorneys for the Immigration and Customs Enforcement Office of the Principal Legal Advisor (OPLA). RMIAN routinely meets with immigration judges and staff along with OPLA to discuss how to improve services and efficiency. RMIAN has worked jointly with OPLA to request and obtain dismissal of removal proceedings for dozens of unaccompanied children

pursuing relief applications with U.S. Citizenship and Immigration Services, thereby preserving the court and OPLA's time and resources for cases ripe for resolution by the court. In addition, when a RMIAN attorney enters their appearance with the immigration court, typically the next hearing is cancelled and written deadlines are provided, thereby saving the court's limited time for other cases. RMIAN routinely receives requests from immigration court staff and judges to assist unaccompanied children and families with anything from a change of address form to a screening for potential human trafficking. RMIAN ensures that children are fully informed of their rights and options and, wherever possible, that they have expert legal representation to navigate the immigration legal system more efficiently and effectively. Without RMIAN, removal proceedings would take far longer and the dockets would be clogged with cases that are not even under the court's jurisdiction while a child is pursuing legal status with U.S. Citizenship and Immigration Services. Immigration judges and court staff regularly express gratitude for the ways in which RMIAN's services assist the court.

11. Without warning, on February 18, 2025, HHS (through the U.S. Department of the Interior) issued a national contract stop work order for Legal Services for Unaccompanied Children, effective immediately, which extended to all five Contract Line Numbers (CLINs). Without further elaboration on duration or reasoning, the stop work order stated that it "shall remain in place until you are notified otherwise" and "is being implemented due to causes outside of your control and should not be misconstrued as an indication for poor performance." HHS then later rescinded the stop work order without explanation on February 21, 2025.

12. On March 21, 2025, also without warning, we learned that HHS (through the U.S. Department of the Interior) partially terminated the current contract with Acacia Center for Justice (to which our organization is a subcontractor) that funds legal services for unaccompanied children. This termination was effective the same day, March 21, 2025. HHS terminated the contract with respect to 3 of the 4 Contract Line Numbers (CLINs): CLIN 2, Legal representation for unaccompanied children, as well as other non-representation services, such as referrals and data tracking; CLIN 3, which funds Immigrant Justice Corps fellows and Randstad placements who represent unaccompanied children not covered under CLIN 2; and CLIN 4, Spanish language tutoring for organizational staff who work with children. For the time being, HHS has left in place only CLIN1, which funds KYR presentations and confidential legal consultations for pro se children in ORR facilities. Per the partial termination, HHS ordered Acacia and all subcontractors to stop work immediately on CLINs 2, 3, and 4. HHS provided no justification for the partial termination other than "the Government's convenience."

13. RMIAN received news of both the stop work order and the notice of contract termination from the Acacia Center for Justice via email. RMIAN staff had to immediately pivot from

providing representation to children to informing all staff of the stop work order and contract termination and planning for its impact on RMIAN's services and funding.

14. Funding from HHS for unaccompanied children's legal services comprises approximately 15% of RMIAN's total annual budget and 26% of its Children's Program Budget—approximately $772,000 this year. Because there are currently no ORR shelters in Colorado, RMIAN does not receive any funding for CLIN1 services to children in ORR custody. Thus, the partial contract termination serves as a complete termination of all funding for RMIAN's work under the contract.

15. HHS funding currently allows RMIAN to employ approximately six full-time-equivalent staff positions, including attorneys, a law clerk, coordinators, a paralegal and an administrative assistant. It remains uncertain whether staff and client cases could be shifted to other funding sources. RMIAN would need to pull from its reserves and limited unrestricted funds to continue paying staff and providing representation to unaccompanied children. This would only be possible on a temporary basis until layoffs would need to be considered.

16. When news of the stop work order broke, RMIAN received panicked calls from children, their caregivers, foster care providers, and case managers worried that the stop work order meant that RMIAN would no longer provide representation. Similar panic ensued following the news of the contract termination. Instead of focusing on preparing children's legal applications, RMIAN staff had to respond to countless calls and inquiries about how the stop work order and contract termination would impact its child clients. While RMIAN has been able to provide temporary reassurance that children will continue to be represented using RMIAN's reserves and limited unrestricted funding, its staff will be unable to provide such assurances long-term.

17. RMIAN firmly believes that no child should be forced to navigate immigration legal proceedings alone, and that every child deserves to have an attorney to inform them of their rights and options and to represent them in any defenses they may qualify for under the law. In reliance on the government's consistent funding, RMIAN has been steadily building its Children's Program to be able to increase how many children it is able to serve each year. RMIAN hopes to continue expanding programming and staffing so that more unaccompanied children in Colorado have access to expert legal representation. However, without HHS funding, not only will RMIAN not be able to provide representation to any additional children, but the ability to provide continued representation to current child clients is also under threat.

18. RMIAN has relied upon the government's consistent funding of legal services for unaccompanied children in building its Children's Program, and in crafting the representational agreements RMIAN has executed with child clients. In reliance on the government's consistent funding consistent with congressional appropriations, the

TVPRA, the Foundational Rule, and in accordance with RMIAN's subcontract with Acacia, RMIAN's representation agreements with most unaccompanied children include a commitment to continue representation through obtaining asylum, U/T nonimmigrant status, or permanent residency, if they are eligible for this relief under U.S. law. For most of RMIAN's clients, this means that it has promised to continue representation for several years due to extreme delays and backlogs in processing and adjudications of these relief applications.

19. RMIAN has legally and ethically binding obligations to its clients to continue providing representation despite this halt in funding. Ethical rules require attorneys to continue representation to the conclusion of the matters undertaken on behalf of clients. Withdrawal may only be permitted under ethical rules if withdrawal would not be materially adverse to the client's case. Withdrawal from children's cases would be materially adverse because they cannot competently represent themselves in matters before the immigration court, the state court, or before USCIS, they could not afford private counsel to represent them, and withdrawal would more than likely lead to their cases being denied—resulting in their removal.

20. RMIAN is committed to continuing to represent its child clients despite this termination of funding. However, it will have to pull from limited reserves and unrestricted funding to do so, and may have to consider staff layoffs. Ultimately, if significant layoffs become necessary, despite the significant detrimental impact on clients, RMIAN may need to consider withdrawing from clients' cases if it does not have sufficient staff to continue representation.

21. RMIAN will have to dedicate its limited staff time to fundraising to try to raise the funds necessary to continue providing representation, with no guarantee of success. This diverts limited time and resources away from providing representation. It also diverts limited funding for representation of other clients as well as funding that allows for staff leave and benefits, staff wellness initiatives, and necessary organizational infrastructure. The stop work order caused great distress among staff, but was short-lived. The termination of funding has significantly impacted staff morale and caused staff stress and concern about whether they will continue to have a job and be able to provide for themselves and their families. Even if layoffs don't become immediately necessary, this worry may cause staff to leave RMIAN for employment that is more securely funded. This would leave RMIAN short-staffed and place more of the burden to continue representation on fewer staff, and would increase the likelihood RMIAN would have to consider withdrawal from clients' cases.

22. Any interruption, reduction or termination in HHS funding significantly harms RMIAN and its mission to provide legal representation to unaccompanied children.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 22nd day of March 2025, in Westminster, Colorado.

_____

**Ashley T. Harrington, Esq.**