IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,<br><br>Defendants. | Case No. 3:25-cv-2847<br><br>**DECLARATION OF ELIZABETH SANCHEZ KENNEDY (GHIRP) IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

**DECLARATION OF ELIZABETH SANCHEZ KENNEDY**
**EXECUTIVE DIRECTOR FOR GALVESTON-HOUSTON IMMIGRANT**
**REPRESENTATION PROJECT (GHIRP)**

*I, Elizabeth Sanchez Kennedy, make the following statements on behalf of the Galveston-Houston Immigrant Representation Project (GHIRP). I certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. § 1746.*

1. My name is Elizabeth Sanchez Kennedy, and I am the Executive Director at the Galveston-Houston Immigrant Representation Project. GHIRP is a legal services organization that was launched in October 2020 with a mission to build a resilient, diverse community by providing comprehensive representation and holistic legal services to immigrants in need. GHIRP's legal services range from outreach and education to complex litigation in the Galveston-Houston area. Our legal team provides holistic and comprehensive representation to immigrants in the community, including unaccompanied minors, adults, and women, children, and families.

2. Through legal representation, GHIRP ensures that immigrants in the community have equal access to due process in our complex immigration system. Our organization provides legal services in two locations, Galveston and Houston. The majority of our services are conducted out of the Houston office, through two programs: 1) the Community Immigration Program; and 2) the Immigrant Children & Youth Program. Our Community Immigration Program provides legal services and direct representation to survivors of crimes and human trafficking, adults detained in the four Houston-area immigrant detention facilities, and immigrants in the community who need representation.

3. GHIRP's Immigrant Children & Youth program is dedicated to representing indigent unaccompanied immigrant children who are not in detention as well as those held in Office of Refugee Resettlement (ORR) custody throughout the Galveston-Houston area. This program was directly impacted by the termination of funds dedicated to unaccompanied immigrant children. Core to GHIRP's mission and legal services, is providing representation to unaccompanied immigrant children and youth. GHIRP was founded with funding for unaccompanied immigrant children and our first year of services focused almost exclusively on legal services for detained and released unaccompanied immigrant children. The contract termination, which cuts funding dedicated to one of our main legal services, perceptibly impairs our core business activities.

4. In order to carry out our mission, GHIRP has several main work components: (1) providing educational and pro se services in the form of legal education "know your rights" (KYR) presentations, conducting individual consultations (intakes), and conducting pro se services with unrepresented children in ORR custody in the Greater Houston Area; (2) representing unaccompanied minors who are not in ORR custody in immigration

1

proceedings; (3) representing children in ORR custody in immigration proceedings; (4) referring children for pro bono legal services outside of the Galveston-Houston area; and (5) providing social services to unaccompanied children. We further host an Immigrant Justice Corps (IJC) fellow to represent unaccompanied children in removal proceedings and provide Spanish-language tutoring for staff representing unaccompanied children.

5. GHIRP has been providing legal services to unaccompanied immigrant children in Galveston and Houston since 2020, when the organization was founded. Since the organization opened, our legal services dedicated to unaccompanied immigrant children have expanded each year. In 2020, we provided direct representation to approximately 35 unaccompanied immigrant children. In 2021, GHIRP initiated services in a newly opened ORR facility in Houston (Children's First Residential Care TX Gasmer), providing KYR presentations, intakes, direct representation, social services, and referrals for children who were released to other jurisdictions. In 2023, GHIRP began providing the same legal services to unaccompanied children in a second ORR shelter named LSSS Upbring Krause Children's Center. GHIRP's direct representation services dedicated to children who are not in custody have also expanded, from 35 cases in our first year of existence (2020) to now serving approximately 300 clients per year (2025). Currently, GHIRP serves a combined annual number of nearly 1,500 children per year, including approximately 1,500 children detained in ORR custody, approximately 300 children receiving direct representation services per year, 120-150 children receiving social services per year, and approximately 35-50 children receiving *pro se* assistance per year.

6. Wholly with U.S. Department of Health and Human Services (HHS) funding, GHIRP has hired 19 staff members dedicated to providing legal services to unaccompanied immigrant children. Specifically, our team comprises seven (7) attorneys, one (1) Department of Justice Accredited Representative, nine (9) legal assistants, and two (2) social services coordinators. As executive director, I oversee the program, support the managing attorney, and provide mentorship to the legal team. All staff on GHIRP's Immigrant Children & Youth team are full time employees, and one of the attorneys is an Immigrant Justice Corps fellow. Through this contract, we serve recently arriving children in the ORR facilities, as well as released children in the community.

7. GHIRP's Immigrant Children & Youth team serves detained children who are between the ages of six (6) and seventeen (17) years old, and non-detained children of all ages. We provide legal services to children within seven to ten (7-10) business days of their arrival to the ORR facilities, if not sooner.

8. GHIRP staff provide detained services in the facilities two to four (2-4) times per week, for approximately two to four (2-4) hours or more each visit. Staff providing direct representation and KYR presentations to children in ORR facilities regularly travel to each facility in person to conduct client interviews, prepare clients for hearings, gather evidence,

as well as provide legal education, individual consultations, and pro se legal services. Our team also provides "friend of court" legal services so that children appearing in court without an attorney do not have to appear alone. The courts function more efficiently when legal representatives are involved as "friend of court" as they explain technical requirements at preliminary hearings and move the cases along while protecting their rights. GHIRP's legal team also advocates for children in ORR custody seeking release or transfers, reporting disclosed physical or sexual abuse while in custody, and ensuring that their basic needs are met by the facility and staff (such as language access and access to education and recreation). If and when a child is released to a location outside of our geographic area, we refer children for legal services in the location where they are going.

9. The GHIRP legal team is trained to provide child-friendly, trauma-informed, culturally competent services to tender aged children, as well as pre-teen and teenage children. When we meet the children for the first time, they can be confused, vulnerable, and they often do not understand the complex immigration system that they must navigate. Many children do not understand where they are, why they are in a shelter, or that they have rights. Through our KYR presentations we teach them about their rights, the immigration system, and what they must to do seek relief in the United States. We also explain what their obligations and rights are after they leave the ORR shelter.

10. Our staff teaches children about how to identify harmful behavior by caretakers. The goal is to provide complex information to children of all ages in a way that they can comprehend and retain. The GHIRP legal team tailors presentations and individual consultations to meet the needs and capacities of each child. We developed materials and resources specific to all age groups so that children remain engaged and empowered by our services. During individual consultations, our staff are trained to meet each child at their developmental level to ensure that the intake is effective and comprehensive. We have seen firsthand how this information and engagement in our services is critical to preventing trafficking and abuse after minors leave the facility, as well as safeguarding their legal rights in the immigration system.

11. The GHIRP legal team provides representation to detained children appearing in immigration court and those who are released to the Galveston-Houston area. We identify children who are eligible for legal relief and assist them in preparing their case from the initial filing of the application or appearance in court, to the finality of their case. We represent children in matters before the Houston immigration courts, the Board of Immigration Appeals, federal district courts and petitions for review in circuit courts, as well as children seeking affirmative relief before USCIS and the USCIS Houston Asylum Office, and family court petitions in state court. Our legal team represents children seeking humanitarian relief such as asylum, U-visa and T-visa applications, Special Immigrant Juvenile visa petitions, and VAWA petitions. GHIRP conducts pro se workshops for children who qualify for legal relief but cannot obtain an attorney to represent them.

12. Many children that receive our legal services do not speak English, have experienced trauma, and do not have the resources to hire an attorney. Some clients are so young they cannot read or write in their own language, much less present a legally sufficient case in English in an adversarial court system. We have represented non-verbal children, children with mental and physical disabilities, and parenting children who have been sexually abused from a young age. Given their particular vulnerabilities, many of our young clients do not have the resources to hire a private attorney and they cannot present a legally sufficient case before the court without an attorney by their side. GHIRP's free, accessible representation is their only chance to meaningfully participate in their case and obtain a fair outcome.

13. GHIRP attorneys regularly appear before juvenile docket Immigration Judges for our clients that are unaccompanied immigrant children. The attorneys are knowledgeable about legal issues specific to immigrant children and understand the preferences of the judges including required motions and evidence to be filed before hearings. This familiarity with the juvenile judges and issues ensures efficient adjudication of cases, or dismissals of removal proceedings where relief is available outside of the court. By frequently appearing with children in the courts, GHIRP attorneys are able to effectively prepare our child clients for hearings, eliminating the stress and trauma of appearing before an Immigration Judge.

14. Without warning, on February 18, 2025, HHS (through the U.S. Department of the Interior) issued a national contract stop work order for Legal Services for Unaccompanied Children, effective immediately, which extended to all five Contract Line Numbers (CLINs). Without further elaboration on duration or reasoning, the stop work order stated that it "shall remain in place until you are notified otherwise" and "is being implemented due to causes outside of your control and should not be misconstrued as an indication for poor performance." HHS then later rescinded the stop work order without explanation to GHIRP on February 21, 2025.

15. On March 21, 2025, also without warning, GHIRP learned that HHS (through the U.S. Department of the Interior) partially terminated the current contract with Acacia Center for Justice (to which our organization is a subcontractor) that funds GHIRP's legal services for unaccompanied children. This termination was effective the same day, March 21, 2025. HHS terminated the contract with respect to 3 of the 4 Contract Line Item Numbers (CLINs): CLIN 2, Legal representation for unaccompanied children, as well as other non-representation services, such as referrals and data tracking; CLIN 3, which funds Immigrant Justice Corps fellows who represent unaccompanied children not covered under CLIN 2; and CLIN 4, Spanish language tutoring for organizational staff who work with children. For the time being, HHS has left in place only CLIN 1, which funds KYR presentations and confidential legal consultations for pro se children in ORR facilities. Per the partial termination, HHS ordered Acacia and all subcontractors to stop work

immediately on CLINs 2, 3, and 4. HHS provided no justification for the partial termination other than "the Government's convenience."

16. I received notification of the contract termination by email. I notified the Immigrant Children & Youth team that the contract was terminated effective immediately, and that work on cases under the contract should stop due to a lack of funding. As a team, we assessed our cases that are currently in progress, our clients' reliance on our representation, immediate next steps for clients, and work that needed to be prioritized given the time-sensitive nature of the cases.

17. Notification of the contract termination has significantly impacted our organization, staff, and clients. GHIRP currently represents 292 clients with funding from the current contract with Acacia Center for Justice. Our youngest client is two (2) years old. We represent clients who have imminent hearings, filing deadlines, and time-sensitive motions before the court. Our clients are scheduled to appear in court as soon as April 2, 9, and 10, 2025. The April 2, 2025 hearing is for a detained client who needs to file relief and be prepared to plead in his second setting in Immigration Court, which has necessitated urgent work to prepare an application this week. Another client has an Individual Hearing on April 9, 2025 that will require substantial attorney preparation time, in addition to working closely with the client on his testimony, and another client has a filing deadline for that same day.

18. Some cases require complex legal arguments, such as our client who is contesting the judge's jurisdictional decision related to his asylum claim. The law entitles this client to explicit procedural due process protections for unaccompanied children, including filing his asylum application with the asylum office first. Our attorney has filed two separate motions and appeared at a hearing related to this issue and is scheduled to appear again in court to resolve the matter. Our young client will not be able to advocate for his rights alone if we are forced to abruptly withdraw from his case.

19. GHIRP's IJC Fellow represents "Evelyn," a 12-year-old girl from Mexico who has endured significant abuse starting at a very young age. Before entering the United States, she was labor trafficked at the young age of 5 years old and endured physical and sexual abuse at the hands of her caretakers who were her extended family members. We assisted Evelyn in filing her asylum application and are in the process of gathering documentation and information to file a T-visa application. These forms of relief will ensure that she can stay in the U.S. with her sponsor and heal from her past trafficking and abuse. Evelyn was issued a Notice to Appear and will soon be required to appear in the Houston Immigration Court. To withdraw from her case at this stage would likely result in her abandoning both forms of relief and being forced to return to the very dangers she fled.

20. GHIRP also represents "Rosa," a 15-year-old girl from Honduras, in her immigration case seeking both SIJS and asylum. When we met Rosa, she was incapable of speaking due to

her severe trauma. She would sit silently with her attorney, picking at her skin and repeating nervous ticks due to her extreme discomfort and anxiety. Through multiple meetings and building rapport, Rosa disclosed her history of parental abandonment and neglect, as well as surviving sexual abuse in her home country. She continues to display extensive distress related to her past trauma. GHIRP filed her asylum application (which is currently pending) and her family court case is pending in state court, which forms the basis for an application for SIJS. Rosa is not capable of complying with family court requirements for service of process, establishing parentage, and meeting the legal standards for the requested proposed order without an attorney representing her. Furthermore, she will soon be required to appear in the Houston Immigration Court and will need her trusted attorney to represent her in those proceedings as well.

21. These clients have an expectation that GHIRP will timely prepare their case, appear in court on their behalf, and complete the case in accordance with our attorney-client representation agreements. In order to comply with our client obligations, we have had to utilize operating expenses that were set aside for other purposes because we are not able to halt legal representation on a moment's notice.

22. GHIRP's legal team will not withdraw from client cases immediately. Our management team is determining how long we can continue representing our clients without funding, considering the number of clients we represent, the procedural posture of each case, and the staff capacity for casework with a reduced team due to funding. Due to the sudden contract termination, we must decide which cases to retain, and which staff will remain at the organization (if any). GHIRP attorneys and representatives have an ethical duty to represent our current clients and to advocate for their interests. To abruptly withdraw from our clients' cases will be detrimental to their legal case, and a direct impairment to our existing core activities. Clients will age out of legal relief, may be forced to abandon relief due to missed filing deadlines, and/or they will not be able to pursue their cases in court effectively alone without representation. Our attorneys are the attorney of record in immigration court and state court, and judges may not allow for our withdrawal at such a late stage of the case. If they do allow for withdrawal, our young clients will not have the time and resources to obtain new counsel within the courts' deadlines and/or scheduled hearings.

23. The financial impact of the contract termination profoundly affects GHIRP, as the entire contract for legal services for unaccompanied children represents approximately 45% of our organizational budget and staff. Our organization served 2,625 immigrants in the community last year, of which 1,469 (or 57%) were unaccompanied children receiving services through this contract. GHIRP is not able to maintain the same level of legal services for unaccompanied minors without HHS funding, and we will be required to lay off most of our Immigrant Children and Youth staff in approximately four weeks. We will rely on unrestricted funds and savings to pay staff during this time, however, drawing down

6

  on these funds will destabilize the organization as a whole. This will divert unrestricted funds away from other services, as these resources typically cover gaps in funding between contract cycles on other grants, underfunded programs, or new initiatives that are responsive to emerging needs of the community.

24. GHIRP's staff members serving immigrant children and youth are exceptionally passionate about providing legal services to children and are currently distraught by the recent contract termination. All have had formal and/or on-the-job training related to educating and representing children and youth and have developed unique skills to provide child-friendly legal services.  Over the years, our team has built rapport with our clients, assisted them in navigating personal and legal issues, and dedicated a significant amount of time and resources to zealously advocating for their clients.  Through our services, we hope to achieve our goals of obtaining safety and stability for our clients so that they can thrive. An interruption in services risks re-traumatizing them and causing them to lose the progress they have made so far in their trajectory toward opportunity. The abrupt contract termination has impacted staff morale and caused incredible amounts of stress. Having to withdraw representation may be a violation of our ethical duties to our clients and will likely lead to their deportation, placing our clients in harm's way.  Our children view our team as a reliable support, which many clients lack in other aspects of their lives. These consequences deeply impact our staff, who are dedicated, compassionate professionals.

25. Such results are antithetical to our values and impede our ability to carry out GHIRP's mission.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 25th of March 2025, in Houston, Texas.

 /s/ *Elizabeth Sanchez Kennedy*
**Elizabeth Sanchez Kennedy**
Executive Director
Galveston-Houston Immigrant Representation Project (GHIRP)
6001 Savoy Drive, Ste. 400
Houston, Texas 77036
Ph: (713) 588-2260
Email: Chiqui@ghirp.org