IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,<br><br>Defendants. | Case No. 3:25-cv-2847<br><br>**DECLARATION OF MIGUEL ANGEL MEXICANO FURMANSKA IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

**DECLARATION OF MIGUEL ANGEL MEXICANO FURMANSKA MANAGING ATTORNEY AND OWNER OF THE LAW OFFICE OF MIGUEL MEXICANO**

*I, Miguel Angel Mexicano Furmanska, make the following statements on behalf of myself and the Law Office of Miguel Mexicano, PC. I certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. § 1746.*

1. I, Miguel Angel Mexicano Furmanska, serve as Managing Attorney and Proprietor of the Law Office of Miguel Mexicano, PC.

2. The Law Office of Miguel Mexicano provides comprehensive legal representation to vulnerable unaccompanied children facing immigration legal challenges. Our practice extends to children released from Office of Refugee Resettlement ("ORR") custody to family members or guardians in the Los Angeles metropolitan area. Additionally, we stand as the legal service provider for children remaining in ORR custody within the long-term foster care provider at MarSell Wellness Center in Ontario, California.

3. Our dedicated team is comprised of attorneys and legal professionals who have devoted their careers to advocating for society's most vulnerable populations. Our mission centers on protecting unaccompanied children, arguably the most defenseless subset of immigrants, through zealous representation in deportation proceedings, navigation of applications for legal relief with U.S. Citizenship and Immigration Services ("USCIS"), and educational outreach through "know your rights" ("KYR") presentations.

4. The Law Office of Miguel Mexicano fulfills its mission through five essential service components: (1) Representing unaccompanied minors outside ORR custody in immigration proceedings; (2) Advocating for children within ORR custody throughout their immigration journey; (3) Delivering vital legal education through KYR presentations; (4) Providing specialized representation in state court proceedings for minors eligible for Special Immigrant Juvenile Status ("SIJS"); and (5) Representing children during critical asylum interviews before USCIS.

5. Since 2016, the Law Office of Miguel Mexicano has established itself as a steadfast provider of legal services for unaccompanied immigrant children throughout California, though our formal subcontractor relationship with ORR began in September 2023. Our commitment to this vital work stems from our extensive expertise in advocating for unaccompanied children, including my personal 12-year experience in this field. Currently, our practice extends representation to approximately 120 children, including a select cohort of minors in ORR custody at MarSell Wellness Center in Ontario, California.

6. Through U.S. Department of Health and Human Services ("HHS") funding, our firm has assembled a dedicated team of 11 full-time professionals committed to serving unaccompanied immigrant children. This exceptional team includes six attorneys with specialized immigration expertise, three skilled paralegals, and a dedicated legal assistant, all working under my leadership.

7. Our practice involves regular visitation with foster care clients and vigorous representation before the Immigration Court. We further extend our advocacy to children pursuing asylum through the asylum office and navigate state court proceedings for those qualifying for SIJS—a critical form of relief designed specifically for children who have suffered abuse, abandonment, or neglect. Beyond legal representation, we serve as holistic advocates, facilitating connections to essential social services, healthcare resources, and mental health support.

8. The majority of our clients qualify for either SIJS or asylum. These legal pathways demand the expertise of skilled counsel to navigate successfully. These children have endured traumatic experiences of abuse, neglect, or persecution in their countries of origin, creating legal complexities that would be insurmountable without professional legal guidance.

9. Know Your Rights presentations and legal representation are essential for unaccompanied children who face multiple barriers to justice. Most cannot afford private representation, with typical legal fees starting at $5,000. Language barriers severely limit their ability to understand proceedings, as most speak Spanish or indigenous languages. Immigration law's complexity—with intricate procedures, strict deadlines, and specialized standards—is incomprehensible even to many adults. The geographic isolation of facilities and limited transportation and distance from courts further restricts access to legal help. Even in a region like mine -Los Angeles- with ample Spanish speaking resources, there is a severe shortage of attorneys with the specialized expertise required for these cases—encompassing immigration law, state law, and trauma-informed advocacy. Only a handful of nonprofit and private attorneys are equipped to handle these matters. Without our services, many children would face near-certain deportation, regardless of their legal eligibility for relief or the dangers awaiting them in their countries of origin.

10. One illustrative case involved a young girl who diligently attempted to monitor her Immigration Court proceedings by periodically contacting the court system to determine her hearing schedule. Despite her best efforts, she received either late notification or no notification at all regarding her hearing, resulting in an "in absentia" removal order. She was ordered removed from the country for failing to appear in court. Upon accepting her representation, we immediately identified her eligibility for SIJS based on paternal abandonment. We promptly initiated custody proceedings in state court while

simultaneously filing a motion to reopen with the Immigration Court. Through our intervention, this young client successfully reopened her case and secured the necessary predicate order to pursue a Special Immigrant Juvenile visa. Our timely representation transformed her circumstances from imminent deportation to a clear pathway toward lawful permanent residency.

11. Our legal team receives consistent recognition and welcome across various venues including Immigration Court and USCIS, and during interactions with the Office of Principal Legal Advisor ("OPLA")/Immigration and Customs Enforcement ("ICE"), as we facilitate streamlined processes and advocate for justice. Immigration Court judges have repeatedly acknowledged the positive impact of our representation on children's lives and our contribution to creating more efficient and humane Immigration Court proceedings. Our professional engagement enables productive communication with government attorneys to advance and resolve cases expeditiously. In one notable instance, an Immigration Judge in Santa Ana explicitly expressed gratitude for our meticulous work in helping a minor seek and obtain relief effectively and efficiently. The judge acknowledged that our diligent representation transformed the entire process, leading to a positive outcome that might otherwise have resulted in years of procedural delays, potential violations of due process rights, and ultimately, deportation. Our intervention prevented burdensome continuances and the overwhelming complexity that a vulnerable child would face navigating the system alone.

12. We have garnered similar judicial recognition in state court proceedings while pursuing SIJS through Probate and Family Courts. Judges in these forums have commended our exemplary filings and professional conduct, even suggesting that our team provide educational training to other attorneys practicing in this specialized field.

13. Without warning, on February 18, 2025, HHS (through the U.S. Department of the Interior) issued a national contract stop work order for Legal Services for Unaccompanied Children, effective immediately, which extended to all four Contract Line Numbers (CLINs). Without further elaboration on duration or reasoning, the stop work order stated that it "shall remain in place until you are notified otherwise" and "is being implemented due to causes outside of your control and should not be misconstrued as an indication for poor performance." HHS then later rescinded the stop work order without explanation on February 21, 2025.

14. The timing of the initial work stoppage order was particularly disruptive, arriving on Tuesday, February 18, 2025, mid-week during a period when our office had scheduled at least 10 hearings across immigration and state courts for our unaccompanied minor clients. This disruption coincided with an approaching critical filing deadline for unaccompanied

minors who potentially qualified as members of the *J.O.P. v. DHS* lawsuit—a certified nationwide class action challenging a Trump administration policy that restricted asylum eligibility for certain unaccompanied children arriving from 2019 onward. With the deadline set for February 24, 2025, we were in the final stages of preparing numerous asylum applications for affected minors.

15. On March 21, 2025, the situation dramatically worsened. HHS (operating through the U.S. Department of the Interior) partially terminated the current contract with Acacia Center for Justice (to which our organization is a subcontractor) that funds legal services for unaccompanied children. This termination was effective the same day, March 21, 2025. This directive terminated the contract with respect to 3 of the 4 Contract Line Numbers (CLINs): CLIN 2, Legal representation for unaccompanied children as well as other non-representation services such as referrals and data tracking; CLIN 3, which funds Immigrant Justice Corps fellows who represent unaccompanied children not covered under CLIN 2, and CLIN 4, Spanish language tutoring for organizational staff who work with children. For the time being, HHS has left in place only CLIN 1, which funds KYR presentations and confidential legal consultations for pro se children in ORR facilities. Per the partial termination, HHS ordered Acacia and all subcontractors to stop work immediately on CLINs 2, 3, and 4. HHS provided no justification for the partial termination other than "the Government's convenience."

16. This contract termination has necessitated immediate and difficult communications with MarSell Wellness Center Ontario. On March 21, 2025, I personally informed the Center's Director that all our services would cease immediately, except for the minimal representation legally and ethically required for children with already scheduled Immigration Court proceedings. I explained that we would be unable to help any new arrivals at their facility, and that with all existing cases we would need to wind down our services where ethically possible. This abrupt cessation of services places considerable strain on the facility, which now must attempt to secure alternative legal representation in a region with few qualified immigration attorneys willing to take on these specialized cases. I don't believe the center has a contingency plan in place and they will likely need to divert resources from other critical services to address this sudden gap in legal support.

17. The moment the aforementioned contract was terminated, it created an immediate crisis for our vulnerable child clients. After assessing our ethical duties and limited resources, the Law Office of Miguel Mexicano can continue representing only the most pressing of our approximately 120 unaccompanied minors—specifically those with court dates or filing deadlines. This week for instance, we have immigration court scheduled for a minor on Friday, Mach 28, 2025, a Probate Court hearing on Wednesday March 26, 2025, and a Long Term Foster Care client that wants to pursue voluntary departure because she wants to

return to her home country because of an ill grandmother. Not knowing whether this unavoidable work will be funded is creating tremendous strain on our office. For all other cases, we must regrettably start to unwind and withdraw representation where ethically possible, filing appropriate motions with immigration courts and providing clients with case files and guidance materials, though this offers minimal practical assistance to children navigating complex legal proceedings. This abrupt termination undermines protections established by the William Wilberforce Trafficking Victims Protection Reauthorization Act (TVPRA) of 2008, which recognized unaccompanied children's vulnerabilities and established safeguards including access to counsel. Our clients have developed trusted relationships with our attorneys, often sharing traumatic experiences forming the basis of their legal claims. Without HHS funding, hundreds of children across our region will face deportation proceedings unrepresented, effectively nullifying their right to seek humanitarian protection despite legal eligibility.

18. This termination impacts approximately 80% of our operational funding. The financial consequences—including potential furloughs, layoffs, or significant staff reduction—will be devastating. I've already communicated with my team that they in fact may be furloughed or laid off. As of Monday March 24, 2025, I cut my staff's hours in half. Very soon I will likely be forced to lay off half my staff, severely compromising our ability to fulfill our ethical obligations to clients. As the firm's owner and manager, I am facing extreme overtime demands to sustain operations while enduring substantial financial losses that might reach in the hundreds of thousands of dollars. Ultimately, continuing our representation of unaccompanied minors is financially unsustainable.

19. Beyond its operational impact, the partial contract termination has created a profound sense of uncertainty and demoralization among our professional team, hindering our capacity to provide the zealous advocacy our vulnerable clients deserve. The funding gap will force me to utilize personal financial resources to maintain operations and meet staff payroll obligations, something I had to do during the previous February 18, 2025, stop work order. Collectively, this disruption has significantly impaired our ability to provide comprehensive assistance to children navigating the complexities of their immigration cases.

20. This funding loss will have immediate and severe consequences. Within 15 days, we will be forced to lay off half our staff, and within 30 days, our representation program will be insolvent. While we could potentially redirect money from our limited private cases, this would only sustain minimal operations while compromising our overall services. Even with eventual backpay, we would incur significant financial harm through interest on emergency loans, rehiring costs, and damaged client relationships. Crucially, children face gaps in representation during which filing deadlines might expire, permanently affecting their immigration relief options.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 25 of March 2025, in Pomona, CA.

_____
**Miguel Angel Mexicano Furmanska**
**Managing Attorney/Owner**
**Law Office of Miguel Mexicano, PC**
**UCP Legal Service Provider**

6