UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,<br><br>Defendants. | Case No: 3:25-cv-2847 (AMO) |

**DECLARATION OF TOBY BISWAS**

I, Toby Biswas, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I am the Director of the Division of Unaccompanied Alien Children (UAC) Policy for the UAC Bureau of the Office of Refugee Resettlement (ORR), within the Administration for Children and Families (ACF), a component of the U.S. Department of Health and Human Services (HHS).

2. I have held various roles within ORR since I first started working at the agency in November 2009, and I have held my current role since April 2023. My job duties include, among other things, responsibility for all aspects of the development and implementation of ORR's policies and procedures concerning the care and custody UAC, including those related to the provision of legal services to UAC. In this capacity, I am responsible for ensuring ORR's implementation of and compliance with programmatic policy prerogatives and statutory responsibilities, such as those arising under the Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA), 8 U.S.C. § 1232, and ORR's Foundational Rule, 45 CFR part 410, which include provisions related to the provision of UAC legal services.[1]

3. This declaration is based upon my personal knowledge, information acquired by me in the course of performing my official duties, information contained in the records of ACF and ORR, and information conveyed to me by current agency employees and contractors. Further, I have reviewed the pleadings in this matter, and am generally familiar with the facts and circumstances underlying plaintiffs'

---

[1] ORR policies with respect to UAC are also embodied in the ORR UAC Bureau Policy Guide ("UAC Policy Guide"), which is publicly available on ORR's website, and has recently been made available to the public in a Freedom of Information Act reading room: https://acf.gov/e-reading-room

allegations concerning the termination of a portion of the Acacia contract for the provision of UAC legal services in March. I also have personal knowledge of the facts and circumstances leading to the termination decision at issue here.

4. Acacia Center for Justice ("Acacia")[2] is an ORR contractor who provides legal services and other assistance to UAC in and released from ORR care in the sectors defined by ORR, as explained below. Acacia may further sub-award ORR funds to other organizations to provide these services. In this posture, ORR has no direct relationship with these sub-awardees. Rather, as the federal contractor, Acacia is responsible under HHS regulations for, among other things, clearly identifying every sub-award as such, evaluating each subrecipient's risk of noncompliance with Federal requirements, and monitoring subrecipient activities to ensure the subaward is used for authorized purposes, identifying sub-awardees as either subrecipients or sub-contractors. *See* 45 CFR 75.352; *see also* 45 CFR 75.101(b)(1) (making 75.352 applicable to HHS contracts).

5. Consistent with 45 CFR 410.1309(a), ORR funds Acacia to provide presentations to UAC concerning their rights and responsibilities in the immigration system ("Know Your Rights", or KYR, presentations), and to provide confidential legal consultation for UAC to determine possible forms of relief from removal in relation to their immigration cases, as well as other case disposition options such as, but not limited to, voluntary departure ("legal screenings"). Historically, in its discretion, ORR has also funded Acacia (then Vera) to provide direct legal representation for UAC in some cases.

6. Acacia has provided these services pursuant to Contract 140D0422C0009.

7. Collectively, these services cost ACF/ORR—and by extension U.S. taxpayers—a grand total of $796,720,624.01.

8. On February 3, 2025, Acting HHS Secretary Dorothy Fink issued the "Secretarial Directive on Program Payment Integrity" ("Secretarial Directive"), which directed all HHS personnel to briefly pause all payments to contractors, vendors, and grantees related to immigration and refugee resettlement for internal review. A true and correct copy of the Secretarial Directive is attached hereto as "Exhibit 1."

9. Specifically, the Secretarial Directive directed that "Agency personnel shall briefly pause all payments made by the Administration for Children and Families to contractors, vendors, and grantees related to immigration and refugee resettlement for internal review for payment integrity. Such review shall include but not be limited to a review for fraud, waste, abuse, and a review of the overall contracts

---

[2] Acacia was previously known as the Vera Institute of Justice, or "Vera."

2

and grants to determine whether those contracts or grants are in the best interest of the government and consistent with current policy." Exhibit 1.

10. In late February, all ORR contracts, including the contract for legal services, were evaluated for termination and modification to reduce overall Federal spending or reallocate spending to promote efficiency and advance the policies of the President's Administration. The evaluation consisted of making a determination of whether the contracted services were legally required, whether the services provided by the vendor aligned with the administration's priorities, and whether the services could be provided through other means more cost effectively. During that time period, ORR leadership determined that the contract for legal services was only partially required in order to meet statutory requirements and decided to reduce the scope of the contract in order to reduce spending and achieve more cost efficiency.

11. As a result of the program integrity review conducted pursuant to the Secretarial Directive, ACF and ORR leadership decided, on or about March 20, 2025, to partially terminate the Acacia contract—which was already set to expire on March 29, 2025—with respect to the funding of direct representation of UAC; however, ACF/ORR decided to renew the Acacia contract with respect to the provision of KYR trainings and legal screenings, based on its understanding of its non-discretionary obligations, and in keeping with the Administration's general policy of protecting the public fisc by ensuring taxpayer dollars are only spent on statutorily-required government-funded services.

12. Accordingly, on March 21, 2025, Acacia was notified of the partial termination decision by the Acquisition Services Directorate of the Interior Business Center within the Department of the Interior ("DOI"). A true and correct copy of the Acacia partial termination notice is attached hereto as "Exhibit 2."

13. DOI provides assisted acquisition services to HHS and its component agencies, including ACF/ORR, under the Interior Franchise Fund.[3] Simply put, DOI serves as the technical administrator of the Acacia contract, due to its greater capacity for contract management and administration, but ACF/ORR remains the decisionmaker with respect to all aspects of the Acacia contract, and, for that matter, the development and implementation of all UAC policies, as expressly directed by Congress. *See* 6 U.S.C. §279(a), 8 U.S.C. § 1232. DOI merely communicates those decisions to the contractor on ACF/ORR's behalf. Hence, the partial termination letter Acacia received was from DOI, not ACF/ORR.

---

[3] The Interior Franchise Fund was one of six pilot programs authorized pursuant to the Federal Financial Reform Act of 1994. Pub. L. 103-356, title IV, § 403, 103 Stat. 3414 (Oct. 13, 1994) to provide "common administrative support services" to federal agencies more efficiently than through other means. The franchise authority contained a sunset provision, which was extended several times and ultimately made permanent by the Consolidated Appropriations Act of 2008. Pub. L. 110-161, 121 Stat. 1844 (Dec. 26, 2007).

14. As stated in the partial termination letter, ORR has determined to terminate aspects of the Acacia contract related to direct representation of UAC because the TVPRA does not require HHS/ORR to fund direct legal representation. Under the TVPRA, at 8 U.S.C. 1232(c)(5), the Secretary of HHS must "ensure, to the greatest extent practicable and consistent with section 292 of the INA (8 U.S.C. 1362)," that all unaccompanied alien children who are or have been in its custody or in the custody of DHS, with certain exceptions, have counsel "to represent them in legal proceedings or matters and protect them from mistreatment, exploitation, and trafficking." The Secretary of Health and Human Services "shall make every effort to utilize the services of pro bono counsel who agree to provide representation to such children without charge." 8 U.S.C. 1362 provides, "In any removal proceedings before an immigration judge and in any appeal proceedings before the Attorney General from any such removal proceedings, the person concerned shall have the privilege of being represented (*at no expense to the Government*) by such counsel, authorized to practice in such proceedings, as he shall choose." (emphasis added). ORR has for several years funded at great public expense direct legal representation services for unaccompanied alien children. The TVPRA which authorizes such funding, does not require it, and such services are entirely at the agency's discretion.

15. ORR's regulations were written based on the understanding that it is responsible for providing access to counsel, but at no expense to the government. *See* 89 Fed. Reg. 34384, 34526-27 (prefacing discussion of 45 CFR 410.1309 with an explanation of requirements under the TVPRA). Thus, even where ORR regulations describe funding direct representation of UAC (e.g., 45 CFR 410.1309(a)(4)), the regulations state that such funding is provided "[t]o the extent ORR determines that appropriations are available, and insofar as it is not practicable for ORR to secure pro bono counsel." As a result, although historically ORR has funded direct representation, it has done so as a matter of its exclusive discretion. Like many discretionary policies, this one has changed with the change in Administration, and ORR has now determined that it will no longer fund direct representation for UAC.

16. Congress periodically appropriates funds to support ORR's UAC program, including legal services. Appropriations language, however, consistently remains broad and nonspecific regarding precise funding allocations. For example, the Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, provides general appropriations to execute activities under Section 235 of the TVPRA without earmarking explicit amounts for direct legal representation. This general appropriation approach allows ORR flexibility in determining the allocation of resources based on agency priorities, the availability of pro bono counsel, and shifting immigration policy needs. Subsequent acts, including the Full-Year Continuing Appropriations and Extensions Act, 2025, Pub. L. No. 119-4, similarly maintain funding

4

levels and provide broad discretion without altering statutory obligations or imposing specific mandates for funding legal representation.

17. Had Acacia never entered into a contract with the United States to provide direct legal services to UAC, Plaintiffs would have never received funding to provide such legal services. Under the Foundation Rule, HHS would maintain the discretion to determine whether to fund direct-legal services for UAC, and, using that discretion, it would likely continue to decline to continue funding. Moreover, while it has cancelled aspects of the Acacia contract pertaining to direct representation of UAC, ORR has not canceled those aspects pertaining to the provision of the KYR trainings and legal screenings because ORR's regulations require the provision of both the KYR presentation and the legal screening. *See* 45 CFR 410.1309(a)(2)(i) and (v).

18. The termination of the Acacia contract is in the public's best interest as almost $800 million has been spent on legal services, much of which is not legally mandated, and to continue funding such services that are not legally required does not fulfill this Administration's policy goals of reducing unnecessary public expenditures. The law gives HHS discretion on how to use ORR's funding and given the priorities to reduce public expenditures, ORR has directed such funding be curtailed.

19. ORR has not made any commitment or representation to Plaintiffs, including Acacia or any other entity involved in this case, that it would continue funding direct legal services through their contracts. The decision to fund such services, if continued, remains subject to the agency's discretion, appropriations, and programmatic priorities. There is no obligation under the applicable statutes or regulations that mandates HHS to maintain contractual relationships with specific service providers, including the Plaintiffs in this matter.

20. Despite the recent change in the scope of the Acacia contract, ORR will continue to ensure UAC in the agency's custody are provided KYR presentations and legal screenings through the use of legal service providers whether through awards or subawards.

21. Under the renewed contract, ACF/ORR will still pay $27,318.224.88 remaining costs to Acacia to provide KYR Trainings and legal screenings on a go-forward basis.

22. UAC have, and remain, free to retain any attorney they wish to represent them in any matter they wish to contest at no cost to the Government, and Plaintiffs and any other legal service providers remains free to provide direct legal services on a truly pro bono basis. Legal service providers who wish to provide pro bono services may contact the agency to have their contact information updated and included in ORR's *Legal Resource Guide – Legal Service Provider List* which provides a state by state breakdown on legal service providers. Lists of local attorneys are provided to UAC when they enter care and when they leave it. The *Legal Service Guide* also provides weblinks to other pro bono resources

from the Immigration Advocates Network and the U.S. Department of Justice's List of Pro Bono Legal Service Providers. The *Legal Resource Guide* is provided to children within 24 hours of their admission into an ORR care provider.

23. ACF/ORR complies with all federal laws and regulations. Requiring the agency to provide direct representation for UAC prohibits the discretion Congress intentionally conferred upon HHS.

24. Further, ACF/ORR is concerned that large multimillion dollar contracts create a market for paid legal service providers to take on cases, which disincentivizes the recruitment of and the volunteering of pro bono counsel. Notably, many jurisdictions require or encourage attorneys to take on cases for indignant clients or cases in the public interest pro bono and have annual reporting requirements for attorneys to report those hours. A large influx of public funding for direct representation therefore may have the perverse effect of discouraging the utilization of pro bono counsel in the first instance.

Executed on March 31, 2025.

_____

Toby Biswas