1  **AKIN GUMP STRAUSS HAUER & FELD LLP**
   ASHLEY VINSON CRAWFORD (SBN 257246)
2  avcrawford@akingump.com
   100 Pine Street, Suite 3200
3  San Francisco, CA 94111
   Telephone:      415-765-9500
4  Facsimile:      415-765-9501

5  Counsel to Amici Former Immigration Judges & Former
   Members of the Board of Immigration Appeals
6

7
                    UNITED STATES DISTRICT COURT
8
                    NORTHERN DISTRICT OF CALIFORNIA
9

10 | Community Legal Services in East Palo | Case No. 25-cv-2847-AMO
   | Alto, et al.,                        |
11 |                                      | ***AMICUS CURIAE* BRIEF OF FORMER
   |              Plaintiffs,             | IMMIGRATION JUDGES & FORMER
12 |                                      | MEMBERS OF THE BOARD OF
   |     v.                               | IMMIGRATION APPEALS
13 |                                      | IN SUPPORT OF PLAINTIFFS' MOTION
   | United States Department of Health and| FOR TEMPORARY RESTRAINING
14 | Human Services, et al.,              | ORDER AND PRELIMINARY
   |                                      | INJUNCTION**
15 |              Defendants.             |

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................................1

II. BACKGROUND .................................................................................................................2

    A. Commencement of Proceedings via Notice to Appear ......................................5

    B. The Master Calendar Hearing ............................................................................5

    C. The Merits Hearing ............................................................................................8

    D. Example: Navigating the Path Through Immigration Court via SIJS ............9

III. ARGUMENT ....................................................................................................................10

    A. Representation of Unaccompanied Children Helps Immigration Judges Fulfill their Statutory Duties ..........................................................................11

    B. Representation of Unaccompanied Children is Efficient...............................12

    C. The legal representation and friend of court services Promotes Due Process .............13

IV. CONCLUSION.................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agyeman v. INS*,
  296 F.3d 871 (9th Cir. 2002) .................................................................................................. 11

*Matter of Amaya*,
  21 I & N Dec. 583 (BIA 1996) ................................................................................................. 4

*Barragan-Ojeda v. Sessions*,
  853 F.3d 374 (7th Cir. 2017) .................................................................................................. 11

*C.J.L.G. v. Barr*,
  923 F.3d 622 (9th Cir. 2019) (en banc) ................................................................................. 11

*Castro-O'Ryan v. U.S. Dep't of Immigr. & Naturalization*,
  847 F.2d 1307 (9th Cir. 1988) .................................................................................................. 3

*Diop v. Lynch*,
  807 F.3d 70 (4th Cir. 2015) ................................................................................................ 3, 11

*Jacinto v. INS*,
  207 F.3d 725 (9th Cir. 2000) .................................................................................................. 11

*Quintero v. Garland*,
  998 F.3d 612 (4th Cir. 2021) ........................................................................................ 3, 11, 13

*Matter of S-M-J-*,
  21 I. & N. Dec. 722 (B.I.A. 1997) ............................................................................................ 3

*Yang v. McElroy*,
  277 F.3d 158 (2d Cir. 2002) ..................................................................................................... 3

**Statutes**

8 U.S.C.
  § 1229a(b)(1) ............................................................................................................................ 3
  § 1362 ....................................................................................................................................... 4

Immigration & Nationality Act ...................................................................................................... 5

William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 .................... 7

**Other Authorities**

8 C.F.R. § 1240.10(a) ..................................................................................................................... 6

8 C.F.R. § 1240.10(c) ................................................................................................................. 4, 7

8 C.F.R. § 1240.11(a)(2) ........................................................................................................... 6, 11

Cong. Rsch. Serv., IN12463, Immigration Courts: Decline in New Cases at the End of FY2024 2 (2024) .................................................................................................................. 12

EOIR, *Master Calendar Checklist for the Immigration Judge/The Pro Se Respondent* ........................... 6

*Federal Judicial Caseload Statistics 2024*, U.S. Courts ....................................................................... 12

*Immigration Court Legal Representation Dashboard*, Vera Inst. of Just. ............................................ 1

Procedures Memorandum 17-03: *Guidelines for Immigration Court Cases Involving Juveniles, Including Unaccompanied Alien Children* (Dec. 20, 2017) .................................................................. 5

# IDENTITY AND INTEREST OF AMICUS CURIAE[1]

*Amici curiae* are former immigration judges and former members of the Board of Immigration Appeals ("BIA" or the "Board"), listed in Appendix A, with substantial, combined years of service and intimate knowledge of the U.S. immigration system. *Amici* submit this brief to illuminate for this Court how the immigration court system operates and the role that legal representation of unaccompanied children plays in operation. In particular, the funding for legal representation and friend of court services by the Office of Refugee Resettlement ("ORR") is essential to the fair and efficient adjudication of children's claims. Terminating the legal representation and friend of court services – which will result in fewer lawyers for children – will inevitably make the immigration courts less fair and efficient and less able provide adequate protections to unaccompanied minors.

*Amici* are invested in the issues presented by Plaintiffs because *amici* have dedicated their careers to improving the fairness and efficiency of the U.S. immigration system, even after departing from the bench. Given *amici*'s familiarity with the procedures and realities of the immigration adjudication system, *amici* respectfully submit that this Court should enjoin the actions taken by the Defendants to abruptly terminate the legal representation and friend of court services without understanding its importance and efficacy.

## I. INTRODUCTION

As former immigration judges and former members of the Board of Immigration Appeals, *amici* have centuries of collective experience impartially administering justice in removal hearings and on appeal. One of our primary responsibilities in court and on appeal was to ensure that unrepresented respondents—who comprise about two-thirds of all respondents in immigration court[2]—are treated fairly in the immigration court system. Through the funding of legal representation and friend of court

---

[1] No party's counsel authored this brief in whole or in part, and no person other than *amici* and their counsel contributed money that was intended to fund the preparation or submission of this brief.

[2] *See Immigration Court Legal Representation Dashboard*, VERA INST. OF JUST., https://www.vera.org/ending-mass-incarceration/reducing-incarceration/detention-of-immigrants/advancing-universal-representation-initiative/immigration-court-legal-representation-dashboard (data through December 2024).

services, ORR "strives for 100 percent legal representation of unaccompanied children" and funds non-profit legal aid organizations across the nation (including Plaintiffs) in an effort to accomplish that goal.

We thus submit this *amicus* brief to ask this Court to enjoin ORR's termination of the funding of legal representation and friend of court services, which ensures that children have a voice and understand their complex immigration court proceedings as best they can, thus lightening the burden on immigration judges to orient and educate unrepresented children who appear before their courts. As explained below, when a child has assistance in preparing for and attending immigration court, the child is able to have a basic understanding of the functioning of the immigration court system and of their role and rights within that system. Lawyers also help children understand what options, if any, they may have to contest removal and help them articulate their claims.

On the other hand, children who appear in immigration court without lawyers require far more guidance from immigration judges, are less likely to proceed without continuances, and have difficulty appropriately articulating their claims for relief from removal (or understanding that they have none). Even a brief interruption in the funding of legal representation and friend of court services will disrupt the efficient and fair functioning of the immigration courts.

This *amicus* brief explains the role of the legal representation and friend of court services in the fair and efficient functioning of the immigration court system, one in which respondents are forced to defend their rights in an unfamiliar setting against a sophisticated opponent, a lawyer representing the Department of Homeland Security ("DHS"). Judges are tasked with ensuring that this unlevel playing field does not violate due process by educating unrepresented respondents and allowing valid claims for relief to be adequately presented to the court. The legal representation and friend of court services plays a vital role in ensuring that these fundamental objectives are achieved.

## II. BACKGROUND

The immigration court system is the due process provided to individuals who are charged with removability from the United States (*i.e.*, deportation) by DHS. The immigration judge, an employee of the Department of Justice appointed by the Attorney General and operating within the Executive Office for Immigration Review, presides over removal proceedings, and is responsible for ensuring

their fairness and efficiency. As of the end of 2024, there were approximately 700 immigration judges[3] located in 71 immigration courts and three remote-only courts across the United States and its territories. Immigration judges play a unique role in the immigration court system that is different from Article III judges; as the Second Circuit has observed, an immigration judge "is not merely the fact finder and adjudicator but also has an obligation to establish the record." *Yang v. McElroy*, 277 F.3d 158, 162 (2d Cir. 2002) (citing 8 U.S.C. § 1229a(b)(1)). Accordingly, immigration judges have a duty to interact deliberately with noncitizens who appear before them to ensure a full and fair hearing. *Quintero v. Garland*, 998 F.3d 612, 624–25 (4th Cir. 2021) (explaining at length the duty of immigration judges to develop the record). Indeed, a fair hearing requires "adequate assistance from the immigration judge." *Id.* at 628 (citing *Diop v. Lynch*, 807 F.3d 70, 76 (4th Cir. 2015)). This is particularly true for those who are seeking asylum or other protections; as the BIA has held, immigration judges and Board members "bear the responsibility of ensuring that refugee protection is provided where such protection is warranted by the circumstances of an asylum applicant's claim." *Matter of S-M-J-*, 21 I. & N. Dec. 722, 723 (B.I.A. 1997). Thus, "a cooperative approach in Immigration Court is particularly appropriate[,]" giving immigration judges "a role in introducing [relevant] evidence into the record." *Id.* at 724, 726. In summary, immigration judges "have an affirmative duty to assist and work with" those who appear before them seeking relief. *Quintero*, 998 F.3d at 626.

These duties of the immigration judge extend to all cases, including where the respondent is represented by counsel, *id.* at 627, but obviously require far more intervention by the immigration judge where the respondent is unrepresented – and even more so when that respondent is a child. As the federal courts have long recognized, immigration law is extremely complicated and often unintelligible to those without specialized legal training. *Castro-O'Ryan v. U.S. Dep't of Immigr. & Naturalization* ("INS"), 847 F.2d 1307, 1312 (9th Cir. 1988) ("With only a small degree of hyperbole, the immigration laws have been termed 'second only to the Internal Revenue Code in complexity.' A lawyer is often the only person who could thread the labyrinth." (citation omitted)). Sadly, despite this complexity, the

---

[3] Since January 20, 2025, at least 20 immigration judges have been terminated.

clear majority of respondents have no lawyer to thread the labyrinth. U.S. law does provide that a respondent has a right to be represented, but typically not at government expense.[4] The funding of legal representation and friend of court services have been an important exception to this general rule. Not surprisingly, unrepresented respondents require a greater degree of assistance from immigration judges; and of the larger group of unrepresented respondents, unrepresented children require by far the most time, attention, and assistance from the bench.

Legal representation for unaccompanied children is not a luxury; it is essential to the efficient operation of the immigration courts. For example, federal regulations prohibit an immigration judge from accepting "an admission of removability from an unrepresented respondent who is incompetent or under the age of 18 and is not accompanied by an attorney or legal representative, a near relative, legal guardian, or friend; nor from an officer of an institution in which a respondent is an inmate or patient."[5] If the child has no lawyer, the immigration judge is then required to "direct a hearing on the issues."[6] And in light of a minor's inability to admit removability, binding BIA precedent requires immigration judges to "exercise particular care in determining such a person's deportability. The minor's age and pro se, and unaccompanied status must be taken into consideration. The Immigration Judge must consider the reliability of the testimony given by such a minor in response to the factual allegations made against him in determining, after a comprehensive and independent inquiry, whether there is clear, unequivocal, and convincing evidence of the minor's deportability as charged…"[7] In sum, the burden on immigration judges is exponentially higher when a child has no lawyer to assist in court.

Beyond these regulatory requirements, EOIR has long had detailed guidelines for the adjudication of removal proceedings involving unaccompanied children (the "EOIR Children's

---

[4] 8 U.S.C. § 1362: Right to Counsel ("In any removal proceedings before an immigration judge and in any appeal proceedings before the Attorney General from any such removal proceedings, the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose.").

[5] 8 C.F.R. § 1240.10(c).

[6] *Id.*

[7] *Matter of Amaya*, 21 I & N Dec. 583, 587 (BIA 1996).

Guidelines").[8]  These EOIR Children's Guidelines cover a wide range of issues relating to hearing cases involving children, including interpretation, the judge's demeanor and dress, and the proper instructions and questioning, and how to determine credibility of a child.[9]  When the child has assistance of counsel, these Guidelines are far more effective.

With that in mind, let us explain how immigration court proceedings work (primarily from the perspective of an unrepresented respondent), and the judge's role in those proceedings, highlighting the important role of the legal representation and friend of court services funded by ORR.

### A.  Commencement of Proceedings via Notice to Appear

Immigration court removal proceedings are commenced by DHS with the service and filing of a Notice to Appear ("NTA"), a legal document that contains factual allegations supporting the stated legal bases for the charges of removability under the Immigration & Nationality Act ("INA").  The NTA, like a civil or criminal complaint, is not proof of removability; its allegations and charges must be proven by DHS and may be contested by the respondent.

Respondents—including asylum seekers who recently entered the United States, permanent residents with families in the country, and undocumented individuals who have lived in our country for decades—must then prepare to answer the allegations and charges leveled against them in the NTA and assert any claims for relief, *i.e.,* their defenses from removal. This task is daunting for adults and certainly older children, and essentially impossible for younger children who are not represented.  The services provided by the legal representation progam are invaluable to preparing a minor to understand and appear in a foreign and intimidating environment.  A child simply cannot fully understand the NTA without a lawyer, and without one is entirely unprepared for the immigration court process.

### B.  The Master Calendar Hearing

After the NTA is served and lodged with the immigration court, the first hearing for any respondent is the master calendar hearing, where the respondent is asked to plead to the charges in the

---

[8] *See* Operating Policies of Procedures Memorandum 17-03: *Guidelines for Immigration Court Cases Involving Juveniles, Including Unaccompanied Alien Children* (Dec. 20, 2017) (updating guidelines from 2007), *available at* https://www.justice.gov/eoir/file/oppm17-03/dl.

[9] *Id.* at 1-2.

5

NTA and state any claims for relief. The court then sets a date for trial (also known as an individual hearing or merits hearing). Any single master calendar hearing session is scheduled to address the cases of many dozens of respondents, one by one. As a practical matter, on average, no more than a few minutes can be allotted to each case in order to complete the assigned morning or afternoon docket. Nevertheless, the immigration judge must ensure that each respondent fully understands the proceedings—*i.e.,* why they are there and what the process will entail. The immigration judge must also ensure that each respondent understands the contents of the NTA, and all potentially available claims for relief.[10] The immigration judge does this by directly questioning the respondent, often through an interpreter, and gauging whether they understand the proceedings-- and, in particular, the NTA. This can be a lengthy colloquy with the respondent; EOIR master calendar hearing guidance for questioning *pro se* respondents runs seven pages.[11] One of our *amici*, a former immigration judge, presided over thousands of hearings involving children—some old enough to speak for themselves, others barely verbal. This former judge reports that one of the most surreal and heartbreaking aspects of that role was having to "swear in" children who could not yet speak in full sentences, let alone understand the legal implications of asylum, persecution, or statutory bars. This former judge vividly recalls one morning when a two-year-old was brought into her courtroom for a master calendar hearing, clinging to a stuffed animal and a juice box. The child could barely walk down the aisle to the respondent's table. A "friend of the court" – the child had no lawyer – gently lifted the girl into the chair, her feet dangling well above the floor. The judge asked, as she always did, whether this girl understood why she was in court that day. The girl blinked and reached for the microphone, giggling at the feedback noise. She had no idea where she was or why.

In cases where the respondent has no relief and is seeking voluntarily to return to his or her home country, counsel is essential to helping the immigration judge be satisfied that the child

---

[10] *See* 8 C.F.R. § 1240.10(a) (listing requirements of immigration judge to advise respondent); 8 C.F.R. § 1240.11(a)(2) ("The immigration judge shall inform the alien of his or her apparent eligibility to apply for any of the benefits enumerated in this chapter.").

[11] *See* EOIR, *Master Calendar Checklist for the Immigration Judge/The Pro Se Respondent*, *available at* https://www.justice.gov/sites/default/files/eoir/legacy/2014/08/15/Script_MC_Checklist.pdf (last accessed Mar. 10, 2025).

understands the consequences of pleading and that proper steps have been followed to ensure the child's safe return. In such a case, the proceedings can end quickly, sometimes at the first master calendar hearing. (Remember, as discussed above, when the child has no lawyer or guardian, the court cannot accept such a pleading but must hold a hearing on the matter.)[12]

Often, though, the first master calendar hearing will not resolve the proceedings for an unaccompanied minor in ORR custody. Additional time is required to identify an appropriate adult for the release of the child from custody. Once an adult is identified the child can be released into their custody and matter will typically be transferred to a non-detained docket to allow the adult to secure paid or pro bono counsel for the minor. Conversely, if no viable adult is available, the child will formally be transferred to a foster care facility and would need counsel to represent them in the state and immigration court proceedings required to secure special immigrant juvenile visa status ("SIJS"). In other instances where the child is about to turn 18, counsel is required to ensure that an asylum application, if appropriate, is filed with USCIS to preserve their rights.

After a number of continuances, if the child remains in ORR custody, the respondent will be required to plead to the NTA. Again, the immigration judge must ensure that the respondent understands their pleadings and available relief. Without the assistance of counsel provided by the legal representation and friend of court services funded by ORR, the amount of time and effort that is required of an immigration judge to ensure proper understanding of the proceeding by a child is quite burdensome. This is particularly so because two of the most likely applications for relief, SIJS and asylum under the protections offered by the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), require that the child prepare and file documents with other courts or agencies. For example, to seek SIJS requires the child first to secure a state court order recognizing the neglect, abuse, or abandonment of the child by at least one parent. This process is so complex that even an adult without counsel cannot be expected to successfully navigate the system. It is hard to overstate the role and value of counsel for unaccompanied minors in ORR custody. By virtue of their age and custody status, it is nearly impossible for unaccompanied minors, some of whom are

---

[12] *See* 8 C.F.R. § 1240.10(c).

7

toddlers, to not only represent themselves in immigration court proceedings but to complete the necessary out-of-court steps that are required to advance and present their case both in and out of immigration court proceedings.

When the preliminary process of the master calendar hearing has been completed, the immigration court will schedule the merits hearing to adjudicate any remaining issues, typically the claims for relief. In the case of an unaccompanied child with an asylum claim, immigration court hearings will be paused to allow the USCIS asylum office to interview the child and make a determination on the asylum application in the first instance.

### C.  The Merits Hearing

The merits hearing is a multi-hour adversarial hearing in which DHS is represented by an Assistant Chief Counsel ("ACC") working for the Office of Principal Legal Advisor in Immigration and Customs Enforcement ("ICE"). An interpreter is provided for respondents who do not speak English fluently. The judge, as discussed above, is duty-bound to help develop the record and ensure that the respondent is able to articulate their claims for relief.

Even before the hearing commences, though, it is the respondent's burden to present evidence to substantiate their claims. If they have no attorney, they must collect relevant documents without legal guidance and file them with the court. Even for adults, it is difficult to document a case when due to lack of representation, the respondent does not know what they need to prove. For unrepresented children, this task is virtually impossible for them to comprehend, much less accomplish.

Here again, counsel funded by the legal representation and friend of court services is an invaluable part of the process. If the child is transferred to foster care or else remains in custody, until funding was recently terminated, the programs provided them with representation so that they could properly prepare and present their case. Without such representation, the child can almost certainly not file a brief, call witnesses or articulate his or her eligibility for relief from removal. Instead, it falls on the immigration judge to help the child build the record and explain a basis for relief, but the immigration judge cannot, of course, find witnesses and produce relevant documents.

### D.     Example:  Navigating the Path Through Immigration Court via SIJS

To elucidate this process with more specificity, let us present the example of "Mariana," a composite drawn from hundreds of unaccompanied children who have appeared before immigration judges who oversee the unaccompanied juvenile docket, to illustrate how an unaccompanied minor is able to navigate the immigration court system with counsel to prove her eligibility for SIJS.

Mariana was just 15 years old when she arrived at the U.S.-Mexico border, having made the dangerous journey from Honduras entirely on her own. Mariana's father abandoned the family when she was very young, and her mother—overwhelmed and impoverished—could no longer care for her. With no one left to turn to and growing threats in her community, Mariana made the heart-wrenching decision to leave home in search of safety.

When she crossed the U.S.-Mexico border, Mariana was encountered by U.S. Customs and Border Protection ("CBP") officers and immediately taken into federal custody. After a brief stay in a CBP holding facility, she was transferred to ORR, where she was placed in a licensed shelter for unaccompanied children.

Because she had no parent or legal guardian in the United States, and her entry was without inspection, Mariana was promptly placed in removal proceedings before an immigration judge. She received her NTA while still in ORR custody, with a first hearing scheduled even before she had a confirmed sponsor (*i.e.,* an adult to take custody of her) or any opportunity to understand her rights.

Without legal representation, Mariana would have faced the terrifying prospect of standing before an immigration judge alone. At 15, she had no understanding of U.S. immigration law, no documents to support any relief, and no one to explain her options to her. Mariana could have easily been ordered removed or felt pressured to accept voluntary departure.

But Mariana was connected with an attorney through ORR-funded legal representation services. The attorney quickly identified that Mariana might qualify for SIJS and took immediate steps to preserve her eligibility.  This included finding a suitable sponsor.  Mariana's older cousin in California was identified and cleared, and ORR released Mariana to her cousin's care. Her attorney then filed for guardianship in California probate court.  The state court issued a guardianship order and made the requisite SIJS predicate findings, specifically that (1) Mariana could not be reunified with either parent

9

due to abandonment by her father and neglect and inability to provide care by her mother, and (2) it was not in Mariana's best interest to return to Honduras, where she had no safe family or support network.

With the state court order in hand, and Mariana still under juvenile court jurisdiction, her attorney filed Form I-360 with USCIS, along with evidence of her age, custody, and the predicate state court order. While the petition was pending, Mariana continued attending school and ICE check-ins, with her attorney's support. Eventually, USCIS approved the petition, classifying her as a Special Immigrant Juvenile.

With this USCIS SIJS approval, Mariana was now eligible to come back to immigration court to adjust status, but only once a visa number became available in the EB-4 category. Her attorney coordinated the scheduling and filing of the I-485 permanent resident petition with the immigration judge and scheduled a merits hearing on that petition.

At her merits hearing, Mariana, through counsel, proved her eligibility for permanent residency. Her lawyer presented her approved I-360, proof of visa availability, and positive equities, including school attendance, community involvement, letters of support from her cousin and school counselor, and a declaration describing her past trauma and her desire to remain in a safe, stable home. Although DHS did not oppose the adjustment, Mariana's ORR-funded attorney was essential to organizing, filing and presenting this evidence to the court. The immigration judge granted the application from the bench,

Now, Mariana lives with her cousin, volunteers at a local youth center, and is completing her college courses. Her life is stable, and her future is full of possibilities. Had she not been connected to an attorney through the ORR-funded legal representation program, she likely would have been returned to a dangerous environment—or lost her eligibility for SIJS altogether. This composite example is a vivid reminder that legal representation for unaccompanied children is not a luxury—it is essential to ensure access to justice and protect children from harm.

### III.     ARGUMENT

We are concerned that the U.S. Department of Health and Human Services, in suddenly terminating funding for legal representation and friend of court services, did not take time to consider the value it provides, both in affording protection and due process to highly vulnerable child

respondents, and in aiding the efficient operation of the overburdened immigration courts. Even a temporary suspension of these services would be disruptive to immigration court proceedings and would only increase the backlog of pending cases.

Critically, unaccompanied children in immigration court may be eligible for relief from removal through a child-specific avenue known as Special Immigration Juvenile Status ("SIJS"). However, the SIJS process requires an applicant to first obtain a state court order, after which a Form I-360 Special Immigrant petition must be filed with USCIS. Should USCIS approve that petition, the applicant may then seek lawful permanent residence before the immigration judge through a process known as adjustment of status.[13] The entire process is beyond the capabilities of an adult much less an unaccompanied child to pursue. The assistance provided through ORR-funded legal representation to SIJS applicants is invaluable to both minor respondents and the immigration court. Without legal guidance and representation, a removal order is almost inevitable.

### A. Representation of Unaccompanied Children Helps Immigration Judges Fulfill their Statutory Duties

As discussed at more length above, federal courts of appeals have repeatedly held that immigration judges have a statutory obligation to help unrepresented respondents understand the proceedings, establish the record and present information "necessary for a reasoned decision . . . ." *Barragan-Ojeda v. Sessions*, 853 F.3d 374, 381 (7th Cir. 2017). Reading a rote script is not enough; the immigration judge's duty is to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Agyeman v. INS*, 296 F.3d 871, 877 (9th Cir. 2002) (quoting *Jacinto v. INS*, 207 F.3d 725, 733 (9th Cir. 2000)). As the Fourth Circuit illustratively explained, *pro se* respondents must not be "thrown into removal proceedings and left to sink or swim without adequate assistance from the immigration judge." *Quintero*, 998 F.3d at 628 (citing *Diop*, 807 F.3d at 76).

---

[13] *See C.J.L.G. v. Barr*, 923 F.3d 622, 626 (9th Cir. 2019) (en banc) (remanding where the immigration judge had not informed the minor petitioner of his possible eligibility for SIJ status, in violation of the obligation under 8 C.F.R. § 1240.11(a)(2) to inform respondents subject to removal of apparent eligibility for immigration benefits).

Nearly every unrepresented respondent struggles mightily to "swim" in immigration court, and often they "sink": the process is unfamiliar (even to most lawyers), the law is complex, and the government is represented by a capable lawyer in these adversarial proceedings. For children, the services provided by the ORR-funded legal representation and friend of court programs are the difference between sinking and swimming. Those services enable the child respondent navigate the deep, unfamiliar waters that are immigration court proceedings, helping to protect their rights and present their potential claims.

Given the overwhelming backlog of pending cases in immigration court—nearly 3.6 million cases as of the end of fiscal year 2024[14]—immigration judges have limited time to engage in the intensive assistance required for *pro se* unaccompanied child respondents. And in SIJS cases, immigration judges lack the ability to assist unaccompanied children through the preliminary steps before the state court and USCIS. Without funding for legal representation and friend of court services, immigration judges will find it almost impossible to discharge their statutory duties in cases involving unaccompanied children.

### B. Representation of Unaccompanied Children is Efficient

In our view, the ORR legal representation and friend of court programs are incredibly efficient. Having a lawyer assisting a child speeds up immigration court proceedings, reduces ORR housing expenditures, limits *in absentia* orders, and decreases appeals to the BIA and the federal courts. Imagine how the backlog will be exacerbated when the immigration judge, without any assistance, needs to manage a docket of dozens of unknowledgeable, unrepresented children. In short, the legal representation and friend of court services benefit both the immigration court system as well as the federal courts, which are already inundated with appeals from the agency.[15]

---

[14] *See* Holly Straut-Eppsteiner, CONG. RSCH. SERV., IN12463, IMMIGRATION COURTS: DECLINE IN NEW CASES AT THE END OF FY2024 2 (2024), https://crsreports.congress.gov/product/pdf/IN/IN12463.

[15] BIA appeals accounted for 80% of administrative agency appeals and constituted the largest category of administrative agency appeals filed in each federal court of appeal except the DC Circuit. *Federal Judicial Caseload Statistics 2024*, U.S. COURTS, https://www.uscourts.gov/data-news/reports/statistical-reports/federal-judicial-caseload-statistics/federal-judicial-caseload-statistics-2024 (last visited Mar. 10, 2025).

C.     **The legal representation and friend of court services  Promotes Due Process**

legal representation and friend of court services  is essential to providing due process to child respondents in immigration court.  Due process requires the immigration courts to provide a "full and fair hearing" to those who appear before it.  *Quintero*, 998 F.3d at 623–24 (collecting cases).  When unknowledgeable minors are brought before these courts, the assistance of trained, knowledgeable advocates is absolutely necessary to ensure that due process is satisfied. legal representation and friend of court services are an essential component of the immigration court system for unrepresented child respondents. Furthermore, it is our understanding that the announcement to terminate the legal representation and friend of court services are timed alongside a plan to create expedited dockets for unaccompanied children.  Terminating this program will eliminate due process for this vulnerable population, leading to unfairness to respondents and significant judicial inefficiency. Immigration judges need the assistance of lawyers for children to deliver the justice that is required for the most vulnerable respondents who appear before the immigration courts.

One of the *amici*, a former immigration judge, reports a vivid example of what due process truly means in this context – very much the difference between life and death.  In one case in this judge's courtroom, a 14-year-old boy stood before the court alone—no parent, no guardian—because he was still in ORR custody and no appropriate adult had yet been identified to care for him. He had also not been assigned legal counsel. The boy sat nervously, fidgeting, clearly trying to hold himself together. When the judge gently asked him to state his name for the record, he mumbled it to the interpreter, barely audible.

The judge was surprised when the boy said that he wanted to return to his home country—immediately and without even speaking to an attorney. The request felt jarring to the judge. While the judge had previously seen teenagers voluntarily request to return to their home countries, something about this child's demeanor and the urgency in his voice raised red flags. The judge paused the hearing and granted a short continuance so the boy could speak with legal counsel.

At the next hearing, everything changed. Now with the support of an attorney, the boy finally shared that he had been trafficked to the United States. His traffickers back in his home country—his so-called "handlers"—were pressuring him to return home so they could regain control of him. Until he

had the safety and trust of an attorney-client relationship, he had been too frightened to speak up. Once he did, it became clear that he was eligible for protection under U.S. law. That critical pause, that small window of time to speak with counsel, may very well have saved his life.

## IV. CONCLUSION

As former immigration judges and members of the Board of Immigration Appeals, we are deeply concerned that an overwhelmed immigration court system is being deprived of the resources and structure it needs to function properly, particularly when it comes to the most vulnerable individuals who appear before the courts. Eliminating the funding for legal representation and friend of court services is a step in the wrong direction, burdening immigration judges, reducing efficiency, and severely limiting due process for children.

Respectfully submitted,

Dated: March 31, 2025        **AKIN GUMP STRAUSS HAUER & FELD LLP**

By      /s/ *Ashley Vinson Crawford*
            Ashley Vinson Crawford

*Counsel to Amici Former Immigration Judges & Former Members of the Board of Immigration Appeals*

# APPENDIX A

## Former Immigration Judges and Members of the Board of Immigration Appeals

Hon. Steven Abrams, Immigration Judge, New York, Varick St., and Queens Wackenhut, 1997-2013

Hon. Terry A. Bain, Immigration Judge, New York, 1994-2019

Hon. Sarah M. Burr, Assistant Chief Immigration Judge and Immigration Judge, New York, 1994-2012

Hon. Jeffrey S. Chase, Immigration Judge, New York, 1995-2007

Hon. George T. Chew, Immigration Judge, New York, 1995 - 2017

Hon. Joan V. Churchill, Immigration Judge, Washington, D.C./ Arlington, VA - 1980 - 2005

Hon. Lisa Dornell, Immigration Judge, Baltimore, 1995-2019

Hon. Bruce J. Einhorn, Immigration Judge, Los Angeles, 1990-2007

Hon. Cecelia M. Espenoza, Appellate Immigration Judge, Board of Immigration Appeals, 2000-2003

Hon. Noel A. Ferris, Immigration Judge, New York, 1994-2013

Hon. James R. Fujimoto, Immigration Judge, Chicago, 1990-2019

Hon. Annie S. Garcy, Immigration Judge, Newark, NJ, and Philadelphia, 1990-2023

Hon. Gilbert Gembacz, Immigration Judge, Los Angeles, 1996-2008.

Hon. Jennie Giambastiani, Immigration Judge, Chicago, 2002-2019

Hon. Alberto E. Gonzalez, Immigration Judge, San Francisco, 1995 - 2005

Hon. John F. Gossart, Jr., Immigration Judge, Baltimore, 1982-2013

Hon. Paul Grussendorf, Immigration Judge, Philadelphia and San Francisco, 1997-2004

Hon. Miriam Hayward, Immigration Judge, San Francisco, 1997-2018

Hon Sandy Hom, Immigration Judge, New York, 1993-2018

Hon. Charles M. Honeyman, Immigration Judge, New York and Philadelphia, 1995-2020

Hon. Rebecca Jamil, Immigration Judge, San Francisco, 2016-2018

Hon. William P. Joyce, Immigration Judge, Boston, 1996-2002

Hon. Edward F. Kelly, Appellate Immigration Judge, Board of Immigration Appeals, 2017-2021; Deputy Chief Immigration Judge, 2013-2017; Assistant Chief Immigration Judge, EOIR Headquarters, 2011-2013.

Hon. Carol King, Immigration Judge, San Francisco, 1995-2017

Hon. Eliza C. Klein, Immigration Judge, Miami, Boston, Chicago, 1994-2015; Senior Immigration Judge, Chicago, 2019-2023

Hon. Christopher M. Kozoll, Immigration Judge, Memphis, 2022-2023

Hon. Elizabeth A. Lamb, Immigration Judge, New York, 1995 - 2018

Hon. Donn L. Livingston, Immigration Judge, Denver, New York, 1995 - 2018

Hon. Dana Leigh Marks, Immigration Judge, San Francisco, 1987-2021

Hon. Margaret McManus, Immigration Judge, New York, 1991-2018

Hon. Steven Morley, Immigration Judge, Philadelphia, 2010-2022

Hon. Robin Paulino, Immigration Judge, San Francisco, 2016-2020

Hon. Charles Pazar, Immigration Judge, Memphis, 1998-2017

Hon. George Proctor, Immigration Judge, Los Angeles, San Francisco, 2003-2008

Hon. Laura L. Ramirez, Immigration Judge, San Francisco, 1997-2018

Hon. Lory D. Rosenberg, Appellate Immigration Judge, Board of Immigration Appeals, 1995-2002

Hon. Susan G. Roy, Immigration Judge, Newark, 2008-2010

Hon. Paul W. Schmidt, Chairperson and Appellate Immigration Judge, Board of Immigration Appeals, 1995-2003; Immigration Judge, Arlington, VA, 2003-2016

Hon. Noelle Sharp, Assistant Chief Immigration Judge, Houston, 2021-2025

Hon. Patricia M. B. Sheppard, Immigration Judge, Boston, 1993-2006

Hon. Helen Sichel, Immigration Judge, New York, 1997-2020

Hon. Denise Slavin, Immigration Judge, Miami, Krome, Baltimore, 1995-2019; Senior Immigration Judge, Orlando, 2023-2024

Hon. Andrea Hawkins Sloan, Immigration Judge, Portland, 2010-2017

Hon. A. Ashley Tabaddor, Immigration Judge, Los Angeles, 2005-2021

Hon. Gita Vahid, Immigration Judge, Los Angeles, 2002-2024

Rebecca Walters, Assistant Chief Immigration Judge, Alexandria/Annandale VA, 2021-2025

Hon. Polly A. Webber, Immigration Judge, San Francisco, 1995-2016

Hon. Robert D. Weisel, Assistant Chief Immigration Judge, Immigration Judge, New York, 1989-2016