UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., <br><br> Defendants. | Case No. 25-cv-02847-AMO <br><br> **ORDER GRANTING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER** <br><br> Re: Dkt. No. 7 |

This matter comes before the Court on a Motion for a Temporary Restraining Order filed by Plaintiff nonprofit organizations that received funding from Defendants to provide legal representation and other legal services to unaccompanied children in immigration courts across the country.[1] Plaintiffs challenge the actions of Defendants the United States Department of Health and Human Services ("HHS"), HHS's Office of Refugee Resettlement ("ORR"), and the United States Department of the Interior (collectively, "Government" or "Defendants") in the recent termination of funding for counsel representing unaccompanied children in immigration proceedings. Having considered Plaintiffs' motion, Defendants' response, and the arguments of the Parties at the April 1, 2025 hearing, the Court hereby **GRANTS** Plaintiffs' emergency Motion for a Temporary Restraining Order, effective 8:00 a.m. on April 2, 2025. The Court VACATES the previous briefing schedule set at the conclusion of the hearing on April 1, 2025, and it SETS a

---

[1] Plaintiffs include the following organizations: Community Legal Services in East Palo Alto, Social Justice Collaborative, Amica Center for Immigrant Rights, Estrella del Paso, Florence Immigrant and Refugee Rights Project, Galveston-Houston Immigrant Representation Project, Immigrant Defenders Law Center, National Immigrant Justice Center, Northwest Immigrant Rights Project, Rocky Mountain Immigrant Advocacy Network, and Vermont Asylum Assistance Project (collectively, "Plaintiffs").

1  preliminary injunction briefing schedule at the conclusion of this Order.  The Court enters the
2  following findings of fact and conclusions of law supporting the maintenance of status quo ante
3  pending further briefing from the parties.

## I. BACKGROUND

Plaintiffs previously received funding for their work from ORR disbursed through Acacia Center for Justice.  Compl. ¶¶ 64-65; 88.  Defendants issued a letter to Acacia Center for Justice on March 21, 2025, terminating the contract line items through which HHS and ORR provided funding for counsel for unaccompanied children in immigration court.  Compl. ¶ 11; Biswas Decl., Ex. 2 (ECF 24-3, the "Cancellation Order").  The letter ordered Plaintiffs to "immediately stop all work" on their ongoing funded representations.  *Id.*  Plaintiffs share the mission of ensuring legal representation for the thousands of unaccompanied children in immigration proceedings throughout the country.  Compl. ¶ 102.  Congress has consistently appropriated funds for this purpose, including the most recent appropriation for over $5 billion to ensure "all children . . . have access to counsel in their immigration proceedings."  Compl. ¶¶ 77-87.

Plaintiffs contend that the Government's Cancellation Order violates its obligations under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), which requires that the Government "shall ensure, to the greatest extent practicable," that all unaccompanied children receive legal counsel to represent them in "legal proceedings" and to "protect them from mistreatment, exploitation, and trafficking."  Pub. L. No. 110-457, § 235(c)(5), 122 Stat. 5044, 5079.  Plaintiffs argue that the Cancellation Order additionally violates the Government's obligations under ORR's own "Foundational Rule," which requires the Government to "fund legal service providers to provide direct immigration legal representation" to unaccompanied children if there are "available appropriations" and to ensure children receive a legal orientation, consultation with a lawyer, and ongoing access to lawyers. 45 C.F.R. § 410.1309(a) (2024).  Plaintiffs allege that Defendants' Cancellation Order conflicts with these legal requirements and thus violates the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). Compl. ¶¶ 127-46.

In response to the Cancellation Order, Plaintiffs state that they are forced to choose between few harsh alternatives, including continuing to provide unfunded legal representation in the face of limited resources; cutting other vital organizational programs; laying off, furloughing, or terminating staff; or seeking to withdraw from their ongoing representation duties. *See, e.g.*, VAAP Decl. ¶ 21.

## II.     DISCUSSION

The Court has jurisdiction over Defendants and the subject matter of this action. *See* Administrative Procedure Act, 5 U.S.C. § 702. Contrary to the Government's assertions, this is not a contract dispute in which Plaintiffs seek money damages such that their suit belongs before the Federal Court of Claims. *Pacito v. Trump*, No. 2:25-CV-255-JNW, 2025 WL 893530, at *4-7 (W.D. Wash. Mar. 24, 2025). A temporary restraining order against Defendants, as provided below, is necessary until the Court can consider Plaintiff States' forthcoming motion for a preliminary injunction.

### A.     Standing

The Cancellation Order "perceptibly impair[s]" the services Plaintiffs are driven to provide. *See E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 663 (9th Cir. 2021). And further, the Cancellation Order caused the Plaintiff organizations "to divert their already limited resources" to ensure ongoing representation for unaccompanied children despite the halt in government funding. *See E. Bay Sanctuary Covenant*, 993 F.3d at 663; *see also, e.g.*, MIRC Decl. ¶ 24 (showing diversion of resources from one part of the organization's services to ensure client representation). Plaintiffs also have standing to challenge the Order because of the new and ongoing operational costs they allege. *City and Cnty. of San Francisco v. United States Citizenship and Immigration Servs.*, 944 F.3d 773, 787-88 (9th Cir. 2019). Plaintiffs have suffered near-immediate financial impacts, and they have thus made a sufficient showing of concrete and imminent economic injury. *See, e.g.*, Estrella del Paso Decl. ¶ 13 (describing staff furloughs in response to Cancellation Order). Additionally, Plaintiffs' Administrative Procedure Act claims fall within the "zone of interests" protected by the TVPRA because their interests in ensuring representation for children in immigration proceedings "are 'marginally related to' and

3

'arguably within' the scope of the statute." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 668 (citing *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012)).  In sum, Plaintiffs have standing to bring this suit.

### B. Entitlement to Temporary Relief

Federal Rule of Civil Procedure 65 authorizes a trial court to grant a temporary restraining order "to preserve the status quo and the rights of the parties until a final judgment issues in the cause." *See Ramos v. Wolf*, 975 F.3d 872, 887 (9th Cir. 2020) (quoting *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010)).  The status quo in this context "refers not simply to any situation before the filing of a lawsuit, but instead to 'the last uncontested status which preceded the pending controversy[.]' " *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)).  "The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." *Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

To obtain preliminary injunctive relief, the moving party must show: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief, (3) the balance of equities tips in the favor of the moving party, and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Where the government is a party, courts merge the analysis of the final two *Winters* factors, the balance of equities and the public interest. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).  Courts "explore the relative harms to applicant and respondent, as well as the interests of the public at large." *Barnes v. E-Sys., Inc. Grp. Hosp. Med. & Surgical Ins. Plan*, 501 U.S. 1301, 1305 (1991) (internal quotation marks and citation omitted).  The *Winters* factors may be evaluated on a sliding scale, such that preliminary relief may be issued when the moving party demonstrates "that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (citation omitted).

Here, the Court finds that Plaintiffs raise serious questions going to the merits. In particular, the TVPRA requires that the government "shall ensure, to the greatest extent practicable," that all unaccompanied children receive legal "counsel to represent them in legal proceedings" and to "protect them from mistreatment, exploitation, and trafficking." 8 U.S.C. § 1232(c)(5). The Government argues that HHS's funding decisions under the TVPRA and the Foundational Rule remain discretionary and do not mandate funding of direct legal representation such as that provided by Plaintiffs. But this raises a "serious question" going to the merits – whether the TVPRA requires the Government to ensure the provision of counsel for unrepresented children in immigration proceedings prior to the cancellation of funding for direct legal representation by organizations such as Plaintiffs. This serious question weighs in favor of reinstating the status quo ante while the record and the parties' arguments are developed further.

Plaintiffs have also shown that they are likely to suffer irreparable harm in the absence of preliminary relief. Defendants' termination of funding has impacted Plaintiffs, forcing them to issue layoff notices and threatening to require them to dismiss their highly-specialized and seasoned attorneys. *See* ImmDef Decl. ¶¶ 20-23. Relevant to the issue of standing raised above, Defendants' termination of funding for direct legal representation directly interferes with Plaintiffs' missions, impeding their ability to provide the direct legal representation of unaccompanied children in immigration proceedings that is fundamental to Plaintiffs' core activities. RMIAN Decl. ¶ 22; VAAP Decl. ¶¶ 21-22; NWIRP ¶¶ 13-15. The irreparable harm resulting from Defendants' actions weighs in favor of temporary injunctive relief.

The Government argues that it would suffer harm in the form of being compelled to spend down congressionally appropriated funds for the unaccompanied children in immigration proceedings during the pendency of the preliminary injunctive relief. Not so. Terminating funding for direct legal representation for unaccompanied children, without any plan to ensure continuity in representation, potentially violates Congress's express directive in the TVRPA and ORR's own commitments in the Foundational Rule. Moreover, courts regularly find that "[t]here is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (citations omitted). "To the

5

contrary, there is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.' " *Id.* (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)). The Government fails to convince that it would suffer harm at this stage.

On the other hand, the maintenance of funding for direct legal representation services furthers the critical public interests of ensuring children have access to legal representation and protection from human trafficking. Indeed, ORR itself recognizes "that most unaccompanied children need legal services to resolve their immigration status and that representation appears to have a significant impact on both the court appearance rate and the outcome of cases for unaccompanied children." Foundational Rule, 89 Fed. Reg. 34384, 34529; *see also id.* at 34526 (stating ORR's goal of "100 percent legal representation of unaccompanied children."). The Court additionally finds that the continued funding of legal representation for unaccompanied children promotes efficiency and fairness within the immigration system. *See generally* Br. for Amicus Curiae Former Immigration Judges & Former Members of the Board of Immigration Appeals (ECF 28). A temporary restraining order enjoining the Cancellation Order serves the public interest.

In sum, the balance of equities tips sharply toward the Plaintiffs and the public interest strongly weighs in favor of entering temporary relief.

//
//
//
//
//
//
//
//
//
//

### III. TEMPORARY RESTRAINING ORDER

For the foregoing reasons, the Court hereby **GRANTS** Plaintiffs' motion for Temporary Restraining Order. The Court hereby **ORDERS** that:

> Defendants are **ENJOINED** from withdrawing the services or funds provided by the Office of Refugee Resettlement ("ORR") as of March 20, 2025, under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 8 U.S.C. § 1232(c)(5), and ORR's Foundational Rule, 45 C.F.R. § 410.1309(a)(4), particularly ORR's provision of funds for direct legal representation services to unaccompanied children. This injunction precludes cutting off access to congressionally appropriated funding for its duration.

The Court deems no security bond is required under Rule 65(c). This injunction shall remain in effect until Wednesday, April 16, 2025, at 7:59 a.m. PST.

The Court **SETS** the following briefing schedule for Plaintiffs' Motion for Preliminary Injunction:

- Plaintiffs' opening brief shall be filed by no later than 4:00 p.m. on Friday, April 4, 2025.
- Defendants' opposition brief shall be filed by no later than 4:00 p.m. on Friday, April 11, 2025.
- Plaintiffs' reply brief shall be filed by no later than noon on Monday, April 14, 2025.

The Court will set a remote hearing on Plaintiffs' Motion for Preliminary Injunction if it deems one necessary.

**IT IS SO ORDERED.**

Dated: April 1, 2025

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**