IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,<br><br>Defendants. | Case No. 3:25-cv-2847<br><br>**SUPPLEMENTAL DECLARATION OF ROXANA AVILA-CIMPEANU (FIRRP) IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |

# SUPPLEMENTAL DECLARATION OF ROXANA AVILA-CIMPEANU, DEPUTY DIRECTOR, THE FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT

*I, Roxana Avila-Cimpeanu, make the following statements on behalf of myself and The Florence Immigrant and Refugee Rights Project. I certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. § 1746.*

1. I incorporate my Declaration in Support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction (Dkt. 7-4) as if fully set forth herein.

2. My name is Roxana Avila-Cimpeanu. I am a licensed attorney and a member in good standing in the State Bar of Arizona. I am currently employed as Deputy Director of the Florence Immigrant & Refugee Rights Project ("Florence Project" or "FIRRP"). I joined the Florence Project on September 6, 2016, and have served in my current role since September 2024. Before I assumed my current position, I previously served as Children's Legal Program Manager, Managing Attorney for the Children's Pro Bono Program, Pro Bono Mentor, Staff Attorney, and Law Graduate with the Florence Project's Children's Legal Program serving unaccompanied immigrant children in Arizona. During my time at the Florence Project, I have personally provided free legal services, including friend of court services, direct representation, legal orientation and education, and pro bono mentorship, to at least 140 children. Additionally, as Children's Legal Program Manager and Deputy Director I have supervised attorneys, pro bono volunteer attorneys, law graduates, accredited representatives, legal assistants, intake specialists, and social workers who have provided free legal services, both direct representation and pro se services, to thousands of individuals detained in Office of Refugee Resettlement "ORR" and ICE custody in Arizona.

3. Since filing the Motion for Temporary Restraining Order (TRO) on March 27, 2025, the Florence Project has continued to provide services to our clients, drawing on funding from other sources and fundraising to ensure that we are able to provide legal representation, pro bono placement and mentoring, additional legal services, court preparation, and friend of court services to unrepresented children in keeping with our mission for as long as we can responsibly financially manage to do so. Since the termination order on March 21, 2025, Florence Project staff have provided over 500 hours of programmatic services that would have fallen under terminated portions of the UCP, including meeting with clients, preparing necessary applications and filings, preparing individuals for upcoming hearings and interviews, attending Immigration Court hearings, attending juvenile court hearings necessary for children who have been abandoned, abused, or neglected to seek immigration relief, and collecting and tracking necessary data and documentation for case management.

4. FIRRP attorneys have several important and imminent hearings for clients, for which withdrawal of representation would cause great harm to the children's cases and lives. FIRRP staff have at least eleven EOIR hearings and fourteen state court hearings scheduled for clients in the coming weeks. The hearings are essential to avoid removal while the children seek relief, including state court predicate orders for abused, abandoned, or neglected children.

5. The significant harms to our clients and our organizational mission that will take place if we are unable to continue our representation and other legal services are being exacerbated by current government policies that are accelerating the speed and need for immediate legal services. For example, in the Tucson Immigration Court, we have seen a return to so-called "rocket dockets," in which the government is rapidly scheduling a child to appear in court, moving them quickly into removal proceedings, even knowing that many such children are likely to reunify with sponsors outside of Arizona and should have their cases scheduled in those other locations. Indeed, in the Tucson Immigration Court children's names are being added to the docket before their Notice to Appear, the official charging document, is even formally filed, raising serious due process concerns. Rocket dockets historically have been used to pressure children to accept removal orders quickly before they have an opportunity to feel settled and supported and often undermine due process for children. Rocket dockets not only increase the speed at which Florence Project attorneys have to prepare cases of clients we are representing, but also create an increased need for Friend of Court services that have been cut under the UCP termination. Since the Florence Project began serving children in 2000, a central tenet of our mission has been that no child should have to stand alone in court. As Friend of Court, Florence Project staff meet that mission even when we cannot represent a child, by being present to stand with the child and help the Court understand key facts that are relevant to assess the appropriate next steps in the case, such as reunification status, best language, and potential forms of relief. As of the date of signing, Florence Project is aware of at least eleven cases moving forward next week on the rapid docket in Tucson, including four clients we already represent and seven children who do not have counsel, but to whom we would provide Friend of Court services. In two of these cases, the children who are on the court's docket do not appear to have a properly filed and served Notice to Appear.

6. The UCP contract termination also has aligned with increased need for legal services on a short timeframe in the context of children's asylum cases. Specifically, on or about March 27, 2025, Florence Project staff began to receive notices from USCIS of asylum office interviews being scheduled in cases with pending asylum applications. As of April 2, 2025, Florence Project staff have received asylum interview notices for at least seven clients, many with less than two-weeks' notice to prepare. Florence Project attorneys did not get any prior notice that an asylum office circuit ride – the term used when asylum officers come to Arizona to do many asylum interviews at one time – was planned prior to receiving

2

notice of the scheduled interviews. Due to this asylum office circuit ride, Florence Project attorneys have had to quickly reach out to clients to schedule client meetings, conduct final preparation and supplemental briefing for interviews, and otherwise coordinate the logistics for an asylum interview including identifying and contracting with interpreters – in asylum interviews, the petitioner must provide a competent interpreter, which is also a cost that typically is paid for through now terminated provisions of the UCP. Asylum interviews are very traumatic for children and careful preparation and attention must be paid to avoid re-traumatization and to prepare children to talk about the worst days of their lives with a complete stranger. Additionally, attorneys must prepare updated, supplemental briefings in order to support their client's claim, which often requires translation of documents and evidence from the client's country of origin. With the loss of UCP-funded interpreter services, it has been extremely challenging to prepare the children, prepare the supplemental briefing, and schedule an interpreter for the hearing. This is further complicated by the fact that many FIRRP child clients speak rare Mayan indigenous languages, or unique dialects of less common languages for which interpreters are not readily available. Although a TRO has been entered in this case, the Florence Project has yet to receive any guidance about whether interpretation services are again available under the UCP and is currently paying for these services through other funding.

7. Six Florence Project clients also will be turning 18 in the month of April, and do not have any current sponsorship options. In such cases, Florence Project attorneys and social workers routinely work to identify safe, viable placements for these children to help ensure that children are placed in the least restrictive setting, as required under law[1], rather than sending these vulnerable youth to adult detention. Many such clients may be eligible for the Unaccompanied Refugee Minor program ("URM"), however children need support both in applying for the program and finding interim housing options since the URM program has been at capacity for the past 6 months. While this work historically was partially supported through the UCP, Florence Project is currently drawing on other funds to try to ensure that children who turn 18 in custody have options for release and do not experience the trauma of being moved to adult immigration detention. Furthermore, the Florence Project had received referrals for children ORR is intending to potentially transfer to the local Unaccompanied Refugee Minor Program, and FIRRP would be unable to offer representation to children in the program, resulting in a potential loss of counsel for the children.

8. Additionally, last week, five clients were targeted under DHS' so-called "missing children" visits, despite the children having active cases at USCIS and not actually being missing. In every case, Florence Project attorneys have had to work with our clients and their sponsors

---

[1] *See* Garcia Ramirez v. ICE, No. CV 18-508 (RC), 2021 WL 4284530, at *8, *14 (D.D.C. Sept. 21, 2021).

to help them know how to respond and answer their questions in response to this traumatizing, fear-inducing experience.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 4 of April 2025, in Seattle, Washington.

_Roxana Avila-Cimpeanu_
Roxana Avila-Cimpeanu
Deputy Director
The Florence Immigrant and Refugee Rights Project

4