IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, <br><br> Defendants. | Case No. 3:25-cv-2847 <br><br> **SUPPLEMENTAL DECLARATION OF WENDY YOUNG (KIND) IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |

0

## SUPPLEMENTAL DECLARATION OF WENDY YOUNG, PRESIDENT OF KIDS IN NEED OF DEFENSE

*I, Wendy Young, make the following statements on behalf of myself and KIND, Inc. Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the following statement is true and correct.*

1. I incorporate my March 25, 2025 Declaration in Support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction (Dkt. 7-18) as if fully set forth herein.

2. My name is Wendy Young, and I am the President of KIND, Inc., doing business as Kids in Need of Defense ("KIND"). KIND is the leading international not-for-profit organization devoted to protecting the rights and well-being of unaccompanied and separated children. Founded in 2008, KIND grew to seventeen locations across the United States, providing legal services to unaccompanied immigrant children during and after their time in the custody of the Office of Refugee Resettlement (ORR) of the Department of Health and Human Services (HHS).

3. KIND's subcontract with Acacia Center for Justice, incepted in March 2022, supported the employment of legal services, psychosocial services, and program support professionals across KIND's seventeen locations in the United States. These employees include lawyers representing child clients in their immigration matters and directing or delivering related services; paralegals supporting case work and delivering know-your-rights programs and legal screenings; lawyers providing training, practice guidance, and mentorship to pro bono attorneys who represent child clients; social work professionals delivering psychosocial services and referrals to child clients; and a range of employees supporting program operations through functions such as program management and support, pro bono partnership support, training, legal technical assistance, technology support, and data management. As of March 21, 2025, the subcontract supported approximately 350 full-time positions.

4. When the Acacia contract was partially terminated with immediate effect, staff engaged to serve children under the subcontract were required to stop performing many key functions of their roles, and KIND was deprived of funding needed to support their employment. Accordingly, on March 27, 2025, KIND laid off over 240 staff members in legal services, psychosocial services, and other program support roles, whose last day of employment at KIND was March 31, 2025, and has informed additional staff of termination dates in the coming months. Absent restoration of the contract services and funding at March 20, 2025

1

levels, KIND will not only be unable to re-hire for the vacated positions, but also expects that the referenced additional layoffs will be necessary.

5. Because of the partial contract termination, KIND plans to consolidate the remaining operations of certain offices within a general region into a single location – specifically, a single location to house parts of the operations of KIND's locations serving Northern Virginia, Baltimore, MD, and Washington, DC; and a single location to house the remaining programming of KIND's New York and Newark locations. Also due to the partial contract termination, KIND expects to close several offices and reduce its footprint.

6. In connection with the loss of funding, the layoffs, and in anticipation of such office closures, KIND instructed staff to begin contacting thousands of clients who were being served under the contract to inform them that, due to a loss of funding, their KIND attorneys would be forced to seek permission to withdraw any appearances as counsel before immigration courts, state courts, and USCIS, and to end their legal services. KIND further instructed staff to begin preparing motions or requests to the relevant tribunals to substitute other counsel or to withdraw as counsel, where permitted by relevant rules of professional conduct. Meanwhile, KIND instructed staff to continue critical ongoing work necessary to fulfill professional responsibilities to clients, including meeting filing deadlines and attending scheduled hearings and administrative interviews with clients.

7. In parallel, KIND asked experienced pro bono partners and community partners to take over cases from KIND. Initial efforts resulted in placing a small fraction of the thousands of clients whose lawyers are no longer employed with KIND, with efforts continuing. KIND attributes the limited number of placements to several factors. Most pro bono attorneys whose primary practice area is not immigration law will prefer to receive a high degree of training and mentorship, due to the complexity of children's immigration matters and the additional challenges of serving a client who is a child. The cutbacks of services associated with the partial contract termination have severely curtailed KIND's staffing for pro bono recruiting and mentorship, in turn limiting the availability of one-on-one mentorship on which pro bono attorneys have relied. At the same time, with the advent of more restrictive immigration policies, demand for free immigration legal services is surging, so pro bono attorneys and immigration nonprofits offering free legal services face increased demands on their available time.

8. In the 60 days between this date and June 2, 2025, over 300 clients served through KIND are scheduled to attend hearings or interviews, including both master calendar and merits hearings in immigration court, asylum interviews with USCIS, and state court appearances in matters relating to guardianship, custody, or dependency. Due to the partial contract termination and ensuing layoffs at KIND, many of these clients must prepare for and attend these events with an unfamiliar attorney taking the place of a longstanding attorney. The

      precipitous partial termination of the contract afforded little time for clients' final communications with departing counsel and acclimation to substitute counsel. Such disruption of continuity compounds the uncertainty around an already stressful event, and burdens a child's efforts to participate in proceedings to the best of their ability.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 4th of April 2025, in Falls Church, Virginia.

      _/s/ Wendy Young_

Wendy Young
President
Kids in Need of Defense