IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,<br><br>Defendants. | Case No. 3:25-cv-2847<br><br>**SUPPLEMENTAL DECLARATION OF NORTHWEST IMMIGRANT RIGHTS PROJECT (NWIRP) IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |

# SUPPLEMENTAL DECLARATION OF
# NORTHWEST IMMIGRANT RIGHTS PROJECT (NWIRP)

*I, Vanessa Gutierrez, make the following statements on behalf of myself and Northwest Immigrant Rights Project (NWIRP). I certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. § 1746.*

1. I incorporate my Declaration in Support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction (Dkt. 7-10) as if fully set forth hererein.

2. My name is Vanessa Gutierrez, and I am the Deputy Director at Northwest Immigrant Rights Project ("NWIRP") who oversees NWIRP's Unaccompanied Children Program ("UCP"). NWIRP provides legal services to unaccompanied immigrant children and youth who have been released from Office of Refugee Resettlement ("ORR") custody to sponsors throughout Washington State.

3. Since learning, on March 21, 2025, of the termination of the U.S. Department of Health and Human Services (HHS) contract with Acacia for legal services for unaccompanied children (to which our organization is a subcontractor), NWIRP has had to use limited unrestricted funding and funds from our reserves to support our ongoing representation of UCP clients and retention of the 28 staff (20.9 FTEs) who provide this representation. Much of our funding is grant-specific, and as an organization we rely on our limited pool of unrestricted funding to support work that is not covered by a specific grant but is still vital for supporting the rights of immigrant communities in Washington, including representation of individuals detained at the Northwest ICE Processing Center, youth who are over the age of 18, and families seeking stability and reunification through the the family visa process. Any funds that NWIRP directs to sustain services previously provided under this contract take away from other critical services that NWIRP is committed to providing in the community.

4. Faced with the loss of UCP funding, and to avoid needing to resort to staff layoffs in the future, NWIRP has decided to shift UCP staff to other positions with dedicated funding sources. This month, we plan to shift two UCP attorneys to new positions that were initially intended to be temporary positions for which we planned to hire externally. Now, we are converting those positions into permanent positions, which will also exert a financial impact on NWIRP in the long term because we will need to secure funding to support these positions after the funding ends. Our remaining UCP staff will need to absorb the caseloads of the two shifting attorneys. We had already decided to pause accepting new unaccompanied children clients because of the contract termination, and now with increasing staff caseloads due to these internal shifts, future capacity to take on new children's cases will be that much more limited.

5. The contract termination has had a significant negative impact on staff morale. Staff are concerned about what the contract termination will mean for their long-term job security. While we try to reassure staff that we will do everything possible to avoid layoffs, we cannot guarantee that layoffs will never become necessary, especially if we lose other federal funding and we are not able to raise enough funds to make up the difference. Staff are also aware that another organization in our area that received UCP funding and did similar work to our UCP team has had to lay off nearly all of their staff and will be closing their office in less than two months. NWIRP's staff is also aware that there are now hundreds of children and youth who have lost representation in their immigration cases but we are unfortunately unable to assist all of those children and youth because of NWIRP's loss of the same funding. The loss of funding has also impacted our ability to hire new staff. We had extended an offer to a new attorney, with extensive prior experience serving UCP clients, to work with our UCP team in our Granger, WA office, where it has historically been very difficult to hire. This position would have represented children in the Unaccompanied Refugee Minors program, which was work NWIRP had recently agreed to take on under our Option Year 2 contract, and it would have supported the extremely high need that we have seen for representation for unaccompanied children in this part of Eastern Washington. The attorney was aware of the contract termination and ended up withdrawing acceptance of NWIRP's offer, in part, because of the uncertainty of funding in this area of work. We are unable to hire for this position now because of a hiring freeze we have had to impose as a result of the lost funding, but the high need for representation in this area remains.

6. Within the next month, NWIRP will need to attend at least one state court hearing for a UCP client and seven Master Calendar Hearings on the juvenile docket at the Seattle Immigration Court. Our UCP cases also require filing motions before the state and immigration courts and preparing applications for relief before USCIS. Any pause in this work could harm our UCP clients' cases and prospects for future immigration relief.

7. NWIRP is unable to rely only on pro bono counsel for representation. Our UCP team has made efforts to recruit and train pro bono attorneys who can take on state court cases for Special Immigrant Juvenile classification-eligible children and youth, but the number of pro bono attorneys who accept referrals for our clients remains low. For cases that UCP staff can place with pro bono attorneys, UCP staff end up needing to spend a significant amount of time and resources on mentorship, technical assistance, document review, and assistance with client communication. The loss of the UCP funding also ended our ability to provide pro bono attorneys with interpretation and translation services, which is often an obstacle to their ability to provide representation to NWIRP clients.

I declare under penalty of perjury that the foregoing is true and correct.

2

Executed on the 3rd of April 2025, in Wenatchee, Washington.

*Vanessa D. Gutierrez*

_____

**Vanessa Gutierrez**
**Deputy Director**
**Northwest Immigrant Rights Project**

3