IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,<br><br>Defendants. | Case No. 3:25-cv-2847<br><br>**SUPPLEMENTAL DECLARATION OF ASHLEY T. HARRINGTON (RMIAN) IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |

### SUPPLEMENTAL DECLARATION OF ASHLEY T. HARRINGTON
### CHILDREN'S PROGRAM MANAGING ATTORNEY
### ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK

*I, Ashley T. Harrington make the following statements on behalf of myself and the Rocky Mountain Immigrant Advocacy Network (RMIAN). I certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. § 1746.*

1. I incorporate my Declaration in Support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction (Dkt. 7-11) as if fully set forth hererein.

2. My name is Ashley T. Harrington, and I am the Children's Program Managing Attorney at the Rocky Mountain Immigrant Advocacy Network ("RMIAN"). RMIAN is a Colorado-based nonprofit organization that provides free immigration legal and social services to individuals in civil immigration detention, as well as to immigrant children and families. Through its staff attorneys, paralegals, social workers, and a network of hundreds of *pro bono* attorneys, RMIAN provides legal education and free legal representation to low-income immigrants who otherwise would not be able to afford an attorney.

3. With HHS funding, RMIAN employs approximately six full-time-equivalent staff members to provide legal services to unaccompanied children, including: legal representation, pro bono recruitment, training, referrals and mentoring, coordination of language services, program management and administrative support. Each day without this funding has forced RMIAN to pull from its limited reserves in order to keep staff on and continue services for child clients.

4. RMIAN has limited development staff who are already tasked with fundraising to support the organization as a whole. They cannot realistically raise enough money under this expedited time frame to replace the funding from HHS that RMIAN relies upon in order to continue its services. This is especially true because RMIAN is one of approximately 90 legal service providers in the Acacia network who are faced with these drastic, sudden funding cuts. Most will be seeking alternate funding from the same sources, forcing them to compete against each other for scarce resources.

5. As a result of this contract termination, RMIAN is currently in an uncertain situation as it is reluctant to make any drastic changes in staffing or services while it awaits a final decision on what funding and services may be restored.

6. RMIAN's unaccompanied child clients have immigration court hearings scheduled as soon as April 11 and April 16, 2025 and state court hearings as soon as April 7, 2025. In addition to upcoming court hearings, other clients have court-ordered deadlines to submit pleadings

and status updates in April and May 2025. Even for RMIAN clients who don't have upcoming court hearings or deadlines, there are many urgent upcoming legal needs. For example, RMIAN represents many children whose notices to appear have not yet been filed with the immigration court. According to a new ICE memo reported by Reuters, ICE will be prioritizing filing those charging documents to initiate removal proceedings against unaccompanied children. RMIAN has had notices to appear filed for unaccompanied children as recently as March 24, 2025 with a hearing set for early May 2025. It is critical for an attorney to be monitoring for these notices, otherwise children run the risk of missing court hearings and being ordered removed in absentia.

7. Without restored funding, RMIAN will be unable to offer representation to additional unaccompanied children. The Denver Immigration Court will be holding initial juvenile dockets on April 4, April 11 and on an ongoing basis. RMIAN will be unable to offer representation to these children without continued funding, leaving these children to navigate complex proceedings alone.

8. RMIAN relies heavily on its network of pro bono attorneys to represent child clients, however pro bono attorneys cannot continue to represent clients with RMIAN's support. RMIAN regularly refers unaccompanied children to pro bono counsel for representation in partial or full proceedings. An example of a partial referral would be that the pro bono attorney provides representation in the state court proceeding only, while a RMIAN attorney handles removal proceedings and representation in front of U.S. Citizenship and Immigration Services. In other cases, the volunteer attorney may represent the child to a certain stage in their case, such as approval of Special Immigrant Juvenile Status and deferred action, and then pass the child's case back to RMIAN for ongoing representation. On rare occasions, a pro bono attorney might provide full representation to a child on all matters.

9. In order for a child's case to be successfully placed with a pro bono attorney several steps must occur. RMIAN first needs to make contact with the child, either at immigration court, through our hotline or via a referral. Then RMIAN staff must screen the child for immigration relief options, which requires developing trust and rapport with the child, having child-appropriate and trauma-informed interviewing skills, and having legal expertise to identify what immigration legal options a child might be eligible to pursue. RMIAN must also then find a competent pro bono attorney to handle the child's legal matter. This requires RMIAN staff to recruit, train and vet volunteer attorneys. The vast majority of RMIAN's volunteer attorneys do not have immigration law experience and would never consider taking an immigration case without RMIAN's referral, training, guidance, mentoring and malpractice coverage. RMIAN's attorneys provide constant training, mentoring, support and guidance to pro bono attorneys to assist them in providing

competent representation from before the time they accept a child's case through its conclusion. In addition, it is unfortunately not uncommon for a volunteer attorney to agree to provide representation, and then fail to do so, requiring RMIAN to take the child's case back to either place with another pro bono attorney or handle in-house.  Even experienced pro bono attorneys who have handled multiple cases for RMIAN are regularly seeking guidance on the constant changes in immigration law and policy impacting their clients' cases.  RMIAN's pro bono coordination team provides regular weekly updates to pro bono attorneys to help them stay abreast of critical updates and changes, and are available to provide regular ongoing mentoring support.

10. In addition, most of RMIAN's child clients are monolingual Spanish speakers, or speak communicate with their clients, or to obtain translation of necessary case-related documents without RMIAN's coordination and assistance. RMIAN relies on HHS funding to coordinate these essential language services which would otherwise not be available to pro bono attorneys.

11. In short—pro bono attorneys would be unable and unwilling to represent children in the complex web of state court and immigration proceedings without RMIAN's expert training, mentoring and language coordination throughout the case. As a result, countless children would be forced to navigate complex immigration court proceedings without counsel.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 3rd of April 2025, in Westminster, Colorado.

_____
Ashley T. Harrington
Children's Program Managing Attorney
Rocky Mountain Immigrant Advocacy Network (RMIAN)