IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,<br><br>Defendants. | Case No. 3:25-cv-2847<br><br>**SUPPLEMENTAL DECLARATION OF LAURA NALLY (AMICA CENTER) IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |

**SUPPLEMENTAL DECLARATION OF LAURA NALLY,
PROGRAM DIRECTOR FOR THE CHILDREN'S PROGRAM AT AMICA CENTER
FOR IMMIGRANT RIGHTS (FORMERLY CAPITAL AREA IMMIGRANTS' RIGHTS
("CAIR") COALITION)**

*I, Laura Nally, make the following statements on behalf of myself and Amica Center for Immigrant Rights. I certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. § 1746.*

1. I incorporate my Declaration in Support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction (Dkt. 7-15) as if fully set forth herein.

2. My name is Laura Nally, and I am the Program Director overseeing the Children's Program at Amica Center for Immigrant Rights ("Amica Center"), formerly known as the Capital Area Immigrants' Rights ("CAIR") Coalition. Amica Center is a Washington, D.C.-based nonprofit legal services organization that strives to ensure equal justice for all indigent immigrant men, women, and children at risk of detention and deportation in the Washington, D.C. area and beyond by providing free legal services and representation. I am an attorney licensed in Virginia and the District of Columbia and have been practicing immigration law for more than 15 years. I joined the Children's Program at Amica Center in August 2019.

3. Since filing my prior Declaration, executed on March 25, 2025, in this case, Amica Center's Children's Program has continued to face operational challenges related to the Cancellation Order issued on March 21, 2025. While we have not yet issued any furloughs or laid off any staff members, we have been unable to fill an increasing number of vacancies due to concerns about the stability of our funding. Since February 18, when we suddenly received a Stop Work Order, until now, one Senior Paralegal, one IJC Attorney Fellow, and two Staff Attorneys have resigned their positions with the Children's Program. The level of anxiety among staff has only increased as partner organizations issue furloughs and layoffs. We cannot responsibly hire new staff pending a resolution of the uncertainties surrounding continued funding for this work, and remaining attorneys are therefore faced with an increasingly difficult task of ensuring coverage for the legal needs of our more than 850 clients.

4. Amica Center is currently funding this work entirely using other funds and had made the analysis that it could only afford to continue to do so for an additional 2 months, at most, before it begins to materially limit our other mission-driven work, including representation for adults in Virginia who are at risk of detention and deportation. On April 4, 2025, however, Amica Center received communications indicating that the Department of Justice (DOJ) had terminated for convenience several other programs which currently fund Amica

1

Center's Detained Adult Program (DAP). Although the scope and impact of such a termination order is not yet clear, the intersectional impact of sudden cuts to funding in other programs considerably shortens the period of time for which Amica Center can use other funds to continue the Children's Program. If HHS funding is not restored, we expect to downsize the Children's Program considerably, retaining only a few experienced staff members to wind down and transition casework in the most ethical and client-centered way possible under the circumstances.

5. Children represented by the Children's Program continue to have hearings and legal deadlines on a daily basis. Within the next month (April 3 to May 3, 2025), 48 of our child clients are scheduled to appear before an immigration court, a state court, or an asylum interview with USCIS. I was in court this morning seeking Special Immigrant Juvenile Status (SIJS) findings for an 11-year-old girl who was abandoned by her alcoholic father. The Children's Program has a total of three asylum interviews scheduled in the month of April, all of which were scheduled in the past two weeks for children in ORR custody including a boy who fled extreme child abuse at the age of 12 and a girl who fears gender-based and religious persecution. In addition to the urgent deadlines to file legal briefing and supporting evidence in advance of their asylum interviews, it is critical for these children to have consistency in their representation and the support of the attorneys with whom they have spent months and years building trust and rapport to minimize re-traumatization.

6. We also continue to receive requests for unfunded assistance from ORR-subcontracted staff at the facilities we serve, particularly requests for confirmation that our staff will appear with children at their upcoming immigration court hearing, whether and how the children are required to appear, and assistance navigating the logistics of how to connect to virtual hearings via Webex. It is clear from the nature of the questions we receive that ORR has not issued clear guidance to subcontracted facility staff regarding which services were terminated on March 21 and which have been extended. It has largely fallen to our staff to explain the impact of the Cancellation Order on the services we provide at local ORR-subcontracted facilities.

7. It is important to consider the timing of several intersecting government actions; the Cancellation Order was issued on the same day that ORR notified its care providers that DHS would begin serving Notices to Appear (NTAs) "imminently" on children in ORR custody and that those Master Calendar Hearings were expected to take place "in the coming days and weeks." In accordance with that policy, we have seen children increasingly scheduled on 'rocket dockets' where dozens of unrepresented children are set for mass hearings. The next large docket for children detained in ORR-subcontracted facilities we serve is scheduled for April 14 and currently includes 22 children. Notably, most of those hearings have been moved up within the past week from a docket which was

originally scheduled to take place on June 4, 2025. We learned of this change on April 1. In another example, four children who arrived at a local ORR-subcontracted facility the week of March 23, 2025, were scheduled for Master Calendar Hearings on April 10.

8. We know from communications with staff at two local ORR-subcontracted facilities that in place of funded representation or Friend of Court services at upcoming hearings, ICE has provided the facilities with EOIR's List of Pro Bono Legal Service Providers. For the Annandale Immigration Court, where most of the children are scheduled to appear, this list does not represent a meaningful opportunity to obtain free counsel in our local area. The Annandale Immigration Court Juvenile Docket lists only four providers, one of which is Amica Center. Of these four providers, three—Kids in Need of Defense, Ayuda, and Amica Center—were providing pro bono representation through the HHS funding that has been terminated. The fourth—Restoration Immigration Legal Aid (RILA)— states explicitly that it does not accept cases for individuals in detention. To my knowledge, no children in the ORR-subcontracted facilities with which we work have successfully obtained pro bono representation since March 21. In a conversation with one of the URM ORR facilities with whom we work, program staff shared that their attempts to identify pro bono counsel for children who have arrived since March 21 have been largely unsuccessful; the few attorneys who expressed interest in volunteering had no previous immigration experience. The program asked Amica Center for information and guidance about how an attorney could begin learning about immigration law.

9. The recruitment, training, and mentorship of pro bono attorneys is an important part of our model for expanding the availability of legal services for unaccompanied children. In my current position at Amica Center and prior positions at partner organizations within the Acacia network, I have trained hundreds of pro bono attorneys at dozens of law firms and corporations to represent children in pro bono immigration matters. The contribution of the skills and resources of law firms, in particular, is invaluable to complex cases involving trials in immigration court and appeals. Funding for this work was one of the tasks that was eliminated by the Cancellation Order on March 21.

10. Across each of these pro bono partnerships, attorneys and their supervising partners make clear that they rely on expert training and mentorship from the placing organization to a) appropriately screen cases and identify them as appropriate for pro bono placement; b) provide a threshold level of training so that attorneys with little to no experience in immigration matters can navigate this complex area of practice; and c) engage in hands-on mentorship throughout the course of the case. For Amica Center, this involves holding an introductory call to discuss pro bono counsel's questions before they meet with the clients, providing technical assistance by phone and email at all stages of the case, reviewing draft pleadings before submission, mooting for hearings or interviews, and often attending to

provide support, if requested by the pro bono team. This model fosters a relationship of mutual trust between the mentoring attorney and pro bono team with the goal of ensuring that clients receive high-quality representation. It also creates efficiencies for our government partners, as we provide the training and mentorship necessary for attorneys unfamiliar with local practice to interact efficiently and effectively with the state and immigration courts and other government agencies.

11. Pro bono attorneys often describe their work on our cases as some of the most rewarding that they've had the opportunity to do in their corporate jobs but emphasize that it would not be possible without a qualified mentor to ensure that they can competently practice in a field outside their own. This support and assurance will become even more important following the President's Executive Order "Preventing Abuses of the Legal System and the Federal Court," issued on March 22, which mentioned "Big Law pro bono practices" specifically in the context of an accusation that immigration attorneys and their pro bono partners "attempt to circumvent immigration policies." In this climate of intimidation, it is particularly important that firms and the attorneys working on immigration matters have access to expert advice from experienced practitioners to ensure that they are providing competent and ethical representation.

12. Attached hereto as **Exhibit 1** is a true and correct copy of the full email correspondence between the parties regarding compliance with the Temporary Restraining Order and administrative record, dated April 2, 2025 to April 3, 2025.  On April 2, Plaintiffs emailed Defendants to inquire about Defendants' plan to comply with the Temporary Restraining Order that went into effect earlier that morning and ask when Defendants expect to produce the administrative record.  Ex. 1 at 2.

13. Later that day, Defendants responded that they "are in receipt of the Court's order and are taking steps to comply expeditiously." *Id.* at 2. Defendants' response contained no detail regarding how or when they planned to comply.  With regards to the administrative record, Defendants took the position that they have no obligation to provide the record until they file their answer and that they "intend to adhere to that timeframe here." *Id.* at 2.

14. Plaintiffs replied the following morning, requesting Defendants "outline what has been done to ensure compliance" with the Court's order, which had been in place for over 24 hours at that point. *Id.* at 1.  Plaintiffs also urged Defendants to produce the administrative record earlier, given that it is necessary to Plaintiffs' request for Preliminary Injunction to inform our arbitrary and capricious claim.  *Id.* at 1-2.

15. At the time of signing, Plaintiffs have not been informed of any actual steps taken by Defendants to comply with the Court's Order.

16. Attached hereto as **Exhibit 2** is a true and correct copy of the April 4, 2025, letter sent by the Department of Justice to the Acacia Center for Justice as referenced in paragraph 4.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 4th of April 2025, in Alexandria, VA.

*Laura Nally*

**Laura Nally**
Director, Detained Children's Program
Amica Center for Immigrant Rights
1025 Connecticut Ave. NW, Suite 701
Washington, D.C. 20036
P: (202) 916-8179
laura@amicacenter.org

# Exhibit 1

 Outlook

RE: [EXTERNAL] RE: Community Legal Services in East Palo Alto, et al, v. HHS, et al., 25-cv-2847 (N.D. Cal)

From  Ross, Jonathan K. (CIV) <Jonathan.K.Ross@usdoj.gov>
Date  Thu 4/3/2025 5:19 PM
To    Karen Tumlin <karen.tumlin@justiceactioncenter.org>; Alvaro M. Huerta <ahuerta@immdef.org>; Silvis, William (CIV) <William.Silvis@usdoj.gov>; Masetta Alvarez, Katelyn (CIV) <Katelyn.Masetta.Alvarez@usdoj.gov>; Parascandola, Christina (CIV) <Christina.Parascandola@usdoj.gov>; Cardin, Zachary A. (CIV) <Zachary.A.Cardin@usdoj.gov>; Celone, Michael A. (CIV) <Michael.A.Celone@usdoj.gov>; Johann, Pamela (USACAN) <Pamela.Johann@usdoj.gov>; Sam Hsieh <Sam@amicacenter.org>; cscott@immdef.org <CScott@ImmDef.org>; Esther Sung <Esther.Sung@justiceactioncenter.org>

**[EXTERNAL EMAIL]** This message is from an EXTERNAL source. Please do not click on any links or open any attachments associated with this email unless it comes from a trusted source AND you were expecting to receive this information.

Hi Karen,

Acknowledging your email. Defendants will be back in touch shortly.

Thank you,
Jonathan

**From:** Karen Tumlin <karen.tumlin@justiceactioncenter.org>
**Sent:** Thursday, April 03, 2025 2:35 PM
**To:** Ross, Jonathan K. (CIV) <Jonathan.K.Ross@usdoj.gov>; Alvaro Huerta <AHuerta@immdef.org>; Silvis, William (CIV) <William.Silvis@usdoj.gov>; Masetta Alvarez, Katelyn (CIV) <Katelyn.Masetta.Alvarez@usdoj.gov>; Parascandola, Christina (CIV) <Christina.Parascandola@usdoj.gov>; Cardin, Zachary A. (CIV) <Zachary.A.Cardin@usdoj.gov>; Celone, Michael A. (CIV) <Michael.A.Celone@usdoj.gov>; Johann, Pamela (USACAN) <Pamela.Johann@usdoj.gov>; sam@amicacenter.org; cscott@immdef.org; Esther Sung <Esther.Sung@justiceactioncenter.org>
**Subject:** RE: [EXTERNAL] RE: Community Legal Services in East Palo Alto, et al, v. HHS, et al., 25-cv-2847 (N.D. Cal)

Dear Jonathan,

Thank you for your email. Please clarify what Defendants have done to ensure compliance with the Court's TRO, which took effect at 8 am PST yesterday. Your email yesterday says you are "taking steps to comply expeditiously" but since the TRO was already in effect at that time, please outline what has been done to ensure compliance. Our plaintiffs have not been informed of any action but have continued to receive requests from ORR subcontractors to take on new cases, explicitly referring to the news of the TRO as a basis to ask them to take on new cases. This is continuing the harms to our plaintiffs that the Court sought to rectify with her TRO Order.

Regarding the administrative record, you will recall that we discussed with the Court at Tuesday's hearing that moving into preliminary injunction territory (as we are now) requires the

administrative record. As you know, we have also brought an arbitrary and capricious claim. We re-urge our request for production of the administrative record.

Finally, we wanted to confirm understanding of the Acacia contract and correct any misunderstanding from Tuesday's hearing. The contract has been extended for six months as to CLIN 1 only. This is for KYR and legal consultations. We understand that some CLIN 2 services have been moved to CLIN 1.  So, to make clear, it is not correct that there is currently no contract in place today.

Thank you,
--Karen

---

**From:** Ross, Jonathan K. (CIV) <Jonathan.K.Ross@usdoj.gov>
**Sent:** Wednesday, April 2, 2025 4:31 PM
**To:** Alvaro Huerta <AHuerta@immdef.org>; Silvis, William (CIV) <William.Silvis@usdoj.gov>; Masetta Alvarez, Katelyn (CIV) <Katelyn.Masetta.Alvarez@usdoj.gov>; Parascandola, Christina (CIV) <Christina.Parascandola@usdoj.gov>; Cardin, Zachary A. (CIV) <Zachary.A.Cardin@usdoj.gov>; Celone, Michael A. (CIV) <Michael.A.Celone@usdoj.gov>; Johann, Pamela (USACAN) <Pamela.Johann@usdoj.gov>; sam@amicacenter.org; cscott@immdef.org; Karen Tumlin <karen.tumlin@justiceactioncenter.org>
**Subject:** Re: [EXTERNAL] RE: Community Legal Services in East Palo Alto, et al, v. HHS, et al., 25-cv-2847 (N.D. Cal)

Hi Alvaro,

Thanks for reaching out. Defendants are in receipt of the Court's order and are taking steps to comply expeditiously.

Regarding the administrative record, Defendants note that under L.R. 16-5, the government is not required to provide the administrative record until Defendants file our answer, and we intend to adhere to that timeframe here.

Best,
Jonathan

> On Apr 2, 2025, at 11:40 AM, Alvaro Huerta <AHuerta@immdef.org> wrote:
>
> Counsel,
>
> We are in receipt of last night's order from the Judge. At your earliest convenience, can you please let us know 1) how Defendants intend to comply with the Court's order, and 2) when you are able to provide the administrative record? Considering the Court's briefing schedule, we would appreciate a response as soon as possible. Many thanks.
>
> Best,
> Alvaro
>
> ---
> **Alvaro M. Huerta**
> Director of Litigation & Advocacy
> **Immigrant Defenders Law Center**
> ahuerta@immdef.org
> 213.338.7542

**From:** Ross, Jonathan K. (CIV) <Jonathan.K.Ross@usdoj.gov>
**Sent:** Friday, March 28, 2025 12:44 PM
**To:** Karen Tumlin <karen.tumlin@justiceactioncenter.org>; Silvis, William (CIV) <William.Silvis@usdoj.gov>; Alvaro Huerta <AHuerta@ImmDef.org>; sam@amicacenter.org; Carson Scott <CScott@ImmDef.org>
**Cc:** Masetta Alvarez, Katelyn (CIV) <Katelyn.Masetta.Alvarez@usdoj.gov>; Johann, Pamela (USACAN) <Pamela.Johann@usdoj.gov>; Esther Sung <Esther.Sung@justiceactioncenter.org>
**Subject:** RE: Community Legal Services in East Palo Alto, et al, v. HHS, et al., 25-cv-2847 (N.D. Cal)

> External email: Please be careful if sending personal information or when opening attachments or clicking on links

This is great—thank you, Karen. Looking forward to being in touch.

**From:** Karen Tumlin <karen.tumlin@justiceactioncenter.org>
**Sent:** Friday, March 28, 2025 3:42 PM
**To:** Silvis, William (CIV) <William.Silvis@usdoj.gov>; Alvaro Huerta <AHuerta@ImmDef.org>; sam@amicacenter.org; Carson Scott <CScott@ImmDef.org>
**Cc:** Masetta Alvarez, Katelyn (CIV) <Katelyn.Masetta.Alvarez@usdoj.gov>; Johann, Pamela (USACAN) <Pamela.Johann@usdoj.gov>; Ross, Jonathan K. (CIV) <Jonathan.K.Ross@usdoj.gov>; Esther Sung <Esther.Sung@justiceactioncenter.org>
**Subject:** [EXTERNAL] RE: Community Legal Services in East Palo Alto, et al, v. HHS, et al., 25-cv-2847 (N.D. Cal)

Hi all,

Adding Jonathan to this chain who just called Carson about this request and had not seen the original email or our reply. Making sure we all have each other's email as needed.

Thank you,
--Karen

**From:** Karen Tumlin <karen.tumlin@justiceactioncenter.org>
**Sent:** Thursday, March 27, 2025 4:42 PM
**To:** Silvis, William (CIV) <William.Silvis@usdoj.gov>; Alvaro Huerta <AHuerta@ImmDef.org>; sam@amicacenter.org; Carson Scott <CScott@ImmDef.org>
**Cc:** Masetta Alvarez, Katelyn (CIV) <Katelyn.Masetta.Alvarez@usdoj.gov>; Johann, Pamela (USACAN) <Pamela.Johann@usdoj.gov>
**Subject:** RE: Community Legal Services in East Palo Alto, et al, v. HHS, et al., 25-cv-2847 (N.D. Cal)

Dear Will,

Thank you for reaching out. I am also copying Pamela here as she reached out separately while we were conferring on your email below. We think the court carefully set the response deadline and hearing timing based on the court's availability to digest your opposition and hear the matter quickly. Given the irreparable harms we have set out that our clients are facing we have to oppose any extension to the schedule.

If it still makes sense to hop on the phone, I can be reached at 323-316-0944. I'll try to loop in my colleagues as well.

Thanks,
--Karen

---

**From:** Silvis, William (CIV) <William.Silvis@usdoj.gov>
**Sent:** Thursday, March 27, 2025 2:59 PM
**To:** Alvaro Huerta <AHuerta@ImmDef.org>; sam@amicacenter.org; Karen Tumlin <karen.tumlin@justiceactioncenter.org>; Carson Scott <CScott@ImmDef.org>
**Cc:** Masetta Alvarez, Katelyn (CIV) <Katelyn.Masetta.Alvarez@usdoj.gov>
**Subject:** Community Legal Services in East Palo Alto, et al, v. HHS, et al., 25-cv-2847 (N.D. Cal)

Good afternoon counsel,

AUSA Pam Johann of the U.S. Attorney's Office provided me with your contact information. This case has been assigned to my Office for handling. We note that the Court has entered an order requiring a response to the TRO on Monday, March 31, and a hearing on April 1. Would Plaintiffs be amenable to an extension of time of two days for the government's response? We would like to have the opportunity to consult with the agencies on the relief requested in your motion as well as the underlying circumstances set forth in the papers. Please let me know if Plaintiffs are amenable to this request.

Thank you,

Will Silvis

**William C. Silvis**
**Assistant Director**
**United States Department of Justice**
**Office of Immigration Litigation**
**General Litigation and Appeals Section**
Post Office Box 878 | Ben Franklin Station | Washington, D.C.  20044-0878
(office) 202-307-4693
(cell) 202-598-9022



This communication, including any attachments, is covered by federal and state law governing electronic communications and may contain confidential and legally privileged information.  If the reader of this message is not the intended recipient, the reader is hereby notified that any dissemination, distribution, use or copying of this message is strictly prohibited.  If you have received this in error, please reply immediately to the sender and delete this message.

Confidentiality: This message is intended for the designated recipient(s) only and may contained privileged information. Dissemination of this email or its attachments to anyone other than the intended recipient is prohibited. If you received this message in error, please notify the sender and destroy this message and all attachments.

# Exhibit 2



VIA: Electronic Mail

**<u>NOTICE OF TERMINATION FOR CONVENIENCE</u>**

<u>Date:</u> April 3, 2025
<u>Vendor Name:</u> Acacia Center for Justice
<u>Subject:</u> Termination for Convenience

Dear Acacia Center for Justice,

This email's purpose is to notify your firm the contracts tied to the procurement instrument identifications (PIID) listed below and all subsequent call orders is hereby terminated for convenience effective April 3, 2025, per clause FAR 52.212-4(l) (Termination for the Government's Convenience).

PIIDs:
  15JPSS22F00000699
  15JPSS22F00000701
  15JPSS22F00000700
  15JPSS22F00000702
  15JPSS22F00000703
  15JPSS22F00000704
  15JPSS24F00000418
  15JPSS23F00000154

The Agency has determined that the services are no longer needed. Effective April 3, 2025, please discontinue providing the services to the United States Department of Justice and its entities.

Please submit your final invoice with any reasonable charges that result from this termination.

If you have any questions, please feel free to contact me.

Sincerely,

*Allison Polizzi*
Allison J. Polizzi
Contracting Officer
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

Please acknowledge receipt of this Notice of Termination for Convenience

(End of Notice)