YAAKOV M. ROTH
Acting Assistant Attorney General
WILLIAM C. SILVIS
Assistant Director
MICHAEL A. CELONE
CHRISTINA PARASCANDOLA
KATE MASETTA ALVAREZ
JONATHAN K. ROSS
Senior Litigation Counsels
ZACHARY A. CARDIN
Trial Attorney

      U.S. Department of Justice, Civil Division
      Office of Immigration Litigation
      General Litigation and Appeals Section
      P.O. Box 878, Ben Franklin Station
      Washington, DC 20044
      (202) 305-2040
      Michael.A.Celone@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| COMMUNITY LEGAL SERVICES IN EAST PALO ALTO,<br><br>          Plaintiffs,<br><br> v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *ET AL.*,<br><br>          Defendants. | Case No. 3:25-cv-02847-AMO<br><br>**DEFENDANTS' MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER**<br><br>Date: May 15. 2025<br>Time: 2:00 p.m.<br>Location:  Courtroom 10 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DEFENDANTS' NOTICE OF MOTION AND MOTION
TO DISSOLVE TEMPORARY RESTRAINING ORDER**

PLEASE TAKE NOTICE that on May 15, 2025, at 2:00 p.m., or as soon thereafter as counsel may be heard, in the United States District Court for the Northern District of California, Courtroom 10, 19th Floor, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants United States Department of Health and Human Services, Office of Refugee Resettlement, and Department of the Interior will and hereby do move this Court to dissolve the Temporary Restraining Order (TRO) entered on April 1, 2025.

This motion is based upon this Notice of Motion, the accompanying memorandum of points and authorities, the pleadings and papers on file in this action, oral argument of counsel, and any other matters properly before the Court.

The basis for this motion is that there has been a significant change in controlling law following the Supreme Court's recent decision in *Department of Education v. California*, 2025 WL 1008354 (U.S. Mar. 28, 2025), which substantially undermines the legal premise of the Court's issuance of the TRO. As explained more fully in the accompanying memorandum, this change justifies dissolution of the TRO because Plaintiffs can no longer establish the likelihood of success on the merits, irreparable harm, or that the balance of equities and public interest favor continuation of the TRO.

1   DATED: April 4, 2025                    Respectfully submitted,

2

3                                           YAAKOV M. ROTH
                                            Acting Assistant Attorney General

4
                                            WILLIAM C. SILVIS
5                                           Assistant Director

6                                           CHRISTINA PARASCANDOLA
                                            KATE MASETTA ALVAREZ
7                                           MICHAEL A. CELONE
                                            Senior Litigation Counsels
8

9                                           ZACHARY A. CARDIN
                                            Trial Attorney
10

11                                          */s/ Jonathan K. Ross*
                                            JONATHAN K. ROSS
12                                          Senior Litigation Counsel
                                            U.S. Department of Justice, Civil Division
13                                          Office of Immigration Litigation
                                            General Litigation and Appeals Section
14                                          P.O. Box 878, Ben Franklin Station
                                            Washington, DC 20044
15                                          (202) 305-7662
                                            Jonathan.K.Ross@usdoj.gov
16

17                                          Attorneys for Defendants

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

On April 1, 2025, this Court entered a Temporary Restraining Order ("TRO"), ECF No. 33, enjoining Defendants from "withdrawing the services or funds provided by the Office of Refugee Resettlement ("ORR") as of March 20, 2025, under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 8 U.S.C. § 1232(c)(5), and the United States Department of Health and Human Services ("HHS") Office of Refugee Resettlement's ("ORR") Unaccompanied Children Program Foundational Rule (codified at 45 C.F.R. § 410.1309(a)(4)) ("Foundational Rule") particularly ORR's provision of funds for direct legal representation services to unaccompanied children." TRO, 7. The Order also enjoins Defendants from "cutting off access to congressionally appropriated funding for its duration." *Id.*

In Defendants' opposition to Plaintiffs' motion requesting the TRO, Defendants argued that the Administrative Procedure Act ("APA") only waives sovereign immunity over actions seeking relief "other than monetary damages." 5 U.S.C. § 702; *see also N. Star Alaska v. United States*, 14 F.3d 36, 38 (9th Cir. 1994) (The APA "does not waive sovereign immunity for contract claims seeking equitable relief." ) (cleaned up); *see also RAJMP, Inc. v. United States*, No. 19-CV-876 AJB (WVG), 2020 WL 905592, at *4 (S.D. Cal. Feb. 25, 2020) ("The Ninth Circuit has held several times that the APA does not waive sovereign immunity over non-monetary, contract-based claims because the Tucker Act impliedly forbids equitable relief."). TRO Opp., 16 (ECF No. 24). Specifically, Defendants argued that the APA does not provide a waiver of sovereign immunity in this case because the relief Plaintiffs seek is payment. TRO Opp., 16. Additionally, Defendants argued that Plaintiffs' claims were barred by the Tucker Act because the rights that they seek to enforce and the relief that they seek is only available to them through contract. TRO Opp., 18-20 (citing *United States Conf. of Cath. Bishops v. U.S. Dep't of State*, No. 1:25-CV-00465, 2025 WL 763738, at *2, 7 (D.D.C. Mar. 11, 2025) (holding that claim requiring the government to keep paying, though styled as an injunction, was "founded upon a contract" and "must be heard in Claims Court.")). Despite the fact that a TRO would require Defendants to pay funds to Plaintiffs, and that their only entitlement to the funds was based on a contract, the Court ruled that "this is not a contract dispute

1  in which Plaintiffs seek money damages such that their suit belongs before the Federal Court of Claims,"

2  and granted the TRO. TRO, 3.

3      Only days after the Court issued the TRO, the Supreme Court issued a decision today that at least

4  severely undermines this Court's assertion of jurisdiction over this case—if it is not outright controlling

5  here. Specifically, the Supreme Court vacated a temporary restraining order enjoining the government

6  from terminating various education-related grants. *Dep't of Education v. California*, No. 24A910, 2025

7  WL 1008354, at *1 (U.S. Apr. 4, 2025) (Attached as "Ex. A"). Like this case, the plaintiffs there filed

8  their claims under the APA, even though they ultimately sought monetary relief under governmental

9  contracts. *Id.* The Court held that the government is "likely to succeed in showing the District Court lacked

10  jurisdiction to order the payment of money under the APA." *Id.* The Court reasoned that APA does not

11  waive sovereign immunity over cases where a statute either grants consent to suit expressly or impliedly

12  forbids the relief which is sought, such as the Tucker Act's implied preclusion of review over contract

13  claims in courts other than the Court of Federal Claims. *Id.* (citing 5 U. S. C. § 702). It further explained

14  that the APA does not waive sovereign immunity for suits involving monetary relief. *Id.* "Instead, the

15  Tucker Act grants the Court of Federal Claims jurisdiction over suits based on "'any express or implied

16  contract with the United States.'" *Id.* (citing 28 U. S. C. § 1491(a)(1)).

17      The Supreme Court's decision confirms that Plaintiffs cannot show that they are likely to prevail

18  on the merits of their claims, and that this Court very likely lacked jurisdiction to issue a temporary

19  restraining order requiring the government to pay funds, where Plaintiffs' only entitlement to the funds

20  was through a contract. Rather, as the Court noted, Plaintiffs here must bring their claims in the Court of

21  Federal Claims. *Id.* The Supreme Court's decision is thus an intervening change in the controlling law that

22  warrants vacatur of this Court's TRO.

23                                 **ARGUMENT**

24  **A.    Legal Standard for Dissolving a Temporary Restraining Order.**

25      A party may seek dissolution of a TRO or preliminary injunction based on a material change in

26  facts or law that warrants revision or dissolution. *See Karnoski v. Trump*, 926 F.3d 1180, 1198 (9th Cir.

27  2019) (per curiam) (citing *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000)). The test for dissolving

28  or modifying an injunction has two parts. The moving party must show: (1) a significant change in fact

DEFENDANTS' MOTION TO DISSOLVE TRO
3:25-CV-02847- AMO                          2

or law; and (2) that in light of the significant change, the injunction should be dissolved or modified under the legal standard that governed the issuance of the injunction in the first place. S*ee Karnoski*, 926 F.3d at 1198 & n.14; *Sharp*, 233 F.3d at 1170. A subsequent challenge to a preliminary injunction "must rest on grounds that could not have been raised before." *Alto v. Black*, 738 F.3d 1111, 1120 (9th Cir. 2013) (citation omitted). Here, *Department of Education v. California* is a significant change warranting dissolution, and it could not have been raised before because it was issued earlier today.

**B.**      ***Dep't of Education v. California* is a Significant Change in Law.**

"[E]vents have largely overtaken this litigation." *See Martinez v. Wilson*, 32 F.3d 1415, 1419 (9th Cir. 1994). The Supreme Court's decision in *Department of Education v. California* significantly shifted the legal landscape governing the federal government's authority to terminate funding, affirming the discretion of federal agencies to make funding determinations without judicial interference. This decision directly impacts the Court's prior issuance of the TRO in this case, as the TRO was based on a premise that the government lacked discretion to terminate funding for legal representation under the TVPRA and Foundational Rule.

The TRO enjoined Defendants from withdrawing ORR-funded legal representation services, based in part on the Court's interpretation that the TVPRA mandates ongoing funding for legal services for unaccompanied children. However, the Supreme Court's decision clarified that federal agencies retain the discretion to terminate or alter funding arrangements when they deem it necessary, particularly when appropriations are limited or policy priorities evolve. *Dep't of Education v. California*, 2025 WL 1008354, at *2 ("[T]he APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money[.]'") (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U. S. 204, 212 (2002)); *see id.* **1-2.

Additionally, the Supreme Court's ruling highlights that the Judiciary should not interfere with agency funding decisions absent clear statutory mandates. *Id.* at **1-2. The decision emphasized that

maintaining funding contrary to agency determinations improperly encroaches on executive discretion. *Id.* Therefore, the significant change in controlling law established by *Dep't of Education v. California* warrants dissolving the TRO, as the legal basis for the Court's prior order has been substantially undermined.

**C.    *Dep't of Education v. California* Warrants Dissolution of the TRO.**

When courts assess whether a change "warrants . . . dissolution of the injunction," the "inquiry should be guided by the same criteria that govern the issuance of a preliminary injunction."[1] *Karnoski*, 926 F.3d at 1198 (quoting *Sharp*, 233 F.3d at 1170). District courts have applied these instructions from *Karnoski* in several ways. *See Lo v. Cnty. of Siskiyou*, 2022 WL 1505909, at *7 (E.D. Cal. May 12, 2022) (listing cases). The *Lo* Court observed that one district court required the movant to show an injunction is unwarranted under each of the four criteria, whereas another district court concluded that the defendant may prevail by disproving any one or more of the four criteria. *Id.* (citing *CW Baice Ltd. v. Wisdomobile Grp. Ltd.*, No. 20-03526, 2021 WL 3053147, at *4 (N.D. Cal. July 20, 2021); *Index Newspapers LLC v. City of Portland*, No. 20-1035, 2022 WL 72124, at *9 (D. Or. Jan. 7, 2022)). Ultimately, the *Lo* Court "borrowed the terms of *Karnoski*," to conclude that a district court may be "guided by" the "traditional" standard for injunctive relief and "address" each part of that standard without applying the standard mechanically or as a checklist. *Id.* (citing *Karnoski*, 926 F.3d at 1199, 1202) (cleaned up). "This more flexible interpretation recognizes district courts' wide discretion to ensure their injunctions are just and to fit those injunctions to the evolving circumstances of each case." *Id.* (quotations and internal modifications omitted); *see also id.*, at *8 ("Viewing the question in this way demonstrates why a

---

[1] Under those criteria, plaintiffs seeking preliminary injunctions must establish that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). But "[w]here, as here, the government opposes a preliminary injunction, the third and fourth factors merge into one inquiry." *Porretti v. Dzurenda*, 11 F.4th 1037, 1047 (9th Cir. 2021).

DEFENDANTS' MOTION TO DISSOLVE TRO
3:25-CV-02847- AMO                              4

defendant who seeks to modify or dissolve an injunction should not be required to prove that each element of the four-part test weighs in its favor.").

As applied here, *Dep't of Education v. California* warrants dissolution of the TRO. *First*, Plaintiffs cannot demonstrate a likelihood of success on the merits. The Court's TRO was premised on the conclusion that Plaintiffs were likely to succeed on the merits of their claims under the APA. TRO, 3. The Court's TRO rested on the presumption that Plaintiffs could enforce ORR's funding obligations through the APA. However, under the Supreme Court's recent decision in *Department of Education v. California*, such relief is explicitly unavailable, as the APA's waiver of sovereign immunity does not extend to enforcing contractual obligations or compelling the government to pay money. See 2025 WL 1008354, at 2. Given that the APA provided the sole jurisdictional basis for the TRO, the Supreme Court's ruling eliminates Plaintiffs' likelihood of success on the merits.

*Second*, Plaintiffs cannot demonstrate irreparable injury because any funding-related harm can be remedied through monetary relief in the appropriate forum. As the Supreme Court emphasized in *Department of Education*, where plaintiffs retain the ability to seek reimbursement of withheld funds through an appropriate suit, the harm alleged is monetary and does not rise to the level of irreparable injury warranting injunctive relief. 2025 WL 1008354, at 2. Here, Plaintiffs' asserted injuries stem solely from the termination of funding—an injury explicitly remediable through monetary damages in the proper venue, such as a claim under the Tucker Act. Therefore, Plaintiffs fail to meet the irreparable harm threshold necessary to sustain the TRO.

Moreover, as the Supreme Court also observed, it is the government—not the Plaintiffs—that faces irreparable injury from the disbursement of funds unlikely ever to be recovered once they are disbursed. *Dep't of Education v. California,* 2025 WL 1008354, at 2. Like the plaintiffs in *Dep't of Education v. California*, none of the Plaintiffs here "promised to return withdrawn funds should its grant termination

be reinstated," and this Court declined to impose bond under Rule 65(c). *Id.*; TRO, 7. Thus, Plaintiffs fail to satisfy the irreparable harm threshold necessary to sustain the TRO.

*Third*, the Supreme Court's decision underscores the government's significant interest in maintaining discretion over funding decisions to ensure that appropriations reflect evolving policy priorities and fiscal considerations. *Dep't of Education v. California*, 2025 WL 1008354, at 2. Judicial interference with this discretion not only disrupts agency management of limited resources but also undermines the public interest by constraining the government's ability to effectively allocate taxpayer funds. Given the clarity of the Supreme Court's instruction, neither the balance of equities nor the public interest favors continuation of the TRO. On the contrary, these factors strongly support dissolving the TRO to align with current controlling authority.

Alternatively, the Court should stay the TRO to prevent the government from losing funds that this Court likely lacked jurisdiction to disburse. *See Dep't of Education v. California*, 2025 WL 1008354, at 2. For all of the same reasons explained above, in prior briefing, and now in *Department of Education v. California*, a stay pending potential appeal is warranted here.

## CONCLUSION

The legal basis on which the TRO rested has, as the case law puts it, evaporated. Accordingly, the Court should dissolve the TRO. Alternatively, this Court should stay the TRO pending an appeal by the government.

1   DATED: April 4, 2025                          Respectfully submitted,

2

3                                                 YAAKOV M. ROTH
                                                  Acting Assistant Attorney General

4
                                                  WILLIAM C. SILVIS
5                                                 Assistant Director

6                                                 CHRISTINA PARASCANDOLA
                                                  KATE MASETTA ALVAREZ
7                                                 MICHAEL A. CELONE
                                                  Senior Litigation Counsels
8

9                                                 ZACHARY A. CARDIN
                                                  Trial Attorney
10

11                                                */s/ Jonathan K. Ross*
                                                  JONATHAN K. ROSS
12                                                Senior Litigation Counsel
                                                  U.S. Department of Justice, Civil Division
13                                                Office of Immigration Litigation
                                                  General Litigation and Appeals Section
14                                                P.O. Box 878, Ben Franklin Station
                                                  Washington, DC 20044
15                                                (202) 305-7662
                                                  Jonathan.K.Ross@usdoj.gov
16

17                                                Attorneys for Defendants

18

19

20

21

22

23

24

25

26

27

28