IMMIGRANT DEFENDERS LAW
CENTER
Alvaro M. Huerta (CA Bar No. 274787)
Carson A. Scott (CA Bar No. 337102)
Lya Ferreyra (CA Bar No. 340148)
Immigrant Defenders Law Center
634 S. Spring St., 10th Floor
Los Angeles, CA
(213) 634-0999
ahuerta@immdef.org
cscott@immdef.org
lferreyra@immdef.org

JUSTICE ACTION
CENTER
Esther H. Sung (*pro hac vice*)
Karen C. Tumlin (CA Bar No. 234691)
Laura Flores-Perilla (CA Bar No. 355645)
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
(323) 450-7272
esther.sung@justiceactioncenter.org
karen.tumlin@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org

AMICA CENTER FOR IMMIGRANT
RIGHTS
Adina Appelbaum (*pro hac vice*)
Samantha Hsieh (*pro hac vice*)
Peter Alfredson (D.C. Bar No. 1780258)*
Evan Benz (*pro hac vice*)
Amica Center for Immigrant Rights
1025 Connecticut Ave., NW, Suite 701
Washington, D.C. 20036
(202) 331-3320
adina@amicacenter.org
sam@amicacenter.org
peter@amicacenter.org
evan@amicacenter.org

**pro hac vice* forthcoming
*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,<br><br>Defendants. | Case No. 3:25-CV-02847-AMO<br><br>**PLAINTIFFS' EMERGENCY MOTION TO ENFORCE TEMPORARY RESTRAINING ORDER**<br><br>Date:     May 15, 2025<br>Time:    2:00 p.m.<br>Courtroom: 10<br>Judge:   Hon. Araceli Martínez-Olguín<br>Trial Date: TBD<br>Date Action Filed: March 26, 2025 |

Plaintiffs' Emergency Motion to Enforce Temporary Restraining Order

PLEASE TAKE NOTICE, pursuant to Local Rule 7.2 and the Court's inherent power to enforce its own orders, on May 15, 2025 (or at the Court's earliest convenience), in the United States District Court for the Northern District of California, 450 Golden Gate Ave., San Francisco, CA 94102 that Plaintiffs Community Legal Services in East Palo Alto, Social Justice Collaborative, Amica Center for Immigrant Rights, Estrella del Paso, Florence Immigrant and Refugee Rights Project, Galveston-Houston Immigrant Representation Project, Immigrant Defenders Law Center, National Immigrant Justice Center, Northwest Immigrant Rights Project, Rocky Mountain Immigrant Advocacy Network, and Vermont Asylum Assistance Project will, and hereby do, move this Court for an order enforcing its temporary restraining order (Dkt. 33, issued April 1, 2025).

## INTRODUCTION

On April 1, 2025, this Court issued a temporary restraining order (the "Order") enjoining Defendants "from withdrawing the services or funds provided by the Office of Refugee Resettlement ("ORR") as of March 20, 2025, under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 8 U.S.C. § 1232(c)(5), and ORR's Foundational Rule, 45 C.F.R. § 410.1309(a)(4), particularly ORR's provision of funds for direct legal representation services to unaccompanied children." Dkt. 33 at 7. The Order further "precludes cutting off access to congressionally appropriated funding for its duration." *Id.* By its terms, the Order was to take effect on April 2, 2025, at 8 a.m., and expire on April 16, 2025, at 7:59 a.m., following full briefing on Plaintiffs' preliminary injunction motion. *Id.* at 1, 7.

The Order is clear and unambiguous: it finds injunctive relief necessary to protect Plaintiffs from irreparable harm and commands Defendants to restore legally mandated funding for direct legal representation for unaccompanied children. Instead of complying, Defendants are allowing

Plaintiffs' Emergency Motion to Enforce Temporary Restraining Order

1

unaccompanied children to be removed from the country without an opportunity to be represented by counsel.

Plaintiffs are legal service providers dedicated to the simple and urgent mission that no unaccompanied child should face the legal system alone. Defendants are required by law and by regulation to fund lawyers to represent and provide basic legal services to unaccompanied children "to the greatest extent practicable"—meaning that, if Defendants have available congressional appropriations to spend on such funding, they must do so. 8 U.S.C. § 1232(c)(5). Plaintiffs moved for a temporary restraining order because Defendants recently chose not to fund direct representation and other legal services *at all*, despite the existence of congressional appropriations to provide this required funding through at least September 30, 2027. In addition to violating the TVPRA and ORR's Foundational Rule, Defendants' actions frustrate Plaintiffs' missions, forcing them to lay off highly specialized staff and requiring them to choose between spending every cent they can to continue representing their vulnerable clients for as long as possible (thereby compromising other mission-driven work) or attempting to withdraw from these representations, which would be contrary to Plaintiffs' missions and ethical obligations and which, in any event, cannot be accomplished immediately because many attorneys will require court permission to withdraw. Dkt. 7-4 ¶ 39. Defendants' actions also prevent Plaintiffs from taking on new representations, which is antithetical to their missions and leaves unaccompanied children to face the legal system alone. As the Court properly found, Plaintiffs raise serious questions going to the merits and "are likely to suffer irreparable harm in the absence of preliminary relief," and "the balance of equities tips sharply toward the Plaintiffs and the public interest strongly weighs in favor of entering temporary relief." Dkt. 33 at 5, 6. As a result, the Court appropriately ordered Defendants not to cut off the required legal services for unaccompanied children.

It has now been five full days—more than a third of the length of the TRO relief granted—and Defendants have done nothing to comply with the Court's Order. Instead, Defendants appear to have rejected this Court's Order entirely, filing a meritless motion asking the Court to dissolve the Order (which, while pending, is no excuse for non-compliance). Defendants' unjustified actions continue to cause Plaintiffs irreparable harms. *See Pasadena City Bd. of Educ. v. Spangler*, 427 U.S. 424, 439-40 (1976) ("those who are subject to the commands of an injunctive order must obey those commands, notwithstanding eminently reasonable and proper objections to the order, until it is modified or reversed")

## DEFENDANTS HAVE NOT COMPLIED WITH THIS COURT'S TEMPORARY RESTRAINING ORDER

Plaintiffs refer the Court to their Motion for a Temporary Restraining Order for a full factual background. *See* Dkt. 7 at 11-17. On those facts, the Court issued a temporary restraining order at 6:51 pm on April 1, 2025, commanding Defendants to fund required direct representation for unaccompanied children through 7:59 a.m. on April 16, 2025. *See* Dkt. 33 at 1-2. The Order went into effect at 8:00 a.m. on the morning of April 2, 2025, giving Defendants more than 12 hours' notice before it took effect. *Id.*

On April 2, 2025, Plaintiffs asked Defendants how they intend to comply with the Order. Amica Enf. Decl. Ex. 1. Defendants stated they "are in receipt of the Court's order and are taking steps to comply expeditiously." *Id*. Plaintiffs followed up on April 3, 2025, asking again what Defendants were doing to comply with the Order, as Plaintiffs had not been informed of any efforts by Defendants to comply. *Id.* Despite the apparent lack of compliance by Defendants, Plaintiffs began receiving requests from ORR shelter subcontractors who, relying on the Order, asked them to take on new unaccompanied child clients—which Plaintiffs cannot do without funding from Defendants. *Id.* On April 3, 2025, Defendants replied that they would "be back in touch shortly."

*Id*. But Defendants did not get "back in touch" to outline any steps they were taking to comply. *Id*. Instead, late in the evening of April 4, 2025, Defendants filed a motion to dissolve the Order and an accompanying motion to shorten time to hear the motion to dissolve. Dkts. 38, 39.

Plaintiffs have not received any update from Defendants as to whether and how they are complying with the Order, and are not aware of *any* actual steps Defendants have taken to comply. *See* Amica Enf. Decl. ¶ 6. Instead, as set out in further detail below, Plaintiffs were alerted on Saturday of the imminent removal of an unaccompanied child from a shelter within Plaintiff Estrella del Paso's service area. Despite an urgent inquiry sent by Plaintiffs' counsel on Saturday night for information, the child was removed on Sunday morning without any response from Defendants. *See id*. ¶¶ 7, 8, Ex. 3. Defendants did not respond to Plaintiffs' urgent request until the morning of Monday, April 7, 2025, after the child was removed from the United States. *See id*. ¶ 7, Ex. 3.

## WHILE DEFENDANTS ARE NOT IN COMPLIANCE, PLAINTIFFS CONTINUE TO SUFFER IRREPARABLE HARMS

Far from staving off the irreparable harms that continue to accrue, as required by the Court's Order, Defendants have created conditions that exacerbate these harms. Indeed, Plaintiffs have become aware of new facts demonstrating the ongoing irreparable harms Defendants are causing Plaintiffs—harms the Order was explicitly issued to prevent.

For example, late on Friday, April 4, 2025, Plaintiff Estrella del Paso learned that an unaccompanied child in their service area, referred to as "A.D.G.M.," was set to be deported early in the morning on Sunday, April 6, 2025. Estrella Enf. Decl. ¶¶ 4–5. Estrella del Paso had met with A.D.G.M. on Friday, March 21, 2025, before learning that Defendants had (that same day) cut off funding for Estrella del Paso to provide legal services to unaccompanied children like A.D.G.M., and was subsequently unable to offer him representation due to Defendants' actions.

*Id.* ¶ 7. Had Defendants complied with this Court's Order, Estrella del Paso may have learned about A.D.G.M.'s imminent removal—and offered or found representation for him—before he was removed from the United States. Instead, by the time Estrella del Paso learned about A.D.G.M.'s situation and sought to interview him to assess his eligibility for relief, it was too late—his removal was pending and could not be stopped by ORR, and Estrella del Paso could do nothing to help him understand his rights, ensure he received due process, and possibly avoid immediate removal from the United States. *Id*. ¶¶ 5–6. A.D.G.M. has now been removed from the United States. *Id*. ¶ 6.

Had Defendants complied with the Court's Order and their legal obligations under the TVPRA and Foundational Rule, Estrella del Paso would have evaluated A.D.G.M. for eligibility to reopen his removal proceeding and very likely assisted A.D.G.M. in filing a motion to reopen, which would have automatically stayed A.D.G.M.'s removal during the pendency of a decision on its merits. Estrella Enf. Decl. ¶ 9.

Instead—because Defendants refused to comply with the Court's Order—Estrella del Paso was functionally precluded from supporting A.D.G.M., leaving him alone to face removal without having had the basis of his removal order analyzed and options to reopen his case or apply for legal relief evaluated. As a result, A.D.G.M. was deported without access to counsel and Estrella del Paso's mission to "provide immigration legal services, advocacy, and community outreach to protect the rights of immigrants . . . and advance justice in the spirit of the Gospel" was frustrated. Dkt. 7-14 ¶ 2. A.D.G.M. is one of many unaccompanied children who will be deported without legal assistance due to Defendants shirking their mandate under this Court's Order.

## THE COURT SHOULD ISSUE AN ORDER ENFORCING COMPLIANCE

It is a "basic proposition that all orders and judgments of courts must be complied with promptly." *Maness v. Meyers*, 419 U.S. 449, 458 (1975). District courts have the inherent power

to enforce their own orders. This power flows from statute, 18 U.S.C. § 401, and more broadly from the implied powers "necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962).

Despite the Court's Order directing relief to take effect at 8:00 a.m. PT on Wednesday, April 2, and despite Defendants promising to "comply expeditiously," Defendants have not taken *any* actions to comply with the Court's Order and have not expressed *any* plans for compliance. *See* Amica Enf. Decl. ¶¶ 6, 7, Ex. 1. Instead, Defendants now move to dissolve the Order after ignoring it, and do not appear to intend to comply with the Order while that motion is pending.

The motion to dissolve does not justify Defendant's non-compliance or absolve Defendants from their obligation to comply with this Court's Order. *See Pasadena City Bd. of Educ.*, 427 U.S. at 439-40 ("those who are subject to the commands of an injunctive order must obey those commands, notwithstanding eminently reasonable and proper objections to the order, until it is modified or reversed"). Neither does the Supreme Court's very recent decision in *Dept. of Educ. v. Cal.*, No. 24A910, --- S.Ct. ---, 2025 WL 1008354 (Apr. 4, 2025), attached to Defendants' motion to dissolve. In that case, states sued the Department of Education for withholding funding under certain education grants. The Supreme Court stayed the District Court's temporary restraining order pending appeal. That decision is inapplicable both factually and legally.

First, this case is in a different posture. As the Supreme Court noted, the District Court in *Department of Education* had extended the temporary restraining order, and the government appealed the temporary restraining order and moved to stay. Thus, the Court found that the *Department of Education* temporary restraining order "carries many of the hallmarks of a preliminary injunction" and was appealable. *Dept. of Educ.*, 2025 WL 1008354 at * 1. In this

case, Defendants have not appealed the Court's temporary restraining order, nor have they moved for a stay pending appeal. Moreover, the Court has not extended its temporary restraining order, and has set an aggressive briefing schedule on Plaintiffs' already-filed motion for a preliminary injunction so that the Court need not extend the Order. *See* Dkt. 33 at 7 (all preliminary injunction briefing will be complete two days before the Order expires). The Order is not a preliminary injunction.

*Department of Education* is also inapplicable because the facts the Supreme Court relied on for its Tucker Act and irreparable harm findings are not present here. The Supreme Court held that the government was likely to prevail on the merits of the APA claims in question because the plaintiffs in that case sued for payment on grant contracts—which, the Court explained, meant the requested relief was "to enforce a contractual obligation to pay money" on the grant contracts, and the District Court did not have jurisdiction over such claims under the Tucker Act. *Id.* at *1 (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). This case is entirely different—Plaintiffs have no contract with the government; are suing based on rights in statute (the TVPRA) and regulation (the Foundational Rule), rather than any contract right; and seek relief to enforce those *statutory* and *regulatory* rights, not relief sounding in contract. *See* Dkt. 37 at 15-17 (explaining in detail that the Tucker Act does not apply to Plaintiffs' claims). Moreover, as Plaintiffs stressed before the Court on April 1, 2025, they do not seek specific performance of a particular contract that Defendants prematurely terminated. Rather, Plaintiffs seek injunctive, forward-looking relief that Defendants meet their obligations under the TVPRA and the Foundational Rule to provide legal representation to "all" unaccompanied children "to the greatest extent practicable." 8 U.S.C. § 1232(c)(5); 45 C.F.R. § 410.1309(a)(4). This Court correctly held that the Tucker Act does not apply and that the Court has jurisdiction over Plaintiffs'

claims, Dkt. 33 at 3, and the Supreme Court's decision does not inform, let alone disturb, that holding.

The *Department of Education* decision also held that the plaintiffs in that case had not demonstrated irreparable harm sufficient to preclude a stay of the TRO, because the state plaintiff grant recipients "represented in [the case] that they have the financial wherewithal to keep their programs running" without the grants, so that "if respondents instead decline to keep the programs operating, then any ensuing irreparable harm would be of their own making." *Dept. of Educ.*, 2025 WL 1008354 at *1. The opposite is true here. As the Plaintiff nonprofits have demonstrated in dozens of declarations, they are unable to continue doing their mission-driven work if Defendants do not provide access to congressionally appropriated funds, consistent with the TVPRA and Foundational Rule. Defendants' actions have forced Plaintiffs to lay off staff, divert funding from other programming, expend limited reserve funding, and contemplate an imminent future where Plaintiffs cannot afford to represent or provide legal services to unaccompanied children—and where they may soon be forced to shut down. *See, e.g.,* Dkt. 37 at 30-33 (explaining the irreparable harms Plaintiffs face and citing declarations). Plaintiffs here, unlike the state plaintiffs in *Department of Education*, face complete demise, and already have taken actions the state plaintiffs were not forced to take. On these facts, there can be no question Plaintiffs face irreparable harm, as the Court correctly found. Dkt. 33 at 5.

Try as they may to suggest otherwise, the *Department of Education* decision provides no justification for Defendants' failure to comply with a valid Court Order, issued more than two days before that decision.

## CONCLUSION

The Court should issue an order enforcing its temporary restraining order, and should make any additional orders necessary to ensure Defendants comply. Plaintiffs reserve the right to move for sanctions, which the Court, of course, has the power to issue on its own.

Respectfully submitted,

April 7, 2025

/s/  Alvaro M. Huerta

IMMIGRANT DEFENDERS LAW CENTER
Alvaro M. Huerta (CA Bar No. 274787)
Carson A. Scott (CA Bar No. 337102)
Lya Ferreyra (CA Bar No. 340148)
Immigrant Defenders Law Center
634 S. Spring St., 10th Floor
Los Angeles, CA
(213) 634-0999
ahuerta@immdef.org
cscott@immdef.org
lferreyra@immdef.org

/s/  Karen C. Tumlin

JUSTICE ACTION CENTER
Esther H. Sung (*pro hac vice*)
Karen C. Tumlin (CA Bar No. 234691)
Laura Flores-Perilla (CA Bar No. 355645)*
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
(323) 450-7272
esther.sung@justiceactioncenter.org
karen.tumlin@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org

/s/  Samantha Hsieh

AMICA CENTER FOR IMMIGRANT RIGHTS
Adina Appelbaum (*pro hac vice*)
Samantha Hsieh (*pro hac vice*)
Peter Alfredson (D.C. Bar No. 1780258)*
Evan Benz (*pro hac vice*)
Amica Center for Immigrant Rights
1025 Connecticut Ave., N.W., Suite 701
Washington, D.C. 20036
(202) 331-3320
adina@amicacenter.org
sam@amicacenter.org
peter@amicacenter.org
evan@amicacenter.org

*pro hac vice* forthcoming
*Attorneys for Plaintiffs*