IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, *et al.*,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,

Defendants.

Case No. 3:25-CV-02847-AMO

**SUPPLEMENTAL DECLARATION OF ROXANA AVILA-CIMPEANU (FIRRP) IN SUPPORT OF PLAINTIFFS' RENEWED EMERGENCY MOTION TO ENFORCE TEMPORARY RESTRAINING ORDER**

**SUPPLEMENTAL DECLARATION OF ROXANA AVILA-CIMPEANU, DEPUTY DIRECTOR, THE FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT**

*I, Roxana Avila-Cimpeanu, make the following statements on behalf of myself and The Florence Immigrant and Refugee Rights Project. I certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. § 1746.*

1. I incorporate my *Declaration in Support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction* (Dkt. 7-4) and *Supplemental Declaration of Roxana Avila-Cimpeanu (FIRRP) In Support of Plaintiff's Motion for a Preliminary Injunction (Dkt. 37-5)* as if fully set forth herein.

1. My name is Roxana Avila-Cimpeanu. I am a licensed attorney and a member in good standing in the State Bar of Arizona. I am currently employed as Deputy Director of the Florence Immigrant & Refugee Rights Project ("Florence Project" or "FIRRP"). I joined the Florence Project on September 6, 2016, and have served in my current role since September 2024. Before I assumed my current position, I previously served as Children's Legal Program Manager, Managing Attorney for the Children's Pro Bono Program, Pro Bono Mentor, Staff Attorney, and Law Graduate with the Florence Project's Children's Legal Program serving unaccompanied immigrant children in Arizona. During my time at the Florence Project, I have personally provided free legal services, including friend of court ("FOC") services, direct representation, legal orientation and education, and pro bono mentorship, to at least 140 children. Additionally, as Children's Legal Program Manager and Deputy Director I have supervised attorneys, pro bono volunteer attorneys, law graduates, accredited representatives, legal assistants, intake specialists, and social workers who have provided free legal services, both direct representation and pro se services, to thousands of individuals detained in Office of Refugee Resettlement "ORR" and ICE custody in Arizona.

2. Since filing the Motion for Temporary Restraining Order (TRO) on March 27, 2025, the Florence Project has continued to provide services to our clients, drawing on funding from other sources and fundraising to ensure that we are able to provide legal representation, pro bono placement and mentoring, additional legal services, court preparation, and friend of court services to unrepresented children in keeping with our mission for as long as we can responsibly financially manage to do so. However, given the financial strain that this creates, the Florence Project has not been able to enter representation for new child clients, which both cuts at the core of our mission and has directly harmed children in detention.

2. For example, as a direct result of the continuing lack of clarity regarding funding for representation for children the Florence Project has still been unable to enter representation for the two extremely young children noted in paragraph 43 of my original declaration. These cases involve separation from parents or primary caregivers, prolonged detention

despite uncontestable proof of relationship, and possible violations of the *Ms. L.* Settlement. Despite the extreme vulnerability of these babies, the Florence Project still cannot ethically enter representation given the uncertainty regarding funding sources and our outstanding obligation to hundreds of existing clients for whom we have already entered our appearance as counsel under the UCP contract. Had the Government complied with the restoration of funding and given any meaningful communication regarding how that restored programming would proceed, the Florence Project would have been able to enter into an attorney/client relationship and provide more robust advocacy to ensure the babies are reunified with their loved ones in a timely and lawful manner. Additionally, we would have been able to make preparations in anticipation of imminent master calendar hearings where each baby will be expected to represent their own case in just a few weeks' time.

3. Florence Project was also unable to enter representation for multiple children who have been suddenly scheduled for master calendar hearings. One child, who was calendared for a hearing just two business days before the hearing date, expressed a desire to ask for Voluntary Departure ("VD") at their hearing. Because the child was pro se, the Judge refused to grant voluntary departure, and instead continued the case against the child's wishes "to think about it", thereby prolonging that child's detention. Had the Florence Project been able to represent the child, an attorney would have been able to properly counsel and prepare the child by conducting a full analysis for voluntary departure eligibility and providing child-friendly counseling to ensure that this is what they really want; and ensure that that there are no trafficking concerns inducing child's decision to return. Importantly, we likely would have been able to get VD granted that day, thereby helping the child repatriate sooner rather than languishing in ORR care, away from loved ones.

4. During a recent docket in the Tucson Immigration Court, where FOC is not allowed, Florence Project Attorneys observed at least one child who was served their NTA for the first time in court by the Department, in violation of proper service requirements set forth below:

   i. **INA 240 (b)(1)** (*In order that an alien be permitted the opportunity to secure counsel before the first hearing date in proceedings under section 1229a of this title, the hearing date shall not be scheduled earlier than 10 days after the service of the notice to appear, unless the alien requests in writing an earlier hearing date),*

   ii. **8 C.F.R. § 103.8(c)(2)(ii)** *(for minors service shall also be made on the near relative, guardian, committee, or friend.) extended to 18 years of age by Flores-Chavez v. Ashcroft, 362 F.3d 1150, 1157 (9th Cir. 2004);*

   iii. **Matter of Amaya-Castro, 21 I&N Dec. 583, 584-85 (BIA 1996).** *If DHS serves the NTA while the child is in federal custody, service should also be on the head of the ORR-funded facility where the child resides.); and*

*iv.* **8 C.F.R. § 1003.14(a),** *Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is properly served prior to the filing of the NTA with the Immigration Court. The charging document must include a certificate showing service on the opposing party pursuant to* § 1003.32.

Had the child been represented by the Florence Project, the concerning due process issues could have been raised. In another case where Florence Project served as counsel, a child was able to get a dismissal for failure to prosecute based on lack of properly filed NTA.

5. At the same Tucson docket, Florence Project Attorneys reported observing other instances of legal rights violations and lack of due process in cases involving unrepresented unaccompanied children. For example, Florence Project Attorneys reported that an IJ was questioning *pro se* children as to their parent/sponsor's legal status. Had the children had attorneys, the attorneys would have been able to counsel children to not make admissions in court that could be adverse to their interests. This information asked by the judge could be used to bolster a finding of national origin and designation of removal country. It is unreasonable to expect children to be able to identify when a perhaps facially simple question may have hidden legal pitfalls to avoid. It is also unreasonable to expect children to be able to accurately report whether a person has legal status in the United States since that can be a relatively complex legal question.

6. Florence Project attorneys report that the judge on that same Tucson docket also stated that minors can decline to designate a country of removal, but further stated that if they do designate a country of removal, then the court would assume the child has no fear of return. This is a confusing and potentially legally erroneous advisal. Had the children had attorneys, they could have been counseled, and their attorneys could have raised objections or sought to clarify the instruction in a way that preserved children's fear claims effectively and avoided an erroneous rights advisal that could give rise to the need for appellate proceeding that would further use up the court's resources.

7. I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 11th of April 2025, in Phoenix, Arizona.

Roxana Avila-Cimpeanu

Roxana Avila-Cimpeanu
Deputy Director
The Florence Immigrant and Refugee Rights Project