IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, *et al.*,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,

Defendants.

**SECOND SUPPLEMENTAL DECLARATION OF MARION DONOVAN-KALOUST (IMMDEF) IN SUPPORT OF PLAINTIFFS' RENEWED EMERGENCY MOTION TO ENFORCE TEMPORARY RESTRAINING ORDER**

**SECOND SUPPLEMENTAL DECLARATION OF MARION DONOVAN-KALOUST DIRECTOR OF LEGAL SERVICES AT IMMIGRANT DEFENDERS LAW CENTER**

*I, Marion Donovan-Kaloust, make the following statements on behalf of myself and Immigrant Defenders Law Center. I certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. § 1746.*

1. I incorporate my Declaration in Support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction (Dkt. 7-8) and Supplemental Declaration in Support of Plaintiff's Motion for Preliminary Injunction and Memorandum of Points Authorities in Support Thereof (Dkt. 37-7) as if fully set forth herein.

2. I am the Director of Legal Services of the Children's Representation Project ("CRP") at Immigrant Defenders Law Center ("ImmDef"), where I have been employed for almost ten years. ImmDef is a non-profit organization headquartered in Los Angeles, California, with additional offices in Santa Ana, Riverside and San Diego. ImmDef believes in providing universal representation so that no immigrant is forced to face removal proceedings without an attorney or accredited representative at their side. ImmDef is the largest provider of legal services to unaccompanied children in California and currently provides legal services to children housed in seventeen Office of Refugee Resettlement ("ORR") facilities throughout Southern California. ImmDef also represents thousands of unaccompanied children who have been released from ORR and are residing with sponsors in the Greater Los Angeles area.

3. Despite the Temporary Restraining Order ("TRO") being in effect since 8:00 a.m. PDT on April 2, 2025, we have not received any indication that services are restored. In reliance on the TRO, ImmDef has continued to provide key legal services to detained unaccompanied children because of their immense vulnerability, but due to the uncertainty related to whether the government will in fact restore services in response to the TRO, we are not initiating any new representation for released children, and we are limiting any new representation of detained children to those who are at risk of immediate prejudice (such as those aging out of ORR custody) if we do not offer representation.

4. On April 8, 2025, I read the government's status report (Dkt. 44). My organization's takeaway from the report was that the government was working to restore funding for the terminated contract line items ("CLINs") for direct legal representation, recruitment of pro bono attorneys, and expansion of direct representation that had been previously eliminated on March 21, 2025.

5. On April 9, 2025, our organization received correspondence from the Acacia Center for Justice ("Acacia") indicating that they have not received any information from the

Department of the Interior ("DOI") or the Department of Health and Human Services ("HHS") regarding the government's next steps to reinstate funding for CLINs 2 through 4. *See* Exhibit A, Email from Acacia RE: UCP Contract Update (Apr. 9, 2025). On April 10, 2025, we received another email from Acacia stating that the "[t]he government has also instructed us to continue with standard records return procedures under a contract closeout, related to the termination of CLINs 2 through 4…" Exhibit B, Email from Acacia RE: UCP Contract Update (Apr. 10, 2025). We took this to mean that the government is telling Acacia that funding will not be restored as to CLINs 2 through 4 to legal service providers and therefore that those CLINs remain terminated. This has caused confusion within our organization as it directly contradicts what the government said in their status report.

6. The government's lack of compliance with the TRO has also caused confusion within the immigration courts. The Immigration Judge who typically runs the juvenile docket in Santa Ana Immigration Court has now divided the docket into four individual dockets specifically because it was taking too long to address each child without representation or a Friend of Court ("FOC"). While a routine Master Calendar Hearing usually lasts around 5 to 10 minutes when the child is represented by counsel, or assisted by a Friend of Court, hearings are now taking longer than thirty minutes per child. Both children and ORR-subcontracted case managers are expressing confusion about the proceedings and their role in them. Instead of one afternoon per week before one judge, the court will now be holding four dockets spread across four immigration judges weekly, causing a major expenditure of resources for the immigration court, for the ORR-subcontracted facilities responsible for ensuring children's attendance at the hearings, and for Department of Homeland Security attorneys.

7. On April 9, 2025, our attorneys were present at the detained juvenile docket when the immigration judge expressed frustration that FOC services had not been restored across all legal services providers ("LSPs"), because he had heard about the TRO. While ImmDef has continued to provide FOC services in reliance on the TRO, and potentially at a loss because we have no confirmation of the government's actual compliance, other LSPs have ceased FOC services until they receive further guidance from Acacia. This has caused complete chaos on the docket, and a docket that used to last approximately one hour stretched over three hours that afternoon. On that same docket, one of our attorneys advocated on behalf of a child whose case was and should be funded under the terminated program who is so developmentally delayed that he does not understand where he is. We continue to represent him despite the uncertainty regarding whether funding will be restored because of our ethical responsibility to do so, and because he is simply not competent to navigate the system alone. No child is. But to know that if funding is not restored, our organization would have to turn away children, such as this client, who lack

even basic competence to understand what a court is, is antithetical to our mission and to the concept of due process.

8. Because funding has not been restored, ImmDef has had to turn away vulnerable children in desperate need of representation. For example, twice in the past week, a representative from Los Angeles County Department of Children and Family Services ("DCFS"), the local child welfare agency, contacted me to refer children in removal proceedings who had previously been in ORR custody but were now in DCFS custody. Since DCFS is the local child welfare agency, this means that these children had likely experienced some breakdown in the sponsor relationship and were now under State care. While ImmDef would typically have accepted such referrals, we had to decline because we have no certainty that funding will be restored. That same week, we heard from our clients that Homeland Security Investigations officers have been visiting them at their homes, often scaring them because uniformed or plainclothes officers are arriving at the houses unannounced and demanding to speak with the children. I was able to speak with an officer at HSI who confirmed that these visits are happening and that they were given a directive to confirm the "welfare" of hundreds of unaccompanied children. On information and belief, based on what I have heard from other LSPs, this is happening nationwide. Thus, at a time when the government is purporting to be concerned about the welfare of children released from ORR custody, they have prevented attorneys from advocating on behalf of children who *have* unfortunately experienced a breakdown in the sponsor relationship.

9. This week, our office took steps to identify which of our over 1,900 cases we *could* close out without violating our ethical responsibilities, in light of the uncertainty about whether UCP services will be restored and the potential need to further reduce staff if it is not. We identified about two hundred. While we promised at the outset of those children's cases to stick by them and represent them through the completion of their cases, the uncertainty regarding the government's compliance has caused us to make moves to break those promises. Having to break a promise to a child who has experienced significant trauma, and who has had their trust broken by many adults in their lives, is heartbreaking. It's not a position I ever imagined being in.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 11th of April 2025, in Riverside, CA.



______________________________

**Marion ("Mickey") Donovan-Kaloust**

**Immigrant Defenders Law Center**
**634 S. Spring Street, 10th Floor**
**Los Angeles, CA 90014**
**Tel: (213) 674-9438**
**Fax: (213) 282-3133**
**mickey@immmdef.org**

# Exhibit A

**From:** [redacted]
**To:**
**Cc:**

**Subject:** RE: UCP Contract Update
**Date:** Wednesday, April 9, 2025 11:56:33 AM
**Attachments:** image001.png

**External email: Please be careful if sending personal information or when opening attachments or clicking on links**

*Note: This email has been sent to all Sensitive Communication Contacts and Contract Signatories.*

Dear UCP Network,

We understand there has been some confusion and are writing to clarify that despite the government's statements in the pending litigation, the government **has not yet** reached out to Acacia regarding CLINs 2 through 4.

In terms of the contract currently in effect: as described below, on March 28th, the government exercised a 6-month extension of the UCP contract, **including only delivery of current CLIN1 services.** We do not have a contractual agreement with the government regarding CLINs 2 through 4. If the government rescinds the termination of CLINs 2 through 4, we believe those CLINs would be incorporated into the 6-month extension of the UCP contract currently in effect, at OY2 pricing levels. However, again, we do not have any information as to the government's next steps.

Thank you to everyone that reached out with questions, and please feel free to continue raising any questions or concerns.

Best,
[redacted]

**From:** [redacted]
**Sent:** Tuesday, April 8, 2025 6:07 PM
**To:** [redacted]
**Cc:** [redacted]
**Subject:** UCP Contract Update

*Note: This email has been sent to all Sensitive Communication Contacts and Contract Signatories.*

Good afternoon. We are writing with a brief update that a few hours ago, the government filed a status report in the pending litigation, indicating that the Department of the Interior is finalizing a contract modification to restore CLINs 2 through 4. We are pleased to share this welcome news, but also wanted to relay that we have not yet received any direct communication from the government on this front. We will notify you as soon as we do. We planned to send out contract extension agreements this week for CLIN1 only and will briefly hold off on doing so until we learn more from the government.

Please feel free to reach out with any questions.

Best,
[redacted]

---

**From:** [redacted]
**Sent:** Thursday, April 3, 2025 5:03 PM
**To:** [redacted]
**Cc:** [redacted]
**Subject:** RE: UCP Contract 6 Month Extension CLIN1

*Note: This email has been sent to all Sensitive Communication Contacts and Contract Signatories.*

Dear UCP Network,

Good afternoon. We are still awaiting information on what the government will do following the Northern District of California's grant of the TRO. We believe we may learn more tomorrow. This is unfortunately the only update we have for providers that do not provide CLIN1 services. We will reach out as soon as we learn more.

With respect to CLIN1, we similarly have not received any further information from the government regarding the 6-month extension of the UCP contract currently in effect. Unless circumstances change within the next few days, we are going to issue contract extensions for your contracts covering just the CLIN1 work. This means that you will need to maintain staffing levels under CLIN1 to perform CLIN1 tasks as described in the Notice of Contract Activities Requirements. Your 6-month budget will be your OY2 CLIN1 budget prorated by half, unless there are changes in facilities your organization will be serving in which case we are already in touch and will work with you on necessary modifications.

We know there is some misinformation circulating driven by the government's assertions

during oral arguments on the TRO regarding the nature of the contract currently in effect. To clarify, we are still under the same contract with the government as we have been since it began on March 30, 2022. The 6-month extension is **not** a new contract. Rather portions of the existing UCP contract were terminated (CLINs 2-4), and the remaining portion of the contract (CLIN1) has been extended. The government was not accurate when it stated that the prior contract was terminated, and a new contract was issued.

Please don't hesitate to reach out with any questions. We are aiming to send out contract extension agreements for the CLIN1 work as soon as possible, and no later than the end of next week. We will let you know as soon as we receive any related updates from the government and will advise if the information received leads to changes to the type of contract we send out or the timing of it. As described in the email below we will also send out any revisions to invoicing guidance for CLIN1 as soon as possible; for the time being, please be sure to retain records of the number of KYRs and Legal Screenings completed.

Best,
[redacted]

---

**From:** [redacted]
**Sent:** Friday, March 28, 2025 5:48 PM
**To:** [redacted]
**Cc:** [redacted]
**Subject:** UCP Contract 6 Month Extension CLIN1

*Note: This email has been sent to all Sensitive Communication Contacts and Contract Signatories.*

Dear UCP Network,

I hope everyone is hanging in there given the circumstances. I am writing to share a copy of the notice of partial termination for your records, and to also advise that the government has exercised a 6-month extension of the UCP contract, **including only delivery of current CLIN1 services**. We are seeking clarification regarding the program management and reporting activities formerly incorporated into CLIN2 that support CLIN1 tasks and will send out a more comprehensive communication and schedule a network call as soon as we have more information to share. We will also send out any revisions to invoicing guidance for CLIN1 as soon as possible; for the time being, please be sure to retain records of the number of KYRs and Legal Screenings completed.

In solidarity,
[redacted]

[redacted]

Acacia Center for Justice
acaciajustice.org

*This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail and delete the message.*

# Exhibit B

**From:** [redacted]
**To:**
**Cc:**
**Subject:** UCP Contract Update
**Date:** Thursday, April 10, 2025 1:39:09 PM
**Attachments:** image001.png

**External email: Please be careful if sending personal information or when opening attachments or clicking on links**

*Note: This email has been sent to all Sensitive Communication Contacts and Contract Signatories.*

Dear UCP Network,

I am writing with a brief update. As we **have not** yet heard from the government regarding any contract action, we are moving forward with issuing contract extension agreements **for CLIN1 only**. We will send those out by the end of next week.

The government has also instructed us to continue with standard records return procedures under a contract closeout, related to the termination of CLINs 2 through 4, and we will follow up with any specific related instructions as soon as possible. Any work performed on contract closeout tasks can be included within our termination settlement proposal. We are continuing to work on guidance for the termination settlement proposal and will also send that out as soon as we can.

As always, please feel free to reach out with any questions. We appreciate your continued partnership in this very difficult time.

Thank you,
[redacted]

ACACIA CENTER FOR JUSTICE
[redacted]
Acacia Center for Justice
acaciajustice.org

*This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail and delete the message.*