IMMIGRANT DEFENDERS LAW
CENTER
Alvaro M. Huerta (CA Bar No. 274787)
Carson A. Scott (CA Bar No. 337102)
Lya Ferreyra (CA Bar No. 340148)
Immigrant Defenders Law Center
634 S. Spring St., 10th Floor
Los Angeles, CA
(213) 634-0999
ahuerta@immdef.org
cscott@immdef.org
lferreyra@immdef.org

JUSTICE ACTION
CENTER
Esther H. Sung (*pro hac vice*)
Karen C. Tumlin (CA Bar No. 234691)
Laura Flores-Perilla (CA Bar No. 355645)
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
(323) 450-7272
esther.sung@justiceactioncenter.org
karen.tumlin@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org

AMICA CENTER FOR IMMIGRANT
RIGHTS
Adina Appelbaum (*pro hac vice*)
Samantha Hsieh (*pro hac vice*)
Peter Alfredson (D.C. Bar No. 1780258)*
Evan Benz (*pro hac vice*)
Amica Center for Immigrant Rights
1025 Connecticut Ave., NW, Suite 701
Washington, D.C. 20036
(202) 331-3320
adina@amicacenter.org
sam@amicacenter.org
peter@amicacenter.org
evan@amicacenter.org

*\*pro hac vice* forthcoming
*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, *et al.*,<br><br>                    Plaintiffs,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,<br><br>                    Defendants. | Case No. 3:25-CV-02847-AMO<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:        April 23, 2025<br>Time:        2:00 p.m.<br>Judge:      Hon. Araceli Martínez-Olguín<br>Trial Date:  TBD<br>Date Action Filed:  March 26, 2025 |

## TABLE OF CONTENTS

INTRODUCTION..................................................................................................... 1

ARGUMENT .......................................................................................................... 1

    I. Plaintiffs Are Likely to Succeed on the Merits ................................. 1

        A.   This Court Has Jurisdiction Over Plaintiffs' Claims............................... 1

        B.   Plaintiffs Have Standing to Bring Their Claims. ................................... 4

        C.   The Cancellation Order Is Reviewable Under the APA. ......................... 5

    II. Plaintiffs Satisfy the Remaining Requirements for a Preliminary Injunction 12

        A.   Plaintiffs Face Irreparable Harm Without a Preliminary Injunction ..................... 12

        B.   The Balance of Equities ..................................................................... 14

    III. A Nationwide Injunction Is Appropriate ............................................ 15

    IV. The Court Should Not Require an Injunction Bond.......................... 15

CONCLUSION .................................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*350 Montana v. Haaland*,
    50 F.4th 1254 (9th Cir. 2022) .............................................................................. 12

*In re Aiken Cnty.*,
    725 F.3d 255 (D.C. Cir. 2013) ............................................................................. 12

*Al Otro Lado, Inc. v. Mayorkas*,
    2024 WL 4370577 (S.D. Cal. Sept. 30, 2024) ....................................................... 8

*Arrington v. Daniels*,
    615 F.3d 1106 (9th Cir. 2008) ............................................................................. 12

*Blue Mountains Biodiversity Project v. Jeffries*,
    99 F.4th 438 (9th Cir. 2024), *cert. denied*, 2025 WL 76440 (U.S. Jan. 13,
    2025) ................................................................................................................... 11

*Bowen v. Massachusetts*,
    487 U.S. 879 (1988) .............................................................................................. 2

*Burlington Truck Lines, Inc. v. United States*,
    371 U.S. 156 (1962) ............................................................................................ 11

*California v. F.C.C.*,
    905 F.2d 1217 (9th Cir. 1990) ............................................................................ 11

*California v. Trump*,
    963 F.3d 926 (9th Cir. 2020) ................................................................................ 4

*Carnation Co. v. Sec'y of Lab.*,
    641 F.2d 801 (9th Cir. 1981) ................................................................................ 8

*City and Cnty. of San Francisco v. U.S. Citizen & Imm. Servs.*,
    981 F.3d 742 (9th Cir. 2020) .............................................................................. 12

*Crowley Gov't Servs., Inc. v. GSA*,
    38 F.4th 1099 (D.C. Cir. 2022) ......................................................................... 2, 3

*Dep't of Educ. v. California*,
    No. 24A910, 2025 WL 1008354 (U.S. Apr. 4, 2025) ............................... 4, 14, 15

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
    591 U.S. 1 (2020) ............................................................................................... 12

*Dep't of State v. Aids Vaccine Advocacy Coalition*,
    145 S. Ct. 753 (2025) ........................................................................................... 4

*E. Bay Sanctuary Covenant v. Biden*,
    993 F.3d 640 (9th Cir. 2021) .............................................................................. 15

*E. Bay Sanctuary Covenant v. Trump,*
    932 F.3d 742 (9th Cir. 2018)................................................................................4

*Encino Motorcars, LLC v. Navarro,*
    579 U.S. 211 (2016) ...........................................................................................11

*Flathead-Lolo-Bitterroot Citizen Task Force v. Montana,*
    98 F.4th 1180 (9th Cir. 2024)..............................................................................1

*Katz v. Cisneros,*
    16 F.3d 1204 (Fed. Cir. 1994)..............................................................................2

*Lincoln v. Vigil.*
    508 U.S. 182 (1993) ............................................................................................5

*Lucas R. v. Becerra,*
    2022 WL 2177454 (C.D. Cal. Mar. 11, 2022)......................................................7

*Maine v. U.S. Dep't of Agriculture,*
    2025 WL 1088946 (D. Me. Apr. 11, 2025)...........................................................4

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak,*
    567 U.S. 209 (2012) ............................................................................................4

*Mathews v. Eldridge,*
    424 U.S. 319 (1976) ..........................................................................................15

*Md. Dep't of Human Resources v. D.H.H.S.,*
    763 F.2d 1441 (D.C. Cir. 1985) ...........................................................................2

*Me. Cmty. Health Options v. United States,*
    590 U.S. 296 (2020) ............................................................................................2

*Megapulse, Inc. v. Lewis,*
    672 F.2d 959 (D.C. Cir. 1982) .....................................................................1, 2, 3

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983) .......................................................................................11, 12

*Robbins v. Reagan,*
    780 F.2d 37 (D.C. Cir. 1985) ...............................................................................5

*Rodriguez v. Robbins,*
    715 F.3d 1127 (9th Cir. 2013)............................................................................14

*United Aeronautical Corp. v. U.S. Air Force,*
    80 F.4th 1017 (9th Cir. 2023)..........................................................................1, 3

*United States Conference of Catholic Bishops v. Dep't of State,*
    2025 WL 763738 (D.D.C. Mar. 11, 2025)........................................................3, 4

*United States v. 1996 Freightliner Fld. Tractor VIN 1FUYDXYB-TP822291,*
    634 F.3d 1113 (9th Cir. 2011)............................................................................10

*United States v. Johnson Controls, Inc.*,
  713 F.2d 1541 (Fed. Cir. 1983) .................................................................4

*Cal. ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency*,
  766 F.2d 1319 (9th Cir. 1985) ...............................................................15

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*,
  586 U.S. 9 (2018) ....................................................................................5

## Statutes

8 U.S.C. § 1232(c)(5) ......................................................................... 6, 10, 14

8 U.S.C. § 1362 ........................................................................................7

Full-Year Continuing Appropriations and Extensions Act, 2025, Pub. L. 119-4,
  Div. A Tit. I § 1101(8) (2025) ...................................................................5

Further Consolidated Appropriations Act, 2024, Pub. L. 118-47, Div. D Tit. I, 138
  Stat. 460, 664–665 (2024) .........................................................................6

Further Consolidated Appropriations Act, 2024, Pub. L. 118-47, § 4, 130 Stat.
  460, 461 ...................................................................................................6

Trafficking Victims Protection Reauthorization Act .......................... 1, 3, 4, 5, 6, 7, 8, 12, 13, 14

## Other Authorities

170 Congressional Record H1501-01 ...........................................................6

*Budge Estimates and Committee Recommendations*, U.S. Senate Committee on
  Appropriations, at 194, https://bit.ly/4cyL31J ..........................................8

Olga Byrne & Elise Miller, *The Flow of Unaccompanied Children Through the
  Immigration System* (Mar. 2012), https://shorturl.at/KI3Jt; ....................12

S. Rep. 118-84 ..........................................................................................6

S. Rep. No. 118-84 (2023) .........................................................................6

## Rules

Federal Rule of Civil Procedure 65(c) .......................................................15

## Regulations

45 C.F.R. § 410.1309(a)(4) ....................................................................9, 10

## INTRODUCTION

Defendants' Opposition offers only conclusory statements to explain why terminating statutorily mandated funding of direct representation for unaccompanied children ("UCs") does not violate the Trafficking Victims Protection Reauthorization Act ("TVPRA") and Foundational Rule. Defendants provide no adequate evidence of reasoned decision-making and no evidence their pro bono panacea could be realized. Defendants disregard the thrust of Plaintiffs' claims, manufacture rules, misstate legal standards, and ignore evidence of irreparable harm to Plaintiffs. By violating the TVPRA and Foundational Rule, Defendants also violate the APA, and this Court should issue injunctive relief.

## ARGUMENT

### I.      Plaintiffs Are Likely to Succeed on the Merits

Plaintiffs at minimum raise "serious questions going to the merits" warranting a preliminary injunction under the Ninth Circuit's sliding-scale standard. *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1190 (9th Cir. 2024). The Ninth Circuit recently affirmed "the 'serious questions' test" for preliminary injunctions when the balance of the hardships favors plaintiffs and the injunction is in the public interest, as here. *Id.*

### A.      This Court Has Jurisdiction Over Plaintiffs' Claims.

Defendants' effort to manufacture a jurisdictional defect under the Tucker Act fails. Plaintiffs do not seek contract remedies; they seek injunctive relief. Defendants are violating the TVPRA and Foundational Rule by terminating *all* funding for direct representation—leaving congressionally appropriated funds for this purpose unused—with no reasoning or practicable alternatives. The Acacia contract happens to be the most recent vehicle by which Defendants met their statutory obligations, but it is not the only vehicle, and it is not the basis of Plaintiffs' claims. *See United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1026 (9th Cir. 2023); *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982) (existence of a contract does not subject a claim

to the Tucker Act).

"The Tucker Act yields when the obligation-creating statute provides its own detailed remedies, *or* when the [APA] provides an avenue for relief." *Me. Cmty. Health Options v. United States*, 590 U.S. 296, 323–24 (2020) (emphasis added).  Plaintiffs do not seek a contract remedy for "particular categories of past injuries or labors for which various federal statutes provide compensation," which could implicate the Tucker Act.  *Id.* at 327 (citing *Bowen v. Massachusetts*, 487 U.S. 879, 904–05 n.39 (1988)).  Because Plaintiffs seek "declaratory and injunctive relief" arising from statute and specific remedies that attempt to give them "the very thing to which [they] were] entitled"—not "money in compensation for . . . losses"—the Tucker Act's jurisdictional requirements do not apply.  *Bowen*, 487 U.S. at 893, 895 (quoting *Md. Dep't of Human Resources v. D.H.H.S.*, 763 F.2d 1441, 1446 (D.C. Cir. 1985)); *see also Crowley Gov't Servs., Inc. v. GSA*, 38 F.4th 1099, 1111 (D.C. Cir. 2022) (seeking declaratory and injunctive relief is not "effectively seek[ing] to attain monetary damages"); *Katz v. Cisneros*, 16 F.3d 1204, 1208 (Fed. Cir. 1994) (suit seeking payments did not "seek money as compensation for a loss suffered" and was properly brought in district court).  As "[t]he Claims Court does not have the general equitable powers of a district court to grant prospective relief," this Court is the proper venue.  *Bowen*, 487 U.S. at 905.

Plaintiffs' action is not "at its essence" a contract claim.  That a contract exists and has some factual relevance to the claims does not change this conclusion.  *Megapulse*, 672 F.2d at 968. *Megapulse*, on which Defendants rely, "disagree[s] . . . that any case requiring some reference to or incorporation of a contract is necessarily on the contract and therefore directly within the Tucker Act."  *Id.* at 967–68.  Where a plaintiff "does not claim a breach of contract," "seeks no monetary damages against the United States," and does not seek specific performance, there is no contract claim—"that a court may have to rule on a contract issue" does not "automatically transform the

action" or deprive the court of jurisdiction it otherwise has.  *Id.* at 968–70; *see also United Aeronautical Corp.*, 80 F.4th at 1026.  Plaintiffs' APA claims seek injunctive relief requiring Defendants to "continue to fund legal representation to [UCs], consistent with the TVPRA and [Foundational Rule]."  Dkt. 1 at 39.  Monetary relief alone is not an "adequate remedy." *Megapulse*, 672 F.2d at 970.  Only an order requiring Defendants to provide the required funded legal representation for UCs, through a contract or otherwise, can remedy Plaintiffs' harms.

Defendants also rely on *Crowley*, another case supporting Plaintiffs.  There, the district court had jurisdiction where a plaintiff not in contract with the government brought an APA claim seeking declaratory and injunctive relief preventing the government from violating their statutory rights by taking arbitrary and capricious actions implicating other contract rights.  38 F.4th at 1102–05.  Under *Crowley*, a court must consider both the source of the rights asserted and the nature of the relief sought.  *Id.* at 1107.  The court has jurisdiction if *either* does not sound in contract.  *Id.* at 1106.  As to the source of the rights, *Crowley* identified three factors, which all support Plaintiffs here: (1) Plaintiffs' asserted rights arise from statute; (2) Plaintiffs' rights exist prior to and apart from rights created under the contract; and (3) Plaintiffs do not seek to enforce a duty imposed upon the government by contract.  *Id.* at 1107.  Plaintiffs' "source of right" "on the face of the complaint" is the TVPRA and Foundational Rule, as they claim Defendants are violating the APA by ending legal representation for UCs, contrary to their mandates.  *Id.* at 1108. As to the nature of the relief, Plaintiffs do not make a claim "on a right to money."  *Id.* at 1108; *see also* Dkt. 1 at 39; Dkt. 37 at 12.  To "determine whether [Defendants] infringed [Plaintiffs'] rights . . . requires primarily an examination of the statutes [Defendants] purportedly violated, not of [Plaintiffs'] contract[s]."  *Id.* at 1108–09.

Defendants' reliance on recent cases is misplaced.  For example, in *United States*

*Conference of Catholic Bishops v. Dep't of State*, 2025 WL 763738 (D.D.C. Mar. 11, 2025), without addressing the first *Crowley* element (the source of the rights asserted), the court found that plaintiffs, who contracted with the government, sought contractual relief. *Id.* at *5. Here, Plaintiffs cannot and do not seek such relief. *See, e.g.*, *United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1550–51 (Fed. Cir. 1983) (subcontractors cannot recover under a primary contract). Instead, they seek to enjoin Defendants from violating the TVPRA and Foundational Rule. Similarly, and as noted in Plaintiffs' Opposition to Defendants' Motion to Dissolve (Dkt. 54), *Dep't of Educ. v. California*, No. 24A910, 2025 WL 1008354, at *1 (U.S. Apr. 4, 2025), does not overrule current Tucker Act precedent and explicitly notes that "the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on any express or implied contract with the United States," which Plaintiffs do not have. *See Maine v. U.S. Dep't of Agriculture*, 2025 WL 1088946, at *19 n.8 (D. Me. Apr. 11, 2025) (finding *Dep't of Educ.* did not change the Tucker Act analysis under *Bowen*); *see also Dep't of State v. Aids Vaccine Advocacy Coalition*, 145 S. Ct. 753 (2025) (declining to stay a case involving the cancellation of appropriated funds).

### B. Plaintiffs Have Standing to Bring Their Claims.

As this Court has found, Plaintiffs have prudential standing because their claims easily fall within the zone of interest protected by the TVPRA. *See* Dkt. 33 at 3–4. Plaintiffs need not be express beneficiaries of a statute to file suit; rather, those whose "interests are congruent with those of Congress and are not 'inconsistent with the purposes implicit in the statute'" are suitable challengers. *California v. Trump*, 963 F.3d 926, 942 (9th Cir. 2020) (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012)). Plaintiffs easily qualify: their interests are congruent with the TVPRA's and Foundational Rule's beneficiaries (UCs) and closely related to Congress's purpose in enacting the TVPRA (providing UCs legal representation). *See E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 768 (9th Cir. 2018).

### C.    The Cancellation Order Is Reviewable Under the APA.

Defendants argue that "HHS's funding decision[s] under the TVPRA and the Foundational Rule are discretionary," so the APA precludes review.  Dkt. 55 at 19.  Defendants misinterpret the TVPRA's mandates and ignore the APA's jurisdictional grant to review agency action.

Defendants concede that an agency exercising discretion must "abide[] by the relevant statutes (and whatever self-imposed obligations may arise from regulations or grant instruments)." Dkt. 55 at 20.  Terminating all funding for direct representation of UCs violates the TVPRA and Foundational Rule, as discussed in the Complaint, Dkt. 1; TRO, Dkt. 7; and Motion for a PI, Dkt. 37.  Thus, this Court can review their determinations under the APA.  *Contra* Dkt. 55 at 20.

Even broad agency discretion does "not render the agency's decisions completely nonreviewable." *Robbins v. Reagan*, 780 F.2d 37, 45 (D.C. Cir. 1985); *see also* Dkt. 37 at 20–21. For discretionary agency action to not be judicially reviewable, a court must "have *no meaningful standard against which to judge the agency's exercise of discretion*." *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 23 (2018) (emphasis added).  Here, several meaningful standards allow the Court to judge Defendants' exercise of discretion, *see* Dkt. 37 at 19–20, including the TVPRA and Foundational Rule, but Defendants ignore them.

Instead, Defendants claim HHS's decision to terminate all funding here is similar to an agency's unreviewable determination in *Lincoln v. Vigil.*  508 U.S. 182 (1993).  It is not.  In *Lincoln*, the relevant "appropriations Acts . . . do not mention the [cancelled] Program," the relevant statutes "speak about Indian health [(the program's focus)] only in general terms," and "Congress never expressly appropriated funds" for the cancelled program. *Id*. at 186, 193–94; *see also* Dkt. 37 at 20.  By contrast, here, the TVPRA explicitly mandates direct legal representation, and Congress has expressly appropriated funds for services required under the TVPRA (including provision of counsel).  *See, e.g.*, Full-Year Continuing Appropriations and Extensions Act, 2025,

Pub. L. 119-4, Div. A Tit. I Sec. 1101(8) (2025); Further Consolidated Appropriations Act, 2024, Pub. L. 118-47, Div. D Tit. I, 138 Stat. 460, 664–665 (2024); S. Rep. 118-84, at 169.  Defendants provide no explanation for ignoring Congress's explicit directives in allocating funds and fail to address the clear distinctions between this case and *Lincoln*.

### 1.   Termination of the Direct Representation Programs Violates the TVPRA.

Defendants' actions violate the TVPRA, which requires that Defendants "shall ensure [UCs] direct representation to the greatest extent practicable."  8 U.S.C. § 1232(c)(5); *see* Dkt. 37 at 21.  Terminating *all* direct representation for UCs, when funds have been explicitly appropriated under the TVPRA, violates this mandate.  *See* Further Consolidated Appropriations Act, 2024, Pub. L. 118-47, § 4, 130 Stat. 460, 461 (incorporating the explanatory statement published at 170 Congressional Record H1501-01, which incorporates Senate Report No. 118-84); S. Rep. No. 118-84, at 167–70 (2023) (providing that "funds will be used to provide access to counsel, consistent with the goals of [TVPRA]"); *see also* Dkt. 37 at 21.

Defendants repeat the conclusory, inaccurate assertion that the TVPRA "does not mandate government-funded legal representation," arguing § 235 of the TVPRA only "*encourages* HHS to ensure [UCs] to have counsel 'to the greatest extent practicable.'"  Dkt. 55 at 9, 11 (emphasis added).  Defendants are wrong.  Section 235 creates a mandatory obligation on Defendants, commanding they "*shall ensure*" UCs have legal counsel "*to the greatest extent practicable*."  8 U.S.C. § 1232(c)(5) (emphasis added).  Funds for legal representation are available.  *See* Further Consolidated Appropriations Act, 2024, Pub. L.118-47, § 4, 130 Stat. 460, 461, *supra*.  It is practicable to provide legal representation with the funds Congress explicitly appropriated for that purpose.  *Id*.  By cancelling legal representation funding, with no alternative plan to ensure UCs have legal counsel "to the greatest extent practicable," Defendants violate the TVPRA.

Defendants also raise a series of unrelated issues to confuse their obligations under the TVPRA, including instructions related to pro bono counsel.  But history and statements by Congress and former HHS officials make clear that Defendants cannot meet their TVPRA obligations through pro bono counsel alone.  *See* Dkt. 37 at 26–27; Dkt. 49-1 at 4 (Amici, former HHS officials, explaining, "It will be impossible to secure pro bono representation for the majority of the 26,000 unaccompanied children currently receiving direct legal representation funded by ORR.").  Instead of explaining how pro bono counsel will meet this need, Defendants chalk it up to a "policy disagreement" and move on.  Dkt. 55 at 26.

Defendants also argue § 235's reference to 8 U.S.C. § 1362, which addresses the right to counsel generally, modifies obligations under Section 235 such that HHS has no obligation to fund direct representation "to the greatest extent practicable."  Dkt. 55 at 11.  But the reference to Section 1362 merely recognizes that HHS and ORR have discretion in how to prioritize what direct representation is funded with appropriated funds, not discretion *whether* to fund direct representation at all when appropriated funds are available.  Although one court acknowledged ORR could "prioritize" what type of legal representation it supported with funds appropriated for UC legal representation, the court noted that "immigration proceedings are heavily emphasized" in congressional appropriations effectuating the TVPRA, finding only that there was no right to counsel in the context of ORR custody determinations.  *Lucas R. v. Becerra*, 2022 WL 2177454, at *31 (C.D. Cal. Mar. 11, 2022).  Congress has made clear that appropriated funds must be spent on direct representation.  For example, in 2023, the Senate Appropriations Committee's explanatory statement focused on "the significant expansion of direct representation for children who have been released from ORR-care, consistent with the goals of the [TVPRA] for all children to have access to counsel."  *Explanatory Statement for Departments of Labor, Health and Human*

*Services, and Education, and Related Agencies Appropriations Bill, 2023: Summary of Budge Estimates and Committee Recommendations*, U.S. Senate Committee on Appropriations, at 194, https://bit.ly/4cyL31J.  The Committee specifically "emphasize[d] the vital importance of legal services for unaccompanied children both during ORR custody and following release." *Id.*  To read the TVPRA and congressional appropriations to allow Defendants to simply decline to fund direct representation when funds are available flies in the face of Congress's plain language.  When appropriations are available for direct representation, making it "practicable" to provide that direct representation, and pro bono counsel is not sufficient to meet the need, Defendants violate their obligations under the TVPRA and Foundational Rule by choosing not to provide direct representation to the "greatest extent practicable." *See also infra* Section I.C.2.

Defendants' (mis)interpretation of their obligations under the TVPRA is contrary to how HHS officials have long interpreted the statute.  *See* Dkt. 49-1.  In their Amicus Curiae Brief, former HHS officials explain ORR's mandate to provide legal services to the "greatest extent practicable . . . necessarily means that ORR should provide funding for direct legal services when appropriated funds are available to do so, and when pro bono provision of legal services is not sufficient to meet the need." Dkt. 49-1 at 7.  They also emphasize "pro bono legal services [are] not a feasible alternative to funding direct legal representation." Dkt. 49-1 at 10.  Defendants cannot reimagine the TVPRA's legal obligation as an "encourage[ment]." Dkt. 55 at 9, 11.

### 2. Terminating Direct Representation Programs Violates the Foundational Rule.

Because Plaintiffs can show (1) Defendants violated their own regulations and (2) Plaintiffs are substantially prejudiced by the violation, Plaintiffs are likely to succeed on the merits of their *Accardi* claim.  *See Al Otro Lado, Inc. v. Mayorkas*, 2024 WL 4370577, at *8–9 (S.D. Cal. Sept. 30, 2024); *see also Carnation Co. v. Sec'y of Lab.*, 641 F.2d 801, 804 n.4 (9th Cir. 1981). Defendants' conclusory argument that they did not violate their own Foundational Rule by

terminating direct representation programs fails for lack of evidence.

Under the Foundational Rule, "ORR *shall* fund legal service providers" "[t]o the extent ORR determines that appropriations are available, and insofar as it is not practicable for ORR to secure pro bono counsel."   45 C.F.R. § 410.1309(a)(4).   Plaintiffs agree it does not "unconditionally require" funding of direct legal representation (*see* Dkt. 37 at 21-22; Dkt. 7 at 20, 24), but Defendants cannot show conditions exist to allow them to cease funding altogether.  *See* Dkt. 55 at 22.  ORR's regulations require it to provide funding for direct representation (1) as long as funding has been appropriated and (2) to the degree it cannot secure pro bono counsel for the UCs who need legal representation.  ORR does not challenge the funding condition, Dkt. 55 at 23 n.2., relying solely on the contention that pro bono counsel can be secured for all UCs.

Defendants' desire to rely on pro bono counsel (expressed only by counsel, not in any administrative record) cannot meet the Foundational Rule's mandate that ORR "shall fund legal service providers" if pro bono counsel is not practicable.  45 C.F.R. § 410.1309(a)(4).  Defendants acknowledge that, although HHS "makes every effort to use pro bono legal services," pro bono services alone are inadequate.  Dkt. 55 at 22.  Former HHS officials as amici agree:  despite efforts to increase pro bono counsel, "ORR has been unable to ensure legal representation for more than 40% of [UCs]," even alongside the now-cancelled funding for direct representation.  Dkt. 49-1 at 3.  Amici explain, "[i]t will be impossible to secure pro bono representation for the majority of the 26,000 [UCs] currently receiving direct legal representation funded by ORR." *Id.* at 4.

Defendants acknowledge the critical role that ORR-funded legal service organizations, including Plaintiffs, play in connecting UCs with pro bono counsel.  Dkt. 55 at 23.  ORR-funded legal service organizations, including Plaintiffs, use their funding to provide their own pro bono representation, free of charge to clients, and also to recruit, train, mentor, and supervise volunteer

pro bono attorneys, who often lack knowledge or expertise in immigration law.  FIRRP Decl. (Dkt. 7-4) ¶¶ 11, 13; MIRC Decl. (Dkt. 7-6) ¶ 12; Amica Decl. (Dkt. 7-15) ¶ 10; KIND Decl. (Dkt. 7-18) ¶ 3.  Defendants fail to explain how they will expand pro bono representation while cutting funding to the very same organizations that enable broader pro bono services.

Defendants fail to support their contention that pro bono services, alone, can meet the TVPRA's mandate—despite all evidence that they cannot.  *See also infra* Section I.C.3.  Indeed, their own regulations explain "it is not practicable for ORR to secure pro bono counsel" sufficient to meet the needs of UCs.  45 C.F.R. § 410.1309(a)(4).  Defendants claim they alone can determine what is "impracticable" (*see* Dkt. 55 at 23), but *Congress* mandated a practicability standard.  8 U.S.C. § 1232(c)(5).  Although Plaintiffs agree agencies have some discretion in *how* to allocate funding, Defendants cannot absolve themselves of having to abide by their own regulations by stating that the regulation is "subject to [the agency's] discretion", Dkt. 55 at 23; otherwise, any agency could avoid accountability mandated by law.  *See United States v. 1996 Freightliner Fld. Tractor VIN 1FUYDXYB-TP822291*, 634 F.3d 1113, 1116 (9th Cir. 2011).  ORR clearly does not have discretion to not fund *any* direct representation, as the rule distinguishes between mandatory and optional funding obligations.  *Compare* 45 C.F.R. § 410.1309(a)4 ("shall fund" direct representation) *with* § 410.1309(b)(2) ("may fund" representation in non-immigration matters).

Because Defendants do not—and cannot—show pro bono services alone can serve the needs of UCs, terminating congressionally appropriated funding for direct representation violates the Foundational Rule.  Plaintiffs are substantially prejudiced by this violation, as they are mission-bound to ensure UC clients receive proper legal representation.  Given the inadequacy of pro bono services and lack of legal service providers to whom Plaintiffs can transfer cases, this violation forces Plaintiffs to choose between financial ruin or abandoning their missions.  Amica Supp. Decl.

(Dkt. 37-15) ¶ 3; GHIRP Supp. Decl. (Dkt. 37-6) ¶¶ 3, 7–8; RMIAN Decl. (Dkt. 7-11) ¶ 14; Estrella

Decl. (Dkt. 7-14) ¶ 15.  Thus, Plaintiffs are likely to succeed on the merits of their *Accardi* claim.

### 3.  Terminating Funding for Direct Representation Is Arbitrary and Capricious.

Defendants' post-hoc explanation for their actions, Dkt. 55 at 25, is inadequate.

Defendants claim "the administrative record here reflects a reasoned decision," but refuse to

provide that administrative record.  *Id.*; *see* Dkt. 37-15 Ex. 1 at 1–2.  Without *any* administrative

record, Plaintiffs are unable to challenge Defendants' self-serving claim that "there is no evidence

of a hidden agenda or contradictory internal record."  Dkt. 55 at 27.  It is Defendants' obligation

to provide such a record.  *Cf. Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438, 444–

445 (9th Cir. 2024), *cert. denied*, 2025 WL 76440 (U.S. Jan. 13, 2025) ("'[T]he whole record' is

ordinarily 'the record the agency presents.'" (citations omitted)).  Defendants ask *Plaintiffs* for

"proof" that "ORR's justification" is improper, but they misunderstand the law: the *government*

must provide evidence, through an administrative record, substantiating their policy decisions as

not arbitrary and capricious.  *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 167–68

(1962).  Defendants' post-hoc "justification" that ORR is "prioritiz[ing] cost-effective measures

(like group legal orientations and initial screenings for relief eligibility) that reach more children,"

Dkt. 55 at 27, ignores the TVPRA's legal representation mandate.  Thus Defendants have failed

to offer the "minimal level of analysis" required under the APA.  *See Encino Motorcars, LLC v.

Navarro*, 579 U.S. 211, 212 (2016).  Defendants mischaracterize this litigation as "a policy

disagreement," Dkt. 55 at 27, but even a policy change requires Defendants to abide by the APA's

and TVPRA's requirements, and provide a record for policy choices, especially policy changes.

*California v. F.C.C.*, 905 F.2d 1217, 1234 (9th Cir. 1990) (administrative record must "supply a

reasoned analysis" for "policy changes"); *see also Motor Vehicle Mfrs. Ass'n v. State Farm Mut.

Auto. Ins. Co.*, 463 U.S. 29, 42 (1983) (similar).

Defendants' post-hoc, litigation justifications cannot substitute for an administrative record or reasoned policymaking, *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 23 (2020), and lack the requisite "detailed justification," *City and Cnty. of San Francisco v. U.S. Citizen & Imm. Servs.*, 981 F.3d 742, 761 (9th Cir. 2020); *In re Aiken Cnty.*, 725 F.3d 255, 261 n.1 (D.C. Cir. 2013) (plurality) (policy disagreements are not legally cognizable reasons to refuse to spend appropriated funds). Defendants must *demonstrate* that they found specific facts and made a choice—a conclusory statement in litigation will not do. *350 Montana v. Haaland*, 50 F.4th 1254, 1259 (9th Cir. 2022); *Arrington v. Daniels*, 615 F.3d 1106, 1112–13 (9th Cir. 2008).

Finally, Defendants cannot wish into existence the pro bono resources on which they rely. They offer no evidence such resources could fulfill the TVPRA and Foundational Rule's mandates, and there is ample evidence they *cannot*. Dkt. 49-1 at 2–4, 8–11. Defendants likewise offer no evidence to substantiate the "policy judgment" Defendants rely on time and again, especially in the face of substantial evidence that pro bono representation is insufficient. Dkt. 55 at 27; *see* Dkt. 49-1 at 8–11 (amici explaining reliance on pro bono support is "not feasible"). In fact, ORR's own pilot program came to the same conclusion. *See* Olga Byrne & Elise Miller, *The Flow of Unaccompanied Children Through the Immigration System*, at 22–23 (Mar. 2012), https://shorturl.at/KI3Jt; Dkt. 1 ¶¶ 57–59. Defendants' actions, without explanation and against the evidence, are arbitrary and capricious. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.

## II. Plaintiffs Satisfy the Remaining Requirements for a Preliminary Injunction

### A. Plaintiffs Face Irreparable Harm Without a Preliminary Injunction

The harms Plaintiffs face without a preliminary injunction are *already* occurring and well-documented. *See e.g.,* Motion for Preliminary Injunction (Dkt. 37 at 30–33) (describing harms). Twelve days have now passed since this Court issued its TRO Order, yet instead of complying, Defendants have (1) moved to dissolve it, Dkt. 38; (2) asked the Court to hear that motion on an

expedited timeline, Dkt. 39; (3) filed a status report claiming they are "awaiting [the Department of the Interior's] final approval and execution of the contract changes" to implement the actions ordered by this Court, Dkts. 45, 45-1, 45-2; (4) informed Plaintiffs' prime contractor to continue termination procedures for the relevant contract provisions, in contradiction of that status report, *see* Dkt. 53; (5) filed a Recusal Motion, Dkt. 47; (6) appealed this Court's Order, Dkt. 56; (7) filed a Motion to Stay, Dkt. 57; and (8) filed a Corrected Recusal Motion, Dkt. 59.  Defendants' delay tactics subject Plaintiffs to further irreparable harm, worsening with each passing day of noncompliance, rendering the need for a preliminary injunction all the more critical.

For example, Plaintiff "Florence Project has still been unable to enter representation for [] two extremely young children." Dkt. 53-3 ¶ 2.  If Defendants had complied with the Court's Order, the Florence Project would have represented those children, who will now "be expected to represent their own case in just a few weeks[.]"  *Id.*  Moreover, "on Monday, April 7, 2025, [Plaintiff Galveston-Houston Immigrant Representation Project] laid off eight (8) staff members due to the [continued] loss of funding." Dkt. 53-2 ¶ 3.  Additionally, ICE has placed 22 children "into expedited immigration court proceedings by filing their NTAs, and the children will be appearing unrepresented in court very soon."  *Id.* at ¶ 6.  Plaintiff Estrella del Paso, the only organization that provides legal services to detained UCs in its region, remains unable "to provide any legal representation, pro se assistance, or assist with pro bono referrals," at a time when "children's cases are moving through the immigration court system at a much faster speed" than they were only weeks ago.  Dkt. 53-4 ¶ 3–4.  Similarly, Plaintiff "ImmDef has had to turn away vulnerable children in desperate need of representation."  Dkt 53-5 ¶ 8.  Defendants' disregard of mandatory language in the TVPRA and the Foundational Rule—and this Court's Order—directly undercuts Plaintiffs' missions to ensure vulnerable UCs do not face the immigration system alone.

Injunctive relief would redress these harms. Despite Defendants' contortion attempts, Plaintiffs do not seek monetary relief. Plaintiffs *agree* that HHS "could contract with organizations other than Acacia and Plaintiffs." Dkt. 55 at 21. But HHS cannot terminate *all* contracts, as done here, with no plan to "ensure [UC direct representation] to the greatest extent practicable." 8 U.S.C. § 1232(c)(5); *see* Dkt. 37 at 21 (explaining the TVPRA grants discretion in *how* to allocate funds, but no discretion *not to* allocate appropriated funds). If Defendants choose to contract elsewhere to provide the requisite representation, Plaintiffs' harms could be redressed because they could transfer their existing representations elsewhere, ensuring unaccompanied children receive legal counsel and are not forced to navigate the immigration system alone, and preventing the mission-based and ethical harms Plaintiffs have demonstrated. *See* Dkt. 37 at 30 (describing harms).

### B. The Balance of Equities

Defendants invent harms that will accrue to the government, claiming "an injunction here would effectively disable the administration from effectuating its executive authority consistent with its constitutional and statutory authorities," while drastically downplaying the irreparable harms accruing to Plaintiffs absent injunctive relief. Dkt. 55 at 31. But the authority Defendants exercised here *violates* constitutional and statutory mandates, and they cannot be harmed by an injunction ending their unlawful acts. *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013).

Defendants also fundamentally misunderstand *Dep't of Educ. v. California*, arguing the balance of equities favors the government where plaintiffs fail to "refute[] the Government's representation that it is unlikely to recover the [] funds once they are disbursed." Dkt. 55 at 30 (*quoting Dep't of Educ.* and omitting its specific reference to "grant funds"). This is wrong: the Supreme Court expressly based its ruling on the *state* respondents' inability to show irreparable harm because they had the "financial wherewithal to keep their programs running" while the TRO was stayed. 2025 WL 1008354, at *1. In contrast, Plaintiffs have shown (and this Court has

agreed) their harms are irreparable, and the loss in funding is having devastating financial and mission-ending consequences.  Dkt. 33 at 5.  Future recovery of wrongly withheld funds cannot redress Plaintiffs' harms here when, for example, they already have turned away would-be clients. *Cf.* 2025 WL 1008354, at *1; Dkt. 37-10 ¶ 14.

Finally, Defendants overrepresent the degree to which fiscal responsibility is in the public interest.  It is not the mere "safeguarding [of] the public fisc" that serves the public interest.  Dkt. 55 at 22.  Instead, the government must ensure fiscal burdens are not "*out of proportion* to any countervailing benefits."  *Mathews v. Eldridge*, 424 U.S. 319, 322 (1976) (emphasis added).  As this Court found, "the balance of equities tips sharply toward the Plaintiffs" here.  Dkt. 33 at 6.

## III.    A Nationwide Injunction Is Appropriate

Nationwide injunctions are warranted to address APA violations, particularly in cases involving immigration policy, where plaintiffs are located across the country.  *E.g. E. Bay Sanctuary Covenant v. Biden,* 993 F.3d 640, 680–81 (9th Cir. 2021).  Additionally, when agency regulations are found unlawful, "the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed."  *Id.* at 681.

## IV.    The Court Should Not Require an Injunction Bond

The Court already found a security bond to be unnecessary for a TRO under Rule 65(c), Dkt. 33 at 7.  For the same reasons, the Court should also exercise its discretion to not require an injunction bond at this stage in the proceedings  Dkt. 37 at 35; *see Cal. ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency*, 766 F.2d 1319, 1325 (9th Cir. 1985).

## CONCLUSION

Defendants have failed to comply with the TRO and continue to cause Plaintiffs irreparable harm. This Court should grant provisional nationwide relief by enjoining Defendants' illegal actions and preserving the status quo pending final judgment.

Respectfully submitted,

April 14, 2025

/s/ Alvaro M. Huerta

IMMIGRANT DEFENDERS LAW CENTER
Alvaro M. Huerta (CA Bar No. 274787)
Carson A. Scott (CA Bar No. 337102)
Lya Ferreyra (CA Bar No. 340148)
Immigrant Defenders Law Center
634 S. Spring St., 10th Floor
Los Angeles, CA
(213) 634-0999
ahuerta@immdef.org
cscott@immdef.org
lferreyra@immdef.org

/s/ Karen C. Tumlin
JUSTICE ACTION CENTER
Esther H. Sung (*pro hac vice*)
Karen C. Tumlin (CA Bar No. 234691)
Laura Flores-Perilla (CA Bar No. 355645)*
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
(323) 450-7272
esther.sung@justiceactioncenter.org
karen.tumlin@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org

/s/ Samantha Hsieh

AMICA CENTER FOR IMMIGRANT
RIGHTS
Adina Appelbaum (*pro hac vice*)
Samantha Hsieh (*pro hac vice*)
Peter Alfredson (D.C. Bar No.
1780258)*
Evan Benz (*pro hac vice*)
Amica Center for Immigrant Rights
1025 Connecticut Ave., N.W., Suite 701
Washington, D.C. 20036
(202) 331-3320
adina@amicacenter.org
sam@amicacenter.org
peter@amicacenter.org
evan@amicacenter.org

*pro hac vice* forthcoming
*Attorneys for Plaintiffs*