IMMIGRANT DEFENDERS LAW CENTER
Alvaro M. Huerta (CA Bar No. 274787)
Carson A. Scott (CA Bar No. 337102)
Lya Ferreyra (CA Bar No. 340148)
Immigrant Defenders Law Center
634 S. Spring St., 10th Floor
Los Angeles, CA
(213) 634-0999
ahuerta@immdef.org
cscott@immdef.org
lferreyra@immdef.org

JUSTICE ACTION CENTER
Esther H. Sung (CA Bar No. 255962)
Karen C. Tumlin (CA Bar No. 234691)
Laura Flores-Perilla (CA Bar No. 355645)
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272
esther.sung@justiceactioncenter.org
karen.tumlin@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org

AMICA CENTER FOR IMMIGRANT
RIGHTS
Adina Appelbaum (*pro hac vice*)
Samantha Hsieh (*pro hac vice*)
Peter Alfredson (*pro hac vice*)
Evan Benz (*pro hac vice*)
Amica Center for Immigrant Rights
1025 Connecticut Avenue NW, Suite 701
Washington, DC 20036
(202) 331-3320
adina@amicacenter.org
sam@amicacenter.org
peter@amicacenter.org
evan@amicacenter.org

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,<br><br>Defendants. | CASE NO. 3:25-CV-02847-AMO<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RECUSAL OF A DISTRICT JUDGE PURSUANT TO 28 U.S.C. § 455 AND REASSIGNMENT**<br><br>Date:      April 23, 2025<br>Time:      2:00 p.m.<br>Judge:    Hon. Araceli Martínez-Olguín<br>Trial Date: TBD<br>Date Action Filed: March 26, 2025 |

# TABLE OF CONTENTS

**Page(s)**

**INTRODUCTION**................................................................................................**1**

**STATEMENT OF RELEVANT FACTS**...........................................................**2**

    A.    Relevant Factual Background ............................................................ 2

    B.    Relevant Procedural History ............................................................. 5

**ARGUMENT** ....................................................................................................**6**

    A.    Defendants Incorrectly Assert that Judge Martinez-Olguin Has Prior
        Employment Relationships with Plaintiffs' Counsel. ............................. 8

    B.    Judge Martínez-Olguín's Impartiality in This Proceeding May Not
        Reasonably Be Questioned. ................................................................. 8

    C.    Defendants Have Not Provided Any Evidence of Judge Martínez-Olguín's
        Knowledge of Disputed Facts That Warrants Recusal. ......................... 14

    D.    The Recusal Motion Is Untimely and a Transparent Effort to Delay and
        Evade the Court's Adverse Ruling. ...................................................... 15

**CONCLUSION** ..............................................................................................**17**

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Arizona Dream Act Coalition v. Brewer*,
    No. 12-cv-2546 (D. Ariz.)..................................................................................4

*Batalla Vidal, et al. v. Nielsen, et al.*,
    No. 16-cv-04756 (E.D.N.Y.) ............................................................................4

*Cano v. Biden*,
    No. 22-CV-193-CAB-AHG, 2022 WL 1239861 (S.D. Cal. 2022) .........................7

*Caperton v. A.T. Massey Coal Co.*,
    556 U.S. 868 (2009).................................................................................10, 11

*Clemens v. U.S. Dist. Ct. for Cent. Dist. of California*,
    428 F.3d 1175 (9th Cir. 2005)...................................................................6, 9, 10

*Cobell v. Kempthorne*,
    455 F.3d 317 (D.C. Cir. 2006) .......................................................................2, 6

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
    967 F.2d 1280 (9th Cir. 1982) ...............................................................15, 16, 17

*Garity v. Donahoe*,
    2014 WL 4354115 (D. Nev. 2014) .....................................................................6

*Garrett v. Ohio State Univ.*,
    60 F.4th 359 (6th Cir. 2023) .............................................................................7

*Konarski v City of Tucson*,
    716 F. App'x 609 (9th Cir. 2017) .......................................................................9

*Laird v. Tatum*,
    409 U.S. 824 (1972)......................................................................................9, 10

*LoCascio v. United States*,
    473 F.3d 493 (2d Cir. 2007)...............................................................................9

*In re Mason*,
    916 F.2d 384 (7th Cir. 1990) ........................................................................10, 13

*In re Murchison*,
    349 U.S. 133 (1955).......................................................................................11

*Nichols v. Alley*,
    71 F.3d 347 (10th Cir. 1995) .............................................................................6

*Perkins Coie LLP v. U.S. Dep't of Just.*,
    2025 WL 914099 (D.D.C. Mar. 26, 2025)...................................................2, 13, 14

Plaintiffs' Opposition to Defendants' Motion for Recusal of a District Judge

*Perry v. Schwarzenegger,*
    790 F. Supp. 2d 1119 (N.D. Cal. 2011) ..........................................................2, 7, 9

*Perry v. Schwarzenegger,*
    630 F.3d 909 (9th Cir. 2011) .................................................................................7

*Preston v. United States,*
    923 F.2d 731 (9th Cir. 1991) ...............................................................................15

*Torres v. Chrysler Fin. Co.,*
    2007 WL 3165665 (N.D. Cal. Oct. 25, 2007) ......................................................9

*In re U.S.,*
    572 F.3d 301 (7th Cir. 2009) .................................................................................7

*United States v. Bell,*
    79 F. Supp. 2d 1169 (E.D. Cal. 1999) ..................................................................9

*United States v. Bosch,*
    951 F.2d 1546 (9th Cir. 1991) .............................................................................12

*United States v. Cerceda,*
    188 F.3d 1291 (11th Cir. 1999) ...........................................................................10

*United States v. Champlin,*
    388 F. Supp. 2d 1177 (D. Haw. 2005) ................................................................10

*United States v. Conforte,*
    457 F. Supp. 641 (D. Nev. 1978), *aff'd*, 624 F.2d 869 (9th Cir. 1980) ..................14

*United States v. Holland,*
    519 F.3d 909 (9th Cir. 2008) .......................................................................6, 9, 12

*United States v. Microsoft Corp.,*
    253 F.3d 34 (D.C. Cir. 2001) ................................................................................7

*United States v. Mosesian,*
    No. 91-10188, No. 91-10197, 1992 WL 197408 (9th Cir. Aug. 18, 1992) ..........11

*United States v. Nixon,*
    267 F. Supp. 3d 140 (D.D.C. 2017) ................................................................7, 13

*United States v. Payne,*
    944 F.2d 1458 (9th Cir. 1991) .............................................................................14

*United States v. Pollard,*
    959 F.2d 1011 (D.C. Cir. 1992) ............................................................................6

*United States v. Tanner,*
    24 F.3d 252, 1994 WL 161952, (9th Cir. May. 2, 1994) ....................................12

*United States v. Trump,*
    694 F. Supp. 3d 144 (D.D.C. 2023) ......................................................................6

Plaintiffs' Opposition to Defendants' Motion for Recusal of a District Judge

**Statutes**

28 U.S.C. § 455......................................................................1, 2, 6, 7, 8, 9, 10, 13, 14, 15, 16, 17

**Other Authorities**

Araceli Martínez-Olguín, *Questionnaire for Judicial Nominees*,
    https://www.judiciary.senate.gov/imo/media/doc/Martinez-
    Olguin%20SJQ%20Public%20Final.pdf (last accessed Apr. 11, 2025)...................................3

Associated Press, *Judge Orders White House To Restore Legal Aid To
    Unaccompanied Migrant Children*, NPR (April 2, 2025, 4:07 AM),
    https://www.npr.org/2025/04/02/nx-s1-5348831/judge-trump-administration-
    legal-aid-to-migrant-children)...................................................................................................11

Canon 3(C)(1)(a), United States Courts, *Code of Conduct for United States
    Judges*, in Guide to Judiciary Policy (Mar. 12, 2019) ...........................................................15

*Justice Action Center: Our Team*, https://justiceactioncenter.org/team/ (last
    visited April 11, 2025) ..............................................................................................................3

Katelyn Masetta-Alvarez, *Tearing Down the Wall Between Refugee and Gang-
    Based-Asylum Seekers: Why the United States Should Reconsider Its Stance
    on Central-American Gang-Based Asylum Claims*, 50 Case W. Res. J. Int'l L.
    377 (2018) ................................................................................................................................13

Nate Raymond, *US Judge Blocks Trump Cuts To Legal Aid For Migrant
    Children*, REUTERS (April 2, 2025 at 1:12 PM).
    https://www.reuters.com/world/us/us-judge-blocks-trump-cuts-legal-aid-
    migrant-children-2025-04-02/...................................................................................................11

Rachel Uranga, *Judge Restores Funds For Lawyers Representing Children In
    Immigration Court*, LOS ANGELES TIMES (April 2, 2025 at 7:08 AM PT),
    https://www.latimes.com/california/story/2025-04-02/judge-restores-funding-
    immigration-court-attorneys .....................................................................................................11

United States District Court: Northern District of California, *District Judge
    Araceli Martínez-Olguín*, https://cand.uscourts.gov/judges/martinez-olguin-
    araceli-amo/ (last visited April 13, 2025) ...............................................................................16

# INTRODUCTION

Defendants' Motion for Recusal of Judge Martínez-Olguín Pursuant to 28 U.S.C. § 455 and Reassignment is without merit and untimely. Defendants have shown no good cause for filing this Motion *only after* Judge Martínez-Olguín (1) heard Plaintiffs' motion for a Temporary Restraining Order ("TRO") (*see* Dkt. 30); (2) entered a TRO ("Order"), (*see* Dkt. 33); (3) set a briefing schedule for Plaintiffs' Motion for a Preliminary Injunction (*id.*); and (4) ordered Defendants to file a status report detailing compliance with the Court's Order (*see* Dkt. 42).

Meanwhile, since this Court's Order on April 1, 2025 (*see* Dkt. 33), Defendants have (1) moved to dissolve it (*see* Dkt. 38); (2) asked the Court to hear that motion on an expedited timeline (Dkt. 39); (3) filed a status report claiming they are "awaiting [the Department of the Interior's] final approval and execution of the contract changes" to implement the actions ordered by this Court (Dkt. 45 at 2); (4) informed Plaintiffs' prime contractor to continue termination procedures for the relevant contract provisions, in contradiction of that status report (Dkt. 53); (5) filed an initial Recusal Motion ("Initial Recusal Motion") (Dkt. 47); (6) appealed this Court's Order (Dkt. 56); (7) filed this corrected Recusal Motion ("Recusal Motion" or "Corrected Recusal Motion") one business day before this Opposition was due, noting an error in their Initial Recusal Motion that "Ms. Esther Sung is no longer employed by the National Immigration Law Center" (Dkt. 59 at 2); and (8) filed an Emergency Motion with the Court of Appeals, asserting that recusal in this case is a "foregone conclusion" (Dkt. 62 at 5). What Defendants have *not* done is comply with the TRO. Defendants' Recusal Motion is yet another delay tactic in a string of transparent attempts to evade the Court's rulings, avoid consequences for Defendants' failure to comply, and further delay proceeding on the merits.

Recusal is appropriate only in extraordinary cases, and Defendants have not met their "substantial burden" to prove it is necessary here.  *See Perry v. Schwarzenegger,* 790 F. Supp. 2d 1119, 1129 (N.D. Cal. 2011); *see also Cobell v. Kempthorne*, 455 F.3d 317, 332 (D.C. Cir. 2006).  Defendants argue that recusal is necessary to "halt the inappropriate infringements into President Trump's exercises of Executive Power." Dkt. 59, Attach. A at 1.  Less than a month ago, in *Perkins Coie LLP v. United States Department of Justice*, the District Court for the District of Columbia rejected this same argument from the Department of Justice, which argued that recusal was necessary "to curtail ongoing improper encroachments of President Trump's Executive Power." 2025 WL 914099 at *1 (D.D.C. Mar. 26, 2025).  The court rejected the recusal motion, noting the argument "sound[ed] like a talking point from a member of Congress rather than a legal brief from the United States Department of Justice" and had "no citation to any legal authority for the simple reason that the notion expressed reflects a grave misapprehension of our constitutional order." *Id.* at *2.  Defendants' argument is the same here and should also be rejected.

Defendants cannot meet the substantial burden for recusal under 28 U.S.C. § 455.  Thus, this Court should deny Defendants' Recusal Motion, which serves only to further delay any alleviation of the ongoing and irreparable harms to Plaintiffs in this case and compliance with this Court's orders.

## STATEMENT OF RELEVANT FACTS

### A.    Relevant Factual Background

Defendants' summary of the facts in their Recusal Motion is inaccurate, incomplete, misleading, and only partially corrected by their Corrected Recusal Motion filed on April 11, 2025. *See* Dkt. 59, Attach. A.  Accordingly, Plaintiffs provide a short description of the facts relevant to this Recusal Motion.

Plaintiffs' Opposition to Defendants' Motion for Recusal of a District Judge

Plaintiffs provide a short background of Judge Martínez-Olguín's employment history. As the Court is aware, Judge Martínez-Olguín worked at various organizations before assuming the bench. *See* Araceli Martínez-Olguín, Questionnaire for Judicial Nominees at 2, https://www.judiciary.senate.gov/imo/media/doc/Martinez-Olguin%20SJQ%20Public%20Final.pdf (last accessed Apr. 13, 2025) (hereinafter "Martínez-Olguín Questionnaire"). Plaintiffs do not include an exhaustive list of these organizations, which is available publicly (*see id.*), but wish to correct issues in Defendants' statement in their Initial Recusal Motion that Judge Martínez-Olguín "began her career at the National Immigration Law Center ["NILC"]." Dkt. 59, Attach. A at 2. Judge Martínez-Olguín started at NILC in 2018, over fourteen years after the beginning of her legal career, and after a series of positions with government bodies, courts, and organizations, such as the United States District Court for the Western District of Texas, Legal Aid at Work, the American Civil Liberties Union Foundation, and the United States Department of Education. *See* Martínez-Olguín Questionnaire at 1–3.

Defendants misrepresent various facts related to Plaintiffs' counsel in this matter. Defendants correct one of those mistakes in their Corrected Recusal Motion: that "Ms. Sung is no longer employed by [NILC]." Dkt. 59 at 2; Dkt. 47 at 2, 5. Plaintiffs welcome this correction. Ms. Sung does not work for NILC, as evident from the caption page of documents filed by Plaintiffs in this case (*see, e.g.*, Dkt. 37), Sung's Application for Admission of Attorney Pro Hac Vice, listing her Justice Action Center email (which Defendants cited as evidence of Ms. Sung's employment at NILC in their Initial Recusal Motion, Dkt. 47 at 5) (Dkt. 27), and from Justice Action Center's public website. *Justice Action Center: Our Team*, https://justiceactioncenter.org/team/ (last visited April 11, 2025).

Plaintiffs' Opposition to Defendants' Motion for Recusal of a District Judge

Key errors in Defendants' Initial Recusal Motion remain, including Defendants' failure to correct their assertion that NILC represents Plaintiffs in this matter. In their Initial Recusal Motion, Defendants repeatedly asserted that "one of the organizations representing Plaintiffs is [NILC], where Judge Martínez-Olguín worked as an attorney up until her confirmation as a district-court judge." Dkt. 47 at 5. Defendants also asserted that this matter is "being litigated . . . by *lawyers* from the [NILC]." Dkt. 47 at 5 (emphasis added). Neither of these statements are true. As has been listed on every document filed by Plaintiffs (*see, e.g.*, Dkt. 37), Plaintiffs' counsel includes the Immigrant Defenders Law Center, Justice Action Center, and Amica Center for Immigrant Rights, but *does not* include NILC. *Id*. The assertion that NILC represents Plaintiffs is conspicuously absent from their Corrected Recusal Motion, but Defendants failed to correct their assertion that this matter is being litigated by multiple "lawyers from the NILC" or that "one of the organizations representing Plaintiffs is the NILC." Dkt. 47 at 5; Dkt. 59.

Defendants do accurately identify that Plaintiffs' counsel Karen Tumlin and Judge Martínez-Olguín served as co-counsel in two cases throughout their respective twenty-plus year careers. *See Arizona Dream Act Coalition v. Brewer,* No. 12-cv-2546 (D. Ariz.), Docket Report; *Batalla Vidal, et al. v. Nielsen, et al.*, No. 16-cv-04756 (E.D.N.Y.), Docket Report. Both cases were filed at least nine years ago and were led by a large group of co-counsel: *Arizona Dream Act Coalition* was filed in 2012, with at least nine different organizations serving as co-counsel, and *Batalla Vidal* was filed in 2016, with at least eight different organizations serving as co-counsel. *See id*. Moreover, Ms. Tumlin and Judge Martínez-Olguín co-counseled on these cases while working at *different* organizations. *Id*.

**B.    Relevant Procedural History**

Plaintiffs filed this action on March 26, 2025, five days after Defendants took action that violated the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA") and the Department of Health and Human Services' ("HHS") Office of Refugee Resettlement's ("ORR") Foundational Rule ("ORR Foundational Rule") by issuing a stop-work order and terminating funding allocated to legal services for unaccompanied children. Dkt. 1 at ¶¶ 4–5; 131. This case was assigned to Judge Martínez-Olguín on March 27, 2025. Dkt. 10.

Since case assignment, the Parties have filed a series of motions and attended an in-person hearing before this Court. On March 27, 2025, Plaintiffs filed their Motion for a Temporary Restraining Order ("TRO"). Dkt. 7. Also on March 27, 2025, this Court issued an Initial Case Management Order (Dkt. 16) and Order regarding Plaintiffs' TRO, setting a hearing and ordering timelines for Defendants' response. Dkt. 17. On March 31, 2025, Defendants filed their Opposition to Plaintiffs' TRO. Dkt. 24. On April 1, 2025, the Parties appeared in front of Judge Martínez-Olguín for a hearing on Plaintiffs' TRO. Dkt. 30. Also on April 1, 2025, this Court granted Plaintiffs' TRO. Dkt. 33.

Since granting Plaintiffs' TRO on April 1, 2025, briefing in this case has continued. On April 4, 2025, Plaintiffs filed their Motion for a Preliminary Injunction. Dkt. 37. Defendants then filed a Motion to Dissolve the TRO, attempting to dissolve this Court's Order. Dkt. 38. Defendants also filed a Motion to Shorten Time, asking this Court to shorten the time to hear their Motion to Dissolve. Dkt. 39. In response, Plaintiffs filed an Emergency Motion to Enforce the Temporary Restraining Order (Dkt. 40) and an Opposition to Defendants' Motion to Shorten Time (Dkt. 42). On April 7, 2025, this Court ordered Defendants to provide a status report regarding their compliance with the TRO, set a further briefing schedule on Defendants' Motion to Dissolve

Plaintiffs' Opposition to Defendants' Motion for Recusal of a District Judge

the TRO and Plaintiffs' Motion for Preliminary Injunction, and set a hearing for April 15, 2025. Dkt. 42. On April 11, 2025, Defendants filed a Notice of Appeal with the Ninth Circuit, in another attempt to challenge this Court's Order. Dkt. 56.

Only *after* filing several motions asking this Court for relief on various issues, appearing before this Court in person, and receiving a series of orders—including an order granting Plaintiffs' TRO—did Defendants file their Initial Recusal Motion on April 9, 2025. Dkt. 47. At 9:09 PM on April 11, 2025, the business day before this Opposition was due, Defendants filed a Notice of Errata to correct one error in their Initial Recusal Motion, noting that "Ms. Esther Sung is no longer employed by the National Immigration Law Center." Dkt. 59 at 2.

## ARGUMENT

"[I]n the absence of a legitimate reason to recuse himself [or herself], a judge should participate in cases assigned." *United States v. Holland*, 519 F.3d 909, 912 (9th Cir. 2008) (cleaned up). As a result, the party moving for recusal carries a "heavy burden" of proof to demonstrate that recusal is required. *Cobell*, 455 F.3d at 332. Indeed, a judge "has as strong a duty to sit when there is no legitimate reason to recuse as he [or she] does to recuse when the law and facts require." *Clemens v. U.S. Dist. Ct. for Cent. Dist. of California*, 428 F.3d 1175, 1179 (9th Cir. 2005) (cleaned up); *see also Holland*, 519 F.3d at 912 ("We are as bound to recuse ourselves when the law and facts require as we are to hear cases when there is no reasonable factual basis for recusal.").

Recusal is limited to "truly extraordinary cases," and Defendants' assertions fall far short of establishing that this is such a case. *Cobell*, 455 F.3d at 332; *see also United States v. Pollard*, 959 F.2d 1011, 1023 (D.C. Cir. 1992) (explaining that the "extraordinary" relief of recusal "is not lightly granted"); *Clemens*, 428 F.3d at 1179 (citing cases where recusal was "warranted under 455(a) because of 'extraordinary circumstances'"). A judge "must not simply recuse out of an

abundance of caution when the facts do not warrant recusal." *Garity v. Donahoe*, 2014 WL 4354115, at *2 (D. Nev. Sept. 3, 2014); *cf. United States v. Trump,* 694 F. Supp. 3d 144, 150 (D.D.C. 2023) ("[J]ustice demands that judges not recuse without cause."). Doing so would render it "too easy for those who seek judges favorable to their case to disqualify those that they perceive to be unsympathetic merely by publicly questioning their impartiality." *Perry v. Schwarzenegger*, 630 F.3d 909, 916 (9th Cir. 2011).

The risks of recusing without cause should not be ignored. *See e.g.*, *Garrett v. Ohio State Univ.*, 60 F.4th 359, 371 (6th Cir. 2023) (warning of the "significant toll" "exact[ed]" on the judiciary by "needless recusals," including "facilitat[ing] judge-shopping") (quoting *In re U.S.*, 572 F.3d 301, 308 (7th Cir. 2009)). "In the wrong hands, a disqualification motion is a procedural weapon to harass opponents and delay proceedings." *United States v. Microsoft Corp.*, 253 F.3d 34, 108 (D.C. Cir. 2001). That is exactly what Defendants are attempting to do here: choose a judge they believe will be more favorable, and in the process, delay proceedings on the merits after having received an adverse ruling. Because of the risks of judge-shopping and delaying proceedings, "[t]he standard must *not* be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice." *Cano v. Biden*, No. 22-CV-193-CAB-AHG, 2022 WL 1239861, at *2 (S.D. Cal. 2022) (cleaned up and emphasis added); *cf. United States v. Nixon*, 267 F. Supp. 3d 140, 148 (D.D.C. 2017) (noting that courts are "*not* to use the standard of mere suspicion" on recusal motions) (cleaned up and emphasis added). Defendants' conclusory allegations do not come close to meeting this standard.

Defendants claim this Court should *not* have fulfilled its duty to participate in the case assigned due to both 28 U.S.C. § 455(a), which requires recusal when the judge's "impartiality

might reasonably be questioned," and 28 U.S.C. § 455(b)(1), which requires recusal when the judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." But contrary to their assertions to the Court of Appeals, recusal is far from a "foregone conclusion" (Dkt. 62 at 5), at least not one that runs in Defendants' favor. Defendants cannot meet either § 455(a) or § 455(b) standards, their Motion is untimely, and recusal is not justified.

## A.  Defendants Incorrectly Assert that Judge Martinez-Olguin Has Prior Employment Relationships with Plaintiffs' Counsel.

Although Defendants conspicuously removed their argument that "there is at least an objective appearance of impartiality given that [Judge Martínez-Olguín's] most recent former employer [NILC] is representing Plaintiffs in this case" (Dkt. 47 at 5) from their Corrected Recusal Motion, they have taken no action to correct their assertion that the matter is "being litigated before Judge Martínez-Olguín by lawyers from [NILC]." Accordingly, Plaintiffs briefly address this argument.

As detailed above, NILC does not represent Plaintiffs in this matter. Defendants now acknowledge Ms. Sung does not work for NILC. Dkt. 59 at 2. Contrary to Defendants' assertions that the matter is being "litigated" by multiple "lawyers from [NILC]" (Dkt. 47 at 5), not a single NILC attorney represents Plaintiffs in this case. Beyond reflecting a deep misunderstanding (or misrepresentation) of the facts allegedly underlying their Recusal Motion, these inaccuracies defeat any argument there is an appearance of partiality because NILC represents Plaintiffs. They simply do not.

## B.  Judge Martínez-Olguín's Impartiality in This Proceeding May Not Reasonably Be Questioned.

After removing Defendants' false assertions, there is little left in their Corrected Recusal Motion. Their remaining assertions fall far short of justifying recusal. Defendants point to three

Plaintiffs' Opposition to Defendants' Motion for Recusal of a District Judge

issues as apparent evidence for recusal under 28 U.S.C. § 455(a): (1) Judge Martínez-Olguín's short time as a Managing Attorney at Community Legal Services in East Palo Alto ("CLSEPA") from 2017–2018 (Dkt. 59, Attach. A at 1–2); (2) Judge Martínez-Olguín's alleged prior working relationships with counsel in this case (*id.* at 5); and (3) statements Judge Martínez-Olguín has made on unrelated issues in her prior "capacity as an immigrant-rights advocate" (*id.* at 4–5). Defendants confuse the facts on each of these points—and, even if they were accurate, they cannot suffice to meet Defendants' substantial burden to require recusal under § 455(a). *See generally Laird v. Tatum*, 409 U.S. 824 (1972) (Chief Justice Rehnquist denying a motion for recusal, despite past statements related to the subject matter of the case and despite his prior employment at the Department of Justice, and construing the provisions of § 455 narrowly).

Recusal under § 455(a) is only appropriate when a judge's "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). This analysis begins with the principle that federal judges are presumed to be impartial. *See, e.g.*, *Konarski v City of Tucson*, 716 F. App'x 609, 611 (9th Cir. 2017). Thus, "the party seeking disqualification bears a substantial burden to show that the judge is biased." *Perry,* 790 F. Supp. 2d at 1129 (quoting *Torres v. Chrysler Fin. Co.*, No. C 07–00915 JW, 2007 WL 3165665, at *1 (N.D. Cal. Oct. 25, 2007)); *United States v. Bell*, 79 F. Supp. 2d 1169, 1171 (E.D. Cal. 1999).

To demonstrate partiality under § 455(a), Defendants must show that "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Holland*, 519 F.3d at 913 (quoting *Clemens*, 428 F.3d at 1178); *see also Clemens*, 428 F.3d at 1178 ("Section 455(a) asks whether a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits.") (quoting *In re Mason,* 916 F.2d 384, 385 (7th Cir. 1990)). A reasonable person "is not a 'partly informed man-in-the-street,'

but rather someone who 'understand[s] all the relevant facts' and has examined the record and the law." *Holland*, 519 F.3d at 914 (alteration in original) (quoting *LoCascio v. United States*, 473 F.3d 493, 496 (2d Cir. 2007)).  The reasonable person standard requires that recusal not be based on tenuous, irrational speculation or "undu[e] suspicio[n]." *Clemens*, 428 F.3d at 1178 (quoting *Mason*, 916 F.2d at 386); *United States v. Cerceda*, 188 F.3d 1291, 1293 (11th Cir. 1999) ("Recusal cannot be based on unsupported, irrational or highly tenuous speculation.") (internal quotations and citation omitted)).

Judge Martínez-Olguín's two-year employment at CLSEPA, which ended over six years ago, is not sufficient to meet the high bar to justify recusal under § 455(a).  Defendants do not cite a single case suggesting that prior employment justifies recusal under § 455(a). Dkt. 59, Attach. A at 3–6.  This is unsurprising—holding that prior employment requires recusal, outside of the enumerated situations under § 455(b), would result in absurd outcomes.  It would be unworkable to hold, for example, that a judge's prior government employment would preclude them from participating in any cases where the government is a party.  *See, e.g.*, *United States v. Champlin*, 388 F. Supp. 2d 1177, 1183–84 (D. Haw. 2005) (judge's prior employment as Assistant U.S. Attorney did not result in reasonable questions regarding the court's impartiality); *Laird*, 409 U.S. 824 (similar).  By that logic, this Court would also be partial to Defendants, given her prior role with the federal government.  Martínez-Olguín Questionnaire at 2 (listing Judge Martínez-Olguín's role as an attorney with the United States Department of Education from 2016–2017). There is no support for those conclusions, and the Court should not reach them here.  This Court had no previous knowledge of this case, "was not involved in any manner in [its] investigation or prosecution, did not express any opinion concerning [the case], and did not act as a supervisor on

[it]." *Champlin*, 388 F. Supp. 2d at 1183–84.  As the court expressed in *Champlin*, "[a]bsent something more, no reasonable person could question the court's impartiality." *Id.* at 1184.

Defendants argue that an article from *The Washington Free Beacon*, noting this Court's prior employment at CLSEPA demonstrates that "[t]here is little doubt that a reasonable person" would question her ability to be impartial." Dkt. 59, Attach. A at 3–4.  But a "subjective belief of bias" from a single news article among a sea of articles that do not claim partiality is inadequate. *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 882 (2009); *cf.* Associated Press, *Judge Orders White House To Restore Legal Aid To Unaccompanied Migrant Children*, NPR (April 2, 2025, 4:07 AM ET), https://www.npr.org/2025/04/02/nx-s1-5348831/judge-trump-administration-legal-aid-to-migrant-children (article taking no issue with Judge Martínez-Olguín's employment history); Rachel Uranga, *Judge Restores Funds For Lawyers Representing Children In Immigration Court*, LOS ANGELES TIMES (April 2, 2025 at 7:08 AM PT), https://www.latimes.com/california/story/2025-04-02/judge-restores-funding-immigration-court-attorneys (similar); Nate Raymond, *US Judge Blocks Trump Cuts To Legal Aid For Migrant Children*, REUTERS (April 2, 2025 at 1:12 PM PT), https://www.reuters.com/world/us/us-judge-blocks-trump-cuts-legal-aid-migrant-children-2025-04-02/ (similar).

Courts mandate recusal for prior relationships in extremely limited circumstances, like conflicts arising from participation in an earlier proceeding *regarding the instant case*.  For example, in *In re Murchison*, the Supreme Court required a judge to recuse himself when the judge also served as a one-man grand jury that chose to indict the defendant, leaving it "difficult if not impossible for [the] judge to free himself from the influence of what took place in his 'grand-jury' secret session." 349 U.S. 133, 134–36, 138 (1955); *see also Caperton*, 556 U.S. at 872–74, 886–87 (requiring recusal from hearing an appeal brought by a company whose chairman, CEO, and

president contributed $3 million—more than 300% the amount of money that the judge's campaign committee had spent—to elect a judge on the West Virginia Supreme Court because of "serious, objective risk of actual bias"). No objective risk of bias exists unless the judge "previously served as a lawyer *in the matter* or where a partner or associate [at the judge's former firm] during any prior period of practice served as a lawyer *on the matter* during the judge's association with him or her. . . . [T]he recusal requirement is triggered only if the judge's former firm *represented a party to this litigation in the same or a related matter* during the time the judge was associated with it." *United States v. Mosesian*, No. 91-10188, No. 91-10197, 1992 WL 197408, at *3 (9th Cir. Aug. 18, 1992) (emphases added). In contrast, this Court has never been involved in this matter until it was assigned, and Defendants' reliance on a single article from one online news source hardly suggests that this Court cannot objectively judge this case.

Defendants similarly have nothing to support their accusation that this Court's "relationship with the attorneys representing Plaintiffs in this case" requires recusal (Dkt. 59, Attach. A at 5), particularly after setting aside Defendants' inaccurate arguments about NILC's role in this litigation. Defendants point to two instances where this Court served as co-counsel with Ms. Tumlin before appointment to the bench and to the fact that Ms. Sung was previously employed by NILC. Dkt. 59, Attach. A at 5–6. Defendants admit these cases "may not be sufficient to create an appearance of bias itself," and they are correct. Dkt. 59, Attach. A at 6. The mere fact of a prior professional relationship—even a supervisory relationship between a judge and a law clerk, which is a much more significant relationship than working at the same organization or serving as co-counsel while employed at different organizations—does not disqualify a judge from presiding over a case. *United States v. Bosch*, 951 F.2d 1546, 1548–49 (9th Cir. 1991) (judge did not need to recuse himself from criminal case prosecuted by his former

law clerk); *see also United States v. Tanner*, 24 F.3d 252, 1994 WL 161952, at *2 (9th Cir. May 2, 1994) (judge did not need to recuse himself from criminal case prosecuted by prosecutor he hired while U.S. Attorney).  Defendants fail to establish any record of a type of relationship that would lead to this Court to favor plaintiffs.  *Tanner*, 4 F.3d 252, 1994 WL 161952, at *2.

Defendants also argue that statements made before appointment to this Court, as "an immigrant-rights advocate, . . . would give a reasonable person pause as to" this Court's impartiality.  Dkt. 59, Attach. A at 4–5.  As an initial matter, this argument misstates the standard for recusal under § 455(a), which requires that a reasonable person "would *conclude* that the judge's impartiality might reasonably be questioned."  *Holland*, 519 F.3d at 913 (cleaned up and emphasis added).  "[M]ere suspicion," *see, e.g.*, *Nixon*, 267 F. Supp. 3d at 148, or the "pause" Defendants allege is not sufficient.  Even if it were, the past statements (about policies not before the Court here and unrelated to this litigation), made as an attorney tasked with zealously advocating for clients, do not raise reasonable questions regarding this Court's ability to impartially determine whether Defendants' decision to terminate funding violates the TVPRA or ORR Foundational Rule.  Dkt. 1 at ¶ 15.  Just as opposing counsel's article criticizing U.S. asylum policies during the previous Trump administration does not preclude her from being able to zealously advocate for her clients in this matter, this Court's employment history does not influence its ability to impartially adjudicate this case.  *See* Katelyn Masetta-Alvarez, *Tearing Down the Wall Between Refugee and Gang-Based-Asylum Seekers: Why the United States Should Reconsider Its Stance on Central-American Gang-Based Asylum Claims*, 50 Case W. Res. J. Int'l L. 377 (2018).

Concluding that prior experience with immigration matters renders this Court unable to be impartial on immigration issues would be entirely unworkable.  Not only would this Court not be

able to hear immigration matters, that logic would require federal judges to recuse themselves in any case related to their career before the bench. Defendants' argument that this experience renders one impartial belies their own desire to "introduce a bias into adjudication," by preventing this Court from "apply[ing] rather than disregard[ing] the law." *Mason,* 916 F.2d at 386.

Finally, Defendants' concerns that these statements reflect a "disdain for President Trump," who is not a party to this lawsuit, have been rejected in a recent district court case where the government raised this same concern. Dkt. 59, Attach. A at 4; *see Perkins Coie*, 2025 WL 914099, at \*3. In *Perkins Coie*, the District Court for the District of Columbia rejected a very similar argument by the Department of Justice, which moved for recusal on the claim that the court had "demonstrated systematic disdain for President Trump" in prior rulings, comments in various proceedings, and comments in public. 2025 WL 914099 at \*3 (cleaned up). There, the court noted that, while the government's motion was "rife with innuendo, none of the claims put forward *come close* to meeting the standard for disqualification." *Id.* (emphasis added). The same is true here, and this Court should similarly reject Defendants' request.

## C. Defendants Have Not Provided Any Evidence of Judge Martínez-Olguín's Knowledge of Disputed Facts That Warrants Recusal.

Defendants provide no concrete evidence to support their assertion that this Court should recuse under § 455(b)(1) because of alleged "personal knowledge of [CLSEPA's] budget and operations." Dkt. 59, Attach. A at 6. Recusal under § 455(b)(1) "requires a showing of bias in fact rather than merely an appearance of impartiality as required under section 455(a)." *United States v. Conforte*, 457 F. Supp. 641, 657 (D. Nev. 1978), *aff'd*, 624 F.2d 869 (9th Cir. 1980). A district judge's determination regarding disqualification is reviewed for abuse of discretion. *United States v. Payne*, 944 F.2d 1458, 1476 (9th Cir. 1991). In proceeding with this case, this Court undoubtedly made the informed determination that it did not have knowledge of a disputed

fact in this case. Defendants' presumptions to the contrary—which they admit are mere presumptions, Dkt. 59, Attach. A at 6 ("Judge Martínez-Olguín presumably has personal knowledge")—are "speculation [and] innuendo," *Perkins Coie*, 2025 WL 914099, at *9, and do nothing to meaningfully challenge this Court's determination that recusal is not warranted.

Defendants argue that this Court "presumably has personal knowledge about how CLSEPA obtains funding, its budget considerations, and its financial dependency upon funding from the federal government." Dkt. 59, Attach. A at 6. Defendants do not point to any evidence that serving as Managing Attorney for CLSEPA *over six years ago*, focused on "local or state policy advocacy and impact litigation, . . . community education, and . . . advice and counsel to community groups," resulted in knowledge of the funding and budget considerations today—in 2025—that Defendants appear to take issue with. Dkt. 59, Attach. A at 3. Defendants have failed to make any showing of "bias in fact" as required by § 455(b)(1). *Conforte*, 457 F. Supp. at 657. Even if they had, those facts are *not dispositive or disputed facts* at issue in this case, and judges are not required to recuse unless they have "personal knowledge of disputed evidentiary facts concerning the proceeding." Canon 3(C)(1)(a), United States Courts, *Code of Conduct for United States Judges*, in Guide to Judiciary Policy (Mar. 12, 2019). The merits of this matter center on whether Defendants' termination of funding for direct legal representation "potentially violates Congress's express directive in the TVRPA and ORR's own commitments in the Foundational Rule." *See* Dkt. 33 at 5. Defendants make no argument that this Court has any personal knowledge with respect to these issues and, as such, their argument for recusal under § 455(b)(1) fails.

## D.    The Recusal Motion Is Untimely and a Transparent Effort to Delay and Evade the Court's Adverse Ruling.

Even if Defendants had met their burden under § 455, which they have not, the Court should reject their Recusal Motion because it is an untimely and transparent effort to escape the

Court's adverse rulings in this case.  It is "well established . . . that a recusal motion must be made in a timely fashion."  *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280,1295 (9th Cir. 1982).  "[T]he absence of [a timeliness] requirement would result in increased instances of wasted judicial time and resources . . . and a heightened risk that litigants would use recusal motions for strategic purposes."  *Preston v. United States*, 923 F.2d 731, 733 (9th Cir. 1991) (citation omitted). Courts have rejected attempts by parties to "wait until after an unfavorable judgment before bringing the information [regarding a possible ground for disqualification] to the court's attention." *E. & J. Gallo Winery*, 967 F.2d at 1295–96.

    *E. & J. Gallo Winery* is instructive.  There, the defendant claimed the district court judge should have recused himself under §§ 455(a) and (b)(2) because the judge previously was a partner at one of the law firms representing plaintiffs.  967 F.2d at 1294–95.  Instead of raising this issue at the outset, the defendant waited until after the judge entered an unfavorable ruling against him before moving for recusal.  *Id.* at 1295.  The Ninth Circuit upheld the district court's denial of his motion because it was untimely, explaining that "hold[ing] otherwise would encourage parties to withhold recusal motions, pending a resolution of their dispute on the merits, and then if necessary invoke section 455 in order to get a second bite at the apple."  *Id.*

    Defendants' Corrected Recusal Motion is a blatant example of using a recusal motion for strategic purposes.  This Court's employment history, which is the crux of Defendants' argument, is publicly available on the Northern District of California website.  United States District Court: Northern    District    of    California,    *District    Judge    Araceli    Martínez-Olguín*, https://cand.uscourts.gov/judges/martinez-olguin-araceli-amo/ (last visited April 13, 2025).  The statements that Defendants take issue with are all from 2019 or 2020, five or more years ago, and are also publicly available online. Dkt. 59, Attach. A at 4–5.  Defendants have been aware—or at

least on notice—of this Court's background since the day this case was filed.  While relatively few calendar days have passed in this matter, significant events have occurred, including binding orders on Defendants, and Defendants have filed several motions asking this Court for relief.  Defendants certainly have had the time and opportunity to bring this Motion earlier if they thought it necessary.  Yet, instead of seeking recusal at the outset, Defendants waited to bring their Recusal Motion until after an unfavorable ruling on the TRO and this Court's subsequent order that Defendants demonstrate compliance with that TRO.  Dkt. 33; Dkt. 42.  If Defendants had a legitimate concern about potential ethical violations—either that they were violating their own ethical obligations, or that Plaintiffs somehow could be violating their ethical obligations by not disclosing a professional relationship that does not exist—as disingenuously suggested in a footnote in their Recusal Motion, Dkt. 59, Attach. A at 1 n.1, one would expect they would raise it to the Court at the first opportunity.  They did not.  Instead, they waited to "invoke [S]ection 455 in order to get a second bite at the apple."  *E. & J. Gallo Winery*, 967 F.2d at 1295.  The Court should reject Defendants' attempt to game the system and should deny Defendants' Recusal Motion.

## CONCLUSION

Defendants cannot demonstrate that good cause exists under 28 U.S.C. § 455(a) or 28 U.S.C. § 455(b)(1) for this Court to not fulfill its duty and hear this case.  Their decision to raise these issues only after unfavorable rulings also makes their motion untimely.  Accordingly, Plaintiffs respectfully request this Court deny the Recusal Motion.

Respectfully submitted,

April 14, 2025

/s/  Alvaro M. Huerta                          /s/  Samantha Hsieh
IMMIGRANT DEFENDERS LAW CENTER      AMICA CENTER FOR IMMIGRANT
Alvaro M. Huerta (CA Bar No. 274787)    RIGHTS

Plaintiffs' Opposition to Defendants' Motion for Recusal of a District Judge

Carson A. Scott (CA Bar No. 337102)
Lya Ferreyra (CA Bar No. 340148)
Immigrant Defenders Law Center
634 S. Spring St., 10th Floor
Los Angeles, CA
(213) 634-0999
ahuerta@immdef.org
cscott@immdef.org
lferreyra@immdef.org

*/s/  Karen C. Tumlin*
JUSTICE ACTION CENTER
Esther H. Sung (*pro hac vice*)
Karen C. Tumlin (CA Bar No. 234691)
Laura Flores-Perilla (CA Bar No. 355645)
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
(323) 450-7272
esther.sung@justiceactioncenter.org
karen.tumlin@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org

Adina Appelbaum (*pro hac vice*)
Samantha Hsieh (*pro hac vice*)
Peter Alfredson (D.C. Bar No. 1780258)*
Evan Benz (*pro hac vice*)
Amica Center for Immigrant Rights
1025 Connecticut Ave., N.W., Suite 701
Washington, D.C. 20036
(202) 331-3320
adina@amicacenter.org
sam@amicacenter.org
peter@amicacenter.org
evan@amicacenter.org

*\*pro hac vice* forthcoming
*Attorneys for Plaintiffs*