YAAKOV M. ROTH
Acting Assistant Attorney General
WILLIAM C. SILVIS
Assistant Director
MICHAEL A. CELONE
CHRISTINA PARASCANDOLA
KATELYN MASETTA-ALVAREZ
JONATHAN K. ROSS
Senior Litigation Counsels
ZACHARY A. CARDIN
Trial Attorney

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 514-0120
Katelyn.Masetta.Alvarez@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| COMMUNITY LEGAL SERVICES IN EAST PALO ALTO<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *ET AL.*,<br><br>Defendants. | Case No. 3:25-cv-02847-AMO<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR RECUSAL OF A DISTRICT JUDGE PURSUANT TO 28 U.S.C. § 455 AND REASSIGNMENT**<br><br>Hearing Date: May 15. 2025<br>Time: 2:00 p.m.<br>Location: Courtroom 10 |

## TABLE OF CONTENTS

INTRODUCTION ....... 1

ARGUMENT ....... 2

**A. Plaintiffs fail to refute that a reasonable person would question Judge Martínez-Olguín's impartiality in light of her previous employment as "managing attorney" at Plaintiff CLS.** ....... 2

**B. Plaintiffs apply the wrong standard for recusal under § 455(a) in arguing that Judge Martínez-Olguín's relationship with Plaintiffs' attorneys and comments about President Trump's immigration policies are insufficient to merit recusal.** ....... 4

**C. Defendants' Motion is timely considering the pace of litigation.** ....... 7

**D. Plaintiffs misrepresent Defendants' corrected motion and overstate Defendants' factual error.** ....... 9

**E. The Government has presented undisputed evidence that Judge Martínez-Olguín has personal knowledge of a disputed fact in this case.** ....... 9

CONCLUSION ....... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Dixie Carriers, Inc. v. Channel Fueling Serv., Inc.*,
669 F. Supp. 150 (E.D. Tex. 1987) ........ 6

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
967 F.2d 1280 (9th Cir. 1992) ........ 6, 8, 9

*Edgar v. K.L.*,
93 F.3d 256 (7th Cir. 1996) ........ 11

*Laird v. Tatum*,
409 U.S. 824 (1982) ........ 3

*Liljeberg v. Health Services Acquisition Corporation*,
486 U.S. 847 (1988) ........ 4

*Molina v. Rison*,
886 F.2d 1124 (9th Cir. 1989) ........ 8

*United States v. Champlin*,
388 F. Supp. 2d 1177 (D. Haw. 2005) ........ 2, 3

*United States v. Holland*,
519 F.3d 909 (9th Cir. 2008) ........ 5, 6, 7

*United States v. Mikhel*,
889 F.3d 1003 (9th Cir. 2018) ........ 8

*Wood v. McEwen*,
644 F.2d 797 (9th Cir. 1981) ........ 8

**Statutes**

28 U.S.C. § 455 ........ 1, 3

**Other Authorities**

H.R. Rep. 93-1453, 93rd Cong., 2nd Sess. 1974, 1974 WL 11635 ........ 3, 4

## INTRODUCTION

Plaintiffs attempt to distract the Court and the public in their Opposition to Defendants' Motion for Recusal. Rather than responding to the merits of Defendants' arguments—that the totality of the circumstances creates an appearance of bias on the part of the district-court judge in this matter, requiring recusal—Plaintiffs raise scattershot issues and misapprehend the standards for recusal. *See* Pls' Brief in Opposition, ECF No. 66. Plaintiffs attempt to change the standard for recusal under 28 U.S.C. § 455(a) by arguing that none of the individual circumstances, such as Judge Martínez-Olguín's long standing professional relationships with two attorneys representing Plaintiffs, create an appearance of bias. But the standard under § 455(a) is what a reasonable person would conclude considering "all the facts"; in other words, considering the totality of the circumstances. Even if Judge Martínez-Olguín's relationships with Plaintiffs' attorneys or her recent comments criticizing President Trump are not by themselves sufficient to create an appearance of bias, when considered together they at the very least tip the scale, especially in light of Judge Martínez-Olguín's previous employment at Plaintiff Community Legal Services in East Palo Alto (CLS).

To sidestep the clear appearance of impropriety posed by the judge's former employment, Plaintiffs improperly rely on case law that analyzes recusal under a standard that does not apply here. They also feebly attempt to minimize Judge Martínez-Olguín's appearance of bias as noted in *The Washington Free Beacon* by citing news articles that do not mention Judge Martínez-Olguín's former employment at CLS. Plaintiffs cannot obscure information that would lead a reasonable person to question Judge Martínez-Olguín's impartiality based on her former employment at CLS.

Plaintiffs also brush off Judge Martínez-Olguín's relationship with her two former colleagues, Karen Tumlin and Esther Sung, as a "mere … prior professional relationship." ECF No. 66 at 17.[1] But Judge Martínez-Olguín appears to have a friendship with Karen Tumlin, a friendship that goes beyond their former relationship as co-counsel in cases challenging the federal government's immigration policies. This apparent friendship, in addition to their former association as co-counsel in cases challenging immigration policies, creates an appearance of impropriety.

[1] All citations to page numbers in docket entries refer to the ECF page number.

In addition, Plaintiffs' complaint that Defendants did not move for recusal quickly enough likewise lacks support. Defendants moved for recusal fewer than two weeks after learning of this action. Defendants focused on the apparent exigencies of the case, including a motion for a temporary restraining order. At least one filing was due nearly every business day in the 10-business-day span between the complaint and the filing of the recusal motion. To the extent 10 business days would be considered "delayed," a quick review of the docket explains the setback.

Beyond opposing recusal under § 455(a), Plaintiffs also complain that Defendants have not submitted "concrete evidence" showing that Judge Martínez-Olguín has personal knowledge about CLS's operations and budget to disqualify her under § 455(b)(1). Other than serving discovery and deposing Judge Martínez-Olguín, it is unclear what other evidence Plaintiffs would require. Defendants have cited public records confirming that Judge Martínez-Olguín was recently a "managing attorney" at CLS who developed policies for the organization and who lobbied for funding through the local government. That alone suggests that Judge Martínez-Olguín has sufficient knowledge about CLS's operations, which is relevant to the alleged irreparable harm that CLS would face absent an injunction. Without any evidence refuting these facts, recusal is required under § 455(b)(1), in addition to § 455(a).

## ARGUMENT

### A. Plaintiffs fail to refute that a reasonable person would question Judge Martínez-Olguín's impartiality in light of her previous employment as "managing attorney" at Plaintiff CLS.

Plaintiffs attempt to combat the Judge's appearance of impropriety here by citing distinguishable case law that deals specifically with former government attorneys, labeling a news outlet that reported on the impropriety issue as "biased," and considering each individual impropriety factor piecemeal rather than under the totality of the circumstances. Plaintiffs' arguments demonstrate that they misunderstand the standards governing recusal, misread the evidence, and misconstrue the Government's totality-of-the-circumstances arguments.

Plaintiffs support their argument that Judge Martínez-Olguín's former employment at CLS is insufficient to require recusal by citing to two cases: a decision discussing recusal where the judge previously worked for the United States, and a decision applying an outdated recusal standard. *See* ECF No. 66 at 15 (citing *United States v. Champlin*, 388 F. Supp. 2d 1177, 1183–84 (D. Haw. 2005) and

*Laird v. Tatum*, 409 U.S. 824 (1972)). Both cases are inapposite. *Champlin* involved a judge who was previously an Assistant U.S. Attorney at the Department of Justice. 388 F. Supp. 2d at 1179. But being formerly employed by the United States Department of Justice—an agency with thousands of attorneys nationwide who represent the Government in a variety of matters ranging from postal-carrier accidents to criminal prosecutions—differs from being employed at a local advocacy organization with fewer than 20 attorneys and advocates in one discrete geographic area. *See* "About," Community Legal Services in East Palo Alto, https://clsepa.org/about/ (showing 11 attorneys on staff and three discrete areas of legal representation). Indeed, *Champlin* noted that the recusal standards that apply to former government attorneys differ from those that apply in the private sector and declined to conflate the two.

> Instead, defendants argue that this court's impartiality might reasonably be questioned 'because the court served as a supervisory AUSA during the time when their prosecutions were being initiated.' But this is the very limitation addressed specifically in § 455(b)(3) and cases interpreting that section. The result sought by defendants would, in effect, broaden the scope of §§ 455(a) and (b) to provide for imputed disqualification of judges ***based on prior government service, a rule applied to judges previously in private practice. Such imputed disqualification does not apply in the context of government employment.***

*Champlin*, 388 F. Supp. 2d at 1183 (emphasis added); *see also id.* at 1180 (distinguishing between attorneys who previously worked for the Government and attorneys who worked in private practice when determining whether a lawyer is subject to mandatory disqualification); *see also id.* at 1184 (discussing other cases where the judge previously worked for the federal government and recusal was not appropriate). Had the judge in *Champlin* previously worked in private practice, like Judge Martínez-Olguín, the district court's analysis would have been different. Because the Government is not moving for recusal based on Judge Martínez-Olguín's former government service, the reasoning in *Champlin* does not support Plaintiffs' arguments.

Plaintiffs' reliance on *Laird* likewise falls flat because the standard for recusal that Justice Rehnquist was considering is no longer in effect. Before 1974, 28 U.S.C. § 455 only mandated recusal where the judge "has a substantial interest, has been of counsel, is or has been a material witness, or is so related to or connected with any party or his attorney as to render it improper, in his opinion, for him to sit on the trial, appeal, or other proceeding therein." H.R. Rep. 93-1453, H.R. Rep. No. 1453, 93rd Cong., 2nd Sess. 1974, 1974 WL 11635. Thus, rather than employing a reasonable-person standard to

determine whether a judge's impartiality is in doubt, the previous statute analyzed by Justice Rehnquist employed a subjective standard based on the judge's "opinion." *Id.* (noting that subsection (a) of the amended version of § 455 "sets up an objective standard, rather than the subjective standard set forth in the existing statute through use of the phrase 'in his opinion.'"). The amendments, however, "broaden[ed]" the grounds for recusal from actual bias to an appearance of bias. *Id.* Even Justice Rehnquist noted that the 1974 amendments to Section 455 had expanded the recusal standard and removed the "duty to sit." *Liljeberg v. Health Services Acquisition Corporation*, 486 U.S. 847, 870–73 (1988) (Rehnquist, J. dissenting). Because *Laird* did not employ a reasonable-observer standard, but instead a subjective, actual-bias standard, that case's reasoning does not apply to the Government's appearance-of-bias argument here.

Next, Plaintiffs attempt to minimize Judge Martínez-Olguín's appearance of impropriety by labeling the news article from *The Washington Free Beacon*, which questioned the Court's impartiality given her employment at CLS, as "biased" without providing any support for their characterization. ECF No. 66 at 16. Plaintiffs instead cite various other news articles that say nothing about Judge Martínez-Olguín's impartiality. *Id.* Not one of these news articles acknowledges that Judge Martínez-Olguín previously worked as a supervisory attorney at Plaintiff CLS until 2018.

**B. Plaintiffs apply the wrong standard for recusal under § 455(a) in arguing that Judge Martínez-Olguín's relationship with Plaintiffs' attorneys and comments about President Trump's immigration policies are insufficient to merit recusal.**

In defending Judge Martínez-Olguín's prior collegial relationship with two of Plaintiffs' counsel, Plaintiffs conflate the different standards for recusal under § 455. Rather than applying an objective standard to determine whether the judge's impartiality would be reasonably questioned under § 455(a), Plaintiffs appear to argue that Defendants must meet the actual-bias standard in § 455(b).

> No objective risk of bias exists unless the judge 'previously served as a lawyer in the matter or where a partner or associate [at the judge's former firm] during any prior period of practice served as a lawyer on the matter during the judge's association with him or her. . . . [T]he recusal requirement is triggered only if the judge's former firm represented a party to this litigation in the same or a related matter during the time the judge was associated with it.'

ECF No. 66 at 17. Plaintiffs quote § 455(b)(2). This is plainly wrong. Defendants do not argue that Judge Martinez-Olguin's association with Ms. Tumlin or Ms. Sung mandates recusal under § 455(b).

Instead, Defendants argue that the Judge's recent relationship as co-counsel and as a colleague of these attorneys adds to the appearance of bias and therefore requires recusal under the § 455(a) *totality- of-the-circumstance* approach. *See United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008) (explaining that, under § 455(a), the court must ask "whether a reasonable person with knowledge of *all the facts* would conclude that the judge's impartiality might reasonably be questioned.").

Plaintiffs further argue that "[t]he mere fact of a prior professional relationship . . . does not disqualify a judge from presiding over a case." ECF No. 66 at 17. But it appears that Ms. Tumlin and Judge Martínez Olguín have more than just a "mere" professional relationship. In fact, attorney Ms. Tumlin (who argued Plaintiffs' TRO motion hours before the Court granted it) and Judge Martínez-Olguín are friends. When Judge Martínez-Olguín was confirmed, Ms. Tumlin posted on social media, "I am so looking forward to calling my brilliant friend and law school classmate the Honorable Judge Araceli Martínez Olguín."




*See* Karen Tumlin, X, https://x.com/KarenTumlin/status/1630934702449147904. That longstanding friendship only further calls into question Judge Martínez-Olguín's ability to be impartial here. *See* Chuck Ross, 'Brilliant Friend': Federal Judge Already Facing Recusal Request in Immigration Lawsuit Has Strong Ties to Lawyer Involved in the Case, The Washington Free Beacon (Apr. 15, 2025) https://freebeacon.com/courts/brilliant-friend-federal-judge-already-facing-recusal-request-in-immigration-lawsuit-has-strong-ties-to-lawyer-involved-in-the-case/. And, unlike the relationship between former co-counsel, friendship *by itself* may be sufficient to create an appearance of bias and

require recusal. *See*, *e.g.*, *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1286 (9th Cir. 1992) (original district judge recused himself due to friendship with one of the plaintiff's directors). Plaintiffs' attempt to downplay Judge Martínez-Olguín's relationship with Ms. Tumlin has instead heightened the appearance of impropriety here.

Plaintiffs also overlook the totality-of-circumstances standard that applies when determining whether a judge's impartiality may be reasonably questioned under § 455(a). ECF No. 66 at 16–20. Even assuming *arguendo* that Judge Martínez-Olguín's association with Karen Tumlin and Esther Sung or prior inflammatory comments about President Trump's immigration policies are insufficient to warrant recusal under § 455(a) by themselves,[2] they easily tip the scale in favor of recusal considering "all the facts." *Holland*, 519 F.3d at 913. A reasonable person knowing all the facts—that Judge Martínez-Olguín previously worked as a managing attorney for the lead Plaintiff, that her former colleagues and friend represent the Plaintiffs, and that Judge Martínez-Olguín sharply criticized President Trump's policies regarding child migrants[3]—would question Judge Martínez-Olguín's ability to remain unbiased here.

Plaintiffs then cite to *Perkins Coie*, which held that a judge's unfavorable rulings and comments about cases she worked on were insufficient to create an appearance of bias requiring recusal. Again, that case is inapposite. Generally, for prejudice or bias to disqualify a judge, the basis for bias must be "extrajudicial"; it must be "something other than rulings, opinions formed or statements made by the judge during the course of a [case]." *Holland*, 519 F.3d at 913–14 (addressing § 455(a)). Unlike the

---

[2] At least one court has recused itself due to an appearance of impropriety solely because the judge's former colleagues in private practice were the attorneys representing one of the parties. *See, e.g.*, *Dixie Carriers, Inc. v. Channel Fueling Serv., Inc.*, 669 F. Supp. 150, 152 (E.D. Tex. 1987) (deciding to recuse due to an "appearance of impropriety" where the judge was formerly a partner of the same firm as one of the attorneys for the defendants, even though the judge "had no knowledge whatever of the existence of the suit, much less the background thereof.").

[3] Plaintiffs' counsel attempt to analogize the current circumstances to those of a law student who advocates for a change in law but later, as a licensed attorney, represents a client that has a different view. ECF No. 66 at 18. This is a distraction from the actual issues before the Court. Of course, the analogy is false, as the law student (and later attorney) is not presiding over a case and is thus under no heightened obligation to appear nonpartisan. The analogy further falls apart given that the law-review article cited by Plaintiffs does not address any particular administration's policy, much less a policy related to the issues in *this case*, whereas Judge Martínez-Olguin made comments specifically criticizing the Trump Administration's policies related to child migrants.

statements indicating bias in *Perkins Coie*, the statements here are extrajudicial—they were made before Judge Martínez-Olguín was confirmed as a judge, and they specifically criticize the Trump Administration's immigration policies. Additionally, as explained *supra*, even if Judge Martinez-Olguin's comments were insufficient to create an appearance of bias by themselves, the Court must consider them as part of the totality of the circumstances weighing in favor of recusal. While *Perkins Coie* only discussed the judge's previous comments and rulings, here the Judge's comments are but one factor of many that Defendants have identified that taken together surely cause a reasonable person to conclude that the Judge's impartiality may be reasonably questioned.

To be clear, contrary to Plaintiffs' assertion that Judge Martínez-Olguín would be "unable" to preside over "immigration matters" under Defendants' argument because she previously criticized President Trump's immigration policies (ECF No. 66 at 18–19), Defendants do not make such sweeping assertions. Rather, disqualification under § 455(a) is "necessarily fact-driven and may turn on subtleties in the particular case." *Holland*, 519 F.3d at 913. Accordingly, analyzing a claim for recusal under § 455(a) "must be guided, not by comparison to similar situations addressed by prior jurisprudence, but rather by an independent examination of the unique facts and circumstances of the particular claim at issue." *Id.* (citation omitted).

A reasonable person might not question Judge Martinez-Olguin's impartiality in every immigration case. Instead, the facts present in this case demonstrate that the Judge's extrajudicial statements *have a clear nexus to the issues in this case*, and thus creates the appearance of impropriety. That Judge Martínez-Olguín is also a former colleague of two attorneys for Plaintiffs and has publicly criticized President Trump's immigration policies only push the scale further in favor of recusal when weighing "all the facts.".

**C. Defendants' Motion is timely considering the pace of litigation.**

Plaintiffs further attack Defendants' recusal motion because they filed the motion two weeks after Plaintiffs filed their complaint. ECF No. 66 at 20. Plaintiffs' arguments fail to acknowledge the pace of litigation in this case or the fact that the Judge failed the matter *sua sponte* despite the clear appearance of a conflict.

Plaintiffs' reliance on *E & J. Gallo Winery* to argue that the government's motion was untimely is misplaced. *See* Pls.' Opp'n at 16. In *E. & J. Gallo Winery*, the original trial judge recused himself because of his friendship with one of the winery's directors. 967 F.2d at 1286. The replacement judge, Judge Coyle, presided over a seventeen-day bench trial in November 1988 and ultimately found in favor of the winery seven months later in June 1989. *Id.* After the decision, the defendant moved for a new trial, arguing that Judge Coyle should have recused himself because he was formerly a partner in the law firm that represented the winery in a separate suit. *Id.*

Unlike the defendant in *E & J Gallo* who tried to strategically recuse the judge, Defendants have acted swiftly in bringing the apparent conflicts to the Court's attention. The litigation timeline demonstrates the promptness of Defendants' recusal motion:

- **Wednesday, March 26, 2025**: Plaintiffs file their complaint, ECF No. 1.
- **Thursday, March 27, 2025**: Plaintiffs file a Motion for a TRO, which is over 200 pages in length including exhibits. ECF No. 7. Plaintiffs also serve a copy of the TRO Motion on the U.S. Attorney's Office for the Northern District of California, as no attorney for the United States had yet entered an appearance—nor had the United States been served.
- **Monday, March 31, 2025**: Counsel for Defendants respond to Plaintiffs' Motion for a TRO. ECF No. 24.
- **Tuesday, April 1, 2025**: Defendants' counsel appear at the TRO hearing (after traveling from Washington, D.C.). ECF No. 30. Seven hours later, the Court grants Plaintiffs' TRO Motion. ECF No. 33.
- **Friday, April 4, 2025**: Plaintiffs file a Motion for Preliminary Injunction. ECF No. 37. The Supreme Court also issues a decision in *California v. Dep't of Education*, No. 24A910, 2025 WL 1008354 (U.S. Apr. 4, 2025). In light of the Supreme Court's decision, Defendants draft and file a motion to dissolve the TRO. ECF No. 38.
- **Monday, April 7, 2025**: Plaintiffs file a Motion to Enforce the TRO. ECF No. 40. The Court orders Defendants to file a status report with agency declarations. ECF No. 42.
- **Tuesday, April 8, 2025**: Defendants file the status report. ECF No. 45. At 12:03am on April 9, 2025, Defendants file Motion for Recusal. ECF No. 47.

Considering that Defendants filed their Motion for Recusal within two weeks of Plaintiffs filing their complaint, in the midst of responding to multiple motions and orders, Defendants unquestionably acted in a timely manner.

**D. Plaintiffs misrepresent Defendants' corrected motion and overstate Defendants' factual error.**

Throughout their brief, Plaintiffs misrepresent the contents of the Government's corrected motion, ECF No. 59. Plaintiffs state that the Government has "taken no action to correct their assertion that the matter is being litigated before Judge Martínez-Olguín by lawyers from [NILC.]" ECF No. 66 at 13. Not true. The corrected motion does not contain this language, nor does it contain any allegation that Ms. Sung is presently employed by NILC. *See generally* ECF No. 59. Consistent with the Government's Notice of Errata, ECF No. 59 at 2, the Government removed all allegations stating that Ms. Sung works at NILC; accordingly, the Government also removed all allegations and arguments that Plaintiffs are represented by NILC. *Id.*

Plaintiffs also ignore the reason the Government was previously under the impression that Ms. Sung was still employed at NILC: Ms. Sung's information in PACER was outdated. Even in the transcript of proceedings for the TRO hearing, Ms. Sung is listed as an attorney for the "National Immigrant Law Center," with her address listed as "3450 Wilshire Boulevard - 108-62 Los Angeles, California 90010"—the address for the NILC. *See* TRO Hearing (Apr. 1, 2025) Tr. at 2. Much like Plaintiffs' failure to disclose that Judge Martínez Olguín previously worked for the lead Plaintiff in this case, Plaintiffs never notified the Government that Ms. Sung no longer works at NILC. Instead, at some point after the Government filed its Motion for Recusal, someone apparently updated Ms. Sung's PACER information to list Justice Action Center as her employer, as the docket no longer lists her as being employed at NILC. Thus, the Government's error obviously was inadvertent and, indeed, may have been the result of a possible failure by one of Plaintiffs' counsel to update contact information with the Court.

**E. The Government has presented undisputed evidence that Judge Martínez-Olguín has personal knowledge of a disputed fact in this case.**

In response to Defendants' argument that recusal is required under § 455(b)(1) because Judge Martínez-Olguín has personal knowledge about a disputed fact in this case, Plaintiffs argue that "Defendants provide no concrete evidence" demonstrating that she has knowledge about CLS's operations and budget. ECF No. 66 at 14. But Plaintiffs do not dispute that Judge Martínez-Olguín was a "managing attorney" at CLS, where she "established" the organization's Immigrant Rights Project. They

also do not contest that, while at CLS, she was "part of the management team[]" and helped "set and implement policies and practices within . . . [CLS's] Immigration Program." Questionnaire for Judicial Nominees, at 48, https://www.judiciary.senate.gov/imo/media/doc/Martínez-Olguín%20SJQ%20Public%20Final.pdf. Further, although she did not log enough hours to be considered a "lobbyist," while she was employed by CLS, she "spoke at the County of San Mateo's Board of Supervisors in favor of the County of San Mateo *establishing a fund to pay for immigration representation*." *Id.* at 49 (emphasis added). Defendants have provided sufficient evidence indicating that Judge Martínez Olguín has personal knowledge about CLS's budget and operations to support its mission, given her previous lobbying for local-government funding of immigration representation, her role on CLS's management team, and her experience setting policies for the organization.

On the other hand, Plaintiff CLS—which almost certainly possesses additional information about what Judge Martínez-Olguín knew when she was employed at CLS—does not refute the statements in Judge Martínez-Olguín's Judicial Nomination Questionnaire. Without discovery, it is impossible for Defendants to ascertain the exact extent of Judge Martínez-Olguín's knowledge about CLS's operations and budget. But rather than seeking discovery on this issue, which would take substantial time and delay recusal proceedings, Defendants timely moved for recusal less than two weeks after they learned of Judge Martínez-Olguín's apparent conflict. The undisputed evidence from public documents is sufficient given the early stage of proceedings and Defendants' lack of access to information about the scope of her knowledge absent discovery. *See Edgar v. K.L.*, 93 F.3d 256, 258 (7th Cir. 1996) (requiring recusal based on "personal knowledge" of a disputed fact, even though the defendant only presented "possibilities" about what the judge knew rather than evidence).

## **CONCLUSION**

A reasonable person considering the totality of the circumstances would question Judge Martínez-Olguín's impartiality here, and none of Plaintiffs' arguments undermine that reality. In addition, the uncontroverted evidence shows that Judge Martínez-Olguín has personal knowledge about a disputed fact in this case, which Plaintiffs have failed to refute with any evidence indicating otherwise. Thus, recusal is required under 28 U.S.C. §§ 455(a) and (b)(1).

DATED: April 17, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

WILLIAM C. SILVIS
Assistant Director

CHRISTINA PARASCANDOLA
JONATHAN K. ROSS
MICHAEL A. CELONE
Senior Litigation Counsel

ZACHARY A. CARDIN
Trial Attorney

/s/ Katelyn Masetta-Alvarez
KATELYN MASETTA-ALVAREZ
Senior Litigation Counsel
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 514-0120
Katelyn.Masetta.Alvarez@usdoj.gov

Attorneys for Defendants

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Defendants certifies that this brief contains 11 pages, which complies with Local Rule 7-3(c).

Respectfully submitted,

*/s/ Katelyn Masetta-Alvarez*
Katelyn Masetta-Alvarez
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division

**CERTIFICATE OF SERVICE**

I hereby certify that on April 17, 2025, I served the foregoing pleading on all counsel of record by means of the District Clerk's CM/ECF electronic filing system.

*/s/ Katelyn Masetta-Alvarez*
Katelyn Masetta-Alvarez
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division