UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., <br><br> Defendants. | Case No. 25-cv-02847-AMO <br><br> **ORDER DENYING MOTION FOR RECUSAL & REASSIGNMENT** <br><br> Re: Dkt. No. 47 |

Before the Court is a motion for recusal and reassignment brought by Defendants United States Department of Health and Human Services, Office of Refugee Resettlement, and Department of the Interior (collectively, the "Government"). The matter is fully briefed and suitable for decision without oral argument. Accordingly, the hearing set for May 15, 2025, is VACATED. *See* Civil L.R. 7-1(b), Fed. R. Civ. Pro. 78(b). Having read the papers filed by the parties and carefully considered their arguments therein, as well as the relevant legal authority, I hereby **DENY** the motion for recusal for the following reasons.

I.   **BACKGROUND**

This lawsuit seeking relief under the Administrative Procedure Act related to the Government's termination of funding allocated to legal services for unaccompanied children in immigration proceedings was filed by on March 26, 2025, by 11 non-governmental organizations. *See* Compl. (ECF 1). The Plaintiffs are Community Legal Services in East Palo Alto, Social Justice Collaborative, Amica Center for Immigrant Rights, Estrella del Paso, Florence Immigrant and Refugee Rights Project, Galveston-Houston Immigrant Representation Project, Immigrant

1  Defenders Law Center, National Immigrant Justice Center, Northwest Immigrant Rights Project,
2  Rocky Mountain Immigrant Advocacy Network, and Vermont Asylum Assistance Project
3  (collectively, "Plaintiffs"). They are represented by counsel from Immigrant Defenders Law
4  Center, Amica Center for Immigrant Rights, and Justice Action Center. *See id.*

5  On March 27, 2025, Plaintiffs filed a motion for temporary restraining order ("TRO") and
6  preliminary injunction (ECF 7), and the case was assigned to me (ECF 10).[1] Later that day, I
7  issued an order setting a hearing, as well as a deadline for the Government's written response to
8  Plaintiffs' TRO motion, and ordering service of the order on the Government. ECF 17. On March
9  31, 2025, in accordance with the schedule set on March 27, the Government filed its opposition to
10 Plaintiffs' motion. *See* ECF 24. On April 1, 2025, the parties appeared for a hearing on Plaintiffs'
11 motion. ECF 30. After taking the matter under submission, I issued an order granting Plaintiffs'
12 motion, issuing a TRO, and setting an expedited briefing schedule on Plaintiffs' request for a
13 preliminary injunction. ECF 33.

14 The parties have continued to litigate the case since I granted the TRO. The motions now
15 pending include Plaintiffs' motion for preliminary injunction (ECF 37), the Government's motion
16 to dissolve the TRO (ECF 38), and Plaintiffs' two motions to enforce the TRO (ECF 40, ECF 53).
17 In the midst of this briefing, the Government filed a motion for recusal of a district judge pursuant
18 to Title 28 U.S.C. § 455, the motion that is the subject of this Order. *See* ECF 47. Disinclined to
19 issue further orders in the case while my impartiality was under question, I issued an order
20 expediting briefing and extending the TRO to allow time to resolve the motion to recuse. *See* ECF
21 48.[2] The Government has since submitted an amended motion with a notice of errata. *See* ECF
22 59, Attach. A ("Mot.").

---

[1] Though it is my usual practice to issue orders in the third-person as a member of "the Court," this Order issues largely in the first-person in observance of a self-reflective and fact-driven analysis that is " 'guided, not by comparison to similar situations addressed by prior jurisprudence, but rather by an independent examination of the unique facts and circumstances of the particular claim at issue.' " *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008) (quoting *United States v. Bremers*, 195 F.3d 221, 226 (5th Cir. 1999)).

[2] The Government has since appealed the TRO and moved to stay enforcement of the TRO. *See* ECF 56, ECF 57.

## II. DISCUSSION

The Government moves for recusal pursuant to Title 28 U.S.C. § 455(a).[3] The standard for recusal under this statute requires an assessment of "[w]hether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. Hernandez*, 109 F.3d 1450, 1453 (9th Cir. 1997); *see also Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 861 (1988). The "reasonable person" is not "hypersensitive or unduly suspicious," and "is not a 'partly informed man-in-the-street[.]' " *United States v. Holland*, 519 F.3d 909, 913-14 (9th Cir. 2008); *see also Blixseth v. Yellowstone Mountain Club, LLC*, 742 F.3d 1215, 1219 (9th Cir. 2014). Rather, the reasonable person is a "well-informed, thoughtful observer[,]" and is "someone who 'understand[s] all the relevant facts' and has examined the record and the law." *Holland*, 519 F.3d at 913-14 (citation omitted). The Ninth Circuit has cautioned against construing the recusal statute "so broadly . . . that it becomes, in effect, presumptive" upon the "merest unsubstantiated suggestion of personal bias or prejudice." *Id.* at 913 (citations omitted). Indeed, while recusal may be required by the law and facts of a case, judges "must not simply recuse out of an abundance of caution when the recusal is not appropriate." *United States v. Sierra Pac. Indus.*, 759 F. Supp. 2d 1198, 1201 (E.D. Cal. 2010) (citing *Holland*, 519 F.3d at 912). Importantly, the standard for recusal is a high one – "[s]ince a federal judge is presumed to be impartial, the party seeking disqualification bears a substantial burden to show that the judge is biased." *Perry v. Schwarzenegger*, 790 F. Supp. 2d 1119, 1129 (N.D. Cal. 2011) (citation omitted).

The Government seeks recusal under two theories: (A) the appearance of bias in favor of Plaintiffs and (B) a presumption of personal knowledge regarding underlying facts. I address

---

[3] The Government states early in its motion that part of its purpose in seeking my recusal is "to halt the inappropriate infringements into President Trump's exercises of Executive Power." Mot. at 1. As Judge Beryl A. Howell opined in response to a similar excerpt in a motion seeking to recuse her, "This line, which sounds like a talking point from a member of Congress rather than a legal brief from the United States Department of Justice, has no citation to any legal authority for the simple reason that the notion expressed reflects a grave misapprehension of our constitutional order." *Perkins Coie LLP v. U.S. Dep't of Just.*, No. CV 25-716 (BAH), 2025 WL 914099, at *1 (D.D.C. Mar. 26, 2025).

3

these two theories in turn. Although the parties additionally dispute the timeliness of the recusal motion, I do not reach that argument because I deny the motion on the merits.

### A. Appearance of Bias

The Government argues that there is an appearance of bias toward Plaintiffs in this case because I previously worked as a managing attorney at Plaintiff Community Legal Services in East Palo Alto ("CLSEPA"). The Government argued in its initial motion that "there is at least an objective appearance of impartiality given that [my] most recent former employer [National Immigration Law Center ("NILC")] is representing Plaintiffs in this case." ECF 47 at 5. The Government omits this contention from the amended motion and appear to abandon it. *Cf.* Mot. (ECF 59). However, to be clear, NILC does not appear in this case, neither as counsel nor as a party. Any argument of partiality based on my former employment at NILC and its participation in this case is unfounded and does not warrant my recusal.

The Government avers that my employment history would lead a reasonable person to conclude that my impartiality might be questioned, referring to my experience as a staff attorney and managing attorney at CLSEPA. *See* Mot. at 3 (citing Araceli Martínez-Olguín, Questionnaire for Judicial Nominees, at 24, https://www.judiciary.senate.gov/imo/media/doc/Martínez-Olguín%20SJQ%20Public%20Final.pdf). Federal judges regularly deny recusal motions where the judge's prior employment had an arguable relationship to the issues presented in the case before them. *See, e.g.*, *Jackson v. Tesla, Inc.*, No. 22-CV-04380-PCP, 2025 WL 901009, at *4 (N.D. Cal. Mar. 25, 2025) (citing *In Philip Morris USA Inc. v. U.S. Food & Drug Admin.*, 156 F. Supp. 3d 36 (D.D.C. 2016)). The touchpoint for recusal in matters involving a judge's former legal employer frequently requires interrogating whether the judge was involved in the particular litigation as an advocate prior to taking the bench, not whether the judge generally worked for the legal employer or practiced in a given area of law. *See id.* Compare, for example, Section 455(b)(3)'s requirement for recusal when a judge "has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy." 28 U.S.C. § 455(b)(3).

4

A jurist's prior employment alone does not establish a circumstance in which their "impartiality might reasonably be questioned" pursuant to Section 455(a). *See United States v. Champlin*, 388 F. Supp. 2d 1177, 1183-84 (D. Haw. 2005) (finding that judge's prior employment as an Assistant U.S. Attorney did not give rise to reasonable questions regarding the court's impartiality). Moreover, it has been nearly seven years since I left CLSEPA, including over two years on the bench, a period of time that attenuates and undercuts any risk of improper influence. This period of separation undermines relying on my employment history as a basis for recusal. *Cf. United States v. Barajas-Bandt*, No. 10CR82-BTM, 2011 WL 742713, at *3 (S.D. Cal. Feb. 24, 2011) (noting that the United States Judicial Conference Advisory Committee on Codes of Conduct "recommends that judges consider a recusal period of at least two years, recognizing that there will be circumstances where a longer period may be more appropriate" in circumstances where a former law partner appears as counsel before a judge) (citing 2 Guide to Judiciary Policies and Procedures, Ch. 2 at 24-1 (Advisory Opinion No. 24)). Most importantly, the Government fails to identify any matter connected to my work at CLSEPA that would bear upon the issues presented here. I did not work as a lawyer or supervise lawyers regarding this matter; nor could I have worked on this litigation, given that the facts underlying this case only transpired in the past several weeks. *See* Compl. ¶ 11 (alleging termination and "Cancellation Order" issued March 21, 2025). Section 455(a) does not require my recusal based on my prior CLSEPA employment.

The Government also argues that my "relationship with the attorneys representing Plaintiffs in this case" requires recusal. *See* Mot. at 5. It contends that my connections two attorneys representing Plaintiffs in this matter, Karen Tumlin and Esther Sung, weigh in favor of recusal. Specifically, the Government cites two instances where I served as co-counsel with Ms. Tumlin before joining the bench, and they cite my prior employment at NILC, where Ms. Sung also once worked. *Id.* at 5-6. To be clear, Ms. Sung and I worked at NILC at different times and have no relationship. Additionally, though the Government does not raise it, I note that Alvaro Huerta, another of Plaintiffs' counsel, and I worked together at NILC from November 2018, when I started at NILC, to January 2022, when Mr. Huerta left NILC. In any case, the existence of a professional or even a personal relationship does not present grounds for recusal under Section

5

455(a). As multiple courts have recognized, "In today's legal culture friendships among judges and lawyers are common. They are more than common; they are desirable. A judge need not cut [themself] off from the rest of the legal community. . . . Many courts therefore have held that a judge need not disqualify [themself] just because a friend – even a close friend – appears as a lawyer." *Philip Morris USA Inc. v. United States Food & Drug Admin.*, 156 F. Supp. 3d 36, 53 (D.D.C. 2016) (quoting *United States v. Murphy*, 768 F.2d 1518, 1537 (7th Cir.1985)). Indeed, in *Philip Morris USA*, the district court denied recusal in a case litigated by a law firm where he had previously worked and where his wife served as a partner – two closer relational connections than the friendly co-counsel relationship at issue between me and Ms. Tumlin or of co-workers between me and Mr. Huerta. *See Philip Morris USA*, 156 F. Supp. 3d at 51-53. Accordingly, my pre-existing relationships with Ms. Tumlin and Mr. Huerta do not require my recusal.

The Government separately argues that my public comments related to some of the first Trump Administration's immigration policies "would give a reasonable person pause as to whether [I] can be impartial." Mot. at 5. However, the Government cites no authority suggesting that facts that may give a person "pause" regarding impartiality warrants recusal. To the contrary, the correct standard is whether "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Hernandez*, 109 F.3d at 1453. Nor does the Government offer any authority in support of the premise that comments made prior to a judge's appointment to the bench can support a showing of bias necessitating recusal. This is perhaps not surprising since caselaw dictates that the "reasonable person" is not "hypersensitive or unduly suspicious," and "is not a 'partly informed man-in-the-street[.]' " *Holland*, 519 F.3d at 913-14. Indeed, courts have long recognized that "[a]ll judges come to the bench with a background of experiences, associations and viewpoints. This background alone is seldom sufficient in itself to provide a reasonable basis for recusal." *Brody v. President & Fellows of Harvard Coll.*, 664 F.2d 10, 11 (1st Cir. 1981). The years-old comments excerpted by the Government fall short of leading a reasonable person to conclude that my impartiality might be questioned. Indeed, the well-informed person presented with the facts of this case would understand the distinction between, on the one hand, the zealous advocacy with which I was

1  obligated to represent my clients as an attorney (*see* ABA Model Rules of Pro. Conduct r. 1.3)
2  and, on the other hand, the faithful and impartial administration of justice I vowed to provide all
3  parties before me as a judge of the United States (*see* 28 U.S.C. § 453).
4        The Government repeatedly advances that a totality of circumstances review of the
5  purported bases for my recusal would lead a reasonable person to conclude that my impartiality
6  could be reasonably questioned. *See, e.g.*, Reply (ECF 68) at 5-6 (citing *Holland*, 519 F.3d at
7  913). However, the Government's reasoning ignores the full record in favor of a selective review
8  of the relevant facts. A "reasonable person with knowledge of all the facts" – my several-year
9  separation from CLSEPA, my former relationships with Ms. Tumlin and Mr. Huerta, my duty as
10 an advocate to zealously represent my clients, the statements I made as an advocate unrelated to
11 the facts and law of this case, the oath I swore to impartially administer justice as a judge – would
12 not conclude that my impartiality might reasonably be questioned. *See Hernandez*, 109 F.3d at
13 1453. As the Government acknowledges, the assessment for disqualification under Section 455(a)
14 is "necessarily fact-driven and may turn on subtleties in the particular case." Reply at 7 (quoting
15 *Holland*, 519 F.3d at 913). The relevant subtleties here require distinguishing between my prior
16 work and the comments I made as an advocate regarding the first Trump Administration's policies
17 toward holders of Deferred Action for Childhood Arrival ("DACA") versus the issues presented
18 here, an Administrative Procedure Act challenge to termination of funding for counsel
19 representing unaccompanied children in immigration court.
20       Ultimately, the Government's "fanciful theory of bias cannot 'overcome [the] presumption
21 of honesty and integrity in those serving as adjudicators.' " *Martinez v. Ryan*, 926 F.3d 1215,
22 1227 (9th Cir. 2019) (alteration in original, citation omitted). Nothing in my prior experiences as
23 an attorney would cause a reasonable, well-informed observer to doubt my ability to adjudicate the
24 case before me fairly and impartially. *See Coalition for Econ. Equity v. Wilson*, Case No. 96-cv-
25 4024-TEH, ECF 200, at 4-5 (N.D. Cal. Dec. 20, 1996) (noting that a judge's prior experience
26 litigating civil rights cases does not require their recusal from civil rights cases that may later
27 come before that jurist) (citing *Brody*, 664 F.2d at 11).
28       For all of these reasons, I deny the motion for recusal under Section 455(a).

7

### B. Personal Knowledge of Underlying Facts

The Government additionally argues for recusal based on my employment history as a former managing attorney at CLSEPA under an alternate theory – that such experience necessarily gives rise to personal knowledge of the organization's budget and operations. *See* Mot. at 6 (citing 28 U.S.C. § 455(b)(1)). Under Title 28 U.S.C. § 455(b)(1), a judge shall recuse where they have "personal knowledge of disputed evidentiary facts concerning the proceeding." This subjective and "highly personal" test requires the judge "to set aside emotion and thoughtfully examine [their] ability to impartially 'administer justice without respect to persons.' " *Holland*, 519 F.3d at 915 (citing 28 U.S.C. § 453). While Section 455(a) addresses the "appearance" of a conflict of interest, whether or not such a conflict actually exists, Section 455(b) "is a per se rule and covers acts that actually create a conflict even if there is no appearance of one." *Davis v. Xerox*, 811 F.2d 1293, 1295 (9th Cir. 1987).

The Government avers that I have personal knowledge of CLSEPA's budget and operations, which gives me personal knowledge about CLSEPA's allegations regarding irreparable harm. The Government concedes that this assertion is based on a presumption of personal knowledge flowing from my tenure in middle management at the organization, and they fail to identify any facts establishing that I have personal knowledge of disputed evidentiary facts. Mot. at 6. As the Government acknowledges, I served as a Managing Attorney for CLSEPA nearly seven years ago and focused on "local or state policy advocacy and impact litigation, . . . community education, and . . . advice and counsel to community groups." Mot. at 3. I do not have personal knowledge of CLSEPA's current financial or budget position, much less do I have personal knowledge related to the merits of this case, including how the Government's termination of funding for direct legal representation "potentially violates Congress's express directive in the TVRPA and ORR's own commitments in the Foundational Rule." *See* Order Granting TRO at 5. In the absence of such personal knowledge, recusal under Section 455(b) would be inappropriate.

//

//

//

## III. CONCLUSION

Federal judges share an obligation to "participate in [all] cases assigned," which "is derived from the 'judicial Power' with which we are vested" and "reflected in our oath, by which we have obligated ourselves to 'faithfully and impartially discharge and perform [our] duties' and to 'administer justice without respect to persons . . . [.]' " *Holland*, 519 F.3d at 912 (citing U.S. Const. art. III, § 1; 28 U.S.C. § 453). I am obligated to participate in this case given the absence of partiality. Recusal is not appropriate here under either the general provisions of Section 455(a) or the specific provisions of Section 455(b). Therefore, I **DENY** the motion to recuse.

**IT IS SO ORDERED.**

Dated: April 17, 2025

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**