YAAKOV M. ROTH
Acting Assistant Attorney General
WILLIAM C. SILVIS (DCBN 485572)
Assistant Director
MICHAEL A. CELONE (MDBN 1312170145)
CHRISTINA PARASCANDOLA (DCBN 468479)
KATELYN MASETTA ALVAREZ (OHBN 97857)
JONATHAN K. ROSS (NCBN 50203)
Senior Litigation Counsel
ZACHARY A. CARDIN (MDBN 1812110052)
Trial Attorney

    U.S. Department of Justice, Civil Division
    Office of Immigration Litigation
    General Litigation and Appeals Section
    P.O. Box 878, Ben Franklin Station
    Washington, DC 20044
    (202) 305-7662
    Jonathan.K.Ross@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, *ET AL.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *ET AL.*,<br><br>    Defendants. | Case No. 3:25-cv-02847-AMO<br><br>**DEFENDANTS' CONSOLIDATED OPPOSITION TO PLAINTIFFS' MOTIONS TO ENFORCE TEMPORARY RESTRAINING ORDER**<br><br>Date: May 22, 2025<br>Time: 2:00 p.m.<br>Location: Courtroom 10<br>Date action filed: March 26, 2025<br><br>Hon. Araceli Martínez-Olguín<br>United States District Judge |

## I. INTRODUCTION

Pursuant to Local Rule 7-3(a), Defendants submit this consolidated opposition to Plaintiffs' motions to enforce the temporary restraining order ("TRO"). *See* ECF Nos. 40, 53. Defendants are working diligently to comply with the TRO by reinstating the terminated contract line items. The reinstatement must be accomplished by entering into a bilateral contract modification with the contractor, Acacia Center for Justice ("Acacia"). As of the time of this filing, the U.S. Department of the Interior ("DOI"), which serves as the contracting agent in this matter for the U.S. Department of Health and Human Services ("HHS") Office of Refugee Resettlement ("ORR"), awaits a response from Acacia. Plaintiffs' motions to enforce are based on a misapprehension—or, at best, on outdated or incomplete information that was mistakenly presented as an update. That information appears to have been relayed to Plaintiffs by Acacia and concerns the status of the contract reinstatement process. Defendants provide below and in the attached declaration a detailed progress report confirming that they have taken all reasonable and actionable steps within their control to comply with the TRO. What remains is a standard, multi-step contracting process that depends on a cooperative response from the contractor.

## II. BACKGROUND

On April 1, 2025, the Court granted Plaintiffs' motion for a temporary restraining order. ECF No. 33. In its order, the Court ordered that, effective April 2, 2025, at 8:00 a.m., *id.* at 1:

> Defendants are ENJOINED from withdrawing the services or funds provided by [ORR] as of March 20, 2025, under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 8 U.S.C. § 1232(c)(5), and ORR's Foundational Rule, 45 C.F.R. § 410.1309(a)(4), particularly ORR's provision of funds for direct legal representation services to unaccompanied children. This injunction precludes cutting off access to congressionally appropriated funding for its duration.

*Id.* at 7. The Court ordered that the injunction shall remain in effect until April 16, 2025, at 7:59 a.m. PST. *Id.*

On April 2, 2025, ORR took immediate steps to develop a compliance plan. *Id.*; Declaration of Toby Biswas (Apr. 8, 2025), ECF No. 45-1 ¶ 4; Declaration of Sharon Roberts (Apr. 8, 2025), ECF No. 45-2 ¶¶ 5–6. Defendants' plan includes restoring the terminated contract line items ("CLINs") for direct legal representation (CLIN 2), recruitment of pro bono attorneys (CLIN 3), and expansion of direct

representation (CLIN 4) that had been eliminated on March 21, 2025. ECF No. 45-1 ¶¶ 6–7; ECF No. 45-2 ¶¶ 7–8.

On April 3, 2025, ORR took steps to rescind the partial termination of the Acacia contract and restore CLINs 2 through 4, ECF No. 45-1 ¶ 8; ECF No. 45-2 ¶ 7, and determined that additional funds would be necessary to cover the reinstated services for the entire duration of a six-month contract extension, ECF No. 45-1 ¶ 8; ECF No. 45-2 ¶¶ 6–7. On April 3, 2025, ORR transferred funds to the DOI, which serves as the contracting agent through its Interior Business Center, via the G-Invoicing system to fund the restored CLINs (ECF No. 45-1 ¶ 8; ECF No. 45-2 ¶¶ 2, 7, 8) requesting that DOI, as the contracting agency, complete the modification of the Acacia contract (ECF No. 45-1 ¶¶ 9–10; ECF No. 45-2 ¶¶ 9–10). This was because the Acacia contract is between DOI and Acacia, and ORR is not a party to the contract, but rather a "client" pursuant to an interagency agreement. *See* ECF No. 45-2 ¶ 2. Only DOI, as the awarding agency, can execute major actions like terminations and modifications, even though ORR retains substantive authority over programmatic decisions. *Id*.

On April 4, Defendants moved to dissolve the TRO, citing a significant change in law that undercut the Court's findings that Plaintiffs raised serious questions going to the merits and that Defendants would not suffer harm. *See* ECF No. 38 (citing *Dep't of Educ. v. California*, 604 U.S. ----, 145 S. Ct. 966, 968 (2025) (staying district court TRO in another case enjoining the federal government from terminating certain education-related grants)). The Supreme Court observed, in its stay of the TRO, that the Administrative Procedure Act's ("APA's") limited waiver of sovereign immunity, in 5 U.S.C. § 702, does not extend to orders to enforce a contractual obligation to pay money, and that, instead, the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on any express or implied contract with the United States. *Id*. (citing 28 U.S.C. § 1491(a)(1)). Defendants, likewise, argued that the Court lacked jurisdiction because the APA's limited waiver of sovereign immunity does not apply here. ECF No. 38 at 6, 8. As to irreparable harm, the Supreme Court considered that the movant in *Dep't of Educ.* had not refuted the government's representation that the government is unlikely to recover grant funds once disbursed, while the party that moved for a TRO could wrongfully recover any wrongfully-withheld funds though a suit in the appropriate forum. 145 S. Ct. at 969. Defendants noted that the same holds true here. *See* ECF No. 38 at 8-9.

On April 7, 2025, Plaintiffs first moved to enforce the TRO. ECF No. 40. Plaintiffs did not allege any facts relevant to compliance (or noncompliance) with the TRO. *Id*. Later that day, the Court ordered Defendants to submit a status report recounting specific steps they took to comply with the TRO. ECF No. 42.

On April 8, 2025, Defendants filed their status report and notice of compliance. ECF No. 45. Defendants reported that: as of April 7, 2025, ORR had completed all internal steps necessary for compliance, including approval of the decision memo and funding transfer, ECF No. 45-1 ¶¶ 8–10; ECF No. 45-2 ¶¶ 6–9; DOI was finalizing the contract modification to restore the terminated CLINs, ECF No. 45-2 ¶ 10; and Defendants awaited DOI's final approval and execution of the contract changes, *id.*

During the period April 8-10, 2025, DOI determined that reinstatement of the terminated contract line items would require a bilateral modification and that such a modification would require a reinstatement proposal from Acacia. *See* Supplemental Declaration of Sharon Roberts (Apr. 21, 2025), attached as Ex. A ¶ 6. DOI's Contract Officer ("CO") drafted a request for reinstatement proposal, and the CO sent Acacia the request for a reinstatement. *Id.*

On April 9, 2025, Defendants moved for recusal and reassignment of this case. ECF No. 47.

On April 10, 2025, the Court issued an order extending the duration of the TRO until April 30, 2025, at 7:59 a.m. PST. ECF No. 48. The Court articulated, as the sole basis for good cause for the extension, under Fed. R. Civ. P. 65(b)(2), the pendency of Defendants' motion for recusal and reassignment. *Id.* (citing ECF No. 33).

On April 11, Plaintiffs filed a second motion to enforce the TRO. ECF No. 53. Plaintiffs allege that Defendants directed Acacia to start closing out its contract with ORR. *Id.* at 3. Plaintiffs rely exclusively upon email messages that Acacia sent to one of the Plaintiffs. *Id*. (citing Declaration of Marian Donovan-Kaloust (Apr. 11, 2024), ECF No. 53-5 ¶ 5; Emails, ECF No. 53-5 at 7, 12. In an email on April 10, 2025, Acacia states that "[t]he government has also instructed [Acacia] to continue with standard records return procedures under a contract closeout, related to the termination of CLINs 2 through 4." ECF No. 53-5 at 12. This instruction appears to restate language from DOI's March 21 partial termination notice, issued before the TRO. *See* ECF No. 24-3. DOI has since clarified that while those records return procedures were initially directed, concurrent efforts to complete the reinstatement modification are

1 progressing and records return procedures will cease once the modification is executed. Ex. A ¶¶ 7, 20. Plaintiffs argue that this instruction "clearly contradicts" Defendants' representations that they are taking the necessary contracting steps, including rescission of the March 21, 2025 partial termination and that additional funding for CLINs 2 through 4, previously authorized by ORR, will become available to Acacia once the modification is executed. ECF No. 53 at 3 (citing ECF No. 45-1 ¶ 10; ECF No. 45-2 ¶ 10). Plaintiffs are mistaken. Defendants' actions have been consistent with their representations throughout, and DOI has already clarified that the contract closeout language cited by Plaintiffs does not reflect the current status of reinstatement efforts. And notably, Plaintiffs cite no direct communication from any Defendant contradicting Defendants' sworn declarations. Their motion rests entirely on secondhand accounts from a private contractor, which DOI has already addressed and clarified.

On April 11, at 2:18 p.m. EDT, the CO sent Acacia the request for a reinstatement proposal and requested a response by no later than 1:00 p.m. EDT on April 16, 2025. Ex. A ¶ 6. On the same day, at 2:36 p.m. EDT, Acacia asked DOI for clarification on the mechanism the government intended to use for a potential modification and the intended performance period. *Id*. ¶ 7. At 7:26 p.m. EDT, Acacia sent DOI a reinstatement proposal. *Id*. ¶ 8.

On April 14, 2025 (a Monday), at 7:50 a.m. EDT, DOI informed Acacia that the extension period would be the same as the period for the remaining unterminated contract line item. *Id*. ¶ 9. At 8:00 a.m. EDT, Acacia withdrew the reinstatement proposal it submitted on April 11. *Id*. ¶ 10.

As of April 14, 2025, Defendants' motion to dissolve the TRO was fully briefed. *See* ECF Nos. 38, 54, 64.

On April 16, 2025, at 12:51 p.m. EDT, Acacia provided DOI a new reinstatement proposal. Ex. A ¶ 11. On the same day, DOI sent the proposal to HHS so that it could review Acacia's proposed changes to the contract performance work statement for acceptability. *Id*. ¶ 8.

On April 18, 2025, at 1:25 p.m. EDT, DOI asked Acacia to make minor revisions to the reinstatement proposal and clarified the method by which DOI intended to handle payment for services occurring between the contract termination date and the contract modification to reinstate services. *Id*. ¶ 13. DOI also asked Acacia to submit a final reinstatement proposal by 11:00 a.m. EDT on April 22, 2025. *Id*.

On April 18, 2025, at 3:34 p.m. EDT, Acacia asked for clarification on the anticipated effective date and period of performance of the modification. *Id.* ¶ 14.

On April 18, 2025, the Court denied Defendants' motion for recusal and reassignment. ECF No. 69.

On April 21, 2025, at 8:55 a.m. EDT, DOI responded to Acacia's request for clarification. *Id.* ¶ 15. At 9:40 a.m. EDT, Acacia asked DOI to identify any funding limitation and the anticipated start date so that it could price the firm-fixed-price line items. *Id.* ¶ 16. At 10:38 a.m. EDT, DOI provided an estimated funding limitation and identified the state date as "ASAP". *Id.* ¶ 17. DOI also stated that while the final action would require clearance and approval by DOI's legal and management departments, DOI was working expeditiously and that if Acacia's start date needed to be adjusted, DOI would prorate the price and confirm acceptability with Acacia. *Id.* At 2:48 p.m. EDT, DOI notified Acacia that HHS accepted its proposed changes to the performance work statement. *Id.* ¶ 18.

Even though the Court has disposed of Defendants' motion for recusal and reassignment, and the pendency of that motion was the sole basis for the Court to extend the duration of the TRO for 14 days, from an end time of April 16, 2025, at 7:59 a.m., to an end time of April 30, 2025, at 7:59 a.m., *see* ECF Nos. 33, 48, the Court has not dissolved the TRO.

As of the execution of the attached declaration, DOI is waiting for a response from Acacia identifying its final price for the proposed modification. Ex. A ¶ 19. DOI must receive Acacia's response so that it may continue processing the modification to reinstate services. *Id.* DOI classifies the bilateral modification to reinstate the terminated CLINs in the Acacia contract as a complex action, which can carry a lead time of up to 120 days. *See* Ex. A ¶ 20; *see also* Procurement Action Lead Time Categories & Goals, https://ibc.doi.gov/acquisition/partner-with-us/acquisition-dates-timelines/palt (updated Aug. 21, 2024) (viewed Apr. 21, 2025). This classification reflects the scope of the reinstatement, its funding implications, and the need for coordination across agencies. *See* Ex. A ¶ 20. Since DOI learned of the TRO on April 2, it has undertaken an extraordinary volume of work to implement compliance measures, and thereby is on track to accomplish nearly 120 days' worth of work in approximately 20 days. *Id.*; ECF No. 45-2 ¶ 5. In short, DOI has compressed what is typically a four-month contracting timeline into just under three weeks—a clear demonstration of its commitment to full and prompt compliance.

### III. ARGUMENT

Defendants continue to make progress to reinstate the Acacia contract. As noted, DOI began work on reinstatement immediately after the Court entered the TRO and since then has been in regular communication with Acacia, the contractor that subcontracts with Plaintiffs. On April 11, after determining that a bilateral modification was necessary, DOI asked Acacia to set forth its plan to reinstate services, propose necessary changes to the contract statement of work, and provide updated pricing. The record reflects that DOI responded promptly to Acacia's inquiries. On April 16, 2025, Acacia provided DOI with a new reinstatement proposal, and DOI promptly sent Acacia's reinstatement proposal to HHS, which implements the TVPRA requirements as to unaccompanied children and the Foundational Rule. On April 18, 2025, DOI responded to Acacia requesting some minor revisions to the reinstatement proposal and clarifying the method by which DOI intends to handle payment for services occurring between contract termination and the contract modification to reinstate services. Today, April 21, DOI responded to Acacia's additional questions. In sum, DOI cannot proceed further until Acacia responds. Nothing in the TRO or in contracting law requires the government to bypass established protocols or hastily push through a bilateral modification at the expense of process integrity.

More important, the Court should dissolve the TRO. The TRO was initially set to expire on April 16, 2025, at 7:59 a.m. PST. ECF No. 33. The Court extended the TRO finding that "consideration of the motion for recusal constitutes good cause requiring extension of the [TRO]". ECF No. 48. The Court has now adjudicated the recusal motion and, accordingly, should dissolve the TRO.

### IV. CONCLUSION

The Court should not allow Plaintiffs to reframe a technical contracting timeline—one that continues to reflect good faith and diligence—as noncompliance. Additionally, because the motion that provided the sole basis for the Court's order extending the TRO has been adjudicated, the Court should dissolve the TRO.

DATED: April 22, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

WILLIAM C. SILVIS
Assistant Director

CHRISTINA PARASCANDOLA
KATELYN MASETTA ALVAREZ
MICHAEL A. CELONE
Senior Litigation Counsel

ZACHARY A. CARDIN
Trial Attorney

*/s/ Jonathan K. Ross*
JONATHAN K. ROSS
Senior Litigation Counsel
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-7662
Jonathan.K.Ross@usdoj.gov

Attorneys for Defendants

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants certifies that this brief contains 6 pages, which complies with Local Rule 7-3(a).

Respectfully submitted,

*/s/ Jonathan K. Ross*
JONATHAN K. ROSS
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division
