1

2

3

4                                UNITED STATES DISTRICT COURT

5                             NORTHERN DISTRICT OF CALIFORNIA

6

7   COMMUNITY LEGAL SERVICES IN                    Case No.  25-cv-02847-AMO
    EAST PALO ALTO, et al.,

8                Plaintiffs,
                                                   **ORDER DENYING MOTION TO STAY
9          v.                                      AND MOTION TO DISSOLVE
                                                   TEMPORARY RESTRAINING ORDER**
10
    UNITED STATES DEPARTMENT OF                    Re: Dkt. Nos. 38, 57
11  HEALTH AND HUMAN SERVICES, et al.,

12               Defendants.

13         In this Administrative Procedure Act ("APA") case, the Court earlier granted a Temporary

14  Restraining Order ("TRO").  Before the Court are two motions from Defendants United States

15  Department of Health and Human Services, Office of Refugee Resettlement, and Department of

16  the Interior (collectively, the "Government") related to the TRO: a motion to dissolve the TRO

17  (ECF 38) and a motion to stay the TRO pending the Government's appeal to the Ninth Circuit

18  Court of Appeals (ECF 57).  The matters are fully briefed and suitable for decision without oral

19  argument.  Accordingly, the hearings on these motions set for April 23, 2025,[1] and May 22, 2025,

20  are VACATED.  *See* Civil L.R. 7-1(b), Fed. R. Civ. Pro. 78(b).  Having read the papers filed by

21  the parties and carefully considered their arguments therein, as well as the relevant legal authority,

22  the Court hereby **DENIES** both motions for the following reasons.

23  **I.     BACKGROUND**

24         This lawsuit seeking relief under the Administrative Procedure Act related to the

25  Government's termination of funding allocated to legal services for unaccompanied children in

26  immigration proceedings was filed by on March 26, 2025, by 11 non-governmental organizations.

27
    ───────────────
28  [1] The hearing on Plaintiffs' motion for preliminary injunction remains on calendar for 2:00 p.m.
    PST on April 23, 2025.  *See* ECF 48.

United States District Court
Northern District of California

1   *See* Compl. (ECF 1).  The Plaintiffs are Community Legal Services in East Palo Alto, Social

2   Justice Collaborative, Amica Center for Immigrant Rights, Estrella del Paso, Florence Immigrant

3   and Refugee Rights Project, Galveston-Houston Immigrant Representation Project, Immigrant

4   Defenders Law Center, National Immigrant Justice Center, Northwest Immigrant Rights Project,

5   Rocky Mountain Immigrant Advocacy Network, and Vermont Asylum Assistance Project

6   (collectively, "Plaintiffs").

7       On March 27, 2025, Plaintiffs filed a motion for temporary restraining order ("TRO") and

8   preliminary injunction.  ECF 7.  The Court issued an order setting a hearing, as well as a deadline

9   for the Government's written response to Plaintiffs' TRO motion.  ECF 17.  On March 31, 2025,

10  in accordance with the schedule set on March 27, the Government filed its opposition to Plaintiffs'

11  motion.  *See* ECF 24.  On April 1, 2025, the parties appeared for a hearing on Plaintiffs' motion.

12  ECF 30.  After taking the matter under submission, the Court granted Plaintiffs' motion, issued a

13  TRO, and set an expedited briefing schedule on Plaintiffs' request for a preliminary injunction.

14  ECF 33.  The TRO provided,

> Defendants are **ENJOINED** from withdrawing the services or funds
> provided by the Office of Refugee Resettlement ("ORR") as of
> March 20, 2025, under the Trafficking Victims Protection
> Reauthorization Act of 2008 ("TVPRA"), 8 U.S.C. § 1232(c)(5),
> and ORR's Foundational Rule, 45 C.F.R. § 410.1309(a)(4),
> particularly ORR's provision of funds for direct legal representation
> services to unaccompanied children.  This injunction precludes
> cutting off access to congressionally appropriated funding for its
> duration.

20  ECF 33 at 7.

21      After the grant of the TRO, several motions were filed.  Plaintiffs filed their motion for

22  preliminary injunction (ECF 37), as well as two motions to enforce the TRO (ECF 40, ECF 53).

23  The Government moved to dissolve the TRO (ECF 38) and for recusal of a district judge pursuant

24  to Title 28 U.S.C. § 455 (ECF 47).  Finding that consideration of the recusal motion constituted

25  good cause, the Court extended the TRO for an additional 14 days in accordance with Federal

26  Rule of Civil Procedure 65(b)(2), set a briefing schedule on the recusal motion, and continued the

27  hearing on Plaintiffs' motion for preliminary injunction.  *See* ECF 48.  The Government filed an

28

United States District Court
Northern District of California

2

1    appeal of the TRO following its extension.  ECF 56.  The Government additionally moved to stay

2    the TRO pending that appeal.  ECF 57.

3           Following complete briefing, the Court denied the Government's motion for recusal.  ECF

4    69.  A panel of the Ninth Circuit subsequently determined that the TRO was not appealable and

5    dismissed the Government's appeal, *see Cmty. Legal Services in East Palo Alto et al. v. Dept.*

6    *Health & Hum. Servs. et al.*, Case No. 25-2358, Order (9th Cir. Apr. 18, 2025), rendering the

7    Government's motion for a stay pending appeal (ECF 57) moot.

8    **II.    DISCUSSION**

9           Remaining before the Court is the Government's motion to dissolve the TRO.  A party

10   seeking dissolution of a TRO or preliminary injunction must show (1) a significant change in fact

11   or law; and (2) that in light of the significant change, the injunction should be dissolved or

12   modified under the legal standard that governed the issuance of the injunction in the first place.

13   *See Karnoski v. Trump*, 926 F.3d 1180, 1198 (9th Cir. 2019) (citing *Sharp v. Weston*, 233 F.3d

14   1166, 1170 (9th Cir. 2000)).  "Whether an injunction should be dissolved, just like whether it

15   should be granted, is 'guided by' the *Winter* factors."  *Morning Star, LLC v. Canter, Tr. of Ctr.*

16   *Schoen Fam. Tr. U/D/T Mar. 17, 2015*, Case No. 22-56119, 2023 WL 5092764, at *1 (9th Cir.

17   Aug. 9, 2023) (citing *Karnoski*, 926 F.3d at 1198).  The "*Winter* factors" require a party seeking

18   preliminary injunctive relief must show: (1) a likelihood of success on the merits, (2) a likelihood

19   of irreparable harm to the moving party in the absence of preliminary relief, (3) the balance of

20   equities tips in the favor of the moving party, and (4) an injunction is in the public interest.  *Winter*

21   *v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see* Order (ECF 33) at 4.  "The first two

22   factors . . . are the most critical."  *Nken v. Holder*, 556 U.S. 418, 434 (2009).  Importantly, a

23   party's subsequent challenge to preliminary injunctive relief "must rest on grounds that could not

24   have been raised before."  *Alto v. Black*, 738 F.3d 1111, 1120 (9th Cir. 2013) (citation omitted).

25          The Government contends that the Supreme Court's brief order granting a stay of a TRO in

26   *Department of Education v. California*, 604 U.S. ----, 145 S. Ct. 966 (2025), dictates a stay here.

27   In *Department of Education*, the Supreme Court considered whether to grant a stay of a district

28   court's TRO.  *Id.*  The state government plaintiffs challenged the Department of Education's

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1    termination of contracts for the payment of certain educational grants to the respective states. *Id.*

2    at 1. The district court issued a TRO enjoining the Government from terminating the grants and

3    requiring "the Government to pay out past-due grant obligations and to continue paying

4    obligations as they accrue." *Id.* at 1. The Supreme Court granted the Government's request for a

5    stay of the TRO on the basis that the district court "lacked jurisdiction to order the payment of

6    money under the APA." *Id.* at 2. The Court further held, based in significant part on the relief

7    pursued by the plaintiffs, that the Government would likely show the district court lacked

8    jurisdiction over the contractual claims calling for payment, as those claims are committed to the

9    Court of Federal Claims pursuant to the Tucker Act. *Id.* at 2 (citing 28 U.S.C. § 1491(a)(1)).

10    The Government argues that *Department of Education* applies with equal force to

11    Plaintiffs' APA claims related to the termination of funding for legal services for unaccompanied

12    children in immigration proceedings. Not so. Under the standards governing dissolution of

13    preliminary injunctive relief, the Supreme Court's order does not impact the preliminary relief

14    granted by this Court.

15    First, *Department of Education* does not represent a significant change in law. *Cf.*

16    *Karnoski*, 926 F.3d at 1198. To the contrary, the Government's consistent invocation of the

17    Tucker Act to assert that this Court lacks jurisdiction, *see, e.g.*, Gov't Opp. (ECF 24) at 11-13,

18    demonstrates that the same legal principles regarding the APA's limited waiver of sovereign

19    immunity have not changed. Indeed, the Government fails to identify anything different about the

20    law following the Supreme Court's order, much less a significant change sufficient to warrant

21    dissolution of earlier-granted injunctive relief. This shortcoming alone, on the first step under

22    *Karnoski*, requires denial of the Government's motion to dissolve the TRO.

23    Second, even if *Department of Education* was a significant change in law, it does not apply

24    to the facts of this case. Here, Plaintiffs' claims do not arise merely due to a breach of contractual

25    obligations. The TRO considered in *Department of Education* "enjoin[ed] the Government from

26    terminating various education-related grants" and "require[d] the Government to pay out past-due

27    grant obligations and to continue paying obligations as they accrue." *Dep't of Educ.*, 145 S. Ct. at

28    968. The Supreme Court found the APA likely inapplicable in that case because the plaintiffs

4

United States District Court
Northern District of California

1   there sued "to enforce a contractual obligation to pay money" on the grant contracts, implicating

2   jurisdictional concerns under the Tucker Act. *Id.*, at 968 (citation omitted). Plaintiffs have no

3   contract with the Government. *See* Gov't Opp. to TRO (ECF 24) at 5-6; Biswas Decl. (ECF 24-1)

4   ¶ 4 (stating that the Government's contract with Acacia Center for Justice does not establish a

5   direct relationship with the Plaintiff sub-awardees). Instead, Plaintiffs bring suit to enforce a

6   statute (the TVPRA) and regulation (the Foundational Rule), and they pursue injunctive relief to

7   enforce those provisions rather than for relief sounding in contract. *See* Mot. Prelim. Inj. (ECF

8   37) at 15-17. Indeed, the substance of Plaintiffs' suit is to obtain injunctive, forward-looking

9   relief that Defendants meet their obligations under the TVPRA and the Foundational Rule to

10  provide legal representation to "all" unaccompanied children "to the greatest extent practicable."

11  8 U.S.C. § 1232(c)(5); 45 C.F.R. § 410.1309(a)(4). As recognized by the Supreme Court, "[o]ur

12  cases have long recognized the distinction between an action at law for damages . . . and an

13  equitable action for specific relief . . . . The fact that a judicial remedy may require one party to

14  pay money to another is not a sufficient reason to characterize the relief as 'money damages.' "

15  *Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988) (citation omitted). That the Plaintiff

16  organizations and others may receive payment to fund their continued legal representation of

17  unaccompanied children in accordance with the TVPRA and the Foundational Rule as part of the

18  relief pursued here does not transform the injunctive relief sought into a claim for money damages

19  at law. *See id.* The relief sought here does not sound in contact merely because the Government

20  characterizes it so.

21       The Court in *Department of Education* also held that the plaintiffs – state grant recipients –

22  had not demonstrated irreparable harm sufficient to preclude a stay because they represented "that

23  they have the financial wherewithal to keep their programs running" without the grants, such that

24  "any ensuing irreparable harm would be of their own making" if they declined to keep the

25  programs running. *Dep't of Educ.*, 145 S. Ct. at 969. That runs counter to the findings here – that

26  Plaintiffs will be forced to abandon much of their mission-driven work if the Government fails to

27  comply with the TVPRA and Foundational Rule, and this constitutes irreparable harm in itself.

28  *See, e.g.*, TRO (ECF 33) at 5-6 (explaining the irreparable harms Plaintiffs face and citing

declarations). These Plaintiffs do not "have the financial wherewithal to keep their programs running" as demonstrated through staff layoffs as well as the diversion of funding from other programming. *Id.* at 5.

The Government's sole basis for dissolution of the TRO is the purported applicability of *Department of Education* to this case. The Government fails to identify any facts or law that would alter the Court's initial balancing of the *Winter* factors, but as discussed above, the Court continues to find the first two factors, likelihood of success and irreparable harm, satisfied based on this record. Having found that *Department of Education* (1) is not a significant change of law and (2) that even if it were, *Department of Education* does not require a different outcome in this case given the harm faced by Plaintiffs, the injunctive relief sought, and the inapplicability of the Tucker Act, the Government fails to establish that the TRO should be dissolved.

## III.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' motion to dissolve the TRO. The Court **DENIES** Defendants' motion to stay the TRO pending appeal as moot. The TRO remains in effect, and the Court will hear Plaintiffs' motion to enforce the TRO as scheduled.

**IT IS SO ORDERED.**

Dated: April 21, 2025

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**