GAY CROSTHWAIT GRUNFELD – 121944
BENJAMIN BIEN-KAHN – 267933
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone:    (415) 433-6830
Facsimile:     (415) 433-7104
Email:          ggrunfeld@rbgg.com
                     bbien-kahn@rbgg.com

Attorneys for Amici Former Officials of the
United States Department of Health and
Human Services

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, et al.,<br><br>             Plaintiffs,<br><br>        v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,<br><br>             Defendants. | Case No. 25-cv-2847-AMO<br><br>***AMICUS CURIAE* BRIEF OF FORMER OFFICIALS OF THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Judge:    Araceli Martínez-Olguín |

[4680343.4]

Case No. 25-cv-2847-AMO
AMICUS CURIAE BRIEF OF FORMER OFFICIALS OF U.S. DEPT. OF HEALTH & HUMAN SERVS. ISO PLFS' MOT. FOR PRELIMINARY INJUNCTION

## IDENTITY AND INTEREST OF AMICI CURIAE[1]

*Amici curiae* are former officials of the United States Department of Health and Human Services ("HHS"), listed in **Appendix A**, with substantial combined years of service and experience implementing congressionally-authorized programs under the Administration for Children and Families and the Office of Refugee Resettlement. *Amici* submit this brief to shed light on how HHS has long interpreted its congressional mandate to ensure that unaccompanied children are provided legal representation in immigration proceedings to the greatest extent practicable, by providing funding to legal service providers with critical experience and expertise in immigration law to support pro bono efforts and provide for direct representation. *Amici* also write to explain why it is not feasible for Defendants to rely solely on pro bono attorneys as an alternative.

*Amici* are invested in these issues because they have dedicated many years to efforts to assist unaccompanied children and improve the Unaccompanied Children Bureau, both inside and outside of government. Given *amici*'s role in implementing these congressionally-mandated programs, and their familiarity with the realities faced by unaccompanied children and the limited availability of pro bono representation for them, *amici* respectfully request that this Court enjoin the actions taken by Defendants to cancel appropriated funding for the legal representation of unaccompanied children.

## INTRODUCTION

Every year, thousands of children without lawful immigration status, including babies and toddlers, encounter the United States' immigration system without a parent or guardian. Many of these unaccompanied children flee their homes to escape violence and persecution, and experience exploitation or trafficking during their journey to the United States. These children often do not speak English and are unable to understand their basic rights or the nature of the immigration proceedings without assistance. Yet they must

---

[1] No party's counsel authored this brief in whole or in part, and no person other than *amici* and their counsel contributed money that was intended to fund the preparation or submission of this brief.

AMICUS CURIAE BRIEF OF FORMER OFFICIALS OF U.S. DEPT. OF HEALTH & HUMAN SERVS. ISO
PLFS' MOT. FOR PRELIMINARY INJUNCTION

navigate a complex immigration system to seek asylum or other relief for which they may be eligible.  Establishing the required elements for these legal claims is difficult and complex even for an unrepresented adult, let alone a child.  Without a lawyer, unaccompanied children are unlikely to be able to fairly present their case for immigration relief, and risk being returned to the very trafficking, persecution, or abuse and neglect that they fled.

To meet unaccompanied children's acute need for legal representation in the immigration system, Congress enacted, as part of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), the requirement that HHS "ensure, to the greatest extent practicable …, that **_all_** unaccompanied alien children … have counsel to represent them in legal proceedings or matters and protect them from mistreatment, exploitation, and trafficking."  8 U.S.C. § 1232(c)(5) (emphasis added).  In 2024, HHS's Office of Refugee Resettlement ("ORR") issued a Foundational Rule requiring ORR to "fund legal service providers to provide direct immigration legal representation for certain unaccompanied children," to the extent that "appropriations are available, and insofar as it is not practicable for ORR to secure pro bono counsel …."  45 C.F.R. § 410.1309(a)(4).

Defendants' sudden termination of funding for direct legal representation for unaccompanied children will significantly increase the number of children who are forced to navigate the immigration system without an attorney, reducing their stability, increasing their vulnerability to human trafficking and exploitation, and subjecting them to the very real likelihood of unjust removal from the United States.  While Defendants say pro bono representation is a "viable alternative[]" to direct legal representation funding, ECF No. 24 at 12,[2] the reality is that ORR has been unable to ensure legal representation for more than 40% of unaccompanied children in immigration proceedings even through its longstanding approach of **_both_** promoting access to pro bono counsel **_and_** funding direct legal

---

[2] Citations to filings in this matter are to ECF pagination.

AMICUS CURIAE BRIEF OF FORMER OFFICIALS OF U.S. DEPT. OF HEALTH & HUMAN SERVS. ISO PLFS' MOT. FOR PRELIMINARY INJUNCTION

representation.  It will be impossible to secure pro bono representation for the majority of the 26,000 unaccompanied children currently receiving direct legal representation funded by ORR.  Due to the limited availability of volunteer attorneys, unaccompanied children encounter backlogs and waitlists when trying to obtain pro bono representation.  A study by Syracuse University's Transactional Records Access Clearinghouse Immigration Project found that, as of the end of April 2023, only 0.8% of those ordered removed from the United States in immigration court could find a volunteer lawyer to represent them.  TRANSACTIONAL RECORDS ACCESS CLEARINGHOUSE ("TRAC"), DESPITE EFFORTS TO PROVIDE PRO BONO REPRESENTATION, GROWTH IS FAILING TO MEET EXPLODING DEMANDS (May 12, 2023), https://tracreports.org/reports/716/.  And pro bono attorneys who do not otherwise practice immigration law will often need training and support to provide adequate representation.

The Trump Administration is now targeting unaccompanied children for immigration enforcement, making legal representation in children's immigration cases even more critical.  Marisa Taylor, Ted Hesson & Kristina Cooke, *Trump Officials Launch ICE Effort to Deport Unaccompanied Migrant Children*, REUTERS (Feb. 23, 2025 at 5:00am PST), https://www.reuters.com/world/us/trump-administration-directs-ice-agents-find-deport-unaccompanied-migrant-2025-02-23/.  The consequences of mistakenly or wrongfully deporting someone are grave.  They are heightened for children, given their many vulnerabilities, especially children who are without a parent or legal guardian to help and protect them.  *Amici* thus respectfully request that the Court enjoin the actions taken by Defendants to abruptly cancel appropriated funding for the legal representation of unaccompanied children.

## ARGUMENT

## I.  UNACCOMPANIED CHILDREN SUFFER HARM WHEN THEY MUST NAVIGATE THE IMMIGRATION SYSTEM WITHOUT A LAWYER

Legal representation in immigration proceedings is critical to support the well-being and stability of unaccompanied children.  This includes helping children understand what

options, if any, they may have to remain in the United States.  Without a lawyer, unaccompanied children will often be unable to achieve a basic understanding of their rights, let alone make a case for asylum or other immigration relief.  This can increase a child's anxiety and make them feel alone in a very complex legal system that has major life-altering consequences.

If a child is eligible for immigration relief that can assist them in remaining in the United States, it is essential for the child's well-being that this is pursued.  Collectively, *amici* are familiar with many cases of children who were referred by ORR to be provided legal representation due to their vulnerabilities and potential eligibility for immigration relief, including children who have been victimized by crime and human trafficking, who are victims of abuse and neglect, and who are potentially eligible for asylum due to an individualized fear of persecution.

Although "ORR strives for 100% legal representation of unaccompanied children," Unaccompanied Children Program Foundational Rule, 88 Fed. Reg. 68948 (Oct. 4, 2023), nearly half still appear in immigration court without a lawyer.  *Executive Office for Immigration Review Adjudication Statistics: Current Representation Rates*, U.S. DEP'T OF JUSTICE (Oct. 12, 2023), https://www.justice.gov/eoir/page/file/1062991/dl?inline= (in 2023, only 56% of unaccompanied children with pending immigration cases had an attorney).  The differences in outcomes for children without legal representation is stark. From 2005 through 2017, 7.2% of children with legal representation received asylum, special immigrant juvenile status for abused, neglected, or abandoned children, or some other form of immigration relief, compared to only 0.3% without an attorney. CONGRESSIONAL RESEARCH SERVICE, R43599, UNACCOMPANIED CHILDREN: AN OVERVIEW (2024) at 39-40 & Table 2, https://sgp.fas.org/crs/homesec/R43599.pdf.  By contrast, 84% of unaccompanied children without lawyers received removal orders from immigration courts, compared to only 21% of represented children.  *Id.*  Without legal representation, unaccompanied children are far less likely to be able to adequately present a case for immigration relief to which they may be entitled, and are more likely to be

1  deported back into potentially dangerous circumstances in their home countries, at great

2  risk to their personal safety.

3      Children's stability in the United States is also impacted by whether or not they

4  have legal representation.  First, children's access to legal representation supports their

5  legal case, which may provide them with permanency and stability in the United States.

6  Expanding and increasing legal representation gives children the chance to receive legal

7  status for which they are eligible, and, subsequently, the services that will provide them

8  with stability and well-being.  Legal counsel also supports vulnerable children by

9  connecting them with other services in the community.  In 2021, the Migration Policy

10  Institute issued a report highlighting the importance of the services provided to

11  unaccompanied children after they are released from ORR custody, including legal

12  services.  MARK GREENBERG, KYLIE GROW, STEPHANIE HEREDIA, KIRA MONIN & ESSEY

13  WORKIE, STRENGTHENING SERVICES FOR UNACCOMPANIED CHILDREN IN U.S.

14  COMMUNITIES, MIGRATION POLICY INSTITUTE (2021), https://www.migrationpolicy.org/

15  sites/default/files/publications/mpi-unaccompanied-children-services_final.pdf.  One of the

16  report's findings was that legal services are "particularly crucial for children in light of

17  their unique vulnerabilities," and that in addition to providing legal support, legal service

18  providers "often connect children with services such as school enrollment, health care,

19  mental-health services, food, and housing."  *Id.* at 2.  Attorneys also serve a unique

20  function due to the attorney-client privilege, as the lawyer may be the only person to whom

21  the child can safely reveal that they are being exploited, trafficked, or abused.  *Id.* at 23.

22      Without these services, it has been *amici*'s experience that unaccompanied

23  children's risk of exploitation increases.  For many unaccompanied children, their lack of

24  immigration status makes them more vulnerable to unscrupulous employers seeking to

25  exploit them with dangerous and underpaid work.  Traffickers similarly seek out

26  vulnerable children.  Not only does legal representation increase children's ability to gain

27  legal status and gainful employment, thus removing a vulnerability to exploitation, legal

28  counsel can also help children understand their rights (including labor rights), and support

them with access to legal relief or benefits that they may be eligible for based on their previous trafficking or exploitation experiences.

## II.    ORR HAS CONSISTENTLY RECOGNIZED ITS CONGRESSIONALLY-MANDATED OBLIGATION TO ENSURE THE PROVISION OF LEGAL REPRESENTATION FOR UNACCOMPANIED CHILDREN TO THE GREATEST EXTENT PRACTICABLE

ORR has consistently interpreted the TVPRA to mandate that it "ensure" the provision of legal services to unaccompanied children "to the greatest extent practicable," and that this necessarily means that ORR should provide funding for direct legal services when appropriated funds are available to do so, and when pro bono provision of legal services is not sufficient to meet the need.  8 U.S.C. § 1232(c)(5).  Indeed, in 2024 the ORR issued a Foundational Rule requiring itself to "fund legal service providers to provide direct immigration legal representation for certain unaccompanied children," to the extent that "appropriations are available, and insofar as it is not practicable for ORR to secure pro bono counsel …."  45 C.F.R. § 410.1309(a)(4).  As discussed further below, the availability of pro bono counsel has never been sufficient to meet the need for legal representation, and as such, ORR has also provided funding for direct legal representation for unaccompanied children appropriated by Congress for that purpose through a legal services contract.

Congress regularly appropriates funding for direct legal representation, and directs ORR to spend additional funds for legal services for unaccompanied children. Congressional appropriators have consistently and repeatedly expressed interest and support for legal services for children, including on regular calls with one of the *amici* prior to their departure from ORR, and have enacted report language directing ORR to use appropriated funding "for the significant expansion of direct representation for children … consistent with the goals of the Trafficking Victims Protection Reauthorization Act of 2008 for all children to have access to counsel."  *Explanatory Statement for Departments of Labor, Health and Human Services, and Education, and Related Agencies Appropriations Bill, 2023: Summary of Budget Estimates and Committee*

1  *Recommendations*, U.S. SENATE COMMITTEE ON APPROPRIATIONS, at 194,

2  https://www.appropriations.senate.gov/imo/media/doc/LHHSFY23REPT.pdf.

3  **III.    PRO BONO LEGAL SERVICES ARE NOT A VIABLE ALTERNATIVE TO**
   **REPLACE THE DIRECT LEGAL REPRESENTATION FUNDED BY ORR**

4

5        Based on *amici*'s collective experience, it is not feasible for Defendants to rely on

6  pro bono legal services to replace the federally funded direct legal representation for

7  unaccompanied children.  ORR has been unable to ensure legal representation for a large

8  percentage of unaccompanied children even through its longstanding approach of both

9  promoting access to pro bono counsel and funding direct legal representation.  Indeed,

10  ORR relies on its legal services contract for promotion of and support for pro bono

11  representation.  There are no ORR staff whose responsibilities are to promote or support

12  pro bono legal services for unaccompanied children.  It is unclear what other mechanism

13  (if any) ORR has to facilitate access to pro bono representation if the cancellation of the

14  legal services funding is not enjoined.

15        Due to the limited availability of volunteer attorneys, many unaccompanied

16  children encounter backlogs and waitlists when trying to obtain pro bono representation.

17  GREENBERG, ET AL., *supra*, at 24, https://www.migrationpolicy.org/sites/default/files/

18  publications/mpi-unaccompanied-children-services_final.pdf.  As discussed above, less

19  than 1% of persons who were ordered removed in immigration court were able to find a

20  volunteer lawyer to represent them.  TRAC, *supra*, https://tracreports.org/reports/716/.

21        Compounding the existing shortage of pro bono representation, *amici* are concerned

22  that the Trump Administration's recent Presidential Memorandum targeting and

23  threatening immigration lawyers based on unsupported accusations of misconduct is likely

24  to discourage some attorneys from practicing immigration law, and will thus make pro

25  bono representation availability even more scarce.  *See Presidential Memorandum for the*

26  *Attorney General and Secretary of Homeland Security: Preventing Abuses of the Legal*

27  *System and the Federal Court*, THE WHITE HOUSE (Mar. 22, 2025), https://www.

28  whitehouse.gov/presidential-actions/2025/03/preventing-abuses-of-the-legal-system-and-

1   the-federal-court/ (falsely accusing "the immigration bar, and powerful Big Law pro bono

2   practices" of "frequently coach[ing] clients to conceal their past or lie about their

3   circumstances when asserting their asylum claims … in an attempt to … deceive the

4   immigration authorities and courts into granting them undeserved relief").

5       Other actions by the Trump Administration—including executive orders imposing

6   sanctions on certain law firms that engage in pro bono work in opposition to the federal

7   government, and agreements reached with other large law firms to provide hundreds of

8   millions of dollars in pro bono legal services for causes supported by the President—are

9   likely to have the dual effect of taking limited pro bono resources away from causes not

10  supported by the Trump Administration (such as the representation of unaccompanied

11  children in immigration court), and discouraging large law firms from engaging in any pro

12  bono work in opposition to the federal government, for fear of reprisal.

13      Another limitation on the availability of adequate pro bono representation is the

14  complexity of immigration law.  Immigration law is a specialized field, and some cases

15  require expertise—for instance, on human trafficking, state child welfare systems, and

16  highly specialized immigration visas—which not all immigration attorneys have, much

17  less volunteer lawyers without significant immigration experience:  As explained in the

18  2021 Migration Policy Institute report, "[w]hile pro bono attorneys play a crucial role in

19  expanding available representation, they may not be trained or have experience in

20  immigration law, nor in trauma-informed or culturally responsible service delivery."

21  GREENBERG, ET AL., *supra*, at 24, https://www.migrationpolicy.org/sites/default/files/

22  publications/mpi-unaccompanied-children-services_final.pdf.

23      Finding pro bono legal representation is also particularly difficult in some parts of

24  the United States, including rural areas where many children are discharged from ORR

25  custody.  These areas are sometimes referred to as "legal deserts," in that there is little to

26  no access to immigration attorneys.  Recognizing this limitation, ORR provided funds to

27  provide direct legal representation for unaccompanied children in these areas.  If

28  Defendants' cancellation of this funding is not enjoined, it is unclear how ORR would be

AMICUS CURIAE BRIEF OF FORMER OFFICIALS OF U.S. DEPT. OF HEALTH & HUMAN SERVS. ISO
PLFS' MOT. FOR PRELIMINARY INJUNCTION

able to locate pro bono attorneys for children who need legal representation in these locations.

The geographic spread of both ORR facilities and the locations where children are discharged is another limitation on finding pro bono representation.  A nationwide network of attorneys is essential to ensure continuity in a child's legal representation, and to prevent representation from ending because their lawyer can only practice in certain jurisdictions.  ORR transfers children between facilities and discharges them to sponsors in hundreds of counties in all fifty states, and attorneys have no say in that process.  Many volunteer attorneys may not or cannot provide representation when they know that a child's jurisdiction will likely change during the course of their case.  This makes it all the more difficult to recruit pro bono attorneys for the cases of unaccompanied children.

ORR currently relies on legal service providers that receive federal funding to promote and support pro bono representation of unaccompanied children, including by providing mentoring and guidance for volunteer attorneys.  The nationwide network of immigration legal professionals who receive funding from ORR can recruit pro bono attorneys in needed geographical areas and with particular expertise, as well as provide training and support for such attorneys.  Such a structure is in the best interest of children, as well as the government, to ensure that ORR fulfills its mandate to provide access to legal services.  It does not appear that ORR has any viable alternative means to provide access to pro bono representation for unaccompanied children, let alone to expand pro bono legal services in the wake of the sudden cancellation of the legal services funding.  Pro bono legal services is not a feasible alternative to funding direct legal representation.

## CONCLUSION

For the foregoing reasons, *amici* respectfully request that this Court enjoin the actions taken by Defendants to abruptly cancel appropriated funding for the legal representation of unaccompanied children without a plan to ensure that these services can continue at the rate and quality with which they have been functioning.  Notably, these

/ / /

1  services have been in place under multiple past administrations, including the prior Trump

2  Administration.

3

4  DATED:  April 10, 2025                    Respectfully submitted,

5                                                      ROSEN BIEN GALVAN & GRUNFELD LLP

6

7                                                      By:   /s/ Benjamin Bien-Kahn

8                                                              Benjamin Bien-Kahn

9                                                      Attorneys for Amici Former Officials of the United
                                                        States Department of Health and Human Services
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[4680343.4]

10                                            Case No. 25-cv-2847-AMO

AMICUS CURIAE BRIEF OF FORMER OFFICIALS OF U.S. DEPT. OF HEALTH & HUMAN SERVS. ISO
PLFS' MOT. FOR PRELIMINARY INJUNCTION

# Appendix A

## APPENDIX A

**List of *Amici* Former Officials of the U.S. Department of Health and Human Services**

    **Mari Dorn-Lopez** served as Senior Advisor in the Office of Refugee Resettlement and in the Office of the Assistant Secretary within the U.S. Department of Health and Human Services from August 13, 2023 to January 20, 2025.  She previously had over ten years of experience representing children and advocating for best practices to serve unaccompanied and immigrant children.

    **Mark Greenberg** served as Deputy Assistant Secretary for Policy at the Administration for Children and Families within the U.S. Department of Health and Human Services from 2009 through 2013, and as the Administration for Children and Families Acting Assistant Secretary from 2013 until January 20, 2017.  Subsequently, he served as Deputy General Counsel at the U.S. Department of Health and Human Services' Office of the General Counsel from December 2021 until January 20, 2025.

    **Larry Handerhan** served as Chief of Staff and Deputy Assistant Secretary for Management at the Administration for Children and Families within the U.S. Department of Health and Human Services from January 25, 2021 to January 20, 2025, working closely with the Office of Refugee Resettlement.  He has over 15 years of experience working on housing and human services issues that impact children and families.

    **Jeffrey Hild** served as the Principal Deputy Assistant Secretary for the Administration for Children and Families within the U.S. Department of Health and Human Services from May 2022 through November 2024, and as the Acting Assistant Secretary at the Administration for Children and Families from August 2023 through November 2024.  He previously served as the Deputy Assistant Secretary for Legislation at U.S. Department of Health and Human Services from March 2021 through May 2022 and the Chief of Staff at the Administration for Children and Families from July 2014 through January 2017.  He previously worked in Congress for eight years and at the George Washington University School of Public Health, where his work focused on policies and research related to child health and well being.

APPENDIX A TO THE AMICUS CURIAE BRIEF OF FORMER OFFICIALS OF THE UNITED STATES
DEPARTMENT OF HEALTH AND HUMAN SERVICES ISO PLS' MOTION FOR PRELIMINARY INJUNCTION

Case 3:25-cv-02847-AMO    Document 78    Filed 04/23/25    Page 14 of 14

**Miriam Maigadi** served as Senior Advisor in the Office of Refugee Resettlement within the U.S. Department of Health and Human Services from June 20, 2023 to January 20, 2025.  She has eight years experience regarding best practices to serve unaccompanied and immigrant children.

**Angel Padilla** served as Senior Policy Advisor at the Office of Refugee Resettlement and at the Administration for Children and Families within the U.S. Department of Health and Human Services between May 2021 and November 2022, working primarily on the unaccompanied children's program.  Prior to that, he worked in legislative and administrative advocacy, including as a health policy analyst focused on immigrant access to health care services.

**Jenifer Smyers** served as the Chief of Staff and Deputy Director of the Office of Refugee Resettlement within the U.S. Department of Health and Human Services from February 1, 2021 until January 20, 2025.  Prior to that, she had 15 years of experience in immigration advocacy focused on vulnerable populations.

**Kate Wolff** served as Counselor to the Secretary of Health and Human Services covering the immigration portfolio from September 1, 2021 to March 1, 2023.  Prior to that, she had 15 years of public service at the state and federal level, including as the Chief of Staff of the Office of Refugee Resettlement within the U.S. Department of Health and Human Services from 2014 to 2016.

[4681500.2]

2

Case No. 25-cv-2847-AMO
APPENDIX A TO THE AMICUS CURIAE BRIEF OF FORMER OFFICIALS OF THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES ISO PLS' MOTION FOR PRELIMINARY INJUNCTION