UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,<br><br>Defendants. | Case No: 3:25-cv-2847 (AMO) |

**SUPPLEMENTAL DECLARATION OF SHARON ROBERTS**

I, Sharon Roberts, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I incorporate my Declaration in Support of Defendants' Status Report and Notice of Compliance (ECF No. 45-2) as if fully set forth herein.

2. I am the Associate Director of the U.S. Department of the Interior, Interior Business Center, Acquisition Services Directorate (collectively DOI).

3. DOI provides assisted acquisition services to the Department of Health and Human Services, Administration of Children and Families, Office of Refugee Resettlement (collectively ORR) under the Interior Franchise Fund. The Interior Franchise Fund is one of six pilot programs authorized pursuant to the Federal Financial Reform Act of 1994, Pub. L. 103-356, title IV, § 403, 103 Stat. 3414 (Oct. 13, 1994) and made permanent by the Consolidated Appropriations Act of 2008. Pub. L. 110-161, 121 Stat. 1844 (Dec. 26, 2007), to provide "common administrative support services" to federal agencies more efficiently than through other means.

4. This declaration is based upon my personal knowledge, information acquired by me in the course of performing my official duties, information contained in the contract records of contract number 140D0422C0009 between DOI and Acacia Center for Justice (Acacia), and information conveyed to me by current agency employees including the Contracting Officer administering the contract.

5. I submit this declaration to supplement my earlier declaration filed on April 8, 2025, and in order to convey the further specific steps taken by DOI to comply with the TRO.

6. Between April 8-10, 2025, DOI continued to work through internal reviews and approvals and determined that reinstatement of the terminated contract line items would require a bilateral

modification; DOI further determined that it needed to request a reinstatement proposal from the prime contractor, Acacia; DOI's Contract Officer (CO) drafted a request for reinstatement proposal; the CO sent Acacia the request for a reinstatement proposal at 2:18pmE on April 11, 2025 requesting a response by no later than 1pmE, April 16, 2025.

7. On April 9, 2025 Acacia sent questions to DOI regarding records management directives contained in the March 21, 2025 partial termination notice. On April 10, 2025 DOI responded with the following: "For now please continue with the records return request, until a new contract action is processed."

8. On April 11, 2025 at 2:36pmE, Acacia asked DOI for clarification on the mechanism the government intends to use for a potential modification and the intended performance period.

9. Prior to receiving clarification from DOI, on Friday, April 11, 2025 at 7:26pmE, Acacia sent a reinstatement proposal "April 11 reinstatement proposal."

10. On Monday, April 14, 2025 at 7:50amE DOI responded to Acacia's clarification request stating that the extension period would be the same as the period for the remaining unterminated contract line item.

11. Upon receiving clarification from DOI, Acacia withdrew the April 11 reinstatement proposal on April 14, 2025 at 8:05amE.

12. On April 16, 2025 at 12:51pmE, Acacia provided DOI with a new reinstatement proposal "April 16 reinstatement proposal." Acacia's April 11 reinstatement proposal assumed that DOI would "exercise" a full year of services under the terms of the expired contract. Acacia's April 16 reinstatement proposal identified changes to the contract performance work statement, pricing for the modification, and an assumption that the modification would be backdated to the termination date.

13. Also on April 16, 2025, DOI sent Acacia's April 16 reinstatement proposal to HHS and asked HHS to review Acacia's proposed changes to the contract performance work statement for acceptability. While DOI manages the contracting functions, HHS remains in charge of the programmatic requirements and must ensure that Acacia's proposed changes meet HHS's need and ensures further compliance with the TRO.

14. Notwithstanding HHS's ongoing review, on April 18, 2025 at 1:25pm, DOI responded to Acacia by requesting some minor revisions to the April 16 reinstatement proposal and clarifying the method by which DOI intends to handle payment for services occurring between contract termination and the contract modification to reinstate services. DOI requested a final reinstatement proposal from Acacia by 11am April 22, 2025.

15. Acacia responded on April 18, 2025 at 3:34pmE asking for clarification on the anticipated effective date and period of performance of the modification.

16. On April 21, 2025 at 8:55amE, DOI responded to Acacia's request for clarification.

17. On April 21, 2025 at 9:40amE, Acacia responded by asking DOI to identify any funding limitation and the anticipated start date so that it could price the firm-fixed-price line items.

18. On April 21, 2025 at 10:38amE, DOI responded to Acacia. DOI identified an estimated funding limitation of $143,821,841, and identified the start date as "ASAP." DOI further informed Acacia that while the final action would require clearance/approval by its legal and management departments, DOI was working expeditiously and if Acacia's start date needed to be adjusted, DOI would prorate the price and confirm acceptability with Acacia.

19. On April 21, 2025 at 2:48pm, DOI notified Acacia that HHS accepted its proposed changes to the performance work statement.

20. As of the execution of this declaration, DOI is waiting on a response from Acacia identifying its final price for the proposed modification.

21. The published contract modification "lead time" goals for DOI's contracting component handling this action lists two "lead time" goals for contract modification. Simple modifications (i.e. option exercises and unilateral administrative changes) carry a lead time of up to 20 days. Complex modifications (i.e. constructive changes, claims, terminations, equitable adjustments and consideration) carry a lead time of up to 120 days. *See* Procurement Action Lead Time Categories & Goals, available at https://ibc.doi.gov/acquisition/partner-with-us/acquisition-dates-timelines/palt (updated Aug. 21, 2024) (viewed Apr. 21, 2025). The bilateral modification with Acacia to reinstate terminated contract line items fall within the category of complex modifications. Since DOI learned of the TRO on April 2, it has worked expeditiously to implement compliance measures and is on track to accomplish the bilateral modification to Acacia's contract well under the 120 days typically allotted for such an action.

Executed on April 21, 2025.

SHARON ROBERTS
Digitally signed by SHARON ROBERTS
Date: 2025.04.21 20:01:54 -04'00'

Sharon Roberts