IMMIGRANT DEFENDERS LAW CENTER
Alvaro M. Huerta (CA Bar No. 274787)
Carson A. Scott (CA Bar No. 337102)
Lya Ferreyra (CA Bar No. 340148)
Immigrant Defenders Law Center
634 S. Spring St., 10th Floor
Los Angeles, CA
(213) 634-0999
ahuerta@immdef.org
cscott@immdef.org
lferreyra@immdef.org

JUSTICE ACTION CENTER
Esther H. Sung (CA Bar No. 255962)
Karen C. Tumlin (CA Bar No. 234691)
Laura Flores-Perilla (CA Bar No. 355645)
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272
esther.sung@justiceactioncenter.org
karen.tumlin@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org

AMICA CENTER FOR IMMIGRANT RIGHTS
Adina Appelbaum (*pro hac vice*)
Samantha Hsieh (*pro hac vice*)
Peter Alfredson (*pro hac vice*)
Evan Benz (*pro hac vice*)
Amica Center for Immigrant Rights
1025 Connecticut Avenue NW, Suite 701
Washington, DC 20036
(202) 331-3320
adina@amicacenter.org
sam@amicacenter.org
peter@amicacenter.org
evan@amicacenter.org

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,<br><br>Defendants. | CASE NO. 3:25-CV-02847-AMO<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTIONS TO ENFORCE TEMPORARY RESTRAINING ORDER**<br><br>Date:        May 22, 2025<br>Time:       2:00 p.m.<br>Judge:      Hon. Araceli Martínez-Olguín<br>Trial Date: TBD<br>Date Action Filed: March 26, 2025 |

**INTRODUCTION**

Plaintiffs submit this reply in support of their Emergency Motion to Enforce this Court's Temporary Restraining Order ("TRO" or "Order") (ECF 40) and their Renewed Emergency Motion to Enforce the Order (ECF 53) (collectively, the "Motions to Enforce"), which Plaintiffs incorporate by reference here. Defendants describe their violation of this Court's Order as a "technical contracting timeline," (ECF 74 at 7), a claim that neither excuses Defendants' noncompliance nor acknowledges Defendants' own continued delays and meritless motions practice, which show they have no intent to comply. Meanwhile, the irreparable and existential harms to Plaintiffs and the child clients they represent continue to mount. Accordingly, Plaintiffs respectfully request that this Court issue an order enforcing the TRO and issue any additional orders necessary to ensure Defendants comply, including appropriate sanctions.

**BACKGROUND**

Defendants' Opposition to the Motions to Enforce ("Opposition") recites a series of dates, the vast majority of which relate to motions practice before this Court, and not to any actions allegedly taken to comply with this Court's Order. *See, e.g.*, ECF 74 at 2–6. Because the facts at issue here relate to Defendants' compliance with this Order, not unrelated motions practice by Defendants' attorneys, Plaintiffs do not address the majority of those dates or facts here. Plaintiffs incorporate by reference their Motions to Enforce (Dkts. 40, 53), which summarize Defendants' actions to date that stopped provision of direct representation of unaccompanied children, and that have not restarted provision of those required services. At the April 23, 2025 hearing, Defendants' representative stated to the Court on the record that the last steps to restore this required direct representation were in Defendants' control, and that it should only be a day or two before finalizing the contract to restore direct representation. When Plaintiffs reached out to Defendants' counsel

two days later, on April 25, 2025, however, Defendants did not respond until today, April 28, and stated only that Defendants "are in the process of gathering the latest information." Hsieh Decl. ¶ 3; Ex. 1.

## ARGUMENT

Defendants contend they "took immediate steps to develop a compliance plan" and "continue to make progress to reinstate the Acacia contract." ECF 74 at 2, 7. But a purported plan to comply is not compliance with the TRO. A TRO can hardly "'preserv[e] the status quo and prevent[] irreparable harm'" if those who are subject to it do not *act* to comply and, instead, offer mere words of intent, as Defendants do here. *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (*quoting Granny Goose Foods, Inc. v. Bd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)). Defendants' noncompliance ensures that Plaintiffs' irreparable harms mount with each passing day, further eroding the status quo. In this instance, relief delayed is relief denied.

This Court's Order enjoined Defendants from "withdrawing the services or funds provided by the Office of Refugee Resettlement ("ORR") as of March 20, 2025," and noted that the "injunction precludes cutting off access to congressionally appropriated funding for its duration." ECF 33 at 7. As of the time of filing, *twenty-seven days* after this Court's Order, Defendants have not released any congressionally appropriated funding. Hsieh Decl. ¶ 4. To Plaintiffs' knowledge, neither Plaintiffs nor any other individual or organization capable of providing the direct representation required under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA") and ORR's Foundational Rule, 45 C.F.R. § 410.1309(a)(4), have been able to access the congressionally appropriated funds that are available through at least September 30, 2027. Hsieh Decl. ¶ 4. Defendants' continued failure to ensure access to these funds and ensure

representation to the "greatest extent practicable" directly contravenes this Court's Order and demonstrates non-compliance with the TRO. *See* ECF 33; 8 U.S.C.§ 1232(c)(5).

Defendants continue to make it clear through their inaction, coupled with their motions practice and appeals, that they have no intention of complying with this Court's Order. Defendants' Opposition consists almost entirely of a recitation of events that have occurred since this Court's Order. *See* ECF 74 at 2–6. Not one of those events constitutes compliance. Defendants' subsequent promise on April 23, 2025—that the final step to restore these services and funding was coming within a day or two—similarly has come and gone without any compliance.

For example, Defendants include in their recitation of events their April 4, 2025 motion to dissolve the TRO at issue and their April 9, 2025 motion for recusal and reassignment. ECF 74 at 3–4. Defendants offer no reason why these motions, or any other motions before this Court, should impact the status of Defendants' compliance with a valid court Order, which remains in effect. *See* ECF 75 at 4, 6 ("[T]he Supreme Court's order [in *Department of Education v. California*] does not impact the preliminary relief granted by this Court."); ECF 69 at 9.

Unable to demonstrate compliance, Defendants hide behind descriptions of bureaucratic red tape. Defendants variously and inconsistently describe the steps necessary for compliance as a "contract modification," ECF 74 at 2, a "reinstatement," *id.* at 7, and a "multi-step contracting process," *id*. at 2. But these descriptions defy logic—if, as Defendants state, the only way to restore the required direct representation services is to contract with Acacia Center for Justice ("Acacia"), Defendants could simply rescind their termination of the contract. *See Amica Ctr. for Imm. Rights v. U.S. Dep't of Justice*, No. 1:25-cv-00298-RDM, Dkt. 65-2 at 13 (D.D.C. Apr. 24, 2025) (rescission of termination notice in analogous case). That Defendants elected to modify

their contract with Acacia to purport to comply does not now excuse them for a nearly month-long delay in actually complying. Defendants provide no explanation why there are any delays at all, considering their chosen path of compliance was active and operative only days before this Court's Order. As Defendants' Opposition shows, Acacia routinely responded to Defendants within hours of Defendants' contact, but Defendants generally took several days to respond. For instance, when Defendants contacted Acacia about "minor revisions" to the contract on April 18, Acacia responded that same day. ECF 74 at 5–6. Defendants did not respond until April 21. *Id.* at 6.

Finally, Defendants' arguments that this Court should dissolve the TRO are clearly baseless and again offer no reason for their failure to comply. The Court has already denied Defendants' request to dissolve the TRO based on the Supreme Court's decision in *Department of Education v. California*. ECF 75 at 6 (determining that *Dep't of Educ. v. California* did not undermine the basis for the TRO in this case). There is no basis for Defendants' continued insistence that it do so. The Ninth Circuit has also dismissed Defendants' appeal which was premised on the same arguments. *Comm. Legal Servs. In East Palo Alto v. U.S. Dep't of Health & Human Servs.*, No. 25-2358, ECF 16.1 (9th Cir. April 18, 2025) (dismissing Defendants' appeal and denying their emergency motion as moot). And, while Defendants sought en banc review after the motion panel's minute entry dismissing their appeal, *id.* ECF 17.1, the Ninth Circuit quickly denied that motion as well, *id.* ECF 20.1, 22.1. Defendants' attempt to seek en banc review of an order with which they have yet to comply further demonstrates Defendants' determination to avoid this Court's Order.

This Court also should reject Defendants' wily argument that the TRO should be dissolved because this Court has "now adjudicated [and denied] the recusal motion[.]" ECF 74 at 7. Defendants' meritless recusal motion required this Court to extend the TRO to allow it time to

consider Defendants' motion, while maintaining the temporary relief that it had deemed necessary. ECF 48 at 1; *see also* ECF 33 at 5 (finding that a TRO was necessary "while the record and the parties' arguments are developed further"). Defendants suggest that this Court, after spending time and judicial resources to consider and deny Defendants' recusal motion, should now shift back to Defendants' preferred timeline. *See* ECF 74 at 7. This argument lacks merit and shows little consideration for this Court's time, resources, and scheduling orders. Moreover, this Court explicitly issued a TRO because Plaintiffs showed "that they are likely to suffer irreparable harm in the absence of preliminary relief" and the "public interest strongly weighs in favor of entering temporary relief." ECF 33 at 5–6. That the Court has now adjudicated Defendants' recusal motion does nothing to undermine this Court's determination that temporary relief was necessary and certainly does not offer an excuse for Defendants' failure to comply with this Court's express orders regarding that relief.

In sum, Defendants continue to confuse the issues, hide behind government bureaucracy, and file motions at every turn to escape the requirements of this Court's TRO. What they have not done is comply with the TRO. The harms caused by Defendants' delays and noncompliance are real and tragic. As explained at length in Plaintiffs' Motions to Enforce and elsewhere, Plaintiffs' organizations are rapidly bleeding resources, impeding their ability to carry out their mission-driven work; children, including infants and toddlers, are facing immigration court and trained government attorneys alone and, as a result, children are being removed without an opportunity to be represented by counsel; and ORR shelters and immigration judges repeatedly implore Plaintiffs to provide assistance they are increasingly unable to provide. *See, e.g.*, ECF 53-2 ¶¶ 3, 6; ECF 53-

4 ¶¶ 3–4; ECF 53-5 ¶¶ 7–9; ECF 40-2 ¶¶ 3–4, 6.[1] These harms will continue to multiply unless and until Defendants comply with this Court's Order—an Order intended to prevent exactly these harms. *See, e.g., E. Bay Sanctuary*, 932 F.3d at 778–79. *Cf. J.G.G. v. Trump*, No. 1:25-cv-766-JEB, ECF 94-1, at 17–29 (D.D.C. Apr. 18, 2025) (amicus brief describing sanctions options for courts facing federal government's refusal to comply with court orders).

## CONCLUSION

For the reasons set forth in Plaintiffs' Motions to Enforce and the additional considerations brought forth here, this Court should issue an order enforcing its Temporary Restraining Order and make any additional orders necessary to ensure Defendants' compliance, including appropriate sanctions.

Respectfully submitted,

April 28, 2025

*/s/ Alvaro M. Huerta*
IMMIGRANT DEFENDERS LAW CENTER
Alvaro M. Huerta (CA Bar No. 274787)
Carson A. Scott (CA Bar No. 337102)
Lya Ferreyra (CA Bar No. 340148)
Immigrant Defenders Law Center
634 S. Spring St., 10th Floor
Los Angeles, CA
(213) 634-0999
ahuerta@immdef.org
cscott@immdef.org
lferreyra@immdef.org

*/s/ Karen C. Tumlin*
JUSTICE ACTION CENTER
Esther H. Sung (*pro hac vice*)

*/s/ Samantha Hsieh*
AMICA CENTER FOR IMMIGRANT RIGHTS
Adina Appelbaum (*pro hac vice*)
Samantha Hsieh (*pro hac vice*)
Peter Alfredson (*pro hac vice*)
Evan Benz (*pro hac vice*)
Amica Center for Immigrant Rights
1025 Connecticut Ave., N.W., Suite 701
Washington, D.C. 20036
(202) 331-3320
adina@amicacenter.org
sam@amicacenter.org
peter@amicacenter.org
evan@amicacenter.org

---

[1] While not related to the Unaccompanied Children's Program, the government has also recently demonstrated a proclivity for not following other legal protections for immigrant children. *See* Andone Dakine, *3 children who are US citizens — including one with cancer — deported with their mothers, lawyers and advocacy groups say*, (CNN Apr. 27, 2025), available at: https://www.cnn.com/2025/04/27/us/children-us-citizens-deported-honduras/index.html.

Karen C. Tumlin (CA Bar No. 234691)  *Attorneys for Plaintiffs*
Laura Flores-Perilla (CA Bar No. 355645)
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
(323) 450-7272
esther.sung@justiceactioncenter.org
karen.tumlin@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org