**FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

FILED

APR 25 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| COMMUNITY LEGAL SERVICES IN EAST PALO ALTO; SOCIAL JUSTICE COLLABORATIVE; AMICA CENTER FOR IMMIGRANT RIGHTS; ESTRELLA DEL PASO; FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT; GALVESTON-HOUSTON IMMIGRANT REPRESENTATION PROJECT; IMMIGRANT DEFENDERS LAW CENTER; NATIONAL IMMIGRANT JUSTICE CENTER; NORTHWEST IMMIGRANT RIGHTS PROJECT; ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK; VERMONT ASYLUM ASSISTANCE PROJECT, | No. 25-2358 <br><br> D.C. No. 3:25-cv-02847-AMO <br> Northern District of California, San Francisco <br><br> **ORDER** |
| Plaintiffs - Appellees, | |
| v. | |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; UNITED STATES DEPARTMENT OF THE INTERIOR; OFFICE OF REFUGEE RESETTLEMENT, | |
| Defendants - Appellants. | |

Before: TASHIMA, OWENS, and DESAI, Circuit Judges.
Dissent by Judge Bumatay and Judge VanDyke.

Judges Owens and Desai have voted to deny Appellants' petition for

rehearing en banc, and Judge Tashima has so recommended.

The full court was advised of Appellants' petition for rehearing en banc.  A judge requested a vote on whether to rehear the matter en banc.  The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration.  Fed. R. App. P. 40.

Appellants' petition for rehearing en banc, Docket No. 17, is DENIED.

FILED

APR 25 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*Community Legal Servs. in East Palo Alto, et al. v. DHHS, et al.*, No. 25-2358

BUMATAY and VANDYKE, Circuit Judges, joined by CALLAHAN, IKUTA, BENNETT, R. NELSON, BADE, COLLINS, LEE, and BRESS, Circuit Judges, dissenting from the denial of rehearing en banc:

We respectfully dissent from the denial of the government's request to rehear this case en banc. The government's appeal in this high-profile case raises serious questions about judicial overreach, separation of powers, and the misuse of injunctive relief. Consideration by the full court was therefore warranted to fix the motions panel's errors that entrenched the district court's ruling. Most concerning, the panel's order is contrary to the Supreme Court's recent ruling in an indistinguishable case that presented the same issues.

The Trafficking Victims Protection Reauthorization Act ("TVPRA"), 8 U.S.C. § 1232, directs the Department of Health and Human Services ("HHS") to ensure, "to the greatest extent practicable," that unaccompanied children in immigration custody receive legal representation. *Id.* § 1232(c)(5). Consistent with the TVPRA's requirement that HHS prioritize pro bono counsel, HHS's Office of Refugee Resettlement ("ORR") issued the "Foundational Rule," codified at 45 C.F.R. § 410.1309(a)(4), formalizing the agency's discretion to either fund direct legal representation or secure pro bono counsel. The government exercised this discretion in March 2025 to terminate funding for direct legal services provided by nonprofit subcontractors under a federal contract with the Acacia Center for Justice.

1

Eleven nonprofit legal organizations sued, alleging that the contract termination violated the Administrative Procedure Act ("APA"), the TVPRA, and ORR's regulations. Following a hearing, the district court granted a temporary restraining order ("TRO") enjoining the government "from withdrawing the services or funds, … particularly ORR's provision of funds for direct legal representation services to unaccompanied children." In doing so, the district court also refused the government's request for an injunction bond under Rule 65(c).

The government moved to dissolve the TRO after the intervening Supreme Court decision in a closely analogous case. *See Dep't of Educ. v. California*, 145 S. Ct. 966 (2025) (per curiam). But instead of dissolving the TRO, the district court *extended* it to the maximum time allowed by Federal Rule of Civil Procedure 65.

The government immediately sought relief from the Ninth Circuit, arguing that the TRO functioned as a de facto preliminary injunction and was entered without jurisdiction in light of *Department of Education v. California*. After receiving additional briefing from the parties, the motions panel summarily dismissed the appeal and denied the government's emergency motion to stay the TRO as moot in a one-paragraph order. The motion panel's order concluded that the district court's temporary restraining order was not appealable and did not reach the merits. The government then requested en banc review by the full court. We should have granted it.

The Supreme Court has cautioned that a district court cannot "shield its orders from appellate review merely by designating them as [TROs], rather than as preliminary injunctions." *Sampson v. Murray*, 415 U.S. 61, 87 (1974). Just a few weeks ago the Court reiterated that a TRO is appealable under 28 U.S.C. § 1292(a)(1) when it carries "the hallmarks of a preliminary injunction." *Dep't of Educ.*, 145 S. Ct. at 968. Indeed, this court too has made clear it "treat[s] a TRO as a preliminary injunction 'where an adversary hearing has been held, and the court's basis for issuing the order [is] strongly challenged.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 762 (9th Cir. 2018) (quotation omitted).

The district court's TRO in this case has the "practical effect" of a preliminary injunction and it is thus appealable. *Abbott v. Perez*, 585 U.S. 579, 594 (2018) (citation omitted). The Supreme Court has recognized that such "practical effects" include whether the challenged TRO might have "serious, perhaps irreparable, consequence[s]." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981) (internal quotation marks omitted). Another relevant consideration is whether the challenged TRO can be "'effectually challenged' only by immediate appeal." *Id.* (citation omitted); *see also Sampson*, 415 U.S. at 86 n.58 (noting that "the possibility of drastic consequences which cannot later be corrected" is a relevant factor (quoting *Pan Am. World Airways, Inc. v. Flight Eng'rs' Int'l Ass'n*, 306 F.2d 840, 843 (2d Cir. 1962))); *Dep't of Educ.*, 145 S. Ct. at 968.

3

The TRO here exhibits the "hallmarks" and "practical effect" of a preliminary injunction. *Dep't of Educ.*, 145 S. Ct. at 968; *Abbott*, 585 U.S. at 594. To comply with the TRO, the federal government must disburse taxpayer funds, directly impacting the U.S. Treasury and necessarily interfering with the Executive Branch's discretionary administration of ORR funds as allocated by Congress. This will have "serious, perhaps irreparable, consequence[s]," *Carson*, 450 U.S. at 84, because the disbursed funds will be difficult or impossible to recover.[1] Such a "practical effect" is characteristic of mandatory preliminary injunctive relief, not a temporary restraint. *Abbott*, 585 U.S. at 594. And the effect is practically indistinguishable from the effects of the TRO that the Supreme Court held earlier this month constituted an "appealable preliminary injunction." *Dep't of Educ.*, 145 S. Ct. at 968 (construing as an appealable preliminary injunction an order that "enjoin[ed] the Government from terminating various education-related grants" and "require[d] the Government to pay out past-due grant obligations and to continue paying obligations as they accrue").

---

[1]  Underscoring the permanent and irreparable harm to the government from the disbursement of the funds at issue, the district court refused to set a bond under Rule 65(c) of the Federal Rules of Civil Procedure. Fed R. Civ. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order *only if* the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." (emphasis added)).

4

In addition to being on all fours with the TRO that the Supreme Court construed as a preliminary injunction in *Department of Education*, the TRO here also satisfies the sufficient condition articulated by this court in *East Bay*. 932 F.3d at 762 ("We treat a TRO as a preliminary injunction where an adversary hearing has been held, and the court's basis for issuing the order [is] strongly challenged." (internal quotation marks and citation omitted)). The parties had an opportunity to be heard, and the district court issued the TRO based on briefing. *See id.* at 763 (citing the appealing party's opportunity to brief and be heard as an important factor supporting appealability). And "the [district] court's basis for issuing the order [is] strongly challenged" because it likely lacked jurisdiction for the same reasons the Supreme Court identified earlier this month in *Department of Education*. *See* 145 S. Ct. at 968.

The trajectory of that case may sound familiar. There, a group of States brought an APA challenge to the cancellation of several federal grants. *See id.* A district court granted a TRO and effectively required the government to pay out past-due grant obligations. *Id.* The government appealed and moved for a stay pending appeal, which was denied, and the government then filed an application with the Supreme Court to vacate the TRO. *Id.* The Supreme Court held that the government was likely to succeed in showing that the district court lacked jurisdiction to order the payment of money under the APA. *Id.* The Court explained that "the APA's

5

limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money'" as the district court had ordered the government to do, and that "the Tucker Act grants the Court of Federal Claims jurisdiction over [such] suits." *Id.* (citation omitted). The Supreme Court thus stayed the district court's TRO.

That analysis should have controlled this case. As in *Department of Education*, Plaintiffs here proceeded under the APA seeking monetary relief, and the district court issued an order "to enforce a contractual obligation to pay money." *Id.* (quotation omitted). But the Supreme Court made crystal clear its skepticism about the federal district court's jurisdiction over claims like this one: claims that seek "to order the payment of money under the APA" or "enforce a contractual obligation to pay money." *Id.* (quotation marks and citation omitted). "Instead, the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'" *Id.* (quoting 28 U.S.C. § 1491(a)(1)). Thus, "the Government is likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA." *Id.* (citation omitted).

*Department of Education* cannot be distinguished on the ground that the Plaintiffs here instead seek forward-looking injunctive relief to enforce the provisions of the TVPRA and Foundational Rule rather than monetary relief for

6

past-due contractual breaches. The district court in *Department of Education* did not *expressly* require the payment of past-due amounts and instead required the restoration of the status quo. *See California v. Dep't of Educ.*, No. CV 25-10548-MJJ, 2025 WL 760825, at *5 (D. Mass. Mar. 10, 2025). And the Supreme Court understood the district court's order to "enjoin[] the Government from terminating various … grants." *Department of Education*, 145 S. Ct. at 968. The district court in this case styled its relief in much the same way, "enjoin[ing]" the defendants "from withdrawing the services or funds provided by the [ORR]." Because Plaintiffs' lawsuit still fundamentally seeks "to enforce a contractual obligation to pay money," it cannot be brought under the APA—just as in *Department of Education*.

That the TRO expires in just a few days, on April 30, 2025, did not provide a valid basis for denying en banc review. That timing rationale will always exist in every case involving a preliminary injunction masquerading as a TRO—including the *Department of Education* case where the Supreme Court recently stayed the district court's TRO. *See id.* at 970 (Jackson, J., dissenting) (reasoning that the Court should have denied review because "[t]he TRO expires in three days"). Ultimately, this case merited en banc review for the same reason the Supreme Court acted in *Department of Education*. The limited time period of the TRO does not change the reality that the district court here acted without jurisdiction. And "[a]ny time [the government] is enjoined by a court from effectuating statutes enacted by

7

representatives of its people, it suffers a form of irreparable injury." *Maryland v King*, 567 U. S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted). If the limited duration of a TRO was always a reason to avoid en banc review, district courts could routinely interfere with executive actions for up to 28 days notwithstanding their complete lack of jurisdiction. We should have taken this case en banc to reinforce that is not acceptable.

* * *

Our court should have taken this case en banc to fix the motions panel's errors in dismissing this appeal and denying the government's motion for a stay. The ink is barely dry on the Supreme Court's decision in *Department of Education*, yet our court has disregarded it in two respects—ignoring its conclusion controlling our jurisdiction to hear appeals of certain TROs, as well as its conclusion governing a district court's jurisdiction to interfere with government contracts. It is unfortunate that we are leaving this to the Supreme Court to (once again) deal with, instead of appropriately addressing it ourselves en banc.