YAAKOV M. ROTH
Acting Assistant Attorney General
WILLIAM C. SILVIS
Assistant Director
MICHAEL A. CELONE
CHRISTINA PARASCANDOLA
KATELYN MASETTA-ALVAREZ
JONATHAN K. ROSS
Senior Litigation Counsel
ZACHARY A. CARDIN
Trial Attorney

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 514-0120
Katelyn.Masetta.Alvarez@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, *ET AL.*,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *ET AL.*,

Defendants.

Case No. 3:25-cv-02847-AMO

**DEFENDANTS' MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL**

Hearing Date: June 12, 2025
Time: 2:00 p.m.
Location: Courtroom 10

**DEFENDANTS' NOTICE OF MOTION AND MOTION**
**TO STAY PRELIMINARY INJUNCTION PENDING APPEAL**

PLEASE TAKE NOTICE that on June 12, 2025, at 2:00 p.m., or as soon thereafter as counsel may be heard, in the United States District Court for the Northern District of California, Courtroom 10, 19th Floor, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants United States Department of Health and Human Services, Office of Refugee Resettlement, and Department of the Interior will and hereby do move to stay the Order Granting Plaintiffs' Motion for Preliminary Injunction, ECF No. 87.

This motion is based upon this Notice of Motion, the accompanying memorandum of points and authorities, the pleadings and papers on file in this action, oral argument of counsel, and any other matters properly before the Court.

The basis for this motion is that the U.S. Supreme Court's decision in *Department of Education v. California*, 604 U.S. ----, 145 S. Ct. 966 (2025), is indistinguishable from and forecloses the claims in the instant action—as ten judges of the U.S. Court of Appeals for the Ninth Circuit recognized. Plaintiffs' claims are also unreviewable because Plaintiffs seek review of an agency action that is committed to agency discretion by law. Additionally, absent a stay the Government will suffer irreparable injury in that the Court has ordered the Government to pay money that it will not be able to recoup, and the balance of equities favor the Government.

DATED: May 5, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

WILLIAM C. SILVIS
Assistant Director

CHRISTINA PARASCANDOLA
JONATHAN K. ROSS
MICHAEL A. CELONE
Senior Litigation Counsel

ZACHARY A. CARDIN
Trial Attorney

/s/ Katelyn Masetta-Alvarez
KATELYN MASETTA-ALVAREZ
Senior Litigation Counsel
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 514-0120
Katelyn.Masetta.Alvarez@usdoj.gov

Attorneys for Defendants

**INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 62, Defendants move for a stay pending appeal of the Court's April 29, 2025 Order granting Plaintiffs' Motion for a Preliminary Injunction ("PI") (ECF No. 87) because the Government will likely prevail on the merits of its appeal and will suffer irreparable harm absent a stay, and because the PI is detrimental to the public interest.

The Supreme Court's recent decision in *Department of Education v. California*, 604 U.S. ----, 145 S. Ct. 966 (2025), forecloses Plaintiffs' Administrative Procedure Act ("APA") claims for continued discretionary payments. Although this Court discounted the Government's reliance on *Department of Education*, ten Circuit Judges recently explained that *Department of Education* is "indistinguishable" from this case and presents "the same issues." *Cmty. Legal Servs. in E. Palo Alto v. United States Dep't of Health & Hum. Servs.*, No. 25-2358, 2025 WL 1203167, at *1 (9th Cir. Apr. 25, 2025) (Bumatay and VanDyke, JJ., dissenting from the denial of reh'g en banc, joined by eight judges). Contrary to this Court's finding that *Department of Education* does not apply because the district court there "require[d] 'the Government to pay out past-due grant obligations and to continue paying obligations as they accrue,'" ECF No. 87 at 14, the order issued in that case did not explicitly require such payments. *California v. U.S. Dep't of Educ.*, No. CV 25-10548-MJJ, 2025 WL 760825, at *5 (D. Mass. Mar. 10, 2025). Rather, continued payments were simply an effect of the order—just like the Government will likely have to continue to pay obligations as they accrue pursuant to the PI here, even though the PI does not explicitly require the Government to make such payments. *Cmty. Legal Servs. in E. Palo Alto*, 2025 WL 1203167, at *3. Further, the Government's lack of direct privity with Plaintiffs does not change the analysis as to whether the United States waived sovereign immunity under the APA. And Congress's choice to limit Plaintiffs' ability to pursue relief under the Tucker Act, given that they are not prime contractors, does not undermine the exclusivity of the Tucker Act's scheme.

In addition, the irreparable harm that the Government will suffer absent a stay will be detrimental to the public interest and far outweighs any harm to Plaintiffs. Injunctions irreparably injure our democratic system when they forbid the Government from effectuating policies nationwide, especially when they undermine the Executive Branch's constitutional and statutory authority over immigration.

Moreover, the PI requires the Government to disburse potentially hundreds of millions of dollars of taxpayer funds that it will never recover, even if it prevails on its argument that the Court lacks jurisdiction to issue such relief, because the Court declined to require a security bond under Rule 65(c), leaving the Government with no avenue to recover unlawfully disbursed funds.

In comparison to the speculative and reparable harm Plaintiffs face, the balance of equities favors the Government. In issuing the PI, this Court found that Plaintiffs have standing not because they lost funding, but because the Government's withdrawal of funding "frustrates" the organizations' missions and requires them to divert resources. ECF No. 87 at 8-9. Using this analysis, the public's interest in protecting the public fisc and the Executive Branch's authority over immigration policy dwarfs the Plaintiffs' interest in fulfilling their missions.

## BACKGROUND

In its April 1, 2025 TRO, the Court enjoined Defendants from "withdrawing the services or funds provided by the United States Department of Health and Human Services ("HHS") Office of Refugee Resettlement ("ORR") as of March 20, 2025, under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 8 U.S.C. § 1232(c)(5), and ORR Unaccompanied Children Program Foundational Rule (codified at 45 C.F.R. § 410.1309(a)(4)) ("Foundational Rule"), particularly ORR's provision of funds for direct legal representation services to unaccompanied children." TRO, 7. The TRO became effective on April 2, 2025, at 8:00 a.m. PT, through April 16, 2025, at 7:59 a.m. PT. Id.

On April 4, Defendants filed a motion to dissolve the TRO, citing the Supreme Court's recent decision in *Department of Education*, 145 S. Ct. at 966, which rejected a similar attempt to use the APA to compel continued discretionary payments. ECF No. 38. On April 8, Defendants also filed a motion for recusal and reassignment of the case under 28 U.S.C. § 455(a) and (b)(1). ECF No. 47. On April 10, the Court *sua sponte* extended the TRO until April 30, 2025. ECF No. 48. On April 11, Defendants appealed from the Court's TRO, as extended. ECF No. 56. The same day, Defendants also opposed Plaintiffs' motion for a PI, arguing that Plaintiffs could not show that they were likely to succeed on the merits, that Plaintiffs had not demonstrated irreparable harm, and that the balance of equities weighed in the Government's favor. ECF No. 55.

A panel of the Ninth Circuit subsequently determined that the TRO was not appealable and dismissed the Government's appeal, *see Cmty. Legal Services in East Palo Alto v. Dept. Health & Hum. Servs.*, No. 25-2358, Order (9th Cir. Apr. 18, 2025), rendering the Government's motion for a stay pending appeal (ECF 57) moot. The Government immediately petitioned for a rehearing en banc. On April 25, 2025, the Government's petition for rehearing en banc was denied, with Circuit Judges Vandyke and Bumatay dissenting and eight circuit judges joining the dissent. In a published decision, the dissent stated that the instant case was "indistinguishable" from the recent Supreme Court decision in *Department of Education* regarding the appealability of a TRO and the jurisdictional bars to APA review in this case. *Cmty. Legal Servs. in E. Palo Alto v. United States Dep't of Health & Hum. Servs.*, No. 25-2358, --- F. 4th ---, 2025 WL 1203167, at *1 (9th Cir. Apr. 25, 2025).

**ARGUMENT**

Courts consider four factors in assessing a motion for stay pending appeal: (1) the movant's likelihood of prevailing on the merits of the appeal, (2) whether the movant will suffer irreparable harm absent a stay, (3) the harm that other parties will suffer if a stay is granted, and (4) the public interest. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Humane Soc'y of U.S. v. Gutierrez*, 523 F.3d 990, 991 (9th Cir. 2008). When the government is a party, its interests and the public interest "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Because the Government will very likely prevail on the merits and will suffer irreparable harm absent a stay, this Court should immediately stay the PI pending the Government's appeal.

**A. The Supreme Court's decision in *Department of Education* is "indistinguishable" from this case and forecloses Plaintiffs' APA claims.**

The Court should stay the PI because the Supreme Court's recent decision in *Department of Education*, 145 S. Ct. 966, squarely forecloses Plaintiffs' APA claim for continued discretionary payments. Ten Circuit Judges on the Ninth Circuit recently concluded that the Supreme Court's decision *in Department of Education* is "indistinguishable" from this case and presents "the same issues." *Cmty. Legal Servs.*, 2025 WL 1203167, at *1 (Bumatay and VanDyke, JJ., dissenting, with eight Circuit Judges joining). Circuit Judges Bumatay and VanDyke explained that this Court likely lacks jurisdiction to order the relief Plaintiffs seek, because the APA does not waive sovereign immunity over claims for monetary

damages like Plaintiffs' claims here. *Id.* Like the plaintiffs in *Department of Education*, Plaintiffs' claims here seek monetary relief at their core, even though the claims are styled to request injunctive and declaratory relief. At bottom, they asked the Court to issue an order that forces HHS to renegotiate a contract with Acacia so that they can obtain funding. *See* Pls' Mot. to Enforce, ECF No. 53 (arguing that Defendants were not complying with the TRO because Defendants told Acacia to close out its contract); *see also* Compl., ECF No. 1, ¶ 37 (arguing that the Government's "Cancellation Order" of the Acacia contract "severely limits Plaintiffs in performing their respective missions to provide legal representation the law requires be made available to unaccompanied children."); *id.* ¶ 131; *id.* ¶ 143. That is precisely the type of monetary relief the APA does not permit. Thus, the Supreme Court's analysis in *Department of Education* "should have controlled this case." *Cmty. Legal Servs.*, 2025 WL 1203167, at *3.

The dissenting Circuit Judges also rightly rejected this Court's analysis distinguishing *Department of Education* on the ground that the Plaintiffs here seek forward-looking injunctive relief to enforce the provisions of the TVPRA and Foundational Rule rather than monetary relief for past-due contractual breaches.

> [T]he district court in *Department of Education* did not *expressly* require the payment of past-due amounts and instead required the restoration of the status quo. *California v. Dep't of Educ.*, No. CV 25-10548-MJJ, ––– F.Supp.3d ––––, ––––, 2025 WL 760825, at *5 (D. Mass. Mar. 10, 2025). Rather, the Supreme Court understood the district court's order to 'enjoin[ ] the Government from terminating various ... grants.' *Department of Education*, 145 S. Ct. at 968. The district court in this case styled its relief in much the same way, 'enjoin[ing]" the defendants from withdrawing the services or funds provided by the [ORR].' Because Plaintiffs' lawsuit still fundamentally seeks 'to enforce a contractual obligation to pay money,' it cannot be brought under the APA—just as in *Department of Education.*

*Cmty. Legal Servs.*, 2025 WL 1203167, at *3.

Further, that Plaintiffs do not have direct privity with the Government does not change the analysis as to whether the APA waives sovereign immunity over Plaintiffs' claims. Defendants' primary argument is that the Court lacks jurisdiction over Plaintiffs' APA claims because the APA does not waive sovereign immunity over claims for money damages. In other words, regardless of whether the Tucker Act precludes Plaintiffs' APA claims, this Court must determine whether the APA waives sovereign immunity over Plaintiffs' claims. The APA waives sovereign immunity "only if three conditions are met: (1) [the] claims

are not for money damages, (2) an adequate remedy for [the] claims is not available elsewhere, and (3) [the] claims do not seek relief expressly or impliedly forbidden by another statute." *Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 645 (9th Cir. 1998). Even if a party does not have an "adequate remedy elsewhere," the district court must still determine whether its claims are not for money damages or forbidden by another statute. *Id.*

Because Plaintiffs are essentially seeking financial compensation as their relief—irrespective of how they label their claims—this Court lacks jurisdiction over their claims, regardless of whether they have an adequate remedy under the Tucker Act. *Id.* Plaintiffs do not ask the Court to order the Government to provide or arrange for the legal services of UAC. Rather, Plaintiffs ask the Court for something else: an order for the Government to pay money—either to keep paying money to a specific Government contractor (Acacia), to whom Plaintiffs are subcontractors, or to not stop paying money to the contractor, which is the same thing. *See* ECF No. 1 at 39–40 (Prayer for Relief) (asking the Court to order Defendants be "required to continue funding" and "enjoin[ing] Defendants from ceasing to fund" contractor Acacia).

Finally, that Plaintiffs might not be able to obtain full relief in the Court of Federal Claims is irrelevant. Where relief is expressly or impliedly forbidden by another statute, the APA does not waive sovereign immunity. 5 U.S.C. § 702. And the Tucker Act forbids subcontractors from proceeding directly against the government—instead, they may sue the government over contract disputes only "through and in right of the prime contractor's contract, and with the prime contractor's consent and cooperation." *Erickson Air Crane Co. of Wash., Inc. v. United States*, 731 F.2d 810, 813 (Fed. Cir. 1984). Plaintiffs did not do so here. That does not mean that they can evade the Tucker Act—and its limitations on relief for subcontractors—by instead suing under the APA.

**B. The Government will suffer irreparable injury absent a stay, and the balance of equities favor the Government.**

Further, the injunction imposes irreparable harm on the Government and public, whose interests merge here. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Whenever a district court issues a universal injunction against the Executive Branch, the United States suffers a form of irreparable harm. The President is "a representative of the people" and holds "the mandate of the people to exercise his executive power." *Myers v. United States* 272 U.S. 52, 123 (1926). The Government has a substantial interest in

carrying out the President's policies. Courts play an important role in adjudicating the lawfulness of those policies in justiciable cases, but they irreparably injure our democratic system when they forbid the Government from effectuating those policies against anyone anywhere in the Nation. *Cf. Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). And those concerns are heightened when, as here, the injunction undermines the Executive Branch's constitutional and statutory authority over immigration and the admission of aliens, and thereby constitutes an "unwarranted judicial interference in the conduct of foreign policy." *Kiobel v. Royal Dutch Petroleum*, 569 U.S. 108, 116 (2013). This overreach risks disrupting not only domestic agency discretion but also international diplomatic efforts involving child welfare and cross-border migration.

And even separate from the Government's sovereign interests, the PI requires the Government to disburse public funds that will be spent and never recovered. Again, this case mirrors *Department of Education*, in which the district court entered a stay pending appeal. "No grantee 'promised to return withdrawn funds should its grant termination be reinstated,' and the District Court declined to impose bond." *Dep't of Educ.*, 2025 WL 1008354, at *1. The Government is therefore "unlikely to recover the grant funds once they are disbursed." *Id.*

The balance of equities certainly favors the Government. This Court found that Plaintiffs have standing not necessarily because they lost funding, but because the Government's withdrawal of funding "frustrates" the organizations' missions. If they indeed seek relief based on their mission and not based on their finances—which is key to their argument that they do not necessarily seek monetary damages—then the public's interest in protecting the public fisc and the Executive Branch's control over nationwide immigration policy easily outweighs Plaintiffs' interest in maintaining mission-driven programs that Congress has never mandated or funded as a matter of right.

## CONCLUSION

Because the Government is likely to succeed on the merits and will suffer irreparable harm absent a stay, this Court should stay the PI pending the Government's appeal.

DATED: May 5, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

WILLIAM C. SILVIS
Assistant Director

CHRISTINA PARASCANDOLA
JONATHAN K. ROSS
MICHAEL A. CELONE
Senior Litigation Counsel

ZACHARY A. CARDIN
Trial Attorney

/s/ Katelyn Masetta-Alvarez
KATELYN MASETTA-ALVAREZ
Senior Litigation Counsel
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 514-0120
Katelyn.Masetta.Alvarez@usdoj.gov

Attorneys for Defendants

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants certifies that this brief contains 6 pages, which complies with Local Rule 7-3(a).

Respectfully submitted,

*/s/ Katelyn Masetta-Alvarez*
KATELYN MASETTA-ALVAREZ
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division