**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 14 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| COMMUNITY LEGAL SERVICES IN EAST PALO ALTO; SOCIAL JUSTICE COLLABORATIVE; AMICA CENTER FOR IMMIGRANT RIGHTS; ESTRELLA DEL PASO; FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT; GALVESTON-HOUSTON IMMIGRANT REPRESENTATION PROJECT; IMMIGRANT DEFENDERS LAW CENTER; NATIONAL IMMIGRANT JUSTICE CENTER; NORTHWEST IMMIGRANT RIGHTS PROJECT; ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK; VERMONT ASYLUM ASSISTANCE PROJECT, <br><br> Plaintiffs - Appellees, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; UNITED STATES DEPARTMENT OF THE INTERIOR; OFFICE OF REFUGEE RESETTLEMENT, <br><br> Defendants - Appellants. | No. 25-2808 <br><br> D.C. No. 3:25-cv-02847-AMO <br><br><br> ORDER |

Appeal from the United States District Court
for the Northern District of California
Araceli Martinez-Olguin, District Judge, Presiding

Before: William A. Fletcher, Consuelo M. Callahan, and Lucy H. Koh, Circuit Judges.

Order by Judge Koh
Dissent by Judge Callahan

KOH, Circuit Judge:

To protect unaccompanied children in immigration proceedings from the risks of "mistreatment, exploitation, and trafficking," the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 8 U.S.C. § 1232, directs that the Department of Health and Human Services ("HHS") "shall ensure, to the greatest extent practicable," that unaccompanied children in immigration custody receive legal representation. *Id.* § 1232(c)(5). To carry out this obligation, the Office of Refugee Resettlement ("ORR") promulgated the "Foundational Rule" which states that "ORR shall fund legal service providers to provide direct immigration legal representation for certain unaccompanied children, subject to ORR's discretion and available appropriations." 45 C.F.R. § 410.1309(a)(4). Since 2012, and as recently as March 15, 2025, Congress has consistently appropriated funds to ensure compliance with the TVPRA's statutory mandate. *See* Full-Year Continuing Appropriations and Extensions Act, 2025, Pub. L. No. 119-4, Div. A Tit. I Sec. 1101(8), 139 Stat. 9, 11 (2025); Further Consolidated Appropriations Act, 2024, Pub. L. 118-47, Div. D Tit. I, 138 Stat. 460, 664–665 (2024); Consolidated Appropriations Act, 2012, Pub. L. 112-74, Div. F, Tit. II, 125 Stat.

786, 1077 (2011); S. Rep. 118-84, at 169. In this matter, the district court preliminarily enjoined Defendants HHS, ORR and the Department of the Interior ("DOI") (collectively, the "Government") from withdrawing government-provided funding for counsel to represent unaccompanied children in immigration proceedings. The Government appealed the issuance of the preliminary injunction and now moves to stay the injunction while this appeal is pending.

When deciding a motion for a stay pending appeal, the court considers "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). "The first two factors . . . are the most critical," and the court will address the last two factors only once the applicant has satisfied the first two factors. *Id.* at 434–35. "The party requesting a stay bears the burden of showing that the circumstances justify" issuance of the stay. *Id.* at 433–34.

We conclude the Government has shown neither a likelihood of success on the merits nor irreparable injury absent a stay and accordingly deny the

Government's motion.[1]

**I.**

The Government offers two reasons why it believes it is likely to succeed on the merits. First, the Government argues the Tucker Act, 28 U.S.C. § 1491, "impliedly forbids" plaintiffs' Administrative Procedure Act ("APA") claims and thus the district court lacked jurisdiction. Second, the Government argues that its decision to completely defund direct legal services for unaccompanied children constitutes an unreviewable exercise of agency discretion. As explained below, the Government has not made "a strong showing that [it] is likely to succeed on the merits" of either argument. *Nken*, 556 U.S. at 434 (quoting *Hilton*, 481 U.S. at 776).

**A.**

The APA "embodies [a] basic presumption of judicial review to one 'suffering legal wrong because of agency action.'" *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 140–41 (1967) (quoting 5 U.S.C. § 702). The APA generally waives sovereign immunity and permits a challenge to agency action unless "any other statute that grants consent to suit expressly or impliedly forbids the relief which is

---

[1] Because the Government failed to satisfy the first two stay factors, we need not reach the two remaining stay factors. *See Nken*, 556 U.S. at 434–35.

4

sought." 5 U.S.C. § 702.[2] The Government argues that the Tucker Act "impliedly forbids" plaintiffs' suit because plaintiffs' claims sound in contract and accordingly can only be brought in the Court of Federal Claims (if at all). This argument is unlikely to succeed for two reasons.

*First*, contrary to the Government's argument, plaintiffs' APA claims are based on the Government's statutory and regulatory violations, not any government contract. In fact, no contract exists between plaintiffs and the Government. Instead, the Government has entered into a nationwide agreement with an organization called Acacia, who in turn subcontracts with legal service providers such as plaintiffs.

"[T]he Tucker Act . . . 'impliedly forbid[s]' an APA action seeking injunctive and declaratory relief only if that action is a 'disguised' breach-of-contract claim." *United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1026 (9th Cir. 2023) (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982)). In making this determination, we "look[] to (1) 'the source of the rights upon which the plaintiff bases its claims' and (2) 'the type of relief sought (or appropriate).'" *Id.* (quoting *Doe v. Tenet*, 329 F.3d 1135, 1141 (9th Cir. 2003)).

---

[2] The APA also does not apply to suits that either (a) seek "money damages," 5 U.S.C. § 702; or (b) where "other adequate remed[ies]" to review the agency action exist, *id.* § 704. On appeal, the Government does not argue that either of these limitations on APA review apply here.

"If rights and remedies are *statutorily* or *constitutionally* based, then district courts have jurisdiction; if rights and remedies are *contractually* based then only the Court of Federal Claims does . . . ." *Id.* (emphasis in original); *see also Ferreiro v. United States*, 501 F.3d 1349, 1353 n.3 (Fed. Cir. 2007) ("An order compelling the government to follow its regulations is equitable in nature and is beyond the jurisdiction of the Court of Federal Claims.").

Here, plaintiffs seek to enforce compliance with statutes and regulations, not any government contract. The TVPRA provides that the Government "*shall ensure*, to the greatest extent practicable . . . that all unaccompanied alien children . . . have counsel to represent them in legal proceedings or matters and protect them from mistreatment, exploitation, and trafficking." 8 U.S.C. § 1232(c)(5) (emphasis added). The Foundational Rule states that "ORR *shall* fund legal service providers to provide direct immigration legal representation for certain unaccompanied children, subject to ORR's discretion and available appropriations." 45 C.F.R. § 410.1309(a)(4) (emphasis added). Seeking to ensure compliance with statutory and regulatory commands is a matter beyond the scope of the Tucker Act's exclusive jurisdiction.

In evaluating the merits, the district court found plaintiffs were likely to succeed in showing a violation of both of these provisions. Congress has appropriated substantial funds specifically to carry out the TVPRA for over a

decade and as recently as 2025. *See, e.g.*, Full-Year Continuing Appropriations and Extensions Act, 2025, Pub. L. No. 119-4, Div. A Tit. I Sec. 1101(8), 139 Stat. 9, 11 (2025); Further Consolidated Appropriations Act, 2024, Pub. L. 118-47, Div. D Tit. I, 138 Stat. 460, 664–665 (2024). The district court found that the Government elected to withhold all congressionally authorized funding for direct legal representation, even though such funding was necessary to ensure all unaccompanied children remained represented. It was "undisputed that appropriations for direct representation remain available," and that the Government had "evidenced no effort to ensure pro bono counsel." Indeed, the district court found the Government made its decision "with no supplemental plan to ensure unaccompanied children have legal counsel" at all, let alone "to the greatest extent practicable." On appeal, the Government contests the district court's jurisdiction but does not dispute any of the aforementioned findings. Plaintiffs accordingly are likely to establish the requisite violations of law to support their APA claims irrespective of any contractual violation.

*Second*, as the Government concedes, subcontractors such as plaintiffs do not even have the right to sue under the Tucker Act. The Tucker Act provides the Court of Federal Claims with jurisdiction to hear claims based "upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). Consistent with the statute's plain text, "[t]o maintain a cause of action pursuant to the Tucker

Act that is based on a contract, the contract must be between the plaintiff and the government." *Cienega Gardens v. United States*, 194 F.3d 1231, 1239 (Fed. Cir. 1998) (quoting *Ransom v. United States*, 900 F.2d 242, 244 (Fed. Cir. 1990)). Subcontractors, who have not entered into contracts with the Government, generally have no right to sue under the Tucker Act, and the Court of Federal Claims has no jurisdiction to hear their suit. *See id.*; *Erickson Air Crane Co. of Wash., Inc. v. United States*, 731 F.2d 810, 813 (Fed. Cir. 1984).

The Government concedes (and indeed affirmatively argues) that the Court of Federal Claims lacks jurisdiction to hear plaintiffs' claims because "it is 'a hornbook rule that, under ordinary government prime contracts, subcontractors do not have standing to sue the government under the Tucker Act.'" But the Government nonetheless argues the Tucker Act "impliedly forbids" plaintiffs' APA claims because "subcontractors have *fewer* legal rights than prime contractors." This argument lacks merit.

The Tucker Act's "exclusive jurisdiction" has been construed "to impliedly forbid contract claims against the Government from being brought in district court under the waiver in the APA." *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1106 (D.C. Cir. 2022) (cleaned up) (quoting *Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 618–19 (D.C. Cir. 2017)). But "[t]here cannot be exclusive jurisdiction under the Tucker Act if there is no jurisdiction under the

8

Tucker Act." *Tootle v. Sec'y of Navy*, 446 F.3d 167, 177 (D.C. Cir. 2006). For this reason, the D.C. Circuit has "categorically reject[ed] the suggestion that a federal district court can be deprived of jurisdiction by the Tucker Act when no jurisdiction lies in the Court of Federal Claims." *Id.* at 176; *see also Crowley*, 38 F.4th at 1109 ("Because a plaintiff could not bring this type of tort action in [the Court of Federal Claims] in the first place, that Court would not have exclusive jurisdiction of them.").

The result requested by the Government would mean that no court has jurisdiction to hear plaintiffs' claims. Not only is this result contrary to common sense, but it also conflicts with the "strong presumption favoring judicial review of administrative action" that is embodied in the APA. *Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480, 486 (2015) (internal quotation marks omitted); *see Abbott Lab'ys*, 387 U.S. at 140–41.

The Supreme Court's recent decision in *Department of Education v. California*, 145 S. Ct. 966 (2025), does not change this conclusion. *Department of Education* involved a claim to enforce grant agreements that the plaintiffs had entered into directly with the government and thus "to enforce a contractual obligation to pay money." *Id.* at 968 (citation omitted). The Supreme Court held that this claim fell within the Tucker Act's grant of exclusive jurisdiction and accordingly suggested that the suit must be brought in the Court of Federal Claims.

9

*See id.* ("But, as we have recognized, the APA's limited waiver of immunity does not extend to orders to enforce a contractual obligation to pay money along the lines of what the District Court ordered here. Instead, the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on any express or implied contract with the United States." (internal citations and quotation marks omitted)). *Department of Education* has no application where, as here, the claims sound in statute, rather than contract.

Accordingly, the Government has not shown a likelihood of success on its Tucker Act argument.

**B.**

The APA does not apply where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). This exception has been construed "narrowly" to apply only in "those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 23 (2018) (quoting *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993)). The Supreme Court has identified certain categories of agency decisions that have traditionally been regarded as committed to agency discretion and are, accordingly, "presumptively unreviewable." *Heckler v. Chaney*, 470 U.S. 821, 832–33 (1985) (holding agency decision whether to initiate an enforcement action was

10

presumptively unreviewable). Even where an action falls within the class of actions traditionally committed to agency discretion, "judicial review is available where there are 'meaningful standards to cabin the agency's otherwise plenary discretion.'" *Physicians for Soc. Resp. v. Wheeler*, 956 F.3d 634, 643 (D.C. Cir. 2020) (quoting *Drake v. FAA*, 291 F.3d 59, 71 (D.C. Cir. 2002)).

The Government argues that the decision to cancel the program is committed to agency discretion by law. Its argument is based entirely upon the Supreme Court's decision in *Lincoln v. Vigil*, 508 U.S. 182 (1993). In that case, the Indian Health Service (the "Service") was provided with a single lump-sum appropriation that covered all of the agency's activities. *Id.* at 185. The Service was authorized, but not required, to "'expend such moneys as Congress may from time to time appropriate, for the benefit, care, and assistance of the Indians,' for the 'relief of distress and conservation of health,'" including on "Indian mental-health care." *Id.* at 184 (quoting 25 U.S.C. § 13). The Service had historically exercised this discretion to establish the "Indian Children's Program," which provided a variety of medical services to Indian children, but subsequently decided to cancel that program. *Id.* at 184–85. Plaintiffs brought an APA claim challenging the Service's decision not to fund the program. *Id.*

The Supreme Court held that the Service's "allocation of funds from a lump-sum appropriation is [a type of] administrative decision traditionally regarded as

committed to agency discretion" and was, accordingly, presumptively unreviewable. *Id.* at 192. The Court explained that "allocation of funds from a lump-sum appropriation requires 'a complicated balancing of a number of factors which are peculiarly within [agency] expertise.'" *Id.* at 193 (quoting *Heckler*, 470 U.S. at 831). Because the relevant statutes did "not so much as mention the Program" that was cancelled, let alone require it, the Court found "[t]he decision to terminate the Program was committed to the Service's discretion" by law. *Id.* at 193–94.

The rule announced in *Lincoln* has no application where, as here, the agency fails to carry out a program that is *required* by statute. *Lincoln* made clear that "an agency is not free simply to disregard statutory responsibilities" and "Congress may always circumscribe agency discretion to allocate resources by putting restrictions in the operative statutes." *Id.* at 193; *see also Los Coyotes Band of Cahuilla & Cupeno Indians v. Jewell*, 729 F.3d 1025, 1038 (9th Cir. 2013) (noting that *Lincoln* applies only "absent some statutory constraint on the agency's discretion"). Where Congress establishes a mandatory program, in the sense that "Congress directs (rather than merely authorizes) the agency to conduct" certain activities, the rule in *Lincoln* has no application. U.S. Gov't Accountability Off., GAO-16-464SP, *Principles of Federal Appropriations Law* 2-37 & n.40 (4th Ed. 2016); U.S. Gov't Accountability Off., GAO-17-797SP, *Principles of Federal*

*Appropriations Law* 3-30 (4th Ed. 2017 Rev.) ("When Congress appropriates money to implement a program, and implementation of the program is mandatory, the agency may not use the appropriated amounts to terminate the program."); *see, e.g.*, *Shawnee Tribe v. Mnuchin*, 984 F.3d 94, 100 (D.C. Cir. 2021) (explaining that where "Congress has 'circumscribe[d] agency discretion to allocate resources by putting restrictions in the operative statute[]'" there is "no presumption of non-reviewability" (quoting *Lincoln*, 508 U.S. at 193)); *Ramah Navajo Sch. Bd. v. Babbitt*, 87 F.3d 1338, 1347 (D.C. Cir. 1996) (distinguishing *Lincoln* where "Congress intended the [statute] to limit the Secretary's discretion in funding matters"). Rather, in such circumstances the Executive has no authority to withhold the funds appropriated by Congress or otherwise refuse to comply with the law. *See City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1232 (9th Cir. 2018) ("Aside from the power of veto, the President is without authority to thwart congressional will by canceling appropriations passed by Congress."); *In re Aiken Cnty.*, 725 F.3d 255, 266 (D.C. Cir. 2013) (Kavanaugh, J.) ("Prosecutorial discretion does not include the power to disregard other statutory obligations that apply to the Executive Branch, such as statutory requirements to issue rules, or to pay benefits, or to implement or administer statutory projects or programs." (internal citation omitted)); *see also* Memorandum from William H. Rehnquist, Assistant Attorney General, Office of Legal Counsel, to Edward L. Morgan,

13

Deputy Counsel to the President (Dec. 1, 1969) ("While there have been instances in the past in which the President has refused to spend funds appropriated by Congress for a particular purpose, we know of no such instance involving a statute which by its terms sought to require such expenditure.").

Here, the TVPRA provides that HHS "*shall ensure*, to the greatest extent practicable . . . , that all unaccompanied alien children . . . have counsel to represent them in legal proceedings." 8 U.S.C. § 1232(c)(5) (emphasis added); *see also id.* § 1232(c)(1) (HHS "*shall* establish policies and programs to *ensure* that unaccompanied alien children in the United States are protected from traffickers" (emphasis added)). This statute does not say that HHS "may" provide certain services, as was the case in *Lincoln*. Instead, the use of "shall" plainly imposes a mandatory duty on HHS to take steps to ensure "all" such children have counsel. *See Alabama v. Bozeman*, 533 U.S. 146, 153 (2001) ("The word 'shall' is ordinarily the language of command." (internal quotation marks and citation omitted)). Similarly, the Foundational Rule states that "ORR *shall* fund legal service providers to provide direct immigration legal representation for certain unaccompanied children, subject to ORR's discretion and available appropriations." 45 C.F.R. § 410.1309(a)(4) (emphasis added). These affirmative obligations stand in stark contrast with those at issue in *Lincoln*, where "no statute or regulation even mention[ed] the Program" that was cancelled, let alone required

14

that the Executive carry out the program. 508 U.S. at 190.

To be sure, HHS is only required to provide counsel "to the greatest extent practicable" and the Foundational Rule similarly grants the agency some discretion in the procurement of counsel for unaccompanied children, but that in no way defeats judicial review. Whatever discretion the agency may have in evaluating what "the greatest extent practicable" may be, this phrase certainly is not the same as "to no extent at all." *See Calvert Cliffs' Coordinating Comm., Inc. v. U. S. Atomic Energy Comm'n*, 449 F.2d 1109, 1114 (D.C. Cir. 1971) (explaining that the fact the agencies' statutory duties were "qualified by the phrase 'to the fullest extent possible'" did "not provide an escape hatch for footdragging agencies" and did "not make [the statute's] requirements somehow 'discretionary'"). APA Section 701(a)(2) has "never been thought to put all exercises of discretion beyond judicial review." *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1071 (9th Cir. 2015). To the contrary, "the APA itself commits final agency action to [judicial] review for 'abuse of discretion.'" *Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 720 (9th Cir. 2011) (quoting 5 U.S.C. § 706(a)(2)(A)). Review is prohibited only where "there is truly no law to apply." *Jajati v. U.S. Customs & Border Prot.*, 102 F.4th 1011, 1014 (9th Cir. 2024) (quoting *Perez Perez v. Wolf*, 943 F.3d 853, 861 (9th Cir. 2019)). And courts routinely find far less determinate language than that at issue here establishes a sufficient standard to permit review. *See, e.g., Citizens to*

*Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 411 (1971) (determination whether "no feasible and prudent alternative" existed was reviewable); *Pac. Nw. Generating Coop. v. Bonneville Power Admin.*, 596 F.3d 1065, 1075 (9th Cir. 2010) (requirement that agency act "consistent with sound business principles" provided meaningful standard for review); *City of Los Angeles v. U.S. Dep't of Com.*, 307 F.3d 859, 869 n.6 (9th Cir. 2002) (requirement that an agency Secretary "shall" act "if he considers it feasible" provided a meaningful standard for review). Accordingly, the Government has not shown a likelihood of success on this argument either.

## II.

An applicant for a stay pending appeal must show that a stay is necessary to avoid likely irreparable injury to the applicant while the appeal is pending. *See Nken*, 556 U.S. at 434. "[S]imply showing some possibility of irreparable injury" is insufficient. *Id.* (internal quotation marks omitted). Rather, "[t]he minimum threshold showing for a stay pending appeal requires that irreparable injury is likely to occur during the period before the appeal is likely to be decided." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020) (citing *Leiva-Perez v. Holder*, 640 F.3d 962, 968 (9th Cir. 2011)).

The Government has not met its irreparable injury burden. Despite waiting nearly a week to file this emergency motion to stay the preliminary injunction, the

Government provides no evidence to support its claims of irreparable injury. *Cf. Al Otro Lado*, 952 F.3d at 1007 (rejecting "a weak showing" of harm where the government had the opportunity to gather evidence in support of its claims). Rather, the Government asserts evidence is unnecessary in this case because the injunction requires the disbursement of taxpayer funds that may never be recovered, and the injunction harms the separation of powers. We disagree.

*First*, the Government has made no showing that dispersing congressionally appropriated funds for statutorily mandated purposes would cause irreparable harm in this case. Since 2012, and as recently as March 15, 2025, Congress has consistently appropriated funds to ensure compliance with the TVPRA's statutory mandate. *See, e.g.*, Full-Year Continuing Appropriations and Extensions Act, 2025, Pub. L. No. 119-4, Div. A Tit. I Sec. 1101(8), 139 Stat. 9, 11 (2025); Further Consolidated Appropriations Act, 2024, Pub. L. 118-47, Div. D Tit. I, 138 Stat. 460, 664–665 (2024); Consolidated Appropriations Act, 2012, Pub. L. 112-74, Div. F, Tit. II, 125 Stat. 786, 1077 (2011); S. Rep. 118-84, at 169. These funds are statutorily earmarked to carryout the TVPRA. Pursuant to the TVPRA, HHS "shall ensure, to the greatest extent practical . . . , that all unaccompanied alien children . . . have counsel to represent them in legal proceedings or matters and protect them from mistreatment, exploitation, and trafficking." 8 U.S.C. § 1232(c)(5). The President is required to spend these funds for the purpose of carrying out the

TVPRA and only for that purpose. *See* 31 U.S.C. § 1301(a) ("Appropriations shall be applied only to the objects for which the appropriations were made except as otherwise provided by law."); *City & Cnty. of San Francisco*, 897 F.3d at 1232 ("[T]he President does not have unilateral authority to refuse to spend the funds." (quoting *Aiken*, 725 F.3d at 261 n.1)). The district court concluded that the Government is likely now shirking a statutory obligation that has been in place for over a decade. The Government "cannot suffer harm from an injunction that merely ends an unlawful practice." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013). The Government has failed to demonstrate that spending congressionally appropriated funds as directed by Congress causes irreparable injury.

The Supreme Court's decision in *Department of Education* is not to the contrary. In assessing the risks of injury to the government there, the Supreme Court relied upon a declaration from a government official asserting the difficulties inherent in recovering disbursed funds under the specific grant agreements in that case. *See* 145 S. Ct. at 969 (citing App. To Application To Vacate Order 15a, 17a.). No such evidence has been presented here. To the contrary, the Government's motion fails to cite any evidence at all. Absent any showing from the Government, we cannot conclude that irreparable injury "is the more probable or likely outcome" here. *Al Otro Lado*, 952 F.3d at 1007 (quoting *Leiva-Perez*, 640

F.3d at 968).

*Second*, we reject the notion that the injunction's effect on the "separation of powers" qualifies as irreparable harm at the stay stage. *See Washington v. Trump*, 847 F.3d 1151, 1168 (9th Cir. 2017) ("To the extent that the Government claims that it has suffered an institutional injury by erosion of the separation of powers, that injury is not 'irreparable.' It may yet pursue and vindicate its interests in the full course of this litigation."); *see also E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 778 (9th Cir. 2018) (finding a separation of powers argument inadequate to demonstrate irreparable harm). In denying a motion to stay in another case, we concluded that the government had not established irreparable harm because "if we were to adopt the government's assertion that the irreparable harm standard is satisfied by the fact of executive action alone, no act of the executive branch asserted to be inconsistent with a legislative enactment could be the subject of a preliminary injunction. That cannot be so." *Doe #1 v. Trump*, 957 F.3d 1050, 1059 (9th Cir. 2020). The Government does not acknowledge this line of precedent, much less attempt to distinguish it.

**III.**

For the reasons set forth above, we deny the Government's request for a stay pending appeal.

FILED

MAY 14 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*Community Legal Services in East Palo Alto, et al. v. United States Department of Health and Human Services, et al.*, No. 25-2808

CALLAHAN, Circuit Judge, dissenting:

For the reasons provided in the dissent from rehearing en banc that I joined in the prior appeal in this case, I respectfully dissent. *See Cmty. Legal Servs. in E. Palo Alto v. United States Dep't of Health & Hum. Servs.*, No. 25-2358, --- F.4th ----, ----, 2025 WL 1203167, at *3-4 (9th Cir. Apr. 25, 2025) (Bumatay, J., and VanDyke, J., dissenting from the denial of rehearing en banc).  Even if the district court had jurisdiction under the Administrative Procedure Act, the decision to terminate funding—or the decision of *who* to fund—is committed to agency discretion by law under 5 U.S.C. § 701(a)(2).  *See* 8 U.S.C. § 1232(c)(5) (qualifying the provision of legal services "to the greatest extent practicable").  I would therefore grant the government's stay motion.