IMMIGRANT DEFENDERS LAW CENTER
Alvaro M. Huerta (CA Bar No. 274787)
Carson A. Scott (CA Bar No. 337102)
Lya Ferreyra (CA Bar No. 340148)
Immigrant Defenders Law Center
634 S. Spring St., 10th Floor
Los Angeles, CA
(213) 634-0999

JUSTICE ACTION CENTER
Esther H. Sung (CA Bar No. 255962)
Karen C. Tumlin (CA Bar No. 234691)
Laura Flores-Perilla (CA Bar No. 355645)
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
(323) 450-7272

AMICA CENTER FOR IMMIGRANT RIGHTS
Adina Appelbaum (*pro hac vice*)
Samantha Hsieh (*pro hac vice*)
Peter Alfredson (*pro hac vice*)
Evan Benz (*pro hac vice*)
Amica Center for Immigrant Rights
1025 Connecticut Avenue NW, Suite 701
Washington, DC 20036
(202) 331-3320

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, *et al.*,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,

Defendants.

CASE NO. 3:25-CV-02847-AMO

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL**

Date: June 12, 2025
Time: 2:00 p.m.
Judge: Hon. Araceli Martínez-Olguín
Trial Date: TBD
Date Action Filed: March 26, 2025

## TABLE OF CONTENTS


**INTRODUCTION** .......... **1**

**BACKGROUND** .......... **1**

**ARGUMENT** .......... **4**

A. Defendants Have Not Made the Required Threshold Showing of Irreparable Harm to Justify an Immediate Stay. .......... 5

B. Defendants Cannot Satisfy the Remaining Requirements for An Immediate Stay. .......... 8

i. Defendants Are Unlikely to Succeed on the Merits .......... 8

ii. The Balance of the Equities Weighs Heavily Against Issuing a Stay. .......... 12

**CONCLUSION** .......... **13**

## TABLE OF AUTHORITIES

### Cases

*Al Otro Lado v. Wolf*,
952 F.3d 999 (9th Cir. 2020) ....................4, 5

*California ex rel. Becerra v. Azar*,
950 F.3d 1067 (9th Cir. 2020) ....................13

*Bowen v. Massachusetts*,
487 U.S. 879 ....................10, 11

*Community Legal Services in East Palo Alto, et al., v. HHS*,
No. 25-2808 (9th Cir.) ....................3, 4, 11

*Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*,
38 F.4th 1099 (D.C. Cir. 2022) ....................10

*Dep't of Educ. v. California*,
145 S. Ct. 966 (2025) ....................8, 11

*Doe #1 v. Trump*,
957 F.3d 1050 (9th Cir. 2020) ....................5, 6

*E. Bay Sanctuary Covenant v. Biden*,
993 F.3d 640 (9th Cir. 2021) ....................7

*Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*,
736 F.3d 1239 (9th Cir. 2013) ....................4, 5

*Kiobel v. Royal Dutch Petrol.*,
569 U.S. 108 (2013) ....................6

*United States ex rel. Knauff v. Shaughnessy*,
338 U.S. 537 (1950) ....................7

*Leiva-Perez v. Holder*,
640 F.3d 962 (9th Cir. 2011) (per curiam) ....................4, 5

*Maine v. U.S. Dep't of Agric.*,
2025 WL 1088946 (D. Me. Apr. 11, 2025) ....................7

*Megapulse, Inc. v. Lewis*,
672 F.2d 959 (D.C. Cir. 1982) ....................9, 10

*Nat'l Ass'n of Mfrs. v. U.S. Dep't of Homeland Sec.*,
491 F. Supp. 3d 549 (N.D. Cal. 2020) ....................7

*Nken v. Holder*,
556 U.S. 418 (2009) ....................4, 12, 13

*Renee v. Duncan*,
686 F.3d 1002 (9th Cir. 2012) ....................................................10

*Rhode Island v. Trump*,
2025 WL 1303868 (D.R.I. May 6, 2025) ....................................................7

*Rodriguez v. Robbins*,
715 F.3d 1127 (9th Cir. 2013) ....................................................6, 7

*State v. Azar*,
385 F. Supp. 3d 960 (N.D. Cal. 2019), *vacated on other grounds and remanded sub nom* ....................................................12

*Tootle v. Sec'y of Navy*,
446 F.3d 167 (D.C. Cir. 2006) ....................................................10

*United Aeronautical Corp. v. U.S. Air Force*,
80 F.4th 1017 (9th Cir. 2023) ....................................................9, 10

*United States v. McIntosh*,
833 F.3d 1163 (9th Cir. 2016) ....................................................8

*Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*,
2025 WL 1116157 (D.R.I. Apr. 15, 2025)....................................................7

**Statutes**

8 U.S.C. § 1232(c)(5)....................................................1

31 U.S.C. § 1301(a) ....................................................7

Full-Year Continuing Appropriations and Extensions Act, 2025, Pub. L. 119-4,
div. A, tit. I, § 1101(8) ....................................................1

William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008,
Pub. L. No. 110-457, 122 Stat. 5044 ....................................................2

**Rules**

Fed. R. App. Proc. 8(a)(1)(A) ....................................................3

## INTRODUCTION

Defendants' Motion to Stay Preliminary Injunction Pending Appeal ("Motion") is yet another attempt to avoid compliance with this Court's orders and should be denied. The Ninth Circuit already denied Defendants' nearly identical request. And this Court has already found that Plaintiffs are likely to succeed on their claims that Defendants have violated their statutory and regulatory obligations, and that Defendants' actions have caused, and continue to cause, Plaintiffs irreparable harm. Accordingly, this Court entered a preliminary injunction ("PI") enjoining Defendants from withdrawing funds or services required by statute and regulation, including "funds for direct legal representation services to unaccompanied children." Defendants' response to the PI is to now claim, without any evidence, that the PI imposes harm so severe it merits a stay. Stays are extraordinary relief never granted as a matter of right, and Defendants do not meet any of the requirements to seek such relief.

## BACKGROUND

This case arises from Defendants' violations of statutory and regulatory mandates to provide counsel for unaccompanied children "to the greatest extent practicable." 8 U.S.C. §1232(c)(5). Congress has consistently appropriated funds for this purpose, and appropriations are currently available through September 30, 2027. Full-Year Continuing Appropriations and Extensions Act, 2025, Pub. L. 119-4, div. A, tit. I, § 1101(8). Defendants previously satisfied this obligation by contracting with Acacia Center for Justice ("Acacia"), which sub-contracted with organizations like Plaintiffs to provide legal representation for unaccompanied children. *See, e.g.*, ECF No. 7-15 ¶¶ 3–4 ("Amica Decl.").

Despite the existence of congressional appropriations, on March 21, 2025, the Department of the Interior sent a "Notice of Partial Termination for the Government's Convenience" to Acacia.

The termination notice commanded Plaintiffs to "stop work immediately" on any active representations and stop taking on new engagements. ECF No. 7-10 ¶ 10 ("NWIRP Decl."); ECF No. 7-7 ¶ 13 ("VAAP Decl."). It provided no explanation for the termination or guidance on how to handle existing representations, including those with imminent court hearings. *See* VAAP Decl. ¶¶ 12, 13, 21; NWIRP Decl. ¶¶ 9, 11; ECF No. 7-11 ¶ 19 ("RMIAN Decl."); ECF No. 7-14 ¶¶ 13, 16 ("Estrella Decl.").

On March 26, 2025, Plaintiffs filed this lawsuit, seeking declaratory and injunctive relief preventing Defendants from "ceas[ing] to fund counsel to represent unaccompanied children" and seeking a temporary restraining order ("TRO") to enjoin Defendants from violating their obligations under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, 122 Stat. 5044 ("TVPRA")) and the Office of Refugee Resettlement's ("ORR") Foundational Rule. ECF No. 1 at 39 ("Compl."); *see also* ECF No. 7 ("TRO Mot."). This Court issued a TRO, enjoining Defendants from withdrawing services or funds for the legal representation on unaccompanied children and set an expedited briefing schedule for Plaintiffs' motion for PI. *See* ECF No. 33 at 7 ("TRO").

Instead of complying with the TRO, Defendants filed a series of motions repeating arguments this Court had already rejected. Each motion was denied. *See* ECF No. 66 at 5–6 (discussing Defendants' motion to dissolve the TRO, motion to recuse, and notice of appeal). The Court extended the TRO once for "good cause." ECF No. 48. Defendants did not restore funding until April 30, the day the TRO expired. *See* ECF No. 91.

Meanwhile, the termination has had devastating, irreparable effects on Plaintiffs' mission-driven work to represent unaccompanied children. *See* Estrella Decl. ¶¶ 7, 13-15. For example, on April 4, 2025, an ORR shelter asked Plaintiff Estrella del Paso if they could represent an

unaccompanied child. *See* ECF No. 40-2 ¶ 4 ("Estrella Supp. Decl."). Because Defendants had not complied with the TRO, Estrella was unable to provide legal representation, and the child was removed days later without counsel. *Id.* ¶¶ 4-9. Further, absent the PI, Plaintiffs will be forced to engage in mass staff terminations, *see*, *e.g.*, ECF No. 37 at 31 ("PI Mot.") (describing impending layoffs and budget shortfalls), further frustrating their ability to represent the unaccompanied children they are committed to serve—including those with claims to lawful immigration status and no practicable alternative counsel.

This Court heard Plaintiffs' PI motion on April 23, 2025, and granted it on April 29, 2025. *See* ECF No. 87 ("PI Order"). On April 30, 2025, Defendants noticed the relevant appeal before the Ninth Circuit. *See* ECF No. 88. Five days later, on May 5, 2025, Defendants filed this Motion. Defendants concurrently filed an Emergency Motion for Stay Pending Appeal Relief with the Ninth Circuit, arguing that the government had "no option but to seek stays concurrently," contrary to the Federal Rules of Appellate Procedure's requirements that a party must ordinarily move first in the district court, because this Court had previously "denied the government's request to stay" at the TRO stage. *Community Legal Services in East Palo Alto, et al., v. HHS*, No. 25-2808 (9th Cir.), Dkt. 5.1 at 1 ("Ninth Circuit Emergency Motion"); Fed. R. App. Proc. 8(a)(1)(A). On May 9, 2025, Plaintiffs filed their Opposition to Defendants' Emergency Motion to Stay (*Community Legal Services in East Palo Alto, et al., v. HHS*, No. 25-2808 (9th Cir.), Dkt. 11.1) in the Ninth Circuit and on May 12, 2025, Defendants filed their Reply (*id.*, Dkt. 14.1).

On May 14, 2025, the Ninth Circuit denied Defendants' Ninth Circuit Emergency Motion, concluding that Defendants had "shown neither a likelihood of success on the merits nor irreparable injury absent a stay." *Id.*, Dkt. 17.1 at 3 ("Ninth Circuit Order"). Now before this

Court is Defendants' "concurrent[]" Motion raising the same claims. Ninth Circuit Emergency Motion at 1.

**ARGUMENT**

Defendants cannot justify the extraordinary relief they seek, and do not even attempt to make the requisite factual showing of genuine irreparable harm. Ninth Circuit Order at 3–4; 18 (finding that the Government "fails to cite any evidence at all" and "absent any showing from the Government," the court could not find that irreparable injury was "probable or likely") (internal quotations and citations omitted). This Court should deny the motion on that basis alone. If it reaches the other factors, the stay should likewise be denied.

Courts consider four factors when considering a request to stay an injunction: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009). Courts first require the appellant to make "a certain threshold showing regarding irreparable harm." *Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011) (per curiam). Defendants must prove irreparable harm, a question of fact, with evidence. *See Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250–51 (9th Cir. 2013) ("Those seeking injunctive relief must proffer evidence sufficient to establish a likelihood of irreparable harm."); *Cf. Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020) (government failed to meet its irreparable harm burden because its evidence was "weak" and based on "assumptions"). If a party cannot make its threshold showing of irreparable harm, "a stay may not issue." *Leiva-Perez*, 640 F.3d at 965. Here, Defendants cannot make the threshold showing, and

the Court need not reach the other factors. *Id*. Even if the Court does reach the other factors, each one favors Plaintiffs and supports denial of Defendants' motion.

In response to Defendants' concurrent motion to stay proceeding, the Ninth Circuit has already determined that Defendants have shown neither a likelihood of success on the merits nor irreparable injury and denied Defendants' attempt to bring this Motion before that court. *See* Ninth Circuit Order at 3. This Court should do the same and deny Defendants' Motion.

**A. Defendants Have Not Made the Required Threshold Showing of Irreparable Harm to Justify an Immediate Stay.**

"[I]f the petitioner has not made a certain threshold showing regarding irreparable harm . . . then a stay may not issue, regardless of the petitioner's proof regarding the other stay factors." *Leiva-Perez*, 640 F.3d at 965. Defendants bear the burden of showing irreparable harm absent a stay. *Doe #1 v. Trump*, 957 F.3d 1050, 1058–59 (9th Cir. 2020).

Irreparable harm is a question of fact; to support such a claim, a party must submit evidence showing irreparable harm is likely to occur. *Herb Reed Enters., LLC*, 736 F.3d at 1250–51; *Cf. Al Otro Lado*, 952 F.3d at 1007 (government failed to meet its irreparable harm burden because its evidence was "weak" and based on "assumptions"); *see also* Ninth Circuit Order at 17 ("[T]he Government asserts evidence is unnecessary in this case because the injunction requires the disbursement of taxpayer funds that may never be recovered, and the injunction harms the separation of powers. We disagree."). As the Ninth Circuit found, Defendants submit *no* evidence supporting their claim of irreparable harm, citing only legal arguments and a fact-bound conclusion in *Department of Education v. California*, a case that this Court and the Ninth Circuit have already found to have no application here. *See* ECF No. 93 at 5–6; PI Order at 14–15; Ninth Circuit Order at 16–17. Accordingly, Defendants' lack of urgency in filing the present motion and the record evidence (along with the Ninth Circuit and this Court's prior findings) both show that, in the

absence of the PI, *only Plaintiffs* will suffer irreparable harm if the injunction is stayed. *See* PI Order at 25; Ninth Circuit Order at 17, 19; *see also* TRO at 5–6 (finding Defendants will suffer no harm from a TRO).

Defendants' unsupported assertions of harm do "not me[e]t its irreparable injury burden." Ninth Circuit Order at 16. First, Defendants assert the injunction harms the "separation of powers" because, "[w]henever a district court issues a universal injunction against the Executive Branch, the United States suffers a form of irreparable harm." ECF No. 93 at 8. Defendants cite no authority for that proposition, nor "acknowledge [the] line of precedent" running contrary to it. Ninth Circuit Order at 19 ("[the court] reject[s] the notion that the injunction's effect on the "separation of powers" qualifies as irreparable harm at the stay stage."); *see, e.g.*, *Doe #1*, 957 F.3d at 1059 ("[I]f we were to adopt the government's assertion that the irreparable harm standard is satisfied by the fact of executive action alone, no act of the executive branch asserted to be inconsistent with a legislative enactment could be the subject of a preliminary injunction. That cannot be so."). Defendants' legally unfounded argument also defies logic—the government "cannot suffer harm from an injunction that merely ends an unlawful practice." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013). In fact, it is Plaintiffs who seek to protect the public interest and the separation of powers by ensuring congressional appropriations are being utilized as directed by Congress.

Defendants claim that these purported concerns regarding separation of powers are "heightened" because the injunction is an "unwarranted judicial interference in the conduct of foreign policy." ECF No. 93 at 9 (citing *Kiobel v. Royal Dutch Petrol.*, 569 U.S. 108, 116 (2013) (holding the Alien Tort Statute did not apply extraterritorially)). This argument, which Defendants have not raised in any prior proceedings before this Court, is unfounded. This case does not

involve any foreign-policy power. Instead, it involves Defendants' authority to terminate funds appropriated by Congress for legal services for children within the United States navigating the American legal system—not foreign policy or border enforcement. *See United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542–43 (1950) (distinguishing border exclusion from the removal of persons in the United States); *Nat'l Ass'n of Mfrs. v. U.S. Dep't of Homeland Sec.*, 491 F. Supp. 3d 549, 563–64 (N.D. Cal. 2020) (a "purely domestic" immigration issue does not implicate the executive's foreign affairs powers). As the Ninth Circuit has recognized, while a genuine foreign policy issue is exempt from the APA, that exemption does not extend to all immigration-related policies. *See E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 676–77 (9th Cir. 2021).

Second, Defendants assert they are harmed by disbursing congressionally appropriated funds. See ECF No. 93 at 5. That statement refutes itself: spending money as required by congressional appropriation executes the law; the government cannot be "harmed" by following the law. *Rodriguez*, 715 F.3d at 1145. As the Ninth Circuit found, the funds at issue "are statutorily earmarked to carryout the TVPRA" and the "President is required to spend these funds for the purpose of carrying out the TVPRA and only for that purpose." Ninth Circuit Order at 17–18. The government cannot suffer harm from disbursing funds that Congress appropriated for a specific function. *See id.* at 18; *see also e.g.*, *Rhode Island v. Trump*, 2025 WL 1303868, at *17 (D.R.I. May 6, 2025); *Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*, 2025 WL 1116157, at *23 (D.R.I. Apr. 15, 2025); *Maine v. U.S. Dep't of Agric.*, 2025 WL 1088946, at *29 (D. Me. Apr. 11, 2025). The government cannot save or use this money for another purpose, it must "be applied only to the objects for which the appropriations were made." 31 U.S.C. § 1301(a). Payment cannot harm the government, as the appropriations process exists "to assure

that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good." *United States v. McIntosh*, 833 F.3d 1163, 1175 (9th Cir. 2016).

Without any evidence or authority to support their assertions, Defendants again attempt to misrepresent conclusions from *Department of Education v. California*, a case decided at a different stage and on a different factual record. ECF No. 93 at 9; *Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025). As the Ninth Circuit found, *Department of Education* does not support Defendants' assertions here. Ninth Circuit Order at 18–19. In that case, the Supreme Court relied on a declaration from a government official describing the difficulties in recovering funds under the specific grant agreements in that case. *See Dep't of Educ.*, 145 S. Ct. at 969; Ninth Circuit Order at 18. "No such evidence has been presented here." Ninth Circuit Order at 18. In fact, the "Government's motion fails to cite any evidence at all." *Id*.

With nothing but bare assertions unsupported by caselaw and no record evidence supporting their assertions, Defendants have not met their burden to show irreparable harm. This Court should not issue a stay.

**B. Defendants Cannot Satisfy the Remaining Requirements for An Immediate Stay.**

Even if Defendants had made the requisite threshold showing of harm, they cannot satisfy the remaining factors necessary for a stay.

**i. Defendants Are Unlikely to Succeed on the Merits.**

In asserting that they are likely to succeed on the merits, Defendants point only to jurisdictional arguments, arguing that this Court "should stay the PI because [of] the Supreme Court's recent decision in *Department of Education*." ECF No. 93 at 6. These arguments have been rejected repeatedly by this Court and the Ninth Circuit and cannot support a stay.

Plaintiffs bring *bona fide* APA claims, not contract claims, and this Court properly exercised its jurisdiction. The Tucker Act deprives district courts of jurisdiction over APA claims only if the claims: (1) are founded upon contract-based rights *and* (2) seek a contract-based remedy. *See United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1026–27 (9th Cir. 2023). Where a plaintiff "does not claim a breach of contract," and seeks neither monetary damages nor specific performance, there is no contract claim. *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 969–970 (D.C. Cir. 1982). "[T]hat a court may have to rule on a contract issue" does not "automatically transform the action" or deprive the court of jurisdiction. *Id.* at 968; *see also United Aeronautical Corp.*, 80 F.4th at 1026.

Plaintiffs do not seek to enforce any contractual obligation. Their claims "are based on the Government's statutory and regulatory violations" through their termination of funding for the legal representation of unaccompanied children without reasoning or practicable alternatives. Ninth Circuit Order at 5; *See* ECF No. 1 at ¶¶ 96, 143; PI Mot. at 12. "Seeking to ensure compliance with statutory and regulatory commands is a matter beyond the scope of the Tucker Act's exclusive jurisdiction." Ninth Circuit Order at 6.

Defendants' argument hinges on Acacia's government contract to provide services to unaccompanied children. But the *existence* of a contract has never sufficed to funnel claims challenging unlawful agency action under the APA into the Tucker Act. *Megapulse, Inc.*, 672 F.2d at 968–70. Contrary to Defendants' assertions, this lawsuit does not depend on any contract. Defendants can meet their obligations under the TVPRA and Foundational Rule by contracting with other organizations—or without contracting at all. *See* Ex. A, Tr. 12:9–14:16, April 23, 2025. Defendants chose a contract as the vehicle to comply with this Court's orders, but

it is not the only vehicle, and it is not the basis of Plaintiffs' claims. *See United Aeronautical Corp.*, 80 F.4th at 1026; *Megapulse, Inc.*, 672 F.2d at 968.

Plaintiffs also do not seek contract-based remedies or "financial compensation as their relief." ECF No. 93 at 8. Plaintiffs seek "declaratory and injunctive relief" to prevent Defendants from unlawfully refusing to fund counsel for unaccompanied children. *See, e.g.*, ECF No. 1 at ¶¶ 8; TRO Mot. at 11; PI Mot. at 12. Because Plaintiffs do not seek "money in compensation for . . . losses," the Tucker Act does not apply. *Bowen v. Massachusetts*, 487 U.S. 879, 893, 895 (1988); *see also Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1110 (D.C. Cir. 2022) (declaratory and injunctive relief are not "specific to actions that sound in contract").

Defendants confuse the issues by trying to frame Plaintiffs' jurisdictional claims as premised on their ability, or inability, "to obtain full relief in the Court of Federal Claims." ECF No. 93 at 8. But the relevant question is not whether Plaintiffs can obtain "full relief." Indeed, this Court might not be able to afford full relief either. *Cf. Renee v. Duncan,* 686 F.3d 1002, 1013 (9th Cir. 2012) (requiring only an increase in the likelihood of relief to find standing). The question is whether *this Court* has jurisdiction over Plaintiffs' claims for declaratory and injunctive relief. As this Court has already held, these equitable "claims have no business before the Federal Court of Claims." PI Order at 15. Instead, they are properly before this Court, and only this Court. *Tootle v. Sec'y of Navy*, 446 F.3d 167, 176 (D.C. Cir. 2006) (rejecting "the suggestion that a federal district court can be deprived of jurisdiction by the Tucker Act when no jurisdiction lies in the Court of Federal Claims"). Finding otherwise would "mean that no court has jurisdiction to hear [P]laintiffs' claims," a result that is "contrary to common sense" and "conflicts with the 'strong presumption favoring judicial review of administrative action.'" Ninth Circuit Order at 9.

The nature of Plaintiffs' claims is reflected in this Court's remedy. Contrary to Defendants' representations to the Ninth Circuit, this Court did not "require[] HHS to continue providing 'funds for direct legal representation services to [unaccompanied children]' through ORR's contractor, Acacia." Ninth Circuit Emergency Motion at 12. As Defendants acknowledge before *this* Court, "the PI does *not* explicitly require the Government to make" any payments under a contract. ECF No. 93 at 4 (emphasis added). The Court enjoined Defendants from "withdrawing the *services or funds* provided by [ORR] as of March 20, 2025, under [the TVPRA and Foundational Rule], particularly ORR's provision of funds for direct legal representation services to unaccompanied children." PI Order at 28 (emphasis added). This Court did not rely on Defendants' contract with Acacia, nor have Plaintiffs asked it to consider the contract. Defendants' *choice* to comply with the court's orders by contracting does not strip the court of jurisdiction over Plaintiffs' claims. *See Megapulse, Inc.*, 672 F.2d at 968–70.

Defendants once again insist that the Supreme Court's order in *Department of Education* forecloses Plaintiffs' APA claims. ECF No. 93 at 6-7. It does not. The short, fact-specific discussion in *Department of Education* leaves undisturbed a long line of binding precedent that federal court "jurisdiction 'is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds." *Dep't of Educ.*, 145 S. Ct. at 968 (quoting *Bowen*, 487 U.S. at 910). As this Court found, the facts of *Department of Education* are clearly distinguishable from this case, where Plaintiffs seek injunctive, forward-looking relief for statutory violations, and where Plaintiffs have demonstrated they face existential harm. "*Department of Education* has no application where, as here, the claims sound in statute, rather than contract." Ninth Circuit Order at 10.

Because Defendants have not shown that they are likely to succeed under their Tucker Act claims, the only arguments raised in the present Motion, this Court should deny the Motion.

**ii. The Balance of the Equities Weighs Heavily Against Issuing a Stay.**

Because Defendants have not "satisfie[d] the first two factors," the Court need not reach the equitable factors of "harm to the opposing party and . . . the public interest." *Nken*, 556 U.S. at 435; *see* Ninth Circuit Order (not reaching balance of the equities because Defendants failed to satisfy first two factors). Regardless, these factors weigh heavily in Plaintiffs' favor.

This Court correctly found, based on an extensive factual record, that Plaintiffs "have shown that they are likely to suffer, if not already suffering, irreparable harm in the absence of preliminary relief." PI Order at 25. Plaintiffs do "indeed seek relief based on their mission," and these harms far outweigh any unsupported, conclusory assertions of harm by Defendants. ECF No. 93 at 9. As repeatedly demonstrated through extensive evidence before this Court, Plaintiffs' harms are rooted in frustration of their missions to support unaccompanied children, many of whom, absent legal support, will face prolonged detention or removal proceedings alone. *See generally, e.g.*, TRO Mot.; PI Mot.; Mots. to Enforce; Dkt. 84 ("Reply ISO PI"). Defendants have proposed no meaningful alternatives to support unaccompanied children in accordance with their obligations under the TVPRA and Foundational Rule and, absent a PI enjoining Defendants' actions, Plaintiffs face an existential threat to their ability to fulfill their missions. When compared to the non-existent harm proposed by Defendants, it is clear that Plaintiffs' harms easily outweigh Defendants'.

The public interest also weighs heavily against a stay. "[T]here is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *State v. Azar*, 385 F. Supp. 3d 960, 985 (N.D. Cal. 2019) (internal quotations omitted),

*vacated on other grounds and remanded sub nom.*; *California ex rel. Becerra v. Azar*, 950 F.3d 1067 (9th Cir. 2020). Enjoining Defendants from violating the TVPRA and Foundational Rule furthers that interest. PI Order at 26. This Court also correctly found that maintaining funding for direct representation of unaccompanied children furthers "critical public interests" by "ensuring children have access to legal representation and protection from human trafficking" and by "promot[ing] efficiency and fairness within the immigration system." TRO at 6 (citing generally ECF No. 28); *see also* PI Order at 26. Further, the public interest favors ensuring that individuals are not wrongfully removed. *Nken*, 556 U.S. at 436. Providing unaccompanied children with representation furthers that interest.

Plaintiffs have established that a stay will cause them irreparable harm. Because there is no public interest in upholding unlawful agency action and there is significant public interest in maintaining funding for representation of unaccompanied children, the balance of the equities and public interest "both tip decisively in Plaintiffs' favor." PI Order at 26.

**CONCLUSION**

Because Defendants have not made their threshold showing of harm, failed to show a likelihood of success on the merits, and the balance of the equities weighs heavily against a stay, this Court should deny this Motion.

Respectfully submitted,

May 19, 2025

/s/ Alvaro M. Huerta
IMMIGRANT DEFENDERS LAW CENTER
Alvaro M. Huerta (CA Bar No. 274787)
Carson A. Scott (CA Bar No. 337102)
Lya Ferreyra (CA Bar No. 340148)
Immigrant Defenders Law Center

/s/ Samantha Hsieh
AMICA CENTER FOR IMMIGRANT RIGHTS
Adina Appelbaum (*pro hac vice*)
Samantha Hsieh (*pro hac vice*)
Peter Alfredson (*pro hac vice*)

634 S. Spring St., 10th Floor
Los Angeles, CA
(213) 634-0999
ahuerta@immdef.org
cscott@immdef.org
lferreyra@immdef.org

*/s/ Karen C. Tumlin*
JUSTICE ACTION CENTER
Esther H. Sung (CA Bar No. 255962)
Karen C. Tumlin (CA Bar No. 234691)
Laura Flores-Perilla (CA Bar No. 355645)
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
(323) 450-7272
esther.sung@justiceactioncenter.org
karen.tumlin@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org

Evan Benz (*pro hac vice*)
Amica Center for Immigrant Rights
1025 Connecticut Ave., N.W., Suite 701
Washington, D.C. 20036
(202) 331-3320
adina@amicacenter.org
sam@amicacenter.org
peter@amicacenter.org
evan@amicacenter.org

*Attorneys for Plaintiffs*