YAAKOV M. ROTH
Acting Assistant Attorney General
WILLIAM C. SILVIS
Assistant Director
MICHAEL A. CELONE
CHRISTINA PARASCANDOLA
KATELYN MASETTA-ALVAREZ
JONATHAN K. ROSS
Senior Litigation Counsels
ZACHARY A. CARDIN
Trial Attorney

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 514-0120
Katelyn.Masetta.Alvarez@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| COMMUNITY LEGAL SERVICES IN EAST PALO ALTO<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *ET AL.*,<br><br>Defendants. | Case No. 3:25-cv-02847-AMO<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL**<br><br>Hearing Date: June 12. 2025<br>Time: 2:00 p.m.<br>Location: Courtroom 10 |

## INTRODUCTION

The PI Order requires the Government to expend potentially millions of dollars that it will never be able to recover, despite the absence of a clear congressional requirement to provide the funding sought by the Plaintiffs. This ongoing financial harm on the public treasury far outweighs any potential harm to Plaintiffs' inability to carry out their alleged missions. Rather than refuting Defendants' claims of irreparable harm to the public fisc, Plaintiffs purport a lack of "evidence" that the Government cannot recoup funds once they are disbursed. The evidence is readily available in the record: to comply with the Court's Order Granting a Preliminary Injunction, ECF No. 87 (PI Order), Defendants entered into a binding contract to compensate Plaintiffs for their immigration-legal services, through the prime contractor, Acacia Center for Justice (Acacia), and the Court did not order Plaintiffs to post a bond.

Further, Plaintiffs' assertions that they do not seek to enforce contractual rights or remedies contradicts this Court's finding that Plaintiffs challenge and seek to vacate the "Cancellation Order"—*i.e.* the notification that the Department of the Interior (DOI) was terminating the direct-legal-services provisions of its contract with Acacia (Acacia contract). And the Plaintiffs' alleged irreparable harm arises from a lack of funding from subcontracting under the Acacia contract, which clearly demonstrates that their source of rights to a PI is solely contractual. In light of the ongoing irreparable harm to the public interest, and Plaintiffs' failure to demonstrate jurisdiction over their contractual claims or that the balance of equities favors them, this Court should stay the PI Order.

## ARGUMENT

### A. The Government has shown irreparable harm absent a stay because the Government cannot recoup fees once dispersed, as outlined in the Court's Order granting a PI.

Plaintiffs argue that the Government did not cite evidence, such as a declaration, stating it will not be able to recoup fees that it has distributed. *See* Pls.' Opp'n, ECF No. 102, at 9. The facts, however, cannot be reasonably disputed.

The PI Order and Defendants' first post-PI Order status report, ECF No. 91, unequivocally demonstrate that the Government will not be able to recoup the fees once they are disbursed. In ordering the Government to continue funding direct-legal services, the Court declined to order that Plaintiffs post a bond; thus, the funding, "once disbursed, could *probably not* be recovered." *Dep't of State v. AIDS*

*Vaccine Advoc. Coal.*, 145 S. Ct. 753, 754 (2025) (Alito, J. dissenting) (emphasis added). While courts have waived the bond requirement where an agreement allows a party to recoup funds that are disbursed as a result of a wrongfully issued injunction, *California Hosp. Ass'n v. Maxwell-Jolly,* 776 F. Supp. 2d 1129 (E.D. Cal. 2011), that does not apply here. As Plaintiffs have consistently asserted, there is no direct contractual relationship between Plaintiffs and the Government for the provision of direct legal fees. Thus, once disbursed to Plaintiffs, there is no enforceable agreement that the Government can utilize to recoup these fees.

Further, Defendants have attested in a declaration that they have now reinstated the direct-legal-services provisions to comply with this Court's order. *See* ECF No. 91-1. The Government is now contractually obligated to provide compensation to Acacia for Plaintiffs' advocacy. *Id.* ¶ 11 ("The effective date of April 29 means that Acacia's approved invoices submitted for tasks completed during the period starting April 29, 2025 and ending September 29, 2025 will be paid pursuant to the modified contract terms."). Although Plaintiffs initially bore the burden of proving that they were entitled to a PI, they have not cited any evidence, such as contractual terms, disputing Defendants' representations that Defendants would not be able to recoup these funds absent a bond. Because the funding will "probably not be recovered," a stay is warranted. *AIDS Vaccine Advoc.*, 145 S. Ct. at 754 (Alito, J. dissenting).

Plaintiffs also argue that the government did not adequately support its separation-of-powers argument. ECF No. 102 at 10. But ten judges on the Ninth Circuit affirmed that this Court's TRO—which mirrors the language of the PI—"raises serious questions about judicial overreach, separation of powers, and the misuse of injunctive relief." *Cmty. Legal Servs. in E. Palo Alto v. HHS*, 135 F.4th 852, 852 (9th Cir. 2025) (Bumatay, J., and VanDyke, J., dissenting from the denial of rehearing en banc). And while "the violation of separation of powers by itself is not invariably an irreparable injury," the Government may meet its burden of demonstrating irreparable harm by showing an "immediate or ongoing harm stemming from the [ ] alleged constitutional defects." *John Doe Co. v. Consumer Fin. Prot. Bureau*, 849 F.3d 1129 (D.C. Cir. 2017) (cleaned up). Here, the Court's Order is causing ongoing harm because the Government is losing millions of dollars in taxpayer money to compensate immigration-advocacy organizations. *See Dep't of Educ. v. California*, —— U.S. ——, 145 S. Ct. 966, 968–69 (2025) (holding

that the plaintiffs' failure to refute the Government's representation that it was unlikely to recover the grant funds once they were disbursed was a factor favoring a stay pending appeal).

Without any support, Plaintiffs claim that "it is Plaintiffs who seek to protect . . . the separation of powers by ensuring congressional appropriations are being utilized as directed by Congress," ECF No. 102 at 10. Yet, Congress has not directed the Department of Health and Human Services (HHS) to spend these funds on direct legal services. *See* Full-Year Continuing Appropriations and Extensions Act, 2025, Pub. L. No. 119-4, Div. A, Tit. I, Sec. 1101(8) (2025); *see also* 8 U.S.C. § 1232(c)(5). To the extent Plaintiffs rely on the legislative history to support their assertion, their reliance is misplaced. *See Lincoln v. Vigil*, 508 U.S. 182, 192 (1993) ("[I]ndicia in committee reports and other legislative history as to how the funds should, or are expected to be, spent do not establish any legal requirements on the agency.").

Lastly, Plaintiffs assert that decisions about whether to fund counsel to represent UAC in their *immigration* proceedings are not related to foreign policy. ECF No. 102 at 10–11. But the Supreme Court has explained that "*any policy toward aliens* is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government." *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89 (1952). Thus, "such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *Id.* The decision about whether to fund legal representation for UACs' immigration proceedings is a "policy toward aliens," and thus, the Government's decision-making about this funding is entrusted to the political branches—not the judiciary. *Id.*

**B. Plaintiffs plainly seek to vacate the "Cancellation Order," which is tied to the Acacia contract.**

Plaintiffs continue to argue that they "do not seek to enforce any contractual obligation" and that they do not seek "contract-based remedies." ECF No. 102 at 13. But that is not what this Court found in its Order. Rather, the Court explained that Plaintiffs seek "vacatur of the purportedly unlawful Cancellation Order." PI Order at 13. Indeed, the Cancellation Order is the "final agency action" that Plaintiffs challenge. *Id.* at 16. The Cancellation Order is indisputably an order terminating certain provisions of the Acacia contract. Because the focal point of this case is the cancellation of parts of a

government contract, and Plaintiffs seek to vacate the cancellation, Plaintiffs' source of rights and remedies is in essence contractual and belongs in the Court of Federal Claims. *Megapulse v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982).

Plaintiffs also offer a theory that Defendants can meet their obligation by contracting with other organizations. ECF No. 102 at 14. But again, Plaintiffs here challenge the Cancellation Order, which is the decision to cancel the Acacia contract. *See supra.* If the Cancellation Order is the decision on review here, then contracting with other parties would not satisfy the arbitrary-and-capricious claims in this lawsuit. Further, the irreparable harm that Plaintiffs allege stems from loss of funding. *See*, *e.g.*, ECF No. 1, ¶ 99 (alleging irreparable harm because "**Defendants' actions will cause Plaintiffs to lay off employees and lose huge percentages of their overall funding.** For Plaintiffs, the funding Congress has consistently appropriated to provide services under the TVPRA is existentially important.") (emphasis in original). If Defendants were to contract with a third party, this would do nothing to remedy the alleged irreparable harm that Plaintiffs face, such as threatened layoffs, restructuring of their organizations, and inability to continue representing their clients.

Plaintiffs next argue that "Defendants confuse the issues by trying to frame Plaintiffs' jurisdictional claims as premised on their ability, or inability, 'to obtain full relief in the Court of Federal Claims.'" ECF No. 102 at 14. Plaintiffs misconstrue Defendants' argument. Defendants have consistently argued that this Court lacks jurisdiction to hear Plaintiffs' claims because they sound in contract. ECF No. 93 at 7–8. Instead, under the Tucker Act, such claims must be brought in the Court of Federal Claims, regardless of whether Plaintiffs can obtain full relief there and regardless of whether Plaintiffs encounter procedural roadblocks to bring their contract claims. *See* ECF No. 93 at 8 (explaining that while subcontractors may sue the Government over contract disputes only "through and in right of the prime contractor's contract, and with the prime contractor's consent and cooperation," this procedural hindrance "does not confer a right" under the APA to bring their claims.). Thus, Plaintiffs cannot avoid the Tucker Act simply because of the procedural hurdles and narrow relief available to them in the Court of Federal Claims.

**C. The balance of equities favors the Government.**

While Plaintiffs argue that they "indeed seek relief based on their mission," ECF No. 102 at 16, this claim contradicts the Court's findings of irreparable harm in this case and defeats Plaintiffs' arguments that the Tucker Act does not apply. This Court found that Plaintiffs demonstrated irreparable harm because the Cancellation Order "forc[ed] them to issue layoff notices and threaten[ed] to require them to dismiss their specialized and seasoned attorneys." PI Order at 25. Plaintiffs cannot have it both ways: they cannot argue that, for the purposes of establishing a waiver of sovereign immunity under the APA, their injuries arising out of the Government's cancellation of the Acacia contract are primarily to their "mission" and that they are not necessarily seeking payment, but a few pages later argue, for purposes of seeking injunctive relief, that they face irreparable harm because the Government's partial cancellation of that contract, deprives Plaintiffs, as subcontractors to Acacia, of funding.

If the irreparable harm that Plaintiffs face is not being able to achieve their mission, then the Government's interest in protecting the public fisc far outweighs the eleven organizations' alleged harm. And while Plaintiffs state that "Defendants have proposed no meaningful alternatives to support unaccompanied children," ECF No. 102 at 16, the HHS regulations require HHS to provide a list of pro bono counsel to and assist UAC to "ensure that the child is able to successfully engage an attorney at no cost to the Government." 45 C.F.R. § 410.1309(a)(2)(ii). Nothing in the record indicates that UAC are unable to access pro bono counsel or that HHS is not meeting this regulatory requirement.[1] Indeed, many pro bono counsel exist outside of the eleven organizations funded through the Acacia contract. *See* ORR, Legal Resource Guide – Legal Service Provider List for UAC in ORR Care, *available at* https://acf.gov/sites/default/files/documents/orr/english_legal_service_providers_guide_with_form_508.pdf.

## CONCLUSION

For the foregoing reasons, Defendants request that this Court stay the PI Order pending appeal.

---

[1] Plaintiffs provided one example of a UAC who was allegedly removed without the assistance of counsel. But that was due to the decision of the advocacy organization (Estrella del Paso) to not continue to assist due to a lack of funding for that particular UAC's case, not the unavailability of pro bono counsel.

DATED: May 27, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

WILLIAM C. SILVIS
Assistant Director

CHRISTINA PARASCANDOLA
JONATHAN K. ROSS
MICHAEL A. CELONE
Senior Litigation Counsel

ZACHARY A. CARDIN
Trial Attorney

/s/ Katelyn Masetta-Alvarez
KATELYN MASETTA-ALVAREZ
Senior Litigation Counsel
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 514-0120
Katelyn.Masetta.Alvarez@usdoj.gov

Attorneys for Defendants

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Defendants certifies that this brief contains 5 pages, which complies with Local Rule 7-3(c).

Respectfully submitted,

*/s/ Katelyn Masetta-Alvarez*
Katelyn Masetta-Alvarez
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division

**CERTIFICATE OF SERVICE**

I hereby certify that on May 27, 2025, I served the foregoing pleading on all counsel of record by means of the District Clerk's CM/ECF electronic filing system.

*/s/ Katelyn Masetta-Alvarez*
Katelyn Masetta-Alvarez
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division