YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division
WILLIAM C. SILVIS (DCBN 485572)
Assistant Director
MICHAEL A. CELONE (MDBN 1312170145)
CHRISTINA PARASCANDOLA (DCBN 468479)
KATELYN MASETTA ALVAREZ (OHBN 97857)
JONATHAN K. ROSS (NCBN 50203)
Senior Litigation Counsels
ZACHARY A. CARDIN (MDBN 1812110052)
Trial Attorney

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Michael.A.Celone@usdoj.gov
(202) 305-2040

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, *ET AL.*,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *ET AL.*,

Defendants.

Case No. 3:25-cv-02847-AMO

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Date: July 31, 2025
Time: 2:00 p.m.
Location: Courtroom 10

Hon. Araceli Martínez-Olguín
United States District Judge

**TABLE OF CONTENTS**


I. NOTICE OF MOTION ..... 1

II. PRELIMINARY STATEMENT ..... 1

III. BACKGROUND ..... 2

A. Legal Framework ..... 2

1. The Homeland Security Act ("HSA") ..... 2

2. The Trafficking Victims Protection Reauthorization Act ("TVPRA") ..... 3

3. The Foundational Rule ..... 4

4. Appropriations Acts and Congressional Intent ..... 4

B. The Current Contract and Termination Decision ..... 5

IV. STANDARD OF REVIEW ..... 6

V. ARGUMENT ..... 6

A. The Tucker Act Precludes Jurisdiction Under the APA. ..... 6

B. The APA Does Not Waive Sovereign Immunity for the Relief Plaintiffs Seek. ..... 9

C. The APA Does Not Waive Sovereign Immunity Because HHS's Funding Decisions are Committed to Agency Discretion. ..... 10

D. Plaintiffs Lack Article III Standing ..... 12

VI. CONCLUSION ..... 13

# TABLE OF AUTHORITIES

## CASES


Page(s)

*Allen v. Milas*, 896 F.3d 1094 (9th Cir. 2018) .......... 9

*Bowen v. Massachusetts*, 487 U.S. 879 (1988) .......... 10

*Cetacean Cmty. v. Bush*, 386 F.3d 1169 (9th Cir. 2004) .......... 13, 16

*Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388 (1987) .......... 14

*Council Oil Co. v. Lader*, 56 F.3d 234 (D.C. Cir. 1995) .......... 7

*Crowley Gov't Servs., Inc. v. GSA*, 38 F.4th 1099 (D.C. Cir. 2022) .......... 7

*Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255 (1999) .......... 10

*Dep't of Educ. v. California*, 145 S. Ct. 966 (2025) .......... 8, 10

*East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742 (9th Cir. 2018) .......... 14

*Erickson Air Crane Co. of Wash., Inc. v. United States*, 731 F.2d 810 (Fed. Cir. 1984) .......... 9

*FDIC v. Meyer*, 510 U.S. 471 (1994) .......... 10

*Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) .......... 10

*INS v. Legalization Assistance Project*, 510 U.S. 1301 (1993) .......... 14

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) .......... 6

*Lincoln v. Vigil*,
508 U.S. 182 (1993) ........ 11

*Lucas R. v. Becerra, No.*,
CV 18-5741, 2022 WL 2177454 (C.D. Cal. Mar. 11, 2022) ........ 5

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ........ 14, 15

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990) ........ 13

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
567 U.S. 209 (2012) ........ 13

*Megapulse, Inc. v. Lewis*,
672 F.2d 959 (D.C. Cir. 1982) ........ 6, 7

*North Side Lumber Co. v. Block*,
753 F.2d 1482 (9th Cir. 1985) ........ 6

*Novak v. United States*,
795 F.3d 1012 (9th Cir. 2015) ........ 15

*Renee v. Duncan*,
686 F.3d 1002 (9th Cir. 2012) ........ 15

*Savage v. Glendale Union High Sch.*,
343 F.3d 1036 (9th Cir. 2003) ........ 6

*Steel Co. v. Citizens for a Better Environment*,
523 U.S. 83 (1998) ........ 13

*United Aeronautical Corp. v. United States Air Force*,
80 F.4th 1017 (9th Cir. 2023) ........ 6, 8, *9*

*United States Conf. of Cath. Bishops v. U.S. Dep't of State*,
--- F.Supp.3d ----, 2025 WL 763738 (D.D.C. Mar. 11, 2025) ........ 7

**STATUTES**

**Immigration and Nationality Act of 1952, as amended:**

5 U.S.C. § 701(a)(1) ........ 6

5 U.S.C. § 701(a)(2) ........ 11, 13

5 U.S.C. § 702 ........ 9, 10

6 U.S.C. § 279 ..... 3

6 U.S.C. § 279(a) ..... 3

6 U.S.C. § 279(b)(1) ..... 3, 11

6 U.S.C. § 279(b)(1)(A) ..... 3

6 U.S.C. § 279(g)(2) ..... 3

8 U.S.C. § 1232 ..... 13

8 U.S.C. § 1232(b)(1) ..... 3

8 U.S.C. § 1232(c)(5) ..... 3, 12, 13

8 U.S.C. § 1232(i) ..... 11

8 U.S.C. § 1362 ..... 1, 3, 11

31 U.S.C. § 6305 ..... 3

**HSA:**

Pub. L. No. 107-296, 116 Stat. 2135 ..... 3

**Further Consolidated Appropriations Act, 2024:**

Pub. L. No. 118-47 ..... 4, 11

**Full-Year Continuing Appropriations and Extensions Act, 2025:**

Pub. L. No. 119-4 ..... 4, 11

**REGULATIONS**

45 C.F.R. Part 410 ..... 4

45 C.F.R. § 410.1309(a)(2)(i) ..... 4

45 C.F.R. § 410.1309(a)(2)(ii) ..... 4

45 C.F.R. § 410.1309(a)(2)(iii) ..... 4

45 C.F.R. § 410.1309(a)(2)(iv) ..... 4

45 C.F.R. § 410.1309(a)(2)(v) ..... 4

45 C.F.R. § 410.1309(a)(4) ..... 2, 4, 13

**FEDERAL RULES OF APPELLATE PROCEDURE**

Fed. R. Civ. P. 12(b)(1)........................................................................................................................ 1, 2, 6

## I. NOTICE OF MOTION

PLEASE TAKE NOTICE THAT at a time and date to be determined and as soon as this matter may be heard, before the Honorable Araceli Martínez-Olguín of the United States District Court for the Northern District of California, Defendants move to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) because the Court lacks jurisdiction over Plaintiffs' claims.[1]

## II. PRELIMINARY STATEMENT

On March 20, 2025, the Department of Health and Human Services ("HHS") Office of Refugee Resettlement ("ORR") directed the Department of the Interior ("DOI") to partially terminate contract line items for direct legal representation services ("direct representation") for unaccompanied alien children ("UAC"). This decision was consistent with HHS's statutory authority under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), which requires HHS to ensure, "to the greatest extent practicable" and consistent with 8 U.S.C. § 1362 (providing for representation "at no expense to the Government"), that UAC have counsel, making "every effort to utilize the services of pro bono counsel". Plaintiffs are legal service providers who were subcontractors under a contract with the Acacia Center for Justice ("Acacia"). They now seek to compel HHS and ORR to indefinitely fund direct legal representation for UAC through specific contracting arrangements.

Dismissal of the Complaint is warranted because this Court lacks subject matter jurisdiction. First, this matter is fundamentally a dispute over the partial termination of a federal contract that belongs exclusively in the U.S. Court of Federal Claims. The Administrative Procedure Act ("APA") does not waive sovereign immunity for claims, like Plaintiffs', which seek monetary relief or specific performance of contractual funding obligations. Plaintiffs' attempt to recast a contract termination as a violation of the APA cannot circumvent the Tucker Act's exclusive remedial scheme for such monetary claims. Indeed, the Supreme Court recently affirmed in *Department of Education. v. California* that district courts lack jurisdiction to order the payment of money under the APA for terminated government grants, and such cases must proceed, if at all, in the Court of Federal Claims. The relief Plaintiffs seek—the reinstatement of funding under the partially terminated contract—is precisely the type of monetary relief for which the APA does not waive immunity and which falls under the Tucker Act.

---

[1] Defendants reserve the right to move for dismissal for failure to state a claim upon which relief can be granted, at such time as permitted under Rule 12(h)(2).

Second, the APA does not waive sovereign immunity because HHS's funding decisions under the TVPRA and the Foundational Rule are committed to agency discretion by law. In addition to requiring that legal services be provided consistent with 8 U.S.C. § 1362, the TVPRA expressly conditions representation on agency discretion, including practicability and the availability of pro bono counsel. Similarly, the Foundational Rule governing the program, codified at 45 C.F.R. § 410.1309(a)(4), confirms that ORR's obligation to fund direct representation is contingent on ORR's determination that appropriations are available and that securing pro bono counsel is impractical, thereby underscoring the agency's discretionary authority. Decisions regarding whether and how to allocate resources from lump-sum appropriations, and how to terminate government contracts, particularly for the government's convenience, are classic examples of actions committed to agency discretion and are not subject to judicial review under the APA.

Furthermore, to the extent that Plaintiffs seek injunctive relief that is not specific to their own contractual rights, Plaintiffs lack Article III standing because they cannot establish redressability. A favorable ruling enjoining the termination and requiring funding for legal services generally would not guarantee that *these specific Plaintiffs* would receive funding, as HHS would retain discretion over how to allocate any available funds and with whom to contract. Plaintiffs' alleged injury, stemming from the loss of funding under a specific contract, is primarily financial and does not become a redressable "mission-based" injury simply because they are non-profit organizations.

For all these reasons, the Court lacks jurisdiction to review the Complaint, which should be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(1).

## III. BACKGROUND

### A. Legal Framework

The statutory and regulatory framework governing legal representation for UAC in federal care and custody is a coordinated scheme established by Congress to balance the protection of vulnerable children with the Executive's discretion over immigration and programmatic resource allocation. This framework primarily originates from two statutes: the Homeland Security Act of 2002 ("HSA") and the TVPRA.

#### 1. The Homeland Security Act ("HSA")

In 2002, Congress enacted the HSA, Pub. L. No. 107-296, 116 Stat. 2135 (codified in relevant part at 6 U.S.C. § 279), abolishing the Immigration and Naturalization Service ("INS") and transferring the

responsibility for functions under the immigration laws of the United States with respect to the care of UAC from INS to ORR. 6 U.S.C. § 279(a).

The HSA defines a UAC as "a child who—(A) has no lawful immigration status in the United States; (B) has not attained 18 years of age; and (C) with respect to whom— (i) there is no parent or legal guardian in the United States; or (ii) no parent or legal guardian in the United States is available to provide care and physical custody." 6 U.S.C. § 279(g)(2). Further, it assigns ORR broad authority over the care and custody of UAC who are in federal custody due to their immigration status, including coordinating their care and placement, developing plans to "ensure that qualified and independent legal counsel is timely appointed to represent the interests of each such child," ensuring that the interests of the child are considered in decisions and actions relating to the care and custody UAC, and implementing policies with respect to the care and placement of UAC. 6 U.S.C. § 279(b)(1)(A), (B), (E). ORR is also responsible for "compiling, updating, and publishing at least annually a state-by-state list of professionals or other entities qualified to provide guardian and attorney representation services for unaccompanied alien children." 6 U.S.C. § 279(b)(1)(I).

**2. The Trafficking Victims Protection Reauthorization Act ("TVPRA")**

Congress enacted the TVPRA in 2008 to strengthen protections for UAC and support their safe repatriation or appropriate placement. The statute provides that the Secretary of HHS "may award grants to, and enter into contracts with, voluntary agencies to carry out this section and section 279 of title 6." 8 U.S.C. § 1232(i). *See also* 31 U.S.C. chapter 63.

The statute, consistent with the HSA, makes the Secretary of HHS responsible for the care and custody of UAC. 8 U.S.C. § 1232(b)(1). The TVPRA explicitly directs HHS to prioritize the utilization of pro bono counsel and does not mandate direct government-funded legal representation: Section 235 of the TVPRA encourages HHS to ensure UAC have counsel "to the greatest extent practicable" and consistent with 8 U.S.C. § 1362 (specifying representation "at no expense to the Government"), and to "make every effort to utilize the services of pro bono counsel who agree to provide representation without charge." 8 U.S.C. § 1232(c)(5).

Further, Section 235 encourages HHS to ensure that counsel is available to represent UAC in "legal proceedings or matters," expressly linking representation duties with protecting children from "mistreatment, exploitation, and trafficking." Therefore, it is clear that HHS is not required to fund access to legal counsel for UAC. The TVPRA's language and structure demonstrate Congress's intent to establish

public-private partnerships and encourage pro bono counsel as the primary source of legal assistance for UAC and confer on ORR exclusive discretion to determine when direct government-funded representation might be utilized (e.g., where pro bono resources are impractical or unavailable).

**3. The Foundational Rule**

In April 2024, ORR promulgated the Unaccompanied Children Program Foundational Rule, codified at 45 C.F.R. Part 410, to establish comprehensive regulations governing its UAC program. The Rule, which became effective July 1, 2024, codified previously informal procedures and explicitly articulated ORR's discretion regarding legal representation funding. Specifically, the Rule provides that ORR "shall fund legal service providers to provide direct immigration legal representation for certain unaccompanied alien children" only "to the extent ORR determines that appropriations are available," and only if securing pro bono counsel is impractical. 45 C.F.R. § 410.1309(a)(4). After establishing these requirements, the same provision reiterates that ORR "shall fund legal service providers…*subject to ORR's discretion and available appropriations*." *Id.* (emphasis added).

In contrast, other subsections impose mandatory obligations. For instance, the Rule explicitly requires ORR to ensure UAC receive mandatory services such as a "presentation concerning the rights and responsibilities of undocumented children," "information regarding the availability of free legal assistance," and a "confidential legal consultation." 45 C.F.R. § 410.1309(a)(2)(i)-(v). This intentional distinction clarifies that direct funding for legal representation remains discretionary, conditional upon the availability of appropriations, and subject to agency determination. The Rule also reinforces congressional policy choices articulated in the TVPRA, highlighting the preferred reliance on pro bono counsel and emphasizing that direct representation services be provided "at no expense to the Government," and remain subject to the agency's discretionary resource management.

**4. Appropriations Acts and Congressional Intent**

Congress periodically appropriates funds to support ORR's UAC program, including legal services. Appropriations language, however, consistently remains broad and nonspecific regarding precise funding allocations for particular programs for UAC. For example, the Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, provides general appropriations to execute activities under Section 235 of the TVPRA without earmarking specific amounts for direct legal representation. This general appropriation approach allows ORR flexibility in determining the allocation of resources based on agency priorities, the availability of pro bono counsel, and shifting immigration policy needs.

Subsequent legislative actions, including the Full-Year Continuing Appropriations and Extensions Act, 2025, Pub. L. No. 119-4, maintain funding levels and provide broad discretion without altering statutory obligations or imposing specific mandates for funding legal representation. This ongoing legislative practice underscores Congress's intent to maintain flexibility for ORR, allowing the agency to prioritize resources efficiently and adaptively. Such discretionary funding practices reflect a longstanding Congressional policy to balance support for legal services with practical constraints, prioritizing public-private partnerships and pro bono resources where feasible, rather than imposing fixed or rigid funding mandates.

Indeed, at least one other court has considered this issue and determined that Congress did not specify what types of legal services ORR must fund with the appropriations intended for carrying out Section 235 of the TVPRA. *Lucas R. v. Becerra*, No. CV 18-5741, 2022 WL 2177454, at *31 (C.D. Cal. Mar. 11, 2022) (holding that the agency retained discretion even when vulnerable populations are involved). Rather, ORR is "entitled to prioritize what type of legal representation ORR supports with appropriated funds, in furtherance of the TVPRA." *Id.* The same analysis applies here: without a mandate from Congress in the most recent appropriations legislation, ORR has discretion to prioritize what types of services it funds to further the purpose of the TVPRA.

**B. The Current Contract and Termination Decision**

The present dispute arises from ORR's partial termination and descoping of a federal contract administered by the Department of the Interior ("DOI"), which serves as the contracting agent through its Interior Business Center. ORR directed DOI to partially terminate a contract with Acacia previously funding direct legal representation services. This termination was executed through a formal decision memorandum signed by the Acting Assistant Secretary of the Administration for Children and Families ("ACF").

This contract termination aligns with ORR's statutory and regulatory discretion under the TVPRA, the Foundational Rule, and relevant appropriations acts, none of which mandate continuous, direct legal representation funding when viable alternatives, such as pro bono representation, exist. Additionally, the termination decision reflects ORR's commitment to fiscal responsibility, ensuring that limited resources are allocated effectively, prudently managing public funds, and preserving governmental flexibility to respond to evolving priorities and urgent programmatic needs.

## IV. STANDARD OF REVIEW

Dismissal is appropriate under Rule 12(b)(1) when the court lacks subject matter jurisdiction over the claim. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); Fed. R. Civ. P. 12(b)(1). "Subject matter jurisdiction is a threshold issue which goes to the power of the court to hear the case." *Id.* A motion to dismiss for lack of subject matter jurisdiction will be granted if the complaint on its face fails to allege facts sufficient to establish subject matter jurisdiction. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

## V. ARGUMENT

### A. The Tucker Act Precludes Jurisdiction Under the APA.

This Court lacks subject-matter jurisdiction because the Tucker Act precludes Plaintiffs from bringing their claims under the APA. Although Plaintiffs assert that their claims arise under the TVPRA and HHS's Foundational Rule, well-established case law confirms that Plaintiffs' claims sound in contract and therefore must be brought in the Federal Court of Claims.

The APA explicitly does not apply "to the extent that statutes preclude judicial review." 5 U.S.C. § 701(a)(1). The Tucker Act "impliedly forbids" APA claims involving government contracts. *North Side Lumber Co. v. Block*, 753 F.2d 1482, 1485 (9th Cir. 1985) (citation omitted), *cert. denied*, 474 U.S. 931 (1985). "[A]n action against the United States which is *at its essence* a contract claim lies within the Tucker Act and . . . a district court has no power to grant injunctive relief in such a case." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982) (emphasis added). If a plaintiff's claim is "concerned solely with rights created within the contractual relationship and has nothing to do with duties arising independently" of the contract, then its claim is based upon a contract with the United States and subject to the jurisdictional restrictions in the Tucker Act. *North Side Lumber*, 753 F.2d at 1486 (citing *Megapulse*, 672 F.2d at 967–68).

To determine whether the Tucker Act precludes a contract claim "disguised" as an APA claim, the Ninth Circuit employs the D.C. Circuit's *Megapulse* test. *United Aeronautical Corp. v. United States Air Force*, 80 F.4th 1017, 1025-26 (9th Cir. 2023) (citing *Megapulse*, 672 F.2d at 967-68). Under *Megapulse*, a court must decide whether "the source of the rights upon which the plaintiff bases its claims" arises under a contract and whether "the type of relief sought" is normally available as a contract remedy. *Id*. "If rights and remedies are *statutorily* or *constitutionally* based, then district courts have jurisdiction; if rights

and remedies are *contractually* based then only the Court of Federal Claims does, even if the plaintiff formally seeks injunctive relief." *Id*. (emphasis in original).

To assess the "source of rights" that form the basis of the plaintiff's claim, the Court must consider whether Plaintiffs' asserted rights arise from statute or contract, whether such rights exist prior to and apart from rights created under the contract, and whether Plaintiffs seek to enforce a duty imposed by the relevant contract. *See Crowley Gov't Servs., Inc. v. GSA*, 38 F.4th 1099, 1107 (D.C. Cir. 2022). Here, these considerations confirm that Plaintiffs' source of rights is a contract. First, Plaintiffs' only asserted rights to payment arise under the subcontracts they had pursuant to Acacia's prime contract with the government; neither the TVPRA nor HHS's Foundational Rule provide *these Plaintiffs* any direct right to the funds Congress appropriated. Second, Plaintiffs' alleged rights to funding cannot "exist prior to and apart from rights created under the contract." *Crowley*, 38 F.4th at 1107. Had Acacia never entered a contract with the United States to provide direct legal services to UAC, Plaintiffs would have never received funding to provide such services and would have no injury to complain of. Thus, their alleged rights do not predate the Acacia contract, nor are they entitled to funds apart from it. Third, Plaintiffs seek to enforce a duty imposed by the contract. Throughout their Complaint, they challenge the Government's "Cancellation Order," which partially terminated the contract with Acacia, as the basis of their injuries. While Plaintiffs stop short of directly asking the Court to reinstate the Acacia contract–likely to avoid the Tucker Act–this is the only relief that would redress their alleged financial injuries. Plaintiffs' Motions to Enforce the TRO underscored this point: Plaintiffs complained that the Government had not complied with the TRO because they had not received funding. *See* Plaintiffs' Motions to Enforce, ECF Nos. 40, 53. As the Government explained in its status reports, Plaintiffs' funding is contingent on a contract with Acacia. *See* Defendants' Status Reports, ECF Nos. 45, 91, 98, 104. Regardless of how they frame it, Plaintiffs seek to enforce the Acacia contract, as it is their only source of rights to funding.

Under the second prong of *Megapulse*, the Court must determine whether the type of relief is typical in actions that sound in contract. *A & S Council Oil Co. v. Lader*, 56 F.3d 234, 240 (D.C. Cir. 1995). A claim is subject to the Tucker Act if, "in whole or in part, it explicitly or 'in essence' seeks more than $10,000 in monetary relief from the federal government." *Crowley*, 38 F.4th at 1107 (citation omitted). Plaintiffs clearly seek monetary relief well in excess of $10,000. In *United States Conf. of Cath. Bishops v. U.S. Dep't of State*, --- F.Supp.3d ----, 2025 WL 763738, at *5 (D.D.C. Mar. 11, 2025), a district court held that a similar APA suit to restore terminated grant funding must be heard in the Court

of Federal Claims because the relief sought was for "the Government to keep paying up" and thus "sounds in contract." Likewise here, Plaintiffs cannot sidestep the Tucker Act. Because the rights and remedies they assert are fundamentally contractual, exclusive jurisdiction lies in the Court of Federal Claims.

The Supreme Court has recently confirmed that the government is likely to succeed in showing this Court lacks jurisdiction over Plaintiffs' claims. In *Dep't of Educ. v. California*, 145 S. Ct. 966 (2025), various States brought suit under the APA, arguing that the Department of Education's decision to withhold appropriated funds from the States was arbitrary and capricious. The district court granted a TRO, finding that it had jurisdiction over the States' claims because their disputes hinged on federal statute and regulations. The Supreme Court, however, granted the government's emergency application for relief and stayed the TRO. It held that the "Government is likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA." *Id*. at 968. The government is likely to succeed on the merits for the same reasons here.

As discussed, Plaintiffs cannot point to any constitutional provision, statute, or regulation that entitles them to federal payment. Rather, their rights, to the extent they have any as subcontractors, arise solely from the Acacia Contract. If not for the Acacia Contract, plaintiffs would have no standing and no claims. At bottom, Plaintiffs' asserted *harms* are contractual, so their asserted *rights* are contractual. The statute does not confer a right for *Plaintiffs* to be funded under the TVPRA—rather, to the extent Plaintiffs have any right to funding, it arises only under the contract. And Plaintiffs requested that their prime contract be reinstated. *See* Complaint, ECF No. 1, 39 (prayer for relief seeking judicial declaration setting aside contract termination and an order compelling Defendants' continued funding of legal representation). This is exactly the type of claim that must be pursued in the Court of Federal Claims. Because the remedy reinstates the Acacia Contract, this case presents precisely the type of "disguised" contract claim which the Ninth Circuit held in *United Aeronautical Corporation* must proceed only under the Tucker Act. 80 F.4th at 1026.

Even if Plaintiffs, as subcontractors, face limitations in directly pursuing claims in the Court of Federal Claims without the prime contractor's cooperation, *see Erickson Air Crane Co. of Wash., Inc. v. United States*, 731 F.2d 810, 813 (Fed. Cir. 1984), such limitations do not confer jurisdiction upon this Court under the APA where it is otherwise lacking. The APA does not exist to "guarantee a federal forum" for any grievance against an agency. *Allen v. Milas*, 896 F.3d 1094, 1099 (9th Cir. 2018).

In sum, Plaintiffs seek what the Tucker Act forbids: judicial enforcement of a discontinued funding arrangement disguised as APA review. Their claims are inextricably linked to the now partially terminated contract with Acacia, and they identify no legal entitlement to *their* continued funding independent of that agreement. Without the contract, there is no injury, no enforceable right, and no legal pathway to relief. Because their asserted harm arises solely from the termination of a contractual relationship–and the relief they seek is monetary–their claims fall squarely within the jurisdiction of the Court of Federal Claims.

**B. The APA Does Not Waive Sovereign Immunity for the Relief Plaintiffs Seek.**

Although Plaintiffs style their claim as an APA claim for injunctive and declaratory relief, their core demand is payment under a partially terminated contract. *See* Complaint, ECF No. 1, 39. This Court lacks jurisdiction to order such relief because the APA's limited waiver of sovereign immunity explicitly does not extend to claims seeking monetary relief. 5 U.S.C. § 702. Because Plaintiffs' claim is, in essence, a demand to compel the payment of money, it falls outside the APA's waiver and belongs, if anywhere, in the U.S. Court of Federal Claims.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). The Supreme Court has "frequently held" that a waiver of sovereign immunity must be "strictly construed, in terms of its scope, in favor of the sovereign." *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999). Plaintiffs have the burden of proving they meet this "high standard." *Id.* The APA's waiver of sovereign immunity only applies to actions "seeking relief other than money damages." 5 U.S.C. § 702. The Supreme Court has explained that suits seeking to compel the Government to pay a sum of money are suits for "money damages,"—regardless of whether they seek this relief through judgment, injunction, or declaration. *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (citing *Bowen v. Massachusetts*, 487 U.S. 879, 918–919 (1988) (Scalia, J., dissenting)).

The APA does not waive sovereign immunity over the relief that Plaintiffs seek: payment. Specifically, Plaintiffs ask this Court to: (1) declare that "Defendants are required to *continue funding* legal representation to unaccompanied children, consistent with the TVPRA and ORR's Foundational Rule; (2) enjoin Defendants nationwide from *ceasing to fund counsel* to represent unaccompanied children in violation of the TVPRA and the Foundational Rule; (3) to declare that Defendants' actions violate the APA; and (4) to set aside Defendants' actions. ECF No. 1, at 39. Regardless of whether Plaintiffs style their relief as a judgment, injunction, or declaration, it is undeniable that they are seeking to compel the government to pay money, which is relief unavailable under the APA. *See Dep't of Educ.*, 145 S. Ct. at

968. Because the APA does not waive sovereign immunity over Plaintiffs' claims for continued funding, this Court lacks jurisdiction over their claims.

**C. The APA Does Not Waive Sovereign Immunity Because HHS's Funding Decisions are Committed to Agency Discretion.**

The APA also does not provide a waiver of sovereign immunity here because HHS's funding decisions under the TVPRA and the Foundational Rule are discretionary. The APA does not permit judicial review of "agency action" that "is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The TVPRA provides HHS broad discretion in determining how to provide legal services to unaccompanied alien children. While Section 235 of the TVPRA mandates that HHS ensure that counsel is available to represent UAC "to the greatest extent practicable" in "legal proceedings or matters," it also cross-references the provision of the INA—8 U.S.C. § 1362—which specifies that "the privilege" of being represented in removal proceedings is extended only "at no expense to the Government". The TVPRA also directs HHS to "make every effort to utilize the services of *pro bono* counsel who agree to provide representation without charge."

Likewise, the Foundational Rule explicitly articulates ORR's discretion regarding legal representation funding. It provides that ORR "shall fund legal service providers to provide direct immigration legal representation for certain unaccompanied children" only "to the extent ORR determines that appropriations are available," and only if securing pro bono counsel is impractical. The decision is expressly "subject to ORR's discretion and available appropriations." 45 C.F.R. § 410.1309(a)(4).

Moreover, Congress's funding of ORR's UAC program, including legal services, demonstrates that HHS has been allowed discretion in how it allocates resources. For example, the Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, provides general appropriations to execute activities under Section 235 of the TVPRA without earmarking explicit amounts for direct legal representation. And subsequent acts, including the Full-Year Continuing Appropriations and Extensions Act, 2025, Pub. L. No. 119-4, similarly maintain funding levels and provide broad discretion without altering statutory obligations or imposing specific mandates for funding legal representation. This ongoing legislative practice underscores Congress's intent to maintain flexibility for ORR, allowing the agency to prioritize resources efficiently and adaptively. *See also* 6 U.S.C. § 279(b)(1) (making the Director of ORR responsible for activities including coordinating and implementing the care of UAC and implementing policies with respect to their care and placement); 8 U.S.C. § 1232(i) (authorizing the Secretary of HHS

to "award grants to, and enter into contracts with, voluntary agencies to carry out this section and section 279 of title 6").

This court therefore lacks jurisdiction because decisions about the substance of HHS's decision to reallocate resources from direct representation into other aspects of the UAC program are firmly committed to the agency's discretion. In *Lincoln v. Vigil*, 508 U.S. 182 (1993), the Supreme Court held that the Indian Health Service's decision to discontinue a program it had previously funded and to instead reallocate those funds to other programs was committed to agency discretion by law and thus not reviewable under the APA's reasoned-decision-making standards. *See id*. at 185-88. The Court explained that the "allocation of funds from a lump-sum appropriation is" an "administrative decision traditionally regarded as committed to agency discretion," because the "very point of a lump-sum appropriation is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way." *Id*. at 192.

Indeed, an agency's allocation of funds from a lump-sum appropriation requires "a complicated balancing of a number of factors which are peculiarly within its expertise": whether its "resources are best spent" on one program or another; whether it "is likely to succeed" in fulfilling its statutory mandate; whether a particular program "best fits the agency's overall policies"; and, "indeed, whether the agency has enough resources to fund a program at all." *Id.* at 193 (internal citations omitted). "Congress may always circumscribe agency discretion to allocate resources by putting restrictions in the operative statutes." *Id.* But as long as the agency abides by the relevant statutes (and whatever self-imposed obligations may arise from regulations or grant instruments), the APA "gives the courts no leave to intrude." *Id.* Because the TVPRA confers HHS discretion to determine how best to allocate and administer the funding for the UAC program, HHS's decisions are not subject to review under the APA.

Plaintiffs may argue that *Lincoln* has no application here because, in their view, the agency has failed to carry out a program that is *required* by statute. This argument fails because the TVPRA does not *require* the specific funding Plaintiffs demand. To the contrary, the statute only requires that, consistent with 8 U.S.C. § 1362, ORR "shall ensure, to the greatest extent practicable," that unaccompanied alien children have representation by counsel. 8 U.S.C. § 1232(c)(5). The statute nowhere commands that every such child be given legal representation at federal expense; instead, it explicitly provides that the agency must aim to provide *pro bono* counsel whenever possible. *Id*. The Foundational Rule, for its part, confirms this discretion:

> To the extent ORR determines that appropriations are available, and insofar as it is not practicable for ORR to secure pro bono counsel, ORR shall fund legal service providers to provide direct immigration legal representation for certain unaccompanied children, *subject to ORR's discretion and available appropriations*. . . .

45 C.F.R. § 410.1309(a)(4) (emphasis added). The Foundational Rule thus makes clear that the decision to fund direct legal representation services is entirely subject to agency discretion. In short, because the TVPRA and the Foundational Rule confer discretion upon the agency to determine the best allocation of its resources, the APA bars this Court from reviewing the agency's challenged funding decision. *See* 5 U.S.C. § 701(a)(2).

**D. Plaintiffs Lack Article III Standing.**

To the extent that Plaintiffs seek relief beyond reinstatement of the Acacia contract, they face yet another jurisdictional bar: they lack Article III standing. "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) (quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101 (1998)). "In that event, the suit should be dismissed under Rule 12(b)(1)." *Id.*

Here, Plaintiffs fail to demonstrate Article III standing because they cannot show that the relief they seek would likely redress their alleged harm. The "irreducible constitutional minimum" of Article III standing consists of (1) "injury in fact," (2) "a causal connection between the injury and the conduct complained of," and (3) a likelihood "that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (quotation marks omitted). The third element, redressability, requires that it "be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (citation and internal quotation marks omitted). To show a likelihood of redressability, Plaintiffs must "show that there would be a 'change in a legal status' as a consequence of a favorable decision" and that this change would significantly increase the likelihood that they would obtain the relief sought. *Novak v. United States*, 795 F.3d 1012, 1019–20 (9th Cir. 2015) (quoting *Renee v. Duncan*, 686 F.3d 1002, 1013 (9th Cir. 2012)).

Plaintiffs cannot make that showing here. The relief that Plaintiffs seek—if untethered to their specific contract claim—would not likely result in the monetary relief they desire. First, simply ordering Defendants to enforce the TVPRA as written might have the opposite effect, since Congress directed HHS

to endeavor to provide representation for unaccompanied alien children where practicable while making "every effort to utilize the services of *pro bono* counsel." 8 U.S.C. § 1232(c)(5). If the Court were to enforce the plain language of the TVPRA, it would direct the government to seek out *pro bono* counsel and avoid funding legal services at government expense.

Further, even an order requiring that Defendants reinstate funding for legal representation for UAC would not redress Plaintiffs' asserted injuries. Because the TVPRA and the Foundational Rule provide HHS with discretion as to the recipients of funding for direct legal services, Plaintiffs cannot show that ordering HHS to comply with its regulations would redress *their* injury. Even if HHS were ordered to disburse funding for this particular program, it could contract with organizations other than Acacia. There is nothing that Plaintiffs can cite to that would require HHS to continue funding the Plaintiffs in this case.

Finally, to the extent Plaintiffs purport to frame their alleged harm as the impairment of their "mission[] to provide representation for as many unaccompanied children as possible," this impairment is inextricably connected to the "cancellation of [their] funding," which makes this case, in essence, a claim for continued funding. Complaint, ECF No. 1, 39. Courts routinely reject efforts to inflate financial harm into mission-based injury when the true source of the injury is the loss of a government contract or grant. Even under the "modest" standard of redressability cited in *Renee v. Duncan*, Plaintiffs cannot show a meaningful change in legal status that would significantly increase the likelihood of renewed funding *for them*. The TVPRA and Foundational Rule confer no entitlement to such funding *on Plaintiffs*, and nothing about a favorable ruling on the merits would create a long-term, direct pathway for money to flow back to these specific Plaintiffs.

Because a favorable APA order would not necessitate renewed payments to Plaintiffs, and because neither the TVPRA nor the Foundational Rule require funding for legal representation to begin with, they cannot satisfy redressability. Their alleged injuries—loss of funding and programmatic cutbacks—are economic harms that could only be remedied by an award of money, which is unavailable under the APA. Accordingly, Plaintiffs lack Article III standing, and the Court should dismiss the Complaint for lack of jurisdiction. *See Cetacean Cmty.*, 386 F.3d at 1174.

**VI. CONCLUSION**

For the foregoing reasons, Plaintiffs' Complaint should be dismissed in its entirety for lack of subject matter jurisdiction.

DATED: June 6, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

WILLIAM C. SILVIS
Assistant Director

CHRISTINA PARASCANDOLA
KATELYN MASETTA ALVAREZ
JONATHAN K. ROSS
MICHAEL A. CELONE
Senior Litigation Counsels

ZACHARY A. CARDIN
Trial Attorney

/s/ Michael A. Celone
MICHAEL A. CELONE
Senior Litigation Counsel
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305-2040
Michael.A.Celone@usdoj.gov

Attorneys for Defendants