GIBSON, DUNN & CRUTCHER LLP
Katherine Marquart (CA Bar No. 248043)
Ariana Sañudo (CA Bar No. 324361)
Arthur Halliday (CA Bar No. 347620)
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7000
kmarquart@gibsondunn.com
asanudo@gibsondunn.com
ahalliday@gibsondunn.com

Laura M. Sturges (CO Bar No. 36843) (*pro hac vice*)
Patricia M. Herold (CO Bar No. 54552) (*pro hac vice*)
Caelin Moriarity Miltko (CO Bar No. 56721) (*pro hac vice*)
1900 Lawrence Street, Suite 3000
Denver, CO 80202-2211
(303) 298-5700
lsturges@gibsondunn.com
pherold@gibsondunn.com
cmoriaritymiltko@gibsondunn.com

IMMIGRANT DEFENDERS LAW CENTER
Alvaro M. Huerta (CA Bar No. 274787)
Carson A. Scott (CA Bar No. 337102)
Lya Ferreyra (CA Bar No. 340148)
Immigrant Defenders Law Center
634 S. Spring St., 10th Floor
Los Angeles, CA
(213) 634-0999
ahuerta@immdef.org
cscott@immdef.org
lferreyra@immdef.org

JUSTICE ACTION CENTER
Esther H. Sung (*pro hac vice*)
Karen C. Tumlin (CA Bar No. 234691)
Laura Flores-Perilla (CA Bar No. 355645)
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
(323) 450-7272
esther.sung@justiceactioncenter.org
karen.tumlin@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org

AMICA CENTER FOR IMMIGRANT RIGHTS
Adina Appelbaum (*pro hac vice*)
Samantha Hsieh (*pro hac vice*)
Peter Alfredson (D.C. Bar No. 1780258)
Evan Benz (*pro hac vice*)
Amica Center for Immigrant Rights
1025 Connecticut Ave., NW, Suite 701
Washington, D.C. 20036
(202) 331-3320
adina@amicacenter.org
sam@amicacenter.org
peter@amicacenter.org
evan@amicacenter.org

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, *et al.*, <br><br> Plaintiffs, | Case No. 3:25-CV-02847-AMO <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** <br><br> Date:       July 31, 2025 |

v.

UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES, *et al.*,

        Defendants.

Time:        2:00 p.m.
Judge:      Hon. Araceli Martínez-Olguín
Trial Date:  Courtroom 10
Date Action Filed:  March 26, 2025

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................................1

BACKGROUND ................................................................................................................2

    A. ...... CONGRESS DIRECTED HHS TO FUND COUNSEL FOR UNACCOMPANIED CHILDREN. .. 2

    B........ ORR'S REGULATIONS REQUIRE FUNDING FOR LEGAL SERVICES FOR UNACCOMPANIED CHILDREN CONSISTENT WITH AVAILABLE APPROPRIATIONS. ............................................. 3

    C........ DEFENDANTS TERMINATED FUNDING FOR LEGAL REPRESENTATION FOR UNACCOMPANIED CHILDREN..................................................................................... 4

STANDARD OF REVIEW ................................................................................................4

ARGUMENT ....................................................................................................................5

    A. ...... THIS COURT HAS JURISDICTION AS THE TUCKER ACT DOES NOT APPLY.................. 5

    B........ DEFENDANTS' ACTIONS ARE REVIEWABLE UNDER THE APA............................... 10

    C........ PLAINTIFFS HAVE ARTICLE III STANDING, AND THEIR CLAIMS ARE REDRESSABLE BY THIS COURT..................................................................................................... 14

CONCLUSION ...............................................................................................................15

# TABLE OF AUTHORITIES

## Cases

*AIDS Vaccine Advocacy Coalition v. Dep't of State*,
  2025 WL 752378 (D.D.C. Mar. 10, 2025).................................................................15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................4, 5

*ASSE Int'l, Inc. v. Kerry*,
  803 F.3d 1059 (9th Cir. 2015).......................................................................................12

*Bowen v. Massachusetts*,
  487 U.S. 879 (1988) .............................................................................................7, 8, 9

*Calvert Cliffs' Coordinating Comm., Inc. v. U. S. Atomic Energy Comm'n*,
  449 F.2d 1109 (D.C. Cir. 1971) .....................................................................................12

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
  401 U.S. 402 (1971) ....................................................................................................11

*City of Los Angeles v. U.S. Dep't of Com.*,
  307 F.3d 859 (9th Cir. 2002)..........................................................................................11

*Cmty. Legal Servs. in East Palo Alto v. Dep't of Health and Human Servs.*,
  No. 25-2808, Dkt. 103 (9th Cir. May 14, 2025).....................................1, 5, 6, 7, 8, 11, 12, 13

*Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*,
  38 F.4th 1099 (D.C. Cir. 2022) .................................................................................7, 8

*Department of Education v. California*,
  145 S. Ct. 966 (2025) ...............................................................................................7, 8

*E. Bay Sanctuary Covenant v. Trump*,
  932 F.3d 742 (9th Cir. 2018)..........................................................................................15

*Gideon v. Wainwright*,
  372 U.S. 335 (1963) .....................................................................................................13

*Jajati v. U.S. Customs & Border Prot.*,
  102 F.4th 1011 (9th Cir. 2024)...............................................................................10, 13

*Leite v. Crane Co.*,
  749 F.3d 1117 (9th Cir. 2014)..........................................................................................5

*Lincoln v. Vigil*,
  508 U.S. 182 (1993) .............................................................................................10, 13

*Loper Bright Enters. v. Raimondo*,
  603 U.S. 369 (2024) .....................................................................................................10

*Maine v. U.S. Dep't. of Agric.*,
  2025 WL 1088946 (D. Me. Apr. 11, 2025) .......................................................................9

*Maryland v. Corp. for Nat'l and Community Serv.*,
  2025 WL 1585051 (D. Md. June 5, 2025) .........................................................................9

*Megapulse, Inc. v. Lewis*,
  672 F.2d 959 (D.C. Cir. 1982) .............................................................................5, 6, 9

*North Side Lumber Co. v. Block*,
  753 F.2d 1482 (9th Cir. 1985) ...........................................................................6, 7, 8

*Pac. Nw. Generating Coop. v. Bonneville Power Admin.*,
  596 F.3d 1065 (9th Cir. 2010) ..........................................................................11

*Perez Perez v. Wolf*,
  943 F.3d 853 (9th Cir. 2019) ...........................................................................10

*Pinnacle Armor, Inc. v. United States*,
  648 F.3d 708 (9th Cir. 2011) ...........................................................................4

*Renee v. Duncan*,
  686 F.3d 1002 (9th Cir. 2012) ..........................................................................14

*Rhode Island v. Trump*,
  2025 WL 1303868 (D.R.I. May 6, 2025) ..........................................................................9

*Robbins v. Reagan*,
  780 F.2d 37 (D.C. Cir. 1985) ...........................................................................10, 13

*Snyder & Assocs. Acquisitions LLC v. United States*,
  859 F.3d 1152 (9th Cir. 2017) ..........................................................................5

*United Aeronautical Corp. v. U.S. Air Force*,
  80 F.4th 1017 (9th Cir. 2023) ..........................................................................5, 6, 8

*United States Conference of Catholic Bishops v. Department of State*,
  2025 WL 763738 (D.D.C. Mar. 11, 2025) ..........................................................................8

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*,
  586 U.S. 9 (2018) ...........................................................................10

*Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*,
  2025 WL 1116157 (D.R.I. Apr. 15, 2025) ..........................................................................9

**Statutes**

5 U.S.C. § 702 ...........................................................................5, 7

6 U.S.C. § 279(b)(1)(A) ...........................................................................2

8 U.S.C. § 1232(c)(5) ...........................................................................3, 12

8 U.S.C. § 1362 ..................................................................................................... 13

Full-Year Continuing Appropriations and Extensions Act, 2025, Pub. L. 119-4,
    Div. A, tit. I, § 1101(8) (2025) ...................................................................... 4, 12

Further Consolidated Appropriations Act, 2024, Pub. L. 118-47, Div. D Tit. I, 138
    Stat. 460, 664–65 (2024) .............................................................................. 3, 12

## Other Authorities

S. Rep. 118-84 ................................................................................................... 3, 12

## Rules

Federal Rule of Civil Procedure 12 ........................................................................ 4

Federal Rule of Civil Procedure 12(b)(1) ............................................................... 5

## Treatises

on contracts ............................................................................................................ 7

## Regulations

45 C.F.R. § 410.1309(a)(4) ................................................................................ 3, 13

45 C.F.R. § 410.1309(d) ......................................................................................... 3

89 Fed. Reg. 34384 ................................................................................................. 3

89 Fed. Reg. 34529 ................................................................................................. 3

## INTRODUCTION

Unaccompanied children—in the United States without a parent or guardian—have little hope of navigating the immigration system without legal representation. Recognizing their unique vulnerability, Congress has mandated that the government provide legal representation for unaccompanied children and consistently appropriated funds for that purpose. Defendant agencies ("Defendants") chose to violate this congressional mandate, summarily terminating legal representation for unaccompanied children, violating governing law, and causing unaccompanied children and the organizations that serve them irreparable injury. The Court recognized the violation of law and enjoined Defendants from stopping funds for the services required by statute and regulation, including "funds for direct legal representation services to unaccompanied children." Dkt. 33 at 7 ("TRO"); Dkt. 87 at 28 ("PI Order"). The Ninth Circuit agreed and denied Defendants' motion for a stay pending appeal. *See Cmty. Legal Servs. in East Palo Alto v. Dep't of Health and Human Servs.*, No. 25-2808, Dkt. 103 (9th Cir. May 14, 2025) ("Ninth Cir. Op.").

Defendants' fifth bite at the apple, which seeks an order dismissing Plaintiffs' complaint, raises the same jurisdictional arguments this Court has rejected three times (and the Ninth Circuit has rejected once)—first in granting Plaintiffs' motion for a temporary restraining order, second in granting Plaintiffs' motion for a preliminary injunction, and third in denying Defendants' motion for a stay pending appeal. Defendants do not raise a single new argument (because there is nothing more to say), but somehow expect a different result. This Court should again reject these regurgitated and meritless arguments.

Defendants' argument that this is a contract case that must be brought in the Court of Federal Claims fails under prevailing, undisturbed case law. Because the relevant statute (the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, 122 Stat. 5044 ("TVPRA")) and relevant regulation (the Office of Refugee

Resettlement's ("ORR") Foundational Rule) set standards that a court can assess and enforce, Defendants do not have unreviewable discretion over this program. Finally, Plaintiffs' requested relief would redress the harms caused by Defendants' actions. The Court should deny the Government's motion.

## BACKGROUND

### A. Congress Directed HHS to Fund Counsel for Unaccompanied Children.

In FY 2024 alone, the United States identified nearly 100,000 new children as unaccompanied children ("UCs") after arriving in the country without a parent or legal guardian. Dkt. 1 ¶ 41 ("Compl."). The government has recognized that UCs are uniquely vulnerable to trafficking, abuse, and injustices in the immigration system. *Id.* ¶ 42. Consequently, Congress, through the TVPRA, provides unaccompanied children special legal rights. *Id*. ¶¶ 45–46. But their rights are meaningless without tools to exercise them, including legal counsel. *Id.* ¶ 47.

In the Homeland Security Act of 2002, Congress gave the Department of Health and Human Services ("HHS") and ORR custody of UCs and commanded they "develop[] a plan . . . to ensure that qualified and independent legal counsel is timely appointed to represent the interests of each such [unaccompanied] child." Compl. ¶ 50; 6 U.S.C. § 279(b)(1)(A). ORR developed a pilot program to meet UCs' legal needs through pro bono legal services. Compl. ¶ 51. The pilot concluded that volunteer attorneys alone were insufficient to meet unaccompanied children's representation needs and paid attorneys would be needed to implement the statutory program. *Id.* ¶ 53. This spurred Congress to impose additional representation-related requirements on ORR and HHS through the TVPRA. *Id*. ¶ 54.

Recognizing the importance of representation and that volunteer attorneys were not sufficient to meet the demand, Congress required the government to provide direct legal representation services to unaccompanied children and has appropriated funds for these services

since 2009.  The TVPRA, passed in 2008 and consistently reauthorized with bipartisan support (most recently in 2023), mandates that HHS must provide counsel for UCs:  "The Secretary of [HHS] *shall ensure*, to the greatest extent practicable . . . that all [UCs] who are or have been in the custody of the Secretary or the Secretary of Homeland Security . . . have counsel to represent them in legal proceedings or matters."  Compl. ¶ 54; 8 U.S.C. §1232(c)(5) (emphasis added).

### B.  ORR's Regulations Require Funding for Legal Services for Unaccompanied Children Consistent with Available Appropriations.

ORR has recognized "that most unaccompanied children need legal services to resolve their immigration status," and identified a goal of 100% representation for UCs.  Compl. ¶ 70; Unaccompanied Children Program Foundational Rule, 89 Fed. Reg. 34384, 34526, 34529 (Apr. 30, 2024).  To comply with the TVPRA and the Immigration and Nationality Act ("INA"), ORR implemented its Foundational Rule that ORR must "ensure that all unaccompanied children who are or have been in ORR care have access to counsel" and commands that, "[t]o the extent ORR determines that appropriations are available, and insofar as it is not practicable for ORR to secure pro bono counsel, ORR shall fund legal service providers to provide direct immigration legal representation for certain unaccompanied children, subject to ORR's discretion and available appropriations."  Compl. ¶¶ 5, 70, 82; 45 C.F.R. § 410.1309(a)(4), (d).

Appropriations are available.  On March 23, 2024, Congress passed the Further Consolidated Appropriations Act of 2024, specifically appropriating funds through September 30, 2026, "for carrying out" section 235 of the TVPRA.  Compl. ¶ 37; Pub. L. 118-47, Div. D, tit. II, 138 Stat. 460, 664 (2024).  The Senate Appropriations Committee Report restated the TVPRA's mandate:  "The Committee also expects these funds will be used to provide access to counsel, consistent with the goals of the [TVPRA] for all children to have access to counsel in their immigration proceedings."  Compl. ¶ 85; S. Rep. 118-84, at 169.  On March 15, 2025, Congress

continued this funding through September 30, 2027.  Compl. ¶¶ 86–87; Full-Year Continuing Appropriations and Extensions Act, 2025, Pub. L. 119-4, Div. A, tit. I, § 1101(8) (2025). Defendants executed this law by contracting with Acacia Center for Justice ("Acacia"), which subcontracted with locally-based, non-profit organizations experienced in providing legal services to unaccompanied children, like Provider-Plaintiffs, to provide legal representation for UCs.  Compl. ¶¶ 64–65.

### C. Defendants Terminated Funding for Legal Representation for Unaccompanied Children.

On March 21, 2025, the Department of the Interior sent a notice to Acacia announcing Defendants were terminating funding for legal representation for UCs that day, commanding Providers to "immediately stop work" on any active representations and stop taking on new engagements.  Compl. ¶ 95.  It provided no explanation for the termination or guidance on how to handle existing representations, including those with imminent court hearings.  *Id.* ¶¶ 95–97.

The termination had devastating, irreparable effects on Providers' mission-driven work to represent unaccompanied children.  Compl. ¶¶ 98–126.  It forced Providers to engage in mass staff layoffs, *see, e.g.*, *id.* ¶¶ 99–101 (describing layoffs and budget shortfalls), further frustrating their ability to represent the UCs they are committed to serve—including those with claims to lawful immigration status and no practicable alternative counsel.

### STANDARD OF REVIEW

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12, a plaintiff "only needs to allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 721 (9th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable."  *Iqbal*,

556 U.S. at 678.  The Court must "accept as true" all factual allegations in the complaint, *id.*, and draw all reasonable inferences in Plaintiffs' favor, *see Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1157 (9th Cir. 2017) (citing *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)).  The same standard applies when a plaintiff challenges subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  *See Leite*, 749 F.3d at 1121.

## ARGUMENT

### A.  This Court Has Jurisdiction as the Tucker Act Does Not Apply.

This Court has properly exercised its jurisdiction over Plaintiffs' claims.  As this Court concluded three times, and as the Ninth Circuit agreed, Plaintiffs bring APA claims and seek declaratory and injunctive relief to "enforce compliance with statutes and regulations, not any government contract."  Ninth Cir. Op. at 8; *see also* TRO at 3; PI Order at 13; Dkt. 107 at 1.  As such, the Tucker Act does not apply, and the APA waives sovereign immunity.  Defendants' motion rehashes the same jurisdictional arguments this Court previously rejected, including Defendants' claim that Plaintiffs somehow "disguis[e]" a contract claim as an APA challenge. Dkt. 110 at 8, 12 ("MTD").  But it is Defendants who seek to evade APA review by trying to contort Plaintiffs' valid APA claims into contract ones.

The Tucker Act deprives district courts of jurisdiction over APA claims only if the claims are (1) founded upon contract-based rights *and* (2) seek a contract-based remedy.  *See United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1025–26 (9th Cir. 2023).  Where a plaintiff "does not claim a breach of contract," and seeks neither monetary damages nor specific performance, there is no contract claim.  *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968–70 (D.C. Cir. 1982).  And where a plaintiff suffers a legal wrong due to agency action and seeks relief "other than money damages," a plaintiff is "entitled to judicial review."  5 U.S.C. § 702.

Defendants expansively and implausibly claim that the Tucker Act forbids APA claims if a government contract is involved at all.  MTD at 12.  Not so.  The existence of a contract is not a shortcut to, or alone sufficient for, funneling claims challenging unlawful agency action under the APA into the Tucker Act.  *Megapulse, Inc.*, 672 F.2d at 968–70.  And just because "a court may have to rule on a contract issue" does not "automatically transform [the] action" or deprive the court of jurisdiction.  *Id.* at 968; *see also United Aeronautical Corp.*, 80 F.4th at 1026.

Providers' claims stem from Defendants' violations of the TVPRA and Foundational Rule through their termination of funding for unaccompanied children's legal representation without reasoning or practicable alternatives.  *See* Compl. ¶¶ 96, 143; *see also* Ninth Cir. Op. at 8–9; PI Order at 13.  Plaintiffs' source of rights is the APA, not a contract the government has used to meet its own legal obligations.  As Plaintiffs have explained, Defendants could meet their obligations under the TVPRA and Foundational Rule by contracting with other organizations—or even without contracting at all.  *See, e.g.*, Dkt. 102 at 13; Dkt. 102-1 at 12:9–14:16.  The Government has chosen a contract as the vehicle to comply with this court's orders, but that contract is not the only vehicle for relief, nor is it the basis of Plaintiffs' claims.  *See United Aeronautical Corp.*, 80 F.4th at 1026; *Megapulse, Inc.*, 672 F.2d at 968.

It is only when a claim is "concerned solely with *rights created within* [a] contractual relationship and has nothing to do with duties arising independently of the contract" that the Tucker Act precludes jurisdiction in district court.  *North Side Lumber Co. v. Block*, 753 F.2d 1482, 1486 (9th Cir. 1985) (emphasis added); MTD at 12.  When plaintiffs "rel[y] on statutory rights," it "ke[eps] their claims from being founded upon a contract with the United States within the meaning of the Tucker Act."  *North Side Lumber*, 753 F.2d at 1485 (cleaned up).  Plaintiffs' claims

are not solely concerned with *rights created within* a contractual relationship but rather are rooted in statutory rights, and thus a district court can review the agency action. *Id.*

Plaintiffs also do not seek contract-based remedies or monetary relief and instead seek "declaratory and injunctive relief" to prevent Defendants from unlawfully refusing to fund counsel for unaccompanied children. *See, e.g.*, Compl. ¶¶ 15–16. In fact, nowhere in Plaintiffs' prayer for relief does the complaint even mention a contract or monetary relief. Compl. at 39. Because Plaintiffs do not seek "money in compensation for . . . losses," the Tucker Act does not apply, and the APA's waiver of sovereign immunity applies to Plaintiffs' claims. *Bowen v. Massachusetts*, 487 U.S. 879, 893, 895 (1988); *see also Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1110 (D.C. Cir. 2022) (declaratory and injunctive relief are not "specific to actions that sound in contract"); 5 U.S.C. § 702. Nor do this Court's prior rulings, affording preliminary relief in this case, reflect any kind of contract-based relief or restoration of funds specifically to Plaintiffs. *See* PI Order at 28 (enjoining Defendants from generally "withdrawing the services or funds provided by [ORR] as of March 20, 2025, under [the TVPRA and Foundational Rule], particularly ORR's provision of funds for direct legal representation services to unaccompanied children"); TRO at 7 (same). Defendants' choice to comply with the court's orders by contracting does not strip the court of jurisdiction over Plaintiffs' claims. *See Megapulse, Inc.*, 672 F.2d at 968–70.

Finally, the Government continues to insist the Supreme Court's order in *Department of Education v. California*, 145 S. Ct. 966 (2025), precludes jurisdiction here. MTD at 14. But both this Court and the Ninth Circuit have already found it does not. *See* PI Order at 14–15; Ninth Cir. Op. at 11. In *Department of Education*, plaintiffs sued for payment of government grants, meaning the requested relief was "to enforce a contractual obligation to pay money" on contracts and

"require[d] the Government to pay out past-due grant obligations."  145 S. Ct. at 968.  That case clearly concerned "*rights created within* [a] contractual relationship," which fall under the Tucker Act.  *North Side Lumber*, 753 F.2d at 1486.  Here, Plaintiffs "have no contractual rights to enforce," and do not seek "contractual relief," as this Court and the Ninth Circuit correctly determined.  PI Order at 15; *see also* Ninth Cir. Op. at 11("*Department of Education* has no application where, as here, the claims sound in statute, rather than contract.").  *Department of Education*'s short, fact-specific discussion leaves undisturbed a long line of binding precedent finding that federal court "jurisdiction 'is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds."  145 S. Ct. at 968 (2025) (quoting *Bowen*, 487 U.S. at 910).

Defendant's reliance on *United States Conference of Catholic Bishops v. Department of State*, 2025 WL 763738 (D.D.C. Mar. 11, 2025), is similarly misplaced.  MTD at 13.  In *Bishops*, which incorrectly found that plaintiffs pursued "essentially" contractual relief, the court also failed to address the first prong of the Tucker Act inquiry and whether plaintiffs' claims' source of rights were contract-based.  2025 WL 763738 at *5, *7.  As already noted, Plaintiffs' APA claims stem from violations of the TVPRA and Foundational Rule, not from any contract.  PI Order at 13.  Thus, even if Plaintiffs sought relief implicating a contract (which they do not), because their rights flow from statutory violations and not any contract breach, the Tucker Act does not preclude jurisdiction.  *United Aeronautical Corp.*, 80 F.4th at 1025–26 (*both* Plaintiffs' rights and remedies must be contractually based for the Tucker Act to apply).  Additionally, *Bishops* found the Tucker Act applied to plaintiffs' claims by distinguishing the case from *Crowley*, where "the plaintiff had no contractual relationship" with the government and thus the relief "could neither be construed as damages nor specific performance."  2025 WL 763738 at *6 (citing *Crowley*, 38 F.4th at 1110).

Similar to *Crowley*, here, Plaintiffs are not in contract with the government, and instead "are subcontractors lacking privity with the Government."[1]  PI Order at 14.

Subsequent decisions across the country support the inapplicability of the two cases cited by Defendants in the instant case.  Courts recognize the fact-dependent import of *Department of Education*, finding it inapplicable when plaintiffs seek equitable relief under the APA, even when the cases involve a contract or relief would result in potential monetary payments.  *See, e.g., Rhode Island v. Trump*, 2025 WL 1303868, at *6–7 (D.R.I. May 6, 2025); *Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*, 2025 WL 1116157, at *12–15 (D.R.I. Apr. 15, 2025); *Maine v. U.S. Dep't. of Agric.*, 2025 WL 1088946, at *19 (D. Me. Apr. 11, 2025).  These courts continue to apply governing and surviving precedent like *Bowen* and *Megapulse*.  *See e.g., Rhode Island*, 2025 WL 1303868, at *6–7 (citing *Megapulse, Inc.*, 672 F.2d at 968 and *Bowen*, 487 U.S. at 910); *Woonasquatucket River Watershed Council*, 2025 WL 1116157, at *13–15 (same).  And no court has adopted the line of argument in *Bishops*.  *See, e.g., Maryland v. Corp. for Nat'l and Community Serv.*, 2025 WL 1585051, at *28 (D. Md. June 5, 2025).

Neither *Department of Education* nor *Bishops* can resurrect Defendants' already-failed attempts at arguing that this Court's jurisdiction is precluded by the Tucker Act.  Instead, because the Government once again fails to prove both that Plaintiffs' claims are founded in contract-based rights and that Plaintiffs seek contract-based remedies, the Court should conclude once more that it has jurisdiction over Plaintiffs' claims.

---

[1] Defendants raise Plaintiffs' status as subcontractors, wrongly suggesting that Plaintiffs rely on such status for jurisdiction under the APA.  MTD at 14.  This Court has jurisdiction because Plaintiffs pursue APA claims stemming from statutory rights, and Plaintiffs seek declaratory and injunctive relief.  That the Court of Federal Claims does not offer direct relief for subcontractors, as this Court noted, PI Order at 13 n.3, has no import when Plaintiffs do not bring contractual claims at all.

**B. Defendants' Actions Are Reviewable Under the APA.**

Plaintiffs' claims stem from the TVPRA and the Foundational Rule. Under the plain text of the statute and regulation, although Defendants have some discretion in how to spend appropriated funds to secure counsel for unaccompanied children, Defendants' complete cutoff of funds and program elimination abuses this discretion and violates these laws. Compl. ¶¶ 141–46. Defendants disagree, contending the statutes grant the agency complete and unreviewable discretion to execute these laws, even to the point of program termination. MTD at 16–18. As this Court and the Ninth Circuit have repeatedly concluded, Defendants' actions are reviewable, and whether their actions violate the law is a question of statutory and regulatory construction, perfect for APA review. *See, e.g.*, PI Order at 18.

Agency action is unreviewable only in "rare circumstances" where a court has "no meaningful standard against which to judge the agency's exercise of discretion." *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 23 (2018) (quoting *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993)). Even broad discretion does "not render the agency's decisions completely nonreviewable." *Robbins v. Reagan*, 780 F.2d 37, 45 (D.C. Cir. 1985); *see also Perez Perez v. Wolf*, 943 F.3d 853, 862 (9th Cir. 2019); PI Mot. at 20–21. Rather, a court has jurisdiction unless "there is truly no law to apply." *Jajati v. U.S. Customs & Border Prot.*, 102 F.4th 1011, 1014 (9th Cir. 2024) (quotation omitted). Indeed, "courts routinely treat discretion-laden standards as providing 'law to apply.'" *Id.* at 1017. And courts are commanded to resolve statutory ambiguities to "police the outer statutory boundaries" of agency discretion. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 403–04 (2024).

As this Court and the Ninth Circuit have repeatedly held, this case is not one of "those rare circumstances" where courts have "no meaningful standard against which to judge the agency's discretion." *Weyerhaeuser Co.*, 586 U.S. at 23 (quoting *Lincoln*, 508 U.S. 182 at 191); *see, e.g.*,

Ninth Cir. Op. at 15–16; PI Order at 18 (language of the TVPRA and Foundational Rule "offers a clear standard to assess the Government's actions").  Here, the TVPRA and the Foundational Rule establish "affirmative obligations" against which this Court can judge Defendants' actions and determine whether Defendants fulfill those obligations.  Ninth Cir. Op. at 15.  The TVPRA "plainly imposes a mandatory duty on HHS."  *Id*.  The Foundational Rule similarly establishes a mandatory duty to fund legal service providers, subject to available appropriations and ORR's discretion with respect to the *way* those funds are allocated.  *See id*.  Courts "routinely find far less determinate language than that at issue here" to establish a "sufficient standard to permit review."  Ninth Cir. Op. at 16 (citing *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 411 (1971) (determination whether "no feasible and prudent alternative" existed was reviewable)); *Pac. Nw. Generating Coop. v. Bonneville Power Admin.*, 596 F.3d 1065, 1075 (9th Cir. 2010) (requirement that agency act "consistent with sound business principles" provided meaningful standard for review); *City of Los Angeles v. U.S. Dep't of Com.*, 307 F.3d 859, 869 n.6 (9th Cir. 2002) (requirement that an agency Secretary "shall" act "if he considers it feasible" provided a meaningful standard for review).  As the Ninth Circuit explained, while the TVPRA and the Foundational Rule "grant[] the agency some discretion in the procurement of counsel for unaccompanied children . . . that in no way defeats judicial review."  Ninth Cir. Op. at 15.

Defendants argue that Congress's choice not to earmark "explicit amounts" for direct legal representation demonstrates that Defendants have "been allowed discretion in how [they] allocate[] resources."  MTD at 10.  While Defendants may have some discretion "in how [they] allocate[] resources," this argument does nothing to demonstrate that Defendants' actions are unreviewable.  MTD at 10.  Some discretion in "how" does not encompass authority to deny resources altogether, nor does it relieve Defendants of their obligation to ensure unaccompanied

children have access to counsel to "the greatest extent practicable." 8 U.S.C. § 1232(c)(5). Congress has appropriated funds for services required under the TVPRA to facilitate Defendants' compliance with those obligations and explicitly included direct legal representation. *See, e.g.*, Full-Year Continuing Appropriations and Extensions Act, 2025, Pub. L. 119-4, Div. A Tit. I § 1101(8); Further Consolidated Appropriations Act, 2024, Pub. L. 118-47, Div. D Tit. I, 138 Stat. 460, 664–65; S. Rep. 118-84, at 167. Accepting Defendants' argument that APA review is precluded whenever an agency has some discretion in how to comply with congressional mandates would render agency decisions immune from judicial review whenever agencies are afforded *any* discretion in how they comply with statutory and regulatory mandates, a troubling outcome that would defeat the purpose of the APA. *See ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1071 (9th Cir. 2015) ("Section 701(a)(2) of the APA. . . has never been thought to put all exercises of discretion beyond judicial review."). As the Ninth Circuit explained, "[w]hatever discretion the agency may have in evaluating what 'the greatest extent practicable' may be, this phrase certainly is not the same as 'to no extent at all.'" Ninth Cir. Op. at 15 (citing *Calvert Cliffs' Coordinating Comm., Inc. v. U. S. Atomic Energy Comm'n*, 449 F.2d 1109, 1114 (D.C. Cir. 1971) (explaining that the fact the agencies' statutory duties were "qualified by the phrase 'to the fullest extent possible'" did "not provide an escape hatch for footdragging agencies" and did "not make [the statute's] requirements somehow 'discretionary'")).

Defendants' attempt to analogize this case to *Lincoln v. Vigil*, MTD at 17–18, fails once again. As the Ninth Circuit held, the "rule announced in *Lincoln* has no application where, as here, the agency fails to carry out a program that is required by statute." Ninth Cir. Op. at 13. This Court's jurisdiction does not turn on whether the TVPRA "require[]s the specific funding Plaintiffs demand," as Defendants argue. MTD at 11. Instead, for the purposes of this Court's jurisdiction,

it simply matters whether the TVPRA and Foundational Rule require anything *at all*.  *See, e.g.*, *Jajati*, 102 F.4th at 1014 (a court has jurisdiction unless "there is truly no law to apply"); *Robbins*, 780 F.2d at 45.  And they clearly do.  Unlike the program in *Lincoln*, which was not mandated by statute, the TVPRA's "use of 'shall' plainly imposes a mandatory duty on HHS to take steps to ensure 'all' [unaccompanied] children have counsel."  Ninth Cir. Op. at 15.  The Foundational Rule likewise includes mandatory language.  *Id*.  "These affirmative obligations stand in stark contrast with those at issue in *Lincoln*, where 'no statute or regulation even mention[ed] the Program' that was cancelled, let alone required that the Executive carry out the program."  *Id*. (citing 508 U.S. at 190).  No matter how many times Defendants raise *Lincoln* in briefings before this Court or the Ninth Circuit, they cannot convert it into something it is not.

Defendants once again attempt to rely on 8 U.S.C. § 1362 to argue that the TVPRA and Foundational Rule require nothing of Defendants.  MTD at 16.  This Court has already rejected that argument, finding that there is no conflict between section 1362 and the Foundational Rule's obligation to "fund legal service providers" "[t]o the extent ORR determines that appropriations are available and insofar as it is not practicable for ORR to secure pro bono counsel."  PI Order at 20–21 (citing 45 C.F.R. § 410.1309(a)(4)).  As this Court explained, "Section 1362 simply clarifies that *Gideon v. Wainwright*, 372 U.S. 335 (1963), does not extend to immigration proceedings."  *Id*. at 21.  While the Foundational Rule does "not create a substantive right to counsel at the expense of the government," it does "create[] an obligation for ORR to seek out direct representation counsel for unaccompanied children, including by securing pro bono counsel or utilizing appropriated funds when ORR is not able to secure pro bono counsel."  *Id*.  Whether or not Defendants have met this obligation to secure representation is a question that is prime for judicial review.

C.  **Plaintiffs Have Article III Standing, and their Claims Are Redressable by this Court.**

In assessing Article III standing, the redressability prong only requires Plaintiffs to demonstrate a "significant increase in the likelihood" they will obtain relief that will redress their injury as a "practical consequence" of an order from the court.  *Renee v. Duncan*, 686 F.3d 1002, 1013 (9th Cir. 2012).  Providers satisfy this redressability element as they have pleaded sufficient facts to show that the reinstatement of funding for legal representation of unaccompanied children in any form would significantly increase the likelihood that Plaintiffs will obtain relief.  Compl. ¶¶ 98–126.

*First*, the Government errs by claiming that "ordering [the Government] to enforce the TVPRA as written might have the opposite effect" by redirecting funding away from direct legal services provision and towards pro bono counsel.  MTD at 18–19.  This is, quite simply, a willful misreading of the TVPRA.  The TVPRA's advisements are not exclusive: that the Government should seek out pro bono counsel does not preclude the Government from also seeking assistance from other direct legal service organizations, such as Plaintiffs.  Moreover, Plaintiffs have sufficiently alleged both that the Government is not seeking pro bono counsel to meet the needs of the TVPRA in place of its cancellation of funding and that, even if the Government were, it would not be able to meet the requirements of the TVPRA using pro bono counsel alone.  *See* Compl. ¶¶ 53–55, 57, 95–96.

*Second*, Defendants incorrectly claim that the relief Providers seek is divorced from the injury they desire to redress.  In arguing that Plaintiffs "cannot show that ordering HHS to comply with its regulations would redress their injury," the Government blatantly mischaracterizes the injury Providers seek to redress.  MTD at 19.  Granting Providers' request would provide relief to Providers by both furthering their organizational goals and allowing them to redirect resources to

other initiatives—regardless of whether it also reinstated Providers' own funding. *See* Compl. ¶¶ 98–126; *see also* PI Order at 9–10 (noting that "if the Government . . . ensure[s] direct representation through others, the harm Plaintiffs suffer in the form of providing representation without payment or diverting resources would be alleviated"); *AIDS Vaccine Advocacy Coalition v. Dep't of State*, 2025 WL 752378, at *7 (D.D.C. Mar. 10, 2025) (finding redressability where the court order would "directly affect[] Plaintiffs' . . . ability to fulfill their organizational missions").

And *third*, a last-ditch legal argument on redressability relies on Defendants' bold assertion that "[c]ourts routinely reject efforts to inflate financial harm into mission-based injury when the true source of the injury is the loss of a government contract or grant." MTD at 19. Defendants cite no case law to support this. But there is clear precedent that supports Plaintiffs—finding organizational standing when government action "has frustrated [an organization's] mission of providing" programs and "required . . . a diversion of resources" from certain programs in order to sustain others. *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 766 (9th Cir. 2018).

Because Plaintiffs have sufficiently pleaded that their requested relief will result in a "significant increase in the likelihood" that their alleged harms will be addressed, Plaintiffs have sufficiently established Article III standing and Defendant's final argument must fall.

## CONCLUSION

Defendants have now raised the same jurisdictional arguments to this Court three times as well as raised them on appeal. Their argument has been rejected each time. This Court should reject the argument once again and deny Defendants' motion to dismiss.

Respectfully submitted,

June 20, 2025

/s/ Laura M. Sturges

GIBSON, DUNN & CRUTCHER LLP
Katherine Marquart (CA Bar No. 248043)
Ariana Sañudo (CA Bar No. 324361)
Arthur Halliday (CA Bar No. 347620)
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7000
kmarquart@gibsondunn.com
asanudo@gibsondunn.com
ahalliday@gibsondunn.com

Laura M. Sturges (CO Bar No. 36843) (*pro hac vice*)
Patricia M. Herold (CO Bar No. 54552) (*pro hac vice*)
Caelin Moriarity Miltko (CO Bar No. 56721) (*pro hac vice*)
1900 Lawrence Street, Suite 3000
Denver, CO 80202-2211
(303) 298-5700
lsturges@gibsondunn.com
pherold@gibsondunn.com
cmoriaritymiltko@gibsondunn.com

/s/ Alvaro M. Huerta

IMMIGRANT DEFENDERS LAW CENTER
Alvaro M. Huerta (CA Bar No. 274787)
Carson A. Scott (CA Bar No. 337102)
Lya Ferreyra (CA Bar No. 340148)
Immigrant Defenders Law Center
634 S. Spring St., 10th Floor
Los Angeles, CA
(213) 634-0999
ahuerta@immdef.org
cscott@immdef.org
lferreyra@immdef.org

/s/ Karen C. Tumlin

JUSTICE ACTION CENTER
Esther H. Sung (*pro hac vice*)
Karen C. Tumlin (CA Bar No. 234691)
Laura Flores-Perilla (CA Bar No. 355645)
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
(323) 450-7272
esther.sung@justiceactioncenter.org
karen.tumlin@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org

/s/ Samantha Hsieh

AMICA CENTER FOR IMMIGRANT RIGHTS
Adina Appelbaum (*pro hac vice*)
Samantha Hsieh (*pro hac vice*)
Peter Alfredson (D.C. Bar No. 1780258)
Evan Benz (*pro hac vice*)
Amica Center for Immigrant Rights
1025 Connecticut Ave., NW, Suite 701
Washington, D.C. 20036
(202) 331-3320
adina@amicacenter.org
sam@amicacenter.org
peter@amicacenter.org
evan@amicacenter.org

*Attorneys for Plaintiffs*

## <u>ATTESTATION PURSUANT TO CIVIL L.R. 5-1</u>

The filer attests that the other signatories listed, on whose behalf the filing is also submitted, are registered CM/ECF filers and concur in the filing's content and have authorized the filing.

Dated: June 20, 2025                                  */s/ Laura M. Sturges*
                                                      Laura M. Sturges