BRETT SHUMATE
Assistant Attorney General
GLENN M. GIRDHARRY
Acting Deputy Director
WILLIAM C. SILVIS
Assistant Director
MICHAEL A. CELONE
CHRISTINA PARASCANDOLA
KATELYN MASETTA-ALVAREZ
JONATHAN K. ROSS
Senior Litigation Counsels
ZACHARY A. CARDIN
Trial Attorney

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 514-3097
christina.parascandola@usdoj.gov

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| COMMUNITY LEGAL SERVICES IN EAST PALO ALTO<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *ET AL.*,<br><br>Defendants. | Case No. 3:25-cv-02847-AMO<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**<br><br>Date: July 31, 2025<br>Time: 2:00 p.m.<br>Location: Courtroom 100 |

Defendants ask the Court (as they must) to dismiss Plaintiffs' suit for lack of jurisdiction. While Defendants recognize that on the compressed timelines and expedited briefing schedules for the Court's prior temporary restraining order (TRO) and preliminary injunction (PI), the Court reached a contrary conclusion, Defendants maintain that this Court lacks jurisdiction over Plaintiffs' claims, which may not be pressed under the Administrative Procedure Act (APA).

At its core, this case is about the partial termination of a federal government contract. If any court has jurisdiction, it is the Court of Federal Claims, not a district court. To recap, under the *Megapulse* test—which Plaintiffs do not dispute applies here—a court must decide whether "the source of the rights upon which the plaintiff bases its claims" arises under a contract and whether "the type of relief sought" is normally available as a contract remedy. *Megapulse v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982). Plaintiffs style the three claims in their complaint as claims under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). But Plaintiffs do not dispute that all three claims arise solely from one agency action: partial termination of the federal government's contract with the Acacia Center for Justice (Acacia). And the only right Plaintiffs assert is to funding for legal work—a right that derives from that contract, not any statutory requirement. Further, Plaintiffs essentially seek relief that normally is available as a contract remedy. Though Plaintiffs ask the Court to enjoin Defendants from ceasing to fund counsel to represent unaccompanied alien children (UACs), what Plaintiffs really seek (and the only relief that redresses the injury-in-fact that Plaintiffs allege) is reinstatement of the Acacia contract.

In any event, even if the Tucker Act did not preclude APA jurisdiction, Plaintiffs challenge action that is committed to agency discretion by law. The TVPRA, Congress's appropriations, and the Foundational Rule all demonstrate that Congress designed a scheme that vests HHS with discretion about how to implement and balance several statutory objectives. The agency's decisions within that discretionary scheme are not subject to judicial review under the APA.

Finally, Plaintiffs turn to organizational standing to resolve tension between their asserted injuries and claimed request for relief. But they fail to meet the high standard for a diversion-of-resources theory of standing, and those injuries they have adequately alleged are redressable only by a contractual remedy. Those remedies simply are not available in this Court. The Court should therefore grant Defendants' motion to dismiss.

**I. Plaintiffs have not shown why the Court should not dismiss this case, considering that their claims arise solely out of the partial termination of a federal government contract and the relief they seek, as to any alleged injury-in-fact, is normally available as a contract remedy.**

Plaintiffs argue that the Tucker Act deprives this Court of jurisdiction over APA claims "only if the claims are (1) founded upon contract-based rights *and* (2) seek a contract-based remedy." ECF No. 121 at 5 (citing *United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1025-26 (9th Cir. 2023)). True enough—but that does nothing to undermine Defendants' argument. The Tucker Act governs "any claim against the United States founded . . . upon any . . . contract with the United States[.]" 28 U.S.C. § 1491(a)(1). The Ninth Circuit accordingly "interpret[s] the Tucker Act to 'impliedly forbid'" APA claims that sound in contract. *United Aeronautical Corp.,* 80 F.4th at 1026 (quoting *Megapulse*, 672 F.2d at 968). And that is true regardless of how a claim is styled—even a "'disguised' breach-of-contract claim" may proceed only in the Court of Federal Claims. *Id.* Thus, a district court lacks jurisdiction over that claim, however labeled, if it is in "its essence" contractual. *Megapulse*, 672 F.2d at 967; *see also Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025) (per curiam) (explaining that "the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on any express or implied contract with the United States," and the APA does not waive sovereign immunity as to such claims).

Plaintiffs repeatedly contend that the source of their rights in this lawsuit "is the APA, not a contract the government has used to meet its own legal obligations." *See, e.g.*, ECF No. 121 at 12. But the APA "does not create substantive rights." *El Rescate Legal Servs., Inc. v. Exec. Off. of Imm. Rev.*, 959 F.2d 742, 753 (9th Cir. 1991). Plaintiffs therefore must identify *another* "relevant statute whose violation forms the legal basis for the complaint." *Id.* (internal quotation marks and citation omitted). Yet Plaintiffs have failed to do so. They do not identify, in any of their three claims, ECF No. 1 ¶¶ 127-46, a statutory source of rights that would entitle them to APA relief.

In the First Claim for Relief Plaintiffs allege that Defendants have violated the TVPRA "by ending funding for legal representation of unaccompanied children despite the availability of appropriated funds for this purpose," which, Plaintiffs contend, is not in accordance with law under the APA. *Id*. ¶¶ 132-133. But Plaintiffs fail to allege that the TVPRA entitles *them* to funding. Nor could they. Neither the TVPRA nor any appropriation allocates funds to Plaintiffs. Rather, the Acacia contract

alone provides Plaintiffs an entitlement to "funding for legal representation of unaccompanied children." *Id*. ¶ 132. Therefore the Acacia contract, not the TVPRA, is *Plaintiffs'* "source of rights." *Megapulse*, 672 F.2d 968. Plaintiffs' Second Claim for Relief fares no better. In it Plaintiffs likewise allege that Defendants have acted contrary to law (here, the Foundational Rule) by terminating funding for counsel. ECF No.1 ¶¶ 134-140. As with the TVPRA and the appropriations statutes, the Foundational Rule does not allocate funds to Plaintiffs—the Acacia contract does. Finally, in Plaintiffs' Third Claim for Relief they allege that Defendants' cancellation of the funding was arbitrary and capricious, because the "Cancellation Order gives no reasoning at all." *Id*. ¶¶ 141-146. For the same reasons, this arbitrary-and-capricious claim fails to identify a substantive statute that confers rights *on Plaintiffs* (or, for that matter, anyone else). Because the source of Plaintiffs' rights is their contract with Acacia, and not the TVPRA or the Foundational Rule, the Tucker Act bars their claims in this Court.

Plaintiffs' argument that their claims can go forward in district court because they "are not solely concerned with *rights created within* a contractual relationship but rather are rooted in statutory rights," ECF No. 121 at 12-13 (quoting (quoting *North Side Lumber Co. v. Block*, 753 F.2d 1482, 1486 (9th Cir. 1985)), is therefore unavailing. No statute confers on Plaintiffs a right to government funding for the purpose of providing legal representation to unaccompanied minors. The only rights Plaintiffs may properly assert, therefore, are their alleged contractual rights to funding to provide such representation under the Acacia contract.

As to the remedy, Plaintiffs argue that because they seek "declaratory and injunctive relief," their requested remedy is not contractual. *Id*. at 13. But the Supreme Court has been clear that no semantic reframing can transform fundamentally contractual relief—ordering the payment of funds under a government contract—into proper APA relief. The plaintiffs in *Dep't of Educ.*, 145 S. Ct. 966 similarly sought an injunction that would accomplish "restoration of the status quo" regarding the grants at issue rather than an award of damages, *California v. Department of Education*, No. 25-cv-10548-MJJ, 2025 WL 760825, at *5 (D. Mass. Mar. 10, 2025), but the Court examined the fundamental nature of the relief the district court awarded, rather than the way the district court framed that relief. It treated an

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
3:25-CV-02847- AMO                                    3

injunction "enjoining the Government from terminating . . . grants" as equivalent to ordering payment, and thus held that such relief was barred by the APA. *Dep't of Educ.*, 145 S. Ct. at 968.[1]

Plaintiffs next attempt to distinguish this case from others—most prominently, the Supreme Court's clear and binding precedent in *Dep't of Educ.*, 145 S. Ct. 966, which held that the Tucker Act precluded jurisdiction in a parallel case. ECF No. 121 at. 13-15. But Plaintiffs' arguments on this front likewise depend on the erroneous assertion that they have asserted statutory rights—which, as explained above, they do not possess and have not alleged in their complaint. Ten judges in this Circuit were correct to conclude that *Dep't of Educ.* is "indistinguishable" from this case, *Cmty. Legal Servs.*, 135 F.4th at 852 (Bumatay, J., & VanDyke, J., dissenting). As for *U.S. Conf. of Catholic Bishops*, Plaintiffs make essentially the same argument—asserting conclusorily (and erroneously) that the court in that case was wrong and that those plaintiffs' rights were statutory rather than contractual.

Finally, Plaintiffs assert that other courts have ignored *Dep't of Educ.* "when plaintiffs seek equitable relief under the APA, even when the cases involve a contract or relief would result in potential monetary payments." ECF No. 121 at 15 (citing cases). But those are *precisely* the facts of *Dep't of Educ.* itself—the plaintiffs there sought equitable relief under the APA, and relief resulted in monetary payments. Other district courts' efforts to evade the clear holding of *Dep't of Educ.* should not embolden this Court to do the same.

## II. Plaintiffs have not shown that their claims are committed to agency discretion by law and thus unreviewable under 5 U.S.C. § 701(a)(2).

As Defendants argued in their motion, HHS's funding decisions under the TVPRA and the Foundational Rule are discretionary and, accordingly, unreviewable under the APA, which does not permit judicial review of "agency action" that "is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). ECF No. 110 at 15. Plaintiffs concede that the plain text of the statute and regulation allow HHS "some discretion in how to spend appropriated funds to secure counsel for unaccompanied children," but contend that this case is not one of "those rare circumstances" where courts have "no meaningful standard against which to judge the agency's discretion." ECF No. 212 at (quoting

---

[1] Plaintiffs further suggest that "this Court's prior rulings, affording preliminary relief in this case [do not] reflect any kind of contract based-relief or restoration of funds specifically to Plaintiffs." ECF No. 121 at 13. But if Plaintiffs do not seek relief that would restore funds specifically to Plaintiffs, then their requested remedy fails to redress their alleged injury altogether. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement.")

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
3:25-CV-02847- AMO                                    4

*Weyerhaeuser Co v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 23 (2018)). Rather, they contend that "the TVPRA and the Foundational Rule establish 'affirmative obligations' against which this Court can judge Defendants' actions and determine whether Defendants fulfill those obligations." *Id*. at 17. Neither the TVPRA nor the Foundational Rule, however, provide sufficient standards for this Court to review HHS's discretionary decision. Congress instead deliberately left the provision of government-funded counsel to UAC to HHS's discretion, by using broad, precatory language and by funding the program through a lump-sum appropriation. There is "no law to apply" in this context, only the agency's policy judgments about how best to allocate finite child-welfare resources. Accordingly, the APA bars courts from second-guessing HHS's decision to reduce or reallocate funding for direct representation services. *See Webster v. Doe*, 486 U.S. 592, 600 (1988).

First, addressing the statutory framework regarding access to counsel, the TVPRA provides,

> **The Secretary of Health and Human Services shall ensure, to the greatest extent practicable and consistent with section 292 of the Immigration and Nationality Act** (8 U.S.C. 1362), that all [UACs] who are or have been in the custody of the Secretary or the Secretary of Homeland Security, and who are not described in subsection (a)(2)(A), have counsel to represent them in legal proceedings or matters and protect them from mistreatment, exploitation, and trafficking. **To the greatest extent practicable, the Secretary of Health and Human Services shall make every effort to utilize the services of pro bono counsel who agree to provide representation to such children without charge.**

8 U.S.C. § 1232(c)(5) (emphasis added). By its plain terms, § 1232(c)(5) does not mandate that HHS provide or fund attorneys for UACs; in fact, it requires provision of counsel "consistent with…8 U.S.C. 1362" (describing the "privilege" of being represented in removal proceedings "at no expense to the Government". Further, it entrusts the agency, in its sole discretion, to make practicable efforts to ensure that UAC have legal representation—and with a clear preference for pro bono counsel rather than government-funded representation. *See id*.

Several aspects of this language confirm the discretionary nature of the task. First, the qualifier "to the greatest extent practicable" signals that providing counsel for UAC is an aspirational goal, not an absolute command. Congress left HHS leeway to pursue the goal of legal representation using practicable steps, not through particular mechanisms set forth by Congress. Second, the statute explicitly ties HHS's efforts to what is "consistent with section 292 of the Immigration and Nationality Act (8 U.S.C. 1362)." 8 U.S.C. § 1232(c)(5). That cross-referenced provision guarantees that UAC in removal proceedings may be represented by counsel, but only "at no expense to the Government." 8 U.S.C. §

1362. In other words, existing law affirmatively precludes any interpretation that would obligate the government to provide counsel at government expense in immigration court. By requiring consistency with § 1362, Congress made clear that HHS's duty to "ensure" counsel are available should not be construed as creating a right to government-funded attorneys. Third, the section concludes with Congress's express directive that HHS must exercise its discretion to prefer pro bono representation over government-funded representation. The regulations applying the statute confirm that understanding. The Foundational Rule provides,

> **To the extent ORR determines** that appropriations are available, and **insofar as it is not practicable for ORR to secure pro bono counsel**, ORR shall fund legal service providers to provide direct immigration legal representation for certain unaccompanied children, **subject to ORR's discretion and available appropriations** . . .

45 C.F.R. § 410.1309(a)(4) (emphasis added); *see also id*. at (a)(1) ("This paragraph (a) describes ORR's responsibilities in relation to legal services for unaccompanied children, consistent with 8 U.S.C. 1232(c)(5)."). That dual condition—express agency discretion plus limited appropriations—places these decisions squarely beyond judicial review.

    The Foundational Rule makes clear that funding for direct immigration legal representation services is entirely subject to agency discretion. ORR's funding obligation comes into play only "[t]o the extent ORR determines that appropriations are available," demonstrating that, at the threshold, ORR must make a discretionary assessment regarding the availability of limited funds within its lump-sum appropriation. 45 C.F.R. § 410.1309(a)(4). Courts are not well-positioned to review that determination, which is expressly conferred on the agency. And even if ORR determines that funds are available, and that it is not practicable to use pro bono counsel, as required by statute, any provision of legal representation is "subject to ORR's discretion." *Id*. It is difficult to imagine language that more clearly vests an agency with discretion over a decision. Far from creating a binding entitlement, the regulation conditions these benefits on the agency's discretionary assessment as to the best allocation of resources.

    For similar reasons, neither the TVPRA nor the Foundational Rule provide "law to apply" that would guide this Court in reviewing HHS's discretionary decisions. *See Webster v. Doe*, 486 U.S. 592, 600 (1988). The plain language of 8 U.S.C. § 1232(c)(5) simply does not require HHS to provide counsel to all UAC or to any particular number of UAC. Additionally, to the extent the Court could even

infer any obligation to fund direct representation of UAC despite the TVPRA's silence on the matter, it could only apply after HHS has made efforts "to the great extent practicable" to provide pro bono counsel. There is no indication in the statute, however, what "the greatest extent practicable" means in the context of providing pro bono counsel—or counsel at all for that matter—or what factors the agency must consider in making this determination. 8 U.S.C. 1232(c)(5). Absent meaningful standards, the Court would therefore need to make its own policy-laden assessment of what is "practicable" given the funds available in a lump-sum for direct representation and numerous other priorities. This is precisely the type of review that the APA prohibits.

Likewise, the Foundational Rule does not provide any meaningful standards for the Court to apply. Unlike the TVPRA, the Foundational Rule mentions the funding of legal service providers to provide direct representation, but it does so only in the context of several discretionary, prerequisite determinations that ORR must make. First, ORR must determine that "that appropriations are available." 45 C.F.R. § 410.1309(a)(4). There is no reason to include this language if this is simply the ministerial task of checking the agency's ledger. Rather, "available" means whether appropriations are available to fund direct legal representation considering other competing priorities. Second, the regulation gives HHS discretion to determine whether it is "practicable" to secure pro bono counsel, without providing specific factors to consider. *Id.* Finally, after making those two discretionary determinations, the Foundational Rule explicitly provides HHS with the discretion to decide whether to provide direct legal representation. *Id*. Given this language, the rule does not mandate that ORR provide representation, and does not provide any "law to apply" for the court to determine whether the agency abused its discretion.

In its decision denying Defendants' request for a stay of the preliminary injunction, the Ninth Circuit acknowledged that both the TVPRA and the Foundational Rule grant HHS "some discretion in the procurement of counsel for unaccompanied children," and in "evaluating what "the greatest extent practicable" means, yet the Ninth Circuit ended its analysis abruptly concluding that "this phrase certainly is not the same as 'to no extent at all.'" *See Cmty. Legal Servs. in E. Palo Alto v. HHS*, 137 F.4th 932, 941 (9th Cir. 2025) (quoting *Calvert Cliffs' Coordinating Comm., Inc. v. U. S. Atomic Energy Comm'n*, 449 F.2d 1109, 1114 (D.C. Cir. 1971)). Yet Plaintiffs do not allege that HHS has abandoned all efforts to provide counsel to UAC—they challenge only the cancellation of the Acacia contract. ECF

1  No. 1. And as discussed above, the plain language of the TVPRA and the Foundational Rule do not
2  require HHS to provide funding for direct representation. Thus, the Ninth Circuit's preliminary
3  evaluation of this issue merits little weight.
4      For similar reasons, the authorities Plaintiffs cite in their opposition are inapposite. ECF No.
5  121at 11. In *Overton Park*, the question was whether language in two Public Acts related to highway
6  construction providing that the Secretary of Transportation "shall not approve any program or project
7  that requires the use of any public parkland unless . . . there is no feasible and prudent alternative to the
8  use of such land" provided "sufficient law to apply," for purposes of the exemption to APA review
9  under 5 U.S.C. § 701(a)(2). *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 411 (1971). The
10 Court held there was "law to apply" in that context, because the pertinent provisions expressed a clear
11 purpose to protect parkland absent any feasible alternative. *Id*. Here, however, the TVPRA,
12 appropriations, and Foundational Rule do not provide similar guidance—they vest the agency with
13 discretion to allocate lump-sum appropriations across programs that are discretionary in any event.
14     In *Pacific Northwest Generating Co-op. v. Bonneville Power Admin*., the Ninth Circuit relied on
15 the precedent of several decisions in finding reviewable the actions of a federal power administration
16 under a statute that required that it operate in a manner "consistent with sound business principles." 596
17 F.3d 1065, 1075-76 (9th Cir. 2010). Business principles, however, provide at least some basis for courts
18 to determine whether an agency abused its discretion, because courts can look to comparative business
19 practices in the relevant contexts to evaluate. Here, no such precedent supports a determination that the
20 Court would have any basis to evaluate when an agency's decision is "practicable" given competing
21 mission demands and funding limitations.
22     Finally, in *City of Los Angeles v. U.S. Dep't of Com*., cities and officials sought to compel the
23 Secretary of Commerce to adopt statistically adjusted population data as the official 2000 Census for
24 redistricting purposes. 307 F.3d 859 (9th Cir. 2002). The Ninth Circuit held that a provision providing
25 the Secretary discretion to consider feasibility of statistical sampling did not defy meaningful judicial
26 review because it contained mandatory language that the Secretary "shall" use sampling "if he considers
27 it feasible." 307 F.3d at 869 n.6. The Ninth Circuit acknowledged that the phrase "if he considers it
28 feasible" conferred broad discretion, but noted its limits. If the Secretary considered statistical sampling

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
3:25-CV-02847- AMO                             8

data feasible but decided against using it for political reasons, that would violate the provision. *Id*. Accordingly, the court did not engage in judicial review of the Secretary's feasibility determination itself, and it was not a situation where there was "no law to apply." *Id*. In contrast, although the TVPRA and Foundational Rule use "shall," it is in contexts where HHS is given broad discretion to determine what is practicable, and without clear factors for the Court to weigh in determining whether HHS has abused such discretion. For these reasons, the cases that Plaintiffs cite are inapposite.

Finally, Plaintiffs attempt to distinguish this case from *Lincoln v. Vigil*, 508 U.S. 182 (1993), arguing that it has no application where an agency fails to carry out a program required by statute. ECF No. 121 at 18. Here, however, there is simply no mandatory requirement that HHS fund a minimum level of direct legal representation. The "shall" language Plaintiffs cite applies to facilitation of legal representation generally—whether pro bono or through government funding—so to the extent it imposes any binding duty, it certainly does not mandate spending. And when Congress funds a program through a general appropriation, it generally "allow[s] [the] agency flexibility to shift funds" and set priorities within the program. *Lincoln,*.508 U.S. at 193. That is exactly the case here. Each year, Congress appropriates a single, flexible sum to HHS, which must cover several inherently competing needs—shelter, care, legal services, and more. Nothing in the appropriation or the authorizing statute earmarks a mandatory amount for direct legal representation. It is left to HHS to determine how much of the pot to devote to legal services contracts, consistent with the "practicable" standard. 8 U.S.C. § 1232(c)(5); 45 C.F.R. § 410.1309(a)(4). Such budgetary judgments are a quintessential example of matters "committed to agency discretion by law." *Lincoln*, 508 U.S. at 192-93. Just as the agency in *Lincoln* had discretion to discontinue a discretionary health service program despite a general mandate to serve Indian health needs, ORR maintains discretion to adjust or terminate funding for representation without running afoul of the statute or the regulation. There simply is "no meaningful standard" in § 1232(c)(5) for a court to apply in reviewing HHS's allocation of funds.

**III.     Plaintiffs have not met their burden to establish standing.**

Plaintiffs now allege that their claims are redressable because the reinstatement of funding for legal representation of UACs would significantly increase the likelihood that Plaintiffs will obtain relief. ECF No. 121 at 20. But even if a *guarantee* of relief is not required, a "significant increase in the

likelihood" that a party will obtain relief that would redress their injury is not a meaningless bar. *Renee v. Duncan*, 686 F.3d 1002, 1013 (9th Cir. 2012). And Plaintiffs fail to establish that requiring payment of funds for direct legal representation under the TVPRA would provide a *significant* increase in the likelihood that *Plaintiffs* would obtain relief.

Plaintiffs allege various types of injuries arising out of the partial termination of the Acacia contract, including losses in funding, ECF No. 1 ¶¶ 102-12, laying off staff members, *id*. ¶¶ 99-101, and diversion of funding from other programs that some of the Plaintiffs carry out, *id*. ¶¶ 113-26. But Plaintiffs have not explained why a requirement that the government fund direct legal representation—without reinstating the Acacia contract—would redress those injuries. ECF No. 110 at 12-13. Defendants could implement a solution that does not include a contract, revise the scope of work of the terminated contract, or select another contractor. Such options would not necessarily increase the chance of relieving any of the injuries-in-fact that Plaintiffs have alleged. Nothing in the TVPRA or Foundational Rule requires Defendants to enter into a contract with Acacia.

Plaintiffs also argue that the relief they seek is not divorced from the injury they assert because their "organizational goals" would benefit and they could "redirect resources to other initiatives" if *other* attorneys received funding, even if Plaintiffs themselves received no funding at all. ECF No. 121 at 20 (citing ECF No. 110 at 19). But this attenuated chain of possibilities is fundamentally speculative and depends on Plaintiffs' own choices. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013). Nor do Plaintiffs adequately plead an injury to their organizational goals.

Finally, Plaintiffs argue that they have organizational standing, because, they allege, a government action has frustrated some Plaintiff organization's mission and required a diversion of resources from certain programs to sustain others. ECF No. 121 at 21 (citing *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 766 (9th Cir. 2018)). But the Supreme Court has made clear that like individuals, organizations "may not establish standing simply based on the intensity of the litigant's interest … no matter how longstanding the interest and no matter how qualified the organization." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024). That is true even when the organization diverts resources in response to the government's conduct, absent rare circumstances not present here. *Id.* at 395. Plaintiffs therefore have not adequately alleged organizational standing to pursue their claims here.

## CONCLUSION

For the forgoing reasons, and the reasons stated in Defendants' motion to dismiss, ECF No. 110, the Court should dismiss Plaintiffs' claims in their entirety, for lack of jurisdiction.

Dated: June 27, 2025

Respectfully submitted,

By: BRETT SHUMATE
Assistant Attorney General
Civil Division

GLENN M. GIRDHARRY
Acting Deputy Director

WILLIAM C. SILVIS
Assistant Director

*/s/ Christina Parascandola*
CHRISTINA PARASCANDOLA
MICHAEL A. CELONE
KATELYN MASETTA-ALVAREZ
JONATHAN K. ROSS
Senior Litigation Counsel
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 514-3097
christina.parascandola@usdoj.gov

ZACHARY A. CARDIN
Trial Attorney

*Attorneys for Defendants*