BRETT A. SHUMATE
Assistant Attorney General
Civil Division
WILLIAM C. SILVIS
Assistant Director
MICHAEL A. CELONE
KATELYN MASETTA-ALVAREZ
Senior Litigation Counsels
ZACHARY A. CARDIN
Trial Attorney

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 305 - 2040
michael.a.celone@usdoj.gov

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *ET AL.*, <br><br> Defendants. | Case No. 4:25-cv-02847-AMO <br><br> **DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE** |

DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE
4:25-CV-02847-AMO

Defendants submit the below response to the Court's order to show cause why Defendants should not be found in violation of the preliminary injunction and held in civil contempt. *See* ECF No. 158.

## I.    INTRODUCTION

Defendants have not violated this Court's April 29, 2025, preliminary injunction. Defendants have continued to pay, and remain ready to continue paying, for services rendered under Contract No. 75P00125C00016 with Acacia Center for Justice ("Acacia"). Defendants have paid $127,790,484 for contract line-item number (CLIN) 1, 2, 3, and 4 (CLINs 1, 3, 4 through May 2026, CLIN 2 through November 2025). *See* Decl. of Richard B. Debany ("Decl.") ¶ 25, attached hereto as Exhibit A. The narrow category of invoices at issue — CLIN 2 invoices from December 2025 through March 2026 — remain unpaid because the U.S. Department of Health and Human Services' Office of Refugee Resettlement (ORR) has been unable to verify, through Acacia's own submissions, that the specific costs billed under those invoices are allowable, allocable, reasonable, adequately supported, and properly chargeable to the contract, as ORR is required to determine under the Federal Acquisition Regulations. Decl. ¶¶ 9, 22. The funding remains available and Defendants stand ready to disburse it immediately upon receipt of the substantiating documentation ORR has been requesting since April 2026. Decl. ¶¶ 23, 31.

As such, Defendants have in no way "withdrawn" or cut off "access to" congressionally appropriated funding in violation of this court's preliminary injunction, Dkt. 87.

Contempt requires clear and convincing evidence that Defendants violated the Court's order "beyond substantial compliance" and "not based on a good faith and reasonable interpretation of the order." *Labor/Cmty. Strategy Ctr. v. Los Angeles Cnty. Metro. Transp. Auth.*, 564 F.3d 1116, 1123 (9th Cir. 2009). Plaintiffs cannot make that showing. Defendants' conduct reflects a good-faith, reasonable, and in fact contractually and legally required, effort to verify that public funds are being properly spent before disbursing them, not defiance of a court order.

DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE, DKT 158
4:25-CV-02847- AMO                                    1

## II.    FACTUAL BACKGROUND

### The Requirements of the Contract

ORR awarded Contract No. 75P00125C00016 to Acacia to provide legal support services to unaccompanied children (UAC), consistent with the TVPRA, 8 U.S.C. § 1232, and ORR's Foundational Rule, 45 C.F.R. part 410. Decl. ¶ 4; Exh. 1. Performance began August 1, 2025, and ORR most recently exercised Option Period 3 on April 30, 2026, continuing performance through July 31, 2026. Decl. ¶ 5. The contract is a hybrid Firm-Fixed-Price and Time-and-Materials arrangement. Decl. ¶ 7. CLIN 2 — covering legal representation, other legal assistance, data collection and analysis, and services at emergency facilities — is billed on a Time-and-Materials basis, which "require[s] more detailed supporting documentation to substantiate the labor hours and costs billed" than the fixed-price CLINs. Decl. ¶ 7. The contract requires submission of "court filings, invoices, receipts, and forms with sufficient information to identify qualifying UACs." Decl. ¶ 8. This is consistent with FAR 52.212-4, Alternative I, which entitles the Contracting Officer to require contractors to "substantiate invoices . . . by evidence of actual payment, individual daily job timecards, records that verify the employees meet the qualifications for the labor categories specified in the contract, or other substantiation specified in the contract." Decl. ¶ 8 (quoting FAR 52.212-4, Alt. I, para. (i)(1)(i)(D)). These requirements exist so that ORR, as a good steward of public funds, can verify that invoiced costs "correspond to direct-representation services provided during the relevant billing period" and are "properly chargeable" under CLIN 2, consistent with FAR 31.201-2 to 31.201-4. Decl. ¶ 9.

### ORR Identifies Substantial, Specific Discrepancies in Acacia's Billing Data

Beginning in late 2025, prompted by media reports of unrepresented UAC and by billed costs remaining flat despite a declining UAC population, ORR began validating the data underlying Acacia's invoices. Decl. ¶ 10. Comparing Acacia's reported A-Numbers against U.S. Department of Homeland Security (DHS), U.S. Citizenship and Immigration Services (USCIS), and Executive Office of

Immigration Review (EOIR) records, ORR found that of 24,157 A-Numbers reported for November 2025, at least 3,574 children had no corresponding Notice of Representation Form (G-28 or E-28) in any federal system, and 265 children on the active-representation list appeared to have already been repatriated. Decl. ¶ 14. Supporting documentation for labor and direct costs was, in many instances, "partially or extensively redacted, did not identify the unaccompanied child for whom services allegedly were performed, and lacked sufficient information to determine whether the services were provided to qualified children during the applicable billing period." Decl. ¶ 15. A Defense Contract Audit Agency ("DCAA") thorough analysis corroborated these concerns: DCAA could validate only 3.46% of the December 2025 invoice (Other Direct Costs), because "the contractor failed to provide adequate supporting documentation" for the remaining 96.54% in labor costs, and even within the small sample reviewed found duplicate documents, unsupported adjustments, and travel records that did not meet FAR 31.205-46's requirements. Decl. ¶¶ 17–19, 21.

On September 25, 2025, ORR's Contracting Officer's Representative requested A-Number level information; Acacia refused on October 1, 2025, citing "confidentiality constraints." Decl. ¶ 23. Between April 10–15, 2026, ORR again sought unredacted documentation and A-Number level detail; Acacia refused, citing "relevant attorney-ethics rules." Decl. ¶ 23. On June 29, 2026, the Contracting Officer detailed the specific discrepancies found and explained that aggregate reporting alone would not permit verification. Decl. ¶ 23. Acacia agreed only to provide a going-forward aggregate list of A-Numbers, without the timesheet-level and stipend documentation needed to link billed costs to specific children — a format that "does not allow ORR the ability to determine reasonableness, allowability or allocability of an invoice charge." Decl. ¶ 24. The parties reached an impasse. Decl. ¶ 24.

To date, Defendants have paid $127,790,484 for CLINs 1, 2, 3, and 4. Decl. ¶ 25. Only the CLIN 2 invoices from December 2025 through March 2026 remain unpaid. Decl. ¶ 25. When Acacia demanded payment of the December 2025 invoice on June 15, 2026, Decl. ¶ 26, ORR responded on June 29, 2026,

specifying exactly what verification it needed for each billed child — A-Number, attorney and law firm, date(s) of representation, EOIR-28/G-28 filing date, and billable hours — and asked Acacia to explain the specific discrepancies identified. Decl. ¶¶ 27–28. ORR advised that "payment would be evaluated upon receipt of sufficient substantiating documentation." Decl. ¶ 29. The funding remains available for immediate disbursement once ORR receives the necessary verification. Decl. ¶ 31.

## III ARGUMENT

**Defendants Have Substantially Complied With the Injunction.**

The April 29, 2025, order enjoined Defendants from "withdrawing the services or funds provided by [ORR] as of March 20, 2025" and from "cutting off access to congressionally appropriated funding for its duration." Dkt. 87 at 28. Defendants have not withdrawn funding from the contract — they have paid $127,790,484 to date, Decl. ¶ 25, and continue to perform the contract, having exercised Option Period 3 through July 31, 2026. Decl. ¶ 5. Only a discrete subset of invoices — those ORR cannot verify — remain unpaid, and the funds to pay them remain available and earmarked for that specific purpose. Decl. ¶ 31. This is not the wholesale "cutting off" of funding the injunction prohibits; it is targeted, documented, and temporary non-payment of specific invoices pending verification that the underlying costs are properly chargeable to the contract. Decl. ¶¶ 22, 25.

**Defendants' Non-Payment Reflects a Good Faith and Reasonable Interpretation of the Order, Not a Violation of It.**

Defendants have acted in good faith and with reasonable interpretation of this Court's injunction by making substantial payments under the contract, and exercising contract extension option periods. *See* Decl. ¶¶ 4, 5, 25. Defendants also aver that a reasonable interpretation of the Court's injunction does not require ORR to disburse public funds without regard to its independent, pre-existing obligations under the FAR and the contract itself to verify that billed costs are allowable, allocable, reasonable, adequately supported, and properly chargeable. *Id*. ¶ 9. ORR's requests for verification date back to September 25, 2025, when the COR first requested A-Number level information to verify representation data. Acacia

DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE, DKT 158
4:25-CV-02847- AMO                                    4

refused that request, citing "confidentiality constraints," and refused a similar request in April 2026 citing "relevant attorney-ethics rules." Decl. ¶ 23.

ORR's concerns are grounded in a specific, documented reconciliation of Acacia's own reported data against federal systems of record: 3,574 of 24,157 reported A-Numbers had no corresponding representation filing in any DHS, USCIS, or EOIR system, and 265 children on Acacia's active-representation list appeared to have already been repatriated. Decl. ¶ 14. An independent forensic auditor — DCAA — corroborated these concerns, finding it could not even validate 96.54% of the December 2025 invoice (all labor costs) "because the contractor failed to provide adequate supporting documentation," and identified specific deficiencies in the small portion it could review, including duplicate documents, unsupported adjustments, and travel documentation that did not meet FAR 31.205-46's requirements. Decl. ¶¶ 18–19, 21.

ORR has not asked Acacia for anything beyond what the contract and applicable regulations already require. Decl. ¶ 8 (quoting FAR 52.212-4, Alt. I, para. (i)(1)(i)(D), entitling the Contracting Officer to require substantiation "by evidence of actual payment, individual daily job timecards, records that verify the employees meet the qualifications for the labor categories specified in the contract, or other substantiation specified in the contract"). ORR's June 29, 2026 request was specific and narrowly tailored to what is necessary to make a payment determination: for each billed child, the A-Number, attorney and law firm name, date(s) of representation, date of EOIR-28/G-28 filing, and billable hours. Decl. ¶ 27. Acacia has not provided this information. Decl. ¶ 30. Critically, Acacia itself proposed an insufficient solution — a monthly list of A-Numbers without any link to the specific supporting documentation for the costs billed for each child. Decl. ¶ 24. Without that link, ORR would still have no linkage between a supporting document and an eligible UAC to validate the charges. Decl. ¶ 24. ORR has been transparent with Acacia at every stage: identifying the specific discrepancies, Decl. ¶¶ 23, 27–

28; sharing ORR's and DCAA's analyses directly with Acacia, Decl. ¶ 27; and stating plainly that "payment would be evaluated upon receipt of sufficient substantiating documentation." Decl. ¶ 29.

Defendants are attempting, in good faith, to reconcile two obligations — compliance with this Court's injunction, and its independent, non-discretionary duty as steward of appropriated funds to ensure that public monies are not disbursed for services that cannot be verified. ORR has continued to pay every invoice it could verify, and "the funding to pay CLIN 2 invoices remains available for immediate disbursement" once Acacia provides the requisite information. Decl. ¶ 31. Acacia is the entity with sole possession of the timesheets, case files, and billing records necessary to answer ORR's questions, yet Acacia has repeatedly declined to provide them. Decl. ¶¶ 23–24. Defendants are hopeful that the current ongoing negotiations between Acacia and ORR are fruitful and resolve the dispute with no further court intervention.

### III.    Conclusion

Defendants respectfully submit that the circumstances do not support Plaintiffs' request for a finding of contempt.

Dated: July 10, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

WILLIAM C. SILVIS
Assistant Director

MICHAEL A. CELONE
KATELYN MASETTA-ALVAREZ
Senior Litigation Counsel

ZACHARY CARDIN
Trial Attorney

*/s/ Michael A. Celone*
MICHAEL A. CELONE
Senior Litigation Counsel
Civil Division
General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-305-2040
Michael.A.Celone@usdoj.gov

*Attorneys for Defendants*

DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE, DKT 158
4:25-CV-02847- AMO                                  7