Case 4:25-cv-02847-AMO    Document 162-1    Filed 07/15/26    Page 1 of 157

# EXHIBIT 1

## SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS
OFFEROR TO COMPLETE BLOCKS 12, 17, 23, 24, & 30

| 1. REQUISITION NUMBER | PAGE | OF |
|---|---|---|
| ACF343178 | 1 | 81 |

| 2. CONTRACT NO. | 3. AWARD/ EFFECTIVE DATE | 4. ORDER NUMBER | 5. SOLICITATION NUMBER | 6. SOLICITATION ISSUE DATE |
|---|---|---|---|---|
| 75P00125C00016 | | | | 06/23/2025 |

**7. FOR SOLICITATION INFORMATION CALL:**
a. NAME: Azeb Mengistu
b. TELEPHONE NUMBER (No collect calls)
8. OFFER DUE DATE/LOCAL TIME

**9. ISSUED BY** CODE OAMS

OS/ASA/OAMS
Office of Acquisition Management Services
5600 Fishers Lane
15E 10D
Rockville MD 20857

**10. THIS ACQUISITION IS** [X] UNRESTRICTED OR [ ] SET ASIDE: ___ % FOR:

[ ] SMALL BUSINESS
[ ] HUBZONE SMALL BUSINESS
[ ] SERVICE-DISABLED VETERAN-OWNED SMALL BUSINESS (SDVOSB)
[ ] WOMEN-OWNED SMALL BUSINESS (WOSB)
[ ] ECONOMICALLY DISADVANTAGED WOMEN-OWNED SMALL BUSINESS (EDWOSB)
[ ] 8(A)

NORTH AMERICAN INDUSTRY CLASSIFICATION STANDARD (NAICS): 541110
SIZE STANDARD: $15.5

**11. DELIVERY FOR FREE ON BOARD (FOB) DESTINATION UNLESS BLOCK IS MARKED** [X] SEE SCHEDULE

**12. DISCOUNT TERMS**

**13a. THIS CONTRACT IS A RATED ORDER UNDER THE DEFENSE PRIORITIES AND ALLOCATIONS SYSTEM - DPAS (15 CFR 700)** [ ]

**13b. RATING**

**14. METHOD OF SOLICITATION**
[ ] REQUEST FOR QUOTE (RFQ)  [ ] INVITATION FOR BID (IFB)  [ ] REQUEST FOR PROPOSAL (RFP)

**15. DELIVER TO** CODE ACF

ACF
Administration for Children and Fam
330 C Street, SW
Washington DC 20201

**16. ADMINISTERED BY** CODE OAMS

See Schedule

**17a. CONTRACTOR/ OFFEROR** CODE 1672856 FACILITY CODE

ACACIA CENTER FOR JUSTICE 1672856
Attn: LEAH  PRESTAMO
1025 CONNECTICUT AVE NW STE 1000A #
WASHINGTON DC 20036

TELEPHONE NO. 213-6609494

**18a. PAYMENT WILL BE MADE BY** CODE FMS

FMS
5600 Fishers Lane
Rockville MD 20814

[ ] 17b. CHECK IF REMITTANCE IS DIFFERENT AND PUT SUCH ADDRESS IN OFFER

18b. SUBMIT INVOICES TO ADDRESS SHOWN IN BLOCK 18a UNLESS BLOCK BELOW IS CHECKED [ ] SEE ADDENDUM

| 19. ITEM NO. | 20. SCHEDULE OF SUPPLIES/SERVICES | 21. QUANTITY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| | Tax ID Number:  87-4099467 ADMINISTERED BY: OS/ASA/OAMS Office of Acquisition Management Services 5600 Fishers Lane 15E 10D Rockville MD 20857 USA UEI:  CAJ4W5QGNKK9 This contract is for the provision of services to provide assistive legal services for Unaccompanied Alien Children (UAC) for the | | | | |

*(Use Reverse and/or Attach Additional Sheets as Necessary)*

**25. ACCOUNTING AND APPROPRIATION DATA**
2025.G990505.25102

**26. TOTAL AWARD AMOUNT (For Government Use Only)**
$90,545,814.49

[ ] 27a. SOLICITATION INCORPORATES BY REFERENCE (FEDERAL ACQUISITION REGULATION) FAR 52.212-1, 52.212-4. FAR 52.212-3 AND 52.212-5 ARE ATTACHED.    ADDENDA [ ] ARE [ ] ARE NOT ATTACHED.

[ ] 27b. CONTRACT/PURCHASE ORDER INCORPORATES BY REFERENCE FAR 52.212-4. FAR 52.212-5 IS ATTACHED.    ADDENDA [ ] ARE [ ] ARE NOT ATTACHED.

[ ] 28. CONTRACTOR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN _____ COPIES TO ISSUING OFFICE.  CONTRACTOR AGREES TO FURNISH AND DELIVER ALL ITEMS SET FORTH OR OTHERWISE IDENTIFIED ABOVE AND ON ANY ADDITIONAL SHEETS SUBJECT TO THE TERMS AND CONDITIONS SPECIFIED.

[ ] 29. AWARD OF CONTRACT: REFERENCE _____ OFFER DATED _____. YOUR OFFER ON SOLICITATION (BLOCK 5), INCLUDING ANY ADDITIONS OR CHANGES WHICH ARE SET FORTH HEREIN, IS ACCEPTED AS TO ITEMS:

**30a. SIGNATURE OF OFFEROR/CONTRACTOR**

**31a. UNITED STATES OF AMERICA (SIGNATURE OF CONTRACTING OFFICER)**
Mary L. Rainey -S
Digitally signed by Mary L. Rainey -S
Date: 2025.07.30 10:43:08 -04'00'

| 30b. NAME AND TITLE OF SIGNER (Type or print) | 30c. DATE SIGNED | 31b. NAME OF CONTRACTING OFFICER (Type or print) | 31c. DATE SIGNED |
|---|---|---|---|
| Leah Prestamo, General Counsel | 07/30/2025 | MARY L. RAINEY | |

AUTHORIZED FOR LOCAL REPRODUCTION
PREVIOUS EDITION IS NOT USABLE

STANDARD FORM 1449 (REV. 11/2021)
Prescribed by GSA - FAR (48 CFR) 53.212

| 19. ITEM NO. | 20. SCHEDULE OF SUPPLIES/SERVICES | 21. QUANTITY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| | Administration of Children and Families (ACF) Office of Refugee Resettlement (ORR) in accordance with the Performance Work Statement, entitled "UAC Legal Services" | | | | |
| | Appr. Yr.: 2025 CAN: G990505 Object Class: 25102 Period of Performance: 08/01/2025 to 10/31/2025 | | | | |
| 1 | CLIN 1 Base Year - know your rights presentations and legal screenings (FFP) | | | | ███████ |
| 2 | CLIN 2  Base Year - Representation, Other Legal Assistance, Data Collection & Analysis, and Services at Emergency Facilities (T&M) | | | | ███████ |
| 3 | CLIN 3  Base Year - Attorney Recruitment Project (FFP) | | | | ███████ |
| 4 | CLIN 4  Base Year - Spanish Language Support and Technical Assistance Training (FFP) | | | | ███████ |
| 1001 | CLIN 1 Option Period 1 - know your rights presentations and legal screenings (FFP) Amount: ███████ (Option Line Item) Continued ... | | | | 0.00 |

**32a. QUANTITY IN COLUMN 21 HAS BEEN**

☐ RECEIVED    ☐ INSPECTED    ☐ ACCEPTED, AND CONFORMS TO THE CONTRACT, EXCEPT AS NOTED: _____

| 32b. SIGNATURE OF AUTHORIZED GOVERNMENT REPRESENTATIVE | 32c. DATE | 32d. PRINTED NAME AND TITLE OF AUTHORIZED GOVERNMENT REPRESENTATIVE |
|---|---|---|

| 32e. MAILING ADDRESS OF AUTHORIZED GOVERNMENT REPRESENTATIVE | 32f. TELEPHONE NUMBER OF AUTHORIZED GOVERNMENT REPRESENTATIVE |
|---|---|
| | 32g. E-MAIL OF AUTHORIZED GOVERNMENT REPRESENTATIVE |

| 33. SHIP NUMBER | 34. VOUCHER NUMBER | 35. AMOUNT VERIFIED CORRECT FOR | 36. PAYMENT | 37. CHECK NUMBER |
|---|---|---|---|---|
| ☐ PARTIAL  ☐ FINAL | | | ☐ COMPLETE  ☐ PARTIAL  ☐ FINAL | |
| 38. S/R ACCOUNT NUMBER | 39. S/R VOUCHER NUMBER | 40. PAID BY | | |

| 41a. I CERTIFY THIS ACCOUNT IS CORRECT AND PROPER FOR PAYMENT | | 42a. RECEIVED BY (Print) |
|---|---|---|
| 41b. SIGNATURE AND TITLE OF CERTIFYING OFFICER | 41c. DATE | 42b. RECEIVED AT (Location) |
| | | 42c. DATE REC'D (YY/MM/DD) | 42d. TOTAL CONTAINERS |

STANDARD FORM 1449 (REV. 11/2021) BACK

| CONTINUATION SHEET | REFERENCE NO. OF DOCUMENT BEING CONTINUED 75P00125C00016 | | | | PAGE 3 | OF 81 |

NAME OF OFFEROR OR CONTRACTOR

ACACIA CENTER FOR JUSTICE 1672856

| ITEM NO. (A) | SUPPLIES/SERVICES (B) | QUANTITY (C) | UNIT (D) | UNIT PRICE (E) | AMOUNT (F) |
|---|---|---|---|---|---|
| 1002 | CLIN 2 Option Period 1 - Representation, Other Legal Assistance, Data Collection & Analysis, and Services at Emergency Facilities (T&M)<br>Amount: ███████ (Option Line Item) | | | | 0.00 |
| 1003 | CLIN 3 Option Period 1 - Attorney Recruitment Project (FFP)<br>Amount: ███████ (Option Line Item) | | | | 0.00 |
| 1004 | CLIN 4 Option Period 1 - Spanish Language Support and Technical Assistance Training (FFP)<br>Amount: ███████ (Option Line Item) | | | | 0.00 |
| 2001 | CLIN 1 Option Period 2 - know your rights presentations and legal screenings (FFP)<br>Amount: ███████ (Option Line Item) | | | | 0.00 |
| 2002 | CLIN 2 Option Period 2 - Representation, Other Legal Assistance, Data Collection & Analysis, and Services at Emergency Facilities (T&M)<br>Amount: ███████ (Option Line Item) | | | | 0.00 |
| 2003 | CLIN 3 Option Period 2 - Attorney Recruitment Project (FFP)<br>Amount: ███████ (Option Line Item) | | | | 0.00 |
| 2004 | CLIN 4 Option Period 2 - Spanish Language Support and Technical Assistance Training (FFP)<br>Amount: ███████ (Option Line Item) | | | | 0.00 |
| 3001 | CLIN 1 Option Period 3 - know your rights presentations and legal screenings (FFP)<br>Amount: ███████ (Option Line Item) | | | | 0.00 |
| 3002 | CLIN 2 Option Period 3 - Representation, Other Legal Assistance, Data Collection & Analysis, and Services at Emergency Facilities (T&M)<br>Amount: ███████ (Option Line Item) | | | | 0.00 |
| 3003 | CLIN 3 Option Period 3 - Attorney Recruitment Project (FFP)<br>Amount: ███████ (Option Line Item) | | | | 0.00 |
| 3004 | CLIN 4 Option Period 3 - Spanish Language Support and Technical Assistance Training (FFP)<br>Amount: ███████ (Option Line Item) | | | | 0.00 |

OPTIONAL FORM 336 (4-86)
Sponsored by GSA
FAR (48 CFR) 53.110

Continuation Page # 4
Unaccompanied Alien Children Legal Services
Contract # 75P00125C00016

## SECTION B - Supplies or Services and Prices/Costs

### B.1    BRIEF DESCRIPTION OF SERVICES

The purpose of this requirement is to secure a contractor to develop and maintain a national model in the provision of specific immigration related legal services to Unaccompanied Alien Children (UAC).

### B.2    TYPE OF CONTRACT

The contract type awarded is a Hybrid Time and Materials and Firm Fixed Price.

### B.3    SEVERABLE SERVICES

The services acquired under this contract are severable services.  Funds are only available for use for the contract line item (CLIN) to which they are obligated.  Unused funds from one CLIN may not rollover for use in other CLINs.

### B.4    CONSIDERATION AND PAYMENT

The hybrid Time & Materials (T&M) and Firm Fixed Price (FFP) Base Period is priced as follows:

| Contract Line Item Number (CLIN) | Cost |
|---|---|
| ███████████ | ███████████ |
| | |
| | |
| | |
| **TOTAL Potential Value Inclusive of all Base Period CLINS** | **$ 90,545,814.49** |

### B.4.1    Fixed-Price (FFP) CLINs

In consideration of satisfactory performance of the work as described throughout this contract, the Contractor shall be paid a fixed price for all firm price CLINS.  The base period and option periods are priced as follows:

Base Period Fixed-Price (FFP) CLINs

| CLINS | Contract Period | Fixed Price |
|---|---|---|
| ████ | ████ | ████ |
| | | |
| | | |

B.4.1.1 – CLIN 1 – Base Period:  Know your rights presentations and legal screenings (FFP)

| Service Description | Cost |
|---|---|
| ███████████████ | ██████████ |
| ███ | |

Payment shall be made upon the delivery and acceptance of the services required.

B.4.1.2 Time-and-Materials (T&M) CLINs

In consideration of satisfactory performance of the work as described throughout this contract, the Contractor shall be paid in accordance with the fixed loaded hourly rates as shown herein for the specified categories of labor based on the number of actual hours incurred in the performance of the work specified. Fully loaded rates shall be all inclusive of direct labor, fringe benefits, applicable indirect costs, and any profit for each labor category. Additionally, the contractor shall be reimbursed the actual cost of materials in accordance with FAR 52.212-4; Alt 1. If specifically provided for in the contract, the contractor shall be reimbursed for indirect material costs on a pro-rata basis over the contract performance period at the fixed price specified herein., If the options are exercised funding will be obligated by modification to the contract. The base period and option periods are priced as follows:

B.4.1.3 – CLIN 2 – Base Period:  Representation, Other Legal Assistance, Data Collection & Analysis, and Services at Emergency Facilities (T&M)

| Labor Categories | Loaded Rates | Estimated Hours | Estimated Total |
|---|---|---|---|
| ██████████ | ███ | ██ | ████ |
| ███████████ | | | |
| ████████████ | | | |
| ██████████ | | | |
| ████████████████ | | | |
| ██████████ | | | |
| ██████████ | | | |
| ██████████ | | | |
| ██████████ | | | |
| ███████████ | | | |
| ██████████ | | | |
| ██████████ | | | |
| ██████████ | | | |
| ██████████ | | | |
| ██████████ | | | |



Continuation Page # 7
Unaccompanied Alien Children Legal Services
Contract # 75P00125C00016

| | Loaded Rates | Estimated Hours | Estimated Total |
|---|---|---|---|
| Labor Categories | | | |
| Labor Subtotal | | | █ |
| | | | |
| Materials Subtotal | | █ | |
| FIXED PRICE Material Indirect Cost [52.212-4; Alt I(i)(1)(ii)(D)(2)] | | | █ |
| | | | |
| CLIN 2 Ceiling (Not to Exceed) | | | █ |

Payment Schedule for Material Indirect Costs: The Government will reimburse the Contractor for indirect costs on a pro-rata basis over the period of contract performance up to the stated fixed price.

B.4.1.4 – CLIN 3 – Base Period:  Attorney Recruitment Project (FFP)

| Service Description | Cost |
|---|---|
| █ | █ |

Payment shall be made upon the delivery and acceptance of the services required.

B.4.1.5 – CLIN 4 – Base Period:  Spanish Language Support and Technical Assistance Training (FFP)

| Service Description | Cost |
|---|---|
| ███████████████████████████ | ███████ |

Payment shall be made upon the delivery and acceptance of the services required.

## B.4.2   OPTION PERIOD 1

The hybrid Time & Materials (T&M) and Firm Fixed Price (FFP) Option Period 1 is priced as follows:

| Contract Line Item Number (CLIN) | Cost |
|---|---|
| ███████████ | ███████ |
| TOTAL Potential Value Inclusive of all Option Period 1 CLINS | $ 88,588,158.24 |

B.4.2.1 Fixed-Price (FFP) CLINs

| CLINS | Contract Period | Fixed Price |
|---|---|---|
| ███████ | ███████ | ███████ |

B.4.2.2 – 1001- CLIN 1 – Option Period 1:  Know your rights presentations and legal screenings (FFP)

| Service Description | Cost |
|---|---|
| ████████████████ | ██████ |

Payment shall be made upon the delivery and acceptance of the services required.

B.4.2.3 Time-and-Materials (T&M) CLINS

B.4.2.4 – 1002- CLIN 2 – Option Period 1:  Representation, Other Legal Assistance, Data Collection & Analysis, and Services at Emergency Facilities (T&M)

| Labor Categories | Loaded Rates | Estimated Hours | Estimated Total |
|---|---|---|---|
| | | | |

Continuation Page # 10
Unaccompanied Alien Children Legal Services
Contract # 75P00125C00016

| Labor Categories | Loaded Rates | Estimated Hours | Estimated Total |
|---|---|---|---|
| Labor Subtotal | | | |

| | |
|---|---|
| Materials Subtotal | ▮ |
| FIXED PRICE Material Indirect Cost [52.212-4; Alt I(i)(1)(ii)(D)(2)] | ▮ |
| | |
| 1002- CLIN 2 Ceiling (Not to Exceed) | ▮ |

Payment Schedule for Material Indirect Costs: The Government will reimburse the Contractor for indirect costs on a pro-rata basis over the period of contract performance up to the stated fixed price.

B.4.2.5 – 1003- CLIN 3 – Option Period 1:  Attorney Recruitment Project (FFP)

| Service Description | Cost |
|---|---|
| ▮ | ▮ |
| | |

Payment shall be made upon the delivery and acceptance of the services required.

B.4.2.6 – 1004- CLIN 4 – Option Period 1:  Spanish Language Support and Technical Assistance Training (FFP)

| Service Description | Cost |
|---|---|
| ▮ | ▮ |
| | |

Payment shall be made upon the delivery and acceptance of the services required.

**B.4.3   OPTION PERIOD 2**

The hybrid Time & Materials (T&M) and Firm Fixed Price (FFP) Option Period 2 is priced as follows:

| Contract Line Item Number (CLIN) | Cost |
|---|---|
| ▮ | ▮ |
| | |
| | |
| **TOTAL Potential Value Inclusive of all Option Period 2 CLINS** | **$ 88,588,158.24** |

**B.4.3.1 Fixed-Price (FFP) CLINs**

| CLINs | | Contract Period | | Fixed Price | |
|---|---|---|---|---|---|
| ██████████ | | ██████████ | | ██████████ | |
| | | | | | |
| | | | | | |

**B.4.3.2 – 2001- CLIN 1 – Option Period 2:  Know your rights presentations and legal screenings (FFP)**

| Service Description | | Cost | |
|---|---|---|---|
| ████████████████ | | ██████████ | |
| | | | |

Payment shall be made upon the delivery and acceptance of the services required.

**B.4.3.3 Time-and-Materials (T&M) CLINs**

**B.4.3.4 – 2002- CLIN 2 – Option Period 2:  Representation, Other Legal Assistance, Data Collection & Analysis, and Services at Emergency Facilities (T&M)**

| Labor Categories | | Loaded Rates | Estimated Hours | Estimated Total | |
|---|---|---|---|---|---|
| ████████████ | | ████ | ████ | ████ | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |



| Labor Categories | | Loaded Rates | Estimated Hours | Estimated Total | |
|---|---|---|---|---|---|
| ██████████ | | | | | |
| ██████████ | | | | | |
| ██████████ | | | | | |
| ██████████ | | | | | |
| ██████████ | | | | | |
| ██████████ | | | | | |
| ██████████ | | | | | |
| ██████████ | | | | | |
| Labor Subtotal | | | | ████████ | |
| | | | | | |
| Materials Subtotal | | | | ████████ | |
| FIXED PRICE Material Indirect Cost [52.212-4; Alt I(i)(1)(ii)(D)(2)] | | | | | ███ |
| | | | | | |
| 2002- CLIN 2 Ceiling (Not to Exceed) | | | | ████████ | |

Payment Schedule for Material Indirect Costs: The Government will reimburse the Contractor for indirect costs on a pro-rata basis over the period of contract performance up to the stated fixed price.

B.4.3.5 – 2003- CLIN 3 – Option Period 2:  Attorney Recruitment Project (FFP)

| Service Description | | Cost | |
|---|---|---|---|
| ████████████ | | ████████ | |
| | | | |

Payment shall be made upon the delivery and acceptance of the services required.

B.4.3.6 – 2004- CLIN 4 – Option Period 2:  Spanish Language Support and Technical Assistance Training (FFP)

| Service Description | | Cost | |
|---|---|---|---|
| ████████████████ | | ████████ | |
| | | | |

Payment shall be made upon the delivery and acceptance of the services required.

B.4.4   OPTION PERIOD 3

The hybrid Time & Materials (T&M) and Firm Fixed Price (FFP) Option Period 3 is priced as follows:

| Contract Line Item Number (CLIN) | Cost |
|---|---|
| ██████████████ | ████████ |
| | |
| | |
| | |
| **TOTAL Potential Value Inclusive of all Option Period 3 CLINS** | **$ 88,588,158.24** |

B.4.4.1 Fixed-Price (FFP) CLINs

| CLINs | | Contract Period | | Fixed Price | |
|---|---|---|---|---|---|
| ████ | | ████ | | ████ | |
| | | | | | |
| | | | | | |

B.4.4.2 – 3001- CLIN 1 – Option Period 3:  Know your rights presentations and legal screenings (FFP)

| Service Description | | Cost | |
|---|---|---|---|
| ████████ | | ████ | |
| | | | |

Payment shall be made upon the delivery and acceptance of the services required.

B.4.4.3 Time-and-Materials (T&M) CLINs

B.4.4.4 – 3002- CLIN 2 – Option Period 3:  Representation, Other Legal Assistance, Data Collection & Analysis, and Services at Emergency Facilities (T&M)

| Labor Categories | | Loaded Rates | Estimated Hours | Estimated Total | |
|---|---|---|---|---|---|
| ████████ | | ████ | ██ | ████ | |
| | | | | | |
| | | | | | |

Continuation Page # 16
Unaccompanied Alien Children Legal Services
Contract # 75P00125C00016



Continuation Page # 17
Unaccompanied Alien Children Legal Services
Contract # 75P00125C00016



| Labor Categories | Loaded Rates | Estimated Hours | Estimated Total |
|---|---|---|---|
| Labor Subtotal | | | ▮ |
| | | | |
| Materials Subtotal | | ▮ |
| FIXED PRICE Material Indirect Cost [52.212-4; Alt I(i)(1)(ii)(D)(2)] | | ▮ |
| | | |
| 3002- CLIN 2 Ceiling (Not to Exceed) | | ▮ |

Payment Schedule for Material Indirect Costs: The Government will reimburse the Contractor for indirect costs on a pro-rata basis over the period of contract performance up to the stated fixed price.

B.4.4.5 – 3003- CLIN 3 – Option Period 3 Attorney Recruitment Project (FFP)

| Service Description | | Cost | |
|---|---|---|---|
| ████████████████████ | | ██████████ | |
| ██████████ | | | |

Payment shall be made upon the delivery and acceptance of the services required.

B.4.4.6 – 3004- CLIN 4 – Option Period 3:  Spanish Language Support and Technical Assistance Training (FFP)

| Service Description | | Cost | |
|---|---|---|---|
| ████████████████████████████ | | ██████████ | |
| ██████████ | | | |

Payment shall be made upon the delivery and acceptance of the services required.

Total Base and All Options Value: **$356,310,289.21**

B.5    CEILING PRICE

The hours and total price per labor category are for budgeting purposes only. The number of hours actually used for each category may exceed or be less than the estimate by category as long as the ceiling price for the CLIN is not exceeded. The ceiling for each CLIN is identified in Section B.  The Government shall not be obligated to pay any amount in excess of this ceiling price nor is the Contractor obligated to continue performance if to do so would exceed this ceiling price.  In the event that the Government chooses to exercise optional CLINS, unused funds from a previous CLIN may not be used to fund any services taking place in a subsequent CLIN.  The ceiling price may be modified by the Government if it is determined that the estimated hours or estimated materials are insufficient for the work required.

B.6    ADDITIONS AND CHANGES TO LABOR CATEGORIES

It may be necessary to add or change labor categories during performance of this contract in order to carry out the services described in Section C.  If new labor categories are added, or existing labor categories revised, the parties will negotiate the labor category(ies) prior to the incorporation into the contract.  Any new labor rate proposed will be evaluated for reasonableness in accordance with FAR 15.4.

**SECTION C - Description/Specifications/Statement of Work**

*Unaccompanied Alien Children Legal Services*

C.1 PROGRAM DESCRIPTION AND BACKGROUND

**INTRODUCTION**

This proposed Performance Work Statement (PWS) describes the specific tasks required to provide legal services for unaccompanied alien children (as defined by section 462(g)(2) of the Homeland Security Act of 2002) in and released from Office of Refugee Resettlement (ORR) custody. The requirements and related content outlined in this proposed PWS were derived from the Statement of Objectives and RFP documentation.

**BACKGROUND**

ORR's Unaccompanied Alien Children Program within the Administration for Children and Families provides temporary shelter care and other child welfare related services to unaccompanied alien children (children) subject to immigration proceedings through a network of providers. ORR only accepts children referred from other Federal entities and houses children in a network of shelters operated by state-licensed entities and other ORR-funded custody providers. Shelter and residential services begin once ORR admits a child for placement and primarily ends when ORR releases the child to a suitable sponsor, when the child turns 18 years of age, or when disposition of the child's immigration case results in the child's removal, including voluntary departure, from the United States.

On March 1, 2003, Section 462 of the Homeland Security Act of 2002, 6 U.S.C. § 279, transferred functions regarding the care and placement of unaccompanied alien children under U.S. immigration laws from the Commissioner of the Immigration and Naturalization Service to the Director of ORR. ORR has responsibility for the care and custody of children in federal custody due to their immigration status and their age. ORR is also responsible for the safe and timely release of children to appropriate sponsors. In making release decisions, the Homeland Security Act directs ORR to consider (1) the likelihood of a child's appearance before all hearings or proceedings; (2) protections from traffickers and others seeking to harm children; and (3) settings that reduce the possibility of a child endangering oneself or others. The Trafficking Victims Protection Reauthorization Act (TVPRA) of 2008, 8 U.S.C. § 1232, further requires a determination that a proposed sponsor is capable of safeguarding a child's physical and mental well- being.

Further, the TVPRA at 8 U.S.C. § 1232(c)(5) requires: "[T]he Secretary of Health and Human Services shall ensure, to the greatest extent practicable and consistent with section 292 of the Immigration and Nationality Act (8 U.S.C. 1362), that all ... children who are or have been in the custody of the Secretary or the Secretary of Homeland Security, and who are not described in subsection (a)(2)(A), have counsel to represent them in legal proceedings or matters and protect them from mistreatment, exploitation, and trafficking. To the greatest extent practicable, the

Continuation Page # 20
Unaccompanied Alien Children Legal Services
Contract # 75P00125C00016

Secretary of Health and Human Services shall make every effort to utilize the services of pro bono counsel who agree to provide representation to such children without charge."

Many children have faced traumatic situations in their home countries, such as severe poverty, violence, torture, gang recruitment and exploitation, human trafficking, domestic violence, abuse, and neglect.
Some children are also very young, have little or no formal education, and are primarily non-English speaking. Therefore, Contractor must ensure all services provided hereunder are attuned to the varied and individual needs of the children, including being developmentally appropriate, culturally competent, and trauma informed.

**OBJECTIVES**

Contractor shall provide legal services and other assistance to children in and released from ORR care in the sectors defined by ORR. Contractor shall use developmentally appropriate and culturally competent techniques and methods to assist children navigating the complex immigration system to the extent practicable. All services under the Contract shall meet the following six objectives:

- Conduct Know Your Rights presentations (KYR) to inform children of their legal rights and what to expect throughout immigration proceedings.
- Conduct legal screenings to identify forms of legal immigration relief available to children and to assess their need for appropriate services supportive of their legal case.
- Provide or facilitate legal representation and other legal assistance for children for the duration of their immigration case (up to the funded capacity).
- Provide data tracking and reporting to monitor program performance and work to continually improve program service delivery.
- Addressing the gap in representation through recruitment and retention of immigration attorneys.
- Spanish language support & technical assistance training for legal service providers.

Contractor shall consider the following factors in applying its methods and techniques required to achieve each of the aforementioned objectives: locations where ORR shelters operate, locations where sponsors reside (by state and county), locations of Unaccompanied Refugee Minors (URM) Programs, Health and Human Services (HHS) and ORR regional offices/staff assignments, proximity to large pools of highly qualified, trained legal representatives including attorneys and paralegals, availability of bilingual candidates, access to technological solutions needed to facilitate communication with children and program staff, availability/access to an educated workforce with requisite legal education and experience, and other relevant factors that draw on the Contractor and its subcontractors' substantive technical experience as outlined in other sections of this response.

## GENERAL REQUIREMENTS

Personnel delivering legal services

Contractor shall use legal service providers (LSPs) with requisite training and experience to deliver required legal services to children in and released from ORR care in the below-identified locations in accordance with ORR Policy and this contract. LSPs shall use a workforce, including attorney and non- attorney legal staff and volunteers, with requisite training and experience to competently execute contract tasks. Contractor and LSPs shall provide ongoing training to LSP attorney and non-attorney staff and volunteers, as required to execute contract tasks under this contract, ORR policy, and attorney-ethics rules.

LSPs shall adhere to ORR policies and procedures, applicable state licensing requirements, state and federal public health COVID-19 guidance; where such adherence conflicts with applicable laws, including ethics rules governing attorneys, Contractor and/or LSPs shall identify the conflict and provide a plan to support ORR efforts to safeguard the welfare of children. LSPs shall adhere to ORR policies and procedures and relevant state law regarding completion of background checks for all contract-funded staff and volunteers working with children in ORR custody. In the event of an attorney-ethics conflict of interest precluding an LSP from delivering required services to an individual child, Contractor and/or the LSP shall ensure that child's access to an alternate provider for required services. LSPs shall have access to technological solutions needed to facilitate communication with children and program staff.

Services to be provided

LSPs shall provide children with legal services related to the child's immigration case, including areas falling under the jurisdiction of immigration judges as defined in Chapter 1, Section 1.5 of the Immigration Court Practice Manual and in other areas where the child may seek adjustment of status allowing them to obtain temporary or permanent lawful status in the United States. Covered activities include adjustment of status based in United States law such as obtaining Special Immigrant Juvenile Status (SIJS), Special Immigrant Visas (SIV), T visa, U visa, Violence Against Women Act (VAWA), deferred action, relief based on activities related to acting as a material witness, and other immigration-related forms of asylum and family-based petitions for which children may be eligible, as well as appeals of immigration decisions. This also includes helping children seek employment authorization based on their underlying petitions. LSPs shall adhere to ethics rules governing attorneys in carrying out all legal services under this contract, including representing a child's expressed interest or legal interest, as required by attorney-ethics rules.

LSPs shall use developmentally appropriate, culturally competent, and trauma-informed techniques to deliver required services. Contractor and/or LSPs shall ensure legal services are available in a variety of languages relevant to the children regularly served, including especially in Spanish and English. LSPs shall collaborate with children and any other relevant individuals, including assigned child advocates, as appropriate; a child's parent or legal guardian or other persons with knowledge of the child's circumstances, as appropriate; and appropriate subject-matter experts to make any recommendations to the child for action related to the pursuit of immigration relief.

Delivery of legal services

LSPs shall provide comprehensive, high-quality, and efficient delivery of specific legal services to children in and released from ORR custody in the below-identified locations and throughout the United States. Contractor and/or LSPs shall coordinate with ORR staff and care providers staff to promote continuity of those services throughout and after ORR custody. Contractor and/or LSPs shall coordinate with ORR staff and care provider staff to ensure Contractor and/or LSPs access to information required for service delivery, such as timely notice of each child's entry into an ORR facility; transfers between ORR facilities/programs; notice of each child's release from an ORR custody; and up-to-date, accurate contact information for released children to enable delivery of legal services required after the child's release, including services designed to promote children's appearance before immigration court after release.

Contractor and/or LSPs shall serve the maximum number of children possible given available funding and in accordance with ORR directives. Contractor and/or LSPs shall use innovative means and cost-saving methods to promote the equitable distribution of contract-funded services to eligible children, ensuring that each child receives professional and robust representational services to the maximum extent possible. Contractor shall coordinate with ORR to identify ORR shelter locations and high-release locations for planning purposes. Contractor shall participate in monthly conference calls with ORR/COR to discuss estimated funded capacity, capacity changes, and/or the onboarding of new capacity prior to the opening of care provider programs.

Contractor and LSPs shall provide scalable and responsive services to children throughout fluctuations in numbers of children referred to ORR, including during emergencies and periods of unusually high numbers of children entering ORR custody. Contractor shall seek modification from COR as needed to extend required services to any newly activated ORR facility—including regular, virtual, or emergency (such as emergency reception centers and emergency intake sites)—and Contractor shall initiate said services within thirty (30) days of the Government's notice of a new facility. Contractor has prepared a Contract Management Plan on page 40-41 of Volume I, Section 7, Part 1 – Technical Approach to address fluctuations in capacity to include rapid expansion and contraction of services to accommodate fluctuations in ORR's census and to address potential unexpected increases in the number of child arrivals.

Continuation Page # 23
Unaccompanied Alien Children Legal Services
Contract # 75P00125C00016

*Figure 1: As of contract start, LSP Placement (Dots) in Relation to ORR-Reported Release Counties, FY14-22 (Filled Counties)*



**TRANSITION PLAN**

Upon ORR/COR request, Contractor shall develop a transition plan and coordinate with the existing LSPs to manage cases currently in process under the existing contract to ensure continuity of services. The deadline to submit any such plan is subject to mutual agreement by ORR/COR and Contractor. Development of any such plan requires that ORR/COR advise the Contractor as to which services might continue upon contract end. For any services where continuation is anticipated, Contractor shall identify how it shall coordinate with the incoming contractor and/or Government personnel to transfer knowledge.

C.2     PERFORMANCE WORK STATEMENT (PWS)

The Contractor shall furnish all of the necessary personnel, materials, services, facilities, (except as otherwise specified herein), and otherwise do all the things necessary for or incident to the performance of the work as set forth below:

C.2.1   PROPOSED TASKS AND DELIVERABLES

**CLIN 1: KNOW YOUR RIGHTS PRESENTATIONS AND LEGAL SCREENINGS (FFP)**

**Objective I: Conduct Know Your Rights (KYR) presentations to inform children of their legal rights and what to expect throughout immigration proceedings.**

*Objective I (a). KYR delivery timelines:* LSPs shall deliver KYR to children within ten (10) business days of a child's first admission to an ORR facility and ten (10) business days of a child's transfer to a new ORR facility (except long-term foster care (LTFC) facilities, where LSPs instead shall offer representation or other legal assistance upon a child's arrival). LSPs shall provide another KYR every six (6) months for unrepresented children who remain in ORR care at this time interval. LSPs shall deliver KYRs to children subject to expedited release from ORR custody without having received a KYR in ORR custody; Contractor shall develop an implementation plan for providing such KYRs and submit said plan to the COR within sixty (60) days of the contract start date. LSPs shall provide additional KYRs at the direction of ORR. LSPs shall report in Contractor database any date(s) a KYR was conducted for each child, as outlined in Objective IV.

*Objective I (b). KYR method and setting:* LSPs shall deliver KYRs in a group setting prior to individual screenings and shall use developmentally appropriate techniques to enhance comprehension and retention, including content tailored to age, role-play, games, and colorful posters and other visuals. LSPs shall deliver an individualized KYR service as needed for certain children, including those made available to the LSP in a manner that does not permit timely access to a group KYR (e.g., children who arrive at a facility when no other children require the service within the timeframe required under Objective I (a)); those requiring unique language access services; and those too young to attend a group KYR.

*Objective I (c). KYR content & standards:* LSPs shall include in KYRs any ORR-mandated information and information about the immigration court process, including the child's obligation to attend hearings; children's legal rights and responsibilities, both in and once released from ORR custody; forms of immigration relief commonly available to children; and the LSP's role and that of other agencies and persons involved in the child's immigration matter. LSPs shall maintain legally accurate and developmentally appropriate KYR materials, including scripts and written handouts, approved by Contractor before use and tailored to the relevant jurisdiction(s). Contractor shall coordinate with ORR to approve LSP KYRs, including the method and templates used, in a manner aligned with attorney-ethics rules and allowing for jurisdiction-specific content. KYR materials must facilitate continuity of legal services, including information to assist children with accessing legal services upon release from ORR custody. Contractor and/or LSPs shall ensure KYR materials are available in a variety of languages relevant to the children regularly served, especially in Spanish and English. Contractor and/or LSPs shall develop appropriate interactive audiovisual and/or online content for children to supplement KYR service delivery, including information to assist children with accessing legal services upon release from ORR custody.

**Objective II: Conduct legal screenings to identify forms of legal immigration relief available to children and to assess their need for appropriate services supportive of their legal case.**

*Objective II (a). Legal screening delivery timelines:* LSPs shall provide legal screenings to children in ORR custody generally within ten (10) business days of a child's first admission to an ORR facility and ten (10) business days of a child's transfer to a new ORR facility (except LTFC, where LSPs instead shall offer representation or other legal assistance upon a child's arrival). LSPs shall provide another legal screening every six (6) months for unrepresented children who remain in ORR care. LSPs must deliver said repeat legal screenings in a manner tailored to the individual child and designed to limit re-traumatization, such as by using the previous legal screening notes as a starting point for the repeat legal screening. Contractor shall facilitate secure transfer of prior legal screening notes from one LSP to another in the event of transfer or release. LSPs shall deliver legal screenings to children subject to expedited release from ORR custody without having received a legal screening in custody. LSPs generally shall limit each legal screening to a total of ten (10) hours, including time spent interviewing and building rapport with a child, preparation associated with identifying legal immigration relief, and after-action documentation. LSPs shall report in Contractor database the date(s) a legal screening was conducted for each child, as outlined in Objective IV.

*Objective II (b). Legal screening method and content:* LSPs shall deliver legal screenings designed to assess a child's immigration-related case, including potential forms of immigration relief such as whether the child is a potential victim of trafficking; how best to match the child with representation; and other needs the child might have for appropriate services supportive of their legal case. Contractor must approve LSPs' legal screening templates prior to use. LSPs shall deliver legal screenings individually and in a manner that maintains confidentiality. To promote continuity of services, LSPs shall seek consent during each legal screening to share

information the child provides, for the purpose of referring that child to a separate legal provider upon the child's transfer or release. LSPs shall use an interpreter for the legal screening of any child requiring delivery in a language other than English or Spanish. LSPs shall deliver a tailored legal screening service to children unable to engage in a traditional legal screening, including children who are preverbal. This includes gathering information from adults with knowledge of the child's circumstances to assess the child's immigration-related case and need for appropriate and necessary services supportive of the legal case. LSPs shall coordinate with ORR staff and care provider staff to identify such children and to access contact information necessary to conduct the required legal screening.

*Objective II (c). Legal screening follow-up services:* LSPs shall collaborate with assigned child advocates and ORR care providers where possible, to ensure children receive appropriate and necessary services, including children aged 12 and younger, pregnant and/or parenting children, developmentally delayed children, children with no identified sponsor, and children with other vulnerabilities and complexities. At the request of a case manager, LSPs shall prepare a recommendation for preferred placement states for a child being considered for transfer to LTFC, in consultation with and given the consent of the child. Ideally, the list of recommended states shall be ranked in order of the best location for the child to obtain favorable legal relief. The recommendation or, alternatively, notice that the child does not consent shall be provided to the child's case manager within 14 calendar days of the initial request by a case manager. LSPs shall coordinate with ORR staff and care provider staff to ensure timely identification of children who fall into this category.

## CLIN 2: REPRESENTATION, OTHER LEGAL ASSISTANCE, DATA COLLECTION & ANALYSIS, AND SERVICES AT EMERGENCY FACILITIES (T&M)

**Objective III: Provide or facilitate legal representation and other legal assistance for children for the duration of their immigration case (up to the funded capacity).**

*Objective III (a). Courtroom Assistance:* LSPs shall provide courtroom assistance to unrepresented children scheduled to attend immigration court while in ORR custody, including in person or remotely when necessary. Assistance shall be in the form of Friend of Court, a "limited representation" appearance that lasts for the duration of a single hearing, or some similar alternative allowed by the Executive Office for Immigration Review (EOIR). LSPs shall coordinate with ORR staff or care provider staff to gather information required for the LSP to fulfill its court assistance function before EOIR. This includes gathering up-to-date information related to a child's anticipated transfer or reunification with a sponsor, such as projected timeline.

*Objective III (b). Other legal assistance:* LSPs shall provide other immigration-case-related preparation for unrepresented children, including:
- change of venue or change of address submissions to EOIR;
- immigration court preparation;
- assistance on children's immigration-related custody or placement, including requests for release on recognizance for children aging out of ORR custody; and

- referrals for legal, child advocate, or other appropriate services supportive of the legal case such as EOIR-funded Legal Orientation Program for Custodians.

LSPs shall promote continuity of legal services and advance ORR's goal of universal representation by providing said legal referrals for unrepresented children in and released from ORR custody, including upon a child's transfer between ORR facilities. For children transferred between ORR facilities, including LTFC, LSPs shall conduct the legal referral upon transfer through Contractor's online referral database.

For children released to geographic locations where ORR-funded direct or pro bono representation is available, LSPs shall conduct the legal referral generally within six (6) weeks of the child's release via Contractor's online referral database. This shall ensure the timely delivery of services and promote continuity of legal interventions. For children released to areas where ORR-funded direct or pro bono representation capacity is unavailable, LSPs shall use available resources to identify and connect children with alternate legal service providers providing free or low-cost immigration legal services. Contractor and/or LSPs shall explore options to connect children with remote direct representation where appropriate and in accordance with local and state attorney-licensing standards. LSPs shall maximize efforts to provide a legal referral for each unrepresented child in or released from ORR custody consistent with identified legal relief. Contractor and/or LSPs shall establish a referral mechanism for children released from ORR custody who might later experience human trafficking or other victimization related to the child's unaccompanied or immigration status.

*Objective III (c). Representation:* LSPs shall provide direct representation to children in or released from ORR custody, so long as representation is initiated prior to the child's 18th birthday and before immigration relief is granted. Contractor and/or LSPs shall not use funding under this contract for representation of children in matters unrelated to services identified under this contract or to sue the United States in any matter, unless expressly waived by ORR/COR in advance. Contractor understands these restrictions are not all inclusive and, as needed, shall seek guidance on the use of contract funding from the COR/CO prior to the execution of tasks. Contractor shall seek said waiver to use legal mechanisms to pursue a child's expressed or legal interest, including for children subject to prolonged immigration-related custody or awaiting action by an agency to vindicate their legal rights (e.g., mandamus, a key legal mechanism in federal court that can compel the Government to resolve pending immigration applications for children who have waited an inordinate length of time for a decision). Contractor shall coordinate with ORR/COR to establish a waiver mechanism compliant with attorney- ethics rules, precluding impermissible measures that might undermine privilege; allow a third party or non-attorney to direct or interfere with the attorney-client relationship; interfere with the independent professional judgment of legal counsel; or otherwise curtail children's ability to timely vindicate their rights.

Under the proposed contract and budget, Contractor shall continue all representation cases pending under ORR's current contract for legal services for unaccompanied alien children. Contractor has prepared a Sustainability Plan on pages 37-40 of Volume I, Section 7, Part 1 –

Technical Approach for contract- funded representation cases that emphasizes the availability of assistance through disposition of each immigration case. To maximize availability of representation to the greatest number of children possible, LSPs shall consider each representation under this objective for placement, in whole or in part, with separately funded or pro bono attorneys within or outside their organization, as appropriate for any given child. LSPs, including pro bono attorneys if applicable, shall appear as legal representative in cases initiated under this objective for clients required to appear before any immigration court, including in person or remotely when necessary. Contractor must approve LSPs' attorney-client retainer agreements for representation under this contract prior to use. Contractor shall collaborate with COR per Objective IV (e) to ensure monitoring of average cost per case initiated under this contract in line with the Government's case cost mark of $8,500 per case. Contractor shall provide cost evaluation analysis to inform the Government's periodic assessment regarding this average cost to account for changes in court and agency practices, inflation, and other factors that might increase or decrease the necessary resource allocation.

LSPs shall maximize offers of representation to all:
- unrepresented unaccompanied children who become enrolled in ORR Unaccompanied Refugee Minor (URM) programs, provided they have not yet obtained immigration relief (including related petitions) or reached 18 years of age;
- children upon their placement in a LTFC facility or in a residential treatment center outside a licensed ORR facility and for whom other legal assistance does not satisfy the legal needs of the individual child, and LSPs shall coordinate with ORR staff and care provider staff to timely identify such children;
- children with no identified sponsor who are unable to be placed in LTFC facilities, and LSPs shall coordinate with ORR staff and care provider staff to timely identify such children;
- children in ORR custody who must appear before EOIR, including children seeking voluntary departure, and for whom courtroom assistance does not satisfy the legal needs of the individual child;
- children released to a sponsor residing in the defined service area of the same LSP who provided the child legal services in ORR custody, to promote continuity of legal services and advance ORR's goal of universal representation; and
- other released children, up to funded capacity.

LSPs shall consider ORR requests and recommendations regarding the prioritization for contract-funded direct representation of particularly vulnerable children. This includes children aged 12 and younger, survivors of human trafficking, survivors of serious crimes, and children requiring a home study or referred for post-release services.

For any represented child who leaves an LSP's defined service area prior to the resolution of the child's immigration case, the LSP shall promote continuity of representation by connecting the child with alternate counsel in the new location of the child's residence. In the event the child retained the LSP in custody and requires said alternate counsel upon release, Contractor shall

ensure continuity of representation to the extent practicable. In all cases, LSPs shall adhere to relevant attorney-ethics and EOIR rules governing withdrawal of representation. For any represented child in ORR custody, LSPs shall ensure timely notice of their representation to ORR and care provider staff, including by submission of a Form L-3 Notice of Attorney Representation.

*Objective III (d). Pro bono representation and legal assistance:* LSPs shall maximize the use, including identification, training, and deployment, of volunteer attorneys and non-attorneys wherever possible for both representational and nonrepresentational legal services under this contract, as appropriate to any given service or child. LSPs shall build and maintain a roster of attorney and non- attorney volunteers who can undertake legal services with the LSP's mentorship, as required, for any children or cases suitable for pro bono involvement. LSPs shall screen and regularly update the screening of each volunteer to ensure they meet appropriate standards for undertaking activities under the contract. LSPs shall assess prospective pro bono attorneys' skills, experience, availability, and interest in working with children. LSPs shall also confirm with state licensing authorities that any prospective pro bono attorney is licensed to practice law and in good standing with the bar of the relevant U.S. state and/or territory and that the attorney is not, and has not been, subject to any disciplinary matters that call into question one's fitness to represent children in their immigration case.

LSPs shall conduct group or individual training for prospective or current attorney or non-attorney volunteers on immigration law and procedure and on skills required for working with children and survivors of trauma. LSPs shall include in pro bono agreements for representation under this contract detailed information about required regular check-ins regarding case progress and needs and about data reporting required from the pro bono attorney to the LSP. LSPs shall assign cases to and mentor, as needed, pro bono attorneys undertaking representation under this contract. Case assignment activities include:

- determining the appropriateness of a particular case or category of cases for assignment, including by considering a pro bono attorney's or law firm's interest or expertise;
- tracking a prospective child client's expected case or placement timeline to ensure alignment with pro bono attorneys' availability;
- determining whether to assign the complete case or select part(s) of the case depending on available resources and expertise and/or the needs of a child's legal case;
- promoting cases to prospective pro bono attorneys; and
- reassigning existing cases to an alternate pro bono or other counsel, as needed.

Mentorship activities include:

- any necessary, continuing involvement in the assigned pro bono case;
- regularly checking in with the pro bono attorney as to case progress and needs;
- reviewing case materials prepared by the pro bono attorney;
- assisting the pro bono attorney to prepare for required interviews and court hearings; and
- obtaining information regarding children's cases from their assigned pro bono attorneys to facilitate any case management tracking and required LSP data reporting under this

contract.

## Objective IV: Providing data collection, analysis, and reporting.

Contractor shall conduct ongoing data collection, trends analysis, and reporting to ORR under a mutually agreeable schedule, to monitor program performance and work to continually improve program service delivery. This shall be achieved through the below sub-objectives.  Reports described under this PWS shall not be due in the event the government does not exercise the option for a period in which the report is due, based on the mutually agreeable reporting schedule, or in the event contracting timelines render the data unavailable for reporting. Similarly, data elements required in this PWS are only due if the reports through which they will be submitted, based on the mutually agreeable reporting schedule, are due.

*Objective IV (a). Implementation of Quality Assurance / Quality Control Plan:* To the extent the required Quality Control Plan (pages 42-48 of **Volume I, Section 7, Part 2 – Quality Control Plan**) does not satisfy the Government's interest in a Quality Assurance Plan (QASP), Contractor shall collaborate with ORR to develop and implement an ORR-approved QASP that tracks contract performance across all supported geographic sectors.

*Objective IV (b). Reporting on indicators, statistics, and in response to requests:* Contractor shall draft specific performance indicators aligned with Objectives I – III of this PWS and the proposed Quality Control Plan (QCP) for approval by the COR. Contractor shall provide these indicators and other quantitative and qualitative program data and statistics in the form of (a) regular reports submitted to the COR on an agreed upon schedule, and, where relevant (b) stand-alone reports focused on key areas of interest, or that present statistics best measured on a less frequent cadence than regular reports, or that are responsive to ad hoc requests. Contractor shall coordinate with COR to develop technical parameters to respond to ad hoc requests.

*Objective IV (c). Secure data reporting infrastructure:* Contractor shall maintain a secure and scalable data infrastructure and computing environment that enables raw data ingestion from disparate sources, extract-transform-load (ETL) processes to clean, organize, and connect data from various sources, and analysis of quantitative data at a scale appropriate for the work completed in Objectives I –

III. Contractor's data environment shall be able to respond and adapt to changes to service areas, service delivery modifications, policy changes, fluctuations in volume, emergency response services, and other adaptations to program services described in the PWS. This infrastructure shall be capable of ingesting, housing, and where necessary, securely merging data from multiple sources in compliance with appropriate Government regulations (see Objective IV (i) below).

*Objective IV (d). Collection of program service data:* Contractor shall collect quantitative and qualitative data on program services performed by LSPs ("program data") in fulfilment of Objectives I – III of this PWS and in support of the QCP. LSPs shall report program service information in a secure data reporting environment as individualized data on date, location, and other service delivery details on KYRs, legal screenings, representation,

referrals, and other legal services performed over the course of the Contract. Contractor shall provide training and documentation on data entry into the platform and communicate regularly with LSPs to ensure quality of data entry practices and data. Contractor shall additionally provide a venue for LSPs to report issues and ask questions that arise over the course of data collection and entry. Contractor and LSPs shall collaborate through surveys, interviews, and other methodologies to produce qualitative data necessary to assess program services.

*Objective IV (e). Develop metrics for tracking effort needed for various legal services:* Contractor shall assess practicable methods of collecting and reporting ongoing data on the labor and cost required to perform legal services and provide representation and develop requisite metrics accordingly. This may include LSP-level comparisons of billed staff labor hours to caseloads on services where there are hour or cost guidelines for service delivery, such as labor hour guidance on legal screenings and average costs of direct representation per case.

*Objective IV (f). Collection of non-program service data on factors impacting program service delivery:* Contractor shall collaborate with the COR to gather data and provide recommendations on issues that impact LSPs' ability to conduct legal service duties as outlined in the Contract and in accordance with ORR policies and procedures. Contractor shall share trends that impact ability to make timely identification of viable forms of legal relief and recommend corresponding solutions to ORR.

*Objective IV (g). Reporting on key activities in unaccompanied alien children's legal cases as a subset of program data:* Contractor shall ensure reports to the Government include quantitative and qualitative analyses of the following details of program performance and legal services performed under the contract. Contractor shall collaborate with ORR on the appropriate frequency and format to report on assessment of subcontractor compliance across geographical sectors with the following activities:

1. Delivery of KYR presentations within 10 business days of admission to an ORR shelter (matching ORR-provided individual book-in data with program service dates), including upon transfers to a new ORR facility, and an additional KYR once every 6 months if the child remains in ORR custody 6 months or more;
2. Legal screenings for all children in and released from ORR custody upon initial placement or subsequent transfer, and again for all children remaining in ORR custody every six months thereafter;
3. Immigration case-related preparation and courtroom assistance for children in and released from ORR custody, including Friend of Court activity;
4. Direct representation for children in and released from ORR custody, including Unaccompanied Afghan Minors, LTFC and URM placement.
5. Pro bono mentorship, service delivery, and children's access to the network post-release;
6. Legal referrals – attempts and successful matches within network, and attempts and successful matches outside of network, if data is available.

*Objective IV (h). Evidence-based recommendations for improved service delivery:* Contractor shall perform ongoing quantitative and qualitative analysis to develop recommendations to ORR regarding improvements to service delivery, "efficiency" of funding allocation and effectiveness of services, and analysis of case processing and legal representation timelines with the goal of achieving outcomes in the best interest of children served under this contract.

*Objective IV (i). Supplemental analyses using federal administrative data and other partner data provided by ORR:* Contractor shall collaborate with ORR to assess the feasibility of obtaining regular, comprehensive extracts of Personally Identifiable Information (PII) linked by unique identifiers from (but not limited to) ORR's administrative databases, EOIR's administrative databases, and USCIS's administrative databases, as well as assessing the possibility of extending any data sharing agreements between ORR and other federal agencies necessary to obtain and use this data for aggregate analysis on KYR, legal screenings, direct representation, and other requested data points that help ORR understand impact of legal service provision to children on their immigration cases. Where ORR facilitates data sharing with other relevant federal agencies or partners, Contractor shall coordinate directly with those agencies at ORR's request.

Provided that necessary data is made available to Contractor from ORR, EOIR, USCIS and/or other administrative databases and/or ORR facilitates original data collection required for this objective where relevant, Contractor shall provide analysis on the following requested data points in service of the various sub-objectives mapped in *Objective IV of the SOO* – including through performance indicators and other outputs that rely on statistical formulas to demonstrate the relationship of various datapoints or change in a particular statistic over time:

1. Know Your Rights (KYR) and legal screening (LS) data points
    a. KYRs (including initial, transfer, and six-month services):
        i. KYR date(s),
        ii. number of unique children receiving a KYR,
        iii. number of KYRs delivered,
        iv. barriers and constraints affecting KYR delivery, and
        v. for initial KYRs:
            1. delivery status (i.e., delivered timely, delayed delivery)
            2. additional days for delivery beyond due date (if delayed)
    b. Legal Screenings (including initial, transfer, and six-month services):
        i. LS date(s),
        ii. number of unique children receiving a LS,
        iii. number of LSs completed,
        iv. barriers and constraints affecting LS delivery, and
        v. for initial LSs:
            1. delivery status (e.g., delivered timely, delayed delivery)
            2. additional days for delivery beyond due date (if delayed)

2. Direct representation data points
   a. Number of children provided direct legal representation;
   b. Number of direct representation cases initiated, broken down by cases initiated while children are in ORR custody or out of ORR custody, both in total and disaggregated by LSP;
   c. Average length of time to secure direct legal representation, from admission date until case initiation for cases initiated in ORR custody, and from discharge date until case initiation for cases initiated after release from ORR custody;
   d. Average duration of cases, from case initiation until closure of the case to Acacia's program;

3. Pro Bono Representation
   a. Number of children provided representation by pro bono attorneys;
   b. Number of pro bono case initiations, for children in ORR custody and children discharged from ORR custody;
   c. Number of training events held to prepare volunteers to deliver pro bono services under the contract, and the number of attendees at such events;

4. Direct Representation Costs
   a. Number of hours billed for direct representation by attorneys and non-attorneys at each LSP;
   b. Program-level average of hours billed per direct representation case, under Contract funding
   c. Program-level running cost, of direct representation under Contract funding, calculated as spending per case;

5. General/other data points
   a. Summaries of reasons for closure of cases to Acacia's program;
   b. Quantitative measurement of viable forms of legal relief identified;
   c. The number of unique children receiving one or more legal services other than representation;
   d. Qualitative monitoring of contracted attorneys and their interaction with children, care providers, stakeholders, Federal Field Specialists, and ORR headquarters staff of Case Coordination services;
   e. Most frequent applications or motions filed;

6. Training activities
   a. Quantitative and qualitative measurements capturing capacity building efforts, recruitment, and the training of attorneys.

*Objective IV(j). Facilitating direct access to information requested by ORR:* Contractor shall work with the COR to determine select data points in performance indicators and management tools such as dashboards that allow the Government to monitor aggregate program services at regular intervals. As ORR makes available information about its data

management systems and processes for contractors to submit statistics through these systems, Contractor shall work with the COR to assess feasibility of providing additional individual-level information.

Services at emergency facilities

Contractor and/or LSPs shall conduct legal services for children in and released from emergency facilities in a manner tailored to the unique needs of that population. LSPs shall deliver KYR to children within ten (10) business days of the child's admission to an emergency facility, to the extent practicable and given the availability of space required for the KYR service. KYRs shall be delivered in a group setting and shall include all content relevant to children in the emergency context, and special emphasis must be made in KYR materials to help children connect with legal services upon release. Contractor shall approve LSPs' emergency-facility KYR materials prior to use. LSPs shall deliver legal screenings generally within ten (10) business days of the child's admission to an emergency facility, to the extent practicable and given the availability of space required to preserve screening confidentiality. Content of the legal screening shall be tailored to the needs of children in the emergency facility, and Contractor shall approve LSPs' emergency facility legal screening template prior to use. LSPs shall deliver KYR and legal screening for children released from emergency facilities without having received those services in custody, to the extent practicable. For children who receive a legal screening, to the extent practicable LSPs shall conduct legal referrals as described in Objective III (b) to ensure continuity of legal services and maximize the placement of cases with representation. LSPs shall offer other legal assistance under Objective III (b) as needed in the emergency facility context.

LSPs shall offer representation to the extent practicable for children in emergency facilities who are expected to be released to a sponsor residing in the defined service area of the same LSP, a case category described under Objective III (c), and other children who may require immediate representation to protect their rights. Though children at emergency facilities typically are not required to appear in court during that time (because Notices to Appear are not filed immediately and/or children are transferred to regular facilities once filed), if children are regularly required to appear in court while at emergency facilities, Contractor shall coordinate with the LSP that covers that court to arrange for the necessary services (which may have additional cost implications). For all services, LSPs shall maximize use of volunteer attorneys or non- attorneys to expand the availability of legal services for children in and released from emergency facilities. LSPs shall use trauma-informed, culturally competent, and developmentally appropriate techniques to conduct all contract activities for children in or released from emergency facilities.

**CLIN 3: ATTORNEY RECRUITMENT PROJECT (FFP)**

*Objective V: Addressing the gap in representation through recruitment and retention.*

The contractor shall oversee and administer the ongoing recruitment, placement, and support of new attorneys to the field. This shall include:

1.  Maintaining attorney fellowship programming to represent unaccompanied alien children over the contract period. Attorney fellows shall serve at host sites, receiving training and supervision from IJC and host offices.

2. Building additional capacity by developing a marketing campaign strategy and fostering partnerships with firms, law schools, and other stakeholders to support the recruitment of a well- rounded pool of experienced attorneys into the field.

## CLIN 4: SPANISH LANGUAGE SUPPORT AND TECHNICAL ASSISTANCE TRAINING (FFP)

*Objective VI: Spanish language support & technical assistance training.*
To help build capacity for legal representation in the immigration field, the contractor shall:
1.  Provide interpretation (in-person and remote) and translation services in Spanish for children in and released from ORR custody.
2.  Support LSPs in implementing their own intensive Language Program to strengthen the Spanish language ability of staff, including vocabulary pertaining to legal Spanish and immigration law. An LSP's Language Program shall include Spanish language courses and/or other educational resources to help expand legal staff capacity in the field. Such courses and resources shall be contracted directly by LSPs.

The contractor, with the support of its expert technical assistance providers shall develop and conduct trainings to assist new and existing legal service providers in:
1.  Building capacity and best practices for legal services using developmentally appropriate, trauma- informed, and culturally competent techniques.
2.  Assisting with organizational structures through management trainings and support.
3.  Developing trainings and resources, both remote and in-person, to support legal staff working with children and increase staff retention.

The contractor will ensure the delivery of trainings and support are at the appropriate level of quality, on time, and within scope, in accordance with the performance work statement.

## C.2.2   POST AWARD MEETING (PAM)

If determined to be necessary by the Contracting Officer, and in accordance with FAR 42.5, the Contracting Officer will coordinate the post-award orientation between the Government and Contractor within ***thirty (30) days*** of award.

The Contractor shall attend the post-award meeting which may be held virtually or in-person at the Government's discretion not to place an undue burden on the Contractor.

## C.3   INFORMATION SECURITY AND/OR PHYSICAL ACCESS SECURITY REQUIREMENTS

*Important Note to Contractor: In the event of a discrepancy between the following language and*

*included HHSAR clauses, the HHSAR clauses take precedence.*

1. Baseline Security Requirements
   a. **Applicability.** The requirements herein apply whether the entire contract or modification (hereafter "contract"), or portion thereof, includes either or both of the following:
      i. **Access (Physical or Logical) to Government Information:** A Contractor (and/or any subcontractor) will have or will be given the ability to have, routine physical (entry) or logical (electronic) access to government information.
      ii. **Operate a Federal System Containing Information:** A Contractor (and/or any subcontractor) will operate a federal system and information technology containing data that supports the HHS mission. In addition to the Federal Acquisition Regulation (FAR) Subpart 2.1 definition of "information technology" (IT), the term as used in this section includes computers, ancillary equipment (including imaging peripherals, input, output, and storage devices necessary for security and surveillance), peripheral equipment designed to be controlled by the central processing unit of a computer, software, firmware and similar procedures, services (including support services), and related resources.
   b. **Safeguarding Information and Information Systems.** All government information and information systems must be protected in accordance with HHS/ACF/ORR policies and level of risk. At a minimum, the Contractor (and/or any subcontractor) must:
      i. Protect the:
         - **Confidentiality**, which means preserving authorized restrictions on access and disclosure, based on the security terms found in this contract, including means for protecting personal privacy and proprietary information;
         - **Integrity**, which means guarding against improper information modification or destruction, and ensuring information non-repudiation and authenticity; and
         - **Availability**, which means ensuring timely and reliable access to and use of information.

      ii. Categorize all information owned and/or collected/managed on behalf of HHS/ACF/ORR and information systems that store, process, and/or transmit HHS information in accordance with FIPS 199 and National Institute of Standards and Technology (NIST) Special Publication (SP) 800-60, Volume II: Appendices to Guide for Mapping Types of Information and Information Systems to Security Categories. Based on information provided by the ISSO, CISO, ACF/ORR, SOP, or other representative, the impact level for each Security Objective (Confidentiality, Integrity, and Availability) and the Overall Impact Level,

which is the highest watermark of the three factors of the information or information system are the following:

Information Type Number - D.14.2.
Information Type Title - Legal Defense Information Type

- **Confidentiality:** [ X] Low [  ] Moderate [  ] High
- **Integrity:** [ X] Low [  ] Moderate [  ] High
- **Availability:** [X] Low [  ] Moderate [  ] High
- **Overall Impact Level:** [ X] Low [  ] Moderate [  ] High

iii. Based on the agreed-upon level of impact, implement the necessary safeguards to protect all information systems and information collected and/or managed on behalf of HHS/ACF/ORR regardless of location or purpose.

iv. Report any discovered or unanticipated threats or hazards by either the agency or contractor, or if existing safeguards have ceased to function immediately after discovery, **within one (1) hour or less**, to the government representative(s).

v. Adopt and implement all applicable policies, procedures, controls, and standards required by the HHS/ACF/ORR Information Security Program to ensure the confidentiality, integrity, and availability of government information and government information systems for which the Contractor is responsible under this contract or to which the Contractor may otherwise have access under this contract. Obtain all applicable security and privacy policies by contacting the CO/COR or HHS/ACF/ORR security and/or privacy officials.

Applicable security and privacy policies, including the HHS Information Security and Privacy Policy (IS2P), relevant NIST Special Publications, and ORR-specific protocols, will be provided post-award by the CO/COR. Due to their sensitive nature, these materials cannot be released prior to award.

c. **Privacy Act. Comply with the Privacy Act requirements (when applicable), and tailor FAR and HHSAR clauses as needed.**

d. **Privacy Compliance.** Comply with the E-Government Act of 2002, NIST SP 800-53, and applicable HHS/ACF/ORR privacy policies, and complete all the requirements below:

i. Per the Office of Management and Budget (OMB) Circular A-130, Personally Identifiable Information (PII), is "information that can be used to distinguish or trace an individual's identity, either alone or when combined with other information that is linked or linkable to a specific individual." Examples of PII include, but are not limited to the following: Social Security number, date and place of birth, mother's maiden name, biometric records, etc.

    ii.    To ensure that the public's personal information is protected in a manner commensurate with the privacy risks, HHS uses a privacy analysis process to assess the risks associated with HHS's collection and maintenance of PII and to ensure information is handled in accordance with applicable legal, regulatory, and policy requirements. PTAs analyze how information is handled in IT systems and electronic information collections and determines if the IT system or electronic information collection collects, disseminates, maintains, or disposes of PII. PIAs are used to assess the privacy risks of IT systems and electronic information collections that collect, disseminate, maintain, or dispose of PII about members of the public. PIAs also provide transparency into how HHS collects, disseminates, maintains, or disposes of the public's PII.

    iii.    The Contractor must support the agency with conducting a Privacy Threshold Analysis (PTA) for the information system and/or information handled under this contract to determine whether or not PII is collected, disseminated, maintained, or disposed as part of the contract. The PTA will determine if a full Privacy Impact Assessment (PIA) needs to be completed.

- If the results of the PTA show that a full PIA is needed, the Contractor must support the agency with completing a PIA for the system or information after completion of the PTA and in accordance with HHS policy and OMB M-03-22, *Guidance for Implementing the Privacy Provisions of the E-Government Act of 2002.* The contractor must initiate the PTA within 30 days of contract award and complete it in coordination with the COR within 60 days of award.
- The Contractor must support the agency in reviewing the PIA at least every ***three years*** throughout the system development lifecycle (SDLC)/information lifecycle, or when determined by the agency that a review is required based on a major change to the system, or when new types of PII are collected that introduces new or increased privacy risks, whichever comes first.

e. **Controlled Unclassified Information (CUI). Executive Order 13556 defines** CUI as "information that laws, regulations, or Government-wide policies require to have safeguarding or dissemination controls, excluding classified information." The Contractor (and/or any subcontractor) must comply with *Executive Order 13556, Controlled Unclassified Information, (implemented at 3 CFR,* part 2002*)* when handling CUI. 32 C.F.R. 2002.4(aa) As implemented the term "*handling"* refers to "…any use of CUI, including but not limited to marking, safeguarding, transporting, disseminating, re-using, and disposing of the information." 81 Fed. Reg. 63323.  The requirements below apply only to nonfederal systems that process, store, or transmit CUI, or that provide security protection for such components. All sensitive information that has been identified as CUI by a regulation or statute, handled by this solicitation/contract, must be:

    i.    Marked appropriately;

    ii.    Disclosed to authorized personnel on a Need-To-Know basis;

    iii.    Protected in accordance with NIST SP 800-53, *Security and Privacy Controls for Information Systems and Organizations* applicable baseline if handled by a Contractor system operated on behalf of the agency, or NIST SP 800-171, *Protecting Controlled Unclassified Information in Nonfederal Information Systems and Organizations* if handled by internal Contractor system; and

    iv.    Returned to HHS control, destroyed when no longer needed, or held until otherwise directed. Information and/or data must be disposed of in accordance with NIST SP 800-88*, Guidelines for Media Sanitization*.

f.    **Protection of Sensitive Information**. For security purposes, information is *or* may be sensitive because it requires security to protect its confidentiality, integrity, and/or availability. The Contractor (and/or any subcontractor) must protect all government information that is or may be sensitive by securing it with a solution that is validated with current FIPS 140 validation certificate from the NIST CMVP.

g.    **Confidentiality and Nondisclosure of Information**. Any information provided to the contractor (and/or any subcontractor) by HHS or collected by the contractor on behalf of HHS must be used only for the purpose of carrying out the provisions of this contract and must not be disclosed or made known in any manner to any persons except as may be necessary in the performance of the contract. The Contractor assumes responsibility for protection of the confidentiality of Government records and must ensure that all work performed by its employees and subcontractors must be under the supervision of the Contractor. Each Contractor employee or any of its subcontractors to whom any HHS records may be made available or disclosed must be notified in writing by the Contractor that information disclosed to such employee or subcontractor can be used only for that purpose and to the extent authorized herein.

The confidentiality, integrity, and availability of such information must be protected in accordance with HHS and ACF/ORR policies. Unauthorized disclosure of information will be subject to the HHS/ACF/ORR sanction policies and/or governed by the following laws and regulations:

    i.    18 U.S.C. 641 (Criminal Code: Public Money, Property or Records);

    ii.    18 U.S.C. 1905 (Criminal Code: Disclosure of Confidential Information); and

    iii.    44 U.S.C. Chapter 35, Subchapter I (Paperwork Reduction Act).

h.    **Internet Protocol Version 6 (IPv6).** All procurements using Internet Protocol must comply with OMB Memorandum M-21-07, Completing the Transition to Internet Protocol Version 6 (1Pv6) available at https://www.whitehouse.gov/wp-content/uploads/2020/11/M-21-07.pdf

i.    **Information and Communications Technology (ICT).** ICT products and services from prohibited entities/sources must not be used/acquired in compliance with Public Law 115-232, Section 889 Parts A and B, FAR 4.21, FAR 52.204.23, FAR 52.204.24, and FAR 52.204.25. The contractor (and/or any subcontractor)

must notify the government if they identify prohibited ICT products and/or services are used during the contract performance.

j. **Government Websites.** All new and existing public-facing government websites must be securely configured with Hypertext Transfer Protocol Secure (HTTPS) using the most recent version of Transport Layer Security (TLS). In addition, HTTPS must enable HTTP Strict Transport Security (HSTS) to instruct compliant browsers to assume HTTPS at all times to reduce the number of insecure redirects and protect against attacks that attempt to downgrade connections to plain HTTP. For internal-facing websites, HTTPS is not required, but it is highly recommended. Consult the *HHS Policy for Internet and Email Security* for additional information.

k. **Contract Documentation**. The Contractor must use provided templates, policies, forms and other agency documents to comply with contract deliverables as appropriate.

l. **Standard for Encryption.** The Contractor (and/or any subcontractor) must:
   i. Comply with the *HHS Standard for Encryption of Computing Devices and Information* to prevent unauthorized access to government information.
   ii. Encrypt all sensitive federal data and information (i.e., PII, protected health information [PHI], proprietary information, etc.) in transit (i.e., email, network connections, etc.) and at rest (i.e., servers, storage devices, mobile devices, backup media, etc.) with encryption solution that is validated with current FIPS 140 validation certificate from the NIST CMVP.
   iii. Secure all devices (i.e.: desktops, laptops, mobile devices, etc.) that store and process government information and ensure devices meet HHS and ACF/ORR specific encryption standard requirements. Maintain a complete and current inventory of all laptop computers, desktop computers, and other mobile devices and portable media that store or process sensitive government information (including PII).
   iv. Verify that the encryption solutions in use have been validated under the Cryptographic Module Validation Program to confirm compliance with current FIPS 140 validation certificate from the NIST CMVP. The Contractor must provide a written copy of the validation documentation to the COR/ACF/ORR within 30 days of contract award. For any newly implemented encryption, documentation must be submitted within 30 days of implementation.
   v. Use the Key Management system on the HHS personal identification verification (PIV) card or establish and use a key recovery mechanism to ensure the ability for authorized personnel to encrypt/decrypt information and recover encryption keys http://csrc.nist.gov/publications/. Encryption keys must be provided to the COR upon request and at the conclusion of the contract.
   vi. **Contractor Non-Disclosure Agreement (NDA)**. Each Contractor (and/or any subcontractor) employee having access to non-public government

information under this contract must complete the ACF/ORR non-disclosure agreement. Contractors (and/or subcontractors) must submit a copy of each signed and witnessed NDA to the Contracting Officer (CO) and/or CO Representative (COR) prior to performing any work under this acquisition.

2. Training Requirements

   a. **Mandatory Training for All Contractor Staff.** All Contractor (and/or any subcontractor) employees assigned to work on this contract must complete the applicable HHS/ACF/ORR Contractor Information Security Awareness, Privacy, and Records Management training (provided upon contract award) before performing any work under this contract. Thereafter, the employees must complete Information Security Awareness, Privacy, and Records Management training at least *annually*, during the life of this contract. All provided training must be compliant with HHS training policies.

   b. **Role-based Training.** All Contractor (and/or any subcontractor) employees with significant security responsibilities (as determined by the program manager) must complete role-based training *annually* commensurate with their role and responsibilities in accordance with HHS policy and the *HHS Role-Based Training (RBT) of Personnel with Significant Security Responsibilities Memorandum*.

   c. **Training Records.** The Contractor (and/or any subcontractor) must maintain training records for all its employees working under this contract in accordance with HHS policy. A copy of the training records must be provided to the CO and/or COR within *30 days* after contract award and *annually* thereafter or upon request.

3. Rules of Behavior

   a. The Contractor (and/or any subcontractor) must ensure that all employees performing on the contract comply with the *HHS Information Technology General Rules of Behavior*, *HHS Rules of Behavior for Privileged Users*.

   b. All Contractor employees performing on the contract must read and adhere to the Rules of Behavior before accessing Department data or other information, systems, and/or networks that store/process government information, initially at the beginning of the contract and at least *annually* thereafter, which may be done as part of annual ACF/ORR Information Security Awareness Training. If the training is provided by the contractor, the signed ROB must be provided as a separate deliverable to the CO and/or COR per defined timelines above.

4. Incident Response

   a. The Contractor (and/or any subcontractor) must respond to all alerts/Indicators of Compromise (IOCs) provided by HHS Computer Security Incident Response Center (CSIRC)/ACF/ORR IRT teams **within 24 hours,** whether the response is positive or negative. In accordance with FISMA and OMB M-17-12, *Preparing for and Responding to a Breach of Personally Identifiable Information (PII)*, an incident is "an occurrence that (1) actually or imminently jeopardizes, without lawful authority, the integrity, confidentiality, or availability of information or an

information system; or (2) constitutes a violation or imminent threat of violation of law, security policies, security procedures, or acceptable use policies" and a privacy breach is "the loss of control, compromise, unauthorized disclosure, unauthorized acquisition, or any similar occurrence where (1) a person other than an authorized user accesses or potentially accesses personally identifiable information or (2) an authorized user accesses or potentially accesses personally identifiable information for an other than authorized purpose." For additional information on the HHS breach response process, please see the *HHS Policy and Plan for Preparing for and Responding to a Breach of Personally Identifiable Information (PII)*."

b.   In the event of a suspected or confirmed incident or breach, the Contractor (and/or any subcontractor) must:

   i.   Protect all sensitive information, including any PII created, stored, or transmitted in the performance of this contract, with encryption solution that is validated with current FIPS 140 validation certificate from the NIST CMVP.

   ii.   NOT notify affected individuals unless so instructed by the Contracting Officer or designated representative. If so instructed by the Contracting Officer or representative, the Contractor must send ACF/ORR approved notifications to affected individuals.

   iii.   Report all suspected and confirmed information security and privacy incidents and breaches to the ACF/ORR Incident Response Team (IRT), COR, CO, ACF/ORR SOP (or his or her designee), and other stakeholders, including breaches involving PII, in any medium or form, including paper, oral, or electronic, as soon as possible and without unreasonable delay, no later than **one (1) hour**, and consistent with the applicable ACF/ORR and HHS policy and procedures, NIST standards and guidelines, as well as US-CERT notification guidelines. The types of information required in an incident report must include at a minimum: company and point of contact information, contact information, impact classifications/threat vector, and the type of information compromised. In addition, the Contractor must:

   ▪   Cooperate and exchange any information, as determined by the Agency, necessary to effectively manage or mitigate a suspected or confirmed breach;

   ▪   Not include any sensitive information in the subject or body of any reporting e-mail; and

   ▪   Encrypt sensitive information in attachments to email, media, etc.

   iv.   Comply with OMB M-17-12, *Preparing for and Responding to a Breach of Personally Identifiable Information,* and HHS/ACF/ORR and ACF/ORR privacy breach response policies when handling PII breaches.

   v.   Provide full access and cooperate on all activities as determined by the Government to ensure an effective incident response, including providing all requested images, log files, and event information to facilitate rapid

resolution of sensitive information incidents. This may involve disconnecting the system processing, storing, or transmitting the sensitive information from the Internet or other networks or applying additional security controls. This may also involve physical access to contractor facilities during a breach/incident investigation.

5.    Position Sensitivity Designations

All Contractor (and/or any subcontractor) employees must obtain a background investigation commensurate with their position sensitivity designation that complies with Parts 1400 and 731 of Title 5, Code of Federal Regulations (CFR). The following position sensitivity designation levels apply to this solicitation/contract:

6.    Homeland Security Presidential Directive (HSPD)-12

The Contractor (and/or any subcontractor) and its employees must comply with Homeland Security Presidential Directive (HSPD)-12, *Policy for a Common Identification Standard for Federal Employees and Contractors*; OMB M-05-24; OMB M-19-17; FIPS 201, *Personal Identity Verification (PIV) of Federal Employees and Contractors*; HHS HSPD-12 policy; and *Executive Order 13467, Part 1 §1.2.*

7.    Roster

The Contractor (and/or any subcontractor) must submit a roster by name, position, e-mail address, phone number and responsibility, of all staff working under this acquisition where the Contractor will develop, have the ability to access, or host and/or maintain a government information system(s). The roster must be submitted to the COR and/or CO within 3 days f the effective date of this contract. Any revisions to the roster as a result of staffing changes must be submitted  of the change. The COR will notify the Contractor of the appropriate level of investigation required for each staff member.

If the employee is filling a new position, the Contractor must provide a position description and the Government will determine the appropriate suitability level.

8.    Contract Initiation and Expiration
   a.    **General Security Requirements.** The Contractor (and/or any subcontractor) must comply with information security and privacy requirements, Enterprise Performance Life Cycle (EPLC) processes, HHS Enterprise Architecture requirements to ensure information is appropriately protected from initiation to expiration of the contract. All information systems development or enhancement tasks supported by the contractor must follow the HHS EPLC framework and methodology and in accordance with the HHS Contract Closeout Guide (2012).
   b.    **System Documentation.** Contractors (and/or any subcontractors) must follow and adhere to HHS System Development Life Cycle requirements, at a minimum, for system development and provide system documentation at designated

       intervals (specifically, at the expiration of the contract) within the EPLC that require artifact review and approval.

c.    **Sanitization of Government Files and Information.** As part of contract closeout and at expiration of the contract, the Contractor (and/or any subcontractor) must provide all required documentation to the CO and/or COR to certify that, at the government's direction, all electronic and paper records are appropriately disposed of and all devices and media are sanitized in accordance with NIST SP 800-88, *Guidelines for Media Sanitization*.

d.    **Notification.** The Contractor (and/or any subcontractor) must notify the CO and/or COR and system ISSO before an employee stops working under this contract.

e.    **Contractor Responsibilities upon Physical Completion of the Contract**. The contractor (and/or any subcontractors) must return all government information and IT resources (i.e., government information in non-government-owned systems, media, and backup systems) acquired during the term of this contract to the CO and/or COR. Additionally, the Contractor must provide a certification that all government information has been properly sanitized and purged from Contractor-owned systems, including backup systems and media used during contract performance, in accordance with HHS and/or ACF/ORR policies.

f.    The Contractor (and/or any subcontractor) must perform and document the actions identified in the ACF/ORR Contractor Employee Separation Checklist when an employee terminates work under this contract within 3 days of the employee's exit from the contract. All documentation must be available to the CO and/or COR upon request.

9. Records Management and Retention

   a.    The Contractor (and/or any subcontractor) must maintain all information in accordance with Executive Order 13556 -- Controlled Unclassified Information, National Archives and Records Administration (NARA) records retention policies and schedules and *HHS Policy for Records Management* and ACF/ORR policies and must not dispose of any records unless authorized by HHS/ACF/ORR.

   b.    In the event that a contractor (and/or any subcontractor) accidentally disposes of or destroys a record without proper authorization, he/she must document and report the incident in accordance with HHS/ACF/ORR policies.

10.   High Value Asset (HVA)

If a system is identified as HVA, the contractor must comply with the HHS Policy for the High Value Asset (HVA) Program and the DHS HVA Control Overlay in addition to the above requirements.

C.4    REQUIREMENTS FOR PROCUREMENTS INVOLVING PRIVACY ACT RECORDS

*Important Note to Contractor: In the event of a discrepancy between the following language and included HHSAR clauses, the HHSAR clauses take precedence.*

It has been determined that this contract is subject to the Privacy Act of 1974, because this contract provides for the design, development, or operation of a system of records about individuals from which records are retrieved by name or other identifying particular.

The System of Records Notice that is applicable to this contract is:  09-80-0321 ORR Unaccompanied Children Bureau (UCB) Administrative Program Records, 89 FR 100500 (12/12/24)

The system of records design, development, or operation work the Contractor is to perform is: 09-80-0321 ORR Unaccompanied Children Bureau (UCB) Administrative Program Records, 89 FR 100500 (12/12/24)

The disposition to be made of the Privacy Act records upon completion of contract performance is: Upon completion of contract performance, HHS/ACF/ORR will provide instructions to the Contractor (through the COR) for securely transferring or destroying, in accordance with NIST SP 800-88, any agency records (including any Privacy Act records) that are in the contractor's (or any subcontractor's) custody or control.

C.5    QUALITY ASSURANCE SURVEILLANCE PLAN (QASP)

The Draft QASP found in Attachment J.2.

**SECTION D - Packaging and Marking**

D.1 PACKAGING AND MARKING

All deliverables shall be delivered to the Contracting Officer's Representative (COR) identified in Section G and shall be marked as follows:

1.    Name and address of the Contractor;
2.    Contract Number;
3.    Description of item contained therein; and
4.    Consignee's name and address.

D.2 PAYMENT OF POSTAGE AND FEES

All postage and fees related to submitting information including forms, reports, etc. to the Contracting Officer or COR shall be paid by the Contractor.

## SECTION E - Inspection and Acceptance

E.1 INSPECTION AND ACCEPTANCE

Pursuant to FAR clause 52.212-4, all work described in Section C to be delivered under this contract is subject to final inspection and acceptance by an authorized representative of the Government. The authorized representative of the Government is the Contracting Officer's Representative (COR), who is responsible for inspection and acceptance of all services, materials, or supplies to be provided by the Contractor.

E.1.1   Inspection and Acceptance Criteria

Final inspection and acceptance of all work performed, reports and other deliverables will be performed at the place of delivery by the COR.

E.1.2   General Acceptance Criteria

General quality measures, as set forth below, will be applied to each work product received from the Contractor under this Performance Work Statement.

- Accuracy - Work Products shall be accurate in presentation, technical content, and adherence to accepted elements of style.
- Clarity - Work Products shall be clear and concise.  Any/all diagrams shall be easy to understand and be relevant to the supporting narrative.
- Consistency to Requirements - All work products must satisfy the requirements of this Performance Work Statement.
- Format - Work Products shall be submitted in electronic copy.  The electronic copy must be in a format as indicated in the Deliverables Table.

**SECTION F - Deliveries or Performance**

F.1      PERIOD OF PERFORMANCE – Severable Services

The period of performance shall be for a base period of three (3) months with three (3) three (3) months option periods as follows:

Base Period:           August 1, 2025 through October 31, 2025.

Option Period 1:       November 1, 2025 through January 31, 2026.

Option Period 2:       February 1, 2026 through April 30, 2026.

Option Period 3:       May 1, 2026 through July 31, 2026.

Option periods may be exercised in accordance with FAR Clause 52.217-9 entitled "Option to Extend the Term of the Contract."

F.2      DELIVERABLES AND DELIVERY SCHEDULE

The contractor shall submit all required report(s)/deliverables in accordance with the schedule outlined in Section C and the following schedule: All reports shall reference and cite the contract number.

F.3      PLACE OF PERFORMANCE

Nationwide

F.4      DELIVERY REQUIREMENTS

Pickup and delivery of items under this contract shall be accomplished between the hours of 8:30 a.m. and 4:00 p.m., Monday through Friday unless changed by mutual agreement between the COR and the contractor. No of physical deliveries shall be made on Saturdays, Sundays, and days of government closure or Federal legal holidays found at:
http://www.opm.gov/operating_status_schedules.

F.5      OBSERVANCE OF LEGAL HOLIDAYS AND DAYS OF GOVERNMENT
         CLOSURE – ONSITE CONTRACTOR EMPLOYEES

(a)(1) The performance of this contract requires contractor employees of the prime contractor or any subcontractor, affiliate, partner, joint venture, or team member with which the contractor is associated, including consultants engaged by any of these entities, to have access to, physical entry into, and to the extent authorized, mobility within, a Federal facility.
(2) The Government may close and or deny contractor access to a Federal facility for a portion of a business day or longer due to any one of the following events:

(i) Federal public holidays for federal employees in accordance with 5 U.S.C. 6103.

(ii) Fires, floods, earthquakes, unusually severe weather to include snow storms, tornadoes and hurricanes.

(iii) Occupational safety or health hazards.

(iv) Any other reason.

(3) In such events, the contractor employees may be denied access to a Federal facility, in part or in whole, to perform work required by the contract. Contractor personnel already present at a Federal facility during such events may be required to leave the facility.

(b) In all instances where contractor employees are denied access or required to vacate a Federal facility, in part or in whole, the contractor shall be responsible to ensure contractor personnel working under the contract comply. If the circumstances permit, the contracting officer or contracting officer's representative will provide direction to the contractor, which could include continuing on-site performance during the Federal facility closure period. In the absence of such direction, the contractor shall exercise sound judgment to minimize unnecessary contract costs and performance impacts by, for example, performing required work off-site if possible or reassigning personnel to other activities if appropriate.

(c) The contractor shall be responsible for monitoring when the Federal facility becomes accessible and shall resume contract performance as required by the contract.

(d) For the period that Federal facilities were not accessible to contractor employees, the contracting officer may—

(1) Adjust the contract performance or delivery schedule for a period equivalent to the period the Federal facility was not accessible;

(2) Forego the work;

(3) Reschedule the work by mutual agreement of the parties; or

(4) Consider properly documented requests for equitable adjustment, claim, or any other remedy pursuant to the terms and conditions of the contract.

**SECTION G - Contract Administration Data**

G.1 PROVISIONS APPLICABLE TO MATERIAL COSTS

Unless otherwise expressly provided elsewhere in the contract or in any modification thereto, the cost of the following items or activities shall be unallowable as material costs:

1.    Acquisition by purchase or lease, of any interest in real property.
2.    Special rearrangement or alteration of facilities;
3.    Purchase or lease or rental of any item of general purpose; office furniture or office equipment (including data tapes);
4.    Travel to foreign countries; and
5.    Food and beverage costs unless part of per diem expenses paid in accordance with the Federal Travel Regulations.

Any equipment having a unit acquisition cost in excess of $1,000.00, of which the Contractor wishes to be reimbursed as a material cost, shall not be acquired by the Contractor without the specific advance written approval of the Contracting Officer.

G.2    CONFERENCE EXPENSES

Unless the Contracting Officer provides explicit written approval for conference expenses, conference expenses are not allowable under this contract.  For purposes of this contract, conference and conference expense are defined in the HHS Policy on Promoting Efficient Spending, specifically Attachment 1, Use of Appropriated Funds for Conferences and Meeting Space dated January 23, 2015.  The attachment also provides a list of typical HHS meetings and events that are not considered conferences at Exhibit 2.  The policy and associated attachments are located at the following site:
http://www.hhs.gov/grants/contracts/contract-policies-regulations/index.html)

G.3    AUTHORITIES OF GOVERNMENT PERSONNEL

Notwithstanding the Contractor's responsibility for total management during the performance of this contract, the administration of this contract will require maximum coordination between the Government and the Contractor. The following individuals will be the Government's points of contact during the performance of this contract:

Contracting Officer
Name:  Mary Rainey
Email: Mary.Rainey@hhs.gov

All communications pertaining to contractual and/or administrative matters under this contract shall be sent to:

Continuation Page # 51
Unaccompanied Alien Children Legal Services
Contract # 75P00125C00016

Contract Specialist
Name:  Azeb Mengistu
Email: Azeb.Mengistu@hhs.gov

Contracting Officer's Representative
Name: Joseph Wilson
Email: Joseph.Wilson@acf.hhs.gov

Alternate Contracting Officer's Representative
Name: Dewayne Frederick
Email: Dewayne.Frederick@acf.hhs.gov

Note: The Contracting Officer is the only individual authorized to modify the contract.

G.4    CONTRACTING OFFICER'S REPRESENTATIVE (COR) AUTHORITY

(a) Performance of work under this contract must be subject to the technical direction of the Contracting Officer's Representative identified above, or a representative designated in writing. The term "technical direction" includes, without limitation, direction to the contractor that directs or redirects the labor effort, shifts the work between work areas or locations, fills in details and otherwise serves to ensure that tasks outlined in the work statement are accomplished satisfactorily.

(b) Technical direction must be within the scope of the specification(s)/work statement.

The Contracting Officer's Representative does not have authority to issue technical direction that:

(1) Constitutes a change of assignment or additional work outside the specification(s)/statement of work;

(2) Constitutes a change as defined in the clause entitled "Changes";

(3) In any manner causes an increase or decrease in the contract price, or the time required for contract performance;

(4) Changes any of the terms, conditions, or specification(s)/work statement of the contract;

(5) Interferes with the contractor's right to perform under the terms and conditions of the contract; or

(6) Directs, supervises or otherwise controls the actions of the contractor's employees.
(c) Technical direction may be oral or in writing. The Contracting Officer's Representative shall confirm oral direction in writing within five work days, with a copy to the Contracting Officer.

(d) The contractor shall proceed promptly with performance resulting from the technical direction issued by the Contracting Officers, Representative.  If, in the opinion of the contractor, any direction of the Contracting Officers, Representative, or his/her designee, falls within the limitations in (b), above, the contractor shall immediately notify the Contracting Officer no later than the beginning of the next Government work day.

(e) Failure of the contractor and the Contracting Officer to agree that technical direction is within the scope of the contract shall be subject to the terms of the clause entitled "Disputes."

G.5    GOVERNMENT-FURNISHED PROPERTY

The Government will provide the following items(s) of Government property to the Contractor for use in the performance of this contract. The property shall be used and maintained by the Contractor in accordance with the HHS Contractors' Guide for Control of Government Property (Appendix Q of the HHS Logistics Management Manual) found at https://web.archive.org/web/20111015044731/http:/www.hhs.gov/hhsmanuals/. The Contractor shall be responsible and accountable for all government property; either furnished or acquired, and also is required to keep the Government's official records of Government property in their possession and control. The following item(s) of Government property are hereby furnished to the Contractor:

Item    Description    Quantity    Government Serial Number

[To be identified at or post award]

G.6    CONTRACTOR-ACQUIRED PROPERTY

The Contractor is hereby authorized to purchase the following equipment for use in the performance under this contract. It is understood and agreed to that title to the following equipment shall vest in the Government. The authorized equipment is as follows:

Item    Description    Quantity    Cost

[To Be identified during performance as applicable]

G.7    INVOICES

**Electronic Invoicing and Payment Requirements - Invoice Processing Platform (IPP)**
- All Invoice submissions for goods and or services delivered to facilitate payments must be made electronically through the U.S. Department of Treasury's Invoice Processing Platform System (IPP).
- Invoice Submission for Payment means any request for contract financing payment or invoice payment by the Contractor. To constitute a proper invoice, the payment request must comply with the requirements identified in the applicable Prompt Payment clause

included in the contract, or the clause 52.212-4 included in commercial items contracts. The IPP website address is: https://www.ipp.gov.

- The Agency will enroll the Contractors new to IPP.  The Contractor must follow the IPP registration email instructions for enrollment to register the Collector Account for submitting invoice requests for payment.  The Contractor Government Business Point of Contact (as listed in SAM) will receive Registration email from the Federal Reserve Bank of St. Louis (FRBSTL) within 3 – 5 business days of the contract award for new contracts or date of modification for existing contracts.
    - Registration emails are sent via email from ipp.noreply@mail.eroc.twai.gov. Contractor assistance with enrollment can be obtained by contacting the IPP Production Helpdesk via email to IPPCustomerSupport@fiscal.treasury.gov or phone (866) 973-3131.
    - The Contractor POC will receive two emails from **IPP Customer Support**, the first email contains the initial administrative IPP User ID. The second email, sent within 24 hours of receipt of the first email, contains a temporary password. You must log in with the temporary password within 30 days.
- If your company is already registered to use IPP, you will not be required to re-register.
- If the Contractor is unable to comply with the requirement to use IPP for submitting invoices for payment as authorized by HHSAR 332.7002, a written request must be submitted to the Contracting Officer to explain the circumstances that require the authorization of alternate payment procedures.

Additional Office of Acquisition Management Services (OAMS) requirements:

(i) The contractor shall submit invoices under this contract once per month. For indefinite delivery vehicles, separate invoices must be submitted for each order.

(ii) Invoices must break-out price/cost by contract line item number (CLIN) as specified in the pricing section of the contract.

(iii) Invoices that include time and materials or labor hours CLINS must include supporting documentation to (1) substantiate the number of labor hours invoiced for each labor category, and (2) substantiate material costs incurred (when applicable).

(iv) Invoices submitted to IPP are limited to 10MB. Backup support should be sent to the contracting officer, contract specialist, and COR in the event it causes the file size to exceed the limit.

G.8     SMALL BUSINESS SUBCONTRACTING PLAN

The small business subcontracting plan found in Attachment J.1 is incorporated into this contract.

**SECTION H - Special Contract Requirements**

HHS reserves the right to exercise priorities and allocations authority with respect to this contract, to include rating this order in accordance with 45 CFR Part 101, Subpart A—Health Resources Priorities and Allocations System.

H.1    52.252-2 CLAUSES INCORPORATED BY REFERENCE.    (FEB 1998)

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available. Also, the full text of a clause may be accessed electronically at this/these address(es): http://www.acquisition.gov/far/

H.2    KEY PERSONNEL

In accordance with the key personnel terms included in the contract, The key personnel subject to HHSAR Clause 352.237-75 are as follows:



Name                                    Position Title

H.3    PROHIBITION AGAINST PERSONAL SERVICES

The Contractor shall not perform personal services under this contract. Contractor personnel are employees of the Contractor or its subcontractors and are under the administrative control and supervision of the Contractor. A Contractor supervisor must give all individual Contractor employee assignments and daily work direction. The Government will not supervise or direct Contractor employees in the performance of their assignments. If at any time the Contractor believes that any Government action or communication has been given that would create a personal service relationship between the Government and any Contractor employee, the contractor shall promptly notify the Contracting Officer of this communication or action. The Contractor shall not perform any inherently governmental functions under this contract. No Contractor employee shall represent or give the appearance that he/she is a Government employee, agent or representative. No Contractor employee shall state orally or in writing at any time that he or she is acting on behalf of the Government. The Contractor is responsible for ensuring that all employees assigned to this contract understand and are committed to following these requirements.

H.4    CONTRACTOR PERFORMANCE EVALUATION(S)

Contractor performance will be evaluated on an interim and final basis pursuant to FAR Subpart 42.15. Interim evaluations will occur on an annual basis upon the completion of the first year of

the contract. The Contractor Performance Assessment Reporting System (CPARS) will be used for these reviews. Information on CPARS is located at http://www.cpars.gov.
Contractors may, at their discretion to submit a self-assessment to the COR and contracting officer to consider when documenting performance, at no additional cost. The self-assessment should be submitted to the COR and contracting officer at least 30 days prior to completion of the first year, and each following year.

H 5      RESTRICTIONS ON CONTRACTOR ACCESS TO GOVERNMENT OR THIRD-
         PARTY INFORMATION

The purpose of this clause is to set forth the restrictions that will govern Contractor employees access to Government or third party information in order to protect the information from unauthorized use or disclosure.

A. Under this contract, the Contractor will have access to Contractor proprietary information and other nonpublic information.

B. Restrictions on use and disclosure of information.

(1) With regard to any information to which the Contractor is given access in performance of this contract, whether the information comes from the Government or from third parties, the Contractor shall:

(i) Utilize the information only for the purposes of performing the services specified in this contract, and not for any other purposes;

(ii) Safeguard information from unauthorized use and disclosure;

(iii) Allow access to the information only to those employees who need it to perform services under this contract;

(iv) Preclude access and disclosure of information to persons and entities outside of the Contractor's organization that do not have authority to access the information;

(v) Inform employees, who may require access to information, about their obligations to utilize it only to perform the services specified in this contract and to safeguard that information from unauthorized use and disclosure; and

(vi) Ensure each employee complies with the restrictions set forth in (i), (ii), (iii), and (iv) above.

(2) Unless specifically permitted in writing by the Contracting Officer, the Contractor shall not useinformation acquired in performance of the contract, or generated by or for the Government to:

(i)    Compete for work for the Government; or

(ii)    (ii) Submit an unsolicited proposal to the Government.

(3) If the Contractor is exposed to information that is marked in a way that indicates the Contractor should not receive this information, the Contractor shall:

(i) Notify the Contracting Officer; and

(ii) Use the information only in accordance with the instructions of the Contracting Officer.

C. Breach of any of the conditions of this section of the contract may provide grounds for the Government to:

(i) Require the contractor to remove the contract employee or employees from the performance of the contract;

(ii) Require the contractor to terminate the subcontractor;

(iii) Suspend contractor payments;

(iv) Terminate this contract for default or cause;

(v) Suspend or debar the Contractor for serious misconduct affecting present responsibility; and;

(vi) Pursue such other remedies as may be permitted by law, regulation, or this contract.

D. Unauthorized disclosure or other misuse of information protected by the Privacy Act of 1974 may result in a fine up to $5000 and /or other penalties. In addition, unauthorized disclosure or other misuse of information covered under the Federal Trade Secrets Act (18 USC 1905) may result in a fine, or imprisonment up to 1 year, or both.

E. The Contractor shall flow down this clause to subcontractors at all tiers.

## H.6    POST AWARD ORGANIZATIONAL CONFLICT OF INTEREST

a.    General:  The Contractor shall have programs in place to identify, report, and mitigate actual and potential conflicts of interest for itself, its employees, subcontractors and consultants. The existence of such programs and the disclosure of known actual or potential conflicts are material performance requirements of this contract.

b.    Disclosure:  The Contractor shall report all actual and potential conflicts of interest pertaining to this contract to the Contracting Officer, including those that would be caused by a contemplated modification to this contact or another contract.  Such reports shall be in writing (including by email). Upon request, the Contractor shall respond to a Contracting Officer's

request for an OCI mitigation plan.

c.        Resolution:  In the event the Contracting Officer determines that a conflict of interest exists, based on disclosure from the Contractor or from other sources, the Contracting Officer shall take action which may include, but is not limited to, requesting a mitigation plan from the Contractor, terminating part or all of the contract, modifying the contract or obtaining a waiver in accordance with applicable law, including FAR 9.503 as applicable.

H.7    CONTRACTOR PERSONNEL IDENTIFICATION

Contractor and subcontractor employees are required to identify themselves as contractor personnel in all contract related meetings with government personnel, or the general public, and in all contract related communication, to include oral and written correspondence.

At a minimum, emails and voicemails shall include the following details:
Name, Functional Job Title
Contractor Company Name

On assignment with:
Applicable HHS Office
Other contact details as necessary

**SECTION I - Contract Clauses**

FEDERAL ACQUISITION REGULATION (FAR) (48 CFR CHAPTER 1) AND HEALTH
AND HUMAN SERVICES ACQUISITION REGULATION (HHSAR) (48 CFR CHAPTER 3)
CONTRACT CLAUSES

I.1      52.252-2 CLAUSES INCORPORATED BY REFERENCE.  (FEB 1998)

This contract incorporates one or more clauses by reference, with the same force and effect as if
they were given in full text. Upon request, the Contracting Officer will make their full text
available. Also, the full text of a clause may be accessed electronically at this/these address(es):
http://www.acquisition.gov/far/ and https://www.acquisition.gov/hhsar

FEDERAL ACQUISITION REGULATION (FAR) (48 CFR CHAPTER 1) CLAUSES

The following clauses are incorporated by reference:

| Clause | Title | Date |
|---|---|---|
| 52.202-1 | Definitions | Jun 2020 |
| 52.203-3 | Gratuities | Apr 1984 |
| 52.203-8 | Cancellation, Rescission, and Recovery of Funds for Illegal or Improper Activity | May 2014 |
| 52.203-10 | Price or Fee Adjustment for Illegal or Improper Activity | May 2014 |
| 52.203-12 | Limitation on Payments to Influence Certain Federal Transactions | Jun 2020 |
| 52.203-13 | Contractor Code of Business Ethics and Conduct | Nov 2021 |
| 52.203-17 | Contractor Employee Whistleblower Rights | Nov 2023 |
| 52.204-12 | Unique Entity Identifier Maintenance | Oct 2016 |
| 52.204-13 | System for Award Management Maintenance | Oct 2018 |
| 52.204-18 | Commercial and Government Entity Code Maintenance | Aug 2020 |
| 52.204-19 | Incorporation by Reference of Representations and Certifications | Dec 2014 |
| 52.204-21 | Basic Safeguarding of Covered Contractor Information Systems | Nov 2021 |
| 52.204-27 | Prohibition on a ByteDance Covered Application | Jun 2023 |
| 52.207-3 | Right of First Refusal of Employment | May 2006 |
| 52.208-9 | Contractor Use of Mandatory Sources of Supply or Services | May 2014 |
| 52.209-6 | Updates of Publicly Available Information Regarding Responsibility Matters | Oct 2018 |
| 52.212-4 | Contract Terms and Conditions—Commercial Products and Commercial Services | Nov 2023 |
| 52.215-21 | Requirements for Certified Cost or Pricing Data and Data Other Than Certified Cost or Pricing Data-Modifications | Nov 2021 |
| 52.224-1 | Privacy Act Notification | Apr 1984 |
| 52.224-2 | Privacy Act | Apr 1984 |

| 52.227-14 | Rights in Data-General | May 2014 |
| 52.242-13 | Bankruptcy | July 1995 |
| 52.243-3 | Changes-Time-and-Materials or Labor-Hours | Sept 2000 |
| 52.245-1 | Government Property | Sep 2021 |
| 52.245-9 | Use and Charges | Apr 2012 |
| 52.246-20 | Warranty of Services | May 2001 |
| 52.246-25 | Limitation of Liability-Services | Feb 1997 |
| 52.253-1 | Computer Generated Forms | Jan 1991 |

HEALTH AND HUMAN SERVICES ACQUISITION REGULATION (HHSAR) (48 CFR CHAPTER 3) CLAUSES

| Clause | Title | Date |
|---|---|---|
| 352.203-70 | Anti-Lobbying. | Dec 2015 |
| 352.208-70 | Printing and Duplication | Dec 2015 |
| 352.211-3 | Paperwork Reduction Act | Dec 2015 |
| 352.224-70 | Notification of System of Records Notice (Mar 2024) (Deviation) | Mar 2024 |
| 352.231-70 | Salary Rate Limitation | Dec 2015 |
| 352.232-71 | Electronic submission of payment requests | Feb 2022 |
| 352.227-70 | Publications and Publicity | Dec 2015 |
| 352.237-70 | Pro-Children Act | Dec 2015 |
| 352.237-71 | Crime Control Act - Reporting of Child Abuse | Dec 2015 |
| 352.237-72 | Crime Control Act - Requirement for Background Checks | Dec 2015 |
| 352.237-74 | Non-Discrimination in Service Delivery | Dec 2015 |
| 352.237-75 | Key Personnel | Dec 2015 |

I.2.    52.212-4 CONTRACT TERMS AND CONDITIONS-COMMERCIAL PRODUCTS AND COMMERCIAL SERVICES (NOV 2023); ALT I (NOV 2021)

[(a)(4) – ****insert portion of labor rate attributable to profit*]
[(e)(1)(iii)(D) – ****insert any subcontracts for services to be excluded from the hourly rates prescribed in the schedule*]
[(i)(1)(ii)(D)(1) – ****insert elements of direct costs to be reimbursed*]
[(i)(1)(ii)(D)(2) – see Section B]

I.3    FAR CLAUSES IN FULL TEXT

I.3.1    52.212-5 CONTRACT TERMS AND CONDITIONS REQUIRED TO IMPLEMENT STATUTES OR EXECUTIVE ORDERS-COMMERCIAL PRODUCTS AND COMMERCIAL SERVICES (JAN 2025) (DEVIATION FEB 2025)

(a) The Contractor shall comply with the following Federal Acquisition Regulation (FAR) clauses, which are incorporated in this contract by reference, to implement provisions of law or Executive orders applicable to acquisitions of commercial products and commercial services:

(1) 52.203-19, Prohibition on Requiring Certain Internal Confidentiality Agreements or Statements (JAN 2017) (section 743 of Division E, Title VII, of the Consolidated and Further Continuing Appropriations Act, 2015 (Pub. L. 113-235) and its successor provisions in subsequent appropriations acts (and as extended in continuing resolutions)).

(2) 52.204-23, Prohibition on Contracting for Hardware, Software, and Services Developed or Provided by Kaspersky Lab Covered Entities (DEC 2023) (Section 1634 of Pub. L. 115-91).

(3) 52.204-25, Prohibition on Contracting for Certain Telecommunications and Video Surveillance Services or Equipment. (NOV 2021) (Section 889(a)(1)(A) of Pub. L. 115-232).

(4) 52.209-10, Prohibition on Contracting with Inverted Domestic Corporations (NOV 2015).

(5) 52.232-40, Providing Accelerated Payments to Small Business Subcontractors (MAR 2023) ( 31 U.S.C. 3903 and 10 U.S.C. 3801).

(6)  52.233-3, Protest After Award (AUG 1996) (31 U.S.C. 3553).

(7)  52.233-4, Applicable Law for Breach of Contract Claim (OCT 2004) (Public Laws 108-77 and 108-78 ( 19 U.S.C. 3805 note)).

(b) The Contractor shall comply with the FAR clauses in this paragraph (b) that the Contracting Officer has indicated as being incorporated in this contract by reference to implement provisions of law or Executive orders applicable to acquisitions of commercial products and commercial services:

   [*Contracting Officer check as appropriate.*]

 _X_ (1) 52.203-6, Restrictions on Subcontractor Sales to the Government (JUN 2020), with *Alternate I* (NOV 2021) (41 U.S.C. 4704 and 10 U.S.C. 4655).

_X_ (2) 52.203-13, Contractor Code of Business Ethics and Conduct (NOV 2021) (41 U.S.C. 3509)).

   (3) 52.203-15, Whistleblower Protections under the American Recovery and Reinvestment Act of 2009 (JUN 2010) (Section 1553 of Pub. L. 111-5). (Applies to contracts funded by the American Recovery and Reinvestment Act of 2009.)

__ (4) 52.203-17, Contractor Employee Whistleblower Rights (NOV 2023) ( 41 U.S.C. 4712); this clause does not apply to contracts of DoD, NASA, the Coast Guard, or applicable elements of the intelligence community—see FAR 3.900(a).

_X_ (5) 52.204-10, Reporting Executive Compensation and First-Tier Subcontract Awards (JUN 2020) (Pub. L. 109-282) ( 31 U.S.C. 6101 note).

__ (6) [Reserved].

(7) 52.204-14, Service Contract Reporting Requirements (OCT 2016) (Pub. L. 111-117, section 743 of Div. C).

__ (8) 52.204-15, Service Contract Reporting Requirements for Indefinite-Delivery Contracts (OCT 2016) (Pub. L. 111-117, section 743 of Div. C).

__ (9) 52.204-27, Prohibition on a ByteDance Covered Application (JUN 2023) (Section 102 of Division R of Pub. L. 117-328).

__ (10) 52.204-28, Federal Acquisition Supply Chain Security Act Orders—Federal Supply Schedules, Governmentwide Acquisition Contracts, and Multi-Agency Contracts. (DEC 2023) ( Pub. L. 115–390, title II).

__ (11) (i) 52.204-30, Federal Acquisition Supply Chain Security Act Orders—Prohibition. (DEC 2023) ( Pub. L. 115–390, title II).

__ (ii) Alternate I (DEC 2023) of 52.204-30.

_X_ (12) 52.209-6, Protecting the Government's Interest When Subcontracting With Contractors Debarred, Suspended, Proposed for Debarment, or Voluntarily Excluded. (JAN 2025) ( 31 U.S.C. 6101 note).

(13) 52.209-9, Updates of Publicly Available Information Regarding Responsibility Matters (OCT 2018) ( 41 U.S.C. 2313).

__ (14) [Reserved].

(15) 52.219-3, Notice of HUBZone Set-Aside or Sole-Source Award (OCT 2022) ( 15 U.S.C. 657a).

(16) 52.219-4, Notice of Price Evaluation Preference for HUBZone Small Business Concerns (OCT 2022) (if the offeror elects to waive the preference, it shall so indicate in its offer) (15 U.S.C. 657a).

__ (17) [Reserved]

__ (18) (i) 52.219-6, Notice of Total Small Business Set-Aside (NOV 2020) (15 U.S.C. 644).

__ (ii) Alternate I (MAR 2020) of 52.219-6.

__ (19) (i) 52.219-7, Notice of Partial Small Business Set-Aside (Nov 2020) (15 U.S.C. 644).

__ (ii) Alternate I (Mar 2020) of 52.219-7.

_X_ (20) 52.219-8, Utilization of Small Business Concerns (Jan 2025)( 15 U.S.C. 637(d)(2) and (3)).

__ (21) (i) 52.219-9, Small Business Subcontracting Plan (Jan 2025) ( 15 U.S.C. 637(d)(4)).

__ (ii) Alternate I (Nov 2016) of 52.219-9.

__ (iii) Alternate II (Nov 2016) of 52.219-9.

__ (iv) Alternate III (Jun 2020) of 52.219-9.

__ (v) Alternate IV (Jan 2025) of 52.219-9.

__ (22) (i) 52.219-13, Notice of Set-Aside of Orders (Mar 2020) (15 U.S.C. 644(r)).

__ (ii) Alternate I (Mar 2020) of 52.219-13.

__ (23) 52.219-14, Limitations on Subcontracting (Oct 2022) (15 U.S.C. 657s).

__ (24) 52.219-16, Liquidated Damages—Subcontracting Plan (Sep 2021) (15 U.S.C. 637(d)(4)(F)(i)).

__ (25) 52.219-27, Notice of Set-Aside for, or Sole-Source Award to, Service-Disabled Veteran-Owned Small Business (SDVOSB) Concerns Eligible Under the SDVOSB Program (Feb 2024) (15 U.S.C. 657f).

__ (26) (i) 52.219-28, Postaward Small Business Program Rerepresentation (Jan 2025) (15 U.S.C. 632(a)(2)).

__ (ii) Alternate I (Mar 2020) of 52.219-28.

__ (27) 52.219-29, Notice of Set-Aside for, or Sole-Source Award to, Economically Disadvantaged Women-Owned Small Business Concerns (Oct 2022) (15 U.S.C. 637(m)).

__ (28) 52.219-30, Notice of Set-Aside for, or Sole-Source Award to, Women-Owned Small Business Concerns Eligible Under the Women-Owned Small Business Program (Oct 2022) (15 U.S.C. 637(m)).

__ (29) 52.219-32, Orders Issued Directly Under Small Business Reserves (Mar 2020) ( 15 U.S.C. 644(r)).

__ (30) 52.219-33, Nonmanufacturer Rule (SEP 2021) ( 15 U.S.C. 637(a)(17)).

_X_ (31) 52.222-3, Convict Labor (JUN 2003) (E.O.11755).

__ (32) 52.222-19, Child Labor—Cooperation with Authorities and Remedies (JAN 2025)( E.O. 13126).

__ (33) [Reserved]

__ (34) [Reserved]

__ (35) (i) 52.222-35, Equal Opportunity for Veterans (JUN 2020) ( 38 U.S.C. 4212).

__ (ii) Alternate I (JUL 2014) of 52.222-35.

(36) (i) 52.222-36, Equal Opportunity for Workers with Disabilities (JUN 2020) ( 29 U.S.C. 793).

__ (ii) Alternate I (JUL 2014) of 52.222-36.

_X_ (37) 52.222-37, Employment Reports on Veterans (JUN 2020) ( 38 U.S.C. 4212).

_X_ (38) 52.222-40, Notification of Employee Rights Under the National Labor Relations Act (DEC 2010) (E.O. 13496).

_X_ (39) (i) 52.222-50, Combating Trafficking in Persons (NOV 2021) (22 U.S.C. chapter 78 and E.O. 13627).

__ (ii) Alternate I (MAR 2015) of 52.222-50 (22 U.S.C. chapter 78 and E.O. 13627).

_X_ (40) 52.222-54, Employment Eligibility Verification (JAN 2025) ( Executive Order 12989). (Not applicable to the acquisition of commercially available off-the-shelf items or certain other types of commercial products or commercial services as prescribed in FAR 22.1803.)

__ (41) (i) 52.223-9, Estimate of Percentage of Recovered Material Content for EPA–Designated Items (May 2008) ( 42 U.S.C. 6962(c)(3)(A)(ii)). (Not applicable to the acquisition of commercially available off-the-shelf items.)

(ii) Alternate I (MAY 2008) of 52.223-9 (42 U.S.C. 6962(i)(2)(C)). (Not applicable to the acquisition of commercially available off-the-shelf items.)

__ (42) 52.223-11, Ozone-Depleting Substances and High Global Warming Potential Hydrofluorocarbons (MAY 2024) ( 42 U.S.C. 7671, et seq.).

__ (43) 52.223-12, Maintenance, Service, Repair, or Disposal of Refrigeration Equipment and Air Conditioners (MAY 2024) ( 42 U.S.C. 7671, *et seq.*).

__ (44) 52.223-20, Aerosols (MAY 2024) ( 42 U.S.C. 7671, *et seq.*).

__ (45) 52.223-21, Foams (MAY 2024) ( 42 U.S.C. 7671, *et seq.*).

__ (46) 52.223-23, Sustainable Products and Services (MAY 2024)(DEVIATION FEB 2025)(E.O. 14057, 7 U.S.C. 8102, 42 U.S.C. 6962, 42 U.S.C. 8259b, and 42 U.S.C. 7671l).

_X_ (47) (i) 52.224-3 Privacy Training (JAN 2017) ( 5 U.S.C. 552 a).

   _X_ (ii) Alternate I (JAN 2017) of 52.224-3.

__ (48) (i) 52.225-1, Buy American-Supplies (OCT 2022) (41 U.S.C. chapter 83).

   __ (ii) Alternate I (OCT 2022) of 52.225-1.

__ (49) (i) 52.225-3, Buy American-Free Trade Agreements-Israeli Trade Act (NOV 2023) ( 19 U.S.C. 3301 note, 19 U.S.C. 2112 note, 19 U.S.C. 3805 note, 19 U.S.C. 4001 note, 19 U.S.C. chapter 29 (sections 4501-4732), Public Law 103-182, 108-77, 108-78, 108-286, 108-302, 109-53, 109-169, 109-283, 110-138, 112-41, 112-42, and 112-43.

   __ (ii) Alternate I [Reserved].

   __ (iii) Alternate II (JAN 2025) of 52.225-3.

   __ (iv) Alternate III (FEB 2024) of 52.225-3.

   __ (v) Alternate IV (Oct 2022) of 52.225-3.

   (50) 52.225-5, Trade Agreements (NOV 2023) ( 19 U.S.C. 2501, *et seq*., 19 U.S.C. 3301 note).

_X_ (51) 52.225-13, Restrictions on Certain Foreign Purchases (FEB 2021) (E.O.'s, proclamations, and statutes administered by the Office of Foreign Assets Control of the Department of the Treasury).

   (52) 52.225-26, Contractors Performing Private Security Functions Outside the United States (Oct 2016) (Section 862, as amended, of the National Defense Authorization Act for Fiscal Year 2008; 10 U.S.C. Subtitle A, Part V, Subpart G Note).

   (53) 52.226-4, Notice of Disaster or Emergency Area Set-Aside (Nov 2007) (42 U.S.C. 5150).

__ (54) 52.226-5, Restrictions on Subcontracting Outside Disaster or Emergency Area (NOV 2007) (42 U.S.C. 5150).

__ (55) 52.226-8, Encouraging Contractor Policies to Ban Text Messaging While Driving (MAY 2024) ( E.O. 13513).

__ (56) 52.229-12, Tax on Certain Foreign Procurements (FEB 2021).

__ (57) 52.232-29, Terms for Financing of Purchases of Commercial Products and Commercial Services (NOV 2021) (41 U.S.C. 4505, 10 U.S.C. 3805).

__ (58) 52.232-30, Installment Payments for Commercial Products and Commercial Services (NOV 2021) (41 U.S.C. 4505, 10 U.S.C. 3805).

_X_ (59) 52.232-33, Payment by Electronic Funds Transfer-System for Award Management (OCT2018) ( 31 U.S.C. 3332).

__ (60) 52.232-34, Payment by Electronic Funds Transfer-Other than System for Award Management (Jul 2013) (31 U.S.C. 3332).

__ (61) 52.232-36, Payment by Third Party (MAY 2014) (31 U.S.C. 3332).

_X_ (62) 52.239-1, Privacy or Security Safeguards (AUG 1996) ( 5 U.S.C. 552a).

__ (63) 52.240-1, Prohibition on Unmanned Aircraft Systems Manufactured or Assembled by American Security Drone Act-Covered Foreign Entities (NOV 2024) (Sections 1821-1826, Pub. L. 118-31, 41 U.S.C. 3901 note prec.).

 X  (64) 52.242-5, Payments to Small Business Subcontractors (JAN 2017) (15 U.S.C. 637(d)(13)).

__ (65) (i) 52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (NOV 2021) ( 46 U.S.C. 55305 and 10 U.S.C. 2631).

    __ (ii) Alternate I (APR 2003) of 52.247-64.

    __ (iii) Alternate II (NOV 2021) of 52.247-64.

(c) The Contractor shall comply with the FAR clauses in this paragraph (c), applicable to commercial services, that the Contracting Officer has indicated as being incorporated in this contract by reference to implement provisions of law or Executive orders applicable to acquisitions of commercial products and commercial services:

[*Contracting Officer check as appropriate.*]

__ (1) 52.222-41, Service Contract Labor Standards (AUG 2018) (41 U.S.C. chapter67).

___ (2) 52.222-42, Statement of Equivalent Rates for Federal Hires (MAY 2014) (29 U.S.C. 206 and 41 U.S.C. chapter 67).

__ (3) 52.222-43, Fair Labor Standards Act and Service Contract Labor Standards-Price Adjustment (Multiple Year and Option Contracts) (AUG 2018) (29 U.S.C. 206 and 41 U.S.C. chapter 67).

__ (4) 52.222-44, Fair Labor Standards Act and Service Contract Labor Standards-Price Adjustment (May 2014) ( 29U.S.C.206 and 41 U.S.C. chapter 67).

__ (5) 52.222-51, Exemption from Application of the Service Contract Labor Standards to Contracts for Maintenance, Calibration, or Repair of Certain Equipment-Requirements (May 2014) (41 U.S.C. chapter 67).

__ (6) 52.222-53, Exemption from Application of the Service Contract Labor Standards to Contracts for Certain Services-Requirements (MAY 2014) (41 U.S.C. chapter 67).

___ (7) 52.222-55, Minimum Wages for Contractor Workers Under Executive Order 14026 (JAN 2022).

__ (8) 52.222-62, Paid Sick Leave Under Executive Order 13706 (JAN 2022) (E.O. 13706).

__ (9) 52.226-6, Promoting Excess Food Donation to Nonprofit Organizations (Jun 2020) (42 U.S.C. 1792).

__ (10) 52.247-69, Reporting Requirement for U.S.-Flag Air Carriers Regarding Training to Prevent Human Trafficking (JAN 2025) ( 49 U.S.C. 40118(g)).

(d) *Comptroller General Examination of Record*. The Contractor shall comply with the provisions of this paragraph (d) if this contract was awarded using other than sealed bid, is in excess of the simplified acquisition threshold, as defined in FAR 2.101, on the date of award of this contract, and does not contain the clause at 52.215-2, Audit and Records-Negotiation.

(1) The Comptroller General of the United States, or an authorized representative of the Comptroller General, shall have access to and right to examine any of the Contractor's directly pertinent records involving transactions related to this contract.

(2) The Contractor shall make available at its offices at all reasonable times the records, materials, and other evidence for examination, audit, or reproduction, until 3 years after final payment under this contract or for any shorter period specified in FAR subpart 4.7, Contractor Records Retention, of the other clauses of this contract. If this contract is completely or partially terminated, the records relating to the work terminated shall be made available for 3 years after any resulting final termination settlement. Records relating to appeals under the disputes clause or to litigation or the settlement

of claims arising under or relating to this contract shall be made available until such appeals, litigation, or claims are finally resolved.

(3) As used in this clause, records include books, documents, accounting procedures and practices, and other data, regardless of type and regardless of form. This does not require the Contractor to create or maintain any record that the Contractor does not maintain in the ordinary course of business or pursuant to a provision of law.

(e) (1) Notwithstanding the requirements of the clauses in paragraphs (a), (b), (c), and (d) of this clause, the Contractor is not required to flow down any FAR clause, other than those in this paragraph (e)(1), in a subcontract for commercial products or commercial services. Unless otherwise indicated below, the extent of the flow down shall be as required by the clause-

(i) 52.203-13, Contractor Code of Business Ethics and Conduct (Nov 2021) (41 U.S.C. 3509).

(ii) 52.203-17, Contractor Employee Whistleblower Rights (Nov 2023) ( 41 U.S.C. 4712).

(iii) 52.203-19, Prohibition on Requiring Certain Internal Confidentiality Agreements or Statements (Jan 2017) (section 743 of Division E, Title VII, of the Consolidated and Further Continuing Appropriations Act, 2015 (Pub. L. 113-235) and its successor provisions in subsequent appropriations acts (and as extended in continuing resolutions)).

(iv) 52.204-23, Prohibition on Contracting for Hardware, Software, and Services Developed or Provided by Kaspersky Lab Covered Entities (Dec 2023) (Section 1634 of Pub. L. 115-91).

(v) 52.204-25, Prohibition on Contracting for Certain Telecommunications and Video Surveillance Services or Equipment. (Nov 2021) (Section 889(a)(1)(A) of Pub. L. 115-232).

(vi) 52.204-27, Prohibition on a ByteDance Covered Application (Jun 2023) (Section 102 of Division R of Pub. L. 117-328).

(vii) (A) 52.204–30, Federal Acquisition Supply Chain Security Act Orders— Prohibition. (Dec 2023) ( Pub. L. 115–390, title II).

(B) Alternate I (Dec 2023) of 52.204–30.

(viii) 52.219-8, Utilization of Small Business Concerns (Jan 2025) ( 15 U.S.C. 637(d)(2) and (3)), in all subcontracts that offer further subcontracting opportunities. If the subcontract (except subcontracts to small business

concerns) exceeds the applicable threshold specified in FAR 19.702(a) on the date of subcontract award, the subcontractor must include 52.219-8 in lower tier subcontracts that offer subcontracting opportunities.

(ix) Reserved

(x) Reserved

(xi) 52.222-35, Equal Opportunity for Veterans (JUN 2020) (38 U.S.C. 4212).

(xii) 52.222-36, Equal Opportunity for Workers with Disabilities (JUN 2020) (29 U.S.C. 793).

(xiii) 52.222-37, Employment Reports on Veterans (JUN 2020) (38 U.S.C. 4212).

(xiv) 52.222-40, Notification of Employee Rights Under the National Labor Relations Act (DEC 2010) (E.O. 13496). Flow down required in accordance with paragraph (f) of FAR clause 52.222-40.

(xv) 52.222-41, Service Contract Labor Standards (AUG 2018) ( 41 U.S.C. chapter 67).

(xvi) (A) 52.222-50, Combating Trafficking in Persons (NOV 2021) (22 U.S.C. chapter 78 and E.O 13627).

(B) Alternate I (MAR 2015) of 52.222-50 (22 U.S.C. chapter 78 and E.O. 13627).

(xvii) 52.222-51, Exemption from Application of the Service Contract Labor Standards to Contracts for Maintenance, Calibration, or Repair of Certain Equipment-Requirements (May 2014) (41 U.S.C. chapter 67).

(xviii) 52.222-53, Exemption from Application of the Service Contract Labor Standards to Contracts for Certain Services-Requirements (MAY 2014) (41 U.S.C. chapter 67).

(xix) 52.222-54, Employment Eligibility Verification (JAN 2025) ( E.O. 12989).

(xx) 52.222-55, Minimum Wages for Contractor Workers Under Executive Order 14026 (JAN 2022).

(xxi) 52.222-62, Paid Sick Leave Under Executive Order 13706 (JAN 2022) (E.O. 13706).

(xxii) (A) 52.224-3, Privacy Training (Jan 2017) ( 5 U.S.C. 552a).

(B) Alternate I (JAN 2017) of 52.224-3.

(xxiii) 52.225-26, Contractors Performing Private Security Functions Outside the United States (OCT 2016) (Section 862, as amended, of the National Defense Authorization Act for Fiscal Year 2008; 10 U.S.C. Subtitle A, Part V, Subpart G Note).

(xxiv) 52.226-6, Promoting Excess Food Donation to Nonprofit Organizations (JUN 2020) (42 U.S.C. 1792). Flow down required in accordance with paragraph (e) of FAR clause 52.226-6.

(xxv) 52.232-40, Providing Accelerated Payments to Small Business Subcontractors (Mar 2023) ( 31 U.S.C. 3903 and 10 U.S.C. 3801). Flow down required in accordance with paragraph (c) of 52.232-40.

(xxvi) 52.240-1, Prohibition on Unmanned Aircraft Systems Manufactured or Assembled by American Security Drone Act-Covered Foreign Entities (NOV 2024) (Sections 1821-1826, Pub. L. 118-31, 41 U.S.C. 3901 note prec.).

(xxvii)  52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (NOV 2021) ( 46 U.S.C. 55305 and 10 U.S.C. 2631). Flow down required in accordance with paragraph (d) of FAR clause 52.247-64.

(2) While not required, the Contractor may include in its subcontracts for commercial products and commercial services a minimal number of additional clauses necessary to satisfy its contractual obligations.

I.3.2    52.203- 13 CONTRACTOR CODE OF BUSINESS ETHICS AND CONDUCT (Nov 2021)

(a)Definitions. As used in this clause—

Agent means any individual, including a director, an officer, an employee, or an independent Contractor, authorized to act on behalf of the organization.

Full cooperation-

(1)Means disclosure to the Government of the information sufficient for law enforcement to identify the nature and extent of the offense and the individuals responsible for the conduct. It includes providing timely and complete response to Government auditors' and investigators' request for documents and access to employees with information;

(2)Does not foreclose any Contractor rights arising in law, the FAR, or the terms of the contract. It does not require-

(i)A Contractor to waive its attorney-client privilege or the protections afforded by the attorney work product doctrine; or

(ii)Any officer, director, owner, or employee of the Contractor, including a sole proprietor, to waive his or her attorney client privilege or Fifth Amendment rights; and

(3)Does not restrict a Contractor from-

(i)Conducting an internal investigation; or

(ii)Defending a proceeding or dispute arising under the contract or related to a potential or disclosed violation.

Principal means an officer, director, owner, partner, or a person having primary management or supervisory responsibilities within a business entity (e.g., general manager; plant manager; head of a division or business segment; and similar positions).

Subcontract means any contract entered into by a subcontractor to furnish supplies or services for performance of a prime contract or a subcontract.

Subcontractor means any supplier, distributor, vendor, or firm that furnished supplies or services to or for a prime contractor or another subcontractor.

United States, means the 50 States, the District of Columbia, and outlying areas.

(b)Code of business ethics and conduct. (1)Within 30 days after contract award, unless the Contracting Officer establishes a longer time period, the Contractor shall—
(i)Have a written code of business ethics and conduct; and

(ii)Make a copy of the code available to each employee engaged in performance of the contract.

(2)The Contractor shall-
(i)Exercise due diligence to prevent and detect criminal conduct; and

(ii)Otherwise promote an organizational culture that encourages ethical conduct and a commitment to compliance with the law.

(3)(i)The Contractor shall timely disclose, in writing, to the agency Office of the Inspector General (OIG), with a copy to the Contracting Officer, whenever, in connection with the award, performance, or closeout of this contract or any subcontract thereunder, the Contractor has credible evidence that a principal, employee, agent, or subcontractor of the Contractor has committed-
(A)A violation of Federal criminal law involving fraud, conflict of interest, bribery, or gratuity violations found in Title 18 of the United States Code; or

(B)A violation of the civil False Claims Act ( 31 U.S.C. 3729- 3733).

(ii)The Government, to the extent permitted by law and regulation, will safeguard and treat information obtained pursuant to the Contractor's disclosure as confidential where the information has been marked "confidential" or "proprietary" by the company. To the extent permitted by law and regulation, such information will not be released by the Government to the public pursuant to a Freedom of Information Act request, 5 U.S.C. Section 552, without prior notification to the Contractor. The Government may transfer documents provided by the Contractor to any department or agency within the Executive Branch if the information relates to matters within the organization's jurisdiction.

(iii)If the violation relates to an order against a Governmentwide acquisition contract, a multi-agency contract, a multiple-award schedule contract such as the Federal Supply Schedule, or any other procurement instrument intended for use by multiple agencies, the Contractor shall notify the OIG of the ordering agency and the IG of the agency responsible for the basic contract.

(c)Business ethics awareness and compliance program and internal control system. This paragraph (c) does not apply if the Contractor has represented itself as a small business concern pursuant to the award of this contract or if this contract is for the acquisition of a commercial product or commercial service as defined at FAR 2.101. The Contractor shall establish the following within 90 days after contract award, unless the Contracting Officer establishes a longer time period:

(1)An ongoing business ethics awareness and compliance program.

(i)This program shall include reasonable steps to communicate periodically and in a practical manner the Contractor's standards and procedures and other aspects of the Contractor's business ethics awareness and compliance program and internal control system, by conducting effective training programs and otherwise disseminating information appropriate to an individual's respective roles and responsibilities.

(ii)The training conducted under this program shall be provided to the Contractor's principals and employees, and as appropriate, the Contractor's agents and subcontractors.

(2)An internal control system.
(i)The Contractor's internal control system shall—

(A)Establish standards and procedures to facilitate timely discovery of improper conduct in connection with Government contracts; and

(B)Ensure corrective measures are promptly instituted and carried out.

(ii)At a minimum, the Contractor's internal control system shall provide for the following:

(A)Assignment of responsibility at a sufficiently high level and adequate resources to ensure

effectiveness of the business ethics awareness and compliance program and internal control system.

(B)Reasonable efforts not to include an individual as a principal, whom due diligence would have exposed as having engaged in conduct that is in conflict with the Contractor's code of business ethics and conduct.

(C)Periodic reviews of company business practices, procedures, policies, and internal controls for compliance with the Contractor's code of business ethics and conduct and the special requirements of Government contracting, including-

(1)Monitoring and auditing to detect criminal conduct;

(2)Periodic evaluation of the effectiveness of the business ethics awareness and compliance program and internal control system, especially if criminal conduct has been detected; and

(3)Periodic assessment of the risk of criminal conduct, with appropriate steps to design, implement, or modify the business ethics awareness and compliance program and the internal control system as necessary to reduce the risk of criminal conduct identified through this process.

(D)An internal reporting mechanism, such as a hotline, which allows for anonymity or confidentiality, by which employees may report suspected instances of improper conduct, and instructions that encourage employees to make such reports.

(E)Disciplinary action for improper conduct or for failing to take reasonable steps to prevent or detect improper conduct.

(F)Timely disclosure, in writing, to the agency OIG, with a copy to the Contracting Officer, whenever, in connection with the award, performance, or closeout of any Government contract performed by the Contractor or a subcontract thereunder, the Contractor has credible evidence that a principal, employee, agent, or subcontractor of the Contractor has committed a violation of Federal criminal law involving fraud, conflict of interest, bribery, or gratuity violations found in Title 18 U.S.C. or a violation of the civil False Claims Act ( 31 U.S.C. 3729- 3733).

(1)If a violation relates to more than one Government contract, the Contractor may make the disclosure to the agency OIG and Contracting Officer responsible for the largest dollar value contract impacted by the violation.

(2)If the violation relates to an order against a Governmentwide acquisition contract, a multi-agency contract, a multiple-award schedule contract such as the Federal Supply Schedule, or any other procurement instrument intended for use by multiple agencies, the contractor shall notify the OIG of the ordering agency and the IG of the agency responsible for the basic contract, and the respective agencies' contracting officers.

(3)The disclosure requirement for an individual contract continues until at least 3 years after final

payment on the contract.

(4)The Government will safeguard such disclosures in accordance with paragraph (b)(3)(ii) of this clause.

(G)Full cooperation with any Government agencies responsible for audits, investigations, or corrective actions.

(d)Subcontracts. (1)The Contractor shall include the substance of this clause, including this paragraph (d), in subcontracts that exceed the threshold specified in FAR 3.1004(a) on the date of subcontract award and a performance period of more than 120 days.
(2)In altering this clause to identify the appropriate parties, all disclosures of violation of the civil False Claims Act or of Federal criminal law shall be directed to the agency Office of the Inspector General, with a copy to the Contracting Officer.

I.3.3    52.204-27 PROHIBITION ON A BYTEDANCE COVERED APPLICATION (Jun 2023)

(a)Definitions. As used in this clause—

Covered application means the social networking service TikTok or any successor application or service developed or provided by ByteDance Limited or an entity owned by ByteDance Limited.

Information technology, as defined in 40 U.S.C. 11101(6)—

(1)Means any equipment or interconnected system or subsystem of equipment, used in the automatic acquisition, storage, analysis, evaluation, manipulation, management, movement, control, display, switching, interchange, transmission, or reception of data or information by the executive agency, if the equipment is used by the executive agency directly or is used by a contractor under a contract with the executive agency that requires the use—

(i)Of that equipment; or

(ii)Of that equipment to a significant extent in the performance of a service or the furnishing of a product;

(2)Includes computers, ancillary equipment (including imaging peripherals, input, output, and storage devices necessary for security and surveillance), peripheral equipment designed to be controlled by the central processing unit of a computer, software, firmware and similar procedures, services (including support services), and related resources; but

(3)Does not include any equipment acquired by a Federal contractor incidental to a Federal contract.

(b)Prohibition. Section 102 of Division R of the Consolidated Appropriations Act, 2023 (Pub. L.

117-328), the No TikTok on Government Devices Act, and its implementing guidance under Office of Management and Budget (OMB) Memorandum M-23-13, dated February 27, 2023, "No TikTok on Government Devices" Implementation Guidance, collectively prohibit the presence or use of a covered application on executive agency information technology, including certain equipment used by Federal contractors. The Contractor is prohibited from having or using a covered application on any information technology owned or managed by the Government, or on any information technology used or provided by the Contractor under this contract, including equipment provided by the Contractor's employees; however, this prohibition does not apply if the Contracting Officer provides written notification to the Contractor that an exception has been granted in accordance with OMB Memorandum M-23-13.

(c)Subcontracts. The Contractor shall insert the substance of this clause, including this paragraph (c), in all subcontracts, including subcontracts for the acquisition of commercial products or commercial services.

I.3.4    52.217-9 OPTION TO EXTEND THE TERM OF THE CONTRACT (MAR 2000)

(a) The Government may extend the term of this contract by written notice to the Contractor within 30 days; provided that the Government gives the Contractor a preliminary written notice of its intent to extend at least 30 days before the contract expires. The preliminary notice does not commit the Government to an extension.

(b) If the Government exercises this option, the extended contract shall be considered to include this option clause.

(c) The total duration of this contract, including the exercise of any options under this clause, shall not exceed 12 months.

I.3.5    52.222-54 EMPLOYMENT ELIGIBILITY (JAN 2025)

(a)Definitions. As used in this clause-

Commercially available off-the-shelf (COTS) item—

(1)Means any item of supply that is—

(i)A commercial product (as defined in paragraph (1) of the definition of "commercial product" at Federal Acquisition Regulation (FAR) 2.101);

(ii)Sold in substantial quantities in the commercial marketplace; and
(iii)Offered to the Government, without modification, in the same form in which it is sold in the commercial marketplace; and

(2)Does not include bulk cargo, as defined in 46 U.S.C. 40102(4), such as agricultural products and petroleum products. Per 46 CFR 525.1 (c)(2), "bulk cargo" means cargo that is loaded and

carried in bulk onboard ship without mark or count, in a loose unpackaged form, having homogenous characteristics. Bulk cargo loaded into intermodal equipment, except LASH or Seabee barges, is subject to mark and count and, therefore, ceases to be bulk cargo.

Employee assigned to the contract means an employee who was hired after November 6, 1986 (after November 27, 2009 in the Commonwealth of the Northern Mariana Islands), who is directly performing work, in the United States, under a contract that is required to include the clause prescribed at 22.1803. An employee is not considered to be directly performing work under a contract if the employee-

(1)Normally performs support work, such as indirect or overhead functions; and

(2)Does not perform any substantial duties applicable to the contract.

Subcontract means any contract, as defined in 2.101, entered into by a subcontractor to furnish supplies or services for performance of a prime contract or a subcontract. It includes but is not limited to purchase orders, and changes and modifications to purchase orders.

Subcontractor means any supplier, distributor, vendor, or firm that furnishes supplies or services to or for a prime Contractor or another subcontractor.

United States, as defined in 8 U.S.C. 1101(a)(38), means the 50 States, the District of Columbia, Puerto Rico, Guam, the Commonwealth of the Northern Mariana Islands, and the U.S. Virgin Islands.

(b)Enrollment and verification requirements. (1)If the Contractor is not enrolled as a Federal Contractor in E-Verify at time of contract award, the Contractor shall-
(i)Enroll. Enroll as a Federal Contractor in the E-Verify program within 30 calendar days of contract award;

(ii)Verify all new employees. Within 90 calendar days of enrollment in the E-Verify program, begin to use E-Verify to initiate verification of employment eligibility of all new hires of the Contractor, who are working in the United States, whether or not assigned to the contract, within 3 business days after the date of hire (but see paragraph (b)(3) of this section); and

(iii)Verify employees assigned to the contract. For each employee assigned to the contract, initiate verification within 90 calendar days after date of enrollment or within 30 calendar days of the employee's assignment to the contract, whichever date is later (but see paragraph (b)(4) of this section).

(2)If the Contractor is enrolled as a Federal Contractor in E-Verify at time of contract award, the Contractor shall use E-Verify to initiate verification of employment eligibility of-

(i)All new employees. (A)Enrolled 90 calendar days or more. The Contractor shall initiate verification of all new hires of the Contractor, who are working in the United States, whether or

not assigned to the contract, within 3 business days after the date of hire (but see paragraph (b)(3) of this section); or

(B)Enrolled less than 90 calendar days. Within 90 calendar days after enrollment as a Federal Contractor in E-Verify, the Contractor shall initiate verification of all new hires of the Contractor, who are working in the United States, whether or not assigned to the contract, within 3 business days after the date of hire (but see paragraph (b)(3) of this section); or

(ii)Employees assigned to the contract. For each employee assigned to the contract, the Contractor shall initiate verification within 90 calendar days after date of contract award or within 30 days after assignment to the contract, whichever date is later (but see paragraph (b)(4) of this section).

(3)If the Contractor is an institution of higher education (as defined at 20 U.S.C. 1001(a)); a State or local government or the government of a Federally recognized Indian tribe; or a surety performing under a takeover agreement entered into with a Federal agency pursuant to a performance bond, the Contractor may choose to verify only employees assigned to the contract, whether existing employees or new hires. The Contractor shall follow the applicable verification requirements at (b)(1) or (b)(2) respectively, except that any requirement for verification of new employees applies only to new employees assigned to the contract.

(4)Option to verify employment eligibility of all employees. The Contractor may elect to verify all existing employees hired after November 6, 1986 (after November 27, 2009, in the Commonwealth of the Northern Mariana Islands), rather than just those employees assigned to the contract. The Contractor shall initiate verification for each existing employee working in the United States who was hired after November 6, 1986 (after November 27, 2009, in the Commonwealth of the Northern Mariana Islands), within 180 calendar days of-

(i)Enrollment in the E-Verify program; or

(ii)Notification to E-Verify Operations of the Contractor's decision to exercise this option, using the contact information provided in the E-Verify program Memorandum of Understanding (MOU).

(5)The Contractor shall comply, for the period of performance of this contract, with the requirements of the E-Verify program MOU.

(i)The Department of Homeland Security (DHS) or the Social Security Administration (SSA) may terminate the Contractor's MOU and deny access to the E-Verify system in accordance with the terms of the MOU. In such case, the Contractor will be referred to a suspending and debarring official.
(ii)During the period between termination of the MOU and a decision by the suspending and debarring official whether to suspend or debar, the Contractor is excused from its obligations under paragraph (b) of this clause. If the Contractor is not suspended, debarred, or subject to a voluntary exclusion, then the Contractor must reenroll in E-Verify.

(c)Web site. Information on registration for and use of the E-Verify program can be obtained via the Internet at the Department of Homeland Security Web site: https://www.e-Verify.gov.

(d)Individuals previously verified. The Contractor is not required by this clause to perform additional employment verification using E-Verify for any employee-

(1)Whose employment eligibility was previously verified by the Contractor through the E-Verify program;

(2)Who has been granted and holds an active U.S. Government security clearance for access to confidential, secret, or top secret information in accordance with the National Industrial Security Program Operating Manual; or

(3)Who has undergone a completed background investigation and been issued credentials pursuant to Homeland Security Presidential Directive (HSPD)-12, Policy for a Common Identification Standard for Federal Employees and Contractors.

(e)Subcontracts. The Contractor shall include the requirements of this clause, including this paragraph (e) (appropriately modified for identification of the parties), in each subcontract that-

(1)Is for— (i)Services (except for commercial services that are part of the purchase of a COTS item (or an item that would be a COTS item, but for minor modifications), performed by the COTS provider, and are normally provided for that COTS item); or
(ii)Construction;

(2)Has a value of more than $3,500; and

(3)Includes work performed in the United States.

I.3.6    52.252-6 AUTHORIZED DEVIATIONS IN CLAUSES (NOV 2020)

(a) The use in this solicitation or contract of any Federal Acquisition Regulation (48 CFR Chapter 1) clause with an authorized deviation is indicated by the addition of "(DEVIATION)" after the date of the clause.

(b) The use in this solicitation or contract of any Health and Human Services Acquisition Regulations (48 CFR Chapter 3) clause with an authorized deviation is indicated by the addition of "(DEVIATION)" after the name of the regulation.

I.4    HHSAR CLAUSES IN FULL TEXT

I.4.1    352.204-72 RECORDS MANAGEMENT (FEB 2024) (DEVIATION)

(a) Applicability. This clause applies to contracts that include Federal records, as defined in paragraph (b).

(b) Definition. As used in this clause—

*Federal record* means all recorded information, regardless of form or characteristics, made or received by a Federal agency under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency or its legitimate successor as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the United States Government or because of the informational value of data in them. See 44 U.S.C. 3301.

(1) The term Federal record—

(i) Includes HHS records;

(ii) Does not include personal materials;

(iii) Applies to records created, received, or maintained by Contractors pursuant to their contract; and

(iv) May include deliverables and documentation associated with

deliverables.

(2) *Recorded information* means all traditional forms of records, regardless of physical form or characteristics, including information created, manipulated, communicated, or stored in digital or electronic form. (See 44 U.S.C. 3301.)

(3) *Personal materials* means documentary materials belonging to an individual that are not used to conduct agency business. Personal files are excluded from the definition of Federal records and are not owned by the Government. (See 36 CFR 1220.18.)

(c) Requirements.

(1) The Contractor shall comply with all applicable records management laws and regulations, as well as National Archives and Records Administration (NARA) records policies, including but not limited to the Federal Records Act (44 U.S.C. chapters 21, 29, 31, 33), NARA regulations at 36 CFR chapter XII subchapter B, and those policies associated with the safeguarding of records covered by the Privacy Act of 1974 (5 U.S.C. 552a). These policies include the preservation of all Federal records, regardless of form or characteristics, mode of transmission, or state of completion.

(2) In accordance with 36 CFR 1222.32, all data created for Government use and delivered to, or falling under the legal control of, the Government are Federal records subject to the provisions of 44 U.S.C. chapters 21, 29, 31, and 33, the Freedom of Information Act (FOIA) (5 U.S.C. 552), and the Privacy Act of 1974 (5 U.S.C. 552a), and must be managed and scheduled for disposition only as permitted by statute or regulation.

(3) In accordance with 36 CFR 1222.32, the Contractor shall maintain all Federal records created for Government use or created in the course of performing the contract and/or delivered to, or

under the legal control of the Government and must be managed in accordance with Federal law. Electronic records and associated metadata must be accompanied by sufficient technical documentation to permit understanding and use of the records and data.

(4) The Contractor is responsible for preventing the alienation or unauthorized destruction of Federal records, including all forms of mutilation. Federal records may not be removed from the legal custody of HHS or destroyed except for in accordance with the provisions of the agency records schedules and with the written concurrence of the Contracting Officer. Willful and unlawful destruction, damage or alienation of Federal records is subject to the fines and penalties imposed by 18 U.S.C. 2701. The Contractor shall report to the Contracting Officer any unlawful or accidental removal, defacing, alteration, or destruction of Federal records.

(5) The Contractor shall immediately notify the Contracting Officer upon discovery of any inadvertent or unauthorized disclosures of information, data, documentary materials, records or equipment. Disclosure of non-public information is limited to authorized personnel with a need-to-know as described in the contract. The Contractor shall ensure that appropriate personnel are trained to adhere to these contract requirements, and that applicable, administrative, technical, and physical safeguards are established to ensure the security and confidentiality of information, data, documentary material, Federal records and/or equipment is properly protected. The Contractor shall not remove Federal Records from Government facilities or systems, or facilities or systems operated or maintained on the Government's behalf, without the express written permission of the Contracting Officer. When information, data, documentary material, Federal records and/or equipment are no longer required, it shall be returned to HHS control or the Contractor must hold it until otherwise directed. Items returned to the Government shall be hand carried, mailed, emailed, or securely electronically transmitted to the Contracting Officer or as otherwise directed by the Contracting Officer. Destruction of Federal records is expressly prohibited unless in accordance with paragraph (c)(4).

(6) The Contractor shall only use Government information technology equipment for purposes specifically authorized by the contract and in accordance with HHS policy.

(7) The Contractor shall not create or maintain any Federal records containing any non-public HHS information that are not specifically authorized by the contract.

(8) The Contractor shall not retain, use, sell, or disseminate copies of any deliverable that contains information covered by the Privacy Act of 1974 or that which is generally protected from public disclosure by an exemption to the Freedom of Information Act.

(9) All Contractor employees assigned to this contract handle Federal records are required to take HHS-provided records management training. The Contractor is responsible for confirming training has been completed according to agency policies, including initial training and any annual or refresher training.

(d) Subcontract flow down. The Contractor shall incorporate the substance of this clause, its terms and requirements including this paragraph, in all subcontracts under this contract.

I.4.2    352.224-71 CONFIDENTIAL INFORMATION (FEB 2024) (DEVIATION)

(a) Definition. As used in this clause—

*Confidential information* means information or data of a personal nature about an individual, or proprietary information or data submitted by or pertaining to an institution or organization.

(b) Identification of information. Specific confidential information or categories of information that the Government will furnish to the Contractor, or that the Contractor is expected to generate, is identified in this contract.

(c) Disclosure. The Contractor shall not disclose confidential information or records written notice is provided to the Contracting Officer at least 45 days in advance of the Contractor's intent to release findings of studies or research, to which an agency response may be appropriate to protect the public interest or that of the agency. The Contractor shall not disseminate or publish such information without the written consent of the Contracting Officer.

(d) Government furnished or provided information: For information provided by or on behalf of the government.

(1) The publication or dissemination of the following types of information are restricted under this contract.

(2) The reason(s) for restricting the types of information identified in subparagraph (d)(1).

(e) The Contractor shall consult with the Contracting Officer when there is uncertainty with regard to the confidentiality of, or a property interest in, information under this contract prior to the release, disclosure, dissemination, or publication of such information.

**SECTION J - List of Attachments**

| Attachment No. | Title | Pages |
| --- | --- | --- |
| J.1 | Acacia Small Business Subcontracting Plan | 8 |
| J.2 | Draft QASP | 10 |

# HHS SUBCONTRACTING PLAN TEMPLATE

*A Subcontracting Plan is required if the estimated cost of the contract **may exceed $700,000 ($1,500,000 for construction)** Small businesses are excluded.*

*The following outline meets the minimum requirements of section 8(d) of the Small Business Act, as amended, and implemented by the Federal Acquisition Regulations (FAR) Subpart 19.7. The U.S. Department of Health and Human Services (HHS), Office of Small and Disadvantaged Business Utilization (OSDBU) recommends that offerors use the following format to submit proposed Individual Subcontracting Plans. It is not intended to replace any existing Corporate/Commercial Plan that is more extensive.*

*Questions should be forwarded to the Contracting Officer and/or Small Business Subcontracting Program Manager.*

| PROJECT INFORMATION | |
|---|---|
| Solicitation/Contract No.: 75P00125R00031 | MOD No. (If applicable): 0004 |

Title of Acquisition: Unaccompanied Alien Children Legal Services

Contractor's Name: Acacia Center for Justice

| Period of Performance: | August 1, 2025 - July 31, 2026. | Total Contract Amount (including options, and any modifications if this submission is due to a modification): | $ 356,310,289.21 |
|---|---|---|---|
| Total Modification Amount: (if applicable) | $ NA | Base Period (if there are options): | $ 90,545,814.49 |
| Option 1 (if applicable): | $ 88,588,158.24 | Option 2 (if applicable): | $ 88,588,158.24 |
| Option 3 (if applicable): | $ 88,588,158.24 | Option 4 (if applicable): | $ NA |
| FAR 52.217-8 (if applicable): | $ NA | | |

| Contracting Officer/Specialist Name: Mary Rainey / Azeb Mengistu | Tel & Fax: |
|---|---|
| OPDIV/Division/Branch (including location): OAMS, ASA, HHS | Email: Mary.Rainey@hhs.gov / Azeb.Mengistu@hhs.gov |

**SUBCONTRACT PLAN REQUIREMENTS-** *Failure to include the essential information of FAR Subpart 19.7 may be cause for either a delay in acceptance or the rejection of a bid or offer when a subcontracting plan is required. "SUBCONTRACT," as used in this clause, means any agreement (other than one involving an employer-employee relationship) entered into by a Federal Government prime contractor or subcontractor requesting supplies or services required for performance of the contract or subcontract.*

**If assistance is needed to locate small business sources**, contact the Small Business Specialist (SBS) supporting the OPDIV. SBS contact information is located on the OSDBU website (http://www.hhs.gov/about/smallbusiness/osdbustaff.html) or you may contact the OSDBU headquarters at (202) 690-7300.

HHS currently has the following subcontracting goals for Fiscal Year **2017**:

| Type of Concern | Goal (%) |
|---|---|
| Small Business | 33.00% |
| Small Disadvantaged Business, including 8(a) Program Participants, Alaska Native Corporations (ANC) and Indian Tribes | 5.00% |
| Women Owed Small Business | 5.00% |
| Service Disabled Veteran Owned Small Business | 3.00% |
| HUBZone | 3.00% |

**For this procurement, or modification, HHS expects all proposed subcontracting plans to contain at a minimum the aforementioned percentages.**

**1. Type of Plan (check one):**      Individual   ☒      *Master (Addendum)   ☐      *Commercial   ☐
*When Master is checked, Individual must also be checked and submission must include both.

Subcontracting Plan Template (Rev. April 2017)

*If Commercial is checked, please stop here and attach a copy of your commercial plan.

**For Informational Purposes:**

**Individual plan** - all elements developed specifically for this contract and applicable for the full term of this contract.

**Master plan** - goals developed for this contract, all other elements standardized and approved by a lead agency Federal Official; must be renewed every three years and contractor must provide copy of lead agency approval.

**Commercial products/service plan** - goals are negotiated with the initial agency on a company-wide basis rather than for individual contracts; this plan applies to the entire production of commercial service or items or a portion thereof. The contractor sells commercial products and services customarily used for non-government purposes. The plan is effective during the offeror's fiscal year.

| | **% of Total Contract $** |
|---|---|
| **2. Subcontracting Goal Data: (FAR19.702(a)(1-3) & FAR 52.219-9(d)(1))** Below indicate the dollar and percentage goals for Small Business (SB), Small Disadvantaged (SDB) including Alaska Native Corporations and Indian Tribes, Womenowned and Economically Disadvantaged Women-Owned (WOSB), Historically Underutilized Business Zone (HUBZone), Veteran Owned Small Business (VOSB), Service-Disabled Veteran-Owned (SDVOSB) Small Businesses and "Other than Small Business" (Other) as subcontractors. Indicate the base year and each option year, as specified in FAR 19.704. If any contract has more than four options, please attach additional sheets which illustrate dollar amounts and percentages. **PLEASE NOTE: Zero dollars is not an acceptable goal for the SB, SDB, WOSB, HUBZone, VOSB or SDVOSB categories since this does not demonstrate a good faith effort throughout the period of performance of the contract.** | If required by CO |

For Individual Plans complete a(1): **(FAR 52.219-9(d)(2)(i))** — For Individual Plan

a(1). Total dollars planned to be subcontracted under this contract is:

$ ▓▓▓▓▓▓▓▓  =2b+2h          ▓▓ %

If your contract includes options, please include the break down here:

If options are applicable:

Base Period:    $ ▓▓▓▓▓▓▓     Option Period 3: $ ▓▓▓▓▓▓▓

Option Period 1: $ ▓▓▓▓▓▓▓     Option Period 4:  $ NA

Option Period 2: $ ▓▓▓▓▓▓▓

Base: ▓▓ %
OPT 1: ▓▓ %
OPT 2: ▓▓ %
OPT 3: ▓▓ %
OPT 4: NA %

---

b. Total dollars planned to be subcontracted to small business concerns (including ANC and Indian tribes)- [Percentage of 2a.]: **(FAR 52.219-9(d)(2)(ii))**

        $ ▓▓▓▓▓▓▓         and         33 %          33 %

If your contract includes options, please include the break down here:

If options are applicable:

Base:  $ ▓▓▓▓▓▓       33 %      and        Base:  33 %

OPT 1: $ ▓▓▓▓▓▓       33 %      and        OPT 1: 33 %

OPT 2: $ ▓▓▓▓▓▓       33 %      and        OPT 2: 33 %

OPT 3: $ ▓▓▓▓▓        33 %      and        OPT 3: 33 %

OPT 4: $ NA           NA %      and        OPT 4: NA %

c. Total dollars planned to be subcontracted to veteran-owned small business concerns- [Percentage of 2.a.]: **(FAR 52.219-9(d)(2)(iii))**

Subcontracting Plan Template (Rev. April 2017)

$ ▮▮▮▮▮▮ | and | 3 % | 3%

If your contract includes options, please include the break down here:

If options are applicable:

Base: $ ▮▮▮▮▮▮ | 3 % | Base: 3%

OPT 1: $ ▮▮▮▮▮▮ | and | 3 % | OPT 1: 3%

OPT 2: $ ▮▮▮▮▮▮ | and | 3 % | OPT 2: 3%

OPT 3: $ ▮▮▮▮▮▮ | and | 3 % | OPT 3: 3%

OPT 4: $ NA | and | NA % | OPT 4: NA%

---

**d. Total dollars planned to be subcontracted to service-disabled veteran-owned small business  - [Percentage of 2.a.]: (FAR 52.219-9(d)(2)(iv))**

$ ▮▮▮▮▮▮ | and | 3 % | 3%

If your contract includes options, please include the break down here:

If options are applicable:

Base: $ ▮▮▮▮▮▮ | 3 % | Base: 3%

OPT 1: $ ▮▮▮▮▮▮ | and | 3 % | OPT 1: 3%

OPT 2: $ ▮▮▮▮▮▮ | and | 3 % | OPT 2: 3%

OPT 3: $ ▮▮▮▮▮▮ | and | 3 % | OPT 3: 3%

OPT 4: $ NA | and | NA % | OPT 4: NA%

---

**e. Total dollars planned to be subcontracted to HUBZone small business concerns - [Percentage of 2.a.]: (FAR 52.219-9(d)(2)(v))**

$ ▮▮▮▮▮▮ | and | 3 % | 3%

If your contract includes options, please include the break down here:

If options are applicable:

Base: $ ▮▮▮▮▮▮ | 3 % | Base: 3%

OPT 1: $ ▮▮▮▮▮▮ | and | 3 % | OPT 1: 3%

OPT 2: $ ▮▮▮▮▮▮ | and | 3 % | OPT 2: 3%

OPT 3: $ ▮▮▮▮▮▮ | and | 3 % | OPT 3: 3%

OPT 4: $ NA | and | NA % | OPT 4: NA%

---

**f. Total dollars planned to be subcontracted to small disadvantaged business concerns (including ANCs and Indian tribes) - [Percentage of 2.a.]: (FAR 52.219-9(d)(2)(vi))**

$ ▮▮▮▮▮▮ | and | 5 % | 5%

If your contract includes options, please include the break down here:

If options are applicable:

Base: $ ▮▮▮▮▮▮ | 5 % | Base: 5%

OPT 1: $ ▮▮▮▮▮▮ | and | 5 % | OPT 1: 5%

OPT 2: $ ▮▮▮▮▮▮ | and | 5 % | OPT 2: 5%

OPT 3: $ ▮▮▮▮▮▮ | and | 5 % | OPT 3: 5%

OPT 4: $ NA | and | NA % | OPT 4: NA%

g. Total dollars planned to be subcontracted to women-owned small business concerns- [Percentage of 2.a.]: **(FAR 52.219-9(d)(2)(vii))**

$ ████████       and                    5 %                                              5%

                                                                             If options are
                                                                             applicable:

If your contract includes options, please
include the break down here:

Base: $ ████████                          5 %                           Base: 5%
                    and

OPT 1: $ ████████                         5 %                           OPT 1: 5%
                    and

OPT 2: $ ████████                         5 %                           OPT 2: 5%
                    and

OPT 3: $ ████████                         5 %                           OPT 3: 5%
                    and

OPT 4: $ NA                               NA %                          OPT 4: NA%
                    and

h. Total Subcontracting Dollars & Percentage with "Other" than Small Businesses (i.e., large companies, non profits, etc.) [Percentage of 2.a.]: **(HHS OSDBU)**

$ ████████       and                    67 %                                             67%

                                                                             If options are
                                                                             applicable:

If your contract includes options, please
include the break down here:

Base: $ ████████                          67 %                          Base:  67%
                    and

OPT 1: $ ████████                         67 %                          OPT 1: 67%
                    and

OPT 2: $ ████████                         67 %                          OPT 2: 67%
                    and

OPT 3: $ ████████                         67 %                          OPT 3: 67%
                    and

OPT 4: $ NA                               NA %                          OPT 4: NA%
                    and

i. Subcontracting Opportunities (description of all principal products/services to be subcontracted to all types of concerns listed in 2.b.- 2.f.) **(FAR 52.219-9(d)(3)):**

Provide a description of ALL the products and/or services to be subcontracted under this contract, and indicate the size and type of business supplying them (include all that apply):

| Products and/or Services | Other | Small Business | SDB | WOSB | Hubz | VOSB | SDVOSB |
|---|---|---|---|---|---|---|---|
| 1 Product/service: Legal services for unaccompanied children  ████████ | | X | | X | | | |
| 2 Product/service: Legal services for unaccompanied children  ████████ | | X | | | | | |
| 3 Product/service: Marketing Agency  ████ | | X | | | X | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4 Product/service: Legal services for unaccompanied children ▮▮▮▮ | | X | | X | | | |
| 5 Product/service: Telephonic Interpretation ▮▮ | | X | | X | | | |
| 6 Product/service: Written Translation ▮▮ | | X | | | | | |
| 7 Product/service: Legal services for unaccompanied children ▮▮ | | X | | X | | | |
| 8 Product/service: Legal services for unaccompanied children ▮▮▮ | | X | X | | | | |
| 9 Product/service: Legal services for unaccompanied children ▮▮▮ | | X | | | | | |
| 10 Product/service: Legal services for unaccompanied children ▮▮ | | X | X | | | | |
| 11 Product/service: Legal services for unaccompanied children ▮▮ | | X | | X | | | |
| 12 Product/service: Legal services for unaccompanied children, technical assistance, and program management *All other subcontractors working under this contract are not-for-profit organizations, Or Other Than Small Businesses* | X | | | | | | |

Subcontracting Plan Template (Rev. April 2017)

j. Please describe the methodology used to develop goals & identify potential sources (e.g. historical trends, information on technical and competitive bidding, formula for calculating goals, etc.) **(FAR 52.219-9(d)(4-5)):**

Given the nature of the Government's solicitation and acquisition approach, the numbers and goals presented in this draft small business subcontracting plan are based on our Team's historical usage and anticipated usage of small businesses in the implementation of the program. We recognize that there is no guarantee that the maximum value of our proposal will be awarded to us, but for the sake of providing our methodology in calculating percentage goals for subcontracting to Small Businesses, we used the total available dollars to develop estimates.

Acacia has established and is expressing its subcontracting goals for this Plan as percentage goals and estimated dollar values. Actual dollar amounts cannot be determined until final awards are made. Each Small Business subcategory goal was calculated against the total dollar value available for subcontracting, using the total contract value as a baseline. Dollar amounts for subcontracting will be determined based upon applying the percentages for all categories against the actual dollar value for each task required during the course of the contract.

In our proposed subcontracting plan, we have set the goals for each socio-economic category at the minimum percentages laid out on the first page of this template, as the instructions indicate that all proposed subcontracting plans must. However, it is worth mentioning that since the nature of the work envisioned under this contract is highly technical and almost exclusively performed by organizations classified by the Small Business Administration (SBA) as "other than small" (namely, not-for-profit organizations), we foresee significant challenges in meeting these established goals. Despite these challenges, the Acacia Team will make regular good-faith efforts to identify new entrants into the field of providing legal services to unaccompanied children and to support any emerging small businesses with strong models of service for this population.

k. Indirect costs have ☐ have not ☒ been included in the dollar and percentage subcontracting goals above **(check one).**

If indirect costs have been included in establishing subcontracting goals, please provide a description of the method used to determine the proportionate share of indirect costs to be incurred with all types of concerns listed in 2.b.-2.f. **(FAR 52.219-9(d)(6)):**
NA

## SUBCONTRACTING PLAN REQUIREMENTS (con't)

3. Please enter the following information for the individual who will administer your Subcontracting Program: **(FAR 52.219-9(d)(7))**

Name: ▮▮▮▮▮▮▮▮ Title: ▮▮▮▮▮▮▮▮▮▮

Address: 1025 Connecticut Ave NW, STE 1000A (#1008), Washington, DC 20036

Telephone: ▮▮▮▮▮▮▮▮▮▮ Email: ▮▮▮▮▮▮▮▮▮▮

**Duties:** Does the individual named above have general overall responsibility for the company's subcontracting program, i.e., developing, preparing, and executing subcontracting plans and monitoring performance relative to the requirements of those subcontracting plans and perform the following duties? ☒yes ☐no

Additionally, please respond whether or not the individual who will administer you subcontracting program conducts the following:

1. Developing and promoting company-wide policy initiatives that demonstrate the company's support for awarding contracts and subcontracts to SB, SDB, WOSB, HUBZone, VOSB and SDVOSB concerns; and for assuring that these concerns are included on the source lists for solicitations for products and services they are capable of providing; ☒yes ☐no
2. Developing and maintaining bidder source lists of SB, SDB, WOSB, HUBZone, VOSB and SDVOSB concerns from all possible sources; ☒yes ☐no
3. Ensuring periodic rotation of potential subcontractors on bidder's lists; ☒yes ☐no
4. Assuring that SB, SDB, WOSB, HUBZone, VOSB and SDVOSB businesses are included on the bidders' list for every subcontract solicitation for products and services that they are capable of providing. ☒yes ☐no
5. Ensuring that Requests for Proposals (RFPs) are designed to permit the maximum practicable participation of SB, SDB, WOSB, HUBZone, VOSB and SDVOSB concerns. ☒yes ☐no
6. Reviewing subcontract solicitations to remove statements, clauses, etc., which might tend to restrict or prohibit small, 8(a), SDB, WOSB, HUBZone, VOSB and SDVOSB small business participation. ☒yes ☐no
7. Accessing various sources for the identification of SB, SDB, WOSB, HUBZone, VOSB and SDVOSB concerns to include the System for Award Management ( http://sam.gov ), local small business and minority associations, local chambers of commerce and Federal agencies' Small Business Offices; ☒yes ☐no
8. Establishing and maintaining contract and subcontract award records; ☒yes ☐no
9. Participating in Business Opportunity Workshops, Minority Business Enterprise Seminars, Trade Fairs, Procurement Conferences, etc; ☒yes ☐no
10. Ensuring that SB, SDB, WOSB, HUBZone, VOSB and SDVOSB concerns are made aware of subcontracting opportunities and assisting concerns in preparing responsive bids to the company; ☒yes ☐no
11. Conducting or arranging for the conduct of training for purchasing personnel regarding the intent and impact of Section 8(d) of the Small Business Act, as amended; ☒yes ☐no
12. Monitoring the company's subcontracting program performance and making any adjustments necessary to achieve the subcontract plan goals; ☒yes ☐no
13. Preparing and submitting timely, required subcontract reports; ☒yes ☐no

Subcontracting Plan Template (Rev. April 2017)

14. Conducting of arranging training for purchasing personnel regarding the intent and impact of 8(d) of the Small Business Act on purchasing procedures;and ☒yes ☐no

15. Coordinating the company's activities during the conduct of compliance reviews by Federal agencies. ☒yes ☐no

(If **NO** is checked for any of the duties above, please provide who in the company performs those duties, or indicate why the duties are not performed in your company on a separate sheet of paper and submit with the proposed subcontracting plan.)

Additional duties of the individual: NA

4. Please describe your efforts to ensure that Small Businesses (incl. SDB, WOSB, HUBZone, SDVOSB) have an equitable opportunity to compete for subcontracts: **(FAR 52.219-9(d)(8))**

These efforts include, but are not limited to, the following activities:

a. Outreach efforts to obtain sources: (1) Contact minority and small business trade associations; (2) contact business development organizations and local chambers of commerce; (3) attend SB, SDB, WOSB, HUBZone, VOSB and SDVOSB procurement conferences and trade fairs; (4) review sources from the System for Award Management ( http://www.sam.gov); (5) review sources from the Small Business Administration (SBA), Dynamic Small Business Search database (DSBS) http://dsbs.sba.gov/); (6) Consider using other sources such as the National Institutes of Health (NIH) e-Portals in Commerce, (e-PIC), (http://epic.od.nih.gov/)). The NIH e-PIC is not a mandatory source; however, it may be used at the offeror's discretion; and (7) Utilize newspaper and magazine ads to encourage new sources.

b. Internal efforts to guide and encourage purchasing personnel: (1) Conduct workshops, seminars and training programs; (2) Establish, maintain, and utilize SB, SDB, WOSB, HUBZone, VOSB and SDVOSB source lists, guides, and other data for soliciting subcontractors; and (3) Monitor activities to evaluate compliance with the subcontracting plan.

Efforts Described:

Acacia Center for Justice employs a comprehensive approach to ensure that small businesses, including SDB, WOSB, HUBZone, and SDVOSB, have fair opportunities to compete for subcontracts. We leverage both our established business relationships and a broad array of research tools to identify and engage potential small business subcontractors:
• **Existing Business Relationships**: We prioritize our proven working partnerships with small businesses, utilizing our network of past and current subcontractors who have demonstrated reliability and quality in their services.
• **Active Monitoring and Research**: To expand our reach and discover new small business partners, we actively utilize several key sources of information:
• **SAM (System for Award Management) and ORCA (Online Representations and Certifications Application) Databases**: For updated lists of registered small businesses eligible for government contracts.
• **SBA Resources**: We regularly consult state and regional Small Business Administration resources to identify emerging small businesses and understand their capabilities.
• **National Minority Purchasing Council Vendor Information Service**: This service helps us connect with minority-owned small businesses that are looking to expand their government contracting opportunities.
• **Minority Business Development Agency (Department of Commerce)**: We use the Research and Information Division's resources to support our outreach to diverse small businesses.
• **Trade Associations**: We engage with trade associations that represent small, veteran-owned, service-disabled veteran-owned, HUBZone, socially and economically disadvantaged, and women-owned businesses to ensure these groups are aware of subcontracting opportunities.
• **Dun & Bradstreet's Procurement Planning Directory**: This directory aids in identifying potential small business subcontractors by industry and capability, which is crucial for targeted outreach.

5. Flow Down Clause: **(FAR 52.219-9(d)(8))**

The contractor agrees to include the provisions under FAR 52.219‑8, "Utilization of Small Business Concerns," in all acquisitions exceeding the simplified acquisition threshold that offers further subcontracting opportunities. All subcontractors, except small business concerns, that receive subcontracts in excess of $700,000 ($1,500,000 for construction) must adopt and comply with a plan similar to the plan required by FAR 52.219‑9, "Small Business Subcontracting Plan." Note: In accordance with FAR 52.212-5(e) and 52.244-6(c)(2) the contractor is not required to include flow-down clause FAR 52.219.-9 if it is subcontracting commercial items.

6. Reporting and Cooperation: **(FAR 52.219-9(d)(10)); (FAR 19.704(a)(10))**

The contractor gives assurance of 1) cooperation in any studies or surveys that may be required; 2) submission of periodic reports which illustrate compliance with the subcontracting plan; 3) submission of its Individual Subcontracting Report (ISR) and Summary Subcontract Report (SSR); and 4) subcontractors submission of ISRs and SSRs. ISRs and SSRs shall be submitted via the Electronic Subcontracting Reporting System (eSRS) website https://esrs.symplicity.com/index?_tab=signin&cck=1

Subcontracting Plan Template (Rev. April 2017)

Please refer to FAR Part 19.7 or contact the Contracting Officer for regulatory reporting requirements and other obligations you are accepting as part of your signing of this document and acceptance of any subsequent contract award that may be granted.

7. Record keeping: **(FAR 52.219-9(d)(11))**

FAR 52.219-9(d)(11) requires a list of the types of records your company will maintain to demonstrate the procedures adopted to comply with the requirements and goals in the subcontracting plan.

Contractor acknowledges and agrees to record keeping obligation expressed at FAR 52.219-9(d)(11). yes ☒ no ☐

8. Assurances of Good Faith Effort, and the submission of explanations when failing to acquire as stated in Good Faith Effort: **(FAR 52.219-9(d)(12-13))**

Contractor hereby makes the following assurances:
(1) that contractor will make a good faith effort to acquire articles, equipment, supplies, services, or materials, or obtain the performance of construction work from the small business concerns that it used in preparing the bid or proposal, in the same or greater scope, amount, and quality used in preparing and submitting the bid or proposal yes ☒ no ☐; and
(2) that the Contractor will provide the Contracting Officer with a written explanation if the Contractor fails to acquire articles, equipment, supplies, services or materials or obtain the performance of construction work within 30 days of contract completion and as required under FAR 19.7. yes ☒ no ☐

9. Assurances that the Contractor will not prohibit a subcontractor from discussing with the Contracting Officer any material matter pertaining to payment to or utilization of a subcontractor: **(FAR 52.219-9(d)(14))**

Contractor hereby makes the assurance that the Contractor will not prohibit a subcontractor from discussing with the Contracting Officer any material matter pertaining to payment to or utilization of a subcontractor. yes ☒ no ☐

10. Assurances of Timely Payments to Subcontractors: **(FAR 52.219-9(d)(15))**

FAR 19.702 requires your company to establish and use procedures to ensure the timely payment of amounts due pursuant to the terms of your subcontracts with SB concerns, SDB, WOSB, HUBZone, VOSB and SDVOSB concerns.

Your company has established and use such procedures yes ☒ no ☐. Additionally, Contractor makes an assurance that Contractor will pay its small business subcontractors on time and in accordance with the terms and conditions of the underlying subcontract, and notify the contracting officer when the prime contractor makes either a reduced or an untimely payment to a small business subcontractor yes ☒ no ☐.

## Signature Page

1. Contractor makes the following representation: I have reviewed FAR Part 19.704 and FAR Clause 52.219-9, and this Subcontracting Plan is in compliance. yes ☒ no ☐

This Subcontracting Plan was submitted by:

Name: Leah Prestamo                    Title: General Counsel

Signature:

Address: 1025 Connecticut Ave NW, STE 1000A (#1008), Washington, DC 20036

Telephone: 213-660-9494          Email: lprestamo@acaciajustice.org

# EXHIBIT 2

FOR OFFICIAL USE ONLY



**Office of Refugee Resettlement** | 330 C Street, S.W., Washington, DC 20201
www.acf.gov/orr

## Legal Services Representation Summary

*July 8, 2026*

**BLUF**: ORR is attempting to identify the reason why Unaccompanied Alien Children (UAC) continue to appear in Department of Justice Executive Office for Immigration Review (DOJ EOIR) immigration hearings without legal representation.

**Background:** Under ORR's legal services provider contract, UAC are to receive legal orientation, legal screenings, courtroom assistance, other case-related legal assistance, and direct legal representation while in ORR custody, with continuity of representation in certain cases after release and timely notice of representation to ORR through Form L-3 (CLIN 1, Objectives 1–2, pp. 24–25; CLIN 2, Objective 3(a)–(c), pp. 26–29). Despite these requirements and full contract funding, ORR became aware through media reports, and later through confirmation from DOJ EOIR, that some UAC were appearing in immigration court without legal representation.

The U.S. government is notified of legal representation via three forms: L-3, G-28, and E-28.  ORR is notified via an L-3 Form, which confirms legal representation and allows ORR to share information regarding UAC.  The Department of Homeland Security (DHS) component, U.S. Citizenship and Immigration Services (USCIS), accepts legal filing notification via a G-28 form and DOJ EOIR accepts legal representation notification via an E-28 Form.

ORR conducted the following analyses: (1) Review of monthly A Numbers provided by Acacia compared to how many **do not** have a G28, E28, or L-3 on file, (2) Review of monthly A Numbers provided by Acacia compared to how many UAC have no record of being in the United States at the time the report was submitted, (3) In-person validation of UAC representation at immigration hearings (observed by federal employees), (4) Report summary with information provided by ORR Shelter grantees. Together, the following charts provide a snapshot of representation-related information.

*Legal Representation Data Analysis Summary from multiple data sets:*

1. **Chart One**: Compares the monthly A Numbers provided by Acacia loaded to the secure UCP-ORR SharePoint folder entitled "Legal Representation Activity Report" to those UAC who **do not** have a G-28/E-28 or an L-3 on file. On April 10, 2025, Acacia confirmed that these monthly reports reflected their active clients and defined an active client as, "generally representation that has been initiated under CLIN 2 funding and has not yet closed." To verify this active client list ORR compared records against outcomes across the Federal Government. *Note: Upon request, ORR can provide detailed lists for further review.*
   ***Please Note:** Chart One has been updated to add additional transparency around the L-3 form. January and March numbers have been updated from the prior 06222026 version, due to ORR use of a new tool to validate and identify duplicates.*

| Active Representation File | Network Activity Date | Total Active Representation | No G-28 or E-28 | No G-28, E-28 or L-3 |
|---|---|---|---|---|
| Legal Representation Activity Report_2025-12-31_Dataset | Acacia network activity as of **November 30, 2025.** | 24,157 | 3,574 | 2,928 |
| Legal Representation Activity Report_2026-02-02_Dataset | Acacia network activity as of **December 31, 2025.** | 24,117 | 3,698 | 2,995 |
| Legal Representation Activity Report_2026-03-02_Dataset | Acacia network activity as of **January 31, 2026.** | 23,896 | 3,782 | 3,048 |
| Legal Representation Activity Report_2026-03-31_Dataset | Acacia network activity as of **February 28, 2026.** | 23,665 | 3,826 | 3,075 |
| Legal Representation Activity Report_2026-04-30_Dataset | Acacia network activity as of **March 31, 2026.** | 23,487 | 3,778 | 3,004 |

*\*For all charts in this document, some figures may be affected by data entry errors, timing of submissions, incomplete records, or interpretation of information from non-standardized or unstructured sources.*

FOR OFFICIAL USE ONLY

**ADMINISTRATION FOR**
**CHILDREN & FAMILIES**

Office of Refugee Resettlement | 330 C Street, S.W., Washington, DC 20201
www.acf.gov/orr

2.  **Chart Two:** Compares the monthly A Numbers provided by Acacia loaded to the secure UCP-ORR SharePoint folder titled "Legal Representation Activity Report" to those UAC who **were not physically in the United States at the time of the report**. On April 10, 2025, Acacia confirmed that these monthly reports reflected their active clients and defined an active client as, "generally representation that has been initiated under CLIN 2 funding and has not yet closed." To verify this active client list, ORR compared records against outcomes across the Federal Government.

| Active Representation File | Network Activity Date | Total Active Representation | UAC Physically Not in Country (VD/OR) |
|---|---|---|---|
| Legal Representation Activity Report_2025-12-31_Dataset | Acacia network activity as of **November 30, 2025.** | 24,157 | 265 |
| Legal Representation Activity Report_2026-02-02_Dataset | Acacia network activity as of **December 31, 2025.** | 24,117 | 305 |
| Legal Representation Activity Report_2026-03-02_Dataset | Acacia network activity as of **January 31, 2026.** | 23,896 | 388 |
| Legal Representation Activity Report_2026-03-31_Dataset | Acacia network activity as of **February 28, 2026.** | 23,665 | 330 |
| Legal Representation Activity Report_2026-04-30_Dataset | Acacia network activity as of **March 31, 2026.** | 23,487 | 355 |

3.  **Chart Three:** Reflects the total number of children scheduled for hearings during the week reviewed and the number of children who appeared in court without representation. These observations were conducted by ORR's federal field staff during Week 1 and ICE attorneys during Week 2. This data is intended to document instances where children appeared in court without an attorney present.

| Date | Hearings Observed | UAC Currently in ORR Care | UAC Unrepresented | % of Total |
|---|---|---|---|---|
| May 11th-15th | 191 | 106 | 139 | 73% |
| May 18th-22nd | 431 | 249 | 296 | 69% |

4.  **Chart Four:** Captures the daily monitoring and recordkeeping conducted by case managers who bring children to court. This chart reflects information recorded about children's court appearances, including whether representation was present at the time of the appearance.

| Date | Hearings Observed | UAC Currently in ORR Care | UAC Unrepresented | % of Total |
|---|---|---|---|---|
| June 8th-12th | 192 | 192 | 47 | 24% |
| June 15th-19th | 176 | 176 | 45 | 26% |

*For all charts in this document, some figures may be affected by data entry errors, timing of submissions, incomplete records, or interpretation of information from non-standardized or unstructured sources.*

# EXHIBIT 3



1025 Connecticut Ave NW, STE 1000A (#1008)
Washington, DC 20036
acaciajustice.org

| | |
|---|---|
| **To:** | Dewayne Frederick, Contracting Officer's Representative [ACF] |
| | Karla Mansilla, Section Chief, Legal Services and Child Advocates [ACF] |
| **From:** | Acacia UCP-REDA Team |
| **Date:** | Thursday, April 30, 2026 |
| **Memorandum:** | Semi-Annual Direct Representation Spending Update |

As part of a broader effort under its Unaccompanied Children Program (UCP) to monitor legal services contract deliverables, as required by the Performance Work Statement (PWS), Acacia submits semiannual memoranda summarizing CLIN 2 spending on direct representation cases.

The current memo presents analyses based on data from August 1, 2025, the beginning of the current legal services contract, through February 28, 2025.[1] Its present submission is aligned with the reporting schedule approved by ORR on August 15, 2025.

### Summary Findings

The PWS requires that Acacia report to ORR an analysis of the running cost of direct representation against Acacia-network legal service provider (LSP) caseloads. Acacia has billed **$1,879 per case**, from the beginning of the contract through the end of the reporting period. This amount is well below the $8,500 average spending level per case specified in the PWS.

As Acacia has discussed previously with ORR, although the "cumulative spending per case" metric is required by the PWS and reflects certain spending under the current contract, it should not be treated as reflecting the full cost of representing a child's case. To inform ORR's periodic assessment of the labor and costs of direct representation, Acacia has developed two additional metrics. For the current reporting period (which comprises August 2025 through February 2026):

- Acacia-network LSPs have submitted invoices reflecting a program-level average of **3.0 hours billed per case each month.**
- Acacia has billed an average of **$309 per case each month**.

### Analysis and Results

Acacia compiled data from UCP financial recordkeeping systems, as well as program service data, for a baseline view into spending per case. We present this view in three different ways: cumulative spending per case, monthly billed hours per case, and monthly spending per case.

For these analyses, Acacia analyzed the amount billed for Acacia-network direct representation costs under CLIN 2 of the legal services contract. This includes staff hours and "Other Direct Costs" (ODCs) such as travel and litigation expenses, and it covers all case categories. As Acacia continues its ongoing, time-intensive data verification effort

---

[1] Analyses based on data from LSPs' invoices to Acacia are provided at a two-month lag.

with our subcontractor network, we anticipate this process will reveal updates to the spending data not captured by providers' initial data reporting but included in subsequent updates; future reporting will be revised accordingly.

It is important to note that the analyses presented in this memo do not allow for the drawing of general conclusions about the full cost of representation for a child's case. This is because they do not account for other costs, such as the time spent orienting children and providing legal screenings (which are funded separately under this contract but would be required in a representational relationship should such services not otherwise be provided), as well as such activities as data collection and reporting, or any program management costs for the work as a whole.

The analyses also do not include spending on mentorship provided by LSPs on cases represented on a *pro bono* basis by private firms and non-profit organizations under this contract. The measurement of effort and cost for *pro bono* cases is substantively different and largely unavailable to Acacia as compared to the staff hours and ODCs for cases billed directly to the contract, which are the focus here.

Cumulative Spending on Direct Representation under the Legal Services Contract

The *cumulative spending per case* metric is the program-level running cost of direct representation under the current legal services contract.[2] It is calculated by dividing the cumulative amount billed to the contract by the total number of cases represented under the contract to date, across all LSPs and representation case categories. The number of cases represented under the contract includes all cases open at any point during the contract, including those that have since been closed to the program.

---

[2] PWS, Objective IV(i)(4)(c).

Figure 1 presents this metric over time, following monthly reporting and invoicing cadences. The line in orange indicates the data presently available from the contract. As of the end of February 2026, Acacia has cumulatively billed $1,879 per direct representation case.

*Figure 1. Cumulative Direct Representation Spending per Case*



Source: Acacia analysis of LSP invoices and UCP program data

Cumulative direct representation spending per case will increase as the program evolves, reflecting the ongoing efforts of LSPs working on children's cases.

Because this metric only reports cumulative spending under the current legal services contract, it does not incorporate any costs occurring under prior contracts for cases that were initiated during prior contracts and continued into the current contract. It therefore should not be used to estimate the cost of direct representation for a child's case more generally.

Monthly Billed Hours per Case

This *monthly billed hours per case* metric reflects the program-level average of LSP hours billed per direct representation case under CLIN 2 funding. It is provided for each month of the current contract for which data is presently available. It is calculated as the number of direct representation billed hours in a given month divided by the total number of cases open at any point that month.[3] It includes both attorney and non-attorney time.

---

[3] PWS, Objective IV(i)(4)(b).

This non-cumulative, monthly metric offers a useful and granular view into the ongoing labor of direct representation. It can be paired with pay rates (which may vary by region or type of LSP) to estimate monthly direct representation costs at the program level. However, please note that cases vary in complexity and the effort required to provide direct representation; consequently, this number cannot predict time spent on individual cases.

Figure 2 presents this metric over time, following monthly reporting and invoicing cadences. LSPs spent an average of 3.0 hours providing direct representation per case per month. As indicated by the monthly averages (i.e., the solid orange line), this metric has remained stable and close to the contract average (i.e., the dashed black line) each month.

*Figure 2. Monthly Direct Representation Billed Hours per Case*



Source: Acacia analysis of LSP invoices and UCP program data

Monthly Direct Representation Spending per Case

This memo also presents a monthly view of the program-level average spending on direct representation. This *monthly direct representation spending per case* metric is provided for each month of the current contract for which data is presently available. It is calculated as the amount of direct representation spending in a given month divided by the total number of cases open at any point that month.

This non-cumulative, monthly metric offers another useful and granular view into the ongoing cost of direct representation. Specifically, knowing the average monthly cost of representing a single case makes it possible to estimate the average cost for direct representation of a completed case. The only additional variable that must be provided is

the number of months that an average case lasts. However, because cases vary in length and complexity, this method should only be used to produce program-level estimates of average case costs (i.e., for collections of cases like those represented through the current contract). Additionally, please keep in mind the broader activities that contribute to the full cost of a child's case (as explained at the beginning of the "Analysis and Results" memo section), which are not included in the staff hours and ODC billings incorporated here.

Figure 3 presents this metric over time, following monthly reporting and invoicing cadences. Acacia billed an average of $309 for direct representation costs per case per month. As indicated by the monthly averages (i.e., the solid orange line), this metric has remained stable and close to the contract average (i.e., the dashed black line) each month.

*Figure 3. Monthly Direct Representation Spending per Case*



Source: Acacia analysis of LSP invoices and UCP program data

**Conclusion**

Acacia continues to work to ensure that the data presented here can be reliably compiled and updated on a regular basis for monitoring as needed.

Moving forward, we expect the cumulative direct representation spending per case metric will continue to increase over the course of the contract and that its growth will vary based on the rate of case initiations. For the monthly metrics on hours and spending per case, levels are currently relatively stable. However, all these metrics may be impacted by other contributing factors related to network operations, immigration system variables and policies, and case activity.

EXHIBIT 4



**DEFENSE CONTRACT AUDIT AGENCY**
8725 JOHN J. KINGMAN ROAD, SUITE 2135  FT.
BELVOIR, VA  22060-6219

OIS 850.3                                                                                            June 15, 2026

MEMORANDUM FOR THE OFFICE OF REFUGEE RESETTLEMENT ADMINISTRATION
          FOR CHILDREN AND FAMILIES UNITED STATES DEPARTMENT OF
          HEALTH AND HUMAN SERVICES; SWITZER BUILDING 330 C. ST. SW,
          WASHINGTON, DC 20416

    ATTENTION: ANGIE SALAZAR, ACTING DIRECTOR/DEPUTY ASSISTANT
          SECRETARY

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
          MOA Agreement Number DCAA-0001-26
          DCAA Assignment No. 11201-20264990000288

        We received your request dated May 4, 2026, for forensic auditing and advisory services
for a thorough analysis of invoices related to costs associated with provision of services to
provide assistive legal services for Unaccompanied Alien Children (UAC) for the Administration
of Children and Families (ACF) Office of Refugee Resettlement (ORR) in accordance with the
Performance Work Statement, entitled "UAC Legal Services".

### DCAA Analysis of Prime Contactor's December 2025 CLIN 2 Invoice

        We performed a 100% review of the Other Direct Costs portion of the December 2025
CLIN 2 Prime Contractor Invoice and its substantiating documentation. However, this consisted
of $516,862.26 or 3.46% of the total $14,938,000.96 invoiced. DCAA could not effectively
review the documentation related to Labor which represented the remaining $14,421,138.70. The
review included an assessment of the allowability, allocability, reasonableness, and adequacy of
supporting documentation for all billed cost elements. The deficiencies of Labor's substantiating
documentation prevented our ability to verify those costs. In addition, calculations were
evaluated for mathematical accuracy and consistency with the amounts claimed on the invoice;
no determination of allowability was considered.

The cost elements on the invoice:

| Labor Category | UCP Total Current Period | % Per Cost Element |
|---|---|---|
| Case Stipends | $256,567.77 | 1.72% |
| Consultants | $20,831.83 | 0.14% |
| Database Licenses | $6,788.67 | 0.05% |
| Recruitment | $1,557.45 | 0.01% |
| Subcontractors | $217,239.06 | 1.45% |
| Travel | $13,877.48 | 0.09% |
| **Total Other Direct Cost** | **$516,862.26** | **3.46%** |
| Labor | $14,421,138.70 | 96.54% |
| **Grand Totals CLIN 2 UCP IPP Item  110** | **$14,938,000.96** | **100.00%** |

OIS 850.3                                                                June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
     MOA Agreement Number DCAA-0001-26
     DCAA Assignment No. 11201-20264990000288

**Cost Elements Analysis**

For each cost element, we performed both qualitative and quantitative procedures. Qualitative procedures assessed the adequacy and reliability of supporting documentation, while quantitative procedures evaluated the mathematical accuracy of billed amounts. The following sections describe the cost element review, the procedures performed, and the results of our analysis.

## Cost Element - Case Stipends

Case Stipends are money awarded or reimbursed for legal costs, attorney's fees, and expenses incurred in certain court cases. The documentation provided by the Prime's subcontractors are digital scans of Form I-797C, Notice of Action, Shipping receipts, invoices, and Form G-1450 to cite examples. Below is a summary of the quantity of forms we reviewed:

| December 2025 Case Stipends Documentation | |
| --- | --- |
| Form | No. of Forms |
| I-360 | 205 |
| I-765 | 197 |
| I-589 | 146 |
| G-1450 | 93 |
| G-28 | 23 |
| I-693 | 4 |
| I-821 | 2 |
| G-1055 | 1 |

The case stipend documentation was hard to calculate a total that matched the costs billed to the government. There is heavy redaction and this has made it difficult to evaluate the costs as allowable. Due to the extent of redactions and the inability to identify the individual or entity that performed the work, the documentation did not provide sufficient audit evidence to support the costs claimed.

Case Stipends consisted of $256,567.77, or 1.72%, of the total $14,938,000.96 invoiced for December 2025.

The audit team reviewed 1,255 supporting documents associated with 66 Legal Service Providers (LSPs) included in the December 2025 Case Stipends population. Review procedures included reconciling claimed amounts to supporting documentation, evaluating the sufficiency of documentation provided, identifying duplicate or unsupported charges, assessing the consistency of claimed amounts with supporting records, and evaluating whether documentation was

2

OIS 850.3                                                                    June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
          MOA Agreement Number DCAA-0001-26
          DCAA Assignment No. 11201-20264990000288

sufficient to substantiate costs billed under CLIN 2. 60 LSP's documents reconciled and 6 do not.

During the review, the team identified recurring issues including:
1. Insufficient supporting documentation;
2. Apparent duplicate documentation;
3. Unsupported adjustments to claimed amounts;
4. Missing receipts and invoices;
5. Lack of detailed explanations supporting charges;
6. Absence of sufficient identifying information to verify services were provided to eligible UACs; and
7. Inconsistencies between claimed amounts and supporting documentation.

While certain providers submitted documentation that mathematically reconciled to amounts reported on the December 2025 summary, mathematical reconciliation alone does not establish that costs are allowable, allocable, reasonable, or adequately supported.

Based on the results of our review, the team proposed adjustments where appropriate and identified costs requiring additional support or clarification before allowability could be determined.

**2025.12 Case Stipends Part 1**

████ Supporting documentation for ████ totals $4,600, which reconciled to the amount reported on the "Summary - 2025.12 Case Stipends" document.

The documentation supporting the $4,600 consisted of I-765 Application for Employment Authorization, UPS receipts, Form G-1450 Authorization for Credit Card Transactions, Form I-797C, Notice of Action, I-589 Application for Asylum and for Withholding of Removal.

For all the forms provided the 'USCIS Alien Number' was either blank or fully or partially redacted, redactor is unknown. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted. Receipts were provided with no reference information as to the UAC that received services. According to FAR 31.205-33(f) Fees for services rendered are allowable only when supported by evidence of the nature and scope of the service furnished. There should be a complete or itemized listing of what was done and justification to claim against CLIN 2.

As a result, the costs cannot be verified as allowable per FAR 31.201-2, Determining allowability because we are not able to trace the supporting documents to a qualified UAC. ████████████████████████████, all made highlights on this 26-page document. Additionally, this document was heavily redacted. The details are necessary to validate ████ December 2025 CLIN 2 claimed costs.

3

OIS 850.3                                                                                     June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
            MOA Agreement Number DCAA-0001-26
            DCAA Assignment No. 11201-20264990000288

████ Supporting documentation for █████ $3,768.50 which reconciled to the amount reported on the "Summary - 2025.12 Case Stipends" document.

The documentation supporting $3,768.50 consisted of I-589 Application for Asylum and Withholding of Removal, ██████████████ Invoice, I-765 Application for Employment Authorization, USPS shipping receipt, G-1450 Authorization for Credit Card Transactions.

For all the forms provided the 'USCIS Alien Number was either blank or fully or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted. Receipts were provided with no reference information as to the UAC that received services. ████████████████ submitted an invoice for attorney fees, court costs and publication fee; however, there are not sufficient details to determine what the services provided consist of, why they were necessary, and the qualified UAC the report supported. According to FAR 31.205-33(f)  Fees for services rendered are allowable only when supported by evidence of the nature and scope of the service furnished. There should be a complete or itemized listing of what was done and justification to claim against CLIN 2.

As a result, the costs cannot be verified as allowable per FAR 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. ████ ██████████████████████████████████████, all made highlights to this 18-page document. The documents were heavily redacted, and the details are necessary to validate █████ December 2025 CLIN 2 claimed costs.

████ Supporting documentation for ████ totals $4,101.53, compared to the amount of $4,092.43 listed on the 'Summary - 2025.12 Case Stipends' document.

The documentation supporting $4,101.53 consisted of I-765 Application for Employment Authorization, G-1450 Authorization for Credit Card Transactions, State of ████████ E-filing, G-1650 Authorization for ACH Transactions, ██████████████████ Probate court, I-797C Notice of Action, I-360 Petition for Amerasian, Widow(er) or Special Immigrant, ████████████ ██████████████████, G-28 Notice of Entry of Appearance as Attorney or Accredited Representative.

For all the G-28 forms and I797C forms provided the 'USCIS Alien Number was either blank or fully or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted. Receipts were provided with no reference information as to the UAC that received services. There is a ████████████████ court filing fee receipt, and a USPS priority shipping receipt; however, there are not sufficient details to determine what the services provided consist of, why they were necessary, and the qualified UAC the report supported. According to FAR 31.205-33(f)  Fees for services rendered are allowable only when supported by evidence of the nature and scope of the service furnished. There should be a complete or itemized listing of what was done and justification to claim against CLIN 2.

4

CUI

OIS 850.3                                                                                      June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
          MOA Agreement Number DCAA-0001-26
          DCAA Assignment No. 11201-20264990000288

As a result, the costs cannot be verified as allowable per 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. The 61-page document was heavily redacted as well as highlighted by an unknown source. The details are necessary to validate ▮▮▮ December 2025 CLIN 2 claimed costs.

▮▮▮▮▮▮▮ Supporting documentation for ▮▮▮▮▮▮ totals $4,600 which reconciled to the amount reported on the "Summary - 2025.12 Case Stipends" document.

The documentation supporting $4,600 consisted of I-797C I-765 Application for Employment Authorization, and I-360 Petition for Amerasian Widow(er) or Special Immigrant.

For all the I-797C forms provided the 'USCIS Alien Number' was either blank or fully or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted. Receipts were provided with no reference information as to the UAC that received services.

As a result, the costs cannot be verified as allowable per FAR 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. The 10-page document was heavily redacted making it difficult to identify the details necessary to validate ▮▮▮▮▮ December 2025 CLIN 2 claimed costs.

▮▮▮▮▮ Supporting documentation for ▮▮▮ totals $1,050 which reconciled to the amount reported on the "Summary - 2025.12 Case Stipends" document.

The documentation supporting $1,050 consisted of Form I-797C I-589 Application for Asylum and for Withholding of Removal and Form I-797C I-765 Application for Employment Authorization.

For all the I-797C forms provided the 'USCIS Alien Number' was either blank or fully or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted.

As a result, the costs cannot be verified as allowable per FAR 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. The 6-page document was heavily redacted as well as highlighted; these details are necessary to validate ▮▮▮ December 2025 CLIN 2 claimed costs.

▮▮▮▮ Supporting documentation for ▮▮▮ totals $5,593 compared to $5,467 the amount listed on the 'Summary - 2025.12 Case Stipends' document.

The documentation supporting $5,593 consisted of ▮▮▮▮▮▮ Invoice, Form I797 I-360 Petition for Amerasian Widow(er) or Special Immigrant, Form I-797C I-589

5

OIS 850.3                                                    June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
          MOA Agreement Number DCAA-0001-26
          DCAA Assignment No. 11201-20264990000288

Application for Asylum and for Withholding of Removal, USPS shipping receipt, G-1450
Authorization for Credit Card Transactions, ███████████████████████████████████
Criminal Information and Identification Section form with a  copy of a money order, email
identifying payment verification from FBI, and UPS store receipts.

     For all of the I-797C forms provided the 'USCIS Alien Number was either blank or fully
or partially redacted. Also, other pertinent UAC information, such as name, date of birth or
country of origin, was redacted. Receipts were provided with no reference information as to the
UAC that received services. ████████████████ submitted an invoice; however, there are not
sufficient details to determine what the services provided consist of, why they were necessary,
and the qualified UAC the report supported. According to FAR 31.205-33(f)  Fees for services
rendered are allowable only when supported by evidence of the nature and scope of the service
furnished. There should be a complete or itemized listing of what was done and justification to
claim against CLIN 2. Pursuant to FAR 52.216-7, Allowable Cost and Payment, the Government
is only obligated to reimburse costs that are allowable under FAR Subpart 31.2 and the specific
terms of this contract. Because a portion of the services on the ███████████████ Invoice, listed
under the notes section with a date of November 12, 2025, they violated the contract's authorized
Period of Performance, making the associated costs for November unallowable for payment.

     As a result, the remaining costs cannot be verified as allowable per FAR 31.201-2
Determining allowability because we are not able to trace the supporting documents to a
qualified UAC. All the documentation is heavily redacted as well as highlighted by Linda
Ebueku. The details are necessary to validate ███████ December 2025 CLIN 2 claimed costs.

     ███████ Supporting documentation for ███████ $5,483 totals which reconciled to the
amount reported on the "Summary - 2025.12 Case Stipends" document.

     The documentation supporting $5,483 consisted of Form I-797C I-765 Application for
Employment Authorization, Form I-797C I-360 Petition for Amerasian Widower or Special
Immigrant, FBI email- identification request, Form G-1450 Authorization for Credit
Transactions, Court receipt, FedEx shipping labels, █████████████████ invoice, and ███████
███████ Invoice.

     For all the I-797C forms provided the 'USCIS Alien Number' was either blank or fully or
partially redacted. Also, other pertinent UAC information, such as name, date of birth or country
of origin, was redacted. Receipts were provided with no reference information as to the UAC
that received services. ████████████████████ submitted an invoice for trial prep and trial
standby, and █████████████ submitted an invoice for Expert Witness Work ████████████████
███████, there are not sufficient details to determine what the services provided consist of, why
they were necessary, and the qualified UAC the report supported. According to FAR 31.205-
33(f)  Fees for services rendered are allowable only when supported by evidence of the nature
and scope of the service furnished. There should be a complete or itemized listing of what was
done and justification to claim against CLIN 2.

6

CUI

OIS 850.3                                                                    June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
          MOA Agreement Number DCAA-0001-26
          DCAA Assignment No. 11201-20264990000288

As a result, the costs cannot be verified as allowable per FAR 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. ▮▮▮▮▮▮▮▮▮▮▮▮ both made significant highlights on these documents. Additionally, the documents are heavily redacted, and the details are necessary to validate ▮▮▮▮ December 2025 CLIN 2 claimed costs.

▮▮▮▮▮ Supporting documentation for ▮▮▮▮ totals $5,699.18 which reconciled to the amount reported on the "Summary - 2025.12 Case Stipends" document.

The documentation supporting $5,699.18 consists of ▮▮▮▮▮▮ invoice, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ invoice, ▮▮▮▮▮▮▮▮▮▮ Invoice, Daycare Translations, Criminal History Conviction Name Search receipt, DOJ Payment receipt, ▮▮▮▮▮ handwritten receipt and credit card payment receipt, ▮▮▮▮▮▮▮▮ , I-360 Petition for Amerasian, Widow(er) or Special Immigrant, emails from ▮▮▮▮▮ and a payment receipt stating the amount due, email ▮▮▮ receipt for order, I-797C I765 Application for employment authorization, ▮▮▮ medical report for USCIS Form I-693 Immigration Medical Examination.

For all of the I-797C forms provided the 'USCIS Alien Number was either blank or fully or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted. Receipts were provided with no reference information as to the UAC that received services.

The following invoices were submitted for Spanish interpretation, ▮▮▮▮▮▮▮ - description Spanish to English Interpretation for $500, ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ - description Spanish interpretation for $286.89, and ▮▮▮▮▮▮ invoice- description Spanish to English translation for $30. These costs total $816.89 and are for services that belong under CLIN 4: Spanish Language Support and Technical Assistance Training (FFP) which covers Spanish language support & technical assistance training. 1. Provide Interpretation (in-person and remote) and translation services in Spanish for children in and released from ORR custody, not billed under CLIN 2: Representation, Other Legal Assistance, Data Collection & Analysis, and Services at Emergency Facilities (T&M). Therefore, those costs are unallowable per FAR 31.201-2, Determining Allowability. The remaining documents do not provide sufficient details to determine what the services provided consist of, why they were necessary, and the qualified UAC the report supported. According to FAR 31.205-33(f) Fees for services rendered are allowable only when supported by evidence of the nature and scope of the service furnished. There should be a complete or itemized listing of what was done and justification to claim against CLIN 2.

As a result, the costs cannot be verified as allowable per 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. The

7

CUI

OIS 850.3                                                                    June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
          MOA Agreement Number DCAA-0001-26
          DCAA Assignment No. 11201-20264990000288

documents are heavily redacted, making it difficult to validate ▆▆▆▆▆ December 2025 CLIN 2 claimed costs. Additionally, ▆▆▆▆▆▆▆ made highlights throughout the document.

▆▆▆▆▆▆▆▆▆▆▆ Supporting documentation for ▆▆▆▆▆▆▆▆▆ totals $1,050.00, which is equal to the amount listed on the 'Summary - 20025.12 Case Stipends' document.

The documentation supporting $1,050.00 consisted of I-797C I-765 Application for Employment Authorization and I-797C I-360, Petion for Amerasian, Widow(er) or Special Immigrant (Special Immigrant Juvenile).

For all the I-797C forms provided the USCIS Alien Number was either blank or fully or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted.

As a result, the costs cannot be verified as allowable per 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. An unknown redactor heavily redacted the documents, and the details are necessary to validate ▆▆▆▆▆▆▆▆ December 2025 CLIN 2 claimed costs. ▆▆▆▆▆▆ made highlights throughout the documents.

▆▆▆▆▆ Supporting documentation for ▆▆▆▆ totals $3,868.00, which is equal to the amount listed on the 'Summary - 20025.12 Case Stipends' document.

The documentation supporting $3,868.00 consisted of I-797C I-589 Application for Asylum and for Withholding of Removal, Receipt printed from www.pay.gov/tcsonline/payment.do?execution=e1s3 ,Email from Criminal Justice Info Service, I-797C I-765 Application for Employment Authorization, I-797C I- 360 Petition for Amerasian, Widow(er) or Special Immigrant (Special Immigrant Juvenile).

For all the I-797C forms provided the USCIS Alien Number was either blank or fully or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted. Receipts provided noting "Identity History Summary Request" with no reference information as to the UAC that the history summary request is for. There are not sufficient details to determine why this was necessary, and the qualified UAC the report supported.

As a result, the remaining costs cannot be verified as allowable per 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. An unknown redactor heavily redacted the documents, and the details necessary to validate

CUI

OIS 850.3                                                                    June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
          MOA Agreement Number DCAA-0001-26
          DCAA Assignment No. 11201-20264990000288

███████ December 2025 CLIN 2 claimed costs. ████████ made highlights throughout the documents.

████████ Supporting documentation for ████████ totals $2,430.69, which is equal to the amount listed on the 'Summary - 20025.12 Case Stipends' document.

The documentation supporting $2,430.69 consisted of I-797C I-765 Application for Employment Authorization, I-797C I-360, Petion for Amerasian, Widow(er) or Special Immigrant (Special Immigrant Juvenile), Court I-797C I-589, Application for Asylum (Initial Fee) Payment Receipt, Email Receipt from Customer Service at ████, Form G-1055 Edition 12/16/25, ████ Shipping Label, Attorney Letter to USCIS for I-797C I-360 Petition for Special Immigrant Juvenile Status, G-1450 Authorization for Credit Card Transactions, G-28 Notice of Entry of Appearance as Attorney or Accredited Representative.

For all the I-797C forms provided the USCIS Alien Number was either blank or fully or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted. Receipts provided noting "Criminal Background Check" with no reference information as to the UAC that the background check is for. There are not sufficient details to determine why this was necessary, and the qualified UAC the report supported.

As a result, the remaining costs are not able to be verified as allowable per 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. An unknown redactor heavily redacted the documents, and the details necessary to validate ████████ December 2025 CLIN 2 claimed costs.

████████ Supporting documentation for ██████ totals $500.00, which is equal to the amount listed on the 'Summary - 20025.12 Case Stipends' document.

The documentation supporting $500.00 consisted of I-797C I-360 Petition for Amerasian, Widow(er) or Special Immigrant (Special Immigrant Juvenile).

For all the I-797C forms provided the USCIS Alien Number was either blank or fully or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted. One of the I-360 documents submitted was a photocopy and not a scanned document and should not be accepted as an "original" for invoice payment.

As a result, the remaining costs cannot be verified as allowable per 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. An unknown redactor heavily redacted the documents, and the details necessary to validate ████████ December 2025 CLIN 2 claimed costs. ████████ made highlights throughout the documents.

9

CUI

OIS 850.3                                                                                          June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
            MOA Agreement Number DCAA-0001-26
            DCAA Assignment No. 11201-20264990000288

█████  Supporting documentation for █████ totals $1,000.00, which is equal to the amount listed on the 'Summary - 20025.12 Case Stipends' document.

The documentation supporting $1,000.00 consisted of I-797C I-360, Petion for Amerasian, Widow(er) or Special Immigrant (Special Immigrant Juvenile).

For all the I-797C forms provided the USCIS Alien Number was either blank or fully or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted.

As a result, the costs cannot be verified as allowable per 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. An unknown redactor heavily redacted the documents, and the details necessary to validate █████ December 2025 CLIN 2 claimed costs. ████████████ made highlights throughout the documents.

████████  Supporting documentation for ████████ totals $3,155.00, which is equal to the amount listed on the 'Summary - 20025.12 Case Stipends' document.

The documentation supporting $3,155.00 consisted of Invoice to ████████████████ ████████████████, Receipt from the ████████████, Screen shot of ████████████ ████████████████ Request for Records, Court-Motion to Reopen/ Reconsider Before the IJ Receipt, I-797C I-360, Petion for Amerasian, Widow(er) or Special Immigrant (Special Immigrant Juvenile), I-765 Application for Employment Authorization.

For all the I-797C forms provided the USCIS Alien Number was either blank or fully or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted.

Receipts were provided with no reference information as to the UAC that received services. ████████████████ provided a rush ████████████████ of Asylum Seeker report that cost $1,300; while it lists the services provided there are not sufficient details to determine why this was necessary, and the qualified UAC the report supported and it notes a contract period of November 24, 2025 – December 20, 2015.  This should have been corrected before payment for adequate record keeping.

According to FAR 31.205-33(f) Fees for services rendered are allowable only when supported by evidence of the nature and scope of the service furnished.

As a result, the remaining costs cannot be verified as allowable per 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. An unknown redactor heavily redacted the documents, and the details necessary to validate CCS

10

CUI

OIS 850.3                                                                                                June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
        MOA Agreement Number DCAA-0001-26
        DCAA Assignment No. 11201-20264990000288

████ December 2025 CLIN 2 claimed costs. ████████ made highlights throughout the documents.

████ Supporting documentation for ████ totals $646.18, which is equal to the amount listed on the 'Summary - 20025.12 Case Stipends' document.

The documentation supporting $646.18 consisted of Receipt from ██████████████, Receipt from ████████████████████████████, Filing Submission Receipt, DHHS Central Registry - Payment Receipt, Criminal History Record Check Receipt - ██████████ ████████, Payment History from ████████████████████████████.

Receipts were provided with no reference information as to the UAC that received services. ████████████████████████████ provided a payment history report with a payment amount of $447.00 and ████████████████████████████ provided an order summary in the amount of $55.00; however, there are not sufficient details to determine what the services provided consist of, why they were necessary, and the qualified UAC the report/ class supported.

According to FAR 31.205-33(f) Fees for services rendered are allowable only when supported by evidence of the nature and scope of the service furnished. There should be a complete or itemized listing of what was done and justification to claim against CLIN 2.

As a result, the remaining costs cannot be verified as allowable per 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. An unknown redactor heavily redacted the documents, and the details necessary to validate ████ December 2025 CLIN 2 claimed costs. ████████ made highlights throughout the documents.

████ Supporting documentation for ████ totals $100.00, which is equal to the amount listed on the 'Summary - 20025.12 Case Stipends' document.

The documentation supporting $100.00 consisted of I-797C I-589 Application for Asylum and for Withholding of Removal, G-1450 Authorization for Credit Card Transactions, G-28 Notice of Entry of Appearance as Attorney or Accredited Representative, ██████████ Shipping label.

For the I-797C form provided the USCIS Alien Number was either blank or fully or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted.

As a result, the costs cannot be verified as allowable per 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. An

CUI

OIS 850.3                                                                                    June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
         MOA Agreement Number DCAA-0001-26
         DCAA Assignment No. 11201-20264990000288

unknown redactor heavily redacted the documents, and the details necessary to validate ▮▮▮▮
December 2025 CLIN 2 claimed costs. ▮▮▮▮▮▮▮ made highlights throughout the documents.

    ▮▮▮ Supporting documentation for ▮▮ totals $2,500.00, which is equal to the amount
listed on the 'Summary - 20025.12 Case Stipends' document.

    The documentation supporting $2,500.00 consisted of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
Invoice/ Billed to ▮▮▮▮▮▮▮▮▮▮, ▮▮▮▮▮▮▮ Payment Receipt to ▮▮▮▮▮
▮▮▮▮.

    Receipts were provided with no reference information as to the UAC that received
services. ▮▮▮▮▮▮▮▮▮. provided an invoice in the amount of $2,500.00; however,
there are not sufficient details to determine what the services provided consist of, why they were
necessary, and the qualified UAC the report supported.

    According to FAR 31.205-33(f) Fees for services rendered are allowable only when
supported by evidence of the nature and scope of the service furnished. The costs cannot be
verified as allowable per 31.201-2 Determining allowability because we are not able to trace the
supporting documents to a qualified UAC. An unknown redactor heavily redacted the
documents, and the details necessary to validate ▮▮▮ December 2025 CLIN 2 claimed costs.

    ▮▮▮▮▮ Supporting documentation for ▮▮▮▮▮ totals $2,232.00, which is
equal to the amount listed on the 'Summary - 20025.12 Case Stipends' document.

    The documentation supporting $2,232.00 consisted of I-797C I-360, Petition for
Amerasian, Widow(er) or Special Immigrant (Special Immigrant Juvenile), I-797C I-765
Application for Employment Authorization, Receipt from ▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮, I-797C I-589 Application for Asylum and Withholding of Removal.

    For all the I-797C forms provided the USCIS Alien Number was either blank or fully or
partially redacted. Also, other pertinent UAC information, such as name, date of birth or country
of origin, was redacted. Receipts were provided with no reference information as to the UAC
that received services.

    ▮▮▮▮▮ provided a receipt from the comptroller of ▮▮▮▮▮▮▮; however,
there are not sufficient details to determine what the services provided consist of, why they were
necessary, and the qualified UAC the receipt supported.

    According to FAR 31.205-33(f) Fees for services rendered are allowable only when
supported by evidence of the nature and scope of the service furnished. The remaining costs
cannot be verified as allowable per 31.201-2 Determining allowability because we are not able to
trace the supporting documents to a qualified UAC. An unknown redactor heavily redacted the

12

CUI

OIS 850.3                                                                                                          June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
          MOA Agreement Number DCAA-0001-26
          DCAA Assignment No. 11201-20264990000288

documents, and the details necessary to validate ████████ December 2025 CLIN 2 claimed costs. ████████████ made highlights throughout the documents.

███████ Supporting documentation for ██████ totals $1,100.00, which is equal to the amount listed on the 'Summary - 20025.12 Case Stipends' document.

The documentation supporting $1,100.00 consisted of I-797C I-765 Application for Employment Authorization, ██████████████████████ Receipt, ████████████████████ in ████████████: Application for Initial Employment Authorization Based on (C)(8) Category, G-28 Notice of Entry of Appearance as Attorney or Accredited Representative.

For all the I-797C forms provided the USCIS Alien Number was either blank or fully or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted.

Furthermore, we identified in our analyzing from https://www.uscis.gov/g-1055 that form G-1450 does not have a filing fee. It is a payment authorization form that allows USCIS to charge a credit card or debit card for the filing fee associated with another immigration form.

As a result, the remaining costs cannot be verified as allowable per 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. An unknown redactor heavily redacted the documents, and the details necessary to validate ████████ December 2025 CLIN 2 claimed costs. ████████████ made highlights throughout the documents.

**2025.12 Case Stipends Part 2**

███████ Supporting documentation for ██████ was provided in two separate files, Part 1 and Part2. Part 1 totaled $8,276.37 and Part 2 totaled $13,398.46, for a combined total of $21,674.83, which reconciled to the amount reported on the "Summary - 20025.12 Case Stipends" document.

The supporting documentation included passport photo receipts, e-file fees, FBI background checks, ██████ Passport Photo charges, fingerprint cards, Form I-797C I-360 Petition for Amerasian Widow(er) or Special Immigrant, Form I-797C I-589 Application for Asylum and for Withholding of Removal, Form I-797C I-765 Application for Employment Authorization, and ██████████ Passport Photo receipts.

For all I-797C forms provided, the 'USCIS Alien Number was either blank or fully or partially redacted. Iin addition, other pertinent UAC identifying information, including name,

13

OIS 850.3                                                                June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
          MOA Agreement Number DCAA-0001-26
          DCAA Assignment No. 11201-20264990000288

date of birth, and country of origin, was redacted by ████████████. The receipts provided contained no reference information linking the services to a specific UAC.

Documentation also included a country conditions report prepared by ████████████ ████████████, totaling $1,500. However, the documentation did not contain sufficient detail to determine the qualified UAC supported by the report. Pursuant to FAR 31.205-33(f), fees for services rendered are allowable only when supported by evidence of the nature and scope of the service furnished. An itemized description of the work performed and justification for charging the costs to CLIN 2 should be provided.

As a result, the remaining costs could not be verified as allowable under FAR 31.201-2 because the supporting documentation could not be traced to a qualified UAC.

████ Supporting documentation for the invoices submitted totals $4,500.00 which is equal to the amount on the 'Summary-2025.12 Case Stipends' document.

The documentation supporting $4,500.00 consisted of form I-797C I-765, Application for Employment Authorization, Form I-797C I-589 Application for Asylum, and Withholding of Removal and I-797C I-360, Petition for Amerasian, Widower or Special Immigrant.

For all the I-797C forms provided the 'USCIS Alien Number' was either blank or fully or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted. Receipts were provided with no reference information as to the UAC that received services.  These costs cannot be verified as allowable per 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. ████ heavily redacted the documents, and the details are necessary to validate ████ December 2025 CLIN 2 claimed costs.

████ Supporting documentation for the invoices submitted totals $2,700.00 which is equal to the amount on the 'Summary-2025.12 Case Stipends' document.

The documentation supporting $2,700.00 consisted of form I-797C I-765, Application for Employment Authorization, I-797C I-589 Application for Asylum Withholding of Removal and I-797C I-360, Petition for Amerasian, Widower or Special Immigrant.

For all the I-797C forms provided the 'USCIS Alien Number' was either blank or fully or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted. Receipts were provided with no reference information as to the UAC that received services.  These costs cannot be verified as allowable per 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC.

████ Supporting documentation for the invoices submitted totals $657.34 which is equal to the amount on the 'Summary-2025.12 Case Stipends' document.

14

CUI

OIS 850.3                                                                                      June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
              MOA Agreement Number DCAA-0001-26
              DCAA Assignment No. 11201-20264990000288



The documentation supporting $657.34 consisted of an ████████████████ ████████████████, an Invoice for ████████████████ and two Filings for Juvenile Immigration Case-Miscellaneous Petition.

There are not sufficient details to determine what the services provided consist of, why they were necessary, and the qualified UAC the report supported. According to FAR 31.205-33(f) Fees for services rendered are allowable only when supported by evidence of the nature and scope of the service furnished. There should be a complete or itemized listing of what was done and justification to claim against CLIN 2. ████████████ heavily redacted the documents, and the details are necessary to validate ████ December 2025 CLIN 2 claimed costs.

████  Supporting documentation for the invoices submitted totals $800.00 which is equal to the amount on the 'Summary-2025.12 Case Stipends' document.

The documentation supporting $800.00 consisted of I-797C I-589 Application for Asylum and I-797C I-360, Petition for Amerasian, Widower or Special Immigrant.

For all the I-797C forms provided the 'USCIS Alien Number' was either blank or fully or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted. Receipts were provided with no reference information as to the UAC that received services.  These costs cannot be verified as allowable per 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. ████████ heavily redacted the documents, and the details are necessary to validate ██ December 2025 CLIN 2 claimed costs.

████████  Supporting documentation for the invoices submitted totals $380.63 which is equal to the amount on the 'Summary-2025.12 Case Stipends' document.

The documentation supporting $380.63 consisted of two invoices from ████████████████. The first invoice amounts to $302.52 for Custody Petition ████████████, ████████████████, I-589 Application for Asylum, ████████, I-765 Application for Work Authorization, I-360 SIJS (UCP)and the second invoice is for $78.11 pertaining to a Custody Petition ████████████ (UCP Case). The description for each invoice is for Service and Notes are Publication. However, there is not sufficient details to determine what the services provided consist of, why they were necessary, and the qualified UAC the report supported. According to FAR 31.205-33(f) Fees for services rendered are allowable only when supported by evidence of the nature and scope of the service furnished. There should be a complete or itemized listing of what was done and justification to claim against CLIN 2. The invoices do not specify the nature of legal services provided. Therefore, allowability of cost cannot be verified.

CUI

OIS 850.3                                                                                                      June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
             MOA Agreement Number DCAA-0001-26
             DCAA Assignment No. 11201-20264990000288

███████    Supporting documentation for the invoices submitted totals $1,800.00 which is equal to the amount on the 'Summary-2025.12 Case Stipends' document.

The documentation supporting $1,800.00 consisted of Form I-797C I-765, Application for Employment Authorization, and I-797 I-360, Petition for Amerasian, Widower or Special Immigrant.  For all the I-797C forms provided the 'USCIS Alien Number' was either blank or fully or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted. These costs cannot be verified as allowable per 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. ███████████ heavily redacted the documents, and the details are necessary to validate █████ December 2025 CLIN 2 claimed costs.

███████    Supporting documentation for the invoices submitted totals $305.20 which is equal to the amount on the 'Summary-2025.12 Case Stipends' document.

The documentation supporting $305.20 consisted of an invoice from ██████████████████. The invoice lists law office hours and administrative fees. However, there is not sufficient details to determine what the services provided consist of, why they were necessary, and the qualified UAC the invoice supported. According to FAR 31.205-33(f), Fees for services rendered are allowable only when supported by evidence of the nature and scope of the service furnished. There should be a complete or itemized listing of what was done and justification to claim against CLIN 2.

███████    Supporting documentation for the invoices submitted totals $750.00 which is equal to the amount on the 'Summary-2025.12 Case Stipends' document.

The documentation supporting $750.00 consisted of a letter written from ██████ to USCIS in ██████████. The forms provided the 'USCIS Alien Number was either blank or fully or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted. The costs cannot be verified as allowable per 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. ███████████ heavily redacted the documents, and the details are necessary to validate ██████ December 2025 CIN 2 claimed costs.

███████    Supporting documentation for the invoices submitted totals $12,541.03 which is equal to the amount on the 'Summary-2025.12 Case Stipends' document.

The documentation supporting $12,541.03 consisted of Payment Receipt from US DOJ for Immigration Review and filing of I-589, Invoice from ██████████████████████ and ██████████████████████, Invoice from ██████████ for ENG<>SPA Interpreting Services, Invoice from ██████████████ for 'Report on Risks in ██████████████, especially ██████████████, I-797C  I-765, Application for Employment Authorization, Form I-

16

CUI

OIS 850.3                                                          June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
             MOA Agreement Number DCAA-0001-26
             DCAA Assignment No. 11201-20264990000288

797C I-589 Application for Asylum and or Withholding of Removal and I-797C I-360, Petition for Amerasian, Widower or Special Immigrant.

For all of the forms provided the 'USCIS Alien Number was either blank or fully or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted. Receipts were provided with no reference information as to the UAC that received services. FAR 31.205-33(f) Fees for services rendered are allowable only when supported by evidence of the nature and scope of the service furnished. There should be a complete or itemized listing of what was done and justification to claim against CLIN 2.

The remaining costs cannot be verified as allowable per 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. ▮▮▮▮▮▮▮ heavily redacted the documents, and the details are necessary to validate ▮ December 2025 CIN 2 claimed costs.

▮▮▮▮ Supporting documentation for the invoices submitted totals $2,650.00 which is equal to the amount on the 'Summary-2025.12 Case Stipends' document.

The documentation supporting $2,650.00 consisted of Form I-797C I-360 Petition for Amerasian Widower or Special Immigrant, Form I-797C I-589 Application for Asylum and for Withholding of Removal and Form I-797C I-765 Application for Employment Authorization. For all forms provided the 'USCIS Alien Number was either blank or fully or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted. Costs cannot be verified as allowable per 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. ▮▮▮▮▮▮ heavily redacted the documents, and the details are necessary to validate ▮▮▮ December 2025 CLIN 2 claimed costs.

▮▮ Supporting documentation for the invoices submitted totals $1,350.00 which is equal to the amount on the 'Summary-2025.12 Case Stipends' document.

The documentation supporting $1,350.00 consisted of Form I-797C I-360 Petition for Amerasian Widower or Special Immigrant and Form I-797C I-765 Application for Employment Authorization. For all the forms provided the 'USCIS Alien Number was either blank or fully or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted. Costs cannot be verified as allowable per 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. ▮▮▮▮▮▮ heavily redacted the documents, and the details are necessary to validate ▮▮ December 2025 CLIN 2 claimed costs.

▮▮▮ Supporting documentation for the invoices submitted totals $6,314.92 which is equal to the amount on the 'Summary-2025.12 Case Stipends' document.

17

CUI

OIS 850.3                                                                June 15, 2026

SUBJECT: Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
MOA Agreement Number DCAA-0001-26
DCAA Assignment No. 11201-20264990000288

The documentation supporting $6,314.92 consisted of payment receipt for US DOJ Immigration Review, letter to ▮▮▮▮▮▮▮▮ requesting copies of UAC traffic charges, Petition for Declaratory Judgment and Findings, Purchase of Court Certified Copy of ▮▮▮▮ ▮▮▮▮▮▮▮▮, payment receipt for Court – Motion to Reopen/Reconsider Before the IJ, USCIS I-765 PDF Upload,  Form I-797C I-360 Petition for Amerasian Widower or Special Immigrant, Form I-797C I-589 Application for Asylum and for Withholding of Removal and Form I-797C I-765 Application for Employment Authorization. Receipts were provided with no reference information as to the UAC that received services. Costs cannot be verified as allowable per 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. ▮▮▮▮▮ heavily redacted the documents, and the details are necessary to validate ▮▮▮▮ December 2025 CLIN 2 claimed costs.

▮▮▮▮ Supporting documentation for the invoices submitted totals $3,870.50 which is equal to the amount on the 'Summary-2025.12 Case Stipends' document.

The documentation supporting $3,878.50 consisted of Form I-797C I-589 Application for Asylum and for Withholding of Removal and three invoices from ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮. However, there are not sufficient details to determine what the services provided consist of, why they were necessary, and the qualified UAC the report supported. According to FAR 31.205-33(f) Fees for services rendered are allowable only when supported by evidence of the nature and scope of the service furnished. There should be a complete or itemized listing of what was done and justification to claim against CLIN 2.

The remaining costs cannot be verified as allowable per 31.201-2 Determining ▮▮▮▮ allowability because we are not able to trace the supporting documents to a qualified UAC. ▮▮▮▮ heavily redacted the documents, and the details are necessary to validate ▮▮▮▮ December 2025 CLIN 2 claimed costs.

▮▮ Supporting documentation for the invoices submitted totals $3,997.38 which is equal to the amount on the 'Summary-2025.12 Case Stipends' document.

The documentation supporting $3,997.38 consisted of Form I-797C I-589 Application for Asylum and for Withholding of Removal, Form I-797C I-360 Petition for Amerasian Widower and Special Immigrant, Invoice from ▮▮▮▮▮▮ for Law Office Hours and Fees, ▮▮▮▮▮▮ receipt for photofinishing, ▮▮▮▮▮▮ receipt for passport photos and invoice from ▮▮▮▮▮▮▮ for In-person interpretation ▮▮▮▮▮. Receipts were provided with no reference information as to the UAC that received services. There are not sufficient details to determine what the services provided consist of, why they were necessary, and the qualified UAC the report supported. According to FAR 31.205-33(f) Fees for services rendered are allowable only when supported by evidence of the nature and scope of the service furnished. There should be a complete or itemized listing of what was done and justification to claim against CLIN 2.

CUI

OIS 850.3                                                                                                              June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
             MOA Agreement Number DCAA-0001-26
             DCAA Assignment No. 11201-20264990000288

 The remaining costs cannot be verified as allowable per 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. ▮▮▮▮▮▮▮▮ heavily redacted the documents, and the details are necessary to validate ▮ December 2025 CLIN 2 claimed costs.

**2025.12 Case Stipends Part 3**

 ▮▮▮: Supporting documentation for the invoices submitted totals $450.00 which is equal to the amount on the 'Summary-2025.12 Case Stipends' document.

 The documentation supporting $450.00 consisted of Form I-797C I-589 Application for Asylum and for Withholding of Removal and Form I-797C I-360 Petition for Amerasian Widower or Special Immigrant. Costs cannot be verified as allowable per 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. ▮▮▮▮▮▮▮ heavily redacted the documents, and the details are necessary to validate ▮▮ December 2025 CLIN 2 claimed costs. ▮▮▮▮▮▮ heavily redacted the documents, and the details are necessary to validate ▮▮ December 2025 CLIN 2 claimed costs.

 ▮▮: Supporting documentation for the invoices submitted totals $650.00 which is equal to the amount on the 'Summary-2025.12 Case Stipends' document.

 The documentation supporting $650.00 consisted of Form I-797C I-589 Application for Asylum and for Withholding of Removal and Form I-797C I-765 Application for Employment Authorization. Costs cannot be verified as allowable per 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. ▮▮▮▮▮ heavily redacted the documents, and the details are necessary to validate ▮ December 2025 CLIN 2 claimed costs.

 ▮▮▮▮▮: Supporting documentation for the invoices submitted totals $28,036.00 which is equal to the amount on the 'Summary-2025.12 Case Stipends' document.

 The documentation supporting $28,036.00 consisted of Identification Record Request to and Confirmation from FBI Criminal Justice Information Services, Form I-797C I-360 Petition for Amerasian Widower or Special Immigrant, Form I-797C I-589 Application for Asylum and for Withholding of Removal and Form I-797C I-765 Application for Employment Authorization. For all forms provided the 'USCIS Alien Number' was either blank or fully or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted. Receipts were provided with no reference information as to the UAC that received services. Costs cannot be verified as allowable per 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. Han Jun heavily redacted the documents, and the details are necessary to validate ▮▮▮▮ December 2025 CIN 2 claimed costs.

19

OIS 850.3                                                                 June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
          MOA Agreement Number DCAA-0001-26
          DCAA Assignment No. 11201-20264990000288

**2025.12 Case Stipends Part 4**



████ The supporting documentation for LSP ████ amounts to $14,116.64 which is listed and equal to the amount on the 'Summary-2025.12 Case Stipends' document.

The documentation provided to support the total amount of $14,116.64 consisted of: I589- Application For Asylum And For Withholding Of Removal, ████████████████ ████████, USCIS Form G-1450: Authorization For Credit Card Transactions, I-360 Petition For Amerasian, Widow(Er), I-765 Application For Employment Authorization (C8), Form I-797C Notice Of Action, I-765 Application For Employment Authorization, USCIS Fee Schedule Form, ████ Tracking Form For Proof Of Delivery Of I-765 (C8), Form G-28 Cover Page With All Documents Pertaining To UAC (Redacted), ████████████████████████████, Email From ████████████████ To ████████████, Invoice From ████████████, ████, Psychological Evaluation, ████████████ Statement Of Open Invoices, Invoice ████████████████████, and ████████████████████ Invoice To ████████████ ████████. The court filing forms either did not provide the 'USCIS Alien Number, the field was blank, or it was fully redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted. There were receipts and invoices provided that did not provide any reference information as to the UAC that received the services or a particular court filing that the receipts should be attached to.

████████████████ invoiced the ████, amounting to $340.00, for providing an interpreter for an in-person asylum interview. Due to the description of services not detailing a translation of court documents or filings this invoice/billing should be allocated to CLIN 4 FFP not CLIN 2.

The ████ authorized an $11.00 charge with ████████████████████████ ████████ to obtain a background check report for a state court proceeding. This document was provided as an email and does document a specific court filing this action is pertaining to.

████████████████████████████████████, invoiced the ████ for $1,100.00 for a psychological evaluation and written report for a clients' immigration relieve application. However, there are not sufficient details to determine what court filing this evaluation pertained to, why it was necessary, and the qualified UAC the report supported.

The invoices from ████████████████████ ($500.00), and ████████████████ ████████████████ ($105.00) did not provide sufficient details to determine what court filing the services provided pertained to, why they were necessary, and the qualified UAC the report supported.

According to FAR 31.205-33(f) Fees for services rendered are allowable only when supported by evidence of the nature and scope of the service furnished. There should be a complete or itemized listing of what was done and justification to claim against CLIN 2. The remaining costs cannot be verified as allowable per 31.201-2 Determining allowability because

20

OIS 850.3                                                                June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
          MOA Agreement Number DCAA-0001-26
          DCAA Assignment No. 11201-20264990000288

we are not able to trace the supporting documents to a qualified UAC. The support provided has been heavily redacted the details are necessary to validate ▮ December 2025 CLIN 2 claimed costs. We could not determine who redacted every page of the LSP package. However, ▮▮▮▮▮ created text boxes over UAC information with the intent to redact.



    ▮▮▮ The supporting documentation for LSP ▮▮ amounts to $654.80 which is listed and equal to the amount on the 'Summary-2025.12 Case Stipends' document. The documentation provided to support the total amount of $654.80 consisted of: I-360-Petition for Amerasian, Widow(er) Or Special Immigrant, Receipt from ▮▮▮▮▮▮▮▮▮▮ ▮▮▮, Civil Division, Transaction Receipt from ▮▮▮▮, Goods or Services, I-589-Application for Asylum and For Withholding of Removal. For all the forms provided, the USCIS Alien number was either blank, not provided, or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted.

    The receipts from ▮▮▮▮▮▮▮▮▮ of Courts Civil Division and the receipt from ▮▮▮▮ did not provide specific court filings that the receipts are pertaining to and the substantiating UAC information was not provided.

    According to FAR 31.205-33(f) Fees for services rendered are allowable only when supported by evidence of the nature and scope of the service furnished. There should be a complete or itemized listing of what was done and justification to claim against CLIN 2. The remaining costs cannot be verified as allowable per 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. This LSP package was heavily redacted, but we are unable to determine who did the redactions. We were able to see ▮▮▮▮▮▮▮ did highlight dates, amounts, and text boxes pertaining to the amount billed.

    ▮▮▮ The supporting documentation for LSP ▮▮ amounts to $500.00 which is listed and equal to the amount on the 'Summary-2025.12 Case Stipends' document. The documentation provided to support the total amount of $500.00 consisted court filing I-360-Petition for Amerasian, Widow(er) or Special Immigrant documentation. For all the I-360C forms provided the 'USCIS Alien Number' was either not provided or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted.

    According to FAR 31.205-33(f) Fees for services rendered are allowable only when supported by evidence of the nature and scope of the service furnished. There should be a complete or itemized listing of what was done and justification to claim against CLIN 2. The remaining costs cannot be verified as allowable per 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. This LSP package was heavily redacted, but we are unable to determine who did the redactions. We were able to determine ▮▮▮▮▮▮ did highlight dates and amounts pertaining to the amount billed.

CUI

OIS 850.3                                                                June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
       MOA Agreement Number DCAA-0001-26
       DCAA Assignment No. 11201-20264990000288



■■■ The supporting documentation for LSP ■■■ amounts to $620.99 which is listed and equal to the amount on the 'Summary-2025.12 Case Stipends' document. The documentation provided to support the total amount of $620.99 consisted of Form G-28 Cover page with all documents pertaining to UAC (Redacted), G-1450 Authorization for Credit Card Transactions, Invoice ■■■■■■■. The forms provided in this LSP package show the 'USCIS Alien Number was either not provided or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted.

The invoice for the ■■■■■■■ is pertaining to legal advertising. This documentation does not provide any information on how this expense correlates to a specific court filing.

According to FAR 31.205-33(f) Fees for services rendered are allowable only when supported by evidence of the nature and scope of the service furnished. There should be a complete or itemized listing of what was done and justification to claim against CLIN 2. The remaining costs cannot be verified as allowable per 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. This LSP package was heavily redacted, but we are unable to determine who did the redactions. We were able to determine ■■■■■■ did highlight dates and amounts pertaining to the amount billed.

■■■ The supporting documentation for LSP ■■■ amounts to $200.00 which is listed and equal to the amount on the 'Summary-2025.12 Case Stipends' document. The documentation provided to support the total amount of $200.00 consisted of court filing I-589-Application for Asylum and For Withholding of Removal. For all the I-589 forms provided the 'USCIS Alien Number was either not provided or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted.

According to FAR 31.205-33(f) Fees for services rendered are allowable only when supported by evidence of the nature and scope of the service furnished. There should be a complete or itemized listing of what was done and justification to claim against CLIN 2. The remaining costs cannot be verified as allowable per 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. This LSP package was heavily redacted, but we are unable to determine who did the redactions. We were able to see ■■■■■■ did highlight dates and amounts pertaining to the amount billed.

■■■■■■ The supporting documentation for LSP ■■■■■■ amounts to $750.00 which is listed and equal to the amount on the 'Summary-2025.12 Case Stipends' document. The documentation provided to support the total amount of $750.00 consisted court filing I-360-Petition for Amerasian, Widow(er) or Special Immigrant documentation. For all the I-360C forms provided the 'USCIS Alien Number' was either not provided or partially redacted.

22

CUI

OIS 850.3                                                              June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
                  MOA Agreement Number DCAA-0001-26
                  DCAA Assignment No. 11201-20264990000288

Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted.

According to FAR 31.205-33(f) Fees for services rendered are allowable only when supported by evidence of the nature and scope of the service furnished. There should be a complete or itemized listing of what was done and justification to claim against CLIN 2. The remaining costs cannot be verified as allowable per 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. This LSP package was heavily redacted, but we are unable to determine who did the redactions. We were able to determine ██████████ did highlight dates and amounts pertaining to the amount billed.

██████ Supporting documentation totaled $22,991.40, compared to the summary amount of $23,014.40, resulting in a $23.00 difference, which did not reconcile to the amount reported on the "Summary - 20025.12 Case Stipends" document.

The supporting documentation included Form G-1450, Form I-797C I-765 Employment Authorization, USCIS I-589 Annual Fee, Form I-797C I-360 Petition For Amerasian Widow(er) Or Special Immigrant, payment receipt for a USDOJ Immigration Review, ████ fingerprinting service, I-130 Petition For Alien Relative, Form I-797C I-589 Application For Asylum and For Withholding Of Removal, Email regarding USCIS renewal correspondence, court filing fees, publication notices, money order receipts, criminal history report requests, legal service invoices, immigration physical exam invoice, and an estimate from ████████████ for a publication of a legal notice in French. The redactions make it difficult to determine whether services were rendered to a qualifying UAC. Also, the documentation does not allow us to determine the authorization vs. the fees in total billed on the Dec 2025 invoice.

████████████████ provided a description of services that give adequate information to determine what services were provided. It is not clear if the costs are applicable to CLIN 2; however, the time entries are detailed and make it clear what is billed. Plain receipts from various vendors do not substantiate costs without an additional explanation of how these costs are applicable to a qualifying UAC and eligible for reimbursement on CLIN 2. Under FAR cost principles, the contractor must maintain supporting documentation adequate to demonstrate that costs were actually incurred, are allocable to the contract, are reasonable, and comply with applicable cost principles.

The estimated publication costs provided by ██████████████ is a quote rather than an invoice or receipt evidencing payment. As a result, there is insufficient documentation to verify that the publication services were incurred and paid during the period of performance. To support allowability and allocability, the contractor should provide an invoice documenting the services rendered in December 2025, proof of payment, and sufficient contract reference information to demonstrate the costs were properly charged to CLIN 2 in accordance with FAR 31.201-2, Determining Allowability, and FAR 31.201-4, Determining Allocability.

23

CUI

OIS 850.3                                                                June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
          MOA Agreement Number DCAA-0001-26
          DCAA Assignment No. 11201-20264990000288



Additionally, the documents were redacted by ███████████████████████ ████████████, and no USCIS Alien Number (A#) documentation was provided. Without the A# documentation, we were unable to determine whether the services were provided to a qualified UAC. Further, several claimed costs lacked receipts, invoices, or sufficient detail describing services provided and the basis for charging the costs to CLIN 2.

████████████ **S**upporting documentation totaled $7,650.68, which reconciled to the summary amount of $7,650.68, resulting in no difference to the amount reported on the "Summary - 20025.12 Case Stipends" document. The supporting documentation included Form I-797C I-765 - Application for Employment Authorization, Form I-797C I-360 petition for Amerasian Widow(er) Or Special Immigrant, and an Invoice from ████████████ ██. The invoice included filing fees, interpreter services, estimated services (to date), process server fees, publication costs, jail service costs, SIJ assimilation services, and other related legal expenses. The invoice was accompanied by proof of payment and contained sufficient detail regarding the services provided, unit prices, and line-item totals. Based on the descriptions provided, the legal costs appear consistent with services that may be allocable to CLIN 2.

However, the client's name and date of birth were redacted, and no A# documentation was provided. As a result, we were unable to determine whether the services were provided to a qualified UAC. Accordingly, the remaining costs could not be verified as allowable under FAR 31.201-2, Determining Allowability, because the supporting documentation could not be traced to a qualified UAC.

████ Supporting documentation totaled $650, compared to the summary amount of $650, resulting in no difference to the amount reported on the "Summary - 20025.12 Case Stipends" document. The documentation supporting $650 consisted of the following: Form I-797C I-589 Application for Asylum and for Withholding of Removal and Form I-797C I-765 - Application for Employment Authorization.

The documents have been redacted by ████████████ to cover the Alien Number, Receipt Number, Date of Birth, and Name of the UACs. Without the A# documentation, we were unable to determine whether a UAC was provided services. The claimed costs are not able to be verified as allowable per 31.201-2 Determining Allowability because we are not able to trace the supporting documents to a qualified UAC.

████████████ Supporting documentation totaled $2,450, compared to the summary amount of $2,450, resulting in no difference to the amount reported on the "Summary - 20025.12 Case Stipends" document. The supporting documentation included payment receipts from uscis.dhs.gov I-765 Applications for Employment Authorization, a Form I-765 Employment Authorization, and a receipt for a miscellaneous payment to the juvenile court of ████████ ████████

24

OIS 850.3                                                                      June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
          MOA Agreement Number DCAA-0001-26
          DCAA Assignment No. 11201-20264990000288

The USCIS payment confirmation e-mails were cropped and redacted by ▮▮▮▮▮▮, obscuring the case associated with the payment, recipient e-mail address, and the tracing information. The juvenile court receipt from ▮▮▮▮▮▮ was redacted to remove the receipt number, and the Form I-765 Applications for Employment Authorization was redacted to remove the receipt number, applicant number, address, and barcode information

As a result, we were unable to determine whether the services were provided to a qualified UAC. Accordingly, the claimed costs could not be verified as allowable per FAR 31.201-2, Determining Allowability, because the supporting documentation could not be traced to a qualified UAC.

▮▮▮ Supporting documentation totaled $2,350, compared to the summary amount of $2,350, resulting in no difference to the amount reported on the "Summary - 20025.12 Case Stipends" document. The documentation supporting $2,350 consisted of the following: Form I-797C I-360 Petition for Amerasian Widow(er) Or Special Immigrant and Form I-765 Employment Authorization. Without the A# documentation, we were unable to determine whether a UAC was provided services. There are costs that do not have receipts, invoices, or detailed explanation of why services were billed under CLIN 2.

▮▮▮ Supporting documentation totaled $239.43, compared to the summary amount of $239.43, resulting in no difference to the amount reported on the "Summary - 20025.12 Case Stipends" document. The documentation supporting $239.43 consisted of two receipts for filing fee payments to the ▮▮▮▮▮▮▮▮▮▮▮▮.

No USCIS A# documentation was provided. As a result, we were unable to determine whether the services were provided to a qualified UAC. Accordingly, the claimed costs could not be verified as allowable under FAR 31.201-2, Determining Allowability, because the supporting documentation could not be traced to a qualified UAC.

**2025.12 Case Stipends Part 5**

▮▮▮ Supporting documentation totals $9,740.20 for 13 items billed, of the total 16 items submitted, 3 of the forms were duplicated and the amounts billed for those duplicated forms were included in the total billed amount of $10,790.20 listed on the 'Summary - 2025.12 Case Stipends' document. The documentation supporting $10,790.20 consisted of Form I-797C I-360 Petition for Amerasian Widower or Special Immigrant, Form I-797C I-589 Application for Asylum and for Withholding of Removal, Form I-797C I-765 Application for Employment Authorization, ▮▮▮▮▮▮▮▮▮ Receipt, I130 Petition for Alien Relative and ▮▮ ▮▮ invoices for face-to face interpretation services. For all of the I-797C forms provided the 'USCIS Alien Number was either blank or fully or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted. Receipts were provided with no reference information as to the UAC that received services. It is the understanding of the contract that interpretation services would pertain to CLIN 4, therefore it is

25

CUI

OIS 850.3                                                                                  June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
          MOA Agreement Number DCAA-0001-26
          DCAA Assignment No. 11201-20264990000288

unclear whether the ▮▮▮▮▮ Invoices for face-to face interpretation services should be allowable under CLIN 2. According to FAR 31.205-33(f) Fees for services rendered are allowable only when supported by evidence of the nature and scope of the service furnished. There should be a complete or itemized listing of what was done and justification to claim against CLIN 2. The remaining costs are not able to be verified as allowable per FAR 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. While most of the forms were heavily redacted, the details are necessary to validate ▮▮▮▮ December 2025 CLIN 2 claimed costs.

▮▮▮ Supporting documentation totals $1,100 for 5 items billed, which is equal to the amount listed on the 'Summary - 2025.12 Case Stipends' document.  The documentation supporting $1,100 consisted of G-1450 Authorization for Credit Card Transaction for Form I-797C I-360 Petition for Amerasian Widower or Special Immigrant and Form I-797C I-589 Application for Asylum and for Withholding of Removal. For all of the I-797C forms provided the 'USCIS Alien Number was either blank or fully or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted. Receipts were provided with no reference information as to the UAC that received services. According to FAR 31.205-33(f) Fees for services rendered are allowable only when supported by evidence of the nature and scope of the service furnished. There should be a complete or itemized listing of what was done and justification to claim against CLIN 2. The remaining costs are not able to be verified as allowable per FAR 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. ▮▮▮▮▮ highlighted parts of the documents. While most of the forms were heavily redacted, the details are necessary to validate ▮▮▮ December 2025 CLIN 2 claimed costs.

▮▮▮ Supporting documentation totals $8,579 for 26 items billed, which is equal to the amount listed on the 'Summary - 2025.12 Case Stipends' document.  The documentation supporting $8,579 consisted of G-1450 Authorization for Credit Card Transaction for Form I-797C I-360 Petition for Amerasian Widower or Special Immigrant, G-1450 Authorization for Credit Card Transaction for Form I-797C I-589 Application for Asylum and for Withholding of Removal, G-1450 Authorization for Credit Card Transaction for Form I-797C I-765 Application for Employment Authorization, an invoice from ▮▮▮▮▮▮▮▮ and FBI FOIA Request fees. For all of the I-797C forms provided the 'USCIS Alien Number was either blank or fully or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted. Receipts were provided with no reference information as to the UAC that received services. According to FAR 31.205-33(f) Fees for services rendered are allowable only when supported by evidence of the nature and scope of the service furnished. There should be a complete or itemized listing of what was done and justification to claim against CLIN 2. The remaining costs are not able to be verified as allowable per FAR 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. ▮▮▮▮▮ highlighted parts of the documents. While most of the forms were heavily redacted, the details are necessary to validate ▮▮▮ December 2025 CLIN 2 claimed costs.

26

CUI

OIS 850.3 June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
MOA Agreement Number DCAA-0001-26
DCAA Assignment No. 11201-20264990000288

███████  Supporting documentation totals $500 for 2 items billed, which is equal to the amount listed on the 'Summary - 2025.12 Case Stipends' document.  The documentation supporting $500 consisted of Form I-797C I-360 Petition for Amerasian Widower or Special Immigrant. For all of the I-797C forms provided the 'USCIS Alien Number was either blank or fully or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted. Receipts were provided with no reference information as to the UAC that received services. According to FAR 31.205-33(f) Fees for services rendered are allowable only when supported by evidence of the nature and scope of the service furnished. There should be a complete or itemized listing of what was done and justification to claim against CLIN 2. The remaining costs are not able to be verified as allowable per FAR 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. ██████████ highlighted parts of the documents. While most of the forms were heavily redacted, the details are necessary to validate ███████ December 2025 CLIN 2 claimed costs.

████  Supporting documentation totals $1,350 for 3 items billed, which is equal to the amount listed on the 'Summary - 2025.12 Case Stipends' document.  The documentation supporting $1,350 consisted of Form I-797C I-360 Petition for Amerasian Widower or Special Immigrant and Form I-797C I-765 Application for Employment Authorization. For all of the I-797C forms provided the 'USCIS Alien Number was either blank or fully or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted. Receipts were provided with no reference information as to the UAC that received services. According to FAR 31.205-33(f) Fees for services rendered are allowable only when supported by evidence of the nature and scope of the service furnished. There should be a complete or itemized listing of what was done and justification to claim against CLIN 2. The remaining costs are not able to be verified as allowable per FAR 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. ██████████ highlighted parts of the documents. While most of the forms were heavily redacted, the details are necessary to validate ████ December 2025 CLIN 2 claimed costs.

██████  Supporting documentation totals $1,476.58 for 5 items billed, which is equal to the amount listed on the 'Summary - 2025.12 Case Stipends' document.  The documentation supporting $1,476.58 consisted of Form I-797C I-360 Petition for Amerasian Widower or Special Immigrant, Form I-797C I-765 Application for Employment Authorization and an ███████████████████████████ invoice. The ████████████████████████ invoice was for the dates of 12/22/2025, 12/29/2025, and 1/05/2026. While the total cost on the invoice was $246.59, the contractor noted that they only billed for the two ads published for the month of December which totaled $176.58. For all the I-797C forms provided the 'USCIS Alien Number was either blank or fully or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted. Receipts were provided with no reference information as to the UAC that received services. According to FAR 31.205-33(f) Fees for services rendered are allowable only when supported by evidence of the nature and scope of the

27

OIS 850.3                                                                                              June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
          MOA Agreement Number DCAA-0001-26
          DCAA Assignment No. 11201-20264990000288

service furnished. There should be a complete or itemized listing of what was done and justification to claim against CLIN 2. The remaining costs are not able to be verified as allowable per FAR 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. ███████████ highlighted parts of the documents. While most of the forms were heavily redacted, the details are necessary to validate ███ December 2025 CLIN 2 claimed costs.

███████ **S**upporting documentation totaled $7,817.15, compared to the summary amount of $7,700, resulting in a ($117.15) difference to the amount reported on the "Summary - 20025.12 Case Stipends" document. The supporting documentation consisted of the Form I-797C I-360 Petition For Amerasian Widow(er) Or Special Immigrant, Form I-797C I-589 Application For Asylum And For Withholding Of Removal, Form G-1450, Form I-797C I-765 - Application For Employment Authorization, ██████ Shipping of a package To USCIC, and Form G-28 Notice of Entry of Appearance As Attorney or Accredited Representative.

No USCIS A# documentation was provided. As a result, we were unable to determine whether the services were provided to a qualified UAC. Accordingly, the claimed costs could not be verified as allowable under FAR 31.201-2, Determining Allowability, because the supporting documentation could not be traced to a qualified UAC.

███████ Supporting documentation totals $1,749.37 for 11 items billed, which is equal to the amount listed on the 'Summary - 2025.12 Case Stipends' document. The documentation supporting $1,749.37 consisted of email receipts for Certified records requests, emailed receipts for Certified special interest order records requests, Form I-797C I-360 Petition for Amerasian Widower or Special Immigrant, Form I-797C I-765 Application for Employment Authorization and an invoice for a translation service and notary fee. For all the I-797C forms provided the 'USCIS Alien Number was either blank or fully or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted. Receipts were provided with no reference information as to the UAC that received services. It is the understanding of the contract that interpretation services would pertain to CLIN 4, therefore it is unclear whether the ████████ Invoices for translation services should be allowable under CLIN 2. According to FAR 31.205-33(f) Fees for services rendered are allowable only when supported by evidence of the nature and scope of the service furnished. There should be a complete or itemized listing of what was done and justification to claim against CLIN 2. The remaining costs are not able to be verified as allowable per FAR 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. ███████████ highlighted parts of the documents. While most of the forms were heavily redacted, the details are necessary to validate ███ December 2025 CLIN 2 claimed costs.

**2025.12 Case Stipends Part 6**

███████ Supporting documentation totals $5,267.20 for 22 items billed, which is equal to the amount listed on the 'Summary - 2025.12 Case Stipends' document. The documentation

28

OIS 850.3                                                          June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
          MOA Agreement Number DCAA-0001-26
          DCAA Assignment No. 11201-20264990000288

supporting $5,267.20 consisted of G-1450 Authorization for Credit Card Transaction with Form I-797C I-360 Petition for Amerasian Widower or Special Immigrant, Form I-797C I-589 Application for Asylum and for Withholding of Removal, Form I-797C I-765 Application for Employment Authorization, BIA Appeal fee, printing fees with certification and seal fee, and a civil court cost receipt.

        For all the I-797C forms provided the 'USCIS Alien Number was either blank or fully or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted. Receipts were provided with no reference information as to the UAC that received services. It is the understanding of the contract that interpretation services would pertain to CLIN 4, therefore it is unclear whether the ███████████ for translation services should be allowable under CLIN 2. According to FAR 31.205-33(f) Fees for services rendered are allowable only when supported by evidence of the nature and scope of the service furnished. There should be a complete or itemized listing of what was done and justification to claim against CLIN 2.

        The remaining costs are not able to be verified as allowable per FAR 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. ███████ highlighted parts of the documents.  While most of the forms were heavily redacted, the details are necessary to validate ██████ December 2025 CLIN 2 claimed costs.

        ██████ Supporting documentation totals $1,700 for 5 items billed, which is equal to the amount listed on the 'Summary - 2025.12 Case Stipends' document.  The documentation supporting $1,700 consisted of Form I-797C I-360 Petition for Amerasian Widower or Special Immigrant, Form I-797C I-589 Application for Asylum and for Withholding of Removal and Form I-797C I-765 Application for Employment Authorization. For all of the I-797C forms provided the 'USCIS Alien Number was either blank or fully or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted. Receipts were provided with no reference information as to the UAC that received services.

        According to FAR 31.205-33(f) Fees for services rendered are allowable only when supported by evidence of the nature and scope of the service furnished. There should be a complete or itemized listing of what was done and justification to claim against CLIN 2. The remaining costs are not able to be verified as allowable per FAR 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. ███████████ highlighted parts of the documents. While most of the forms were heavily redacted, the details are necessary to validate ██████ December 2025 CLIN 2 claimed costs.

        ██████ Supporting documentation totals $250 for 1 item billed, which is equal to the amount listed on the 'Summary - 2025.12 Case Stipends' document.  The documentation supporting $250 consisted of Form I-797C I-360 Petition for Amerasian Widower or Special Immigrant. For all of the I-797C forms provided the 'USCIS Alien Number was either blank or

29

OIS 850.3                                                    June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
        MOA Agreement Number DCAA-0001-26
        DCAA Assignment No. 11201-20264990000288

fully or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted.

Receipts were provided with no reference information as to the UAC that received services. According to FAR 31.205-33(f) Fees for services rendered are allowable only when supported by evidence of the nature and scope of the service furnished. There should be a complete or itemized listing of what was done and justification to claim against CLIN 2. The remaining costs are not able to be verified as allowable per FAR 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. ▌▌▌▌ highlighted parts of the documents. While most of the forms were heavily redacted, the details are necessary to validate ▌▌ December 2025 CLIN 2 claimed costs.

▌▌▌▌ Supporting documentation totals $2,570 for 3 items billed, which is equal to the amount listed on the 'Summary - 2025.12 Case Stipends' document.  The documentation supporting $2,570 consisted of Form I-797C I-765 Application for Employment Authorization and BIA appeal receipts. For all of the I-797C forms provided the 'USCIS Alien Number was either blank or fully or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted. Receipts were provided with no reference information as to the UAC that received services.

According to FAR 31.205-33(f) Fees for services rendered are allowable only when supported by evidence of the nature and scope of the service furnished. There should be a complete or itemized listing of what was done and justification to claim against CLIN 2. The remaining costs are not able to be verified as allowable per FAR 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. ▌▌▌▌ highlighted parts of the documents. While most of the forms were heavily redacted, the details are necessary to validate ▌▌▌▌ December 2025 CLIN 2 claimed costs.

▌▌▌▌ Supporting documentation totals $6,405.68 for 18 items billed, which is equal to the amount listed on the 'Summary - 2025.12 Case Stipends' document.  The documentation supporting $6,405.68 consisted of G-1450 Authorization for Credit Card Transaction for Form I-797C I-360 Petition for Amerasian Widower or Special Immigrant, G-1450 Authorization for Credit Card Transaction for Form I-797C I-589 Application for Asylum and for Withholding of Removal, G-1450 Authorization for Credit Card Transaction for Form I-797C I-765 Application for Employment Authorization, and emailed receipt for Background Check fees and a receipt from ▌▌▌▌. The receipts for background checks do not specify who the background check is for and there is not enough information to determine if the costs should be charged to the contract.

For all of the I-797C forms provided the 'USCIS Alien Number was either blank or fully or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted. Receipts were provided with no reference information as to the

CUI

OIS 850.3                                                                                    June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
          MOA Agreement Number DCAA-0001-26
          DCAA Assignment No. 11201-20264990000288

UAC that received services. According to FAR 31.205-33(f) Fees for services rendered are allowable only when supported by evidence of the nature and scope of the service furnished. There should be a complete or itemized listing of what was done and justification to claim against CLIN 2. The remaining costs are not able to be verified as allowable per FAR 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. ▮▮▮▮▮▮▮ highlighted parts of the documents. While most of the forms were heavily redacted, the details are necessary to validate ▮▮▮▮▮ December 2025 CLIN 2 claimed costs.

▮▮ Supporting documentation totals $100 for 1 item billed, which is equal to the amount listed on the 'Summary - 2025.12 Case Stipends' document.  The documentation supporting $100 consisted of Form I-797C I-589 Application for Asylum and for Withholding of Removal. For all of the I-797C forms provided the 'USCIS Alien Number was either blank or fully or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted. Receipts were provided with no reference information as to the UAC that received services.

According to FAR 31.205-33(f) Fees for services rendered are allowable only when supported by evidence of the nature and scope of the service furnished. There should be a complete or itemized listing of what was done and justification to claim against CLIN 2. The remaining costs are not able to be verified as allowable per FAR 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. ▮▮▮▮▮▮▮ highlighted parts of the documents. While most of the forms were heavily redacted, the details are necessary to validate ▮▮ December 2025 CLIN 2 claimed costs.

▮▮▮ Supporting documentation totals $700 for 4 items billed, which is equal to the amount listed on the 'Summary - 2025.12 Case Stipends' document.  The documentation supporting $700 consisted of Form I-797C I-360 Petition for Amerasian Widower or Special Immigrant and Form I-797C I-589 Application for Asylum and for Withholding of Removal. For all of the I-797C forms provided the 'USCIS Alien Number was either blank or fully or partially redacted. Also, other pertinent UAC information, such as name, date of birth or country of origin, was redacted.

Receipts were provided with no reference information as to the UAC that received services. According to FAR 31.205-33(f) Fees for services rendered are allowable only when supported by evidence of the nature and scope of the service furnished. There should be a complete or itemized listing of what was done and justification to claim against CLIN 2. The remaining costs are not able to be verified as allowable per FAR 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. While most of the forms were heavily redacted, the details are necessary to validate ▮▮▮▮ December 2025 CLIN 2 claimed costs.

CUI

OIS 850.3                                                                June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
          MOA Agreement Number DCAA-0001-26
          DCAA Assignment No. 11201-20264990000288

████████ Supporting documentation totals $3,000 for 1 item billed, which is equal to the amount listed on the 'Summary - 2025.12 Case Stipends' document.  The documentation supporting $3,000 consisted of an invoice from ███████████. The only information provided was the simple description of "Custody, Court Fees, ████████████████" as the remainder of the description of services were redacted. This invoice does not demonstrate who the service is for, does not provide an explanation of rates, what services were provided, or why these charges should be billed to CLIN 2.  Other pertinent UAC information, such as name, date of birth or country of origin, was redacted.

According to FAR 31.205-33(f) Fees for services rendered are allowable only when supported by evidence of the nature and scope of the service furnished. There should be a complete or itemized listing of what was done and justification to claim against CLIN 2. The remaining costs are not able to be verified as allowable per FAR 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. ███████████ highlighted parts of the documents. While most of the forms were heavily redacted, the details are necessary to validate ████████ December 2025 CLIN 2 claimed costs.

████████ Supporting documentation totals $3,354.99 for 8 items billed, which is equal to the amount listed on the 'Summary - 2025.12 Case Stipends' document.  The documentation supporting $3,354.99 consisted of an invoice from ██████████████████████, an invoice for a History and physical exam, a bill for USCIS Medical Exam with ████████████, an invoice from ████████████████ for Immigration w/ vaccines, an invoice for a document processing fee, an invoice for a Medical exam from ████████████, an invoice for vaccines from the express family clinic-Vaccine Lab, and Interpretation Services from ████████████████. These invoices do not demonstrate who the service is for, do not provide an explanation of rates, what services were provided, or why these charges should be billed to CLIN 2.  Other pertinent UAC information, such as name, date of birth or country of origin, was redacted.

According to FAR 31.205-33(f) Fees for services rendered are allowable only when supported by evidence of the nature and scope of the service furnished. There should be a complete or itemized listing of what was done and justification to claim against CLIN 2. The remaining costs are not able to be verified as allowable per FAR 31.201-2 Determining allowability because we are not able to trace the supporting documents to a qualified UAC. ███████████ highlighted parts of the documents. While most of the forms were heavily redacted, the details are necessary to validate ████████ December 2025 CLIN 2 claimed costs.

**Cost Element - Labor**

DCAA reviewed the labor support provided with the invoice; however, the documentation was insufficient to substantiate the allowable amount of labor costs claimed. While summaries of labor hours were available, adequate supporting documentation was not

32

CUI

OIS 850.3                                                                                    June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
            MOA Agreement Number DCAA-0001-26
            DCAA Assignment No. 11201-20264990000288

provided for all labor charges billed, limiting DCAA's ability to verify allowability and accuracy of the invoiced labor costs. The prime contractor provided labor summaries identifying hours by LSP and labor category. However, supporting documentation necessary to substantiate the underlying labor charges was incomplete. As a result, DCAA could not effectively verify the labor costs totaling $14,421,138.70 of the invoice amount. To adequately substantiate labor costs claimed for reimbursement, based on the requirements of the contract in Section G-7 (referenced below), the contractor should provide supporting documentation identifying employee name, labor category and/or position title, hours worked, description of the effort performed to include the qualifying UAC represented, labor rate, and total labor cost charged. In addition, the contractor should provide supporting records, such as employee timesheets, position title, payroll records, or equivalent documentation, sufficient to verify that the labor hours billed were incurred, properly recorded, and directly associated with services provided under the contract. We will assess Labor when adequate supporting documents are provided.

**Cost Element - Consultants**

We reviewed $20,831.83, or .14%, of the total $14,938,000.96 invoiced for cost element Consultants.  The Prime Contractor-submitted invoices, receipts, Legal Service Provider (LSP) subcontractor support, travel documentation, labor support, and other supporting records provided in support of billed costs. We analyzed the basis used by the contractor to estimate, charge, and/or claim costs. Our assessment included reviewing whether submitted documentation adequately supported the amount billed, the purpose of the cost incurred, the period of performance, option period, and the relationship of the cost to contract performance requirements. We reviewed our cost element Consultants in reference to FAR 31.205-33 Professional and Consultant Service cost and FAR 31.201-4 Determining Allocability.

███

███ did not provide a billing period for cost incurred. The date provided for service, we could not assume if that was for the entire month of December with separate services, if all services were provided in one day, or if all assignments were grouped together and did not actually occur during the December 2025 billing period. In reference to the service of Indigenous Interpretation Services Translation, "Interpretation Service provided from the Indigenous language to ES (Spanish) or EN (English)"; the base contract 75P00125C00016 page 35 under CLIN 4 states Spanish Language Support and Technical Assistance Training (FFP). The product/service and description ███ provides directly correlates to CLIN 4 objective VI of the contract. Therefore, we cannot substantiate or accept ███ due to ███ not identifying a clear identifiable billing period, the description of services identifying with CLIN 4 rather than CLIN2, and the inclusion of two different amounts on the invoice without a justification for the change. We would suggest that in the future ███ itemizes each service as a line item with the date of services rendered instead of grouping to allow visibility of the billing period. Also, if a billing amount is adjusted, we suggest adding a justification for this billing amount, submitting a modification to ███, and having them resubmit the invoice with the

33

OIS 850.3                                                                                  June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
          MOA Agreement Number DCAA-0001-26
          DCAA Assignment No. 11201-20264990000288

appropriate amount.



    We cannot substantiate ████████████████ from ████████. because this LSP did not provide a billing period for services rendered. We are unable to determine with the document provided if the service costs were incurred during December 2025 and/or the option period the cost should be paid to ████████. to provide on-demand virtual interpreting services. In reference to the service of Indigenous Interpretation Services Translation, "Interpretation Service provided from the Indigenous language to ES (Spanish) or EN (English)"; the base contract 75P00125C00016 page 35 under CLIN 4 states Spanish Language Support and Technical Assistance Training (FFP). The product/service and description provided directly correlate to CLIN 4 objective VI of the contract. We were also unable to determine if the product/service of translation of documents belongs in CLIN2 Time and Materials. Therefore, we were unable to accept this invoice due to the description of services allocating this cost to CLIN 4 rather than CLIN 2. If it was decided that ████████. submission was deemed allocable to CLIN 2, we would suggest in the future that ████████. incorporates a billing period for services provided on the invoice submitted and gives a breakdown of dates in the description to ensure all services are within the allocated billing and option period. Also, we suggest adding a justification for this billing amount, submitting a modification to ████████., and have them resubmit the invoice with the appropriate amount.

    We cannot substantiate invoice █████ from █████████ because they did not provide a billing period on this invoice to determine if this invoice actually incurred costs in December 2025. We are unable to determine with the document provided if the service costs were incurred during December 2025 and/or the option period the cost should be paid. We were also unable to determine if the product/service of translation of documents belongs in CLIN2 Time and Materials. If it was decided that ████████. submission was deemed allocable to CLIN 2 we would suggest in the future that ████████ document a clear identifiable billing period and to add a date to each itemized assignment or service as a line item to show that the cost was incurred during the proper billing and option period.

## Cost Element - Database Licenses

    Cost element Database Licenses consisted of $6,788.67, of the total $14,938,000.96 invoice or 0.05%. The documentation provided to substantiate Database Licenses did not allow DCAA to validate the costs are properly billed to CLIN 2 because the documents do not meet the FAR 31.201-2 Determining allowability, FAR 31.201-3 Determining reasonableness, FAR 31.201-4 Determining allocability, FAR 31.201-6 Accounting for unallowable costs, G.7 INVOICES.

34

OIS 850.3                                                                                                    June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
            MOA Agreement Number DCAA-0001-26
            DCAA Assignment No. 11201-20264990000288

The supporting documentation provided included ███████████████████████
██████████████████████████████████████████████.

We performed a thorough analysis of the documentation submitted in support of the December 2025 Database Licenses Costs. We documented the Invoice date, Invoice number if applicable, Period of Performance beginning and end, the option service period, if the costs are within the option service period or not, the invoice total, if the invoice was altered and by whom.

████

We reviewed the 4-page document from ████. The details on this invoice reflect the December 2025 billing period only and provided details for the charges. This invoice is being billed in the proper billing period and option; therefore, it would be deemed allowable per FAR 21.201-2, Determining Allowability. However, per FAR 31.204-4, Determining Allocability and Section G.7 Invoices, this invoice would be rejected because without a contract number, the cost cannot properly be tied or allocated to the contract. This will ensure that costs are being allocated properly to the contract.

████████

We reviewed the 2-page invoice document from ████████ and identified the following concerns:
1. The invoice POP was billed on two separate months (Dec 15, 2025 & Jan 14, 2026 - pg. 1 and Nov 15, 2025 & Dec 14, 2025 - pg. 2)) instead of just December 2025.
2. There are text box totals on this invoice where ████████ performed their own calculations to determine the December 2025 total amount since the POP on this invoice isn't only for December 2025.

████████ should make an adjustment on the invoice to distinguish the costs associated with December 2025 only and remove the January 2026 costs to deem these costs allowable per FAR 31.201-2, Determining allowability. Additionally, the invoice should note the contract number between ████████████████ that includes the CLIN number being billed for in order to deem this invoice allocable per FAR 31.201-4, Determining allocability.

████████

We reviewed the 3-page receipt from ██████ and identified the following concerns:
1. This is not an invoice with details of the product purchased, it is a receipt. A receipt alone is not sufficient under FAR 31.201-2(d), costs must be adequately supported to be allowable.
2. The receipt shows two different POPs for two different service descriptions (i.e.. ██████ Codespaces Usage and ██████ Business Cloud - Month).

35

CUI

OIS 850.3                                                                                    June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
         MOA Agreement Number DCAA-0001-26
         DCAA Assignment No. 11201-20264990000288

3. There are text box calculations added by ████████ to separate out the amounts for ████ Codespace Usage and ██████ Business cloud-month and those totals do not match the receipt total.

The subcontractor should adjust the invoice to reflect only December 2025 charges, not a mix of Option periods. An invoice adequately documenting the costs for December 2025 only and the proper contract information noted on the invoice so that the costs can be properly tied or allocated to the contract would deem these costs allowable and allocable per FAR 31.201-2, Determining Allowability, and FAR 31.201-4, Determining allocability.

████████████████████████

We reviewed the 1-page document from ██████████████████████████ and documented the following concerns:

1. The document provided is a forwarded Outlook email transaction receipt and not an actual invoice. A receipt alone is not sufficient under FAR 31.201-2(d), costs must be adequately supported to be allowable.
2. The document does not include a period of performance.
3. The document does not include details of the charges being charged. The only description is Goods or Services and the body of the email states- Thank you for purchasing a ████████ subscription.

The document provided is a forwarded Outlook email transaction receipt and not an actual invoice. The document should include the period of performance for the charges and details of the charges. The only description is Goods or Services and the body of the email states- Thank you for purchasing a ██████ subscription. Additionally, the invoice should note the contract number between █████████████████████████████████. The additional documentation noted would be necessary to deem these costs allowable and allocable per FAR 31.201-2, Determining Allowability, and FAR 31.201-4, Determining allocability.

**Cost Element - Recruitment Cost**

Costs incurred to identify, attract, screen, and onboard prospective employees or service providers. These costs may include job advertisements, recruiting agency fees, background checks, recruiting events, candidate travel, onboarding activities, and other expenses directly related to personnel recruitment. Recruitment Costs are on the contract under CLIN 3.

We performed a thorough analysis of the documentation submitted in support of the December 2025 Recruitment Costs. We documented the Invoice Date, Invoice Number, Period of Performance beginning and end, the option service period, if the costs are within the option service period or not, the invoice total, if the invoice was altered, and by whom.

36

CUI

OIS 850.3                                                           June 15, 2026

SUBJECT: Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
MOA Agreement Number DCAA-0001-26
DCAA Assignment No. 11201-20264990000288

Recruitment Costs consisted of $1,557.45, or 0.01%, of the total $14,938,000.96 invoiced for December 2025. The documentation provided to substantiate Recruitment Costs did allow DCAA to validate costs because the documents met the FAR 31.205-34 and FAR 31.201-2 requirements to validate the costs are properly billed to CLIN 2. The documentation states the specific position being advertised, covers a billing period within Option 1 of CLIN 2, and allows for a determination of allowability. However, recruitment costs are supposed to be billed under CLIN 3.



The ▮▮▮▮ Recruitment costs documentation consists of 3 pages: Page 1 ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ totaling $999; Pages 2 and 3 are Invoices ▮▮▮▮▮▮ from ▮▮▮▮▮▮▮▮▮▮▮▮ each $605; however, only $1,469.50 is billed on December 2025 CLIN 2 Invoice.

The ▮▮▮▮▮▮▮▮ invoice clearly identifies the attorney roles to be fulfilled, including the location. The invoice is dated 12/04/2025. Adjustments were made to the invoice amounts by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to reflect costs allocable to December 2025 because the period of performance is shown as 12/04/2025-01/03/2025. The adjustments did not alter the original invoice, show the calculations for a daily amount, and provide explanations as to why a different amount is billed than what is shown on the original invoice. The documentation for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is sufficient to substantiate recruitment costs claimed of $902.32 for December 2025. However, recruitment costs are supposed to be billed under CLIN 3.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ provides details stating that for 30-days an attorney position was posted for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮; shows metrics of 514 Active views and 209 job matches, with zero candidates delivered. The invoice is dated 11/14/2025 and the period of performance ends on 12/15/2025. The adjustments did not alter the original invoice, show the calculations for a daily amount, and provide explanations as to why a different amount is billed than what is shown on the original invoice. The documentation for ▮▮▮▮▮▮▮▮ ▮▮▮▮▮ is sufficient to substantiate recruitment costs claimed of $283.59 for December 2025. However, recruitment costs are supposed to be billed under CLIN 3.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ provide details stating that for 30-days an attorney position was posted for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮; shows metrics of 720 views and 201 job matches, with zero candidates delivered. The invoice is dated 11/14/2025 and the period of performance ends on 12/15/2025. The adjustments did not alter the original invoice, show the calculations for a daily amount, and provide explanations as to why a different amount is billed than what is shown on the original invoice. The documentation submitted for ▮▮▮▮▮▮▮▮ ▮▮▮▮▮ is sufficient to substantiate recruitment costs claimed of $283.59 for December 2025. The documentation follows the FAR Criteria 31.205-34 for allowability because it states the specific position being advertised, gives a billing period within the CLIN 2, and allows for a

37

CUI

OIS 850.3                                                                June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
          MOA Agreement Number DCAA-0001-26
          DCAA Assignment No. 11201-20264990000288

determination of allowability. However, recruitment costs are supposed to be billed under CLIN 3.



in the amount of $52.13 does not have a specified period of performance on the invoice. The document date is 12/31/2025; however, it does not state a period of performance beginning or end. The assumption would be the invoice covers the month of December due to metrics showing that ███████████████████████, located in ████████████████, obtained 11 clicks at an average cost of $4.46 for a total cost of $49.06 plus tax of $3.07 for a total cost billed of $52.13 and is within Option 1. ████████ highlighted text and made no alterations to the invoice. The documentation follows the FAR Criteria 31.205-34 for allowability because it states the specific position being advertised, gives a billing period within the CLIN 2, and allows for a determination of allowability. However, recruitment costs are supposed to be billed under CLIN 3.

The ████████████████ invoice ████████████ in the amount of $185.08 was posted on 12/08/2025. The period of performance is 12/26/2025-1/26/2026. Per contract terms █████ can only bill from 12/01/2025-12/31/2025. █████ prorated the invoice for the 6 days of December and adjusted their billed amount to $35.82 for 6 of 32 days. ████████████████████████ ███████████ made comments/highlighted on the document. The redactions did not interfere with a determination of allowability. The documentation follows the FAR Criteria 31.205-34 for allowability because it states the specific position being advertised, gives a billing period within the CLIN 2, and allows for a determination of allowability. However, recruitment costs are supposed to be billed under CLIN 3.

## Cost Element - Subcontractors

Cost element subcontracts consisted of $217,239.06 or 1.45%, of the total $14,938,000.96 invoiced. The documentation provided to substantiate subcontract costs did not allow DCAA to validate costs because the documents did not have specific dates of work or service, contained hours and rates that could not be reconciled to the contract or any other document, did not specify that the hours charged were for work related to CLIN 2, missing supporting documentation to show that the work that was completed was connected to the contract, and contained invoices that showed job titles but no specific employee names.

FAR 31.205-46 states (3)(iv) Documentation to support actual costs incurred shall be in accordance with the contractor's established practices, subject to paragraph (a)(7) of this section, and provided that a receipt is required for each expenditure of $75.00 or more.
(7) Costs shall be allowable only if the following information is documented-
(I) Date and place (city, town, or other similar designation) of the expenses;
(ii) Purpose of the trip; and
(iii) Name of person on trip and that person's title or relationship to the contractor.

38

OIS 850.3                                                                                    June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
                    MOA Agreement Number DCAA-0001-26
                    DCAA Assignment No. 11201-20264990000288

        Each invoice shows the amount invoiced, but only on a summary level. The invoices do not present sufficient information to determine whether the amount invoiced should have been billed to CLIN 0002 or the contract as a whole. These invoices have not been manipulated; however, they lack information necessary to properly reconcile the billed amounts to the contract. Per the qualifications for allowable costs per the FAR mentioned above:
        -These invoices do not state a date and place of the services only that it was a December 2025 invoice; there needs to be a date of service for all hours charged.
        -These invoices do not state the purpose or description of the work being done in order to bill for these rates and hours; there needs to be a description of the services performed for the hours charged.
        -These invoices do not state the client for which the services were provided and therefore cannot be reconciled to the contract; these invoices need to show that the services provided were for active UACs under the contract.

        For these reasons these invoices have been deemed inadequate.  This lack of information increases the opportunity for the contractor to potentially overcharge the government.

        In order to properly verify that the subcontract costs are billed correctly, the subcontractor should include the date(s) of service, a description of the service being provided, and who the service is being provided for. In reference to hours being charged and rates per hour, timesheets would be helpful to determine which employees charged hours to a specific task associated with this CLIN and contract; this could be helpful to determine if the task completed was charged the correct rate or if the work was completed at all. Verification of resumes can help determine whether the employee that charged the hours and rate was qualified to bill at the rate on the invoice or to perform the service in general. The invoices provided were at summary level by labor category, which makes it difficult to determine how many employees are in each labor category. An explanation or walkthrough of how the invoices are developed would be helpful to determine if the information on the invoices comes from internal books and records or is pulled from hours charged on the timesheets. This recommendation is applicable for the 3 LSPs listed below.

        ████

        Personnel titles listed with no details: Director, Senior Staff Attorney, Staff Attorney, Paralegal. We cannot determine the number of employees doing the work, how many hours contributed by each employee, qualifications of each employee to substantiate the rate of payment, there were no details as to what the hours were charged for or how the work done was related to the contract or CLIN 0002, and there are no timesheets associated with work performed.

        ████

        Personnel titles Listed with no details: Senior Manager, Manager, Senior Associates,

39

CUI

OIS 850.3                                                                    June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
          MOA Agreement Number DCAA-0001-26
          DCAA Assignment No. 11201-20264990000288

Associates. We cannot determine the number of employees doing the work, how many hours contributed by each employee, qualifications of each employee to substantiate the rate of payment, there were no details as to what the hours were charged for or how the work done was related to the contract or CLIN 0002, and there are no timesheets associated with work performed.

█████████

Personnel titles Listed with no details: Senior Associates and Associates. We cannot determine the number of employees doing the work, how many hours contributed by each employee, qualifications of each employee to substantiate the rate of payment, there were no details as to what the hours were charged for or how the work done was related to the contract or CLIN 0002, and there are no timesheets associated with work performed.

**Cost Element - Travel**

Although travel costs are small percentage of the overall invoiced amount, they are a high-risk assessment in government contracting audits because they are easy to mischarge, difficult to fully verify, subject to strict regulations, frequently abused or overstated, and highly dependent on documentation. The documentation reviewed for travel was highly redacted or altered, lacked proper narratives and justification for travel costs, and was very unorganized.

We performed a thorough analysis of the documentation pertaining to the Travel cost element under contract 75P00125C00016 CLIN 2 2025.12 to determine whether cost incurred in December 2025 were allowable and in accordance with FAR Cost principles and more specifically allowable under CLIN 2 Time & Material. We documented the Invoice Date, Invoice Number, Period of Performance beginning and end, the option service period, if the costs are within the option service period or not, the invoice total, if the invoice was altered, and by whom. In addition, we also analyzed the adequacy, completeness, and the accuracy of the invoiced amounts, and identifying unsupported cost.

Travel Costs consisted of $13,877.48, or 0.09%, of the total $14,938,000.96 invoiced for December 2025. The documentation provided to substantiate travel costs did not allow DCAA to validate costs over the $75.00 requirement, because the documents did not have the required information to support the billed cost. We reconciled the travel costs claimed on the invoice to the supporting documentation and verified the amounts. However, the documentation lacked the information necessary to determine allowability under FAR 31.205.46.

█████████

The contractor provided an ███████████████ receipt totaling $47.57 and gas receipt totaling $10.00 to support claimed travel costs. However, the documentation did not identify the purpose of the travel, the traveler's title, or the traveler's relationship to the contractor.

40

CUI

OIS 850.3                                                                                    June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
          MOA Agreement Number DCAA-0001-26
          DCAA Assignment No. 11201-20264990000288

As a result, the contractor did not provide sufficient documentation to determine whether the claimed travel costs are allowable under FAR 31.205-46.  The contractor asserted attorney-client privilege as the basis for withholding the required information.

The contractor provided a ▮▮▮▮▮ printout totaling $141.40 to support claimed travel costs.  While documentation identified travel between two locations, it did not identify the traveler, the traveler's title, the business purpose of the travel, or the traveler's relationship to the contractor.

As a result, the contractor did not provide sufficient documentation to determine whether the claimed travel costs are allowable under FAR 31.205-46. The contractor asserted attorney-client privilege as the basis for withholding the required information.

The contractor provided two ▮▮▮▮▮ printouts, a gas receipt and a ▮▮▮▮▮ receipt totaling $251.70 to support claimed travel costs. Although the ▮▮▮▮▮ identified an individual, the documentation did not identify the individual's title, relationship to the contractor, or the business purpose of the travel. Additionally, the remaining documentation consisted primarily of mileage calculations and receipts that did not identify the traveler.

As a result, the contractor did not provide sufficient documentation to determine whether costs are allowable under FAR 31.205-46. The contractor asserted attorney-client privilege as the basis for withholding the required information.

The contractor provided nine ▮▮▮▮▮ printouts with manual calculations totaling $521.85 to support claimed travel costs. Review of the documentation identified multiple duplicates and substantially similar route calculations for the same travel purpose and destination, including mileage claims for identical routes that were billed separately. Several mileage calculations were supported only by ▮▮▮▮▮ printouts and did not identify the traveler, the traveler's title, or the traveler's relationship to the contractor.

In addition, the documentation did not identify a period of performance, and several travel entries identified only vague or potential purpose for the trip. As a result, the documentation did not demonstrate who incurred the travel costs, how the travel benefited contract performance, or whether the mileage claimed was reasonable and allocable to the contract.

41

CUI

OIS 850.3                                                                    June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
             MOA Agreement Number DCAA-0001-26
             DCAA Assignment No. 11201-20264990000288

Pursuant to FAR 31.205-46, the contractor did not provide sufficient documentation to determine allowability of the claimed travel costs. Specifically, the contractor did not provide the traveler's name, title, relationship to the contractor, or adequate support demonstrating the business purpose of the travel. The contractor asserted attorney-client privilege as the basis for withholding the required information; however, the contractor did not demonstrate how the information necessary to evaluate travel cost allowability is protected by attorney-client privilege.

The contractor provided two ▮▮▮▮▮▮▮ printouts totaling $213.67 to support claimed travel costs. The documentation identified travel routes and included a stated business purpose related to transporting an ▮▮▮ client to an ASC appointment. However, the documentation did not identify the traveler, the traveler's title, or the traveler's relationship to the contractor.

Although portions of the documentation identified the travel purpose and route information, sufficient information was not provided to determine whether the claimed travel costs were reasonable, allocable, and allowable in accordance with FAR 31.205-46. To support allowability, the contractor should provide documentation identifying the traveler, the traveler's relationship to the contractor, and support demonstrating that the claimed travel costs were incurred in performance of the contract. The contractor asserted attorney-client privilege as the basis for withholding the required information.

The contractor claimed $1,470.29 of reimbursement for lodging, airfare, meals, rideshare services, and mileage associated with asylum interviews and client meetings. While the documentation generally identified a travel purpose, the support did not consistently identify the individual traveler, the traveler's relationship to the contractor, or the business necessity of the travel.

For example, the airfare documentation included dates and confirmation information but did not identify the traveler or explain the business purpose of the trip. Similarly, rideshare and mileage documentation identified destinations and travel routes but did not consistently identify who incurred the expense or demonstrate the individual's connection to contract performance. In addition, mileage claims were supported by ▮▮▮▮▮▮▮ printouts; however, the documentation did not demonstrate that the routes claimed represented the most reasonable travel method available.

As a result, the contractor did not provide sufficient documentation to determine whether the claimed travel costs were reasonable, allocable, and allowable in accordance with FAR 31.205-46. To support allowability, the contractor should provide documentation identifying the

42

CUI

OIS 850.3                                                                                          June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
          MOA Agreement Number DCAA-0001-26
          DCAA Assignment No. 11201-20264990000288

traveler, the traveler's relationship to the contractor, the business purpose of the travel, and support demonstrating how the amount claimed was calculated.

██████

The ████ invoice consists of four pages totaling $621.23 of mileage documents with the map showing a starting point and destination, date of travel, and purpose of travel. It did not provide the name of the individual traveling, their title or their relationship to the contractor.

As a result, the contractor did not provide sufficient documentation to determine whether the claimed travel costs were reasonable, allocable, and allowable in accordance with FAR 31.205-46. To support allowability, the contractor should provide documentation identifying the traveler, the traveler's relationship to the contractor, the business purpose of the travel, and support demonstrating how the amount claimed was calculated.  The contractor asserted attorney-client privilege as the basis for withholding the required information.

████

████ invoice consists of a ██████████ printout with manual mileage calculations and parking receipts totaling $97.60 in support of claimed travel costs. The supporting documentation does show a location of travel; however, it does not identify the traveler, the traveler's title, the traveler's relationship to the contractor, or the business purpose of the travel.

As a result, the contractor did not provide sufficient documentation to determine whether the claimed travel costs were reasonable, allocable, and allowable in accordance with FAR 31.205-46. To support allowability, the contractor should provide documentation identifying the traveler, the traveler's relationship to the contractor, the business purpose of the travel, and support demonstrating how the amount claimed was calculated.  The contractor asserted attorney-client privilege as the basis for withholding the required information.

████████

The contractor provided a ██████████ printout with manual mileage calculations and ██████ receipts totaling $282.40 in support of claimed travel costs. The supporting documentation does show a location of travel; however, it does not identify the traveler, the traveler's title, the traveler's relationship to the contractor, or the business purpose of the travel.

As a result, the contractor did not provide sufficient documentation to determine whether the claimed travel costs were reasonable, allocable, and allowable in accordance with FAR 31.205-46. To support allowability, the contractor should provide documentation identifying the traveler, the traveler's relationship to the contractor, the business purpose of the travel, and support demonstrating how the amount claimed was calculated.  The contractor asserted attorney-client privilege as the basis for withholding the required information.

CUI

OIS 850.3                                                                June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
          MOA Agreement Number DCAA-0001-26
          DCAA Assignment No. 11201-20264990000288

███████

The contractor provided five ██████████ printouts with manually calculated mileage claims totaling $397.18 to support claimed travel costs. The documentation contained redactions and included manually entered travel dates, mileage amounts, and reimbursement calculations; however, it did not identify the traveler, the traveler's title, the traveler's relationship to the contractor, or the business purpose of the travel.

As a result, the contractor did not provide sufficient documentation to determine whether the claimed travel costs were reasonable, allocable, and allowable in accordance with FAR 31.205-46. To support allowability, the contractor should provide documentation identifying the traveler, the traveler's relationship to the contractor, the business purpose of the travel, and support demonstrating how the amount claimed was calculated. The contractor asserted attorney-client privilege as the basis for withholding the required information.

█████

████ invoice consists of one ██████████ printout page with manual mileage calculations totaling $86.10 in support of claimed travel costs. The supporting documentation does show a location of travel; however, it does not identify the traveler, the traveler's title, the traveler's relationship to the contractor, or the business purpose of the travel.

As a result, the contractor did not provide sufficient documentation to determine whether the claimed travel costs were reasonable, allocable, and allowable in accordance with FAR 31.205-46. To support allowability, the contractor should provide documentation identifying the traveler, the traveler's relationship to the contractor, the business purpose of the travel, and support demonstrating how the amount claimed was calculated.  The contractor asserted attorney-client privilege as the basis for withholding the required information.

█████

The contractor provided a ██████████ printout with manual mileage calculations totaling $76.58 to support claimed travel costs.  The supporting documentation does show a location of travel; however, it does not identify the traveler, the traveler's title, the purpose of the trip,.

As a result, the contractor did not provide sufficient documentation to determine whether the claimed travel costs were reasonable, allocable, and allowable in accordance with FAR 31.205-46. To support allowability, the contractor should provide documentation identifying the traveler, the traveler's relationship to the contractor, the business purpose of the travel, and support demonstrating how the amount claimed was calculated. The contractor asserted attorney-client privilege as the basis for withholding the required information.

44

OIS 850.3                                                                                      June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
          MOA Agreement Number DCAA-0001-26
          DCAA Assignment No. 11201-20264990000288



The contractor claimed travel costs totaling $760.37 and provided mileage documentation, hotel receipts, meal receipts, and parking receipts in support of the claim. While the hotel documentation identified the traveler and dates of stay, the mileage documentation did not identify the traveler, the traveler's title, the traveler's relationship to the contractor, or the business purpose of the travel.

Additionally, the mileage documentation provided travel dates and locations but did not contain sufficient information to demonstrate how the travel benefitted contract performance or to support allowability of the claimed mileage costs. Review of the lodging costs determined the claimed lodging rates were consistent with applicable per diem rates for the location and period reviewed.

As a result, the contractor did not provide sufficient documentation to determine whether the claimed travel costs were reasonable, allocable, and allowable in accordance with FAR 31.205-46. To support allowability, the contractor should provide documentation identifying the traveler, the traveler's relationship to the contractor, the business purpose of the travel, and support demonstrating how the amount claimed was calculated.  The contractor asserted attorney-client privilege as the basis for withholding the required information.



████████████ submitted a ████████ printout with manual mileage calculations totaling $98.70. The provided documentation does not have the name of the traveler, the traveler's title, the purpose of the trip, or the traveler's relationship to the contractor that would deem the cost allowable.

As a result, the contractor did not provide sufficient documentation to determine whether the claimed travel costs were reasonable, allocable, and allowable in accordance with FAR 31.205-46. To support allowability, the contractor should provide documentation identifying the traveler, the traveler's relationship to the contractor, the business purpose of the travel, and support demonstrating how the amount claimed was calculated. The contractor asserted attorney-client privilege as the basis for withholding the required information.

The contractor provided nine pages of ████████ printouts with manual calculations totaling $1,034.25 to support claimed travel costs.  The documentation included travel dates and travel routes; however, it did not identify the traveler, the traveler's title, the traveler's relationship to the contractor, or the business purpose of the travel.

CUI

OIS 850.3                                                                    June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
          MOA Agreement Number DCAA-0001-26
          DCAA Assignment No. 11201-20264990000288

As a result, the contractor did not provide sufficient documentation to determine whether the claimed travel costs were reasonable, allocable, and allowable in accordance with FAR 31.205-46. To support allowability, the contractor should provide documentation identifying the traveler, the traveler's relationship to the contractor, the business purpose of the travel, and support demonstrating how the amount claimed was calculated.  The contractor asserted attorney-client privilege as the basis for withholding the required information.



███ provided a ██████████ printout with mileage calculations totaling $188.25, the starting city and ending city are the same, no middle destination, it provides a travel date; the █████ receipt redacts whom the reservation is for, and "driven by", but has ██████████ noting a destination: ██████████. Neither the map nor the receipt provides a name of the person traveling, the title of person traveling, the purpose of the travel nor the person's relationship to the contractor that would deem these costs to be allowable.

As a result, the contractor did not provide sufficient documentation to determine whether the claimed travel costs were reasonable, allocable, and allowable in accordance with FAR 31.205-46. To support allowability, the contractor should provide documentation identifying the traveler, the traveler's relationship to the contractor, the business purpose of the travel, and support demonstrating how the amount claimed was calculated.  The contractor asserted attorney-client privilege as the basis for withholding the required information.



██████████ provided 35 pages consisting of ██████████ printouts, ██████, parking, food and gas receipts totaling $2475.33; the dates range from 12/4 - 12/30/2025; we verified that the per diem billed for the ██████ was within the approved per diem rates; with the exception of seeing the name ███ (tipping) on the ██████████, neither of the documents provide a name or title for the person traveling, the purpose of the travel nor the persons relationship to the contractor that would deem the costs to be allowable.

As a result, the contractor did not provide sufficient documentation to determine whether the claimed travel costs were reasonable, allocable, and allowable in accordance with FAR 31.205-46. To support allowability, the contractor should provide documentation identifying the traveler, the traveler's relationship to the contractor, the business purpose of the travel, and support demonstrating how the amount claimed was calculated.  The contractor asserted attorney-client privilege as the basis for withholding the required information.

███ provided four pages of ██████████ totaling $945.28, with "travel" dates ranging from 12/3/2025- 12/22/2025; there are redactions of starting points, but an end address is visible.

CUI

OIS 850.3                                                                                      June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
             MOA Agreement Number DCAA-0001-26
             DCAA Assignment No. 11201-20264990000288

However, there is no name, no title, no purpose for the trip, and did not include the person taking the trip relationship to the contractor that would deem the costs to be allowable.

As a result, the contractor did not provide sufficient documentation to determine whether the claimed travel costs were reasonable, allocable, and allowable in accordance with FAR 31.205-46. To support allowability, the contractor should provide documentation identifying the traveler, the traveler's relationship to the contractor, the business purpose of the travel, and support demonstrating how the amount claimed was calculated.  The contractor asserted attorney-client privilege as the basis for withholding the required information.

███████

███████ provided 15 pages of ███████████ printouts with calculations inserted totaling $3,079.44 for travel occurring between December 2, 2025, and December 22, 2025. Review of the documentation identified multiple mileage calculation originating from the same location on the same travel date but reflecting different destinations, including claims totaling 384.7 miles.

The documentation did not identify the traveler, the traveler's title, the traveler's relationship to the contractor, or the business purpose of the travel. In addition, the contractor did not support demonstrating how the mileage amounts claimed were calculated or how the travel benefited contract performance.

As a result, the contractor did not provide sufficient documentation to determine whether the claimed travel costs were reasonable, allocable, and allowable in accordance with FAR 31.205-46. To support allowability, the contractor should provide documentation identifying the traveler, the traveler's relationship to the contractor, the business purpose of the travel, and support demonstrating how the amount claimed was calculated.  The contractor asserted attorney-client privilege as the basis for withholding the required information.

███████

███████ supporting documentation consists of three pages of ███████████ and ██████ ███████ screen shots totaling $170.80 to support claimed travel costs associated with client meetings. Review of the documentation identified mileage calculations that appear to overstand the distance traveled by applying roundtrip mileage more than once, resulting in a claimed amount that exceeds the allowable reimbursement supported by the documentation provided.

In addition, the documentation did not identify the traveler, the traveler's title, or the traveler's relationship to the contractor. The documentation also did not provide sufficient information to verify the actual travel route, including the starting and ending locations of the trip. While the documentation identified a travel purpose, the contractor did not provide sufficient support to determine whether the claimed costs were reasonable, allocable, and allowable in accordance with FAR 31.205-46. To support allowability, the contractor should

47

OIS 850.3                                                                      June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
          MOA Agreement Number DCAA-0001-26
          DCAA Assignment No. 11201-20264990000288

provide documentation identifying the traveler, the traveler's relationship to the contractor, the business purpose of the travel, and support demonstrating how the amount claimed was calculated.  The contractor asserted attorney-client privilege as the basis for withholding the required information.

███████

███████ provided two █████████ with manual mileage calculations totaling $448.60 to support claimed travel costs. The supporting documentation provided travel dates, a purpose for the travel; however, the documents did not provide a name or title of the person traveling or the person's relationship with the contractor.

As a result, the contractor did not provide sufficient documentation to determine whether the claimed travel costs were reasonable, allocable, and allowable in accordance with FAR 31.205-46. To support allowability, the contractor should provide documentation identifying the traveler, the traveler's relationship to the contractor, the business purpose of the travel, and support demonstrating how the amount claimed was calculated.  The contractor asserted attorney-client privilege as the basis for withholding the required information.

███

███ provided one █████████ printout with manual mileage calculations totaling $75.18. While the documentation has the travel date and the purpose of a client meeting, the documentation did not provide a name or title of the person traveling or the person's relationship with the contractor.

As a result, the contractor did not provide sufficient documentation to determine whether the claimed travel costs were reasonable, allocable, and allowable in accordance with FAR 31.205-46. To support allowability, the contractor should provide documentation identifying the traveler, the traveler's relationship to the contractor, the business purpose of the travel, and support demonstrating how the amount claimed was calculated.  The contractor asserted attorney-client privilege as the basis for withholding the required information.

████

The contractor provided a █████████ printout with manual mileage calculations totaling $163.94 with a travel date of December 29, 2025. The documentation did not identify the traveler, the traveler's title, the traveler's relationship to the contractor, or the business purpose of the travel. In addition, the contractor did not support demonstrating how the mileage amounts claimed were calculated or how the travel benefited contract performance.

As a result, the contractor did not provide sufficient documentation to determine whether the claimed travel costs were reasonable, allocable, and allowable in accordance with FAR

48

OIS 850.3                                                                                    June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
          MOA Agreement Number DCAA-0001-26
          DCAA Assignment No. 11201-20264990000288

31.205-46. To support allowability, the contractor should provide documentation identifying the traveler, the traveler's relationship to the contractor, the business purpose of the travel, and support demonstrating how the amount claimed was calculated.  The contractor asserted attorney-client privilege as the basis for withholding the required information.



The contractor provided a ▮▮▮▮▮▮▮ printout totaling $219.24 to support claimed travel costs. The documentation identified travel dates and travel routes; however, it did not identify the traveler, the traveler's title, the traveler's relationship to the contractor, or the business purpose of the travel. In addition, the documentation reflected multiple mile claims associated with the same travel locations on different dates without sufficient support demonstrating how the amounts claimed were calculated.

As a result, the contractor did not provide sufficient documentation to determine whether the claimed travel costs were reasonable, allocable, and allowable in accordance with FAR 31.205-46. To support allowability, the contractor should provide documentation identifying the traveler, the traveler's relationship to the contractor, the business purpose of the travel, and support demonstrating how the amount claimed was calculated. The contractor asserted attorney-client privilege as the basis for withholding the required information.

Based on our analysis of the Travel Cost element under contract 75P00125C00016 CLIN 2 2025.12 for December 2025 the submitted invoices are unallowable per FAR 31.205-46. The contractor did not provide sufficient information to substantiate the claimed travel costs.

## FAR References by each Cost Element

| Cost Element | Primary FAR References |
|---|---|
| Case Stipends | FAR 31.201-2, FAR 31.201-3, FAR 31.201-4, FAR 31.201-6, |
| Consultants | FAR 31.205-33 |
| Database Licenses | FAR 31.201-2, FAR 31.201-3, FAR 31.201-4, FAR 31.201-6, |
| Recruitment Costs | FAR 31.205-34 |
| Subcontractors | FAR 31.205-33 |
| Travel | FAR 31.205-46 |

## Contract Language

Excerpt from Contract 75P00125C00016.pdf

G.7 INVOICES

49

CUI

OIS 850.3                                                                    June 15, 2026

SUBJECT:  Request for DCAA Support to ORR for Forensic Auditing and Advisory Services
          MOA Agreement Number DCAA-0001-26
          DCAA Assignment No. 11201-20264990000288

<u>Additional Office of Acquisition Management Services (OAMS) requirements:</u>
          (i) The contractor shall submit invoices under this contract once per month. For indefinite delivery vehicles, separate invoices must be submitted for each order.
          (ii) Invoices must break-out price/cost by contract line item number (CLIN) as specified in the pricing section of the contract.
          (iii) Invoices that include time and materials or labor hours CLINS must include supporting documentation to (1) substantiate the number of labor hours invoiced for each labor category, and (2) substantiate material costs incurred (when applicable).

          Please direct any future contact regarding this memorandum to Teshara Jones, Teshara.Jones@acf.hhs.gov, at (202) 941-0475.

Teshara B. Jones - S2
Digitally signed by Teshara B. Jones -S2
Date: 2026.07.01 18:06:29 -04'00'

Teshara Jones
Investigative Support Auditor
Defense Contract Audit Agency

50

CUI

# EXHIBIT 5

**PAID INVOICES**

| CLIN/Month | CLIN 1: Legal Orientation | CLIN 2: Direct Services/Legal Representation | CLIN 3: Pro Bono/Recruitment | CLIN 4: Language Recruiting | **TOTAL** |
|---|---|---|---|---|---|
| Aug-25 | **$4,665,260.95** | **$13,944,719.64** | **$1,797,439.57** | **$670,815.44** | **$21,078,235.60** |
| Sep-25 | **$4,665,260.95** | **$15,836,729.78** | **$1,797,439.57** | **$670,815.44** | **$22,970,245.74** |
| Oct-25 | **$4,665,260.96** | **$17,475,889.58** | **$1,797,439.58** | **$670,815.46** | **$24,609,405.58** |
| Nov-25 | **$4,665,260.95** | **$13,765,849.73** | **$1,144,887.49** | **$670,815.44** | **$20,246,813.61** |
| Dec-25 | **$4,665,260.95** | PENDING | **$1,144,887.49** | **$670,815.44** | **$6,480,963.88** |
| Jan-26 | **$4,665,260.96** | PENDING | **$1,144,887.49** | **$670,815.46** | **$6,480,963.91** |
| Feb-26 | **$4,665,260.95** | PENDING | **$1,144,887.49** | **$670,815.44** | **$6,480,963.88** |
| Mar-26 | **$4,665,260.95** | PENDING | **$1,144,887.49** | **$670,815.44** | **$6,480,963.88** |
| Apr-26 | **$4,665,260.96** | $0.00 | **$1,144,887.49** | **$670,815.46** | **$6,480,963.91** |
| May-26 | **$4,665,260.95** | $0.00 | **$1,144,887.49** | **$670,815.44** | **$6,480,963.88** |
| Jun-26 | $0.00 | $0.00 | $0.00 | $0.00 | **$0.00** |
| Jul-26 | $0.00 | $0.00 | $0.00 | $0.00 | **$0.00** |
| **TOTAL** | **$46,652,609.53** | **$61,023,188.73** | **$13,406,531.15** | **$6,708,154.46** | **$127,790,483.87** |

# EXHIBIT 6



1025 Connecticut Ave NW, STE 1000A (#1008)
Washington, DC 20036
acaciajustice.org

June 15, 2026

Tatricia James
Contracting Officer
Director, Strategic Buying Center – Mission Support
Office of Mission Acquisition Solutions
Office of Acquisitions
Assistant Secretary for Financial Resources
U.S. Department of Health and Human Services
(202) 441-2795
tatricia.james@hhs.gov

***Via E-mail***

   Re: Demand for Payment of May 7, 2026 Invoice and Reservation of Rights

Dear Tatricia James:

This letter serves as formal notice that the U.S. Department of Health and Human Services, Administration for Children and Families ("Government") has failed to timely pay an invoice that the Acacia Center for Justice ("Acacia") properly submitted on May 7, 2026 under Contract No. 75P00125C00016 ("Contract"). *See* Enclosure (Invoice).

The Contract incorporates FAR 52.212-4, which requires the Government to make payment by the 30th day after receipt of a proper invoice, in accordance with the Prompt Payment Act and prompt payment regulations. *See* Contract at 52-53 and 58 (incorporating FAR 52.212-4 in lieu of a distinct applicable prompt payment clause); FAR 52.212-4(i)(2); 31 U.S.C. § 3903; 5 C.F.R. 1315 *et seq*.  Moreover, the Contract provides that Acacia is entitled to late payment interest for invoices that are not paid within 30 days. *See* FAR 52.212-4(i)(6) ("All amounts that become payable by the Contractor to the Government under this contract shall bear simple interest from the date due until paid unless paid within 30 days of becoming due.").

On May 7, 2026, Acacia submitted an invoice seeking payment of $14,938,000.96 for services billed under CLIN 2 – Option Period 1 of the Contract. Payment was due on June 6, 2026. Your email to Acacia on Friday, May 29, 2026 stated that the Government is agreeing to process payment of submitted CLIN 2 invoices.  However, as of the date of this letter, the Government has not yet remitted payment.

As a consequence of this non-payment, Acacia is entitled to late payment interest in accordance with FAR 52.212-4(i)(6). Acacia estimates that $15,404.81 in interest has

1



1025 Connecticut Ave NW, STE 1000A (#1008)
Washington, DC 20036
acaciajustice.org

accrued since payment became past due.[1] Acacia respectfully requests that the Government immediately remit payment of the past due amount and equitably adjust the Contract price to account for the late payment interest owed, as determined by the Government.

Acacia remains committed to performing under the Contract. If you have questions or would like to discuss this further, please contact Acacia's Chief Financial Officer, Jessica Lee, at 213-660-9093 or jlee@acaciajustice.org.

Sincerely,

Leah Prestamo
General Counsel, Acacia Center for Justice
lprestamo@acaciajustice.org

Enclosure

---

[1] Acacia respectfully requests that the Government verify the amount actually due for late payment interest, since Acacia is only able to provide an estimate.

2



**ACACIA**
CENTER FOR JUSTICE

# INVOICE

**CUSTOMER**

| | | | | |
|---|---|---|---|---|
| Name: | Administration for Children and Families | | Date: | 4/8/2026 |
| Address: | 330 C Street, S.W. | | Invoice No. | Dec 2025 CLIN 2 |
| | | | TIN: | 87-4099467 |
| City: | Washington   State:   DC   ZIP:   20201 | | | |
| Attn: | | | | |

| Date | DESCRIPTION | TOTAL |
|---|---|---|
| December 1 - December 31 2025 | Project: Legal Services for Unaccompanied Children<br><br>**Contract No: 75P00125C00016**<br><br>CLIN 2: Representation, Other Legal Assistance, Data Collection & Analysis, and Services at Emergency Facilities (T&M).  **IPP Item 2**<br><br><br><br>Please remit your payment to: Acacia Center for Justice<br>Wire instruction:<br>Bank: ▮▮▮▮▮▮<br>Bank routing no: ▮▮▮▮▮<br>Account name: ▮▮▮▮▮▮▮▮<br>Acacia Bank account no: ▮▮▮▮▮ | $14,938,000.96 |
| | **Total Amount due**   $   14,938,000.96 | |

▮▮▮▮▮▮▮▮

4/8/2026
Date

*Should you need to contact Acacia to discuss these charges, please contact* ▮▮▮▮▮ : ▮▮▮▮▮▮

**Acacia Center for Justice**
Contract No: 75P00125C00016
CLIN 2 Services December 2025
Overall

| Labor Category | Budget | Hourly Rate | Budget Hours | UCP Hours | UCP Total Current Period | Total UCP Hours YTD | Total UCP YTD | % spent | Remaining Balance | % Bal |
|---|---|---|---|---|---|---|---|---|---|---|
| **Acacia Center for Justice** | | | | | | | | | | |
| **Total Labor** | | | | | | | | | | |
| **Subcontractors** | | | | | | | | | | |
| **Total Labor** | | | | | | | | | | |
| **Grand Labor Total** | | | | | | | | | | |
| **Other Direct Costs** | | | | | | | | | | |
| **Total Other Direct Cost** | | | | | | | | | | |
| Grand Totals CLIN 2 UCP IPP Item 110 | | | | | $14,938,000.96 | | | | | |

2