GIBSON, DUNN & CRUTCHER LLP
Katherine Marquart (CA Bar No. 248043)
Ariana Sañudo (CA Bar No. 324361)
Arthur Halliday (CA Bar No. 347620)
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7000
kmarquart@gibsondunn.com
asanudo@gibsondunn.com
ahalliday@gibsondunn.com

Laura M. Sturges (CO Bar No. 36843) (pro
hac vice)
Patricia M. Herold (CO Bar No. 54552) (pro
hac vice)
Caelin Moriarity Miltko (CO Bar No. 56721)
(pro hac vice)
1900 Lawrence Street, Suite 3000
Denver, CO 80202-2211
(303) 298-5700
lsturges@gibsondunn.com
pherold@gibsondunn.com
cmoriaritymiltko@gibsondunn.com

IMMIGRANT DEFENDERS LAW
CENTER
Alvaro M. Huerta (CA Bar No. 274787)
Carson A. Scott (CA Bar No. 337102)
Lya Ferreyra (CA Bar No. 340148)
Immigrant Defenders Law Center
634 S. Spring St., 10th Floor
Los Angeles, CA
(213) 634-0999
ahuerta@immdef.org
cscott@immdef.org
lferreyra@immdef.org

JUSTICE ACTION CENTER
Esther H. Sung (CA Bar No. 255962)
Karen C. Tumlin (CA Bar No. 234691)
Laura Flores-Perilla (CA Bar No. 355645)
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
(323) 450-7272
esther.sung@justiceactioncenter.org
karen.tumlin@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org

AMICA CENTER FOR IMMIGRANT
RIGHTS
Adina Appelbaum (VA Bar No. 88974) (pro
hac vice)
Samantha Hsieh  (VA Bar No. 90800) (pro
hac vice)
Peter Alfredson (D.C. Bar No. 1780258) (pro
hac vice)
Evan Benz (NC Bar No. 49077) (pro hac
vice)
Amica Center for Immigrant Rights
1025 Connecticut Ave., NW, Suite 701
Washington, D.C. 20036
(202) 331-3320
adina@amicacenter.org
sam@amicacenter.org
peter@amicacenter.org
evan@amicacenter.org
Attorneys for Plaintiffs

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, et al., <br><br> Plaintiffs, <br> v. <br><br> UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., <br><br> Defendants. | CASE NO. 4:25-CV-02847-AMO <br><br> **PLAINTIFFS' NOTICE OF EMERGENCY MOTION AND EMERGENCY MOTION TO ENFORCE THE PRELIMINARY INJUNCTION** <br><br> Date:     August 27, 2026 <br> Time:     2:00 p.m. <br> Judge:    Hon. Araceli Martínez-Olguín <br> Date Action Filed:  March 26, 2025 |

Gibson, Dunn &
Crutcher LLP

PLEASE TAKE NOTICE that, on August 27, 2026, at 2:00 p.m., in the United States District Court for the Northern District of California, 1301 Clay St., Oakland, CA 94612, Plaintiffs Community Legal Services in East Palo Alto, Social Justice Collaborative, Amica Center for Immigrant Rights, Estrella del Paso, Florence Immigrant and Refugee Rights Project, Galveston-Houston Immigrant Representation Project, Immigrant Defenders Law Center, National Immigrant Justice Center, Northwest Immigrant Rights Project, Rocky Mountain Immigrant Advocacy Network, and Vermont Asylum Assistance Project, will, and hereby do, move this Court for an order enforcing the Court's April 29, 2025 preliminary injunction order and directing Defendants United States Department of Health and Human Services, Office of Refugee Resettlement, and Department of the Interior to comply with the preliminary injunction by stopping their actions that have "cut[] off access to congressionally appropriated funding" for "direct legal representation services to unaccompanied children" and making all payments currently owed for services provided.

The Parties are concurrently filing a joint stipulation for an order to shorten time on this emergency motion and to set the hearing date for August 6, 2026, at 2:00 p.m., and for the Court to set an expedited briefing schedule for Defendants' opposition brief and Plaintiffs' reply brief before that hearing date.

Plaintiffs note that the current contract between Acacia and ORR under which Defendants have been purporting to comply with the preliminary injunction expires on July 31, 2026—the day Defendants have insisted on as their stipulated date to file an opposition brief. If the Court is concerned about this approaching deadline, Plaintiffs invite the Court to set a hearing date for the week of July 27, 2026, with a truncated briefing schedule to fit.

On April 29, 2025, this Court issued a preliminary injunction, which enjoined Defendants "from withdrawing the services or funds provided by the Office of Refugee Resettlement ('ORR') as of March 20, 2025, under the Trafficking Victims Protection Reauthorization Act of 2008 ('TVPRA'), 8 U.S.C. § 1232(c)(5), and ORR's Foundational Rule, 45 C.F.R. § 410.1309(a)(4), particularly ORR's provision of funds for direct legal representation services to unaccompanied children," and precluded Defendants from "cutting off access to congressionally appropriated funding for its duration." Dkt. 87 at 28. Since April 29, 2025, Defendants have repeatedly represented to this Court that they are

Gibson, Dunn & Crutcher LLP

ii

complying with this injunction. Dkt. 91, 98, 104, 127, 137, 142, 146, 148, 150, 151, 153, 156. But since December 2025, Defendants have withheld all funds owed to Plaintiffs and other providers "for direct legal representation services to unaccompanied children." This withholding of funds is in direct violation of this Court's April 29, 2025 order. Following good-faith attempts to meet and confer with Defendants, Plaintiffs now move for an order enforcing the preliminary injunction.

The motion is based upon this notice of motion; the memorandum of points and authorities in support thereof that follows; the declarations of Michael Lukens, Marion Donovan-Kaloust, Wendy Young, Elizabeth Sanchez Kennedy, Sui Chung, Katrina Logan, Alica R. Horst, Vanessa Gutierrez, Lauren Fisher Flores, Bethany E. Bragg, Cristel Stefany Martinez, and Melissa M. Lopez filed concurrently herewith; the proposed order filed concurrently herewith; the pleadings, records, and papers on file in this action; oral argument of counsel; and any other matters properly before the Court.

Gibson, Dunn & Crutcher LLP

PLAINTIFFS' NOTICE OF MOT. AND EMERGENCY MOT. TO ENFORCE THE PRELIM. INJUNCTION
CASE NO. 4:25-CV-02847-AMO

Respectfully submitted,

July 23, 2026

/s/ Laura M. Sturges

GIBSON, DUNN & CRUTCHER LLP
Katherine Marquart (CA Bar No. 248043)
Ariana Sañudo (CA Bar No. 324361)
Arthur Halliday (CA Bar No. 347620)
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7000
kmarquart@gibsondunn.com
asanudo@gibsondunn.com
ahalliday@gibsondunn.com

Laura M. Sturges (CO Bar No. 36843) (*pro hac vice*)
Patricia M. Herold (CO Bar No. 54552) (*pro hac vice*)
Caelin Moriarity Miltko (CO Bar No. 56721) (*pro hac vice*)
1900 Lawrence Street, Suite 3000
Denver, CO 80202-2211
(303) 298-5700
lsturges@gibsondunn.com
pherold@gibsondunn.com
cmoriaritymiltko@gibsondunn.com

/s/ Alvaro M. Huerta

IMMIGRANT DEFENDERS LAW CENTER
Alvaro M. Huerta (CA Bar No. 274787)
Carson A. Scott (CA Bar No. 337102)
Lya Ferreyra (CA Bar No. 340148)
Immigrant Defenders Law Center
634 S. Spring St., 10th Floor
Los Angeles, CA
(213) 634-0999
ahuerta@immdef.org
cscott@immdef.org
lferreyra@immdef.org

/s/ Karen C. Tumlin

JUSTICE ACTION CENTER
Esther H. Sung (CA Bar No. 255962)
Karen C. Tumlin (CA Bar No. 234691)
Laura Flores-Perilla (CA Bar No. 355645)
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
(323) 450-7272
esther.sung@justiceactioncenter.org
karen.tumlin@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org

/s/ Samantha Hsieh

AMICA CENTER FOR IMMIGRANT RIGHTS
Adina Appelbaum (*pro hac vice*)
Samantha Hsieh (*pro hac vice*)
Peter Alfredson (D.C. Bar No. 1780258)
Evan Benz (*pro hac vice*)
Amica Center for Immigrant Rights
1025 Connecticut Ave., NW, Suite 701
Washington, D.C. 20036
(202) 331-3320
adina@amicacenter.org
sam@amicacenter.org
peter@amicacenter.org
evan@amicacenter.org

*Attorneys for Plaintiffs*

PLAINTIFFS' NOTICE OF MOT. AND EMERGENCY MOT. TO ENFORCE THE PRELIM. INJUNCTION
CASE NO. 4:25-CV-02847-AMO

# TABLE OF CONTENTS

**INTRODUCTION**..................................................................................................................**1**

**BACKGROUND** ..................................................................................................................**2**

**LEGAL STANDARD** ...........................................................................................................**8**

**ARGUMENT**.......................................................................................................................**9**

    A......... THE PRELIMINARY INJUNCTION FORBIDS DEFENDANTS FROM "CUTTING OFF" REQUIRED FUNDING, WITH THE OBJECTIVE OF ENSURING DEFENDANTS' COMPLIANCE WITH THE TVPRA AND FOUNDATIONAL RULE.......................................................................................................**10**

    B........ DEFENDANTS ARE IN VIOLATION OF BOTH THE EXPLICIT COMMAND AND THE SPIRIT OF THE PRELIMINARY INJUNCTION BECAUSE THEY CUT OFF FUNDING FOR LEGAL SERVICES BY CONDITIONING FUNDING ON AN IMPOSSIBLE DEMAND.........................................................................................**11**

    C........ DEFENDANTS' RIGHTS UNDER THE CONTRACT AND FEDERAL ACQUISITION REGULATION ARE IRRELEVANT TO THE PRELIMINARY INJUNCTION AND THIS MOTION.......................................**14**

**CONCLUSION**...................................................................................................................**16**

Gibson, Dunn &
Crutcher LLP

PLAINTIFFS' NOTICE OF MOT. AND EMERGENCY MOT. TO ENFORCE THE PRELIM. INJUNCTION
CASE NO. 4:25-CV-02847-AMO

# TABLE OF AUTHORITIES

**Cases**

*Afghan and Iraqi Allies Under Serious Threat Because of Their Faithful Service to the United States v. Rubio*,
  824 F. Supp. 3d 64 (D.D.C. 2026) ...................................................................................14

*City and County of San Francisco v. Trump*,
  782 F. Supp. 3d 830 (N.D. Cal. 2025) ...............................................................................9

*Cmty. Legal Servs. in East Palo Alto, et al. v. U.S. Dep't of Health and Human Servs., et al.*
  No. 25-2808 (9th Cir. May 14, 2025) ...........................................................................11, 15

*E. Bay Sanctuary Covenant v. Barr*,
  391 F. Supp. 3d 974 (N.D. Cal. 2019) ...............................................................................9

*Flaherty v. Pritzker*,
  17 F. Supp. 3d 52 (D.D.C. 2014) ........................................................................................9

*Frew ex rel. Frew v. Hawkins*,
  540 U.S. 431 (2004) .............................................................................................................8

*Inst. of Cetacean Research v. Sea Shepherd Conservation Soc.*,
  774 F.3d 935 (9th Cir. 2014)..........................................................................................9, 12

*Nat'l Res. Def. Council v. Sw. Marine Inc.*,
  242 F.3d 1163 (9th Cir. 2001)..............................................................................................9

*New York Times Co. v. Dept. of Defense*,
  --- F. Supp. 3d ---, 2026 WL 962252 (D.D.C. Apr. 9, 2026)..........................9, 12, 14, 15

*Simon v. City and County of San Francisco*,
  No. 22-cv-05541-JST, 2024 WL 4314207 (N.D. Cal. Sept. 26, 2024)...................... 10, 11

*Spallone v. United States*,
  493 U.S. 265 (1990).............................................................................................................9

*Thakur v. Trump*,
  795 F. Supp. 3d 1168 (N.D. Cal. 2025) ..............................................................................9

**Statutes**

8 U.S.C. § 1232(c)(5)..........................................................................................................2, 10

**Regulations**

45 C.F.R. § 410.1309(a)(4) .........................................................................................2, 3, 10, 11, 15

Gibson, Dunn & Crutcher LLP

PLAINTIFFS' NOTICE OF MOT. AND EMERGENCY MOT. TO ENFORCE THE PRELIM. INJUNCTION
CASE NO. 4:25-CV-02847-AMO

**INTRODUCTION**

This case has always been about a single problem: Congress commanded Defendants to fund legal services for unaccompanied noncitizen children; Defendants have creatively attempted to illegally cut off that funding and prevent vulnerable children from receiving legal services. Defendants first cancelled the contract through which they historically had complied with Congress's mandate. The Court saw through Defendants' insistence that this was merely a contracting decision, granting a preliminary injunction requiring Defendants to continue funding legal services as required by statute and regulation, and prohibiting Defendants from "cutting off" the funding Congress requires them to give. Now Defendants are trying again, employing a new tactic that is more subtle but no less illegal, and which now violates the Court's order as well as the law. By withholding payments due and conditioning continued funding for legal services on Plaintiffs' ability to perform an impossible task, Defendants cut off funding for legal services for unaccompanied children provided since December 2025, in violation of this Court's order.

Plaintiffs bring this matter to the Court's attention because Defendants' funding cut-off is causing the same irreparable harm the Court sought to prevent in its preliminary injunction. As the Court found in its April 29, 2025 preliminary injunction order, Plaintiffs suffer significant and irreparable harm from Defendants cutting off funding for legal services for unaccompanied children as required by the Trafficking Victims Protection Reauthorization Act ("TVPRA") and the related Foundational Rule. The Court based that finding on the harms Plaintiffs had already suffered—and would soon suffer—after just a short period when Defendants illegally withheld funding. Now the harms are worse, as Defendants have not paid for any services rendered since November 30, 2025. Plaintiff organizations are already beginning furloughs and a fragile network of legal services organizations dedicated to serving unaccompanied children is on the brink of collapse—preventing Plaintiffs from taking on new representations, impeding them from retaining highly experienced staff and institutional memory, and even causing many children to lose their lawyers. The long-term systemic consequences of Defendants' actions on the legal services available to unaccompanied children are becoming more severe each day.

Defendants have congressionally appropriated funding available to fund legal services as

required by the TVPRA and the Foundational Rule—and the preliminary injunction. But they are choosing not to do so. By their own admission, Defendants are refusing to fund nearly $15 million in legal services from December 2025 alone, and tens of millions of dollars in legal services provided in the months since. Whether Defendants' choice is based on a claimed contractual right, a citation to Federal Acquisition Regulations, or an ideological difference with Congress, it is a choice both the text and spirit of this Court's order (as well as the TVPRA and the Foundational Rule) do not permit.

## BACKGROUND

Plaintiffs are legal services organizations that, prior to March 20, 2025, "received funding for their work from ORR disbursed through Acacia Center for Justice." Dkt. 87 at 4. They are nonprofits that, among other services, provide direct representation to unaccompanied children across the country. *Id.* at 1. Plaintiffs do this work because they share the mission of ensuring that unaccompanied children have legal representation—no child, baby, or toddler should have to stand alone in court. *Id.* at 4.

Defendants' first attempt last year to terminate legal services for unaccompanied children, which came via abrupt cancellation of the contract for those services, left Plaintiffs facing the untenable choice between cutting vital services or laying off their "specialized and seasoned attorneys." Dkt. 87 at 4. Defendants' cancellation "prevent[ed] Plaintiffs from providing thousands of unaccompanied children direct representation" and, because Plaintiffs are the only organizations doing this work in most areas, the "unaccompanied children to whom Plaintiffs would normally have provided representation [were] instead facing immigration court proceedings without counsel." *Id.*

Following Defendants' March 2025 cancellation letter "terminating the contract line items through which HHS and ORR provided funding for counsel for unaccompanied children in immigration proceedings," Dkt. 87 at 3, Plaintiffs promptly filed the present lawsuit. Plaintiffs alleged that the Cancellation Order violated the TVPRA, 8 U.S.C. § 1232(c)(5), and ORR's Foundational Rule, 45 C.F.R. § 410.1309(a)(4), and that it was "arbitrary and capricious" agency action. *Id.* at 5.

On April 29, 2025, this Court issued a preliminary injunction that enjoined Defendants "from withdrawing the services or funds provided by the Office of Refugee Resettlement ('ORR') as of March 20, 2025, under the [TVPRA] and ORR's Foundational Rule, 45 C.F.R. § 410.1309(a)(4),

Gibson, Dunn & Crutcher LLP

2

particularly ORR's provision of funds for direct legal representation services to unaccompanied children," and precluded Defendants from "cutting off access to congressionally appropriated funding for its duration." Dkt. 87 at 28. The order contains no exceptions that would allow Defendants to "cut[] off" funding for any reason. And the order warned that "[n]on-compliance or delayed compliance may result in a contempt finding and sanctions." *Id.*

Defendants have repeatedly established their awareness of this Court's order, including by filing regular status reports as required by the order. *See* Dkt. 91, 98, 104, 127, 137, 142, 146, 148, 150, 151, 153, 156. In those status reports, Defendants have consistently represented that they have chosen to comply with the Court's order by contracting with Acacia Center for Justice ("Acacia") to pay Plaintiffs to provide legal services to unaccompanied children. *Id.* Defendants have never identified any other mechanism to comply with the order.

Until December 2025, Defendants' compliance, through a contract with Acacia (which in turn sub-contracts with Plaintiffs), followed a predictable pattern. Plaintiffs kept records of their services provided and submitted invoices with supporting information to Acacia. Lukens Decl. ¶ 5. For contract line item number 2, which encompasses direct representation of unaccompanied children, these invoices included breakdowns of hours worked to arrive at a total bill at various negotiated hourly rates. *Id.* Acacia submitted these invoices and supporting documentation to the assigned Contracting Officer Representative ("COR") for review. *Id.* ¶ 6. The COR then reviewed the documentation and asked Acacia any questions necessary to ensure payment was proper under the contract. *Id.* If Acacia itself did not have the information to answer these questions, it passed questions along to the relevant Plaintiff legal service providers. *Id.* Invariably, Acacia and Plaintiffs were always able to provide sufficient documentation and answers for the COR to approve the invoices. *Id.* ¶ 7. After the COR approved the invoices, Acacia submitted the invoices for payment in the Treasury Department payment system. *Id.* That system has a limited ability to handle large documents, so the submissions to the payment system generally lacked the same level of detail and supporting documentation as was submitted to the COR for approval. *Id.* Once in the payment system, Defendants have 30 days to pay the invoice and for ORR to issue payment. *Id.*

Plaintiffs understand that in August 2025, as Defendants were preparing to put a new contract

PLAINTIFFS' NOTICE OF MOT. AND EMERGENCY MOT. TO ENFORCE THE PRELIM. INJUNCTION
CASE NO. 4:25-CV-02847-AMO

in place with Acacia to continue complying with the preliminary injunction, Acacia asked the COR to confirm that the established invoice procedure would remain the same under the new contract. Lukens Decl. ¶ 8. Plaintiffs understand that the COR confirmed to Acacia that the tried-and-true invoicing procedure described above—which had worked uncontroversially for both Defendants and Plaintiffs for years—would remain the same going forward. *Id*. There was no mention or notice of any new information submission requirements or any hint that Defendants believed Plaintiffs' invoices needed new forms of substantiation.

Without warning or explanation, things changed after Acacia submitted the invoices for services performed for unaccompanied children in December 2025. Lukens Decl. ¶ 9. Acacia submitted these invoices for December 2025 to the COR in mid-March 2026, in line with the usual invoice timing. *Id*. The COR first sat on the invoices for six weeks—significantly longer than the usual review time. *Id*. ORR then asked Acacia for information the Government had never before requested, including timesheet-style information for work performed months ago, broken down by client. *Id*. ORR claimed this information was required to substantiate the invoices and that ORR could not issue payment without this information—although this information had never been requested or deemed necessary before, and although neither the contract nor the Federal Acquisition Regulation ("FAR") require it. *Id*. ¶ 10. Because the Government had never indicated Plaintiffs or Acacia should be recording and maintaining this information, much of the requested information simply does not exist. *Id*. ¶ 11. For example, ORR now requests timesheet-style information per client that would have to be recorded nearly contemporaneously to ensure accuracy. *Id*. ¶ 9. This information could not (and cannot) be re-created after the fact. *Id*. ¶¶ 11, 12.

Other information ORR demanded was legally privileged or confidential, and sharing it would violate Plaintiffs' ethical duties to their clients. Lukens Decl. ¶ 11. For example, ORR is demanding detailed information about specific work individual attorneys are doing for individual clients, which at the very least threatens to reveal privileged legal strategy. *Id*. Plaintiffs are bound by ethical rules that vary slightly state-by-state, but it is a consistent and bedrock obligation that attorneys have a duty of confidentiality to their clients that prohibits attorneys from "reveal[ing] information relating to the representation of a client" except in certain limited circumstances that do not apply here. *See* Am.

Bar Ass'n Model Rule 1.6.  This duty of confidentiality protects not just information that is within the attorney-client privilege, but *all* information "relating to the representation of a client." *Id.*  Plaintiffs' duty of confidentiality to their clients is especially and urgently important here, because it has been documented that ORR is sharing information with DHS—the opposing party of Plaintiffs' clients in immigration court—and other immigration enforcement agencies to whom Plaintiffs' clients may be adverse (and which have the power to detain and remove Plaintiffs' clients).  *See, e.g.,* Ximena Bustillo, "ICE officers granted access to unaccompanied minors database," NPR (Feb. 14, 2025), available at https://www.npr.org/2025/02/14/g-s1-48979/ice-unaccompanied-minors-database; *see also* Sens. Padilla, Schatz, et al., *Letter to Secretary Robert F. Kennedy, Jr. and Secretary Kristi Noem* (Apr. 8, 2025), accessible at https://www.padilla.senate.gov/wp-content/uploads/DHS-and-ORR-information-sharing-letter-to-Secs.-Noem-and-Kennedy_4.8.25.pdf.

Acacia has repeatedly told ORR that it was logistically and ethically impossible for Acacia or Plaintiffs to provide the requested information.  Lukens Decl. ¶ 11, Ex. A.  At first, Defendants appeared to accept this explanation.  On May 29, 2026, ORR confirmed to Acacia that it would process payment of the December 2025 invoices, as well as the invoices from January, February, and March 2026, to comply with the Court's preliminary injunction.  *Id.* ¶ 13.  But after delaying another month without payment, ORR reversed course and again took the position that it could not pay the invoices without the information that Acacia and Plaintiffs had now repeatedly told ORR that they cannot provide.  *Id.*  Now, months later, Defendants still have not paid any invoices, leaving representation for unaccompanied children un-funded since December 2025.

In response to Defendants' requests and to attempt to resolve this dispute, Plaintiffs understand that Acacia has made multiple offers to ORR of information Acacia or Plaintiffs could feasibly and ethically provide to address ORR's stated concerns.  Lukens Decl. ¶ 14.  For example, Acacia has offered to provide a list of children who are represented across the network; the total number of cases by legal service provider; a billing breakdown by provider and task code; and, if available and with consent, the provider name and whether the attorney has formally appeared.  *Id*.  Plaintiffs understand that ORR has not accepted this or any other of Acacia's offers and instead has continued to insist on information that Plaintiffs cannot feasibly and ethically provide.  *Id*.

PLAINTIFFS' NOTICE OF MOT. AND EMERGENCY MOT. TO ENFORCE THE PRELIM. INJUNCTION
CASE NO. 4:25-CV-02847-AMO

Defendants' ongoing withholding of funds has directly created a situation where some children have already lost representation, other children have been denied representation, and many fewer children in the future will receive representation. As the Court observed in granting the preliminary injunction, Defendants' cutting off of required funding for legal services "prevents Plaintiffs from providing thousands of unaccompanied children direct representation" and leaves many unaccompanied children needlessly "facing immigration court proceedings without counsel." Dkt. 87 at 4.

Declarations from Plaintiffs and other legal services organizations that sub-contract with Acacia to serve unaccompanied children demonstrate the devastating harms Defendants' actions have imposed on unaccompanied children. For example, Plaintiff Community Legal Services in East Palo Alto, which serves areas in rural California that are not served by other legal service providers, will be forced to reduce services to unaccompanied children, withdraw from existing representations, and turn away potential clients if Defendants continue to withhold funding. *See* Logan Decl. ¶¶ 6, 8,10, 12. Similarly, Plaintiff Estrella del Paso is the only provider of legal services to unaccompanied children in El Paso, Texas and was previously able to represent nearly every child appearing in El Paso immigration court. Because Defendants have cut off funding, however, Estrella del Paso has been unable to hire attorneys and will soon be unable to pay their existing attorneys; as of July 17, 2026, Estrella del Paso was forced to stop offering representation to new unaccompanied child clients. *See* Lopez Decl. ¶¶ 5, 6, 8, 9, 12. And for Estrella del Paso's existing unaccompanied child clients, without this funding, Estrella del Paso will no longer be able to make forward progress on their existing cases, such as covering the filing fees for these clients. *See id*. at ¶ 9. Plaintiff Galveston-Houston Immigrant Representation Project serves one of the regions most policed by immigration enforcement officers and has operated without 49% of its normal funding because of Defendants' actions—forcing the organization to limit the number of new cases it is taking, to limit ongoing representations, and to plan for inevitable withdrawals from ongoing cases if Defendants continue to withhold payment. *See* Kennedy Decl. ¶¶ 5, 9, 10-15. Plaintiff Immigrant Defenders Law Center is owed nearly $5 million in costs and has had to stop covering filing fees for child clients, spend down reserves to retain staff, and operate at minimal staffing levels that threaten its ability to maintain

Gibson, Dunn &
Crutcher LLP

6

representations and take on new clients. *See* Donovan-Kaloust Decl. ¶¶ 3-6. And Plaintiff Northwest Immigrant Rights Project, which is owed nearly $2 million in withheld payments, has been forced to freeze hiring and only take on emergency new cases—leaving many children in Washington without representation. *See* Gutierrez Decl. ¶¶ 9-13.

These harms extend well beyond the unaccompanied children served by Plaintiffs, with Defendants' actions resulting in the breakdown of legal services for unaccompanied children across the country. For example, non-party Americans for Immigrant Justice—the only provider of legal services for detained unaccompanied children in South Florida—has had to furlough 15 staff members because Defendants are withholding more than $1.6 million in payments due to the organization. *See* Chung Decl. ¶¶ 4, 9-10. The harms to Americans for Immigrant Justice in turn harm unaccompanied children, as Defendants' actions have left the organization unable to offer ongoing representation or take on new representations at their normal levels, increasing the risk that children in South Florida will have to appear in immigration court without a lawyer. *Id.* ¶ 9. Non-party KIND is furloughing a third of its U.S. staff and reducing hours and pay for other staff because ORR is withholding more than $26 million in payments to KIND—which has harmed KIND's ability to help pro bono attorneys aid unaccompanied children and harmed KIND's ability to serve existing clients. *See* Young Decl. ¶¶ 25-37. Non-party Justice For Our Neighbors North Central Texas has been forced to reduce staff and deplete its reserve funds, and it will have to stop services and close its doors if it is not paid for the past-due invoices. *See* Bragg Decl. ¶¶ 7-11. Non-party Mid-South Immigration Advocates—the only organization with experience providing representation to detained children in Arkansas, Tennessee, and Northern Mississippi—can no longer operate as a viable organization, and has been forced to begin to wind down operations and develop a timeline to lay off all its staff. *See* Horst Decl. ¶¶ 4-9. This will leave multiple states without an experienced legal service provider for unaccompanied children. Non-party MNM Law Offices has been forced to lay off half its staff and burn through reserves to maintain representations, but it will soon be forced to lay off additional staff and cease representations entirely—leaving unaccompanied children facing immigration proceedings without a lawyer. *See* Martinez Decl. ¶¶ 3, 6-9. Non-party American Bar Association South Texas Pro Bono Asylum Representation Project serves areas of rural south Texas where no other providers

operate, but because of Defendants' withholding of funds has lost ten employees, been forced to limit new clients, and faces imminent layoffs and additional losses in services to unaccompanied children. *See* Flores Decl. ¶¶ 7, 9-12.  Because many of these organizations are the *only* providers serving unaccompanied children in their regions, untold and heartbreaking numbers of vulnerable children will be left entirely without access to legal representation if the organizations go under.

This outcome, of course, is exactly what the Court's preliminary injunction sought to avoid. As a result, on July 1, 2026, Plaintiffs moved "for an order directing [Defendants] to show cause why they should not be held in civil contempt as a result of their failure to provide payment due for direct legal representation services to unaccompanied children since December 2025 in violation of this Court's April 29, 2025 order." Dkt. 157 at 2.  The Court granted Plaintiffs motion the following day, requiring Defendants to file a written response by July 10, 2026, and setting a hearing to discuss Defendants' compliance for July 16, 2026.  Dkt. 158.  During this hearing, the Court requested briefing and ordered the Parties to meet and confer about how best to present this dispute.

The Parties met and conferred twice before Plaintiffs filed this motion.  Counsel for Defendants explained that Defendants were not alleging fraud to justify their requests and instead pointed to the same vague, unprecedented concerns about "substantiating invoices" that ORR has cited to withhold payments for months.  Based on information provided by Defendants on July 21, 2026, Plaintiffs' counsel made a counter-offer to Defendants' counsel on July 23, 2026, proposing to share three categories of information on a prospective basis that Defendants requested in a July 21, 2026 meet-and-confer discussion:  (1) which unaccompanied children received representation during the billed month, (2) the hours billed for each child, and (3) the A-number associated with all costs accrued.  Lukens Decl. ¶¶ 14-16.  Plaintiffs noted that certain information could only be provided with the consent of individual clients, and that it could not be provided for past invoices, where the data cannot be recreated. *Id.*  Defendants refused this effort by Plaintiffs to find a solution with ORR and avoid burdening the Court with this motion.

## LEGAL STANDARD

"Federal courts are not reduced to issuing injunctions ... and hoping for compliance." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 440 (2004) (citation omitted.  Courts "have inherent power to

enforce compliance with their lawful orders." *Spallone v. United States*, 493 U.S. 265, 276 (1990) (citation omitted). To protect their orders and ensure compliance, courts should act to prevent post-order actions that "can be used as an end run around the Preliminary Injunction." *City and County of San Francisco v. Trump*, 782 F. Supp. 3d 830, 836 (N.D. Cal. 2025). "A motion to enforce should be granted if a prevailing plaintiff demonstrates that a defendant has not complied with a judgment entered against it." *Flaherty v. Pritzker*, 17 F. Supp. 3d 52, 55 (D.D.C. 2014) (internal quotation marks omitted).

Defendants' pending appeal of the preliminary injunction is irrelevant here—"[t]he Court, of course, retains jurisdiction to enforce the Preliminary Injunction during the pending appeal." *Thakur v. Trump*, 795 F. Supp. 3d 1168, 1178 (N.D. Cal. 2025); *see also E. Bay Sanctuary Covenant v. Barr*, 391 F. Supp. 3d 974, 978 (N.D. Cal. 2019) ("district court[s] retain[ ] jurisdiction during the pendency of an appeal to act to preserve the status quo") (quoting *Nat'l Res. Def. Council v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001)).

## ARGUMENT

The most obvious reason to grant a motion to enforce is where there is a clear violation of the text of the order, but the Ninth Circuit has also instructed that "[i]n deciding whether an injunction has been violated it is proper to *observe the objectives for which the relief was granted* and to find a breach of the decree in a violation of the *spirit of the injunction*, even though its strict letter may not have been disregarded." *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc.*, 774 F.3d 935, 949 (9th Cir. 2014) (emphasis added). Thus, a defendant ordered to stop one action that harms plaintiffs may not simply find a different way to cause the same harm. *Id*. Accordingly, the Court may grant Plaintiffs' motion in either of two ways: (1) by finding that Defendants are not in compliance with the clear text of the order and/or (2) by finding that, independently (and additionally), Defendants' actions that result in a "cutting off" of funding also violate the spirit of the order by attempting an end-run around the order to thwart its objective (*i.e.*, ensuring Defendants' compliance with the TVPRA and Foundational Rule). *See, e.g., New York Times Co. v. Dept. of Defense*, --- F. Supp. 3d ---, 2026 WL 962252, at *9 (D.D.C. Apr. 9, 2026) (granting motion to enforce injunction after the Government both "flout[ed]" the "explicit directives" of the order and the "principles at the

9

Gibson, Dunn & Crutcher LLP

heart" of the order); *see also Simon v. City and County of San Francisco*, No. 22-cv-05541-JST, 2024 WL 4314207, at *3 (N.D. Cal. Sept. 26, 2024).

The Court should grant Plaintiffs' motion to enforce because (1) the preliminary injunction, seeking to ensure Defendants comply with their obligations under the TVPRA and the Foundational Rule, forbids Defendants from "cutting off" required funding; (2) Defendants, by cutting off funding for legal services by conditioning funding on an impossible demand, are not complying with either the clear language or the spirit of the order; and (3) Defendants' excuses that they may demand information under the terms of the contract with Acacia and the Federal Acquisition Regulation are irrelevant and cannot justify non-compliance with the Court's order.

## A. The preliminary injunction forbids Defendants from "cutting off" required funding, with the objective of ensuring Defendants' compliance with the TVPRA and Foundational Rule.

The plain language of this Court's order prohibits Defendants from "withdrawing the services or funds provided by [ORR] as of March 20, 2025" and "precludes cutting off access to congressionally appropriated funding for its duration." Dkt. 87 at 28. The Court also warned that "[n]on-compliance or delayed compliance may result in a contempt finding and sanctions." *Id.* There is no ambiguity in the Court's order:

> "Defendants are ENJOINED from withdrawing the services or funds provided by the Office of Refugee Resettlement ("ORR") as of March 20, 2025, under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 8 U.S.C. § 1232(c)(5), and ORR's Foundational Rule, 45 C.F.R. § 410.1309(a)(4), particularly ORR's provision of funds for direct legal representation services to unaccompanied children. This injunction precludes cutting off access to congressionally appropriated funding for its duration." Dkt. 87 at 28.

The Court's order solidly rests on supported findings that Plaintiffs are likely to succeed on *each of their claims* against Defendants, because there are multiple bars to Defendants cutting off funding for legal services for unaccompanied children. The Court held that the TVPRA "creates an affirmative obligation on the Government" to fund counsel to represent unaccompanied children so long as there are "congressionally appropriated funds for legal representation [] available" to do so. Dkt. 87 at 19. Therefore, Defendants "violate[] the TVPRA by withholding funding for direct legal representation entirely." *Id.* The Court also held that the Foundational Rule (45 C.F.R.

Gibson, Dunn & Crutcher LLP

PLAINTIFFS' NOTICE OF MOT. AND EMERGENCY MOT. TO ENFORCE THE PRELIM. INJUNCTION
CASE NO. 4:25-CV-02847-AMO

§ 410.1309(a)(4)) requires that Defendants "'shall fund' direct representation so long as funds remain available." Dkt. 87 at 22. Defendants violate the Foundational Rule by cutting off funding now, when—by their own admission—they have funds available but are choosing not to spend them. *Id.* at 19; *see also* Dkt. 161-1 at 7 ¶ 31.

Congress's commands are the animating logic behind the Court's order that Defendants cannot "cut[] off" funding for legal services for unaccompanied children, as the order ensures Defendants' continued compliance with the TVPRA and Foundational Rule. When Defendants asked the Ninth Circuit to stay the preliminary injunction pending an appeal on the merits, the Ninth Circuit rejected their request, explaining that "plaintiffs seek to enforce compliance with statutes and regulations" through the order. Dkt. 17.1 at 6, *Cmty. Legal Servs. in East Palo Alto, et al. v. U.S. Dep't of Health and Human Servs., et al.* No. 25-2808 (9th Cir. May 14, 2025).

**B.    Defendants are in violation of both the explicit command and the spirit of the preliminary injunction because they cut off funding for legal services by conditioning funding on an impossible demand.**

Defendants' actions have cut off funding the Court held was required by the TVPRA and the Foundational Rule, in violation of both the plain language and the intent of the preliminary injunction. Defendants admit funding to pay for legal services as required by the preliminary injunction is available, yet they have withheld that funding. Dkt. 161-1 at 7 ¶ 31. Their maneuvers to withhold payment and inevitably cease funding legal representation for unaccompanied children violate the Court's order. *See, e.g., Simon*, 2024 WL 4314207, at *3 ("Defendants' behavior . . . is the same conduct that formed the basis for the Court's injunction, and there can be no question that the conduct violates the spirit of the injunction").

The facts before the Court make clear that the only possible result of Defendants' actions is that the available funding for legal services for unaccompanied children (which the TVPRA and Foundational Rule require must be spent on such services) has for many months been, and will continue to be, cut off. Defendants have conditioned payment on the receipt of information they know is impossible to provide. Regardless of whether they knew their request was impossible when they first made it, Defendants continue to withhold required funding despite Plaintiffs' clear explanations

Gibson, Dunn & Crutcher LLP

as to why they cannot comply:

- Defendants request data that do not exist because the data have never before been necessary to substantiate invoices, ORR gave no advance notice of this condition, and ORR previously confirmed there would be no change in the required documentation. *See, e.g.,* Lukens Decl. ¶¶ 8, 11-12.

- Defendants continue to insist Plaintiffs produce historical data that do not exist and that Plaintiffs cannot now recreate. *See, e.g.*, Lukens Decl. ¶¶ 11-12.

- Defendants insist Plaintiffs produce information that is privileged and confidential, production of which would violate Plaintiffs' ethical obligations if provided without consent of Plaintiffs' clients. *See, e.g.,* Lukens Decl. ¶ 12.

Defendants' insistence that they will only pay if Plaintiffs produce retroactive data they cannot possibly produce is a manufactured trap with only one result:  Defendants are not providing any funding for legal representation of unaccompanied children, despite having money available to do so. After being thwarted in their direct attempts to cut off funding by cancelling the contract through which they complied with their obligations under the TVPRA and the Foundational Rule, Defendants have now progressed to the subtler—but equally illegal—approach of cutting off funding by predicating payment on impossible, post hoc demands.  The inevitable result is the same, the violation of the law is the same. *See New York Times Co.*, 2026 WL 962252, at *4 (the Government cannot "take steps to circumvent the Court's injunction and expect the Court to turn a blind eye").  And Plaintiffs note that even if they could provide the post hoc information (which they cannot), there is no guarantee Defendants would accept the information, would not demand more information, or would release long-overdue payments.

Defendants' intent is irrelevant to the ultimate question of whether they are violating the Court's order.  *See Inst. of Cetacean Research*, 774 F.3d at 950 (finding violation of injunction "regardless of whether [the defendant] affirmatively desired that a violation occur").  Nevertheless, there is ample evidence suggesting Defendants do intend to cut off funding of legal representation for the most vulnerable noncitizens—in violation of the TVPRA, the Foundational Rule, and this Court's order:

Gibson, Dunn & Crutcher LLP

12

PLAINTIFFS' NOTICE OF MOT. AND EMERGENCY MOT. TO ENFORCE THE PRELIM. INJUNCTION
CASE NO. 4:25-CV-02847-AMO

- Defendants' decision to request these data in the first place, despite having never before requested them, undermines Defendants' claim that they are now necessary. Defendants are conditioning payment on this information despite having previously assured Acacia that invoicing would proceed as it always had, and that Defendants would not require new (let alone retroactive) data.

- After choosing to comply with the Court's order through contractual means, Defendants never raised any concerns to Plaintiffs or the Court about Plaintiffs' invoices or the data provided—despite having ample opportunity to do so in their regular status reports to the Court.  Defendants additionally did not raise these pretextual requests until *after* the invoices were already delayed.

- Defendants have at times during the last six months indicated that they would proceed with paying the delayed invoices—before suddenly shifting course with new requests or simply reversing their position.

- Defendants have refused multiple offers by Acacia to provide information that can actually and ethically be produced to address Defendants' stated concerns—continuing to insist on information they know Plaintiffs cannot produce.

- Defendants today rejected an offer by Plaintiffs to provide prospectively the information that counsel for Defendants identified as necessary.

- Defendants have done all of this with full knowledge—explained at length in briefing in this case—of the extreme and irreparable harm their actions are imposing on both Plaintiffs and unaccompanied children.

Defendants' justifications for insisting on this data are also so flimsy that they suggest pretext—or, at the very least, they show that ORR's choice to withhold *all funding* is entirely disproportionate to even the claimed concerns.  For example, Defendants have argued that their withholding of funding is justified by an "audit" through which they claim to have identified 265 children who were removed from the United States during the reviewed period as a reason to doubt that these children received legal services—though these children could have been represented by Plaintiffs *before they were deported* and during this time period.  Dkt. 161-1 ¶ 14.  In any event, a

Gibson, Dunn & Crutcher LLP

concern about 265 representations out of more than 24,000 is hardly justification for not paying for *any of the 24,000 representations*. Similarly, ORR also claims to be unable to verify that about 3,500 children (out of more than 24,000 served in the relevant period) had received representation, *solely* on the basis that those children did not have a filed notice of representation. *See id*. There are many reasons a child would not (or would not *yet*) have filed a form E-28 or G-28 while still receiving direct representation from Plaintiffs. Even if that was a reason to question whether the children were receiving services, it is a question Defendants can raise for, at most, 14.5% of representations. Defendants could easily ask for information about those specific children if it were needed.

The TVPRA, Foundational Rule, and preliminary injunction all require Defendants to spend the allocated funding on legal services for unaccompanied children. Defendants' failure to do so is the inevitable result of a situation they themselves engineered by demanding impossible information—a situation they know can only result in funding being cut off. Defendants are not complying with either the text of the preliminary injunction or the objective of the preliminary injunction to ensure compliance with the TVPRA and Foundational Rule. The Court should enforce Defendants' compliance with the preliminary injunction. *See New York Times Co.*, 2026 WL 962252, at *4 ("[w]here an enjoined party engages in such evasive conduct, a motion to compel [compliance] is the proper means of bringing that party back into compliance").

**C.    Defendants' rights under the contract and Federal Acquisition Regulation are irrelevant to the preliminary injunction and this motion.**

In response to Plaintiffs' motion for an order to show cause, Defendants argued they are not violating the Court's order because they are withholding payment as an exercise of their rights under the contract with Acacia and the Federal Acquisition Regulation. Not so. The terms of the contract are entirely irrelevant to this motion, as are the terms of the FAR or any other source of permission Defendants might point to. *See Afghan and Iraqi Allies Under Serious Threat Because of Their Faithful Service to the United States v. Rubio*, 824 F. Supp. 3d 64, 77-8 (D.D.C. 2026) (granting motion to enforce, explaining that a presidential proclamation and various statutory provisions that might permit the Government's actions were irrelevant to the Government's non-compliance with the court's order). This Court enjoined Defendants "from withdrawing the services or funds provided by

Gibson, Dunn & Crutcher LLP

14

the Office of Refugee Resettlement ('ORR') as of March 20, 2025, under the [TVPRA] and ORR's Foundational Rule, 45 C.F.R. § 410.1309(a)(4), particularly ORR's provision of funds for direct legal representation services to unaccompanied children," and precluded Defendants from "cutting off access to congressionally appropriated funding for its duration." Dkt. 87 at 28. Neither this order nor the TVPRA or Foundational Rule required Defendants to provide this funding by contracting with Acacia. Having chosen to use a contractual vehicle to comply, however, Defendants cannot now withhold payment based on contrived and logistically impossible invoicing requirements that were never before raised. Accordingly, the Court need not know, consider, or make any rulings about the contract or the FAR to grant this motion. Instead, it need only consult its own order.

Defendants' contract argument is just the latest of their many attempts to transform this case into a contract case instead of a case about their violation of the TVPRA and Foundational Rule. Defendants have been trying to make this a contract case from the beginning—and this Court has rejected that argument multiple times. *See, e.g.*, Dkt. 33 at 3 ("Contrary to the Government's assertions, this is not a contract dispute"); Dkt. 75 at 4; Dkt. 87 at 11-15. The Ninth Circuit has also already rejected that argument. *See* Dkt. 17.1 at 5-10, *Cmty. Legal Servs. in East Palo Alto, et al. v. U.S. Dep't of Health and Human Servs., et al.*, No. 25-2808 (9th Cir. May 14, 2025). As they have repeatedly made clear, Plaintiffs came to this Court to protect vulnerable children, not to litigate the terms of any particular contract. Now, Defendants, having lost at the preliminary injunction phase, are attempting to eviscerate this Court's order by delaying payment and withholding funding until Plaintiffs are forced to close their doors and unaccompanied children are left bereft of legal representation—a clearly impermissible result under the Court's order. *See New York Times Co.*, 2026 WL 962252 at *5 ("The Court need not . . . permit such a blatant attempt to circumvent the lawful order of the Court to succeed").

At the July 16, 2026 hearing, the Court expressed concern with what it thought could be a line-drawing problem: what *could* Defendants do under the contract, purportedly to verify the services for which Plaintiffs invoiced, and how could the Court tell whether Defendants were violating the order if Defendants insist they are just trying to substantiate invoices? Plaintiffs submit that there is no need to draw lines. As Plaintiffs explain above, the relevant question is not what action Defendants may

take, but what *effect* Defendants may impose through their actions. If the inevitable effect of Defendants' actions is to "cut[] off access to congressionally appropriated funding" for "direct legal representation services to unaccompanied children," those actions violate the preliminary injunction (as well as the TVPRA and Foundational Rule). That is true whether or not those same actions may be permissible under the terms of any particular contract or the FAR.

## CONCLUSION

The Court should not allow Defendants to use a purported contractual right to manufacture an end-run around this Court's orders and cut off access to funding for direct representation services. As Defendants have cut off funding in violation of this Court's order, Plaintiffs respectfully request that this Court issue an order enforcing the preliminary injunction and clarifying that Defendants' ongoing conditioning of required funding on impossible demands violates the preliminary injunction by "cutting off access to congressionally appropriated funding" for "direct legal representation services to unaccompanied children."

Gibson, Dunn &
Crutcher LLP

PLAINTIFFS' NOTICE OF MOT. AND EMERGENCY MOT. TO ENFORCE THE PRELIM. INJUNCTION
CASE NO. 4:25-CV-02847-AMO

Respectfully submitted,

July 23, 2026

<u>*/s/ Laura M. Sturges*</u>

GIBSON, DUNN & CRUTCHER LLP
Katherine Marquart (CA Bar No. 248043)
Ariana Sañudo (CA Bar No. 324361)
Arthur Halliday (CA Bar No. 347620)
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7000
kmarquart@gibsondunn.com
asanudo@gibsondunn.com
ahalliday@gibsondunn.com

Laura M. Sturges (CO Bar No. 36843) (*pro hac vice*)
Patricia M. Herold (CO Bar No. 54552) (*pro hac vice*)
Caelin Moriarity Miltko (CO Bar No. 56721) (*pro hac vice*)
1900 Lawrence Street, Suite 3000
Denver, CO 80202-2211
(303) 298-5700
lsturges@gibsondunn.com
pherold@gibsondunn.com
cmoriaritymiltko@gibsondunn.com

<u>*/s/ Alvaro M. Huerta*</u>

IMMIGRANT DEFENDERS LAW CENTER
Alvaro M. Huerta (CA Bar No. 274787)
Carson A. Scott (CA Bar No. 337102)
Lya Ferreyra (CA Bar No. 340148)
Immigrant Defenders Law Center
634 S. Spring St., 10th Floor
Los Angeles, CA
(213) 634-0999
ahuerta@immdef.org
cscott@immdef.org
lferreyra@immdef.org

<u>*/s/ Karen C. Tumlin*</u>

JUSTICE ACTION CENTER
Esther H. Sung (CA Bar No. 255962)
Karen C. Tumlin (CA Bar No. 234691)
Laura Flores-Perilla (CA Bar No. 355645)
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
(323) 450-7272
esther.sung@justiceactioncenter.org
karen.tumlin@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org

<u>*/s/ Samantha Hsieh*</u>

AMICA CENTER FOR IMMIGRANT RIGHTS
Adina Appelbaum (*pro hac vice*)
Samantha Hsieh (*pro hac vice*)
Peter Alfredson (D.C. Bar No. 1780258)
Evan Benz (*pro hac vice*)
Amica Center for Immigrant Rights
1025 Connecticut Ave., NW, Suite 701
Washington, D.C. 20036
(202) 331-3320
adina@amicacenter.org
sam@amicacenter.org
peter@amicacenter.org
evan@amicacenter.org

*Attorneys for Plaintiffs*

Gibson, Dunn &
Crutcher LLP

17

PLAINTIFFS' NOTICE OF MOT. AND EMERGENCY MOT. TO ENFORCE THE PRELIM. INJUNCTION
CASE NO. 4:25-CV-02847-AMO