# EXHIBIT A

**From:** Natalie Kaminsky <nkaminsky@acaciajustice.org>
**Sent:** Monday, July 6, 2026 2:29 PM
**To:** Natalie Kaminsky <nkaminsky@acaciajustice.org>
**Cc:** Meghan Johnson Perez <MPerez@acaciajustice.org>; Lauren Esterle <lesterle@acaciajustice.org>; Anne Marie Mulcahy <ammulcahy@acaciajustice.org>; Michael Corradini <mcorradini@acaciajustice.org>; Philip Kretsedemas <pkretsedemas@acaciajustice.org>; Sara Van Hofwegen <svanhofwegen@acaciajustice.org>; Tania Sawczuk <tsawczuk@acaciajustice.org>; Ailin Buigues <ABuigues@acaciajustice.org>; Leah Prestamo <lprestamo@acaciajustice.org>; Jessica Lee <jlee@acaciajustice.org>; Shaina Aber <saber@acaciajustice.org>
**Subject:** RE: Forwarding Acacia Response to Government Regarding Invoice Payment and Information Requests

***This message is being sent to the sensitive communication contacts designated by network LSPs.***

Dear Network Providers,

Please see attached the response Acacia submitted earlier today to the UCP contract's Contracting Officer regarding the Government's recent letter and ongoing requests for additional invoicing documentation.

As always, we will keep you informed of any material developments and will share updates as soon as we have them.

Please do not hesitate to reach out to the Acacia team with any questions.

Thank you again for your continued dedication and partnership.

Best,
Natalie



**Natalie Kaminsky** *(she/her)*
**Director of Technical Compliance**
**Unaccompanied Children Program**

Acacia Center for Justice
acaciajustice.org

## Jenna Pierce

| | |
|---|---|
| **From:** | Leah Prestamo |
| **Sent:** | Monday, July 6, 2026 3:45 PM |
| **To:** | ███████████████████ |
| **Cc:** | Meghan Johnson Perez; Natalie Kaminsky |
| **Subject:** | RE: June 2026 CO Response to Demand Payment Letter |

Dear ███ ,

Acacia and its subcontractors have now spent months responding to each inquiry raised by the government, providing information and explanations, and have not received payment. Given the severity of this situation, Acacia requests a call to discuss the matters raised in your letter.

We are concerned that the government is declining to pay, retroactive to December, properly supported and submitted invoices over newly-requested documentation that has never before been required or requested for invoicing. Acacia's invoicing processes, including the supporting documentation included and the process for submission, were collaboratively established between ORR and Acacia and expressly approved by ORR. At the start of the bridge contract, Acacia proactively discussed with the COR whether the invoicing procedures would be the same as under the prior contract and this was explicitly approved. Acacia established its data collection, verification, review, and invoicing processes based on what information was required under the contract and as directed by ORR. Acacia cannot simply create entirely new invoicing processes and should not be required to do so, retroactively, under the threat of complete nonpayment of its invoices.

Below, we provide a response to the inquiries presented in your letter. Acacia is concerned, however, that much of this information has been presented to the government multiple times without substantive engagement on the government's part.

Some of the information the government is requesting is protected from disclosure under attorney ethics rules. As this information was never previously required, consent for disclosure was not obtained from clients at the commencement of representation. Acacia is willing to work with the government, as it always does, to address the government's questions and determine what additional information can be reported. Acacia is willing to negotiate these items, but not as a condition of payment.

The government has stated numerous times that the data it seeks is not privileged. This bare assertion does not change the nature of the information sought or make the data disclosable. Privilege and confidentiality are the rights of the child client and cannot be overridden by Acacia, the government, or any third party. Acacia has provided lengthy explanations demonstrating that the data and documents being requested contain sensitive, privileged, and/or confidential information and the government has not substantively responded. Acacia will not provide information that is protected from disclosure. Moreover, Acacia's contract requires that it abide by attorney ethics rules.

We respond to your specific questions in greater detail below.

***

1.  Response to Additional Data Requests

Acacia appreciates the opportunity to further clarify its December 2025 invoice submission for CLIN 2 labor and expenses. First, Acacia reiterates that it offers legal representation to children under this contract in accordance with the Performance Work Statement (PWS). As explained in Acacia's email to ORR dated October 1, 2025, PWS Section C.2.1 Objective III(c) names certain categories of children as priorities for available representation bandwidth, and the PWS does not require legal representation to be offered to all children. Although there have been categories of mandatory representation in prior contracts, there is no mandatory representation in the current contract. Acacia nevertheless works to provide representation to as many children as possible and provides other CLIN 2 services to children who are not represented. Accordingly, Acacia's monthly invoice submissions for CLIN 2 labor and expenses include services provided to both represented and non-represented children. Services provided to non-represented children under CLIN 2 include, but are not limited to: courtroom assistance, other legal assistance, and data reporting.

Acacia validates the invoices we receive from LSPs against deliverables-based reporting and time and effort documentation, both of which we provide to the Government. Acacia further requires time and effort reporting at the task-level with LSPs. Acacia collects time and effort reporting for the following CLIN 2 tasks: Task 3 – Direct Representation; Task 4 – Courtroom Assistance; Task 5 – Pro Bono; Task 6 – Other Legal Assistance; Task 7 – Data Collection, Reporting, and Analysis; Task 8 – Program Management; and Task 9 – Emergency Facilities.

There is an inherent tension between granularity in proof of service delivery, which argues for detailed records, and minimizing exposure of sensitive child data, which argues for aggregation and restricted access. For routine billing and invoicing reconciliation, we require aggregated data and de-identified receipt documentation. We validate the de-identified receipt documentation from the contextual markers, such as receipt transactional numbers, if it is available, and dates.

Second, on minimizing exposure of sensitive child data, Acacia cannot provide invoice supporting documentation that links specific children via their A-Numbers to the information requested by the Government in 1(a), 1(b), and 1(c). Most aspects of representation are privileged and confidential, including the representational relationship itself, absent informed client consent or a narrowly defined exception (see ABA Model Rule of Professional Conduct 1.6(a)). Even where individual data elements might be administrative if viewed in isolation, their aggregation and linkage at the A-number level would reveal confidential and potentially privileged information about representation strategy, procedural sequencing, and litigation posture of a case, which can only be provided with the client's consent.  Including children's confidential, identifying information in invoice support documents by providing A-Number-level information as to details about the child's representation service is not permitted under relevant attorney-ethics rules. Acacia has explained this constraint to the Government multiple times, most recently via email on April 15, 2026; April 20, 2026; May 15, 2026; and June 10, 2026.

It is critical to note that neither Acacia nor the Government determines what information may ethically be disclosed regarding attorneys' representational relationships under the contract. The attorneys themselves must make decisions regarding the permissibility of disclosures based on their investigation of relevant ethics rules as crafted by licensing authorities in relevant jurisdictions. In some cases, even the name of the attorney and firm that represents a child; the date(s) of the initiation of representation or of any hearings; and the date(s) on which EOIR-28s or G-28s were filed may be privileged or confidential.

As a result, neither Acacia nor the Government may demand information from attorneys, as contract requirements *do not* supersede ethics rules. The contract itself explicitly requires adherence to attorney-ethics rules.

In addition to these ethical constraints, there is also an operational barrier to providing the information requested by the Government in 1(a), 1(b), and 1(c). Acacia has referenced this in its correspondence with the Government multiple times, most recently on May 6, 2026, and May 15, 2026. In summary, Acacia does not collect this information for invoicing purposes, as it has never been required as part of COR-approved invoicing content. This level of reporting would require effort beyond that currently accounted for within the contract terms and is not required under the contract.

Finally, regarding 1(d), Acacia has informed the Government multiple times that it does not collect case-level hour-by-hour billing from LSPs, most recently on May 6, 2026, and May 15, 2026. Because there are multiple non-representational tasks in addition to the representation work that are all billable under CLIN 2, Acacia tracks CLIN 2 hours by task, with "Direct Representation" being one task regardless of which case the LSP is working on, as mentioned above. ORR has never required that Acacia submit case-level billable hours as a component part of its invoicing and doing so is not a contract requirement. Upon the start of the current Bridge contract, we explicitly asked the COR if the existing invoicing process was sufficient, and the COR affirmed the existing process.

2.   Response to Request on Direct Representation

An attorney-client relationship begins when the attorney agrees to represent the child and the child accepts the offer of representation, regardless of whether Form L-3A, Notice of Attorney Representation; a Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative; a Form EOIR-28, Notice of Entry of Appearance as Attorney or Representative Before the Immigration Court, or a retainer are signed or on file. Once the attorney-client relationship is established, a case is opened and remains active under CLIN 2 until the case is closed by the provider. Acacia executes contract-funded representation under Contract No. 75P00125C00016 in line with the PWS Objective III(c), as contractually required. In the PWS, there is only one mention of proof of representation: "For any represented child in ORR custody, LSPs shall ensure timely notice of their representation to ORR and care provider staff, including by submission of a Form L-3 Notice of Attorney Representation." By its terms, this provision applies only to children in ORR custody, and Acacia complies with the provision as stated, as Acacia recently reiterated to the Government via email on June 5, 2026. Acacia has raised with ORR numerous times the concern that the Government does not appear to have reliable data regarding Form L-3A submissions to ORR. For example, when Acacia began receiving data on children for whom ORR had a record of the L-3A Form, Acacia noticed and raised that there appeared to be an undercounting or underreporting by care provider facilities who receive the L-3A Form, as Acacia's records show an L-3A Form was provided for many cases for which the Portal did not appear to have a record. This was raised to the Government numerous times, including at the COR monthly call on September 17, 2025. Form L-3A submissions are not contemplated *at all* by the contract for children whose cases are initiated after release from ORR custody, and post-release case initiation is common. Additionally, a represented child may not have an EOIR-28 or G-28 on file if there has been no need for an attorney to file one with either EOIR or USCIS yet. The child may be in the process of preparing their forms of relief with the attorney, which can be a lengthy process, depending on the form of relief. If the child has not been ordered to appear before the immigration court yet, the immigration court would not

have jurisdiction over the child, and the attorney would be unable to file an EOIR-28 with the court. There are therefore many scenarios aligned with PWS requirement in which a child with contract-funded representation would not have a notice of appearance as representation filed with ORR, EOIR, or USCIS.

As to children represented for repatriation, Acacia has described to ORR several times the types of representation activities that might be underway after a repatriation order is granted. Acacia offers representation to children seeking voluntary departure or other forms of repatriation. Once a child receives an order of voluntary departure, the child must go through the process of departure. LSPs monitor that the departure is effectuated as anticipated. Prior to departure, LSPs work to ensure travel documents are in order and may need to request additional time for the child to safely and effectively depart. Additional representation services are offered once an order is granted, including referring the child for repatriation services to ensure the child repatriates safely. If a child reconsiders the voluntary departure order, the LSP may help file a motion to reopen the order with the court.

Once a child repatriates, the case may remain open for a period, as the LSP typically closes the case after all closeout activities required of attorneys are completed. Such activities may include, for example, formal closure correspondence with the child and confirmation of receipt of such correspondence. Additionally, if a child repatriated and a case was closed after the last data verification was completed, such closures would not be reflected in Acacia's Legal Representation Report until the following month.

3.  Response to Request on Data Reported

Acacia appreciates the opportunity to clarify the nature of Acacia's Legal Representation Activity Report and distinguish it from Acacia's separate invoice submission for CLIN 2 labor and expenses. In summary, Acacia's monthly submission of the Legal Representation Activity Report for December is wholly unrelated to and makes no assertion regarding Acacia's monthly invoice submission for CLIN 2 labor and expenses for December.

Acacia's Legal Representation Activity Report offers an aggregate list of A-Numbers of children with active representation under the contract. As explained in Acacia's emails dated April 10, 2026, and May 15, 2026, Acacia defines "active representation under CLIN 2" as "representation that was initiated under CLIN 2 [funding]…and has not yet closed." Representation is considered initiated once a child accepts an offer of representation. In any given month, including December 2025, an "actively represented" child may or may not receive services from Acacia that Acacia subsequently invoices to the Government. Therefore, the Legal Representation Activity Report *does not* indicate whether a particular matter received Acacia's effort, invoiced or not, during the month of its submission.

Furthermore, Acacia notes that the December Legal Representation Activity Report covers data for cases active as of November 30, 2025. It does not speak to cases active in December, which are instead covered by the January Legal Representation Activity Report. ORR approved this reporting framework via email correspondence with Acacia on August 15, 2025.

Because the list of 24,157 A-Numbers in the December Legal Representation Activity Report *is not* the same as the list of children who received invoiced CLIN 2 services in December, the comparison between the A-Numbers in the Report and those in Federal Government records bears no relationship to invoicing. Instead, Acacia interprets the Government's third question as inquiring about how Acacia determines that the children who receive invoiced services in a specific month are receiving

active representation in light of the conditions named in the question. Acacia addresses each condition in turn:

- *Absence of an attorney of record:* First, the Government identified 2,974 children who "did not have an attorney of record on file with ORR, USCIS, or EOIR." Acacia interprets this to indicate that no attorney submitted a Form L-3A, Notice of Attorney Representation; a Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative; or a Form EOIR-28, Notice of Entry of Appearance as Attorney or Representative Before the Immigration Court. Of the aforementioned proofs of representation, the only one mentioned in the PWS is Form L-3.

  As outlined above, Acacia represents children in line with the PWS, which requires that any represented child in ORR custody have an L-3A Form on file with ORR and care provider staff. Relatedly, and as indicated above, the lack of an L-3A in the Government's records does not necessarily indicate a lack of active representation by Acacia. This is evidenced by recent email correspondence between Acacia and ORR in which ORR flagged missing L-3A submissions for nine children, the majority of which had been properly filed with ORR and were not in fact missing.

  Form L-3A, although it is the only contractually mandated entry of appearance, is, by its terms, inapplicable to children not in ORR custody. Children with whom representation is initiated outside of ORR custody will not have a corresponding L-3A on record with the Government. Those children *may* have an entry of appearance before another adjudicator, such as a G-28 before USCIS or an EOIR-28 before EOIR, if one or both forms are necessary in the ordinary course of representation. (This is also true for children in ORR custody who have an L-3A).

  However, and as outlined above, the submission of G-28s and/or EOIR-28s to USCIS and EOIR, respectively, typically occurs at the time an application is filed with the respective agency, or earlier as agreed to by the LSP and the client. As previously explained, representation is considered active once a child accepts an offer of representation, *not* when a notice of appearance is filed with USCIS or EOIR. Children without a relevant event triggering the filing of a G-28 or EOIR-28 will have no entry of appearance on record with the Government, except in cases where an L-3A was due to ORR via the PWS provision quoted above. Even when an LSP submits a G-28 or EOIR-28, that proof of representation will reflect the child's A-Number assigned by DHS, *which may not match the A-Number used by ORR*. (Acacia has informed ORR as to this natural source of A-Number discrepancies on multiple occasions, most recently on February 12, 2026.)

  Although there are cases where no entry of appearance has been filed in the ordinary course of representation or as required under the contract, this does not call into question whether those cases are receiving active representation. Even when an entry of appearance is not yet due, representation is nevertheless underway. Representation prior to filing an entry of appearance includes evidence- and document-gathering, client interviews to prepare for filings, and similar tasks. Acacia briefly touched on this scenario in its memorandum to the Government on April 10, 2026, entitled "Acacia response to ORR 3/20/2026 information request." To summarize: the absence of an appearance of representation *has no bearing on whether representation is active*. It is therefore *wholly erroneous* to describe this absence as a discrepancy with respect to active case reporting, and it has no relationship whatsoever to Acacia's invoice submission.

5

- *Records showing that the child had been repatriated*: Acacia responded to this inquiry twice already. It reiterates here: Once a child repatriates, the case may remain open as the LSP closes the case after all closeout activities required of attorneys are completed. Such activities may include formal closure correspondence with the child and confirmation of receipt of such letter. Additionally, if a child repatriated and a case was closed after the last data verification was completed, such closures would not be reflected in Acacia's Legal Representation Report until the following month. Repatriation also might not be the only matter for which the child retained the attorney under contract funding; for example, a child might pursue relief from abroad in a variety of circumstances, such as a pending U Visa claim the child continues to pursue. And the fact of repatriation does not itself correspond with closure of a contract-funded case, as some contract-funded matters must actually be pursued from abroad, such as consular processing.

- *Cases for individuals whose eligibility for services, based on their ages, could not be verified*: Acacia assumes ORR's reference to 568 cases of this nature above refers to the total count Acacia provided to ORR on April 10, 2026, regarding cases where the ORR date of birth indicates a child's representation under CLIN 2 was initiated on or after the child's 18th birthday. As flagged in our earlier submission, Acacia reiterates that a child's CLIN 2 representation initiation may occur on a date after ORR's record of a child's 18th birthday in a variety of circumstances. One common scenario is when children are first represented under the contract through CLIN 3 funding before turning 18 and are subsequently transitioned to CLIN 2 funding after turning 18. Another possible scenario involves contested dates of birth. For example, a case initiation could occur while a child is still in ORR custody (as in 36 of the 538 cases ORR flagged), when ORR records provided to Acacia indicated the child was younger than 18. Now, the date of birth listed in ORR's most recent records for that child may indicate the child was over 18 on the initiation date. In such circumstances, Acacia assumes ORR conducted an age redetermination. Once representation is initiated, however, attorneys have an ethical obligation to continue representation, even if the ORR program is in the midst of an age redetermination.

  Acacia has established data entry safeguards to ensure case initiations pass through eligibility assessments prior to LSPs initiating representation. Acacia's data entry system identifies age-based eligibility as an automatic check when LSPs are entering new cases. When the data entry system bars an LSP from entering a new representation initiation for a child they believe to be eligible for services, the LSP must seek manual review by Acacia staff of the case circumstances and confirm case eligibility prior to initiating representation. Acacia also conducts audits to ensure open cases that appear not to meet eligibility requirements have been examined. If Acacia identifies any discrepancies impacting Government billing, Acacia notifies the Government of the issue and refunds any related billing, as it did most recently to the Department of the Interior on March 17, 2025. For the government's awareness, Acacia is in the process of completing another such audit, commenced several months ago and which we expect to complete before the end of July.

  Finally, in accordance with PWS Objective VI, Acacia requires LSPs to record initiation of representation in its database and, as a quality assurance measure, validates data entry to report the fact of representation to ORR via monthly reporting. Acacia also requires LSPs to record case

closures in its database, at which point the case is removed from monthly reporting in relevant future submissions.

We trust the information above addresses the questions raised in your letter. As noted above, we request a call to discuss these matters in further detail.

Best,
Leah



**Leah Prestamo** *(she/her)*
**General Counsel**
Working on Eastern Time

Acacia Center for Justice
acaciajustice.org

*This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail and delete the message.*

**From:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
**Sent:** Monday, June 29, 2026 8:08 PM
**To:** Leah Prestamo <lprestamo@acaciajustice.org>
**Subject:** June 2026 CO Response to Demand Payment Letter
**Importance:** High

Good Evening,

Please see the attached June 2026 CO Response to Demand Payment Letter and additional documents listed below:

1.  Legal Representation Summary
2.  DCAA DoW Dec 2025 Acacia CLIN 2 Invoice Review
3.  ACJ Friend of the Court Updates

▮▮▮▮▮▮▮▮
Director, Strategic Buying Center – Mission Support
Office of Mission Acquisition Solutions (OMAS)
Office of Acquisitions (OA) | Assistant Secretary for Financial Resources (ASFR)
U.S. Department of Health and Human Services
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Acquisition questions? Visit the* OMAS *hub on the* HHS Acquisition Portal *today!*



CONFIDENTIALITY NOTICE: The information contained in this e-mail message, including any attachments, is For OFFICIAL USE ONLY (FOUO) and is for the sole use of the intended

recipient(s).  Furthermore, this e-mail and its attachments, if any, may contain GOVERNMENT SENSITIVE material and is therefore, privileged, and confidential.  Any unauthorized review, use, disclosure or distribution is prohibited.  If you are not the intended recipient, please notify the sender by reply e-mail and delete the original message and all copies from your computer. This document is for INTERNAL GOVERNMENT USE ONLY and is exempt from disclosure under the Freedom of Information Act, 5 U.S.C. §§ 552(b)(5), (b)(7).