IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, et al.,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,

Defendants.

Case No. 4:25-CV-02847-AMO

**DECLARATION OF LAUREN FISHER FLORES IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE THE PRELIMINARY INJUNCTION**

**DECLARATION OF LAUREN FISHER FLORES**

**LEGAL DIRECTOR, ABA PROBAR**

*I, Lauren Fisher Flores, make the following statements based on personal knowledge and information made known to me in the course of my professional experience. I certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. §1746.*

1. I am over the age of 18 and make this declaration based upon my individual professional knowledge and experience. If called to do so, I could and would competently testify to these matters under oath.

2. I am the Legal Director at the American Bar Association South Texas Pro Bono Asylum Representation Project (ProBAR).  I incorporate my Declaration in Support of Plaintiffs' Motion to Enforce the Preliminary Injunction (Dkt. #165) as if fully set forth herein.

3. ProBAR provides Unaccompanied Children's Program ("UCP") funded legal services to detained unaccompanied children in South Texas and released unaccompanied children in the Rio Grande Valley and Houston areas. These legal services include initial services (Know Your Rights presentations, legal screening, consultations), court services (pre-court information sessions, Friend of Court, and in some instances, entrance of appearance in immigration and state family court proceedings), and pro se assistance (application completion, motions, change of venue/change of address forms) at 17 youth detention facilities across South Texas with bedspace capacity for a total of 2,066 children. The detention shelters where we provide legal services house unaccompanied children who are pregnant and parenting, tender-aged children, and teens. Due to the increasing risk of due process violations against unaccompanied children, ProBAR attorneys enter a form L-3 Notice of Attorney Representation for all children in the detention shelters for the purpose of protecting their rights under the Trafficking Victims Prevention and Protection Reauthorization Act (TVPRA) ("TVPRA L-3") (currently around 330 detained children). The L-3 (recently amended to L-3A) is the ORR form to provide notice of representation to ORR, similar to a G-28, Notice of Entry of Appearance as Attorney or Accredited Representative, with ICE. The L-3 form has a section to indicate for which matters the

attorney represents the client, ProBAR checks "other" and adds "asserting TVPRA protections." This allows ProBAR attorneys to receive notice of sudden transfers and DHS requests to interview the child. We have incorporated this representation practice since September 2025 when the government attempted to repatriate detained Guatemalan children in the middle of the night without notice to counsel. We also currently provide other legal representation services to over 250 clients, including detained and released children, funded by the UCP contract. ProBAR attorneys represent these 250+ child clients in their asylum, Special Immigrant Juvenile Status (SIJS), T visa, U visa, VAWA, I-130 family petition, adjustment of status, naturalization, and citizenship cases.

4. Our ProBAR Youth Defense team currently has 17 attorneys and DOJ Accredited Representatives. They handle the 250+ active cases representing unaccompanied children both in ORR detention and released in the community and other contract mandated tasks. Due to current court practice of resetting cases every 2-4 weeks, ProBAR attorneys appear in immigration court every 2-4 weeks for each client in proceedings. Additional attorney time is now required in motion practice for seeking continuances that used to be automatic. For example, a child whom a Texas family court has already determined to be abused, abandoned, or neglected and determined that it is not in their best interest to return to their country of origin, and whom USCIS has determined to be eligible for SIJS was until recently removed from the court docket without DHS objection. Now, that same child must appear in court every couple of weeks, and the ProBAR attorney must prepare extensive briefing to prevent their deportation each time. In addition, our attorneys are providing contract mandated Friend of Court services in the immigration court in Harlingen and Houston up to five days a week to 30-50 children a day and conducting follow-up consultations to answer legal questions for TVPRA L-3 children.

5. Meanwhile, ProBAR clients are being detained for much longer than in the past—from an average length of stay of 30 days to the current average of 200 days. This delay in release is complicating the children's legal cases and affecting their mental health. Even children with parents in the United States must wait for DNA testing, home studies, mysterious new

"sponsor verification checks," and other processes that significantly delay their release for months. For example, ProBAR currently represents a four-year-old who has been in custody over 300 days despite his mother and other family also living in the United States. While these children are detained, they go to court every few weeks and their cases get very complicated. For example, a young child like the one mentioned above will have the strongest SIJS application once they are with an adult family member who can petition the state court to become their managing conservator. Because the child remains detained in Texas, they would need to pursue SIJS through a Declaratory Judgment, a more historically precarious form of underlying petition for SIJS. Representation is complicated by the child's age; they would need a "next friend" to proceed in state court. Meanwhile, the immigration court pushes forward towards removal despite the child's eligibility for relief.

6. At the same time, ProBAR legal staff are dealing with a flood of administrative work on UCP cases from prior UCP contracts dating back ten years or more, including new asylum fee notices, biometric appointment notices, and interview appointments for hundreds of children who have passed through the detention shelters in South Texas and filed an application for asylum.

7. ProBAR staff provide child-sensitive, trauma-informed legal services to unaccompanied children on the border and have been doing so for over 20 years. ProBAR has developed expertise in providing legal information to children—breaking down difficult legal concepts so that children who are alone, vulnerable, and facing an incredibly complex system in a language and culture foreign to them can understand what is happening to them and what their options are. We deliver these services in rural South Texas, where other legal services are minimal and where there is no hub of pro bono attorneys and no law school. Our in-person services are vital and irreplaceable.  Our staff receive extensive training on how to work with traumatized children in their immigration proceedings. Many of ProBAR's child clients have survived child abuse, sexual assault, human trafficking, and other traumas. Those children may take a significant amount of time to open up and develop the trust and rapport necessary to effectively pursue legal relief. The challenges

3

described above make that extremely difficult and require multiple in-person meetings, high-level subject matter expertise, and devoted staff. For example, ProBAR represents an 11-year-old indigenous Guatemalan child. The child declined multiple visits until a senior attorney visited the child in person with her child advocate. Having highly trained, culturally-sensitive, in-person staff was the only way that effective representation ultimately occurred.

8. UCP funding represents a majority of ProBAR's funding and is the only remaining federal subcontract that supports ProBAR's work.  ProBAR received funding for our UCP legal services under Contract Line Item Number (CLIN) 1 for initial Know Your Rights and intake legal services and CLIN 2 for direct representation legal services.

9. The last month for which we received payment from ORR for CLIN 2 legal services was November 2025. The delay in payments has had a devastating impact upon ProBAR and our work. The insecurity has been a significant contributing factor in the loss of legal staff—including seven attorneys and three paralegals this year. This loss of staff means a loss of expertise and a loss of capacity. As a result, for the past several months we have had to restrict immigration court representation of new clients to those who are seeking voluntary departure.

10. The recent additional data requests by ORR have been extremely time-consuming and a burden on our already over-extended staff. We keep records of time based on how ORR requires the information, not specifically by client and case matter. For example, a ProBAR attorney might go to a shelter and meet with five L-3 TVPRA representation children who have court pro se the next day to answer their questions about the Form I-213 Record of Deportable/Inadmissible Alien DHS filed in their last hearing and the procedural protections under the law for unrepresented minors, then meet with two clients she will represent for voluntary departure, driving an hour each way to the detention shelter. The notes on each meeting will be recorded on each case matter in our case management system, but not with an amount of time associated per child, because that has never been a requirement. For timekeeping, the attorney might record that they spent three hours doing

4

"CLIN 2 TASK 8" program management for the five L-3 TVPRA only follow-ups and another three hours of "CLIN 2 TASK 3" for direct representation of the two voluntary departure clients + travel time. This work occurs every day across ProBAR staff at 17 different shelters and would be extremely difficult to go backward in time to report. Additionally, if, for example, one of those children decided ultimately not to take voluntary departure, the ProBAR attorney would not want to report to the government (who is also opposing counsel) that they had entered representation for voluntary departure then decided instead to pursue an asylum claim, because it could be viewed negatively as to the child client's fear of return and would be an ethical violation of confidentiality.

11. If the ORR payments do not resume soon, ProBAR will face imminent and catastrophic harm. We will be forced to lay off staff and cut services to clients. At the same time, we would be ethically required to continue representing some clients and denied the ability to withdraw in other cases by immigration judges.  We would need to redirect funds for this work from our other programs, causing harm to those services and programs.

12. If the payments are not promptly resumed, the harm to us, our work, our staff, and our clients will be disastrous and potentially irreversible.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 23rd of July 2026, in Harlingen, Texas.

_____

**Lauren Fisher Flores**
**Legal Director**
**ABA ProBAR**

5