IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA OAKLAND
DIVISION

| | |
|---|---|
| COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., <br><br> Defendants. | Case No. 4:25-CV-02847-AMO <br><br> **DECLARATION OF JUSTICE FOR OUR NEIGHBORS NORTH CENTRAL TEXAS IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE THE PRELIMINARY INJUNCTION** |

**DECLARATION OF BETHANY E. BRAGG**

**JUSTICE FOR OUR NEIGHBORS NORTH CENTRAL TEXAS**

*I, Bethany E. Bragg, make the following statements on behalf of myself and Justice For Our Neighbors North Central Texas (JFONNCTx). I certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. §1746.*

1. I am over the age of 18 and make this declaration based upon my personal knowledge and experience. If called to do so, I could and would competently testify to these matters under oath.

2. I am the Executive Director at Justice For Our Neighbors North Central Texas (JFONNCTx).

3. Justice For Our Neighbors North Central Texas serves 235 unaccompanied minors in North Central Texas (Dallas Fort Worth and surrounding area). Specifically, Justice For Our Neighbors North Central Texas serves unaccompanied minors in need of no-cost legal representation and advocacy, many of whom are escaping abuse, torture and human trafficking.

4. Justice For Our Neighbors North Central Texas currently has 7 attorneys. These attorneys are currently handling 210 active cases representing unaccompanied children.

5. Our attorneys have specific knowledge, training, and expertise in serving clients that are children, that cannot navigate our complicated legal system alone. Almost all our minor clients have experienced trauma, abuse, neglect, and some have even experienced torture. This is a specialized area of representation to be able to gather pertinent information from child clients and then provide excellent representation.

6. Unaccompanied Children's Program (UCP) funding from the Office of Refugee Resettlement (ORR) represents approximately 85% of JFONNCTx's overall annual budget.

7. The funding that comes to JFONNCTx from ORR pays for the attorneys that represent the unaccompanied minors, all optional and required benefits to employees, authorized expenses such as mileage, and the overhead of retaining these attorneys. Of the 7

attorneys on staff, only one was original to JFONNCTx. The remaining 6 were hired specifically to perform the duties outlined in the contract regarding representation of unaccompanied minors. The last month for which we received payment from ORR for our UCP legal services was November 2025. The delay in payments has had a devastating impact upon JFONNCTx and our work. The delay in payment has caused our agency to have to reduce staff, has depleted our reserve funds, and has left us without the resources to move forward with the work in the mission and work that we existed to address before this contract, and intended to continue after this contract. The almost $800,000 that is owed to us was paid from our agency's reserve funds. Therefore, we are laying off those 6 attorneys, and our reserve funds are down to only enough to support our ordinary services for another 60 days.

8. While we have tried to utilize other sources of funding to the extent possible, those are not enough to mitigate the impact of these payment delays. Individual donors and grants/foundations provide what support they can, however, those sources of funding were never intended to replace money for which we have been awaiting reimbursement in accordance with the contract that was approved by our Board of Directors for service to the UAC agreement. Other sources of funding are not approved by the giving entity to support the structure that our agency has developed to provide the UAC services in accordance with the contractual requirements.

9. ORR has been withholding payment and requesting information for reimbursement that was never included in the contract or its required reporting metrics. The type of information includes the "A" number of the minors, and other specifically identifying information. Some of the information they are requesting we do have as part of the child's private, confidential file. Other pieces of information we simply do not collect. The additional information that is now being requested from ORR is completely inexcusable for a few reasons. First, the current reporting demand extends far beyond the scope of the contractual reporting requirements. We have been in this contract for a few years, and not until December 2025 were we required to provide this additional client information

that spans far beyond the reporting requirements of the contract that we signed. We were also notified of these additional reporting requests AFTER we had performed the services outlined in the contract and billed for reimbursement. Additionally, the data now required violates the sacred trust between an attorney and their clients. When we are being asked to provide information that independently  identifies our clients, we get into a legal and ethical space that is incongruent with effective, legal and ethical frameworks.

10. In addition, if the ORR payments do not resume soon, JFONNCTx will face imminent and catastrophic harm. As a not-for-profit that has, in essence provided legal services more than $700,000 with the contract that assures reimbursement when the outlined billing documents are completed and on time, we have "loaned" seven months of our services to a government that seems to have not contracted in good faith. Our agency has paid staff and all expenses thereto related to complying with the contract. Several of our staff members were hired ONLY for the purpose of providing services under this contract. At this point, not only will those staff members be laid off (terminated) but this "advance" of expected $700,000 will cause us to have to also lay off attorneys, a paralegal, and others that are at the core of our agency's business not withstanding the UAC contract.

The children we are representing will be left with no counsel. They will be forced to appear in court with no representation. Additionally, they will have to depend upon other untrained and inexperienced adults around them to complete legal forms that should be completed with the guidance of an attorney. Any attempt to replace their current representation will give them an attorney unfamiliar with their case and quite likely attorneys that do not have the depth and breadth of immigration experience as our attorneys. Our attorneys have been specifically trained in trauma informed  interviewing techniques. As all these young clients have experienced trauma, all of their interactions with their attorney are from a child-centered trauma-informed mindset.

We have depleted ALL reserve funds that our staff and donors have worked hard to create. Continued failure of payment may leave our agency on the precipice of shuttering our agency.

11. If the payments are not promptly resumed, the harm to us, our work, our staff, and our clients will be catastrophic and potentially irreversible. As stated above, if payments are not made quickly, our agency (examining aspects of service outside of the scope of this contract) will have to stop our services from our traditional services, serving our traditional clients. Our reserve funds have been expended, and our agency is on the brink of going out of closing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 23rd of July 2026, in Fort Worth, TX.

_Bethany E. Bragg_

Bethany E. Bragg

Executive Director

Justice For Our Neighbors North Central Texas

4