IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, et al.,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,

Defendants.

Case No. 4:25-CV-02847-AMO

**DECLARATION OF CRISTEL STEFANY MARTINEZ IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE THE PRELIMINARY INJUNCTION**

**DECLARATION OF CRISTEL STEFANY MARTINEZ**

**MANAGING DIRECTOR, MNM LAW OFFICES**

*I, Cristel Stefany Martinez, make the following statements on behalf of myself and MNM Law Offices. I certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. §1746.*

1. I am over the age of 18 and make this declaration based upon my personal knowledge and experience. If called to do so, I could and would competently testify to these matters under oath.

2. I am the Managing Director of MNM Law Offices ("MNM"), an immigration law firm based in the City of Industry, California. MNM provides legal services to unaccompanied children under the Unaccompanied Children Program ("UCP") as a subcontractor of the Acacia Center for Justice ("Acacia").

3. MNM currently represents approximately 325 unaccompanied children in Southern California, primarily in Los Angeles County and the surrounding region. These clients include unaccompanied children in Office of Refugee Resettlement ("ORR") custody at shelter and long-term foster care programs in the greater Los Angeles area, as well as unaccompanied children who have been released from ORR custody to sponsors in the community. MNM currently has four attorneys who together handle these approximately 325 active cases—a caseload of roughly 80 child clients per attorney. The contract disruption with Acacia has forced significant operational reductions: MNM's overall staff has been cut in half (from 20 to 10 employees), leaving the firm with fewer resources to support both the attorneys' caseloads and its administrative and support functions.

4. MNM's attorneys represent unaccompanied children at every stage of their immigration cases: in removal proceedings before the immigration courts; on appeal before the Board of Immigration Appeals; before U.S. Citizenship and Immigration Services ("USCIS") on asylum, Special Immigrant Juvenile Status ("SIJS"), and other humanitarian petitions; and in California state court proceedings to obtain the predicate findings required for SIJS. Our attorneys and staff travel regularly to ORR shelters and long-term foster care programs

1

throughout the region to meet with detained children in person, and we appear in person alongside our child clients in state and immigration court.  In-person representation is essential for this population: building the trust necessary for a child who has suffered trauma to disclose the facts that support their eligibility for relief requires sustained, face-to-face contact with attorneys and staff trained to work with trauma survivors, and these cases cannot responsibly be handled without significant subject-matter expertise.  I have approximately eight years of experience practicing immigration law, and our team has developed deep expertise in SIJS, asylum, removal defense, and appellate litigation on behalf of unaccompanied children.

5.  UCP funding from ORR, which MNM receives through its subcontract with Acacia, represents approximately 90% of MNM's overall annual budget.

6.  The last month of UCP legal services for which we were paid in full was November 2025, with that payment received in April 2026. For the December 2025 invoice, we received only an advance from Acacia to help us cover some costs, which did not arrive until June 2026 and covered only a single month's services. Every month of work since January 2026 remains unpaid. This delay has wrought significant harm on MNM's financial condition, its day-to-day work, and its staff's ability to continue furthering its mission. Because payments stopped while our obligations to our child clients continued, MNM has been forced to lay off approximately half of its staff, exhaust the firm's available credit to cover payroll and ongoing case costs, and begin transitioning UCP clients to other legal services providers, an effort made far more difficult by the limited capacity of other providers in our region. The advance we obtained from Acacia, while helpful, was limited and is no substitute for the full and timely resumption of ORR payments.

7.  The consequences of continued nonpayment will fall hardest on the children we represent. If MNM cannot sustain its operations, many of these children will be left without counsel entirely, as other providers in our region lack the capacity to absorb them, forcing us to withdraw from cases in which vulnerable minors have no realistic prospect of securing replacement representation. As attorneys who have spent years building the trust these

children need to come forward, being forced to abandon them for lack of payment is a professional and personal anguish, but the graver harm is theirs, not ours. Our duties to these children do not end because our funding has, and withdrawing mid-case cuts against the core obligations we owe them as their attorneys. MNM has chosen to exhaust its own resources rather than turn away from these children, but no organization can operate indefinitely without payment for work already completed.

8. Continued nonpayment also threatens the viability of MNM as a whole. Having already reduced its staff by half and exhausted its available credit, MNM has no reserves left to absorb further losses and no other programs from which it can redirect resources, because UCP funding represents approximately 90% of the firm's annual budget. Continued nonpayment will force additional layoffs in the imminent future and will ultimately force MNM to cease operations entirely. When that happens, MNM will be unable to continue representing its current child clients or accepting new ones, leaving children who cannot navigate the immigration system without counsel in proceedings where their safety and their futures are at stake.

9. The lack of funding is inflicting devastating and, in critical respects, irreversible harm on MNM, our staff, and our child clients. Once the firm dissolves and our 325 child clients are scattered to providers who likely lack the capacity to absorb them, or are left to face removal proceedings alone, that harm cannot be undone by any later payment. Their cases will have gone forward, or collapsed, without us.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 23rd of July 2026, in the City of Industry, California.

_____

Cristel Stefany Martinez

Managing Director

MNM Law Office

3