BRETT A. SHUMATE
Assistant Attorney General
Civil Division
WILLIAM C. SILVIS
Assistant Director
MICHAEL A. CELONE
KATELYN MASETTA-ALVAREZ
Senior Litigation Counsels
ZACHARY A. CARDIN
Trial Attorney

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 532 - 4945
Zachary.a.cardin@usdoj.gov

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *ET AL.*, <br><br> Defendants. | Case No. 4:25-cv-02847-AMO <br><br> **DEFENDANTS' RESPONSE TO MOTION TO ENFORCE** |

## I.    INTRODUCTION

Plaintiffs' Motion to Enforce ("Motion") repeats the arguments this Court considered in connection with the Order to Show Cause, Dkt. 158, and Defendants' Response to this Court's Order to Show Cause ("OSC Response"), Dkt. 161, which Defendants incorporate by reference. Defendants have paid $127,790,484 across all four Contract Line Item Numbers ("CLINs") of Contract No. 75P00125C00016 — CLINs 1, 3, and 4 through May 2026, and CLIN 2 through November 2025 — continue to perform the contract through its current period of performance, and remain ready, willing, and able to pay the outstanding CLIN 2 invoices upon receipt of documentation that the contract, the Federal Acquisition Regulations ("FAR"), and the Treasury Financial Manual all require before disbursement of public funds. Declaration of Richard Debany ("Decl.", attached as Exhibit A) ¶¶ 5, 9, 25, 27, 31. Plaintiffs' Motion does not identify any deterioration in Defendants' conduct since the OSC Response. Since this Court's July 16, 2026 hearing, ORR provided Acacia a template for the exact data format needed to substantiate invoices, Acacia and ORR have continued exchanging proposals, and Acacia's own CEO publicly confirmed on July 21, 2026 that Acacia remain "in negotiations with the government over the delayed payments." Decl. ¶ 36. ORR continues to work with the contractor through established Federal Acquisition Regulation (FAR) processes to resolve this matter and to receive the information needed to validate the invoices, including a documentation format for past and future invoice substantiation that both parties can accept.

Plaintiffs' motion raises new characterizations not previously before the Court: that ORR's documentation request is impossible for Acacia to satisfy, that it demands privileged or confidential information, and that ORR's concerns are disproportionate to the amounts withheld. As to the first, Defendants do not agree that the information ORR has requested is impossible to provide, and the record — including Acacia's own recent counterproposals — does not support that characterization. Nor is this dispute properly resolved through a motion to enforce an injunction in an APA action concerning statutory compliance with the TVPRA and Foundational Rule. It is, at its core, a contract-administration dispute between ORR and its contractor, Acacia—a non-party to this litigation—over invoice

1

substantiation, subject to the dispute-resolution procedures Congress established in the Contract Disputes Act—procedures Acacia should avail itself of. Decl. ¶¶ 35–38.

## II.      FACTUAL BACKGROUND

### The Requirements of the Contract

ORR awarded Contract No. 75P0125C00016 to Acacia to provide legal support services to unaccompanied children (UAC), consistent with the TVPRA, 8 U.S.C. § 1232, and ORR's Foundational Rule, 45 C.F.R. part 410. Decl. ¶ 4, Exh. 1. Performance began August 1, 2025, and ORR most recently exercised Option Period 3 on April 30, 2026, continuing performance through July 31, 2026. Decl. ¶ 5. The contract is a hybrid Firm-Fixed-Price and Time-and-Materials contract. Decl. ¶ 7. CLIN 2 — covering legal representation, other legal assistance, data collection and analysis, and services at emergency facilities — is billed on a Time-and-Materials basis, which "require[s] more detailed supporting documentation to substantiate the labor hours and costs billed" than the fixed-price CLINs. Decl. ¶ 7. The contract requires submission of "court filings, invoices, receipts, and forms with sufficient information to identify qualifying UACs." Decl. ¶ 8. This is consistent with FAR 52.212-4, Alternative I, which entitles the Contracting Officer to require contractors to "substantiate invoices . . . by evidence of actual payment, individual daily job timecards, records that verify the employees meet the qualifications for the labor categories specified in the contract, or other substantiation specified in the contract." Decl. ¶ 8 (quoting FAR 52.212-4, Alt. I, para. (i)(1)(i)(D)). These requirements exist so that ORR, as a good steward of public funds, can verify that invoiced costs "correspond to direct-representation services provided during the relevant billing period" and are "properly chargeable" under CLIN 2, consistent with FAR 31.201-2 to 31.201-4. Decl. ¶ 9.

### III. ARGUMENT

### Defendants Have Significant Invoice Substantiation Concerns

2

Beginning in late 2025, ORR identified children Acacia reported as actively represented for whom no corresponding indication of representation could be located in ORR, U.S. Citizenship and Immigration Services ("USCIS"), or Executive Office for Immigration Review ("EOIR") records; children appearing on active-representation reports who appeared to have already been repatriated and were no longer present in the United States; and information suggesting that some children were appearing in immigration proceedings without legal representation, notwithstanding reports indicating active representation; and significant percentages of children appearing unrepresented. Decl. ¶¶ 10-11. ORR also identified individuals whose recorded ages appeared inconsistent with eligibility for services under the contract. Decl. ¶ 14. When ORR compared the 24,157 A-Numbers Acacia reported for November 2025 against DHS, USCIS, and EOIR records specifically, it found that at least 3,574 children had no Notice of Representation Form filed in any available federal system, and that 265 children on the active-representation list appeared to have already been repatriated before or during the billing period. Decl. ¶ 14. Separately, much of the supporting documentation Acacia submitted for labor and direct costs was partially or extensively redacted, failed to identify the specific child for whom services allegedly were performed, and lacked sufficient information to determine whether services were provided to qualified children during the applicable billing period at all. Decl. ¶ 15. As a result, ORR was unable to validate or reconcile the claimed costs or trace them to identifiable contract performance — a deficiency that exists independently of, and in addition to, the A-Number-level discrepancies Plaintiffs address.

These concerns were not simply ORR's own assessment; they were independently corroborated by forensic auditors from the Defense Contract Audit Agency ("DCAA"), who reviewed Acacia's December 2025 invoice specifically. Decl. ¶ 17. DCAA was able to perform a forensic review of only 3.46% of that invoice because the remaining 96.54%, consisting entirely of labor costs, could not be

3

validated at all, as "the contractor failed to provide adequate supporting documentation." Decl. ¶ 18. That finding alone means DCAA could not verify the documentary basis for the overwhelming majority of a single month's invoice, not merely a discrete subset of the children it covered.

Even within the narrow 3.46% DCAA was able to review, it identified apparent duplicate supporting documents, unsupported adjustments to claimed amounts, missing receipts and invoices, insufficient explanations for billed charges, inconsistencies between claimed amounts and underlying documentation, and costs for recruitment and translation services that were charged to CLIN 2 rather than to the CLINs that actually cover those activities. Decl. ¶ 19. DCAA further found that supporting documentation frequently failed to identify the date or location of services performed, failed to establish that services were provided to active UACs under the contract at all, and failed to describe the nature of the work subcontractors performed, leaving DCAA unable to determine whether billed hours and costs were properly incurred and allocable to the contract in the first instance. Decl. ¶¶ 19-20. Travel costs presented the same pattern: claims frequently lacked the traveler's identity, relationship to the contractor, business purpose, or documentation supporting claimed mileage, deficiencies inconsistent with FAR 31.205-46's requirements for substantiating travel expenses. Decl. ¶ 21. DCAA additionally identified unsupported manual calculations, unexplained invoice adjustments, and duplicate entries that could not be reconciled to any underlying documentation. Decl. ¶ 20.

Acacia's own accounting practices raise cause for additional concern. Acacia's Semi-Annual Direct Representation Spending Update reported a cumulative cost of $1,879 per case, calculated by dividing total amounts billed by an "active case" list that Acacia itself defines to include completed cases that have not yet been formally closed. Decl. ¶ 16. That methodology likely understates true per-case spending, and — compounded by the documentation deficiencies described above — has left ORR unable to confirm whether Acacia's actual spending per case complies with the contract's $8,500 per-

4

case cost benchmark at all. Decl. ¶ 16. These concerns are foundational to the contract, not outliers as asserted by Plaintiff.

**The Information Asked for is Not Impossible to Recreate Nor Confidential**

Plaintiffs contend it is impossible for Acacia to produce the requested information because it was never previously required and cannot be reconstructed after the fact. Not True. The contract has always required submission of "court filings, invoices, receipts, and forms with sufficient information to identify qualifying UACs," and CLIN 2's Time-and-Materials structure has always carried a correspondingly higher substantiation standard under FAR 52.212-4, Alternative I, given that "invoices submitted under CLIN 2 require more detailed supporting documentation to substantiate the labor hours and costs billed" than the fixed-price CLINs. Decl. ¶¶ 7–8. ORR's first request for A-Number level information was made on September 25, 2025, before any of the disputed invoices were even submitted, meaning Acacia has had notice of this substantiation standard since before it billed a single one of the invoices now at issue. Decl. ¶ 23. The categories of information ORR seeks — A-Numbers, attorney and firm names, dates of representation, and EOIR-28/G-28 filing dates — are not data that must be freshly manufactured; they are the ordinary case-administration records generated in the course of appearing before EOIR and filing notices of appearance on behalf of a represented child, records any legal services organization operating at this scale would be expected to maintain in some form as part of ordinary case management.

The parties' own recent exchanges confirm that this information is not, in fact, unobtainable. Acacia's July 14, 2026 counterproposal to ORR offered new aggregated data reporting in response to ORR's concerns, and Plaintiffs' own motion describes Acacia's willingness to provide, on a prospective basis, precisely the categories of information ORR has requested throughout: which children received representation during a billed month, the hours billed for each child, and the A-Number associated with

5

costs accrued. Decl. ¶ 36; Mot. at 8. If Acacia can generate and provide this information going forward, its position that the same categories of information cannot be provided, or reconstructed, for the invoices already submitted is difficult to reconcile with its own proposals.

What's more, the information requested to unlock payment is not confidential. The specific items ORR requested on June 29, 2026 for each billed child — A-Number, attorney and law firm name, date(s) of representation, EOIR-28/G-28 filing date, and billable hours — do not require disclosure of privileged communications, litigation strategy, or the substantive content of representation. Decl. ¶ 27. A notice of appearance in immigration court is, by its nature, a document filed with the government in the ordinary course of representation; its existence and filing date are not confidential as between Acacia and its own contracting agency. Billable hours and attorney identity are likewise the ordinary substantiation FAR 52.212-4 already requires for any Time-and-Materials contract, and are unrelated to the confidentiality of communications between attorney and client. To the extent Acacia has case-specific confidentiality concerns as to any particular file, the appropriate response is to address those concerns as to that file specifically, rather than wholesale refusal to provide entire categories of basic billing information necessary to verify invoices covering thousands of children.

**At its Core, this is a Contract Dispute between ORR and Acacia**

Plaintiffs argue that the terms of the contract and the FAR are simply irrelevant to this motion. Defendants respectfully disagree. The Contract Disputes Act establishes a comprehensive statutory framework specifically designed to resolve disagreements between the government and its contractors over payment, invoice adequacy, and contract interpretation, and Acacia's own claim is already proceeding through that framework. Decl. ¶ 34. Directing ORR, through a motion to enforce an injunction concerned with statutory compliance under the TVPRA and Foundational Rule, to disburse funds (i.e., specific performance) notwithstanding an ongoing and concurrently unresolved contract

6

dispute over invoice substantiation would bypass the dispute-resolution mechanism Congress specifically created for this type of dispute, and would do so without any of the factual development that those processes are designed to produce.

The contractual nature of the action is apparent on the face of plaintiffs' supporting declarations, which repeatedly frame the matter in contractual terms. *See* Decl. of Wendy Young, Dkt. 166-4 at 2-5, 8-10, ¶¶ 6-18, 20, 33, 39, (providing detailed history of the ORR-Acacia contract, KIND's subcontract, bridge contract, option periods, funding mechanism, and termination of KIND's subcontract); Decl. of Michael Lukens, No. 166-1 at 2-6, ¶¶ 5-16 (discussing bridge contract, invoicing through Acacia, contract renewal, payment, and expiration); Decl. of Cristel Stefany Martinez, Dkt. 116-12 at 2-3, ¶¶ 2-6 (explaining that MNM is an Acacia subcontractor, discusses disruption of the subcontract, advance payments from Acacia, and dependence on the Acacia contractual relationship); *cf.* Prelim. Inj. Hr'g Tr. 28:12-16 (rejecting premise that the case is about compelling contractual payments: "The Government seems pretty convinced that the relief you seek sounds in contract. You see from my recent orders I disagree. Help me . . . why this is a case that is not about contractual payment.").

As Defendants argued in their earlier opposition briefs—and incorporate and reaffirm here—this matter is a contract dispute which belongs in the Court of Federal Claims pursuant to the Tucker Act. Even assuming the Court had jurisdiction to adjudicate the contract (it does not), proceeding in this posture is patently unfair to the Government, forcing it to essentially pre-litigate the terms of the contract and other contract-based issues against non-parties to that contract, all while the other party to the contract—Acacia—is conspicuously absent, allowing it the advantage of field testing arguments through Plaintiffs before it has to assert them itself in the proper forum. Acacia's absence here also hampers this Court's ability to resolve the issue underlying the instant motion because as a non-party, Acacia cannot be easily ordered to produce any of the information ORR has requested, limiting the

Court's ability to meaningfully probe the billing irregularities and invoice substantiation issues that ORR has identified. Plaintiffs' motion presents Defendants as the sole obstacle to continued funding of legal services, but the current record does not support that characterization. ORR has, since before this motion was filed, pursued both a competitive procurement for follow-on legal services and a bridge-contracting arrangement intended to prevent any interruption in services, and Acacia rejected the proposed bridge contract, which would have clarified the requirements for invoice substantiation going forward. Decl. ¶¶ 32, 38. Furthermore, ORR's efforts to transition to a successor contractor if necessary are being actively contested through GAO bid protests Acacia has filed under the Competition in Contracting Act (CICA), protests that, if timely, generally suspend the government's ability to award or perform a replacement contract while they remain pending. Decl. ¶¶ 40-41; 31 U.S.C. § 3553(c), (d). ORR's continued administration of the existing contract, alongside these procurement efforts, reflects an agency working through the range of options available to it to maintain continuity of services for unaccompanied children, not an agency attempting to evade this Court's order. Decl. ¶ 33.

From the outset, it has been Defendants' understanding that the Court's preliminary injunction recognized that the mechanism of implementation was contractual in nature, and that the preliminary injunction did not modify the terms of the contract, and that normal contract administration processes would continue to operate independent of the preliminary injunction. *See* Prelim. Inj. Hr'g Tr. 6:8-11 (asking whether anything remained to be done to rescind the March 21st partial termination); 8:1-10 (confirming the bilateral modification process and pressing for its completion); 8:11-9:2 (confirming DOI and Acacia were the contracting parties and examining Acacia's subcontracting authority). Defendants also do not understand the preliminary injunction to have suspended the requirements of the FAR, CDA, or CICA, which Defendants understand to continue to operate with full force and effect alongside the Court's preliminary injunction. Decl. ¶ 42.

Finally, for the sake of clarity, Defendants do not understand the preliminary injunction to compel the Government to continue contracting with Acacia beyond the current expiration date, and that the Government retains discretion to choose the mechanism through which the injunction is implemented. *See* Prelim. Inj. Hr'g Tr. 11:16-25, 12:1-8 ("We are not asking the Court to say that the exact contract that was in place before gets put back in place. That's the Government's decision . . . . The Government has made the determination that the way for them to comply . . . . is to extend the contract, but that's the Government's choice. . . ."); 28:12-16 (stating that because the contract was ultimately with Acacia, "presumably any injunction would have to be about the Government continuing to provide these services.").

To the extent any of these understandings are mistaken, Defendants respectfully request leave to file a motion to amend the preliminary injunction to expressly permit ORR to take the steps necessary to comply with its independent legal obligations under the FAR, CDA, or CICA, and clarify that ORR retains discretion to select the mechanism of implementation and is not bound indefinitely to Acacia. Prelim. Hr'g Tr. 31:9-21 ("[P]art of my consideration when I look at proposed orders is to figure out whether or not it is actually enforceable, right, is this specific enough that should we need to have a conversation thereafter about whether or not it's being complied with, is it specific enough that we are not arguing about, you know, sort of broad terms therein. . . . I guess I'm curious . . . . if there are edits you would make at this point to ensure that it is sufficiently specific and thorough that it is clear when compliance is achieved."). At this juncture, in light of the above, Defendants respectfully submit that clarifying modifications to the preliminary injunction are warranted.

If the Court is inclined to order ORR to pay the invoices despite the irregularities and substantiation issues outlined above, Defendants renew their request that Plaintiffs be required to post a bond prior to receiving payment on the disputed invoices, in light of Defendants pending appeal of the preliminary

9

injunction (currently being considered for oral argument in October/November 2026) and plaintiffs' present statements regarding their impending insolvency. *See, e.g.*, Decl. of Bethany Bragg, Dkt. 166-11, at 2-5, ¶¶ 7-11 (stating Justice for Our Neighbors North Central Texas has only about 60 days of operating funds left and is "on the brink of closing"); Decl. of Alicia Horst, Dkt. 166-8 at 2-3, ¶¶ 5-9 (stating Mid-South Immigration Advocates "can no longer maintain a viable organization" and has spent nearly all reserves); Decl. of Cristel Stefany Martinez, Dkt. 166-12 at 3-4, ¶¶ 6-9 (stating MNM Law Offices has no reserves left); Decl. of Melissa M. Lopez, Dkt. 166-13 at 4-6, ¶¶ 8, 12-13 (stating Estrella del Paso has completely depleted its savings and is operating without reserves). If the Government's Tucker Act argument ultimately prevails on appeal, without a bond, ORR will have no way of recouping any funds it is ordered to disburse in response to the instant motion given Plaintiffs' admittedly precarious financial condition.

**Conclusion**

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion to Enforce and/or grant Defendants' requests outlined above as appropriate.

Dated: July 31, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

WILLIAM C. SILVIS
Assistant Director

MICHAEL A. CELONE
KATELYN MASETTA-ALVAREZ
Senior Litigation Counsels

*/s/ Zachary Cardin*
Zachary Cardin
Trial Attorney
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-532-4945
Zachary.a.cardin@usdoj.gov

*Attorneys for Defendants*

11