IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, et al.,<br><br>               Plaintiffs,<br><br>     v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,<br><br>               Defendants. | Case No. 3:25-CV-02847-AMO<br><br>**SUPPLEMENTAL DECLARATION OF MICHAEL LUKENS IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE THE PRELIMINARY INJUNCTION**<br><br>Date:       August 6, 2026<br>Time:      2:00 p.m.<br>Judge:    Hon. Araceli Martínez-Olguín<br>Date Action Filed: March 26, 2025 |

**DECLARATION OF MICHAEL LUKENS**

**EXECUTIVE DIRECTOR, AMICA CENTER FOR IMMIGRANT RIGHTS**

*I, Michael Lukens, make the following statements on behalf of myself and Amica Center for Immigrant Rights. I certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. §1746.*

1.  I am over the age of 18 and make this declaration based upon my personal knowledge and experience.  If called to do so, I could and would competently testify to these matters under oath.

2.  I am an attorney and the Executive Director of Amica Center for Immigrant Rights ("Amica Center"), a plaintiff in the above-captioned case.  I incorporate my Declaration in Support of Plaintiffs' Motion to Enforce the Preliminary Injunction (Dkt. #166-1) as if fully set forth herein.

3.  In my capacity as Executive Director of Amica Center, I regularly communicate with Acacia Center for Justice ("Acacia"), as well as with the dozens of other organizations offering legal services as subcontractors within Acacia's Unaccompanied Children's Program ("UCP") provider network. Acacia also frequently shares updates with Amica Center and other organizations that are part of the provider network about issues impacting the network, which is how I have personal knowledge of the information described in this declaration.

4.  I understand that in September 2025, the Contracting Officer Representative ("COR") reached out to Acacia with a routine data request seeking information related to the representation of a sample of unaccompanied children.  My understanding is that at that time, the COR did not request all of the information that is currently the subject of this dispute, including billable hours broken down by child.

5.  I understand since the filing of Plaintiffs' Motion to Enforce, neither the Department of Health and Human Services ("HHS"), Office of Refugee Resettlement ("ORR"), nor the COR have engaged with Acacia on a bridge contract aside from providing an unworkable draft that repeated the same impossible data requests that are the basis for their non-

payment, and refusing to discuss Acacia's concerns. HHS's proposed bridge contract solicits significant changes from the recent, now-expired contract including disclosure of information that is protected under attorney ethics rule and requiring final adjudication and case closeout to happen before representation work becomes billable, meaning that representation would continue for years without a billable event. This is especially problematic for such a short proposed contract with short option periods as most of the ongoing casework would produce no billable event in the contract term, resulting in more unpaid legal representation services for many of the non-profit providers that are already financially stretched from the government withholding payments since December 2025. I understand that Acacia made efforts to negotiate and said information sharing would need to be limited to what can be ethically provided. HHS made no effort to discuss. I understand that the proposed bridge contract is under protest with the Government Accountability Office, due to both the requirement for unethical behavior (including under 8 C.F.R. § 1003.102, which governs the conduct of attorneys in Immigration Court Proceedings) and the payment structure being outside the bounds of normalcy and designed to delay payments to nonprofits for months or years.

6. The government also waited until the last week of the current contract to begin discussing a transition with Acacia, despite the fact that Acacia already prepared a transition plan under the recent, now-expired contract that outlined the timelines and information Acacia would need for a feasible transition to new contractors that would minimize the number of unaccompanied children who might lose representation because of a transition in services.

7. On July 26, 2026 (the Sunday after Plaintiffs filed their motion to enforce), HHS sent Acacia a Performance Work Statement ("PWS") solicitation for "Legal Services Caseload Transfer." A true and correct copy of this PWS is attached as **Exhibit A**. The PWS calls for Acacia and its subcontractors to take certain actions to transition certain representations of unaccompanied children to an unidentified future contractor. The PWS also contemplates that at least some of the current subcontractors are expected to continue to provide representation services under the new contract, but it makes no provision to address

the existing funding delays.  Under the PWS, several certain categories of cases, including the cases of unaccompanied children without an identified form of relief, cases seeking certain types of relief such as S visas, cancellation of removal and relief under the Convention Against Torture, motions to reopen, and appeals, would not be eligible for transition to a new contractor, forcing the lawyers handling these cases to continue their previously funded representations for free (if they are able to do so) or leave children without representation altogether. The PWS explicitly would not pay for any legal representation services for unaccompanied children whatsoever, even though the contract for transitions would last up to 120 days. The government has not shared any details as to any other award or the preparedness of any potential incoming contractor to actually represent these children's cases. And the PWS acknowledged that the latest contract between Acacia and ORR was set to expire on July 31, 2026, without mentioning any replacement contract with any legal service provider.

8.  On July 27, 2026, Acacia asked HHS a number of questions about the PWS transition-only plan. The next day, July 28, 2026, HHS stated in responding to these questions that, if any unaccompanied child that HHS previously paid Plaintiffs to represent will not consent to their case being transitioned to another legal service provider receiving funding from HHS, HHS expects Plaintiffs to "retain the case pro bono" or to be forced to withdraw if ethically possible.

9.  On the evening of July 29, 2026, at 7:33 p.m. Eastern Time, HHS sent Acacia an RFP ("Request for Proposal") to perform the transition work in the PWS to procure Acacia's services for a four-month transition to a new contractor. HHS set a deadline of 8:00 a.m. Eastern *the next day*, July 30, 2026, for any questions about the RFP—giving Acacia 12 total hours and zero business hours to send any questions about the RFP.  And HHS set a proposal deadline for the transition solicitation of 12:00 p.m. Eastern on *the same day*, July 30, 2026, just 17 hours (mostly overnight) after it sent the RFP and only 4 hours after any questions were due. An overnight timeline is both unheard-of and impossible to meet.

SUPPLEMENTAL DECLARATION OF MICHAEL LUKENS ISO PLAINTIFFS' MOTION TO ENFORCE THE PRELIMINARY INJUNCTION

10. On July 29, 2026, Acacia responded to HHS and said these timelines are impossible and that they would need at least five business days after they identify who the incoming contractor is before they could make a proposal. Acacia also reiterated that day that they are willing to negotiate continuation of legal services under reasonable terms. The government did not respond to Acacia's offer to negotiate.

11. HHS subsequently moved the deadline for questions to July 31, 2026 – the last day of the now-expired contract – and the deadline for proposals to 9:00 a.m. Eastern on August 5, 2026.

12. In my experience and understanding, the normal timeline for a RFP is typically at least a week for a sole source and 30 days for a full public competition. It has been very concerning that, at the time the recent bridge contract with Acacia lapsed, the government did not seem to have a plan at all for the continuation of unaccompanied children's legal services or an orderly transition. Unpaid legal work is going to need to happen this very week and in all the following weeks, if even possible, until the government identifies a new legal services provider available to take on the approximately 24,000 pending cases under the current network.

13. On July 31, 2026, Acacia submitted questions regarding the RFP to see if they could elicit any information about HHS' plan for children's continued legal services, and asked the government to move the deadline for proposals to 12:00 PM EDT August 7, 2026.

14. On July 31, 2026, I learned through Plaintiffs' counsel that Defendants' counsel stated over email to Plaintiffs' counsel that ORR was in the final steps of awarding a bridge that same day. Defendants' counsel stated that this week, in communications with Acacia regarding their transition plan, the COR communicated that Acacia should plan on transitioning to no more than two contractors. *See* Ex. B (July 31, 2026, Email exchange between Plaintiffs' and Defendants' counsel). That same day, the government notified Acacia they intended to award a contract that day but did not say who the awardee is.

15. Also on July 31, 2026, I learned that the government had informed Acacia it was not awarded the bridge contract, and that the contractor names and start date would be publicly

SUPPLEMENTAL DECLARATION OF MICHAEL LUKENS ISO PLAINTIFFS' MOTION TO ENFORCE THE PRELIMINARY INJUNCTION

available after contract award. In response to Acacia's request to extend the proposal deadline to 12:00 PM EDT August 7, 2026, the government stated an extension would not be granted. On July 31, 2026, the contract between ORR and Acacia, through which ORR paid Acacia (and Plaintiffs as sub-contractors) to provide direct representation and other legal services to unaccompanied children, expired.

16. On July 31, 2026, Plaintiffs' counsel asked Defendants' counsel to clarify how, if at all, the bridge contract(s) handle(s) the continued representation of children who are presently being represented by organizational plaintiffs. Ex. B. No response was received by the time of this filing.

17. On August 1, 2026, after the contract had expired, Plaintiffs' counsel followed up with Defendants' counsel, reported Plaintiffs have not heard about the award of any bridge contract or transition plan for their child clients, and asked how the government is intending to comply with its obligations under the TVPRA and the Court's preliminary injunction. See Ex. B. No response was received.

18. At the time of filing this declaration, ORR has not contacted Acacia or Plaintiffs to actually transition any cases. The government has also still not shared with Plaintiffs or Acacia information about what will happen to the cases of unaccompanied children who are currently being actively represented by counsel since the Acacia contract lapsed on July 31, 2026. At the time of filing this declaration, the government has still not confirmed whether a bridge contract has indeed been awarded and to whom. I am not aware of a contract being in place with any party to fund legal services for unaccompanied children nationwide.

19. Without a contract in place that provides for the legal representation of unaccompanied children, ORR is currently not paying for any unaccompanied children's representations and has not transitioned any cases to any lawyer being paid to represent unaccompanied children.

20. ORR's withholding of payment due to UCP legal service providers since December 2025 means that many of these non-profits will be forced to end their Children's programs, and

that thousands of children will lose access to counsel. Many of these legal service providers – some of which are the only non-profit legal service providers serving immigrant adults and children in their entire region – will close all together.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 03rd of August 2026, in Washington, DC

/s/ Michael Lukens

MICHAEL LUKENS

EXECUTIVE DIRECTOR

AMICA CENTER FOR IMMIGRANT RIGHTS

**ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3) of the Northern District of California, I attest that concurrence in the filing of this document has been obtained from the signatory to this document.

DATED:  August 3, 2026                                           GIBSON, DUNN & CRUTCHER LLP

By: */s/ Laura M. Sturges*

Laura M. Sturges

*Attorneys for Plaintiffs*

SUPPLEMENTAL DECLARATION OF MICHAEL LUKENS ISO PLAINTIFFS' MOTION TO ENFORCE THE PRELIMINARY INJUNCTION