UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, *et al.,*

        Plaintiffs,

      v.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.,*

        Defendants.

Case No:  4:25-cv-2847 (AMO)

## <u>DECLARATION OF RICHARD B. DEBANY</u>

I, Richard B. Debany, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I am the Chief for the Division of Acquisition Requirements of the Office of Refugee Resettlement (ORR), within the Administration for Children and Families (ACF), a component of the U.S. Department of Health and Human Services (HHS).

2. My job duties include, among other things, responsibility for coordinating ORR's acquisition requirements with our contracting support partners to deliver and manage contract solutions that meet ORR's programmatic and mission needs. In this capacity, I am responsible, in collaboration and coordination with HHS' Office of Mission Acquisition Solutions (OMAS), for directing ORR's post award contract management of its contracts, including its legal services contract.

3. This declaration is based upon my personal knowledge, information acquired by me in the course of performing my official duties, information contained in the records of ACF and ORR, and information conveyed to me by current agency employees and contractors. Since submitting my prior declaration, ORR has continued procurement, contract administration, and transition planning activities in earnest relating to legal representation services for unaccompanied children. I submit this supplemental declaration to provide a factual update regarding those activities as of the date of this declaration.

4. ORR continues to work with OMAS to procure successor contracts to provide legal representation services for UAC, and are in the final stages of negotiations with two potential successors. Because these procurement negotiations remain ongoing, the Procurement Integrity Act limits the information I can publicly disclose regarding the substance of those negotiations and the ongoing

1

procurement. ORR is pursuing these procurements to establish long-term legal services for UAC consistent with its statutory responsibilities, in addition to the other measures described below.

5.      In parallel with those procurement efforts, ORR has pursued multiple operational workstreams to ensure continuity of legal services during the transition to successor contracts. Those workstreams include interim grant funding, transition planning, coordination with existing legal service providers, and development of operational procedures intended to minimize any interruption in legal representation while the successor procurements remain pending.

6.      On August 4, 2026, ORR awarded a supplemental cooperative agreement, in an amount of up to $20 million, to the U.S. Committee for Refugees and Immigrants ("USCRI") to provide legal services for UAC in ORR care. USCRI currently provides services to ORR under a cooperative agreement for Home Study and Post-Release Services and previously performed immigration legal services for Afghan arrivals under an ORR-funded contract. USCRI began providing legal services on August 5, 2026, and ORR is integrating USCRI into its UAC case management processes.

7.      Under the supplemental award, USCRI is prepared to provide legal representation for UAC who have proceedings before the Executive Office for Immigration Review ("EOIR"), legal orientation, and legal consultation services. USCRI has advised ORR that it is prepared to provide these services through at least December 2026. ORR directed USCRI initially to prioritize children with immigration court hearings scheduled during the immediate two-week period following the award while simultaneously providing legal orientation services to newly referred UAC entering ORR care.

8.      ORR's operational planning includes deploying USCRI attorneys to immigration court locations where UAC are scheduled to appear. During the initial implementation period, USCRI attorneys will be available at approximately nineteen immigration court locations nationwide. These interim measures are intended to ensure that eligible children appearing without counsel have immediate access to representation while successor contracts are being finalized.

9.      Separately, ORR published a Federal Register Notice on August 4, 2026, stating its intent to enter into an additional cooperative agreement with Burke Law Group, PLLC, a private law firm with a strong geographic presence in Texas. ORR personnel are processing the grant application and associated administrative requirements in parallel so that, if an award is made, services may begin as expeditiously as practicable.

10.     Regarding transition planning, OMAS, on behalf of ORR, offered Acacia Center for Justice a short-term, four-month bridge arrangement intended to facilitate an orderly transition of active cases while successor legal service providers were implemented. That proposed arrangement included requirements intended to permit ORR to verify services billed and to ensure continuity of operations.

Acacia provided a proposal on August 5, 2026; OMAS and ORR are currently evaluating that proposal. ORR has continued transition planning regardless of whether that bridge arrangement is ultimately accepted.

11.    ORR continues to conduct operational transition planning, including coordinating with existing legal service providers to identify children who are currently represented and to facilitate continuity of legal services during the transition period. On August 5, 2026, ORR contacted existing legal service providers to request information regarding children they continue to represent so that ORR can reduce the risk of duplicate representation through the above lines of effort while ensuring continuity of services.

12.    ORR acquisition personnel, program officials, agency counsel, and OMAS contracting personnel continue to work around the clock to finalize the long-term successor contract(s), and are meeting multiple times a day to evaluate and respond to final proposals, prepare acquisition documentation (including, but not limited to, requisitions to obligate funding), and coordinate implementation and related operational matters, such as integrating interim service providers into ORR operations.

13.    The supplemental cooperative agreement with USCRI and the grant-related activities with Burke Law Group are interim measures while ORR continues its ongoing procurement efforts with OMAS for successor contracts. These coordinated efforts are intended to ensure that UAC receive legal services consistent with 8 U.S.C. § 1232(c)(5), 45 C.F.R. § 410.1309(a), and this Court's Preliminary Injunction.

14.    As of the date of this declaration, USCRI has begun providing legal services, successor contract procurements, and grant activities are in the process of being finalized, and ORR continues to implement its transition to long-term legal services providers following the expiration of its prior bridge contract with Acacia, which ended July 31, 2026.

15.    ORR offered Acacia the opportunity to receive a second bridge that included a requirement they provide data on what services they billed for and who they provided the services to when they submit their invoice. They declined this request and refused to accept the bridge.

16.    ORR has been attempting to recompete the full contract since November 2025, however every time the Request For Proposal (RFP) is publicly posted, there is a protest, which blocks ORR from being able to award the contract. There have now been three RFPs publicly posted and ORR has been protested every time.  As a result of the most recent protest filed June 15, 2026, the Competition in Contracting Act prohibits the agency from awarding or authorizing performance of a new contract under the ongoing competitive solicitation until a decision (anticipated by September 2026) is issued.

Executed on August 6, 2026.

_____

Richard B. Debany