IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, et al.,<br><br>Plaintiffs,<br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,<br><br>Defendants. | Case No. 4:25-CV-02847-AMO<br><br>**DECLARATION OF ANA DEVEREAUX IN SUPPORT OF PLAINTIFFS' MOTION FOR AN ORDER TO SHOW CAUSE** |

**DECLARATION OF ANA DEVEREAUX**

**SENIOR MANAGING ATTORNEY, MICHIGAN IMMIGRANT RIGHTS CENTER**

*I, Ana Devereaux, make the following statements on behalf of myself and the Michigan Immigrant Rights Center, I certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. §1746.*

1. I am over the age of 18 and make this declaration based upon my personal knowledge and experience. If called to do so, I could and would competently testify to these matters under oath.
2. I am a senior managing attorney at the Michigan Immigrant Rights Center (MIRC), a legal service provider previously part of the Acacia network of providers. I incorporate my Declaration In Support Of Plaintiffs' Motion for Temporary Restraining Order And Preliminary Injunction, Dkt. 7-6, and Supplemental Declaration In Support Of Plaintiffs' Motion For A Preliminary Injunction, Dkt. 37-10, as if fully set forth herein.
3. In 2026 alone, MIRC served 1,100 unaccompanied children throughout Michigan and we currently have 948 active cases of unaccompanied children being handled by approximately 70 staff members who had been funded under the Unaccompanied Children's Program (UCP) contract.
4. Since the expiration of the UCP contract on July 31, 2026, MIRC has been forced to reevaluate the services we can provide because representation of clients has become increasingly challenging without funding for our staffing, litigation costs, or interpretation. We have been assessing which cases we can continue to handle with other limited funding sources and working to ethically wrap up and withdraw from cases that we cannot keep to the best of our ability. Because of the gap in funding, we plan to close about 520 cases over the course of the next months. This will include a push to file motions to withdraw and complete last appearances and filings in those cases before approximately 70 staff members depart at the end of October due to an inability to continue staff employment under funding constraints. We have funded a three-month wind-down period completely out of our own reserves which comes at the cost of other critical organizational services we could be

providing to the community. Unfortunately, the end of the UCP contract without appropriate provision for transition time and funding has forced us into this position so we could ethically handle the gap created by the expiration of this contract.

5. Moreover, MIRC's ability to provide even limited services or to ethically withdraw from representation in some cases has been rendered infeasible because of mounting logistical difficulties in meeting with clients. ORR subcontractor staff's unwillingness to engage with legal service providers is a growing barrier to MIRC's work. Recently, MIRC attorneys have requested that ORR subcontractor staff perform necessary logistical tasks such as printing out forms or connecting children with attorneys over the phone to facilitate an opportunity for MIRC to represent the clients remotely, but these requests have been denied. This has made ongoing representation, let alone ethical withdrawal, far more difficult, only exacerbating the strain on MIRC's limited capabilities.

6. Additionally, since the end of the UCP contract, our team has received at least 21 asylum interview notices scheduled in August and September, and more are arriving daily. Our team has been forced to cover each of those interviews without funding since the Office of Refugee Resettlement (ORR) has not communicated any plan for who could take these cases over. MIRC's team has also continued to appear at Executive Office for Immigration Review (EOIR) dockets, respond to critical deadlines, and manage these active case needs, even while working on winding down the cases. Trying to maintain these competing demands with critically low funding has put a significant strain on MIRC's services.

7. Since USCRI ostensibly began providing legal services, we have not received any communication from USCRI or other entities about taking over any of our cases from the UCP contract. The only communication we received from USCRI as an organization was on August 6, 2026. On that date, the Detroit immigration court had originally been scheduled to hold a juvenile docket day, where our staff planned to appear on behalf of our clients whom we still represented despite the end of the UCP contract. The immigration judge canceled the docket for the day for unknown reasons, and this was communicated to attorneys with appearances on the cases. However, at 11:15am, Dan Verkhlin, a staff

attorney at USCRI in Cleaveland, Ohio, according to his email signature, emailed a group of MIRC attorneys and DOJ accredited representatives. His email stated "Our org has been asked by ORR to attend juvenile hearings this week as a friend of the court and ask for continuances. I've been asked to do this for some clients you guys represent (or formerly represented, I'm not sure) in Detroit at 11am today. By chance are you guys in court with your clients who have hearings at 11am today?" One of our attorneys replied letting him know the docket had been canceled for the day and he offered his thanks. At no point, did Mr. Verkhlin or any other USCRI attorney make efforts to communicate with attorneys on MIRC's team about taking over cases, nor did he communicate directly with any currently represented clients ahead of that MCH. Attached hereto as **Exhibit A** is a true and correct copy of the August 6, 2026 email thread between Mr. Verhklin and MIRC attorneys.

8. On August 7, 2026, I received outreach from an attorney by the name of Dan Gestal, who is a managing attorney at Amica, asking if we could take on a case of a child who was transferred to Michigan. Mr. Gestal let me know that they appeared at the child's Master Calendar Hearing (MCH) on August 7, 2026 as friend of the court and the immigration judge issued the child a deadline of August 28th by which they needed to file their I-589 (asylum application), so he was wondering if MIRC could take the case since the child was in Michigan. Mr. Gestal also mentioned that he had observed a USCRI attorney present at the docket day where this child's hearing was held, but the attorney had logged off before any pro se children's cases were called. Attached hereto as **Exhibit B** is a true and correct copy of the August 7, 2026, email I received from Mr. Gestal.

9. Unfortunately, the child that Mr. Gestal was inquiring about had been transferred to ORR long-term foster care program in Michigan on July 13th, and we were not able to enter representation for the child before the cut-off on July 17th when we were instructed by Acacia to no longer take on new representation since the contract was wrapping up in an instructional document provided via email by Natalay Komisky on July 10, 2026 titled "UCP Contract Expiration, Closeout Planning, and Case Transition Activities – Important Date." I suggested we reach out to Mr. Verkhlin the attorney from USCRI who had

attempted to appear at the docket in Michigan to ask for USCRI to take on the case. I emailed Mr. Verkhlin on August 10, 2026, describing the situation and asking if he could offer representation to the child who was currently without representation due to the lapse in the contract. As of the writing of this declaration on August 20, 2026, I have not received any reply to my email to Mr. Verkhlin. Attached hereto as **Exhibit C** is a true and correct copy of my August 10, 2026 email to Mr. Verkhlin.

10. Another instance occurred where an attorney from USCRI attempted to appear as friend of the court on behalf of a child MIRC currently represents despite the appearance and presence of a MIRC DOJ accredited representative at the hearing who represented the child. This occurred on August 13, 2026, at the 11:00 am docket. Immigration Judge (IJ) Hansen called MIRC's case and before getting into the matters on the case, she addressed a request to appear as friend of the court which had been submitted by USCRI attorney, Anna Tarnogorska. The IJ was confused and asked DHS to offer an explanation as to why this request was being presented. DHS did not provide any explanation. The child also had a Young Center advocate present, Jennifer Vanegas, who clarified that ORR had sent in these requests for children in their custody who had been previously represented by Acacia-funded legal service providers even though all of the children in Michigan continued to be represented by MIRC at that time. The IJ then stated that newest Operating Policies and Procedures Memorandum (OPPM) 25.18 rescinded the ability of a friend of the court to appear, which rescinded EOIR Policy Memorandum (PM) 20-05. Therefore, she ruled that no friends of the courts would be allowed and the USCRI couldn't speak. The hearing then proceeded as usual with MIRC's previously filed motions being heard. Ms. Tarnogorska had not reached out to MIRC staff prior to or since that hearing about taking over the case or seeking consent from the client for any such friend of court appearances.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 20th of August 2026, in Lansing, Michigan.

Ana Devereaux

Senior Managing Attorney

Michigan Immigrant Rights Center