IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, et al.,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,

Defendants.

Case No. 4:25-CV-02847-AMO

**DECLARATION OF MARION DONOVAN-KALOUST (IMMDEF) IN SUPPORT OF PLAINTIFFS' MOTION FOR AN ORDER TO SHOW CAUSE**

**DECLARATION OF MARION DONOVAN-KALOUST**

**DIRECTOR OF LEGAL SERVICES AT IMMIGRANT DEFENDERS LAW CENTER**

*I, Marion Donovan-Kaloust, make the following statements on behalf of myself and Immigrant Defenders Law Center. I certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. §1746.*

1. I am over the age of 18 and make this declaration based upon my personal knowledge and experience as well as a review of documents, records, and information available to me in light of my role. If called to do so, I could and would competently testify to these matters under oath.
2. I am the Director of Legal Services at Immigrant Defenders Law Center ("ImmDef"), a plaintiff in the above-captioned case. I hereby incorporate my Declaration in Support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction (Dkt. 7-8), my Supplemental Declaration in Support of Plaintiffs' Motion for Preliminary Injunction (Dkt. 37-7), my Declaration in Support of Plaintiffs' Motion for an Order to Show Cause (Dkt. 157-3), and my Declaration in Support of Plaintiffs' Motion to Enforce the Preliminary Injunction (Dkt. 166-3), as if fully set forth herein.
3. ImmDef currently serves approximately 1,389 unaccompanied children in and around Southern California whose representation is now unfunded due to the loss of Federal funding on July 31, 2026.

**A. ImmDef is Continuing to Provide Services to Detained Unaccompanied Children in ORR Custody to Prevent Harm to Children.**

4. Under the UCP contract, ImmDef provided the following services to nearly every single unaccompanied child in the ORR facilities where we were the legal service provider as part of our responsibilities under the TVPRA: child-friendly Know Your Rights presentations, legal screenings, court preparation for unrepresented children, referrals for legal services for unrepresented children leaving our service area, screening for trafficking and submission of Office of Trafficking in Persons ("OTIP") eligibility letters as appropriate, and referrals to child advocates.

5. Additionally, we offered limited-scope representation to nearly every single child in ORR custody at facilities where we were the legal service provider to be ready to provide emergency representation in the event the government attempted to take a similar action to the one challenged in *LGML v. Noem*. We offered full-scope representation to as many detained children as possible up to our capacity. Full scope representation included representation before Immigration Court, U.S. Citizenship and Immigration Services ("USCIS"), and California state courts in connection with petitions for Special Immigrant Juvenile Findings. Our capacity to maximize offers of full-scope representation to detained children was inhibited by the uncertainty surrounding funding since the government first canceled all funding for legal services in February 2025 and our inability to onboard additional staff when we were aware the funding for their role could be slashed at any moment. It was further inhibited by additional government actions impacting immigrant children's rights, including skyrocketing lengths of detention for unaccompanied children, EOIR policies (both written and unwritten) impeding children's access to continuances, and other government actions that made each child's case much more labor intensive and required it to be completed on an expedited basis.

6. Despite the crucial legal services that our unaccompanied children in ORR custody need, ImmDef is not aware of any transition plan for the provision of services to these unaccompanied children. The only communication we have received from ORR came late in the afternoon on August 4, 2026. ORR sent the same email to various attorneys representing detained unaccompanied children, requesting information about their clients scheduled for hearings the following morning. ORR did not explain the purpose of the request or for what purpose the information would be used. ORR has not communicated with ImmDef about any other dockets, upcoming state court hearings, or any USCIS interviews. ORR has also not provided us with any information that would allow us to ethically communicate with clients about any new legal service provider who might take over representation.

7. Since the expiration of the UCP contract on July 31, 2026 through at least August 18, 2026, Know Your Rights presentations, legal screenings, and new offers of representation (whether full-scope or limited scope) were no longer being provided to unaccompanied children in ORR custody at facilities where ImmDef was the previous legal service provider. Assistance as Friend of Court is not being provided in any meaningful way. The reason I know that these services were not being provided to children is that since July 31, 2026, ORR-subcontracted facilities were contacting ImmDef nearly every day about new arrivals to the facilities and were asking us questions such as whether they will get legal representation, whether we can provide them with Know Your Rights information, and whether we can meet with them to explain what to expect at upcoming Immigration Court hearings. ImmDef redirected facilities to reach out to ORR to request the plan for legal services, but the facilities said either they had received no guidance from ORR, or they had been told to give children a list of pro-bono legal service providers in the hopes that the children themselves would start looking for counsel on their own.

8. As a result of the gap in services described above, ImmDef has had to step in to provide certain services on an emergency basis for children who arrived close to or after July 31, 2026, who had an urgent legal need. For example, ImmDef stepped in to provide Know Your Rights presentations and offer representation to two children who arrived after July 31, 2026 and expressed interest in voluntary departure. Such cases are urgent because on the one hand, it is unconscionable to prolong the detention of a child, who after consultation and advice, wishes to waive all claims of relief and return to their country of origin. On the other hand, over the past year and a half, ImmDef has seen multiple instances of DHS, EOIR and ORR fast-tracking the removal hearings of children who mentioned voluntary departure, even in passing, to an ORR-subcontracted case manager. In this context, it is crucial that a child who is thinking about voluntary departure have a swift consultation about their legal rights and the options available to them. Without the assistance of an attorney, children can have their detention improperly prolonged or conversely be rushed through a voluntary departure proceeding they never intended to pursue.

9. Out of concern that unaccompanied children with urgent legal needs will be left stranded without any legal help, ImmDef has offered legal representation to certain unaccompanied children with various urgent legal needs. For example, on August 4, 2026, ImmDef offered legal representation to three unaccompanied children who were going to age out of their Long-Term Foster Care facilities within the year. For children in long-term foster care, having an approved application for relief—whether Special Immigrant Juvenile Status, asylum, or other relief, is crucial for the child to be able to receive continuity of care beyond their eighteenth birthday. Children who "age out" without approved relief of some kind often face homelessness and the risk of transfer to ICE detention. Because there was no immediate plan for legal services for these children, and because preparing, filing, and obtaining a decision on an application for relief can take months or years, ImmDef felt that the children would be unacceptably prejudiced if we did not take immediate action to protect them.

10. Further, ImmDef offered representation to a child scheduled for an immigration court hearing on August 18, 2026 because at the last hearing the Immigration Judge indicated he would grant no more continuances for the child to seek counsel and that the child needed to proceed in their deportation case at the next hearing. Given that ImmDef was not aware of any plan for this child to receive representation in advance of the August 18, 2026 hearing, and to avoid unacceptable prejudice to the child, ImmDef decided to offer representation even with no federal funding to do so. Thankfully, ImmDef was able to secure attorney preparation time so this child now has time to receive advice and counsel before proceeding in the removal proceedings. ImmDef is still trying to protect unaccompanied children with urgent legal needs. ImmDef has asked ORR-subcontracted facilities to identify unaccompanied children with urgent legal needs and ImmDef staff are also tracking new arrivals so we can identify any unaccompanied children with urgent legal needs. On August 20, 2026, ImmDef plans to meet with one of the ORR-subcontracted Long Term Foster Care and Unaccompanied Refugee Minor programs where we were the prior legal service provider to identify and discuss children with urgent legal needs because

the facility still is not aware of any plan for ongoing legal representation for the children in their care. While ImmDef's capacity is stretched by the factors outlined above, we will always do what we can to prevent a child's deportation without due process.

11. On Monday, August 17 and Tuesday, August 18, some ORR-subcontracted facilities contacted us to inquire whether we represented certain children and if we wanted to refer them to USCRI because ORR had instructed them to make referrals of those children to USCRI. We have received no such outreach from the remaining eleven ORR subcontracted facilities where we were the prior legal service provider. Also, we are not aware of what services USCRI is offering in order to be able to seek informed consent from our clients regarding any transfer of representation or referral. For example, we have no information regarding USCRI's capacity, the scope of representation (if any) being offered, whether USCRI has attorneys barred in California to litigate SIJ matters, whether they can take on cases with urgent deadlines, or whether and in what capacity they will share information with the government. On August 19, 2026, one facility notified ImmDef that USCRI had reached out to plan a meeting with a single child—presumably to provide some sort of legal service, although I am not certain of the contours or nature of the service.

12. In short, we do not have any of the basic information we need in order to discuss transfer of children's cases to USCRI or any other potential provider with our clients or to determine whether it is ethically permissible for us to do so.

13. ImmDef has also continued, without funding, to appear in court as a friend of the court (FOC) multiple times a week since July 31, 2026. Even though we are no longer contracted to provide representation for children in shelters that we previously had contracts for, EOIR is still sending us information about children for FOC purposes and we still appear.

14. On Wednesday, August 19, 2026, an attorney from ImmDef appeared as an FOC attorney. During this hearing, a USCRI attorney posted the following in a court chat: "Hello. My name is Daniel Verkhlin. I am an attorney with the US Committee for Refugees and Immigrants. Our organization was contacted by ORR to appear on behalf of certain UAC to request a continuance on their case due to gap services in the ORR UAC Legal Services

Contract. For this hearing I am here on behalf of the following cases[]" and he then provided information about the cases on which he was appearing. However, when those cases were called, he did not say anything. In fact, the ImmDef FOC attorney stepped in on some of the cases the USCRI attorney said he was there for because the USCRI attorney was not speaking. In one instance, an unrepresented child on his list was ordered to proceed with pleadings, a step with massive legal consequences for the child. The USCRI attorney said nothing.

15. ImmDef has been making FOC appearances nearly every day recently, and sometimes twice a day. Hearings where FOC appearances were needed were not always this frequent. For example, for many years, there was only one Detained Juvenile Docket per week. Following the first cancelation of UCP funding in February 2025, one Immigration Judge began holding two to three dockets a week because the volume of unrepresented children made the dockets take too long to get through in one afternoon, without the assistance of FOC. In approximately April 2026, the number of detained juvenile dockets per week increased to four or five per week, as deportation hearings of unaccompanied children were advanced with no notice and continuances were limited to a maximum of three weeks.

16. Further, on August 14, 2026, the Board of Immigration Appeals issued a precedent decision curtailing the ability of people in removal proceedings to seek continuances for the purpose of obtaining counsel in *Matter of A-K-R-*, 29 I&N Dec. 839 (BIA 2026). I am concerned that this decision will be used against unrepresented children, or children whose attorneys' ability to continue representing them is impacted by funding loss. Even before this decision, Immigration Judges had begun limiting continuances for detained children to a maximum of three weeks, citing an unpublished "EOIR policy."

**B. ImmDef's Clients Continue to Face Imminent Deadlines With No Plan for the Transition of their Services to a New Provider.**

17. ImmDef offers full-scope representation for unaccompanied children released in our service area up to capacity. This means that, consistent with our understanding of the

TVPRA, we would provide our unaccompanied child clients with full-scope representation on all matters before EOIR, USCIS, and California state courts in connection with petitions for Special Immigrant Juvenile findings for as many children as possible released within our service area.

18. Even though the UCP contract expired on July 31, 2026, our released unaccompanied child clients still have crucial legal matters that will take place as soon as within the next few weeks and into September of 2026. For example, ImmDef internal data shows that as of August 19, 2026, for our unaccompanied child clients formerly funded under the UCP contract, there have been approximately 43 asylum interviews at U.S. Citizenship and Immigration Services ("USCIS") scheduled for August of 2026 and approximately 154 asylum interviews at USCIS scheduled for September of 2026. In my over ten years representing unaccompanied children, I have never seen USCIS issue so many asylum interviews in such a short period of time. It is clear that all unaccompanied children are being targeted for expedited adjudication of their asylum claim. Further, it is suspicious that ImmDef received so many notices for asylum interviews for their unaccompanied child clients around the time the UCP contract was set to expire or had just recently expired.

19. To make matters even more challenging, USCIS has been scheduling some asylum interviews to take place three-to-six weeks from when we receive the notice about the asylum interview. But, under a recently announced policy, USCIS has stated that "[s]tarting Aug. 21, 2026, you must submit all evidence in support of your asylum application to the asylum office ***14 calendar days before*** the date of your scheduled interview. Evidence submitted less than 14 calendar days from your scheduled interview may not be included with your asylum application, or we may reschedule your asylum interview." (https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum) (emphasis added). This means attorneys have very little time to prepare and mail in the evidence to the asylum office. Many of these clients' applications were only recently filed, and filed swiftly due to expedited deadlines set by the Immigration Court. Therefore, attorneys need additional time to compile and submit evidence. In other cases, the application was filed

many years ago and significant updates and additional evidence are required. Because we have received so many interview notices in such a short period of time, many of our attorneys have been scheduled for an overwhelming number of interviews, with one attorney scheduled for as many as nineteen interviews spanning from July to September. Attorneys are scheduled for multiple interviews with overlapping appointment times in a single day. Our office has over thirty asylum interviews scheduled for a single day on two different dates—September 18, 2026 and September 24, 2026. It is not possible to prepare for that many interviews at once with such short notice, nor can our attorneys be in more than one interview at a time. Our attorneys have made countless attempts to reschedule the interviews so that they may have a reasonable time to prepare for the interviews. But in most cases USCIS either never responds to the requests or tells our attorneys that USCIS requires 30 days' notice to respond to reschedule requests, which is impossible in certain instances when the attorney receives the notice less than 30 days before the interview. Further, under another recently-announced policy, and beginning August 21, 2026, applicants "must establish exceptional circumstances for USCIS to reschedule [the] asylum interview." (https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum). This is different, and harder to meet, than the lower "good cause" standard that has been in place for many years. Between the lack of funding to serve our clients and the astronomical rate of interviews and limitations on continuances, it feels like the walls are closing in on our clients and our organization as our capacity is stretched to breaking.

20. Additionally, ImmDef's unaccompanied child clients have numerous court hearings, work permits that need to be renewed, and other important matters for their cases.

21. We do not want any unaccompanied children to face severe adverse legal consequences during this time—it flies in the face of our mission and vision that no immigrant should have to face an unjust immigration system alone-—and we are doing this work even under the assumption that the federal government will never pay ImmDef for it. However, the current situation is jeopardizing ImmDef's financial stability. ImmDef has had to use other sources of funding that could have been used to represent other populations of potential

clients at a time when the Southern California immigrant community is under attack—such as children and families detained in enforcement actions in the community and at risk of transfer to ICE custody. ImmDef is currently being placed in an impossible situation, with the number of urgent case deadlines piling up and no funding to provide these legal services or a clear plan for new competent, independent attorneys to take them on in a way that would not prejudice our clients.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 20th of August 2026, in Riverside, California.



______________________________

Marion ("Mickey") Donovan-Kaloust
Immigrant Defenders Law Center
634 S. Spring Street, 10th Floor
Los Angeles, CA 90014
Tel: (213) 674-9438
Fax: (213) 282-3133
mickey@immdef.org