IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, et al.,<br><br>Plaintiffs,<br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,<br><br>Defendants. | Case No. 4:25-CV-02847-AMO<br><br>**DECLARATION OF MARY MCCLENAHAN MCCABE IN SUPPORT OF PLAINTIFFS' MOTION FOR AN ORDER TO SHOW CAUSE** |

**DECLARATION OF MARY MCCLENAHAN MCCABE**

**SUPERVISING ATTORNEY, HIAS PENNSYLVANIA**

*I, Mary McClenahan McCabe, make the following statements on behalf of myself and HIAS Pennsylvania. I certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. §1746.*

1. I am over the age of 18 and make this declaration based upon my personal knowledge and experience. If called to do so, I could and would competently testify to these matters under oath.
2. I am a supervising attorney at HIAS Pennsylvania, a legal service provider previously part of the Acacia network of providers.
3. HIAS Pennsylvania currently serves at least 100 unaccompanied children in Eastern Pennsylvania and surrounding areas. HIAS Pennsylvania has four attorneys who are currently handling eighty-six active cases that were taken on as part of Acacia's Unaccompanied Children Program ("UCP"). These clients are mostly released children and youth living in the community, including foster youth in Bethany Christian Services' Unaccompanied Refugee Minor ("URM") foster care program.
4. Since the expiration of the UCP contract on July 31, 2026, HIAS Pennsylvania has continued to represent all of our existing UCP clients who are released and living in the community or are in URM foster care. We also represent one UCP client at KidsPeace, an ORR shelter, in his USCIS asylum case. We have continued providing urgently-needed services to these clients despite the current lack of funding because without this representation these children will not have attorneys assisting and representing them. Neither I nor anyone at my organization has received any information on a transition plan for our current cases. Since the UCP contract expired, we have attended four asylum interviews with UCP clients at the Newark, New Jersey Asylum Office. We will attend two immigration court hearings for UCP clients next week. We are currently preparing to represent UCP clients at four or five more upcoming asylum interviews.

5. Due to the contract ending, our staff has spent about twelve hours searching for volunteer interpreters to attend asylum interviews in Newark, NJ. USCIS requires that applicants bring an in-person interpreter to any asylum interview, and the UCP contract previously covered this cost. It has been especially time-consuming to secure volunteers for less common languages in our service area like Vietnamese and Arabic. For one recent interview, we had to pay a professional interpreter using general funds, funds which would otherwise have been used to provide legal services to low-income immigrants in our state.

6. Because the contract ended, HIAS PA no longer has capacity to provide legal services to children detained at KidsPeace. Due to the short-term nature of our funding over the past year, which had to be renewed quarterly, we usually provided court assistance to detained children as Friend of Court and represented some detained children before USCIS or family court in applying for asylum or Special Immigrant Juvenile Status. Earlier this summer, the immigration judge set deadlines for several unrepresented detained minors at KidsPeace to apply for asylum. Children were given approximately 3-4 weeks to file their asylum applications. Because our contract was expiring, we did not have capacity to represent them in their USCIS asylum cases, which previously had been our normal practice. Instead, we assisted them in applying for asylum pro se to meet their deadlines. We filed their pro se applications with USCIS, together with the required fee. Additional detained minors also hoped to apply for asylum, but the judge had not yet set a deadline. We helped some of these additional minors to prepare pro se asylum applications, which they can later file with the help of a new provider.

7. We had hoped that a new legal service provider would quickly step in to represent at least those unaccompanied children with pending asylum applications, but this has proven not to be the case. Legal assistance is especially crucial for them because their asylum interviews may be scheduled at any time. However, as far as I know, no provider or attorney has met with these children regarding their pending asylum cases, and we have no information regarding how these children's cases will be transitioned or handled. Last week I learned from another nonprofit in our state that KidsPeace staff reached out to ask if they

could provide pro bono legal services because these children were not receiving any legal services or assistance. Unfortunately, this organization did not have the capacity to help.

8. Last Friday, August 14, 2026, I met with a client at KidsPeace to prepare for his upcoming asylum interview. I also consulted with another child there who was trying to decide between foster care programs. Neither child had met with a new legal service provider or attorney yet, even though both need an attorney for court representation.

9. On August 14, 2026, I asked shelter staff if it would be helpful for me to ask a local law school to assist the children who applied or want to apply for asylum, or if these children already have legal assistance. The staff replied that free legal services would be welcome because the minors still need lawyers. This confirmed what I feared, which is that the government's failure to timely contract with a legal service provider is leaving vulnerable children unrepresented when they most need it.

10. I had read that USCRI was appearing as Friend of Court, so I emailed USCRI on Friday, August 14, 2026, to request that they help children at KidsPeace with their asylum cases. On that date, USCRI asked me to sign a 6-page Nondisclosure Agreement ("NDA") in order to continue the conversation. I did not sign the NDA as I do not think it's a valid requirement for referring the cases of unaccompanied children in government custody whose representation should be funded by the government. USCRI then did agree to speak with me about those cases. I hope they will be able to represent these detained minors and other UCP clients, but that remains unclear at this moment.

11. Because of the contract termination, our organization is at risk of not being able to continue representing our UCP clients. We are searching for alternate sources of funding. We need funding to pay staff and to cover the increasing costs of application fees and interpreters. If we do not locate new funding, we will be forced to withdraw from UCP cases. Clients whose representation is at risk include youth in federal foster care and youth identified by the federal government as survivors of a severe form of trafficking in persons. Without legal representation, they will face even more risk and vulnerability.

12. Continuing to conduct work that will never be compensated puts our organization at risk of staff layoffs, prevents us from taking on new clients, brings harm to other non-UCP programs because of redirected funds, and it is just not sustainable for our organization to continue doing this work without funding.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 19th of August 2026, in Philadelphia, PA.

MARY MCCLENAHAN MCCABE
SUPERVISING ATTORNEY
HIAS PENNSYLVANIA