IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, et al.,<br><br>Plaintiffs,<br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,<br><br>Defendants. | Case No. 4:25-CV-02847-AMO<br><br>**DECLARATION OF SARAH HOUGH, ESQUIRE (JFCS PITTSBURGH) IN SUPPORT OF PLAINTIFFS' MOTION FOR AN ORDER TO SHOW CAUSE** |

**DECLARATION OF SARAH HOUGH, ESQUIRE**

**DIRECTOR OF IMMIGRATION LEGAL SERVICES, JFCS PITTSBURGH**

*I, Sarah Hough, Esquire make the following statements on behalf of myself and JFCS Pittsburgh Immigration Legal Services. I certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. §1746.*

1. I am over the age of 18 and make this declaration based upon my personal knowledge and experience. If called to do so, I could and would competently testify to these matters under oath.
2. I am the Director of Immigration Legal Services at JFCS Pittsburgh, a legal service provider previously part of the Acacia network of providers.
3. JFCS serves hundreds of both detained and released unaccompanied minors and unaccompanied refugee minors in western Pennsylvania and West Virginia. JFCS currently has six attorneys who are currently handling nearly 200 active cases representing unaccompanied children.
4. Since the expiration of the UCP contract on July 31st, 2026, JFCS has continued to represent both detained and released unaccompanied minors in immigration court at more than 35 Master Calendar Hearings. We have continued to meet with the minors prior to their hearings in order to prepare them for court. We have continued to file motions with the Immigration Court and applications with USCIS. We have continued to submit dependency petitions and Special Immigrant Juvenile petitions in Allegheny County Family Court.
5. Since the expiration of the contract, JFCS has filed multiple appeals of Immigration Court orders with the Board of Immigration Appeals and has filed several asylum applications on behalf of our unaccompanied minor clients.
6. Finally, JFCS has and will be traveling to Arlington, Virginia to attend more than a dozen asylum interviews. We have also continued to respond to inquiries from the staff at the shelters for which we have served as legal service providers, including emergency after-

hours inquiries about children we don’t represent and requests for support for consulate interviews.

7. JFCS has been forced to expend its own funds to pay for staff time, interpretation and translation, filing fees, postage and travel expenses in order to continue to provide legal services for our unaccompanied minor clients.

8. On August 6th, 2026, I attended the detained youth docket under Judge William McDermott in Philadelphia, PA. Attorney Jacquelinne Murillo Figueroa, who indicated she was from USCRI, messaged me on the Webex chat function to ask if I was there to represent the two minors we have entered representation for and inquired about whether we represent a third minor with whom we have an unwaivable conflict. Ms. Figueroa advised the court that she was there as Friend of Court for multiple minors on the docket at the request of ORR.

9. When the first case was called for a minor for whom Ms. Figuerora was intending to serve as Friend of Court, she advised the judge that ORR had advised her to tell the court that due to the gap in services from the lapse of the contract, she requested a continuance for all unrepresented minors on the docket. The judge asked Ms. Figuerora if she was aware that individuals appearing as Friends of Court are not permitted to make motions. The judge further stated that he was confused by the claim of a lapse in the contract because he knew from reading the news that a contract was awarded. He asked whether she was under the belief that USCRI will receive part of that contract and then upon that receipt would be representing the young man whose case was currently called. She replied that she didn't have that information. The judge also said that he had no reason to doubt that ORR asked her to appear but it confused him. "ORR is holding custody of the respondent. ORR has asked you not to appear as an attorney but as Friend of Court to make motions that only lawyers can make. This is a very confusing system for any observer.” He concluded by advising Ms. Figuerora that there was recent guidance about individuals who advocate in immigration court as though they are lawyers without being recognized as lawyers and warned her that she should be aware of the potential ramifications of attempting to make motions as Friend of Court.

10. Following a short recess, Judge McDermott advised that he intended to raise an issue sua sponte on the next case. He reiterated that there is a clear EOIR policy memorandum which states that Friends of Court may not advocate in immigration court. He observed that he found the situation perplexing but that it was significant that ORR had asked her to appear and ask for continuances for children in its custody. He advised that he would recognize this but balance it against the use of judicial resources and the court's responsibility to "expeditiously resolve this docket." Thereafter he indicated his intent to order 2-week continuances in all of the cases for which she intended to appear as Friend of Court.

11. I also observed that in one case where Ms. Figueroa intended to appear as Friend of Court and request a continuance, a Young Center advocate interjected and advised the court that the minor wanted to take Voluntary Departure and did not want a continuance.

12. On August 13th, 2026, JFCS' Managing Attorney for Unaccompanied Minors, Marcy Hilty, attended the detained youth docket held virtually by Judge McDermott in Philadelphia. Ms. Hilty reported to me, as her direct supervisor, that Ms. Figueroa was present again to appear as Friend of Court for several minors on the docket. Ms. Hilty relayed that Judge McDermott pressed Ms. Figueroa whether she intends to enter representation for these minors. Ms. Figueroa indicated she would do so within 2 weeks. The judge pressed her for more information about whether she will be the attorney of record. Ms. Figueroa stated that it will be her staff. The judge asked for information about her staff and Ms. Figueroa indicated that she doesn't currently have any staff but will be hiring.

13. On August 17th, 2026, staff at the Holy Family Long Term Foster Care program in Pittsburgh contacted JFCS to advise that they expected to receive new youth soon and inquired as to whether JFCS would provide legal services to these minors.

14. On August 18th, 2026, staff at the Bethany Christian Unaccompanied Refugee Minors Foster Care program in Pittsburgh, the Holy Family Shelter and Long Term Foster Care in Pittsburgh and Everstand Shelter in Martinsburg, WV advised JFCS that they had been contacted by ORR in the morning and were told that a new legal services contract had been

issued to USCRI and that thereafter, if any unrepresented minors requested to speak with an attorney, they were to make a referral to USCRI.

15. Staff at Everstand advised that although an attorney from USCRI had appeared as Friend of Court at hearings for two of the minors two weeks ago, no one from USCRI has contacted the shelter to date nor spoken with any of the minors.

16. Continued unfunded representation of our unaccompanied minor clients has prevented JFCS from being able to take on new clients and is forcing reallocation of funding that would otherwise be used to support the many other services provided by JFCS, including representation in affirmative and family-based immigration matters. JFCS is ethically obligated to continue to provide representation to our clients even while recognizing that we may never be compensated for this work and that the lack of compensation threatens the financial stability of our legal program.

17. JFCS' clients do not have any control over how ORR has chosen to handle the Unaccompanied Minors Legal Services contract negotiations or the resultant lapse in a contract for legal services. Without the continued legal representation of JFCS since the contract ended on July 31st, the harm to these minors would have been severe and irreparable; some of them would have been ordered removed even while eligible for relief, many would have appeared unrepresented in immigration court or at asylum interviews, some would have missed appeal deadlines with the Board of Immigration Appeals and some would have been unable to file for Special Immigrant Juvenile Status or applications with USCIS.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 18th of August 2026, in Pittsburgh, PA.

Sarah Hough, Esquire

Director of Immigration Legal Services

JFCS Pittsburgh