BRETT A. SHUMATE
Assistant Attorney General
Civil Division
WILLIAM C. SILVIS
Assistant Director
MICHAEL A. CELONE
KATELYN MASETTA-ALVAREZ
Senior Litigation Counsels
ZACHARY A. CARDIN
Trial Attorney

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 532-4945
Zachary.a.cardin@usdoj.gov

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

COMMUNITY LEGAL SERVICES IN EAST PALO ALTO,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *ET AL.*,

Defendants.

Case No. 4:25-cv-02847-AMO

**DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE**

## I. INTRODUCTION

This Court has ordered Defendants to show cause at an evidentiary hearing why they are not in violation of the Court's preliminary injunction. Defendants submit this brief, together with the accompanying declaration of Richard B. Debany, Chief for the Division of Acquisition Requirements at ORR, to present the record on which Defendants will rely at that hearing.[1] Debany Decl. ¶¶ 1-3. As set forth below, and in the accompanying declaration, that record shows Defendants have complied with every obligation this Court has ordered, have not withdrawn any services or funds within the meaning of the injunction, and, to the extent any results remain outstanding, that is because those results depend on the independent actions of third parties Defendants cannot compel.

Following this Court's August 6, 2026 Order, Defendants released the withheld Contract Line-Item Number (CLIN) 2 funds and, on August 13, 2026, filed its compliance report as directed by the Court. Dkt. 176-1; Dkt. 177. Plaintiffs' motion for the order to show cause was based substantially on 132 pages of declarations from fourteen declarants containing allegations about specific, unidentified unaccompanied children. Defendants did not have the benefit of the identifying information necessary to investigate those allegations before the motion was filed and requested that Plaintiffs identify the children by A-number to allow Defendants to do so. Plaintiffs did not provide that information. Debany Decl. ¶ 60. Defendants nonetheless reviewed available agency and EOIR records in advance of the hearing, and that review, set forth in Part E below, contradicts the picture Plaintiffs' motion presents. Several of the motion's other central premises, including its characterization of confidentiality and legal ethics, likewise do not withstand scrutiny. Defendants respectfully submit that the record set forth below and in the accompanying declaration demonstrates that Defendants have not violated the preliminary injunction, or,

[1] In light of the extraordinarily short response deadline set by the Court, Defendants reserve the right to produce additional relevant information that may subsequently become available prior to, or at the upcoming hearing.

alternatively, that Defendants have substantially complied with it, and that any remaining compliance is contingent on the actions of third parties that the Government does not control.

## II ARGUMENT

### A. This Court No Longer Has Jurisdiction To Hold Defendants in Contempt

Plaintiffs' lawsuit hinged on whether the government was withdrawing or cancelling funds directed to legal service providers. Compl., ¶¶ 127- 146, ECF. No. 1. Defendants have been providing this funding in compliance with this Court's orders for over a year, and have maintained contracts for the required legal services into the future. Plaintiffs' claims are now moot, and they do not have standing to use this lawsuit as a vehicle for attempting to oversee and dictate Defendants' compliance with its legal obligations into perpetuity.

Article III of the United States Constitution limits federal court jurisdiction to actual, ongoing cases or controversies. *Wolfson v. Brammer*, 616 F.3d 1045, 1053 (9th Cir. 2010) (quoting *Lewis v. Cont'l Bank Corp*., 494 U.S. 472, 477, 110 S.Ct. 1249 (1990)). Accordingly, "[a] case or controversy must exist at all stages of review, not just at the time the action is filed." *Wolfson*, 616 F.3d at 1053 (citing *Alvarez v. Smith*, 558 U.S. 87, 130 S.Ct. 576 (2009)). The "case or controversy" clause requires, among other things, that a plaintiff have standing, that the plaintiff's claims be ripe for adjudication, and that the plaintiff's claims not be moot. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006); *see also Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1253 (9th Cir. 2007) (under the mootness doctrine, "a live controversy must exist at all stages of the litigation, not simply at the time plaintiff filed the complaint"). "A case becomes moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome of the litigation." *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086 (9th Cir. 2011) (internal quotations omitted). "In other words, if events subsequent to the filing of the case resolve the parties' dispute, [the court] must dismiss the case as moot." *Id.* at 1087.

In this sense, "mootness [is] 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) (quoting Monaghan, Constitutional Adjudication: The Who and When, 82 Yale L.J. 1363, 1384 (1973)). Indeed, "[t]he phrases 'legally cognizable interest' and 'injury in fact' are for all practical purposes synonymous," even though the former "is often used to describe Article III's case or controversy requirements when mootness is at issue" and the latter "is often used to discuss these requirements when standing is at issue." *Clark v. City of Lakewood*, 259 F.3d 996, 1011 n.7 (9th Cir. 2001). Here, Plaintiffs alleged that payment was withheld during a contract. Payment was then disbursed, and the contract at issue then expired under its pre-defined term. What's more, the Court did not assign Plaintiffs to be roving guardians of the government's compliance with the TVPRA. As a result, Plaintiffs no longer face a live controversy to which they are entitled to judicial relief.

Continue judicial interference with no operative complaint, and where Plaintiffs lack standing, is "substantial intrusion" into the workings of the political branches. *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268, n.18 (1977). Institutional reform decrees raise "sensitive federalism concerns," *Horne*, 557 U.S. at 448, and those concerns are heightened in the area of immigration where the federal government must be able to adapt to changing circumstances. *Mathews v. Diaz*, 426 U.S. 67, 81 (1976).

"For more than a century," the Supreme Court has held that immigration policy is a "fundamental sovereign attribute" of the Legislative and Executive Branches and "largely immune from judicial control." *Trump v. Hawaii*, 585 U.S. 667, 702 (2018) (quoting *Fiallo v. Bell*, 430 U.S. 787, 792 (1977)). The "responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches," *Reno v. Flores*, 507 U.S. 292, 305 (1993), because immigration policy involves "changing political and economic circumstances" and "may implicate 'relations with foreign powers,'" judgments that "are frequently of a character more appropriate to either the Legislature

or the Executive." *Mathews*, 426 U.S. at 81; *Trump*, 585 U.S. at 702 (citations omitted). For these reasons, "any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations." *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89 (1952).

This injunction, however, "improperly deprive[s] future officials of their designated legislative and executive powers." *Horne*, 557 U.S. at 450. It allows a group of favored citizens to receive a lucrative contract in perpetuity. Yet, this Court's injunction removes from the Executive Branch the power to respond to such factual and legal changes and thus runs counter to bedrock separation of powers principles. The Supreme Court has warned that the "longer an injunction … stays in place, the greater the risk that it will improperly interfere with a [government's] democratic processes." *Id.* at 453. "Responsibility for discharging the government's obligations must be returned promptly to the government and its officials." *Horne*, 557 U.S. at 448. The injunction, however, inhibits the Executive from exercising this authority.

This Court should thus dissolve the injunction because it is the very type of institutional-reform injunction that the Supreme Court cautioned against.

**B. Defendants Have Complied With Every Court-Ordered Reporting Obligation**

The compliance record is not in dispute. Since the April 29, 2025 preliminary injunction, Defendants have filed twelve status reports. *See* Dkts. 91, 98, 104, 127, 137, 142, 146, 148, 150, 151, 153, 156. The Court's August 6, 2026 Order required Defendants to release the withheld CLIN 2 funding and file a report on compliance following the expiration of the Acacia contract. Dkt. 172 at 3. Defendants did both, on the timeline the Court set. The funds were released, Dkt. 176-1, and on August 13, 2026, Defendants filed their compliance report through the declaration of Richard Debany, addressing the transition, the USCRI and Our Rescue arrangements, and Defendants' ongoing coordination efforts. Dkt. 177 at 2-6, ¶¶ 4-10.

**C. The Operative Complaint Does Not Support Prospective Application of the Preliminary Injunction to This Dispute**

This Court's preliminary injunction was entered on the operative complaint's claim that Defendants were withdrawing the services and funds ORR was providing as of March 20, 2025, under the contract with Acacia, by withholding payment on certain invoices submitted pursuant to that contract. That is the injury the operative complaint alleges and the injunction was designed to cure. The operative complaint does not allege, and could not have alleged, a claim regarding ORR's discretionary acquisition decisions in structuring successor legal-services capacity after the Acacia contract's expiration, decisions the complaint predates entirely. Debany Decl. ¶¶ 12, 30, 42.

That gap matters because the contract underlying the operative complaint's claim has expired and the invoices identified in the complaint have been paid. The Acacia contract expired by its own terms on July 31, 2026, following the final option period ORR exercised on April 30, 2026. *Id*. ¶¶ 5, 16. Defendants released the previously withheld CLIN 2 funds owed under that contract. Dkt. 176-1. There is no outstanding funding obligation under the Acacia contract left to withdraw, and Plaintiffs' motion does not identify any funds currently due that are unpaid under it.[2] Accordingly, Plaintiffs no longer have standing to continue litigating this suit.

Absent a complaint pleading a *live* case or controversy, the preliminary injunction cannot support ongoing judicial superintendence of ORR's implementation of its statutory responsibilities and the successor arrangements ORR is working to establish after the contract's expiration. With the contract underlying the operative complaint's claim expired and the invoices paid, there is no live case or controversy left in complaint for the Court to adjudicate on a prospective basis.

**D. There Is No Violation of the Preliminary Injunction**

The injunction prohibits Defendants from withdrawing the services or funds ORR was providing as of March 20, 2025. Defendants have not withdrawn funding or services. To the contrary, ORR began

---

[2] Defendants interpret the Court's August 6 Order broadly to require the payment of *all* remaining CLIN 2 invoices under the now-expired Acacia contract (i.e., May, June, and July). The May invoice was recently submitted and paid by ORR and the funds will be released by EOD today to Acacia by the Treasury; the June and July invoices will be paid in due course as they are submitted by Acacia.

pursuing a long-term competitive procurement for successor legal services in November 2025, eight months before the Acacia contract expired, and continued that effort notwithstanding three bid protests filed on December 15, 2025, April 2 and 3, 2026, and June 15, 2026. Debany Decl. ¶¶ 12-13. ORR exercised the final option period under the Acacia contract on April 30, 2026 specifically to maintain continuity of services while the competitive procurement proceeded. *Id.* ¶ 16. When it became apparent a further Acacia bridge was unlikely, ORR nonetheless continued negotiating and offered Acacia a four-month bridge arrangement intended to maintain continuity and support an orderly transition of active cases. *Id.* ¶¶ 18-19. Acacia did not accept that arrangement. *Id*. ¶ 22.

ORR then simultaneously pursued multiple alternative mechanisms. It awarded a $20 million supplemental cooperative agreement to USCRI on August 4, 2026, and USCRI began providing services the next day. *Id.* ¶¶ 30-31. It executed a contract with Our Rescue worth up to $244 million on August 7, 2026. *Id.* ¶¶ 41-45. It also pursued an additional cooperative agreement with Burke Law Group, publishing notice of intent to award on August 4, 2026. *Id.* ¶¶ 45-48. This reflects sustained, overlapping efforts by ORR, using every mechanism available to it, to maintain and expand legal-service capacity through and after the expiration of a single expired contract, not a withdrawal of services or funds.

**E. Defendants Have Substantially Complied, and Any Remaining Gap Reflects a Present Inability to Compel Results That Depend on Independent Third Parties**

To the extent the injunction is read to require particular results rather than good-faith efforts, Defendants have taken every reasonable step within their control, and any remaining gap reflects a present inability to produce results that depend on independent third parties Defendants cannot compel. As a result, "[w]here compliance is impossible, neither the moving party nor the court has any reason to proceed with [a] civil contempt action." *United States v. Rylander*, 460 U.S. 752, 757 (1983); *see also Maggio v. Zeitz*, 333 U.S. 56, 69 (1948).

ORR does not itself operate the nationwide network of attorneys that provide direct representation to unaccompanied children. It provides funding and establishes the mechanisms through which independent organizations perform that work. Debany Decl. ¶ 4. ORR can make funding available, solicit and negotiate agreements, award contracts and cooperative agreements, provide case and hearing information, and coordinate transitions. *Id.* ¶ 6. ORR cannot, however, compel an independent organization to accept an agreement, accept particular terms, expand its staffing beyond its capacity, or continue performing after its agreement has expired. *Id.* ¶ 7. Nor can ORR compel an individual attorney to enter an appearance, form an attorney-client relationship, or make the professional and ethical determinations that necessarily precede representation. *Id.* ¶¶ 8-9,

The record reflects that Defendants' efforts were repeatedly constrained by exactly this dependence on independent parties. Acacia did not accept the bridge arrangement ORR proposed. *Id.* ¶ 22. Burke Law Group withdrew from consideration after it was awarded, citing an onslaught of negative publicity. Our Rescue's contract has been automatically stayed by a GAO bid protest that Acacia itself filed, thereby preventing Our Rescue from performing at all. *Id.* ¶ 45. And the transition from the Acacia-funded network has been further complicated because Acacia has not provided ORR a comprehensive list of children being represented; and Plaintiffs themselves have taken the position that they will not disclose their clients' identities or discuss transition with ORR or their clients until an acceptable successor contract is in place. *Id.* ¶¶ 54-55.

Where ORR has identified gaps, it has taken the reasonable actions available to it: providing USCRI hearing information, including next-day hearing information, and a full-time coordinator to track assignments and identify gaps, *id.* ¶¶ 31-34, directing USCRI to prioritize children with upcoming hearings, *id.* ¶ 35, and reviewing available agency and EOIR records to investigate the specific cases Plaintiffs raised in this motion – despite Plaintiffs' refusal to identify the children by A-number when ORR, through counsel, requested that information. *Id.* ¶ 60. What ORR cannot do, however, is force

Acacia to turn over case information it has withheld; force Plaintiffs to disclose client identities they have declined to share; force Our Rescue to perform under an automatically stayed contract; or force any attorney to enter an appearance. *Id*. ¶¶ 83, 89, 98.

ORR pursued multiple mechanisms simultaneously precisely because no single mechanism available to the agency could unilaterally guarantee continuation of the nationwide provider network after the Acacia contract expired. *Id*. ¶ 28. As of the date of the declaration supporting this response, ORR is not aware of any action presently available to it that it could take unilaterally that would immediately recreate the former Acacia-funded provider network or cause every child potentially requiring representation to have an attorney of record. *Id*. ¶ 99. Nor is ORR aware of any Government-controlled mechanism it has deliberately declined to use that would, by itself, immediately restore the level of direct representation that existed under the Acacia contract. Substantial compliance, measured by the actions within Defendants' control, is what the record shows, and the remaining gaps are attributable to the independent judgment and decisions of third parties Defendants do not control, not to any withdrawal of services or funds by Defendants.

**F. Plaintiffs' Have Not Established a Violation**

Plaintiffs have not been injured. The Acacia contract has expired, and Defendants released the withheld CLIN 2 funds this Court ordered released (and will pay all remaining unsubmitted invoices as it receives them), resolving the financial injury that gave rise to this dispute. Dkt. 176-1. Plaintiffs remain free to continue representing their existing clients pro bono, consistent with the ethical obligations they describe, or to join the provider network Defendants are establishing through USCRI and receive payment going forward. Plaintiffs cannot convert an ethical obligation they have voluntarily chosen to continue into a continuing entitlement to funding under a contract that is no longer in effect.

Plaintiffs' motion relies on three examples involving individual children in Los Angeles, Texas, and Arizona, which Plaintiffs offer as proof that Defendants withdrew legal services in violation of the

injunction. Mot. at 1-2. Defendants requested that Plaintiffs identify these affected children by A-number to permit the agency to reasonably investigate the circumstances, yet Plaintiffs refused to provide that information. Debany Decl. ¶ 60. Defendants' review of available agency and EOIR records nonetheless shows that each example is consistent with continued access to counsel, not a withdrawal of services. For instance, in Los Angeles, the immigration judge denied voluntary departure and granted the child ten additional days to consult an attorney, who later appeared and advocated on the child's behalf. *Id*. ¶¶ 61-66. In Texas, an isolated data discrepancy, not a withdrawal of funding, explains any gap in advance notice, and the underlying outcome reflected the child's own stated objective of reunification with family. *Id*. ¶¶ 67-71. In Arizona, the immigration judge granted a continuance to allow time to determine the child's representation status, and a supervising attorney had already appeared to make that determination. *Id*. ¶¶ 72-77. None of these examples establishes that this Court's injunction was violated or that funds for legal services were withheld.

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully submit that the Court should find that Defendants have not violated the preliminary injunction or, alternatively, that Defendants have substantially complied with it and that any remaining gap is attributable to the independent judgment of third parties whose actions Defendants cannot compel.

Dated: August 28, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

WILLIAM C. SILVIS
Assistant Director

MICHAEL A. CELONE
KATELYN MASETTA-ALVAREZ
Senior Litigation Counsel

*<u>/s/ Zachary Cardin</u>*
ZACHARY CARDIN
Trial Attorney
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-532-4945
Zachary.a.cardin@usdoj.gov

*Attorneys for Defendants*