GIBSON, DUNN & CRUTCHER LLP
Katherine Marquart (CA Bar No. 248043)
Ariana Sañudo (CA Bar No. 324361)
Arthur Halliday (CA Bar No. 347620)
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7000
kmarquart@gibsondunn.com
asanudo@gibsondunn.com
ahalliday@gibsondunn.com

Laura M. Sturges (*pro hac vice*)
Patricia M. Herold (*pro hac vice*)
Caelin Moriarity Miltko (*pro hac vice*)
1900 Lawrence Street, Suite 3000
Denver, CO 80202-2211
(303) 298-5700
lsturges@gibsondunn.com
pherold@gibsondunn.com
cmoriaritymiltko@gibsondunn.com

IMMIGRANT DEFENDERS LAW CENTER
Alvaro M. Huerta (CA Bar No. 274787)
Carson A. Scott (CA Bar No. 337102)
Lya Ferreyra (CA Bar No. 340148)
Riley H. Mailman (CA Bar No. 329015)
Immigrant Defenders Law Center
634 S. Spring St., 10th Floor
Los Angeles, CA
(213) 634-0999
ahuerta@immdef.org
cscott@immdef.org
lferreyra@immdef.org
rmailman@immdef.org

JUSTICE ACTION CENTER
Esther H. Sung (CA Bar No. 255962)
Karen C. Tumlin (CA Bar No. 234691)
Laura Flores-Perilla (CA Bar No. 355645)
Hillary Li (*pro hac vice*)
Brandon Galli-Graves (*pro hac vice*)
Emily Satifka (*pro hac vice*)
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
(323) 450-7272
esther.sung@justiceactioncenter.org
karen.tumlin@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org
hillary.li@justiceactioncenter.org
brandon.galli-graves@justiceactioncenter.org
emily.satifka@justiceactioncenter.org

AMICA CENTER FOR IMMIGRANT RIGHTS
Adina Appelbaum (*pro hac vice*)
Samantha Hsieh (*pro hac vice*)
Peter Alfredson (*pro hac vice*)
Evan Benz (*pro hac vice*)
Amica Center for Immigrant Rights
1025 Connecticut Ave., NW, Suite 701
Washington, D.C. 20036
(202) 331-3320
adina@amicacenter.org
sam@amicacenter.org
peter@amicacenter.org
evan@amicacenter.org

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

COMMUNITY LEGAL SERVICES IN EAST PALO ALTO, et al.,
Plaintiffs,
v.
UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,
Defendants.

CASE NO. 4:25-CV-02847-AMO

**PLAINTIFFS' REPLY IN SUPPORT OF DKT. 178 (PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS ARE NOT IN VIOLATION OF THE PRELIMINARY INJUNCTION AT AN IMMEDIATE EVIDENTIARY HEARING)**

Date: September 8, 2026
Time: 1:30 p.m.
Judge: Hon. Araceli Martínez-Olguín
Date Action Filed: March 26, 2025

## TABLE OF CONTENTS

**INTRODUCTION** .......... 1
**ARGUMENT** .......... 1
I. The Court Has Jurisdiction and Plaintiffs Have Standing. .......... 1
II. The Preliminary Injunction Remains Proper. .......... 3
III. Defendants Make Additional Fundamental Factual Misstatements. .......... 4
**CONCLUSION** .......... 5

## INTRODUCTION

Throughout this case, Plaintiffs' focus has been on the harms Defendants' failure to provide congressionally mandated legal services to unaccompanied children is causing to Plaintiffs, our immigration system, and the children Defendants are obligated to care for. Defendants' focus continues to be on arguing about contracts and standing, even though this Court and the Ninth Circuit have rejected those arguments numerous times. As this Court has warned, "Defendants' contract argument reflects yet another attempt to transform this Administrative Procedure Act case into a contract case." Dkt. 172 at 2.

Plaintiffs file this reply solely to address Defendants' repeated, meritless standing and jurisdiction arguments, and to correct particularly noteworthy factual misstatements in Defendants' filing. Plaintiffs requested that Defendants correct the record themselves, including as to their indefensible mischaracterizations of Plaintiffs' complaint, but Defendants' position is that all of their statements are "accurate." Because Plaintiffs understand that issues concerning Defendants' ongoing noncompliance with this Court's preliminary injunction will be addressed at the September 8, 2026 evidentiary hearing, Plaintiffs do not address those concerns here.

## ARGUMENT

### I. The Court Has Jurisdiction and Plaintiffs Have Standing.

This Court should again reject Defendants' latest version of its meritless jurisdictional arguments that this controversy is somehow "moot" because Defendants ostensibly are seeking to contract with an entity other than Acacia. Dkt. 186 at 3–5. Defendants' positions are belied by this Court's prior orders and Plaintiffs' complaint itself.

Defendants first raised standing in their March 31, 2025, opposition to Plaintiffs' motion for a temporary restraining order. They argued both that Plaintiffs lacked standing because they were not "within the zone of interests" protected by the Trafficking Victims Protection Reauthorization Act ("TVPRA") and because any order would not redress Plaintiffs' injuries. Dkt. 24 at 13–15, 20–21. As they do now, Defendants took the position that any injury suffered by Plaintiffs was merely "financial" and that Plaintiffs sought only "monetary relief." *Id.* at 9, 16. This Court rejected both arguments, holding that Plaintiffs had organizational standing to bring these claims because their

missions required them to divert resources to continue to provide these services and that Plaintiffs fell within the zone of interests of the TVPRA. Dkt. 33 at 3–4.

In their April 11, 2025, opposition to Plaintiffs' motion for a preliminary injunction, Defendants made the exact same arguments the Court rejected in its order granting Plaintiffs' motion for a temporary restraining order. Dkt. 55 at 6, 12–14. This Court again rejected those arguments. Dkt. 87 at 6–11. In particular, this Court held that "[t]he reinstatement of funding for direct representation to unaccompanied children increases the likelihood that Plaintiffs will obtain relief, either through funding to continue their own representations *or an alternative plan providing legal representation to unaccompanied children consistent with the TVPRA and the Foundational Rule*." *Id.* at 10 (emphasis added). And, on June 6, 2025, Defendants tried once more in their motion to dismiss to persuade this Court that Plaintiffs lacked standing because their claims arose only through the Acacia contract. Dkt. 110 at 12–13. This Court again rejected that argument, noting that "[t]he Government here, as elsewhere in its briefs, willfully misreads Plaintiffs' arguments, as well as the judicial reasoning provided so far in this case, mischaracterizing the relief sought by Plaintiffs as entirely financial." Dkt. 128 at 3.

Defendants now restyle their prior standing arguments to claim this controversy is moot because Defendants have opted not to renew the Acacia contract. Dkt. 186 at 3. Like Defendants' motion to dismiss, this "willfully misreads Plaintiffs' arguments, as well as the judicial reasoning provided so far in this case." Dkt. 128 at 3. To start, the opening premise for Defendants' mootness argument is that "Defendants have been providing [the required] funding in compliance with this Court's orders for over a year." *Id.* But just a month ago, on August 6, 2026, this Court held that Defendants' failure to disburse funding "violate[d] both the plain language as well as the spirit of the preliminary injunction, as maintaining the funding of legal representation for unaccompanied minors in accordance with the TVPRA and the Foundational Rule is the preliminary injunction's objective." Dkt. 172 at 2. And the Court simultaneously noted that it had doubts about Defendants' future plans for compliance, as "no mechanism presently exists by which Defendants are complying with the preliminary injunction." *Id.* at 3.

More fundamentally, Defendants' mootness argument once again "mischaracteriz[es] the

relief sought by Plaintiffs as entirely financial," relying on the same framework Defendants have been using unsuccessfully since March 31, 2025. *E.g.*, Dkt. 128 at 3. Defendants argue that Plaintiffs' complaint "alleged that payment was withheld during a contract" and that this supposed contract claim is mooted because payment was issued and the contract expired. Dkt. 186 at 4. But in March 2025, the dispute was not about whether "payment was withheld during a contract"; instead, by Defendants' own admission, no contract or other plan was in place to provide the congressionally mandated services when Plaintiffs filed this action. Dkt. 91 at 2 (admitting "a contract with Acacia for CLINs 2-4, including direct-legal services, was not in place between March 21 and April 29, 2025"). Defendants' argument appears to confuse the operative complaint, which was filed nearly a year before Defendants started withholding any contractual payments and instead concerned the wholesale termination of funding and services, with Plaintiffs' July 2026 motion to enforce, which challenged Defendants' withholding of contract payments as the latest mechanism for withholding services and funding required by law and the preliminary injunction. The complaint speaks for itself, as it challenges Defendants' now-repeated attempts to terminate congressionally mandated services and funding for unaccompanied children, Dkt. 1 ¶ 11, not any decision under any contract. Plaintiffs' claims, as the Court and the Ninth Circuit have repeatedly affirmed, have always been about whether Defendants are violating the TVPRA and the Foundational Rule, not whether Defendants have issued any particular payment under any particular contract. *See, e.g.*, *id.*

If anything, Defendants' actions have put the Parties back in the same position they were in when Plaintiffs first filed this case—with the claims just as live. When Plaintiffs filed their complaint, Defendants had illegally terminated the funding and services Congress obligated them to provide under the TVPRA (and Defendants obligated themselves to provide under the Foundational Rule). Dkt. 1 ¶ 11. Now, Defendants again are not providing the required funded services. *See generally* Dkt. 182-1. Far from mooting the case, Defendants' actions have taken the litigation in a full circle.

## II. The Preliminary Injunction Remains Proper.

In addition to repackaging their doomed jurisdictional standing arguments, Defendants try to repackage their arguments that the balance of equities tipped in their favor because the preliminary injunction intrudes on executive authority, framing the preliminary injunction as an "institutional-

reform injunction" that impermissibly infringes on executive authority. Dkt. 186 at 5. But the premise of Defendants' argument is wrong. They claim the injunction "allows a group of favored citizens to receive a lucrative contract in perpetuity," *id.*, but the Court has been explicit that it does not: "the legal service providers do not seek payout – they seek to ensure representation for unaccompanied children in immigration proceedings, *regardless of which lawyers provide it*." Dkt. 87 at 15. And the preliminary injunction order does not mention any contract or any requirement to contract; as this Court noted on August 6, 2026, it is Defendants who repeatedly attempt to insert a contractual dispute into this case. Dkt. 172 at 2.

But, most importantly, the preliminary injunction remains necessary because Defendants are still not complying with the law or the injunction—in the absence of the Acacia contract, Defendants now insist they are simply unable to comply because of the actions of third parties. Dkt. 186 at 7–10. As Plaintiffs explained at length in their motion for an order to show cause, there is ample evidence that Defendants have withdrawn funding and services for unaccompanied children that the TVPRA and the Foundational Rule (and now the preliminary injunction) require them to provide. *See generally* Dkt. 182-1.

## III. Defendants Make Additional Fundamental Factual Misstatements.

Finally, in addition to Defendants' factual misstatements discussed above, Defendants' opposition brief makes a variety of other factual errors and omissions that bear correcting.

*First*, Defendants say Acacia "did not accept" the offer of a new bridge contract. Dkt. 186 at 7. But Plaintiffs understand that the transition contract was offered solely on the condition that Acacia and providers agree to provide the same unaccompanied children's confidential and/or non-existent data that Defendants cited to illegally withhold payments under the now-expired contract. Defendants insisted on these child data-sharing provisions, which the Court has already found did not provide justification for not providing services and funding mandated by the TVPRA, the Foundational Rule, and the preliminary injunction. Dkt. 172 at 2–3. And Defendants apparently knew as early as July 9, 2026, that they would not agree to another bridge contract with Acacia, yet took no steps to request a transition plan from Acacia until July 26, 2026. *Compare* Dkt. 186-1 ¶ 17 (Debany August 28 Declaration), *with* Dkt. 170-1 ¶ 7 (Lukens Supplemental Declaration). Defendants offer no

explanation for why it took them weeks to even begin contemplating a transition plan.

*Second*, Defendants say "[t]he compliance record is not in dispute," Dkt. 186 at 5, but the uncertain, disputed record of Defendants' purported compliance is exactly what prompted the Court to order an evidentiary hearing: "Debany's August 13, 2026 declaration raises serious questions regarding Defendants' compliance with the preliminary injunction following July 31, 2026." Dkt. 183 at 1. Plaintiffs very much dispute the record of Defendants' purported compliance.

*Third*, Defendants contradict themselves by insisting they "have not withdrawn funding or services," Dkt. 186 at 6, but conceding "ORR has identified gaps" in services, *id.* at 8. And the Court—less than a month ago—found that Defendants *had* withdrawn funding in violation of the preliminary injunction. *See* Dkt. 172 at 2. And Plaintiffs have identified likely additional gaps in services where Defendants have withdrawn services. *See* Dkt. 182-1. The Court set the evidentiary hearing to explore the precise nature of these gaps and others that may also exist.

*Fourth*, Defendants falsely state Plaintiffs "refused" to provide A-number information about specific unaccompanied children discussed in Plaintiffs' motion and declaration. Dkt. 186 at 10. That is not true: on August 21, 2026, Plaintiffs' counsel informed defense counsel that they were conferring with their clients about whether they could provide the requested information, but explained that much of the requested information was in the Government's possession. Sturges Decl., Ex. A at 5. On August 27, 2026, Plaintiffs followed up to explain that while the Government should have much of this information in its possession, Plaintiffs and the non-Plaintiff declarants could supply at least some of the requested information provided they could (where relevant) obtain client consent to do so and that the Parties could agree to a sufficient protective order. *Id.* at 2. And the next day, August 28, 2026, Plaintiffs sent Defendants a proposed protective order. *Id.* at 1. Defendants did not respond to Plaintiffs' proposal until today, a week after misrepresenting Plaintiffs' position to this Court.

There are additional statements of purported fact in Defendants' opposition that Plaintiffs disagree with, but for brevity at this stage Plaintiffs do not address them here. Plaintiffs do not concede the truth or accuracy of any statement not specifically identified in this brief.

## CONCLUSION

The Court has already granted Plaintiffs' request for an evidentiary hearing. Plaintiffs expect

that the additional information provided at this hearing will supply the Court and the Parties with further facts needed to determine how this Court can best enforce its orders.

Respectfully submitted,

September 3, 2026

/s/ Laura M. Sturges

GIBSON, DUNN & CRUTCHER LLP
Katherine Marquart (CA Bar No. 248043)
Ariana Sañudo (CA Bar No. 324361)
Arthur Halliday (CA Bar No. 347620)
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7000
kmarquart@gibsondunn.com
asanudo@gibsondunn.com
ahalliday@gibsondunn.com

Laura M. Sturges (*pro hac vice*)
Patricia M. Herold (*pro hac vice*)
Caelin Moriarity Miltko (*pro hac vice*)
1900 Lawrence Street, Suite 3000
Denver, CO 80202-2211
(303) 298-5700
lsturges@gibsondunn.com
pherold@gibsondunn.com
cmoriaritymiltko@gibsondunn.com

/s/ Alvaro M. Huerta

IMMIGRANT DEFENDERS LAW CENTER
Alvaro M. Huerta (CA Bar No. 274787)
Carson A. Scott (CA Bar No. 337102)
Lya Ferreyra (CA Bar No. 340148)
Riley H. Mailman (CA Bar No. 329015)
Immigrant Defenders Law Center
634 S. Spring St., 10th Floor
Los Angeles, CA
(213) 634-0999
ahuerta@immdef.org
cscott@immdef.org
lferreyra@immdef.org
rmailman@immdef.org

/s/ Karen C. Tumlin

JUSTICE ACTION CENTER
Esther H. Sung (CA Bar No. 255962)
Karen C. Tumlin (CA Bar No. 234691)
Laura Flores-Perilla (CA Bar No. 355645)
Hillary Li (*pro hac vice*)
Brandon Galli-Graves (*pro hac vice*)
Emily Satifka (*pro hac vice*)
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
(323) 450-7272
esther.sung@justiceactioncenter.org
karen.tumlin@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org
hillary.li@justiceactioncenter.org
brandon.galli-graves@justiceactioncenter.org
emily.satifka@justiceactioncenter.org

/s/ Samantha Hsieh

AMICA CENTER FOR IMMIGRANT RIGHTS
Adina Appelbaum (*pro hac vice*)
Samantha Hsieh (*pro hac vice*)
Peter Alfredson (*pro hac vice*)
Evan Benz (*pro hac vice*)
Amica Center for Immigrant Rights
1025 Connecticut Ave., NW, Suite 701
Washington, D.C. 20036
(202) 331-3320
adina@amicacenter.org
sam@amicacenter.org
peter@amicacenter.org
evan@amicacenter.org
*Attorneys for Plaintiffs*

**ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3) of the Northern District of California, I attest that concurrence in the filing of this document has been obtained from each of the other signatories to this document.

DATED: September 3, 2026

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Laura M. Sturges*

Laura M. Sturges

*Attorneys for Plaintiffs*